UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

PHILLIP TIMOTHY HOWARD,

Plaintiff,

v. CASE NO.:
SENIOR JUDGE

J.B. HARRIS, FLORIDA ATTORNEY;
SHANEE L. HINSON, FLORIDA ATTORNEY;
MARGARET PEGGY HARRIS, DANA HALL,
SANDRA FULUP, KIMBERLY BUTLER POLING,
THE FLORIDA SUPREME COURT, and THE
FLORIDA BAR,

Defendants.
_______________________________________/

**VERIFIED COMPLAINT**

COMES NOW the Plaintiff, DR. PHILLIP TIMOTHY HOWARD ("Plaintiff" or "DR. HOWARD"), 3122 Mahan Drive, Suite 801, Tallahassee, Florida 32308, through undersigned counsel, pursuant to federal law, Fifth Amendment to the United States Constitution, 18 U.S.C. § 1962, 18 U.S.C. §1965 and 28 U.S.C. § 1391, Defendants are subject to personal jurisdiction in this judicial district because most Defendants reside in this district.

Pursuant to: (a) federal law, 42 U.S.C. § 1983; Rule 65, Federal Rule of Civil Procedure; federal civil conspiracy and federal Civil RICO under 18 U.S.C. § 1962; and (b) Florida law, Article I, Section 9, Due Process clause of the Florida

Constitution; Florida Rule of Civil Procedure 1.610; Florida Civil Theft statute, § 772.11, Florida Statutes; and Florida Civil RICO statute Chapter 895, Florida Statutes, hereby brings this action against Defendants documenting with specificity criminal conspiracy, criminal extortion, criminal perjury, criminal fraud, violations of Florida Bar Rules, violations of Florida Accounting Rules and statute, violation of Florida Judicial Cannons I and II, violation of federal and Florida Civil RICO, violation of due process under the Fifth Amendment to the United States Constitution, Article I, § 9, of the Florida Constitution, civil theft, civil conspiracy, and temporary and permanent injunction.

1. The Defendants are as follows:

2. J.B. Harris, attorney at J.B. Harris, P.A., 3127 Ponce De Leon Boulevard, Miami, Florida 33134-6816 at jbharrisesq@gmail.com;

3. Margaret Peggy Harris (Peggy Harris) at NE 2nd Street, Havana, Florida 32333;

4. Shanee L. Hinson, attorney at 651 E. Jefferson Street, Tallahassee, Florida 32399-6584, at shinson@floridabar.org;

5. Dana Hall at 6600 Donerail Trail, Tallahassee, Florida 32309;

6. Sandra Fulup at 6600 Donerail Trail, Tallahassee, Florida 32309;

7. Kimberly Butler Poling at 2659 N.E. 26th Place, Fort Lauderdale, Florida 33306;

8. The Florida Bar at 651 E. Jefferson Street, Tallahassee, Florida 32399-6584; and

9. The Florida Supreme Court at 500 South Duval Street, Tallahassee, Florida 32399-1927.

10. DR. HOWARD seeks liability, temporary and permanent injunction stopping the ongoing criminal enterprise, stopping its permanent and irreparable injury to DR. HOWARD, and civil damages under tort, civil conspiracy, civil theft, and civil RICO.

11. Pre-suit notice of 180 days, under § 768.28, and § 772.11, Florida Statutes, has not yet been provided to the Defendant prior to filing this action due to the required immediate filing in order to stay the Florida Supreme Court's actions and to issue a temporary injunction stopping the criminal enterprise, but is being provided upon the filing of this Complaint. However, notice and a copy of this Verified Complaint is being provided via email to the respective parties, such that a temporary injunction can be entered.

12. Jurisdiction and venue are appropriate due to federal civil rights violations and since DR. HOWARD and all of the Defendants, except J.B. Harris and Kimberly Butler, reside in Leon County, Florida.

As grounds for this VERIFIED COMPLAINT, DR. HOWARD asserts the following:

## FACTS COMMON TO ALL COUNTS

13. On January 29, 2018, at 3:12 pm, J.B. Harris wrote:

Tim, . . .

**If you don't throw me another miniscule $2000 lifeline TODAY, I'm filing a bar complaint against you** and your lap dog Ankur.

I've called to make an appointment to meet with the Bar tomorrow in person. I'm driving to Tallahassee at first light. . . .

If we're not paid in full by Friday, rest assured Rick and I will drop the hammer on you.

**GOVERN YOURSELF ACCORDINGLY.**[1]

---

1 Written sworn statements via email and transcripts found in Attachments I through V.

All of these documents have been submitted to The Florida Bar and The Florida Supreme Court under Penalty of Perjury, with documentation of the criminal enterprise, criminal extortion, criminal perjury, criminal fraud, and Bar Rule violations, going back to early 2018, and all having provided to the Florida Bar, Shanee L. Hinson, with relevant transcript excerpts attached.

Attachment I is the first of many packets of evidence provided to the Shanee L. Hinson and the Florida Bar documenting the criminal enterprise that DR. HOWARD was initially unaware that The Florida Bar and Shanee L. Hinson were engaged in.

Attachment II is the sworn packet of J.B Harris documents demonstrating the criminal enterprise of J.B. Harris, Peggy Harris, Kimberly Butler Poling, Dana Hall, Sandra Hall, Shanee L. Hinson, and The Florida Bar.

Attachment III is the sworn packet of Shannee L. Hinson documents demonstrating the criminal enterprise of J.B. Harris, Peggy Harris, Kimberly Butler Poling, Dana Hall, Sandra Hall, Shanee L. Hinson, and The Florida Bar.

Attachment IV documents the violations of Judicial Cannons by the state Court Referee.

Attachment V is the Manifest Injustice notice to the Florida Supreme Court.

14. This extortion threat was made after DR. HOWARD had wired J.B. Harris $11,583.98 on December 28, 2017, had paid J.B. Harris over $200,000.00 in the prior 12 months, and J.B. Harris wanted more. He ultimately extorted over $600,000.00 from DR. HOWARD.

15. Rewarded for his earlier extortionate threats, his greed kicked in and his extortion accelerated. **Just three days later**, with the information he gained from **conspiring with Jeff Kahn** and Lance Friedman, that DR. HOWARD was receiving a multi-million loan from them, **his extortion amount jumped from $2,000 to $80,228.** On February 1, 2018 at 8:34 am, J.B. Harris wrote:

> Tim, . . .
>
> **I've prepared a bar complaint against you which I will file tomorrow if I'm not paid in full by then**. . . .
>
> **Your new bill is as follows: . . . $80,228**
>
> You have the wiring instructions. **You have until the close of business tomorrow.**

*Id.*

16. Just four days later, **now wanting to take $100s of thousand, as part of his conspiracy with an elaborate advance fee loan scam by Jeff Kan and Lance Friedman, in partnership with Addys Walker**, on February 7, 2018, J.B. Harris at 12:44 pm, wrote:

> Tim, . . .

> I have **spoken at length** with **Jeff Kahn and Lance Friedman and they both are waiting on your signature** for them to immediately fund an initial $3,000,000, which will give you enough capital to make your employees, **me and the Diaz firm** whole. **They both assured me the lender is ready, willing and able.**
>
> If you **haven't signed the agreement by the close of business today necessary to release the insurance premium payment, plus the lifeline agreement with Lance, I will proceed with the Diaz firm in aligning ourselves with 1 other creditor**, to **force you into bankruptcy.**
>
> **GOVERN YOURSELF ACCORDINGLY**
>
> *Id.*

17. J.B. Harris was conspiring with Jeff Kahn and Lance Friedman, both of whom were engaged in an elaborate criminal advance fee loan scam against DR. HOWARD using the same insurance premium contract for loans to steal $ millions from him and others. Jeff Kahn perpetrated this elaborate criminal advance fee loan scam from late 2017 until 2020 and participated with J.B. Harris.

18. Jeff Kahn has since been charged criminally for this same elaborate criminal advance fee loan scam that **J.B. Harris was extorting DR. HOWARD to sign.** *United States of America v. Jeffrey Kahn*, Mag. No 21-8300, (U.S.D.C. New Jersey), filed on November 9, 2021. ("From in or around 2018 through in or around 2019, KAHN defrauded approximately thirty victims, including Victim 1 and Victim 2, and DR. HOWARD, out of more than $5 million." Complaint, p. 5). A similar civil case for this same elaborate advance fee loan scam was filed against *Jeff Kahn*

in *GPA Touring, Inc, v. Jeff Kahn, Kahn Advisors, LLC, et al.*, Case No.: 2:21-cv-07674-BRM-ESK (U.S.D.C., New Jersey).

19. Continuing his extortion and participation with the elaborate advance fee loan scam with Jeff Kahn and Lance Friedman, and attempting to refute DR. HOWARD'S contractual rights to tobacco cases and fees that DR. HOWARD has paid for, less than three weeks later, on February 27, 2018, at 3:26 pm, J.B. Harris again wrote DR. HOWARD, now threatening with the FBI, stating:

> Tim, I discovered two UCC-1's signed by you on behalf of Howard & Associates, P.A. (H&A), securing indebtedness owed to one BWCI Pension Trustee, in the original principal amount of $640,000, filed [by Lance Friedman as coordinated with Jeff Kahn] on February 1 and 15, 2018, respectively. . . .
>
> Accordingly, you have until this Friday at 12:00 pm March 2, 2018, to release each and every case belonging to me on the UCC-1s referenced herein, or on those of any other creditor of H&A, or **I am proceeding straight to the FBI with this information.** And I will not sleep until you and Mr. Mehta are brought to justice and placed behind bars. . . .
>
> **GOVERN YOURSELF ACCORDINGLY**
>
> *Id.*

20. The UCC filings were done by Lance Friedman in coordination with Jeff Kahn as part of the elaborate criminal advance fee loan scam, and having whatever net value existed in DR. HOWARD'S case equities as collateral for funds DR. HOWARD was never going to receive, but only co-signed to assist others in a hotel restoration project. Jeff Kahn, Lance Friedman, and Addys Walker set up DR.

HOWARD to be legally attacked and extorted by J.B. Harris and BWCI for the value of his various cases.

21. Despite the extortion by J.B. Harris, DR. HOWARD worked to service the clients and to get the funds needed to address the needs of the law firm and address the extortion by J.B. Harris. Within 3 weeks DR. HOWARD had funding organized, and had provided what funds he had to J.B. Harris and included J.B. Harris as part of the financing package, when on April 5, 2018, J.B. Harris, at 9:48 pm, wrote to DR. HOWARD and funding attorney Martin Shellist, extorting them for another $300,000.00 stating:

> Marty, (1) **before <u>I sue Virage, you, Ed and Tim for fraud and conspiracy to commit fraud</u>, for:**
>
> (i) intentionally and maliciously liening with your fraudulent UCC-1 my tobacco cases . . .
>
> (2) before **I file a complaint against you and your co-conspirators with the SEC for the same,** . . .
>
> (3) before **<u>I file a Bar complaint against you for all of the above</u>**;
>
> (4) you may want to man up and call me to discuss a **<u>settlement of my claims tomorrow,</u> first thing. Otherwise, my weekend will be very busy.**
>
> **GOVERN YOURSELF ACCORDINGLY**
>
> *Id.*

22. Even after DR. HOWARD funded the law firm and as part of the funding package paid an additional $50,000.00 to J.B. Harris up front, and put him

on a $21,000.00 a month income, plus health insurance, J.B. Harris continued his extortion scheme. Just 6 weeks later, on June 6, 2018 at 3:16 pm, J.B. Harris wrote DR. HOWARD, stating:

> Tim, if you think you are having trouble with the Bar's investigation of your practices [that J.B. Harris created as part of his extortion scheme], BWCI Pension Trustees Limited [part of Jeff Kahn and Lance Friedman's elaborate advance fee loan scam], Ted Doukas, and everyone else who is still after you, you are about to **walk into a shit storm if you steal the Goulds from me as my clients**.
>
> I will lien the file for costs and fees, sue you for tortious interference and unpaid contribution to costs, fraud and everything else I can think of. **I will also amend my complaint with the Bar and file a complaint against Neil [paralgegal with law firm] as well.**
>
> **GOVERN YOURSELF ACCORDINGLY.**
>
> *Id.*

23. Just two day later, while DR. HOWARD was paying J.B. Harris $21,000.00 a month for prosecute tobacco cases, including for Peggy Harris, on June 8, 2018, at 4:50 pm, J.B. Harris as part of his enterprise and conspiracy with the Florida Bar in his effort to take DR. HOWARD'S license and complete his theft of attorney's fees entitlement of DR. HOWARD and over $680,000 in payments to J.B. Harris by DR. HOWARD, wrote DR. HOWARD, stating:

> Tim, . . .**You're a first rate coward and a scumbag. All your talk about Jesus is blasphemous garbage**. Trust me, I will be pursuing my remedies forthwith. **You want a war. You are going to get one. Hope you paid John Leonard his fees up front**. . . .

> Accordingly, your actions are retaliatory for **my having filed a Bar complaint against you**. . . .
>
> I can also assure you they will rip you to shreds once they see through your **sociopathic charade**.
>
> By the way, the **<u>Bar is starting to debrief your former employees</u>. Seems like <u>you've been on the Bar's radar for quite sometime</u>. <u>Your days as a lawyer are numbered</u>.** I'm sure your family will be so proud of you once they find out.
>
> Enjoy your weekend.
>
> *Id.*

24. Just two days later, documenting the enterprise and scheme of J.B. Harris and The Florida Bar, while also clarifying the intent and integrity of DR. HOWARD, on June 10, 2018, at 10:01 pm, Barbara Ulrich, Daughter of Stanley Gould, the person that DR. HOWARD allegedly stole as a client from J.B. Harris, wrote:

> . . . I want the Florida Bar to know that in no way, did you "steal" the Gould sisters. Nor did you go behind his back to take over our business. The truth of the matter is very simple. The three of us sought you out.
>
> I also want the Florida Bar to know that JB Harris is one of the most despicable and abusive men walking on 2 legs. . . He has said to us on more than one occasion that "we are to do whatever the __ck he says. If not I will cut you 3 loose and just move on to the next person on my list."
>
> . . . I can only hope some serious actions will be taken against this lawyer before he does the same to whoever is "next on his list."
>
> *Id.*

25. Continuing his extortionate abuse, J.B. Harris would not provide the litigation files and documents for the Gould sisters,[2] so that DR. HOWARD could prosecute the action for the Gould sisters with co-counsel. Ultimately, the Gould sisters had no choice but to go back to J.B. Harris, who took the case to Rick Diaz, who currently represents them.

26. As part of his extortion scheme, nine weeks later, J.B. Harris, on August 21,2018, J.B. Harris wrote to DR. HOWARD, who was paying J.B. Harris $21,000

---

[2] Extraordinarily, J.B. Harris is relentless in demeaning his clients, claiming

> **unequivocally that all three <u>Goulds are learning disabled, likely possessing IQs of around 80, as well as intellectually and emotionally challenged</u>. . . . <u>two of the Goulds were former members of a cult and the other one is a conspiracy theorist and a doomsday-prepper</u>. <u>All suffer from paranoia</u> and are easily manipulated by calls to a higher power . . . .”**

*Id.* (emphasis added).

J.B. Harris then writes the Gould sisters, using his criminal enterprise and extortion complaints to the Florida Bar and FBI, and direct and knowing participation with the advance fee loan scam of Jeff Kahn and Lance Friedman, as evidence for them to return to his representation, even though J.B. Harris works for DR. HOWARD, stating:

> You ladies really need to do your homework before switching lawyers. Dr. Howard (and I use that term very loosely) is **<u>under investigation by the Feds and the Bar. He also owes money to everyone under the sun, and is being sued for fraud</u>**. I’s send you the complaint.

a month as well as his health insurance to prosecute tobacco cases for the law firm, threatened physical violence upon DR. HOWARD, stating:

> "Tim, **I suggest you reactivate my insurance today** **or I will be at your office first thing tomorrow to spend a little quality time with you.** You've placed the lives of my children at risk and that won't stand."

*Id.*

27. Not only was J.B. Harris coordinating with Jeff Kahn in the elaborate advance fee loan scam that J.B. Harris was extorting DR. HOWARD to sign, J.B. Harris was coordinating with a Don Reinhard, who was in prison, also extorting DR. HOWARD.[3]

---

[3] Don Reinhard was a person that DR. HOWARD had played four years of varsity football with and had shown compassion and grace for as Don Reinhard tried to re-start his life. In response to the compassion and grace given by DR. HOWARD, the criminal patterns of Don Reinhard continued, and he was sent to prison for child abuse. To cover his financial crimes that an independent audit verified that he took $500,000 from the financial firm, he tried to extort DR. HOWARD for over $ 1 million, with threats of criminal, SEC, and Florida Bar investigations. As part of Don Reinhard's extortion, from prison he coordinated with J.B. Harris, Corey Fuller and Dexter Carter, and others, and started an NFL and SEC witch hunt. That witch hunt confirmed that DR. HOWARD never submitted an NFL claim nor modified any expert medical records. Despite only giving money and being the largest investor, DR. HOWARD accepted an SEC fine because he agreed that he unwisely provided blind grace and trust in his former high school football teammate. But with no evidence of any wrongdoing, but inferences from criminals and extorters, NFL claims still determined, with incendiary language, not to permit DR. HOWARD'S firm to participate in NFL claims. DR. HOWARD has since assigned all law firm assets to creditors under the control and management of independent trustee so that all, including NFL claims, The Florida Bar and The Florida Supreme Court, can see and trust that DR. HOWARD was only trying to do good for all his clients, his co-counsel, and the legal profession. He still is.

28. As part of this extortion enterprise with Shanee L. Hinson and The Florida Bar, J.B. Harris conspired to draft and submit a perjured and fraudulent Bar Complaint against DR. HOWARD, falsely attributed to and conspired with a Margaret Peggy Harris ("Peggy Harris"), as part of his ongoing, elaborate extortion effort (and in order to also steal an Engle tobacco case and its fees from work that DR. HOWARD and his firm had spent four years of labor and expenses that J.B. Harris was paid over $300,000 and $21,000 a month, plus health insurance, to work on), and resulted in a $10 million verdict, of which DR. HOWARD would have been entitled to $ millions in fees and costs but for the enterprise and elaborate extortion scheme of J.B. Harris and The Florida Bar.

29. This new Florida Bar Complaint was written by J.B. Harris and never even read by the falsely alleged complainant, Peggy Harris, but signed by her that it was read, true and factual, under penalty of perjury. This is verified under oath in the sworn deposition of Peggy Harris:

30. The J.B. Harris perjurious, fraudulent, and part of the ongoing enterprise, extortion scheme and conspiracy with the Shanee L. Hinson and The Florida Bar, "Peggy" Harris' Florida Bar Complaint 2019—00,088(2A) against DR HOWARD, Inquiry/Complaint under PART FIVE, is submitted with following statement:

> **"Under penalties of perjury, I declare that the foregoing facts are true, correct and complete." Signed by Margaret "Peggy" Harris, on 7-8-18.**

*Id.*

31. This was an official proceeding under the Florida Supreme Court's Florida Bar rules and regulations, and based on the language, type set, legal research, attached documents, prior threats to extort, consistency in J.B. Harris extortionate language and attacks in two other bar complaints, and as verified in the deposition of Peggy Harris taken on February 13, 2020, was prepared and written under the guidance, control and direction of Florida attorney, Mr. J.B. Harris, as coordinated and conspired with by Peggy Harris and The Florida Bar.

33. This was done so J.B. Harris could take the fees and costs legitimately owed to DR. HOWARD. Peggy Harris received a $10 million verdict and nearly $400,000 of expenses and 3,000 hours of work for free by DR. HOWARD and his law firm and its attorneys work on the estate's and her behalf. DR. HOWARD protected the dying testimony of Richard Harris despite numerous obstacles by counsel for the tobacco industry and his "end of life" deposition directly led to the $10 million verdict.

34. Placing his client's interests above the attacks of J.B. Harris, DR. HOWARD continued to pay J.B. Harris as an employee of DR. HOWARD'S law firm. J.B. Harris, despite his continued illegal conduct, was paid $21,000 a month

plus health insurance for his family by DR. HOWARD, to prosecute Peggy Harris' tobacco case, during his representation of Peggy Harris.

35. Notwithstanding his $21,000 a month payment, family health insurance, and the $50,000 bonus he received in early April of 2018, J.B. Harris filed numerous bar complaints and continued to extort DR. HOWARD. Putting his client's interests first, DR. HOWARD has received nothing, and if nothing changes, will receive nothing for his firm's over $100,000 in risk costs, 3,000 hours of work, and the over $300,000 in pay for counsel to work in the Peggy Harris case, which resulted in a $10 million verdict.

36. Under section 837.02(1), Fla. Stat., when perjury takes place in an official proceeding, such as in a Florida Bar complaint, the **criminal** offense of perjury is a third-degree felony punishable by up to 5 years in prison and a $5,000 fine. If this complaint is considered an unofficial proceeding, perjury would be considered a misdemeanor of the first degree, punishable by up to one (1) year in jail, (1) year of probation, and $1,000 in fines. Finally, if this Bar Complaint is considered before a public servant in the performance of his or her official duty, perjury would be a misdemeanor of the second degree under section 837.06, Fla. Stat. Shanee L. Hinson and The Florida Bar were informed of these criminal standards in writing several times. *Id.*

38. The Peggy Harris Bar Complaint was never read by Peggy Harris and was not drafted by Peggy Harris, but by J.B. Harris, despite Peggy Harris filing the Bar Complaint under oath and under penalty of perjury. Peggy Harris under oath acknowledges that the Bar Complaint (written by J.B. Harris as part of his criminal scheme in coordination and conspiracy with Shanee L. Hinson and The Florida Bar) that she signed violated criminal perjury and has extensive false and fraudulent statements.

39. Peggy Harris admits that her Bar Complaint was perjured and fraudulent. Her Bar Complaint is rife with slanderous allegations, such as that DR. HOWARD abandoned her in the middle of a case, charged her advance costs under a contingency fee contract, and violated Bar Rules in his prosecution of her husband's case. The Peggy Harris Bar Complaint was drafted and coordinated with J.B. Harris, as part of his ongoing extortion, fraud and perjury scheme with Shanee L. Hinson and The Florida Bar. This Bar Complaint is knowingly perjured, full of lies,[4] and fraudulent. Peggy Harris' new counsel raised her 5th Amendment rights:

> Q. **You're saying that you signed the Bar complaint without reading it?**
> A. **Correct**. I know that's—that is my fault. I'm sorry I didn't read it.

---

[4] When the evidence supports use of the term "lies", it is appropriate to use the term "lies." *Murphy v. International Robotic Systems, Inc.,* 766 So.2d 1010 (Fla. 2000).

. . .

Q. Part five says that, "Signature.): **Under penalties of perjury, I declare that the foregoing facts are true, correct and complete." Do you see that?**
A. I do.
Q. And then your name is printed, correct?
A. Correct.
Q. **And then you signed your name, correct?**
**A. You understood when you signed this <u>that you were under penalty of perjury declaring the facts in the statement to be true, correct and complete</u>?**
**A. Correct.**
Q. There was no doubt in your mind about what you were signing, correct?
A. Apparently not—apparently so.
Q. I want to make sure I understand your answer.
A. Well, I—**<u>I did not read it, so I was wrong</u>** in not—putting this down, so—
Q. And I appreciate you're acknowledging that that was wrong. And I want to understand from you why you agree that was wrong to do. You understood when you signed this that you were taking an oath to tell the truth –
A. Correct.
Q.—Just like the oath you took this morning?
A. Right.
Q. And you understood the importance of an oath in a legal proceeding, correct?
A. Yes.
Q. I mean, our legal system, you agree, depends on people telling the truth, correct?
A. Correct.
Q. Our legal system depends on people telling the full truth and not being deceptive by leaving out certain key parts, correct?
A. Correct.

. . .

**Q. You understand what perjury means, right?**
**A. Yes.**
**Q. You understand the penalties of perjury?**
**A. Yes.**

**Q. You understand that in some context perjury can be a criminal offense?**
A. Um-hum.
Q. Yes?
**A. Yes.**
**Q. Would you want any part of a judgment that you believed was based on false information?**
. . .
**A. No.**
**Q. That would be wrong?**
A. Right.
Q. Would you want to be **any part of a judgment that you believed was <u>infected by or tainted by fraud?</u>**
A. I wouldn't like it.
**Q. Would you want any part of it?**
**A. <u>No.</u>**
. . .
**<u>A Correct.</u>**

Q **And so when this was filed back in 2019, April of 2019 you had not read the Bar complaint at that time?**
A **Correct.**
Q **And you would have not been able to tell your lawyers whether -- what was in the Bar complaint was true and correct or contained false statements because you hadn't read it?**
A **Correct.**
Q **And we now know that it contains statements that you believe to be false?**
MR. DIAZ: Form.
BY MR. MONDE:
Q Correct?
A **Correct.**
Q **Statements that you believe to be fraudulent, correct?**
MR. DIAZ: Form.
THE WITNESS: **Correct.**
Q. Now that you know that, what steps have you taken to correct that?

A. At this point nothing that I recall.

*Id.*

40. Consistent with J.B. Harris' threats of criminal prosecution, forced bankruptcy, and Bar complaints, stated on January 29, 2018, February 1, 2018, February 26, 2018, April 5, 2018, J.B. Harris engaged in weekly threats and attacks without legal justification for pecuniary gain. J.B. Harris conspired with Kimberly Butler Poling and he wrote both the Kimberly Butler Poling Bar Complaint and Rebuttal.

41. The language of the June 4, 2018, Rebuttal prepared and written by J.B. Harris, but signed by Kimberly Butler Poling, tracks the extortionate and Bar Rule violating, denigrating language of J.B. Harris:

**"poster child for intentionally turning a blind eye** towards legal and ethical improprieties" ... ;

**"blatant lies** made directly to Bar counsel ... to shift the blame to his **consigliere and right-hand man"** ... ;

"pleas of **ignorance, bewilderment, mystification, along with his sleight-of-hand"** ... , "Howard's **three biggest lies"** ... ;

"an **incestuous relationship"** ... ;"

Mehta Consulting was established **to illicitly ... manipulate** H&A's books; issue **fraudulent** paychecks that were returned for insufficient funds; and engage in other **nefarious activities";**

**"pure nonsense";**

"tip of a massive iceberg, the architecture of which was in place long before I was hired by the firm";

**"outrageous lie, tenuously holding up Howard's house of cards,";**

"blatant lie";

"equity partner";

**"damning";**

"larger **scheme";**

"insulating Howard from liability in the even the **firm went belly-up,** which is exactly what happened in this instance";

**"firm running off the rails";**

"the third lie";

**"delusional";**

**"Howard is a dangerous lawyer. He should be summarily disbarred.** Indeed, given the allegations of misuse and misappropriation of client funds, I'm surprised the Bar has not taken swifter action";

**"three material lies";** and

"Howard's **duplicitous behavior that cries for sanctions."**

*Id.*

43. J.B. Harris has continued his management and conspiracy with Kimberly Butler Poling, and as recently as December 20, 2021 at 3:17 pm, while DR. HOWARD was attempting to coordinate a deposition of Kimberly Butler Poling, wrote to DR. HOWARD, threatening another Bar Complaint and claiming that J.B. Harris' perjury, fraud, extortion and Bar violations, and coordination with Shanee L. Hinson, to accomplish these illegal actions, in extorting DR. HOWARD, were DR. HOWARD'S fault:

> Mr. Howard, I am in receipt of the attached voicemail you left Ms. Poling on her phone today in reference to me. You must really **enjoy spending your dwindling hours as a lawyer defending Bar complaints, <u>while engaging in fantastical flights of fancy about who could have caused your pending professional demise.</u>**
>
> Given your prior conduct toward Ms. Poling, not only is your voicemail a form of witness harassment and intimidation, and an attempt to circumvent the rules regarding the taking of a deposition, **its content also is slander per se and actionable under the Bar rules prohibiting unprofessional conduct directed at one lawyer from another**. For example, Rule 3-4.3 states, "The commission by a lawyer of any act that is . . . contrary to honesty and justice may constitute a cause for discipline." And Rule 3-5.1 (b)(1) Criteria, reads, "In the absence of unusual circumstances misconduct will not be regarded as minor if . . . (E) the misconduct includes dishonesty, misrepresentation, deceit, or fraud on the part of the respondent."
>
> Accordingly, if you do not retract the slanderous content of this voicemail and issue a written apology by COB on Monday December 13, **<u>I will file another Bar complaint against you.</u>**

PLEASE GOVERN YOURSELF ACCORDINGLY

44. DR. HOWARD informed Shanee L. Hinson and The Florida Bar of the extortion by J.B. Harris and Kimberly Butler Poling on June 11, 2018, with extortion documentation. *Id.*

45. DR. HOWARD informed Shanee L. Hinson and The Florida Bar of the extortion by Dana Hall and Sandra Fulup on August 3, 2018, and their conspired demand of $355,031 in July of 2016, when they were:

(a) not clients,

(b) were not parties to the agreement with the former deceased client,

(c) the client ceased being a client in the Summer of 2008,

(d) the client died in May of 2012,

(e) Dana Hall and Sandra Fulup had all of the original records and files as the case was closed in 2013,

(f) nothing was owed on the non-client agreement,

(g) a full accounting and review had taken place with Sandra Fulup signed and accepted in writing on December 23, 2013, with the written and signed notice of the opportunity for independent counsel to review and advise,

(h) contract rights on the 2008 contract could be pursued, if anything was outstanding under the contract with the non-client;

(i) Dana Hall and Sandra Fulup were not involved with nor witnesses to the contract with the former client, which representation ended in 2008, and he passed in 2012.

*Id.*

46. The full and final accounting letter from December 23, 2013, reads and was signed as follows:

Sandy Fulup
6600 Donerail Trail
Tallahassee, FL 32308

**RE: Full and Final Distribution of Jason R. Hall Non-refundable, Non-Client Funds**

This letter **is to document and finalize this firm's distribution of any non-client funds held for Jason R. Hall**. After providing Sandy Fulup, as personal representative to the estate of Jason R. Hall and Dana Hall as the legal guardian of the minor children (heirs to the estate of Jason R. Hall**), a detailed briefing of all remaining non-client funds, as well as having the opportunity for independent counsel to review and advise, you have agreed that the outstanding balance is $16,200.** If any outstanding medical bills are satisfied without any further payment, a portion of the amount of those bills will also be refunded to you as well.

*Sandra A. Fulup*

*Id.*

47. In fact, there was no legitimate case for any loss of funds. If there was such a case, a breach of contract action would have been filed years before the statute

of limitations had run.[5] Dana Hall and Sandra Fulup were represented by former Florida Bar prosecutor, attorney with Rumberger Kirk law firm, Richard Greenberg who regularly spoke with Shanee L. Hinson and the Florida Bar accountant. As an attorney accountable under Florida legal malpractice law and Florida Bar Rules, Richard Greenberg, was legally and professionally obligated to file a civil action if there was any merit to the claims, so as to avoid legal malpractice and Bar Rule violation claims against him and his law firm.

---

[5] Jason Hall's 2008 non-client funds were accounted for and distributed as he requested up to his death in 2012 and in final accounting in December of 2013. If there were any concerns as to the loan and amounts the agreement provided that it is

> enforceable through a one-day binding private arbitration pursuant to Florida law to be resolved in Leon County. . . . **If there is any dispute concerning this agreement, the parties will provide written notice to the other and if not resolved within 5 working days, the parties will go to a mediation in Leon County within 20 working days, and if not resolved, to binding arbitration before one arbitrator acceptable to both parties, within 20 additional working days. <u>Each party understands that it has the right and opportunity to have an attorney review this contract and agreement before signing and agreeing to its terms.</u>**

If there were any concerns as to these loan amounts, the former client from 2008, Jason Hall or his estate had these appropriate remedies to pursue. No written notice or notice of a dispute was ever given. The law firm of Rumberger Kirk, and its partner Richard Greenberg, that represents the Complainant, knows how to pursue breach of contract actions if anything was owed, yet filed nothing during the over 5 years of representation.

48. The Florida Bar conspired and colluded with extorters, Dana Hall and Sandra Fulup, both of whom haven't worked in nearly 10 years and 20 years respectively.

49. Shanee L. Hinson, attorney with The Florida Bar was a co-conspirator in the criminal extortion and known perjury and fraud of J.B. Harris, Peggy Harris, Dana Hall, Sandra Fulup, and Kimberly Butler Poling. Through numerous conversations with J.B. Harris, being aware of his unlawful purposes, schemes and ongoing public advertisements to do the same with and for others, and those of Peggy Harris, Kimberly Butler Poling, Dana Hall and Sandra Fulup, in order to advance her career and legal opportunities, Shanee L. Hinson abused her position and engaged in an extra-judicial express and implied agreement with J.B. Harris and his co-conspirators, Peggy Harris and Kimberly Butler Poling, and the extortion of Dana Hall and Sandra Fulup, to extort DR. HOWARD, thereby doing unlawful acts and lawful acts by unlawful means.

50. In furtherance of the conspiracy, Shanee L. Hinson performed numerous specific acts to forward the conspiracy and aided the conspiracy by intentionally and knowingly lying to the Court, not acknowledging or reviewing but rather turning a blind eye to the facts of criminal extortion, criminal perjury, criminal fraud, Bar Rule violations, and Accounting Rule violations and statutes, and

determined to accomplish J.B. Harris' extortion goal of taking DR. HOWARD'S fees on tobacco cases, and his license no matter what.[6]

51. Shanee L. Hinson and The Florida Bar in response to the criminal extortion, known perjury and fraud of J.B. Harris, Peggy Harris, Kimberly Butler Poling, Dana Hall and Sandra Fulup, was informed in writing on June 11, 2018

---

[6] The Corey Fuller and William Floyd Bar Complaint, filed in coordination with criminal Don Reinhard who was also extorting DR. HOWARD, and coordinating with J.B. Harris in their mutual extortion schemes, and similar Bar Complaints, was initially thrown out with the following written statement:

Mr. Hughes, on January 15, 2020, as The Florida Bar representative, stated:

> I must conclude that your complaint constitutes a civil dispute as there are **<u>no allegations independent of the enclosed civil complaint</u>** and as a result, must be resolved through the civil system. The Supreme Court of Florida has ruled that the disciplinary process and proceedings are not to be used as a substitute for civil proceedings and remedies.
>
> . . .
>
> Consequently, I have closed our record in this matter.
>
> *Id* (emphasis added).

Continuing its ongoing enterprise and conspiracy, in doing anything it can to take DR. HOWARD'S law license and accomplish J.B. Harris extortion and taking of fees and costs from DR. HOWARD, the Florida Bar violated its own law and rules and determined to go forward with the Corey Fuller and William Floyd Bar Complaint. The civil dispute is resolved and with their extortion completed, Bar Complainants are not now willing to testify for the Florida Bar.

(Exhibit A), July 13, 2018, and August 3, 2018, that J.B. Harris, Peggy Harris, Kimberly Butler Poling, Dana Hall, and Sandra Fulup, were extorting DR. HOWARD, and was provided the definitions and criminal standards for extortion as follows:

> Whoever, either verbally or by a written or printed communication, maliciously threatens to accuse another of any crime or offense, or by such communication maliciously threatens an injury to the person, property or reputation of another, or maliciously threatens to expose another to disgrace, or to expose any secret affecting another, or to impute any deformity or lack of chastity to another, with intent thereby to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will, shall be guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. Under Florida Statute 836.05, the crime of Extortion is committed when a person maliciously threatens to: Accuse another of any crime or offense; Injure the person, property or reputation of another; Expose another to disgrace; Expose any secret affecting another; or Impute any deformity or lack of chastity to another, with the intent to: Extort money or any pecuniary advantage; or Compel any person to do any act or refrain from doing any act against their will. **Actual Malice versus Legal Malice.** Although it is a subtle distinction, under the Extortion statute, the prosecutor is required to prove the threat was committed with Actual Malice, which means "means ill will, hatred, spite, evil intent." This is in contrast to what is known as Legal Malice, which only requires that an act be committed intentionally and without any lawful justification. **Penalties for Extortion.** The crime of Extortion is a Second-Degree Felony in Florida and is punishable by up to 15 years in prison, 15 years of probation, and a $10,000 fine. *Calamia v. State,* 125 So. 3d 1007 (Fla. 5th DCA 2013) (Actual malice is the standard. "A threat is malicious if it is made intentionally and without any lawful justification."); *McKee v. State,* 715 So.2d 101 (Fla. 5tl, DCA 1998) (Conviction upheld for threats that defendant will destroy you, destroy your business, accusing of drug use, and threatening to make accusations to a federal agency.). "Maliciously" means wrongfully, intentionally, and without legal

> justification or excuse. A threat is "malicious" for purposes of exto1tion statute if it is made intentionally and without any lawful justification. It is not necessary that the person accused of extortion have the ability to carry the threat out. Threats to cause mental or psychological injuries are generally prohibited under exto1tion statute. Therefore, if you threatened to expose someone's affair to their spouse unless they paid you $1,000,000, the threat could be considered extortion for causing a psychological injury or because it was done for a monetary gain. This is extortion even if you did not know how to contact their spouse. Generally, a claim of exto1tion cannot be based on a threat to do an act which a person has a lawful right to do, but **you may not threaten to undertake an otherwise legal act for your own pecuniary advantage.** An attorney that repeatedly engages in conduct considered extortion can be a violation of the Florida RICO Act, pursuant to section 772.04, Florida Statutes.

*Id.*

52. The Florida Bar Rules, explicitly detailed to Shanee L. Hinson and The Florida Bar, provide as follows:

> The facts demonstrate that this bar complaint was written by Mr. J.B. Harris as part of his continued efforts at extortion. As pointed out in the many prior filings, these documented and repeated, upon repeated patterns violate the following rules of professional conduct as promulgated by the Florida Supreme Court:
>
> A lawyer must not threaten opposing parties with sanctions, **disciplinary complaints,** criminal charges, or additional litigation to gain a tactical advantage. *See* Florida Supreme Court, Professionalism Expectations: Expectation 3.18; and Rules Regulatingthe Florida Bar: Rule 4-3.4(g).
>
> A lawyer must not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter. *See* Florida Supreme Court, RulesRegulating the Florida Bar: Rule 4-3.4(g).
>
> A lawyer must not present, participate in presenting, or threaten to

present **disciplinary charges** under these rules solely to obtain an advantage in a civil matter. *See* Florida Supreme Court, Rules Regulating the Florida Bar: Rule 4-3.4(h). 4

To opposing parties and their counsel, a lawyer should act with **fairness, integrity, and civility,** not only in court, but also **in all written and oral communications.** (Oath of Admission)

Candor and civility must be used in all oral and written communications.(Professionalism Expectations: Expectation 2.2)

**A lawyer must avoid disparaging personal remarks** or acrimony toward opposing parties, counsel, third parties or the court. (Professionalism Expectations: Expectation 2.3). **A lawyer should be civil and courteous in all situations, both professional and personal, and avoid conduct that is degrading to the legal profession.** R. Regulating Fla. Bar 3-4.3. 5

**A lawyer's communications in connection with the practice of law,** including communications on social media, **must not disparage another's character or competence** or be used to inappropriately influence or contact others. (Professionalism Expectations: Expectation 2.5); *see* R. Regulating Fla. Bar 4-8.4(d).

**A lawyer must not criticize or denigrate opposing parties,** witnesses, or the court **to clients, media, or members of the public.** (Professionalism Expectations: Expectation 4.20); see R. Regulating Fla. Bar 4-8.2(a) and 4-8.4(d)).

Under rule 4-1.2(d), "**A lawyer shall not counsel a client to engage, or assist a client, in conduct the lawyer knows or reasonably should know is criminal or fraudulent.**" *See* Florida Bar Ethics Opinion 75-19.

It is also a bar violation to offer evidence that the lawyer knows to be false and should disclose that the evidence is false to the tribunal. Rule 4-3.3 (b).

It is indisputable that Mr. J.B. Harris authored and prepared the entire bar complaint and is using Mrs. Peggy Harris, who never read the Bar

Complaint, as a front and tool for his own extortionate and denigrating agendas, and criminal enterprise.

In that instance, he has violated Rule 4-3.3(a)(1), (2), and (4), which require candor toward the tribunal, and has made a false statement, and has failed to correct or disclose a false statement of material fact or offered evidence that the lawyer knows to be false. In addition, Mr. J.B. Harris must report and disclose that he authored this fraudulent Peggy Harris Bar Complaint.

*Id.*

53. Shanee L. Hinson, and The Florida Bar were provided the following cases showing that the actions of J.B. Harris were violating Florida Bar Rules:

Lawyer disciplined for sending disparaging emails to opposing counsel, calling him a liar, and making improper outbursts directed toward opposing counsel during the litigation. *The Florida Bar v. Norkil1,* 132 So.3d 77 (2013)). *See also The Florida Bar v. Abramson,* 3 So.3d 964 (2009); *The Florida Bar v. Buckle,* 771 So.2d 113 (Fla. 2000); *The Florida Bar v. Sayler,* 721 So. 2d 1152 (Fla. 1998); *The Florida Bar v. Ratiner,* 46 So.3d 35 (Fla. 2010). Lawyer disciplined for sending a letter to a court-appointed provisional director of corporation in which he improperly threatened to file suit against provisional director and accused the provisional director of being involved in a conspiracy. *The Florida Bar v. Norkin,* 132 So. 3d 77 (2013); *See also The Florida Bar v. Abramson,* 3 So. 3d 964 (Fla. 2009). "The First Amendment does not protect those who make harassing or threatening remarks about the judiciary or opposing counsel. Under Rule of Professional Conduct 4-8.4(d), lawyers are required to refrain from knowingly disparaging or humiliating other lawyers." *The Florida Bar v. Sayler,* 721 So.2d 1152, 1155 (Fla. 1998).

*Id.*

54. Shanee L. Hinson and The Florida Bar were provided the exact emails, the Florida Bar Rule violations and the criminal extortion, perjury, and Florida Bar

Rule violations, in writing with emails and documents attached, on June 11, 2018, June 25, 2018, July 13, 2018, August 7, 2018, August 22, 2018, August 28, 20198, and March 18, 2021. *Id.*

55. In furtherance of the conspiracy with J.B. Harris, Peggy Harris, Kimberly Butler Poling, Dana Hall and Sandra Fulup in fraud, extortion, perjury and Bar Rule violations, when Shanee L. Hinson and The Florida Bar were confronted with knowledge of the criminal extortion, perjury, and Bar Rule violations, the Florida Bar through Shanee L. Hinson, outside of the scope of her official capacity, repeatedly lies[7] to the Court and states under oath as follows:

> **Dr. Howard**: I'm . . . talking about **a history of documented [Bar] violations which I have [provided], which you received showing extortion, threats, derogatory comments and extensive perjury that you're aware of**, that you decided [not] to go forward with -- in this case, regardless. That's what I'm referring to, his history of perjury.
>
> **Shanee Hinson**: Mr. Howard, okay. I just want to stop you because you said that I am aware of. **I am aware of no such thing**, so I just wanted to make that clear.
>
> **Dr. Howard**: Yes, you are. They're **attached to your exhibits** so you are aware of those things.
>
> **Shanee Hinson**: **I'm aware of no such violations**, is what I'm clarifying.
>
> **Dr. Howard**: **And I'm clarifying that you are, in writing. You've received written and sworn statements that are perjurious,**

---

[7] When the evidence supports use of the term "lies", it is appropriate to use the term "lies." *Murphy v. International Robotic Systems, Inc.*, 766 So.2d 1010 (Fla. 2000).

> **complete perjury, under oath by both Mr. [JB] Harris, by Peggy Harris, and they are detailed with documents attached to Shanee Hinson and the Florida Bar**. **The Florida Bar has been fully aware of his perjury, fully aware of his Bar violations**, yet you're going forward with this, and that's why you're not calling him as a witness because you know how dirty he is.
>
> **Shanee Hinson**: Mr. Howard, let me clarify again, **I am aware of no Bar violations**.
>
> *Id.*

56. In addition to conspiring to further criminal extortion, criminal perjury, and fraud, as part of Shanee L. Hinson and The Florida Bar's conspiracy and criminal enterprise with J.B. Harris, Peggy Harris, Kimberly Butler Poling, Dana Hall and Sandra Fulup, Shanee L. Hinson and The Florida Bar outside of the scope of their official capacity, violated the following Bar Rules:

> (1) "known" "substantial" dishonesty, untrustworthiness and fitness as a lawyer and not informing the appropriate professional authority after numerous and repeated information of criminal, fraudulent and Rule of Professional Conduct violations;
>
> (2) knowingly and intentionally making a false statement of fact three times or more to the Court; and
>
> (3) failing to disclose a material fact and as a result assisting a criminal or fraudulent act upon the Florida Bar and the Court
>
> **RULE 4-3.3 CANDOR TOWARD THE TRIBUNAL**
>
> **(a) False Evidence; Duty to Disclose.** A lawyer **shall not knowingly**:

(1) **make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;**
(2) **fail to disclose a material fact** to a tribunal **when disclosure is necessary to avoid assisting a criminal or fraudulent act** by the client;
(3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or
(4) offer evidence that the lawyer knows to be false. **A lawyer may not offer testimony that the lawyer knows to be false** in the form of a narrative unless so ordered by the tribunal. **If a lawyer**, the lawyer's client, or a witness called by the lawyer has offered material evidence and the **lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures including, if necessary, disclosure to the tribunal.** A lawyer may refuse to offer evidence that the lawyer reasonably believes is false.

## RULE 4-8.3 REPORTING PROFESSIONAL MISCONDUCT

**(a) Reporting Misconduct of Other Lawyers.** A lawyer who **knows**[8] **that another lawyer has committed a violation of the Rules of Professional Conduct** that **raises a substantial question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer** in other respects **must**[9] inform the appropriate professional authority.

**(b) Reporting Misconduct of Judges.** A lawyer who knows that a judge has committed a violation of applicable rules of judicial conduct that raises a substantial question as to the judge's fitness for office must inform the appropriate authority.

---

[8] In Chapter 4, Rules Regulating Professional Conduct, definitions, it states that: "Knowingly," "known," or **"knows" denotes actual knowledge of the fact in question**. A person's **knowledge may be inferred from circumstances.**

[9] The Scope of the Rules of Professional Conduct as detailed in Chapter 4, specifically states that: "They should be interpreted with reference to the purposes of legal representation and of the law itself. Some of the rules are **imperatives,** cast in the terms of "**must**," "must not," or "may not."

The Comment section of Rule 4-8.1(a), states that the "term "substantial" refers to the seriousness of the possible offense and not the quantum of evidence of which the lawyer is aware."[10]

**RULE 4-8.4 MISCONDUCT**

A lawyer shall not:

**(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist** or induce **another to do so**, or do so through the acts of another;

**(b)** commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects;

**(c) engage in conduct involving dishonesty**, fraud, **deceit, or misrepresentation**, except that it shall not be professional misconduct for a lawyer for a criminal law enforcement agency or regulatory

[10] Chapter 4, Rules Regulating Professional Conduct, Scope of Rule states that:

> Failure to comply with an obligation or prohibition imposed by a rule is a basis for invoking the disciplinary process. The rules presuppose that disciplinary assessment of a lawyer's conduct will be made on the basis of the facts and circumstances as they existed at the time of the conduct in question in recognition of the fact that a lawyer often has to act upon uncertain or incomplete evidence of the situation. Moreover, the rules presuppose that whether discipline should be imposed for a violation, and the severity of a sanction, depend on all the circumstances, such as **the willfulness** and **seriousness of the violation**, extenuating factors, and whether there have been previous violations.

In Chapter 4, Rules Regulating Professional Conduct, definitions, it states that: "'Fraud' or 'fraudulent' denotes conduct having a purpose to deceive and not merely negligent misrepresentation or failure to apprise another of relevant information."

> agency to advise others about or to supervise another in an undercover investigation, unless prohibited by law or rule, and it shall not be professional misconduct for a lawyer employed in a capacity other than as a lawyer by a criminal law enforcement agency or regulatory agency to participate in an undercover investigation, unless prohibited by law or rule;
>
> **(d) engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly**, or through callous indifference, disparage, humiliate, or discriminate against litigants, jurors, witnesses, court personnel, or other lawyers on any basis, including, but not limited to, on account of race, ethnicity, gender, religion, national origin, disability, marital status, sexual orientation, age, socioeconomic status, employment, or physical characteristic;
>
> *Id.*

57. The Florida Bar was involved in using illegal testimony of an accountant as a fact witness as to the intent and meaning of a contract between two parties, as part of its criminal extortion conspiracy, which activities are outside the scope of their official capacity. *Id.*

58. As part of J.B. Harris' conspiracy and ongoing pattern and enterprise with the Florida Bar to extort DR. HOWARD, J.B. Harris with coordination and approval of the Florida Bar, filed an Accounting Rule violation Complaint against DR. HOWARD'S expert accountant, John Harvard. John Harvard's accounting exposed the flaws in the Florida Bar's accounting. *Id.* Notwithstanding the importance of John Harvard's accounting to the Jason Hall loan, J.B. Harris had no interest in John Harvard's accounting, as he has no factual involvement with Jason

Hall, other than to further his extortion and theft scheme to attack and take fees and case interests from Dr. Howard. *Id.* Disbarment of Dr. Howard is J.B. Harris' stated goal, after receiving over $320,000 in monthly salary payments and bonus funds through April of 2019, so that he can steal future fees of $ millions. *Id.*

59. Continuing this ongoing pattern and criminal enterprise extortion model of Professional Liability complaints, J.B. Harris has been rewarded by the Florida Bar, the Referee, and the Florida Supreme Court for this criminal perjury, fraud and extortion funds through April of 2019, and paid and future fees of $ millions.

60. The Florida Bar and the state Court Referee were provided the following evidence of the criminal conspiracy, fraud, and violations of Bar Rule, and the involvement of The Florida Bar accountant in violating his Accounting Rules and statutes as part of the enterprise and conspiracy and which actions are outside the scope of their official capacity:

## I. DOCUMENTATION OF SECTION 455.227, FLORIDA STATUTE VIOLATIONS

Mr. Roy Jeter is practicing beyond the scope permitted by law and performing expert opinions that Mr. Jeter is not competent to perform, filing a report with opinions and accounting errors that the licensee knows he is not competent to provide, is making misleading and untrue representations, as well as aiding, assisting and advising an unlicensed entity contrary to the rules of the board of accountancy. Consider the following:

Jeter March 27, 2018 Report Exhibit A

John Harvard October 30, 2020 Report Exhibit B

In sworn testimony, Mr. Jeter states, without ever talking to or knowing any witness to the facts, as follows:

Q. Okay. So it's your position that it's fairly obvious that, because Mr. Howard did not provide you with the written options that he discussed with his client, that he didn't give him the options, and that because he didn't do that, he somehow deceived his client? That's the position?
A. I think the fact that Dr. Howard created these records is evidence of a deception.

Jeter Dep. at 116:12-25; 117 (1-4).

In his audit report, Mr. Jeter provides expert testimony that he is not qualified nor competent to provide, making misleading representations concerning a deceased individual and the deceased's sworn written directives, when he never met the person nor was involved in the creation of the sworn documents. He violated these standards while assisting and advising an unlicensed entity contrary to the rules of the Board of Accountancy.

For instance, Mr. Jeter chose to disregard payments Dr. Howard paid or fees earned on behalf of the deceased Mr. Hall. Exhibit G of Mr. Jeter's report represents total payments of $148,145.60 and acknowledges the payments or fees earned, yet he deems them unallowed based solely at his discretion and his interpretation of a contract without discussing the contract terms with any party, or having a court determine the contract terms. There is no rule of accounting that permits this.

There were a few other nonexclusive examples of Mr. Jeter's expert accounting conclusions of Mr. Howard's intent that are not supported by facts, and that he is not qualified to render opinions on, in his advising an unlicensed entity contrary to the rules of the Board of Accountancy. A couple of examples are as follows:

1. Page 3 of Jeter report "The **respondent deceived Jason Hall** into believing the only way interest could be earned on the settlement funds was by giving the settlement funds to the respondent to use at the respondent's discretion."

There is no evidence that supports Mr. Jeter's claimed expert opinion, and he is not skilled nor qualified as an accountant to provide expert intent opinions on parties that he has never met on a person that deceased many years earlier. Especially when the only living fact witness verifies the opposite and there is no documentation to support the opinion.

2. Page 3 of Jeter report "The respondent's actions were for his personal benefit."

There is no evidence that this was done to benefit respondent, and in fact, the sworn testimony is that this was done solely for the deceased Jason Hall, for his benefit. Mr. Jeter has no factual nor expert basis to make this accounting statement. Especially when the only living fact witness verifies the opposite and there is no documentation to support the opinion.

3. Page 3 of Jeter report "The respondent deceived Jason Hall into signing a letter that allowed the respondent to use Jason Hall's settlement funds for respondent's benefit."

There is no evidence that this was done to benefit respondent, and in fact, the sworn testimony is that this was done solely for the deceased Jason Hall, for his benefit. Mr. Jeter has no factual nor expert basis to make this accounting statement. Especially when the only living fact witness verifies the opposite and there is no documentation to support the opinion.

4. Page 6 of Jeter report the heading used **"False Accounting for Loan from Settlement Funds"**

The word false is based on no factual evidence, and Mr. Jeter is not qualified to render an expert opinion on intent of an individual, especially when he was not a fact witness and never met any party to the events, and testifies contrary to the only fact witness.

5. Page 7 of the Jeter report **"The respondent falsely** reported the repayment of the loan principle and incorrectly calculated interest amount in the 2016 accounting."

Again, without any factual basis and not ever meeting any witness, Mr. Jeter issues an opinion of false reporting that he is not qualified to render. Documenting his violation of accounting standards, and improperly aiding an unlicensed agency, contrary to the evidence of $148,150.60 paid on loan principle within months of the loan agreement, as found in Exhibit G of his report, Mr. Jeter does not permit known and documented payments on the loan when there was no interest charge available as the loan was only a month or two old.

Mr. Jeter claims, as a non-fact witness accountant, that "it is fairly obvious" that any records Dr. Howard provided were "evidence of deception." Jeter Dep. At 116:12-25; 117:1-4; that Jason Hall was "on drugs" and "not in his right faculties," therefore enabling Dr. Howard to steer Jason Hall to direct Dr. Howard to deposit settlement funds into a non-trust account. Jeter Dep. at 108:11-13. This factual interpretation is not the prerogative of the accountant, without a factual basis. Those with factual involvement with Jason Hall are the only witnesses that can testify as to Jason Hall's condition in the Summer of 2008, and the only witness to that is Dr. Howard. Mr. Jeter goes on to interpret a contract between two other parties, without any expertise in legal contract interpretations, not discussing the contract terms with any party to the contract, without any court declaring the intent and meaning of the contract terms, and without any action filed by any party to interpret the contract. The bias and suppositions of Mr. Jeter, not part of his expertise, nor capacity as a witness, in assisting and advising an unlicensed agency, is a violation of the Florida Board of Accountancy Rules.

Mr. Jeter admits that he never met or spoke with Dr. Howard or the decedent. "Q You have never met with Mr. Howard, have you? A No. Q And you never spoke to Mr. Howard on the phone have you? A. No." (Trial Transcript, p. 618). Mr. Jeter admits that he never discussed the directive letter of the deceased client with the deceased client. "And never discussed this letter with Mr. Hall, correct? A No." (Trial Transcript, p. 623).

Mr. Jeter denies the written and sworn instructions of the deceased client and interprets them as "nonsense" in violation of Board of Accountancy Rules.

Question: So is it your position that it's fairly obvious that because Mr. Howard did not provide you with a copy -- did not provide you

with a copy with the written options that he discussed with his client that he did not give him the options and that because he didn't do that he somehow deceived his client? That's the position?
Answer: I think the fact that Dr. Howard created these records is evidence of a deception. The Exhibit A-1, for example, I mean, I think that itself is evidence of deception.
Q And you read Exhibit A-1 to your report, which is the July 15th letter, which is a signed document not only by Mr. Howard but a document that's signed and notarized by Mr. Hall, correct, sir?
A Yes.
Q And this document says: This document is provided in order to comply with professional standards and to verify that you have identified and directed that various funds from Summit as a result of your Workers' Compensation settlement received by this firm are non-refundable, non-client funds that are to be deposited at this firm's discretion for distribution. You did not perform your audit based upon that language, correct?
A I did not perform my audit based on what?
Q Based upon that language.
A That line uses nonsense words, so how can I -- your question doesn't make any sense to me at all.
Q Okay, is it my question that doesn't make sense, or you feel, like you stated, these are nonsense words, so you didn't consider it in the performance of your duties as an auditor of the Florida Bar?
A You are asking me if I treated nonsense as if it was a legitimate statement. I don't know what to say to that.
Q Okay, so it's nonsense to you that a client, an individual, who you never met, could direct his attorney to handle funds in a certain way, is that true, sir?
A Well, I have to ask you for definitions. What is a non-client fund? Why would a settlement that belongs to Jason Hall be non-refundable? I mean, you have to define some things for me, because I've never seen these terms before.

(Trial Transcript, pp. 628-631). John Harvard did a comprehensive, item by item documentation of the accounting and rendered an accounting report consistent with accounting standards, and qualified his opinion based on the documents received, not based on his opinions. Exhibit B.

## II. VIOLATIONS OF SECTION 455.227, FLORIDA STATUTES

Section 455.227, Fla. Stat., provides as follows:

> (1) The following acts shall constitute grounds for which the disciplinary actions specified in subsection (2) may be taken:
> (a) Making misleading, deceptive, or fraudulent representations in or related to the practice of the licensee's profession.
> . . .
> (j) Aiding, assisting, procuring, employing, or advising any unlicensed person or entity to practice a profession contrary to this chapter, the chapter regulating the profession, or the rules of the department or the board.
> . . .
> (l) Making or filing a report which the licensee knows to be false, intentionally or negligently failing to file a report or record required by state or federal law, or willfully impeding or obstructing another person to do so. Such reports or records shall include only those that are signed in the capacity of a licensee.
> (o) Practicing or offering to practice beyond the scope permitted by law or accepting and performing professional responsibilities the licensee knows, or has reason to know, the licensee is not competent to perform.
>
> Mr. Jeter is misleading the court and the public, and the unlicensed entity, contrary to the rules regulating accountants, as to his competence to render factual opinions as an accountant as to intent and knowledge of the intent of a deceased person and a person he has never met, with signed and sworn documents that are contrary to his opinions. His report is negligent at the very least, his testimony is outside of his scope of knowledge or expertise, and he is performing professional responsibilities that he knows, or has reason to know, he is not competent to perform.
>
> *Id.*

61. J.B. Harris is continuing in his pattern and enterprise of misconduct and is seeking out more perjurious, extortionate, and fraudulent Florida Bar complaints

to file in his extortionate efforts and collusion with the Florida Bar, and even today advertises his scheme, claiming that he has expertise in:

> assisting clients and others to prepare and **file Bar complaints** against unscrupulous attorneys for violations of the Rules Regulating the Florida Bar. Such unethical practices include stealing a client's money held in trust, abandoning a client in the middle of a case, charging a client advance costs under contingency fee contracts, charging exorbitant fees, over-billing hourly rates, setting a case without a client's consent, failing to appear at hearings, and by allowing law office staff to practice law without a license, to name a few.

*Id.*

62. J.B. Harris does knowingly and intentionally submit false statements under oath by the Bar complainant(s) to create these allegations, and alleged most of these same allegations, such as false claims of charging client advance costs under contingency fee contract, allowing law office staff to practice law without a license, abandoning a client in the middle of a case, and failing to appear at hearings, against DR. HOWARD.

63. The Florida Bar then conspires with J.B. Harris in a scheme to validate under color and authority of law and The Florida Supreme Court, these knowing and intentionally false statements under oath, which are outside the jurisdiction and authority of The Florida Bar, as criminal scheme are not within any jurisdiction and authority of The Florida Bar nor The Florida Supreme Court.[11] The state Court

---

[11] The Referee and attorney for the Florida Bar, both of whom are members of the Florida Bar, were each provided written verification under oath by Peggy Harris of

Referee knowing in writing and documentation of the both the enterprise and the criminal conduct of J.B. Harris, Peggy Harris, Kimberly Butler Poling, Dana Hall and Sandra Fulup, found that the Florida Bar did not follow their own procedures, coordinated with J.B. Harris and his fraud and extortion and has been part of fostering and assisting in the extortion of DR. HOWARD, with his ruling that the Bar Complaints were not accurate.

64. The state Court Referee was confronted in writing with this evidence of criminal extortion, criminal perjury, fraud, conspiracy and enterprise by Shanee L. Hinson and The Florida Bar, and the numerous Bar Rule and Accounting Rule and statute violations, which actions are outside the scope of their official capacity, as well as his not the following Judicial Cannon 1 and 3 standards, as follows:

**Canon 1**

---

the criminal enterprise, criminal extortion, criminal perjury and fraud as done and submitted to the Florida Bar by attorney J.B. Harris. The Referee and Florida Bar acknowledged the same during the proceedings yet did nothing to report this criminal conduct to authorities nor submit a Bar Complaint concerning the same. This violates Rule 4-8.3(a), Reporting Misconduct of Other Lawyers. "**A lawyer who knows that another lawyer has committed a violation** of the Rules of Professional Conduct [which a criminal violation is more severe] that raises a substantial question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects **must inform the appropriate professional authority**." These actions also violated rule 4-3.3(a). These were knowing "lies" under penalty of perjury to the Florida Bar and Court perpetrated to extort Dr. Howard. Consistent with the criminal enterprise and criminal conspiracy, neither Shanee L. Hinson nor The Florida Bar did nothing and instead knowingly and intentionally participated in perpetrating the criminal enterprise.

**A Judge Shall Uphold the Integrity And Independence of the Judiciary**

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.

**COMMENTARY**

Deference to the judgments and rulings of courts depends upon public confidence in the integrity and independence of judges. The integrity and independence of judges depend in turn upon their acting without fear or favor. Although judges should be independent, they must comply with the law, including the provisions of this Code. Public confidence in the impartiality of the judiciary is maintained by the adherence of each judge to this responsibility. Conversely, violation of this Code diminishes public confidence in the judiciary and thereby does injury to the system of government under law.

**Cannon 3**

**A Judge Shall Perform the Duties of Judicial Office Impartially and Diligently**

A. Judicial Duties in General.

The judicial duties of a judge take precedence over all the judge's other activities. The judge's judicial duties include all the duties of the judge's office prescribed by law. In the performance of these duties, the specific standards set forth in the following sections apply.

. . .

D. Disciplinary Responsibilities.

(1) A judge who receives information or has actual knowledge that substantial likelihood exists that another judge has committed a violation of this Code shall take appropriate action.

(2) **A judge who receives information or has actual knowledge that substantial likelihood exists that a lawyer has committed a violation of the Rules Regulating The Florida Bar shall take appropriate action.**

## Commentary

Canon 3D. Appropriate action may include direct communication with the judge or lawyer who has committed the violation, other direct action if available, or reporting the violation to the appropriate authority or other agency. If the conduct is minor, the Canon allows a judge to address the problem solely by direct communication with the offender. **A judge having knowledge**, however, that another judge has committed a violation of this Code that raises a substantial question as to that other judge's fitness for office **or has knowledge that a lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, is required under this Canon to inform the appropriate authority.** While worded differently, this Code provision has the identical purpose as the related Model Code provisions.

***Judicial Ethics Advisory Committee***
**Opinion Number: 2019-14**
**Date of Issue: April 10, 2019**

**ISSUES**

Whether the inquiring judge has a duty to report an attorney to The Florida Bar in circumstances where representations made to the court by the attorney during a judicial proceeding were known by the inquiring judge to be false.

**ANSWER:**

In the circumstances presented, Canon 3D(2) requires the inquiring judge to report the attorney for misconduct to The Florida Bar.

**FACTS**

A judge has inquired whether there is an ethical obligation under the Code of Judicial Conduct to report an attorney for misconduct to The Florida Bar based on the following facts. The inquiring judge was presiding over probation violation proceedings in which defense counsel, mid-way through a series of hearings, insisted that the client/defendant did not speak or understand English; could not proceed without the assistance of an interpreter; and could not have willfully violated the applicable probationary conditions because the defendant never understood those obligations as a result of the alleged

language issue. The inquiring judge knows the lawyer's representations are false. Specifically, the inquiring judge knows, based on record evidence, that the lawyer's client/defendant previously acknowledged in open court that the client speaks English well enough to be comfortable conducting court matters in English, the defendant always spoke English with probation officers without apparent difficulty, the client never requested a translator before, and the lawyer knew when making the contrary allegations that the client/defendant speaks and understands English.

The inquiring judge is concerned that the lawyer's breach of his duty of candor to the tribunal may have been so egregious as to call into question his honesty and trustworthiness as a lawyer.

**DISCUSSION**

The response to this inquiry is governed by Canon 3D(2) of the Code of Judicial Conduct which provides as follows:

A judge who receives information or has actual knowledge that substantial likelihood exists that a lawyer has committed a violation of the Rules Regulating The Florida Bar shall take appropriate action.

As this Committee has previously noted: "All Florida judges are, first and foremost, attorneys and members of The Florida Bar. As such, Florida judges, just like every other Florida attorney, have an obligation to maintain the integrity of the legal profession and to report to The Florida Bar any professional misconduct of a fellow attorney." Fla. JEAC Op. 98-21.

This Committee has also previously stated that before making a report to The Florida Bar, the inquiring judge should "first make a determination as to whether a substantial likelihood exists that the lawyer in question violated the Rules of Professional Conduct." Fla. JEAC Op. 97-17. The judge is required to reach a "reasoned determination" of whether a lawyer has committed a violation of the Rules Regulating The Florida Bar. Id. Should the judge reach that conclusion, the judge would then be obligated to inform the Bar. *Id.*[1]

Essentially, the inquiring judge asks what is the "appropriate action" to be taken in the circumstances presented. Although the Code does

not specify what the term "appropriate action" entails in a particular circumstance, the Commentary to Canon 3D guides this Commission's response:

Appropriate action may include direct communication with the judge or lawyer who has committed the violation, other direct action if available, or reporting the violation to the appropriate authority or other agency. **If the conduct is minor, the Canon allows a judge to address the problem solely by direct communication with the offender. A judge having knowledge, however,** that another judge has committed a violation of this Code that raises a substantial question as to that other judge's fitness for office or has knowledge **that a lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, is required under this Canon to inform the appropriate authority.** [12]While worded differently, this Code provision has the

---

[12] In JEAC Opinion Number 2005-16, with less severe perjury, with no extortion or fraud involved, the Judicial Ethics Advisory Committee found as follows:

**FACTS**

The inquiring judge is presiding over a negligence action. Attached to the plaintiff's answers to the defendant's propounded interrogatories was a separate page containing the plaintiff's signature, underneath a jurat clause indicating that the plaintiff "after being first duly sworn . . . deposes and states that he has executed the foregoing answers to interrogatories, and that they are true and correct to the best of his knowledge and belief." A notary's certificate followed.

At a hearing held after the service of the plaintiff's answers to interrogatories, the plaintiff's counsel represented that he and the plaintiff generally discussed the interrogatories, during an office conference. The plaintiff's counsel directed a notary in his law office to notarize the plaintiff's signature. However, no answers were prepared or appended to the signature page when the plaintiff signed the signature page. **The plaintiff's counsel further represented at the hearing that the plaintiff's answers to the interrogatories were prepared several months after the plaintiff signed the signature**

identical purpose as the related Model Code provisions. (Emphasis added.)

---

**page** and the plaintiff's signature was notarized.

The inquiring judge believes that there is a substantial likelihood that the plaintiff's attorney has violated the Rules Regulating The Florida Bar, including Rules 4-1.2(d) and 4-3.4(b), in that the notary prepared a false certificate in violation of section 117.105, Florida Statutes (2005); and that the client has offered false testimony under oath, in violation of Chapter 837, Florida Statutes.

**DISCUSSION**
**The inquiring judge has an obligation to report the plaintiff's attorney to The Florida Bar** if the inquiring judge believes that this is the appropriate action to take under the circumstances presented. Canon 3(D)(2) of the Florida Code of Judicial Conduct directs that a a judge who receives information or has actual knowledge that a substantial likelihood exists that a lawyer has committed a violation of the Rules Regulating The Florida Bar shall take appropriate action. The Florida Supreme Court has stated:
**All Florida judges are, first and foremost, attorneys and members of The Florida Bar. As such, Florida judges, just like every other Florida attorney, have an obligation to maintain the integrity of the legal profession and report to The Florida Bar any professional misconduct of a fellow attorney**.
5-H Corp. v. Padovano, 708 So. 2d 244, 246 (Fla. 1997) (citations omitted). **This Canon is mandatory**, not hortatory. *See also* JEAC Ops. 98-21 and 97-17.

The parties to the pending action should be notified on the record through counsel that the inquiring judge referred the plaintiff's attorney to The Florida Bar. The Commentary to Canon 3E(1) of the Florida Code of Judicial Conduct states "that a judge should disclose on the record information that the judge believes the parties or their attorneys might consider relevant to the question of disqualification, even if the judge believes there is not a real basis for disqualification." Referring the plaintiff's attorney to The Florida Bar is an issue that the parties might consider relevant to the question of disqualification.

Significantly, **"[t]he Supreme Court does not view violations of the Bar Rule governing misconduct involving dishonesty, fraud, deceit, or misrepresentation as minor**." *The Florida Bar v. Gilbert*, 246 So. 3d 196, 203 (Fla.2018).[2]

**The facts indicate that the inquiring judge "has actual knowledge that substantial likelihood exists that a lawyer has committed a violation of the Rules Regulating The Florida Bar," that such violation is not minor in nature, and that the lawyer's conduct raises a significant question as to the lawyer's honesty, integrity, trustworthiness, or fitness for the practice of law. Accordingly, the Committee advises that Canon 3D(2) requires the inquiring judge to report the attorney to The Florida Bar.**[3]

**REFERENCES**
Fla. Code Jud. Conduct, Canon 3D(2).
Fla. Code Jud. Conduct, Canon 3D(2), Commentary.
Fla. JEAC Ops. 01-06, 98-21 and 97-17.
*The Florida Bar v. Gilbert*, 246 So. 3d 196, 203 (Fla. 2018).
*Holt v. Sheehan*, 122 So. 3d 970, 976 (Fla. 2d DCA 2013), note 2.
*Favel v. Haughey*, 727 So. 2d 1033, 1036 (Fla. 5th DCA 1999).

While a judge is not required by the Code of Judicial Conduct to report a criminal violation, but as an attorney and member of the public has a moral, statutory and other non-code obligations to report criminal conduct, namely the integrity of the attorneys and legal proceedings before the Florida Bar, and sanctioning extortion, perjury, and fraud upon members of society and the legal community. *See* Judicial Ethics Advisory Opinion 2012-11.

Honorable Judge Paul failed to comply with his mandatory obligation to report Florida Bar attorney Shanee Hinson and Florida Attorney JB Harris to the Florida Bar for known and serious Florida Bar Rule violations.

*Id.*

65. When the state Court Referee was confronted with the conspiracy of Shanee L. Hinson, The Florida Bar, J.B. Harris, Peggy Harris, Kimberly Butler Poling, Dana Hall and Sandra Fulup, with the criminal extortion, criminal perjury, fraud, and extensive Bar Rule and Accounting Rule and statute violations enterprise by Shanee L. Hinson, The Florida Bar, J.B. Harris, Peggy Harris, Kimberly Butler Poling, Dana Hall and Sandra Fulup, to do unlawful acts and lawful acts by unlawful means, the state Court referee recused himself.[13]

---

[13] The Florida Supreme Court and its Florida Bar are engaged with and supporting this criminal enterprise. They are intentionally participating to the despotic growth of its Janus-faced [viewing technicality in one direction but avoiding the criminality to be viewed in the opposite direction] Leviathan [Thomas Hobbes term for the power and authority to harmonize civil society under a power but leads to abuse of power and authority] cage of technical norms [a norm-based Leviathan can be just as perverse and damaging in its abuse of power as the norms can blind society to the abuse—civil rights movement is a prime example]. In this case the Florida Bar and Referee focused on morally correct actions by a lawyer, with technical allegations by an enterprise that includes criminal extorter, criminal perjurer, Bar Rule violator were used to accomplish his criminal ends. Conservative post WWII Austrian philosopher, Friedrich von Hayek's raised the concern about the rise of the non-accountable growth of the totalitarian state is taking place in the Florida Bar's use of alleged technical violations to cover up a criminal enterprise criminalities model, and the known exploitation of this Janus-faced Leviathan cage of technical norms.

This Janus-faced Leviathan cage of technical norms, while colluding in an enterprise of criminal extortion and fraud is perversely participating with routine criminality and extortion by The Florida Bar and its members. Attorney J.B. Harris, Peggy Harris, Kimberly Butler Poling, Dana Hall, and Sandra Fulup's use of the Florida Bar for and enterprise of criminal perjury, criminal fraud and criminal extortion, and extensive Florida Bar Rule and Florida Accounting Rule and statute violations are prime examples. The stench of deep immorality and criminality is to be cleansed by our legal institutions, not perpetrated by them. The

66. When the Florida Supreme Court was confronted with the conspiracy of Shanee L. Hinson, The Florida Bar, J.B. Harris, Peggy Harris, Kimberly Butler Poling, Dana Hall and Sandra Fulup, to engage in criminal extortion, criminal perjury, criminal fraud, and numerous Bar Rule and Accounting Rule and statute violations, solely through the Clerk of the Supreme Court's order without ever reviewing any evidence or briefing, it determined not to accept the Initial Brief nor consider manifest injustice from not reviewing the facts and law, with the pretext of late transcripts as a result of its own court reporter's delays, and without a single Justice reviewing any of the evidence.

67. Shanee L. Hinson has no jurisdiction to: (a) engage in or conspire with criminal conduct, or (b) engage in or conspire with conduct that violates Florida Bar

---

solution is simple and found in federal and State law detailed in this Verified Complaint: (1) Hold J.B. Harris, Peggy Harris, Kimberly Butler Poling, Dana Hall, Sandra Fulup accountable for their criminal extortion, criminal perjury, criminal fraud, Bar Rule violations; and (2) enjoin The Florida Bar and The Florida Supreme Court from sanctioning this criminal enterprise.

This would stop the despotic growth of this Janus-faced Leviathan cage of technical norms perpetrating deep immorality and criminality. This would also publicly expose the despotic growth of this abusive Janus-faced Leviathan cage of technical norms covering criminal enterprise of private actors and The Florida Bar.

Rules, or Florida Accounting Rules and statutes, as these are (c) both unlawful acts and lawful acts by unlawful means.

68. The Florida Bar has no jurisdiction to: (a) engage in or conspire with criminal conduct, or (b) engage in or conspire with conduct that violates Florida Bar Rules, or Florida Accounting Rules and statutes, as these are (c) both unlawful acts and lawful acts by unlawful means.

69. The Florida Supreme Court has no jurisdiction to: (a) engage in or conspire with criminal conduct, (b) engage in or conspire with conduct that violates Florida Bar Rules, or Florida Accounting Rules and statutes, or (c) to use the pretext of transcripts delayed by its own court reporter to deny review of the facts and evidence demonstrating manifest injustice by The Florida Bar and Court Referee, as these are (d) both unlawful acts and lawful acts by unlawful means.

70. Declaratory relief is unavailable since the Clerk of the Supreme Court denied to review the engagement in and conspiring with criminal conduct and violation of Florida Bar Rules and Florida Accounting Rules and statutes; however, the order of the Florida Supreme Court is not yet final and an injunction can be entered.

71. DR. HOWARD seeks prospective relief from The Florida Bar and Florida Supreme Court in enjoining its engagement in and conspiring with criminal enterprise and conduct and Florida Bar Rule and Florida Accounting Rule and statute

violations in the various Bar actions it is engaged in against DR. HOWARD, and the resulting attempt to take his license and resources without reviewing the evidence, criminal conspiracy, Florida Bar and Accounting Rule violations, and bias that led to the ultimate recusal of the Court Referee.

72. The conspiracy jointly engaged in by J.B. Harris, Peggy Harris, Kimberly Butler Poling, Dana Hall, Sandra Fulup, Shanee L. Hinson, The Florida Bar and the Florida Supreme Court, is under color of state law, but outside of their jurisdictional authority, and the private parties involved acted under color of state law and are in a joint conspiracy with the State and its agents to do these unlawful acts and lawful acts by unlawful means; thereby subject to monetary damages and not solely equitable remedies, such as injunction.

## FEDERAL LAW COUNTS

### COUNT I
### (VIOLATION OF DUE PROCESS)

73. DR. HOWARD realleges and incorporates the facts and allegations in paragraphs 1 through 72, as if fully restated herein, and alleges as follows:

74. To prevail in a 42 U.S.C. §1983, DR. HOWARD must show that (1) the offending conduct was committed by a person acting under color of state law; and (2) the conduct deprived DR. HOWARD of rights secured by the Constitution or federal law.

75. DR. HOWARD has a property right in his law license that cannot be taken without due process of law.

76. Defendants engaged in criminal extortion, perjury, fraud, violations of Florida Bar Rules and Accounting Rules and statutes, in conspiracy with Shanee L. Hinson and The Florida Bar, outside the scope of their official capacity, but under the color of state law, to extort money from DR. HOWARD, and to deprive him of his license to practice law without due process of law under the 5th Amendment to the United States Constitution.

77. DR. HOWARD has injuries from the effort to take his law license, the taking of money and future attorney's fees from him, and the harm to his public reputation, without due process of law under the 5th Amendment to the United States Constitution.

78. The actions of Defendants in conspiring to engage in criminal extortion, perjury, fraud, and violations of Florida Bar and Florida Accounting Rules and statutes under color of state law and outside the scope of their official capacity, in violation of due process, proximately caused these injuries to DR. HOWARD.

79. 42 U.S.C. §1983 provides redress for these injuries caused by Defendants.

WHEREFORE DR. HOWARD is entitled to verdict and judgment against the respective Defendants for violation of his due process rights by conspiring to take his law license without due process of law.

**COUNT II**
**(INJUNCTION)**

80. DR. HOWARD realleges and incorporates the facts and allegations in paragraphs 1 through 72, as if fully restated herein, and alleges as follows:

81. Under Rule 65, Federal Rules of Civil Procedure, DR. HOWARD has provided sworn and written evidence of the ongoing enterprise of criminal extortion, criminal perjury, criminal fraud, conspiracy, under color of state law, and outside the jurisdiction and authority of Shanee L. Hinson, The Florida Bar and the Florida Supreme Court as well as private parties, such as J.B. Harris, Peggy Harris, Kimberly Butler Poling, Dana Hall, Sandra Fulup, such that there is a likelihood of success on the merits of the underlying causes of action, namely violation of 42 U.S.C. §1983 and the Fifth Amendment to the United States Constitution, and conspiracy and civil RICO.

82. The loss of DR. HOWARD'S law license by being illegally taken by The Florida Bar and The Florida Supreme Court, as well as his loss of income, fees and investments, is a real and immediate threat of future injury by Defendants, and is irreparable.

83. The balances and equities are in favor of DR. HOWARD, in that he has a significant interest in obtaining the injunction, and the hardships on The Florida Bar and The Florida Supreme Court, and the private party Defendants are none.

84. The injunction is in the public interest in stopping a criminal enterprise, criminal extortion, criminal perjury, criminal fraud and blatant and profuse violations of Florida Bar Rules by J.B. Harris, Peggy Harris, Kimberly Butler Poling, Dana Hall, Sandra Fulup, Shanee L. Hinson, and conspiracy by The Florida Bar, that denigrates the integrity and trust in the Florida judicial system.

85. Failure to issue the injunction against Defendants, including The Florida Bar and the Florida Supreme Court, will result in irreparable injury to DR. HOWARD, namely the permanent loss of his law license, and accomplish the goals of the criminal enterprise and conspiracy scheme.

86. DR. HOWARD has no other remedy to avoid this immediate and irreparable injury and he has exhausted all other legal remedies.

WHEREFORE for the foregoing reasons, DR. HOWARD is entitled to temporarily and permanently enjoin The Florida Supreme Court and The Florida Bar, through its staff and attorney, including Shanee L. Hinson, from engaging in its conspiracy with private actors, J.B. Harris, Peggy Harris, Kimberly Butler Poling, Dana Hall and Sandra Fulop, to commit extortion, perjury, fraud, violations of Florida Bar Rules and Accounting Rules and statutes in an illegal effort to take DR.

HOWARD'S law license without due process of law, and to enjoin the current Florida Bar action filed by J.B. Harris and Kimberly Butler Poling, as part of their extortion scheme.

**COUNT III**
**(CIVIL CONSPIRACY)**

87. DR. HOWARD realleges and incorporates the facts and allegations in paragraphs 1 through 72, as if fully restated herein, and alleges as follows:

88. There is extensive written and sworn competent and substantial evidence with specificity that Defendants have an express and implied agreement to commit an unlawful act or to do a lawful act by unlawful means. This is found in paragraphs 1 through 72 providing extensive written and sworn competent and substantial evidence with specificity that J.B. Harris, Peggy Harris, Kimberly Butler Poling, Dana Hall and Sandra Fulup engaged in criminal extortion, perjury, fraud, and Shanee L. Hinson's express and implied agreement to commit an unlawful act or to do a lawful act by unlawful means in advancing the illegal actions and in lying to the Court concerning these unlawful acts and lawful acts by unlawful means, claiming that she is unaware of these unlawful acts and lawful acts by unlawful means, and The Florida Supreme Court not reviewing the evidence in the face of this manifest injustice, using the pretext of late transcripts by its own court reporter.

89. There is extensive written and sworn competent and substantial evidence with specificity that Defendants have engaged in numerous overt actions in pursuance of the conspiracy as detailed in paragraphs 1 through 45.

90. DR. HOWARD has lost income, law firm, career, and reputation as a result of this civil conspiracy.

WHEREFORE DR. HOWARD is entitled to a judgment and damages against Defendants for their civil conspiracy and the injuries that were proximately caused by their civil conspiracy.

## COUNT IV
## (CIVIL RICO)

91. DR. HOWARD realleges and incorporates the facts and allegations in paragraphs 1 through 72, as if fully restated herein, and alleges as follows:

92. There is extensive written and sworn competent and substantial evidence with specificity that Defendants, J.B. Harris, Peggy Harris, Kimberly Butler Poling, and Shanee L. Hinson, have a multi-year and ongoing pattern and ongoing enterprise with an express and implied agreement to commit an unlawful act or to do a lawful act by unlawful means, and ongoing criminal behavior.

93. The predicate acts Defendants are willful and with actual knowledge of the illegal activities, and have continuous over the past four years, and have taken place within the ten-year period for federal RICO, and will continue as J.B. Harris is seeking to file more Florida Bar actions and is advertising to do the same.

94. This is both a closed-ended scheme and open-ended scheme, in that if DR. HOWARD loses his law license the scheme to steal his money, investments and law license will have been completed and closed-ended scheme, but open-ended in that J.B. Harris and The Florida Bar have an ongoing enterprise to perpetrate the same scheme on others that J.B. Harris will target.

95. This enterprise affects interstate commerce in that the advertisements and funds extend beyond the borders of Florida, and affects individuals, partnerships and corporations, including but not limited to professional associations, individual attorneys, and their clients, and is in the production, distribution, or acquisition of goods and services in interstate commerce.

96. This enterprise is distinct from the culpable person J.B. Harris, and includes The Florida Bar, J.B. Harris, P.A., Peggy Harris, Kimberly Butler Poling, Shanee L. Hinson, Dana Hall and Sandra Filip.

97. J.B. Harris, Peggy Harris, Kimberly Butler Poling, Dana Hall, Sandra Fulup and Shanee L. Hinson are culpable persons, and J.B. Harris and Shanee L. Hinson are the persons generally operating and managing the affairs of the enterprise with the unlawful purpose of intentionally defrauding DR. HOWARD, and in furtherance of their fraudulent scheme Defendants committed multiple related acts of criminal extortion, perjury, fraud, lies to the Court, Bar Rule violations and Accounting Rule and statute violations.

98. The acts set forth in paragraphs 1-72, including criminal extortion, criminal perjury, fraud, lies to the Court, Bar Rule violations, and Accounting Rule and statute violations, constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1962(5).

99. DR. HOWARD is a person under 18 U.S.C. § 1962(c), and holds the legal and beneficial interest in his law license, his law firm, his investments and his right to fees and costs, which he has and will experience concrete injury from injury of predicate and overt acts of the RICO and conspiracy, under 18 U.S.C. § 1962(c) and (d), to his law license, his law firm, and his investments of time and costs, that are proximately caused by Defendants.

100. DR. HOWARD has pled fraud with particularity a required under Federal Rule of Civil Procedure 9(b). This is found in paragraphs 1 through 72 providing extensive written and sworn competent and substantial evidence with specificity that J.B. Harris, Peggy Harris, Kimberly Butler Poling, Dana Hall and Sandra Fulup engaged in and are engaging in criminal extortion, perjury, fraud, and Shanee L. Hinson's express and implied agreement to commit an unlawful act or to do a lawful act by unlawful means in advancing the illegal actions and in lying to the Court concerning these unlawful acts and lawful acts by unlawful means, claiming that she is unaware of these unlawful acts and lawful acts by unlawful means, and the ongoing nature of the enterprise with another fraudulent Bar

complaint drafted by J.B. Harris and submitted by Kimberly Butler Poling, now being pursued by The Florida Bar. There is extensive written and sworn competent and substantial evidence with specificity that Defendants have engaged in numerous overt actions over the years in pursuance of the conspiracy and enterprise as detailed in paragraphs 1 through 72, and such activity is ongoing.

101. As a direct and proximate result of the Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), DR. HOWARD has been injured in his law firm and law license, and his investments and income.

102. DR. HOWARD has lost income, career, and reputation as a result of this civil conspiracy.

WHEREFORE DR. HOWARD is entitled to a judgment and treble damages of the injuries of DR. HOWARD, caused by the Civil RICO of Defendants under 18 U.S.C. § 1962(c).

**FLORIDA LAW COUNTS**

**COUNT V**
**(VIOLATION OF DUE PROCESS)**

103. DR. HOWARD realleges and incorporates the facts and allegations in paragraphs 1 through 72, as if fully restated herein, and alleges as follows:

104. To prevail for a Florida due process violation under Article I, section 9, of the Florida Constitution, DR. HOWARD must show that (1) the offending conduct was committed by a person acting under color of state law; and (2) the

conduct deprived DR. HOWARD of rights secured by the Constitution or Florida or federal law.

105. DR. HOWARD has a constitutionally protected property interest in his law license and the fees and costs from his law practice, and that interest is being deprived for an improper motive and by arbitrary and capricious means.

106. DR. HOWARD has a substantive due process right that protects him from not only unwise and erroneous governmental decisions, but from egregious abuses of governmental power shocking to the judicial conscience.

107. There is no compelling state interest nor any rational basis in permitting criminal extortion, perjury, fraud, conspiracy, and Florida Bar Rule and Accounting Rule and Statute violations by private citizens, nor by The Florida Bar and The Florida Supreme Court.

108. Defendants engaged in criminal extortion, perjury, fraud, violations of Florida Bar Rules and Accounting Rules and statutes, in conspiracy with Shanee L. Hinson and The Florida Bar, outside the scope of their official capacity, but under the color of state law, to extort money from DR. HOWARD, and to deprive him of his license to practice law without due process of law under Article I, section 9 of the Florida Constitution.

109. DR. HOWARD has injuries from the effort to take his law license, the taking of money and future attorney's fees from him, and the harm to his public

reputation, without due process of law under Article I, section 9 of the Florida Constitution.

110. The actions of Defendants in conspiring to engage in criminal extortion, perjury, fraud, and violations of Florida Bar and Florida Accounting Rules and statutes under color of state law and outside the scope of their official capacity, in violation of due process, proximately caused these injuries to DR. HOWARD.

111. Florida law provides redress for these injuries caused by Defendants.

WHEREFORE DR. HOWARD is entitled to verdict and judgment against the respective Defendants for violation of his Florida due process rights by conspiring to take his law license without due process of law.

**COUNT VI**
**(INJUNCTION)**

112. DR. HOWARD realleges and incorporates the facts and allegations in paragraphs 1 through 72, as if fully restated herein, and alleges as follows:

113. Under Florida Rule of Civil Procedure, 1.610, DR. HOWARD has provided sworn and written evidence of the criminal extortion, perjury, fraud, conspiracy, ongoing enterprise under color of state law, and outside the jurisdiction and authority of Shanee L. Hinson, The Florida Bar and the Florida Supreme Court as well as private parties, such as J.B. Harris, Peggy Harris, Kimberly Butler Poling, Dana Hall, Sandra Fulup, such that there is a likelihood of success on the merits of the underlying causes of action, namely violation of 42 U.S.C. §1983 and the Fifth

Amendment to the United States Constitution, violation of Article I, section 9 of the Florida Constitution, conspiracy, civil theft, and civil RICO.

114. The loss of DR. HOWARD'S law license by being illegally taken by The Florida Bar and The Florida Supreme Court, as well as his loss of income, fees and investments, is a real and immediate threat of future injury by Defendants.

115. The balances and equities are in favor of DR. HOWARD, in that he has a significant interest in obtaining the injunction, and the hardships on The Florida Bar and The Florida Supreme Court are none.

116. The injunction is in the public interest in stopping a criminal enterprise, criminal extortion, perjury, fraud and blatant and profuse violations of Florida Bar Rules by J.B. Harris, Peggy Harris, Kimberly Butler Poling, Dana Hall, Sandra Fulup, Shanee L. Hinson, and conspiracy and coercive use of the Florida Bar by and through The Florida Bar, that denigrates the integrity and trust in the Florida judicial system.

117. Failure to issue the injunction against Defendants, including The Florida Bar and the Florida Supreme Court, will result in irreparable injury to DR. HOWARD, namely the permanent loss of his law license, and accomplish the goals of the criminal enterprise and conspiracy scheme.

118. DR. HOWARD has no other remedy to avoid this immediate and irreparable injury and he has exhausted all other legal remedies.

119. No bond is required for the temporary injunction since there is no economic harm or impact to Defendants from entering a temporary injunction, or if any of the Defendants are wrongfully enjoined; moreover, the Verified Complaint and writings from J.B. Harris, document that he has previously threatened physical harm, and no bond shall be required for issuance of a temporary injunction solely to prevent physical injury or abuse of a natural person.

120. Pursuant to Rule 1.610, Florida Rules of Civil Procedure, the Defendants have been given notice of this Verified Complaint and copies of this Verified Complaint have been sent to them via email, and from the specific facts shown by the Verified Complaint, immediate and irreparable injury, loss, or damage will result to the movant before any of the Defendants can be heard in opposition.

121. If any Defendant wishes to dissolve or modify the temporary injunction, they can file a motion and be heard within 5 days after the movant applies for a hearing on the motion.

WHEREFORE for the foregoing reasons, DR. HOWARD is entitled to temporarily and permanently enjoin The Florida Supreme Court and The Florida Bar, through its staff and attorney, including Shanee L. Hinson, from engaging in its conspiracy with private actors, J.B. Harris, Peggy Harris, Kimberly Butler Poling, Dana Hall and Sandra Fulop, to commit extortion, perjury, fraud, violations of Florida Bar Rules and Accounting Rules and statutes in an illegal effort to take DR.

HOWARD'S law license without due process of law, and to enjoin the current Florida Bar action filed by J.B. Harris and Kimberly Butler Poling, as part of their extortion scheme.

**COUNT VII**
**(CIVIL THEFT)**

122. DR. HOWARD realleges and incorporates the facts and allegations in paragraphs 1 through 72, as if fully restated herein, and alleges as follows:

123. Under §772.11, Florida Statutes, a civil theft, in Florida, requires that Defendant (1) knowingly, (2) obtained or used, or endeavored to obtain or use, DR. HOWARD'S property, namely his income, investments and law license with (3) 'felonious intent' (4) either temporarily or permanently to (a) deprive DR. HOWARD of its right to or a benefit from the property or (b) appropriate the property to J.B. Harris and Peggy Harris own use or to the use of any person not entitled to the property.

124. DR. HOWARD in this Verified Complaint has presented clear and convincing evidence found to be credible, precise, and explicit, and a felonious intent by J.B. Harris and Peggy Harris to knowingly obtain or use or endeavor to obtain or use DR. HOWARD'S investments of time and money into tobacco cases, his funds, his law license and law firm.

125. DR. HOWARD will provide a pre-suit demand to the private parties to the civil theft and conspiracy along with a copy of this Verified Complaint upon providing notice to the private parties J.B. Harris and Peggy Harris.

126. There is extensive written and sworn competent and substantial evidence with specificity that the private parties to this Verified Complaint, namely J.B. Harris and Peggy Harris, are engaged in criminal practices that are violations of §§ 812.012-812.037, or § 825.103(1), Florida Statutes. This is found in paragraphs 1 through 72 providing extensive written and sworn competent and substantial evidence with specificity that J.B. Harris and Peggy Harris engaged in criminal extortion, perjury, fraud, and Shanee L. Hinson's express and implied agreement to commit an unlawful act or to do a lawful act by unlawful means in advancing the illegal actions and in lying to the Court concerning these unlawful acts and lawful acts by unlawful means, claiming that she is unaware of these unlawful acts and lawful acts by unlawful means.

127. There is extensive written and sworn competent and substantial evidence with specificity that private Defendants J.B. Harris and Peggy Harris have engaged in numerous overt actions in pursuance of the civil theft as detailed in paragraphs 1 through 72, and that the Defendants in coordination with Shanee L. Hinson, had a particular power of coercion, namely, DR. HOWARD'S bar license and reputation.

128. DR. HOWARD has lost income, career, and reputation as a result of this civil theft, and specifically lost over $4 million in legal fees and over $500,000 in payments to lawyers, paralegals and over $350,000 in payments to J.B. Harris.

WHEREFORE DR. HOWARD is entitled to a judgment and damages against Defendants for their civil theft and the injuries that were proximately caused by the illegal actions of J.B. Harris and Peggy Harris.

## COUNT VIII
## (CIVIL CONSPIRACY)

129. DR. HOWARD realleges and incorporates the facts and allegations in paragraphs 1 through 72, as if fully restated herein, and alleges as follows:

130. A civil conspiracy, in Florida, involves the following elements: (a) a conspiracy between two or more parties; (b) to do an unlawful act or to do a lawful act by unlawful means; (c) the doing of some overt act in pursuance of the conspiracy; and (d) damage to plaintiff as a result of the acts performed pursuant to the conspiracy.

131. There is extensive written and sworn competent and substantial evidence with specificity that Defendants have an express and implied agreement to commit an unlawful act or to do a lawful act by unlawful means. This is found in paragraphs 1 through 72 providing extensive written and sworn competent and substantial evidence with specificity that J.B. Harris, Peggy Harris, Kimberly Butler Poling, Dana Hall and Sandra Fulup engaged in criminal extortion, perjury, fraud,

and Shanee L. Hinson's express and implied agreement to commit an unlawful act or to do a lawful act by unlawful means in advancing the illegal actions and in lying to the Court concerning these unlawful acts and lawful acts by unlawful means, claiming that she is unaware of these unlawful acts and lawful acts by unlawful means, and The Florida Supreme Court not reviewing the evidence in the face of this manifest injustice, using the pretext of late transcripts by its own court reporter.

132. There is extensive written and sworn competent and substantial evidence with specificity that Defendants have engaged in numerous overt actions in pursuance of the conspiracy as detailed in paragraphs 1 through 72, and that the Defendants had a particular power of coercion, namely, DR. HOWARD'S bar license and reputation that Shanee L. Hinson, J.B. Harris were conspiring in combination, that J.B. Harris alone would not possess.

133. DR. HOWARD has lost income, career, and reputation as a result of this civil conspiracy.

WHEREFORE DR. HOWARD is entitled to a judgment and damages against private Defendant J.B. Harris for his civil conspiracy and the injuries that were proximately caused by his civil conspiracy with the private party Defendants and state Defendants.

## COUNT IX
## (CIVIL RICO)

134. DR. HOWARD realleges and incorporates the facts and allegations in paragraphs 1 through 72, as if fully restated herein, and alleges as follows:

135. Florida Civil Rico is found in §§895.05-895.06, Florida Statutes. Florida Civil Rico includes the following definitions:

136. "Enterprise" means any individual, sole proprietorship, partnership, corporation, business trust, union chartered under the laws of this state, or other legal entity, or any unchartered union, association, or group of individuals associated in fact although not a legal entity; and **it includes** illicit as well as licit enterprises and **governmental**, as well as other, entities. § 895.02(5), Florida Statutes.

137. "Pattern of racketeering activity" means engaging in at least two incidents of racketeering conduct that have the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents, provided at least one of such incidents occurred after October 1, 1977, and that the last of such incidents occurred within 5 years after a prior incident of racketeering conduct. § 895.02(7), Florida Statutes.

138. "Racketeering activity" means to commit, to attempt to commit, to conspire to commit, or to solicit, coerce, or intimidate another person to commit: Any crime that is chargeable by petition, indictment, or information under the these provisions of the Florida Statutes, *inter alia*:

(a) crimes of fraudulent practices, false pretenses, and fraud generally under Chapter 817, Florida Statutes;

(b) crimes of perjury under Chapter 837, Florida Statutes;

(c) crimes of extortion under § 836.05, Florida Statutes;

(d) crimes related to obstruction of justice under Chapter 843, Florida Statutes; and

(e) crimes related to racketeering activity under 18 U.S.C. § 1961(1),

139. There is extensive written and sworn competent and substantial evidence with specificity that Defendants, J.B. Harris, Peggy Harris, Kimberly Butler Poling, and Shanee L. Hinson, have a multi-year and ongoing pattern and ongoing enterprise with an express and implied agreement to commit crimes of (a) crimes of fraudulent practices, false pretenses, and fraud generally under Chapter 817, Florida Statutes;

(b) crimes of perjury under Chapter 837, Florida Statutes;

(c) crimes of extortion under § 836.05, Florida Statutes;

(d) crimes related to obstruction of justice under Chapter 843, Florida Statutes; and

(e) crimes related to racketeering activity under 18 U.S.C. § 1961(1),

through unlawful acts or to do a lawful acts by unlawful means, and ongoing criminal behavior.

140. The predicate acts Defendants are willful and with actual knowledge of the illegal activities, and have continuous over the past four years, and have taken place within the five-year period for Florida RICO, and will continue as J.B. Harris is seeking to file more Florida Bar actions and is advertising to do the same.

141. This is both a closed-ended scheme and open-ended scheme, in that if DR. HOWARD loses his law license the scheme to steal his money, investments and law license will have been completed and closed-ended scheme, but open-ended in that J.B. Harris, Kimberly Butler Poling, and The Florida Bar have an ongoing enterprise to perpetrate the same scheme on others that J.B. Harris will target.

142. This enterprise affects interstate commerce in that the advertisements and payment and taking of funds extends beyond the borders of Florida, into the national banking system, and affects individuals, partnerships and corporations, including but not limited to professional associations, individual attorneys, and their clients, and is in the production, distribution, or acquisition of goods and services in interstate commerce.

143. This enterprise is distinct from the culpable person J.B. Harris, and includes The Florida Bar, J.B. Harris, P.A., Peggy Harris, Kimberly Butler Poling, Shanee L. Hinson, Dana Hall and Sandra Filip.

144. J.B. Harris, Peggy Harris, Kimberly Butler Poling, Dana Hall, Sandra Fulup and Shanee L. Hinson are culpable persons, and J.B. Harris and Shanee L.

Hinson are the persons generally operating and managing the affairs of the enterprise with the unlawful purpose of intentionally defrauding DR. HOWARD, and in furtherance of their fraudulent scheme Defendants committed multiple related acts of criminal extortion, perjury, fraud, lies to the Court, Bar Rule violations and Accounting Rule and statute violations.

145. The acts set forth in paragraphs 1-72, including criminal extortion, criminal perjury, fraud, lies to the Court, Bar Rule violations, and Accounting Rule and statute violations, constitute a pattern of racketeering activity pursuant to §§ 895.03(1) and 895.03(3), Florida Statutes,

146. DR. HOWARD is a person under §§ 895.03(1) and 895.03(3), Florida Statutes, and holds the legal and beneficial interest in his law license, his law firm, his investments and his right to fees and costs, which he has and will experience concrete injury from injury of predicate and overt acts of the RICO and conspiracy, under §§ 895.03(1) and 895.03(3), Florida Statutes, to his law license, his law firm, and his investments of time and costs, that are proximately caused by Defendants.

147. DR. HOWARD in this Verified Complaint has pled fraud, perjury, extortion, obstruction of justice, and racketeering enterprise with particularity a required under Florida Rule of Civil Procedure 1.120. This is found in paragraphs 1 through 72 providing extensive written and sworn competent and substantial evidence with specificity that J.B. Harris, Peggy Harris, Kimberly Butler Poling,

Dana Hall and Sandra Fulup engaged in and are engaging in criminal extortion, perjury, fraud, and Shanee L. Hinson's express and implied agreement to commit an unlawful act or to do a lawful act by unlawful means in advancing the illegal actions and in lying to the Court concerning these unlawful acts and lawful acts by unlawful means, claiming that she is unaware of these unlawful acts and lawful acts by unlawful means, and the ongoing nature of the enterprise with another fraudulent Bar complaint drafted by J.B. Harris and submitted by Kimberly Butler Poling, now being pursued by The Florida Bar. There is extensive written and sworn competent and substantial evidence with specificity that Defendants have engaged in numerous overt actions over the years in pursuance of the conspiracy and enterprise as detailed in paragraphs 1 through 72, and such activity is ongoing.

148. As a direct and proximate result of the Defendants' racketeering activities and violations of §§ 895.03(1) and 895.03(3), Florida Statutes, DR. HOWARD has been injured in his law firm and law license, and his investments and income.

149. DR. HOWARD has lost income, career, and reputation as a result of this civil conspiracy.

WHEREFORE DR. HOWARD is entitled to a judgment and treble damages of the injuries of DR. HOWARD, caused by the Civil RICO of Defendants under §§ 895.03(1) and 895.03(3), Florida Statutes.

**WHEREFORE**, DR. HOWARD prays for judgment against the above-named Defendants as follows:

1. For temporary and permanent injunctions under Federal Rule of Civil Procedure 65, against J.B. Harris, Peggy Harris, Kimberly Butler Poling, Dana Hall, Sandra Fulup, Shanee L. Hinson, The Florida Bar and The Florida Supreme Court in their current Bar actions against DR. HOWARD;

2. For temporary and permanent injunctions under Florida Rule of Civil Procedure 1.610, against J.B. Harris, Peggy Harris, Kimberly Butler Poling, Dana Hall, Sandra Fulup, Shanee L. Hinson, The Florida Bar and The Florida Supreme Court in their current Bar actions against DR. HOWARD;

3. For general damages permitted under 42 U.S.C. §1983 against the private actors J.B. Harris, Peggy Harris, Kimberly Butler Poling, Dana Hall and Sandra Fulup for economic loss from their extortion, perjury, fraud, and public notoriety and due process violations in violation of the Fifth Amendment to the United States Constitution, and loss of income proximately caused by their illegal actions;

4. For general damages permitted under Article I, §9 of The Florida Constitution against the private actors J.B. Harris, Peggy Harris, Kimberly Butler Poling, Dana Hall and Sandra Fulup for economic loss from their extortion, perjury, fraud, and public notoriety and due process violations in violation of the due process guaranteed

under Article I, §9 of The Florida Constitution, and loss of income proximately caused by their illegal actions;

5. For civil conspiracy and Civil RICO damages against the private actors for the injuries that they have caused to DR. HOWARD, including treble damages as permitted by 18 U.S.C. § 1962(c);

6. For civil conspiracy and Civil RICO damages against the private actors for the injuries that they have caused to DR. HOWARD, including treble damages as permitted by Chapter 812.035(7), Florida Statutes, and under §§ 895.03(1) and 895.03(3), Florida Statutes;

7. For civil theft damages against the private actors J.B. Harris, Peggy Harris, Dana Hall and Sandra Fulup, for the injuries that they have caused to DR. HOWARD, including treble damages as permitted by § 772.11, §§ 812.012-812.037, or § 825.103(1), Florida Statutes;

8. For special damages, as permitted by law;

8. For trial by jury;

9. For reasonable attorney's fees and costs of suit as authorized under 42 U.S.C. § 1988, 18 U.S.C. § 1962(c), §772.11, §§ 895.03(1) and 895.03(3), Florida Statutes; and

10. For interest at the statutory rate;

For such other and further relief as the Court deems just and proper.

FURTHER AFFIANT SAYETH NOT

PHILLIP TIMOTHY HOWARD

STATE OF FLORIDA
COUNTY OF LEON

Subscribed and sworn/affirmed to before me this 4th day of March 2022, by PHILLIP TIMOTHY HOWARD.

ALEXIS SMITH
Commission # HH 027309
Expires August 3, 2024
Bonded Thru Troy Fain Insurance 800-385-7019

NOTARY PUBLIC
My Commission Expires: August 3, 2024

Respectfully submitted on this 4th Day of March 2022.

/s/ Phillip Tim Howard
Florida Bar No. 0655325
3122 Mahan Drive
Tallahassee, Florida 32308
Telephone: (850) 510-6021
e-mail: tim@howardjustice.com

# ATTACHMENT I

HOWARD JUSTICE

RECEIVED
2018 JUN 11 3:35
STATE ATTORNEY

RECEIVED
JUN 11 2018
THE FLORIDA BAR

**Howard & Associates**
**Attorneys at Law, P.A.**
*Dr. Tim Howard, J.D., Ph.D., Senior Partner**
*Florida Supreme Court Certified Mediator*

Tallahassee, Florida Office:
1415 East Piedmont Drive, Suite 5
Tallahassee, Florida 32308
Ph: (850) 298-4455
Fax: (850) 216-2537
tim@howardjustice.com

Jacksonville, Florida Office:
444 E. Duval Street
Jacksonville, Florida 32207
Ph: (904) 446-9817
Fax: (904) 446-9825
www.howardjustice.com

June 11, 2018

**VIA HAND-DELIVERY**

Shanee L. Hinson, Bar Counsel
651 East Jefferson Street
Tallahassee, Florida 32399-2300

Jack Campbell, State Attorney
301 South Monroe Street, Suite 475
Tallahassee, Florida 32399-2300

Re: J.B. Harris v. Phillip Timothy Howard, TFB File No. 2018-00,342(2A); Kim Poling v. Phillip Timothy Howard, TFB File No. 2018-00,343(2A); Bar Complaint Against J.B. Harris and Law Firms Supporting his Violations of Rules 3-4.2, 4-3.4(g) and (h), 4-8.2 (a) and (d), and 4-8.4(d); Violation of Section 836.05, Florida Statutes, Crime of Extortion Including Potential Co-Conspirators.

Dear Bar Counsel Hinson, and State Attorney Campbell:

In response to the above-referenced complaints, please consider the following. Despite written threats and attacks from Mr. Harris, Florida Bar Number 495034, without lawful justification for his own pecuniary advantage, who is working directly and indirectly through a potential co-conspirator, Ms. Poling, *see* pages 3-4 and footnote 2, *supra*, we have attempted to amicably work together and have been paying for Mr. Harris' office, health insurance, salaries, since January of 2017, and have done our best to operate in good faith with Mr. Harris.

Mr. Howard has paid and is currently paying Mr. Harris' office, salary and health insurance costs from January 2017 through June of 2018. This will now end on June 30, 2018. Despite best efforts to assist Mr. Harris and having solved the underlying cash flow interruption, and resolving all financial matters with Mr. Harris, without lawful justification for pecuniary advantage, Mr. Harris continues to attack, threaten and extort.1

1 Mr. Harris and his co-counsel will benefit in the $ millions if Mr. Howard loses his fee percentage and is limited to

*Admitted to practice in Florida, the District of Columbia, Northern, Middle, and Southern United States District Courts of Florida, the United States Court of Appeals for the 11th Circuit, and the United States Supreme Court. Ph.D, Northeastern University, Law, Policy & Society. Former Visiting Health Law, Bioethics, and Human Rights Scholar and Constitutional Law, Media & Politics and Judicial Process Instructor at Boston University. Former Director of and Professor with Northeastern University's Law & Policy Doctorate Program. President of Cambridge Graduate University International.

Under Mr. Harris' initial Joint Prosecution and Fee Sharing Agreement, dated January 20, 2017, with Mr. Howard, Mr. Harris received $245,210.13 in salary and health insurance benefits, plus had all office costs, malpractice insurance and paralegal costs covered, plus was paid $49,759.82 for Sommers trial costs, plus received a $25,000 sign-on bonus, plus a $15,000 bonus for 2017, and another $15,000 loan from the firm, for a total compensation and benefits to him personally of $349,969.95.

Even though $11,583.98 was paid to Mr. Harris on December 28, 2017, on January 29, 2018, Mr. Harris threatened a Bar complaint and criminal and civil action without lawful justification for his own pecuniary advantage, in order to receive $2,000 that day, which indeed was wired that day, stating: "**If you don't throw me another miniscule $2,000 lifeline TODAY, I'm filing a bar complaint against you and your lap dog Ankur. I've called to make an appointment to meet with the Bar tomorrow in person**. I'm driving to Tallahassee at first light. I don't care how sick I am." Email from Mr. Harris attached as Exhibit A (emphasis added).

Mr. Harris continues his threats on February 1, 2018, now demanding $80,228, in order to avoid a Bar complaint against Mr. Howard, stating: "**I've prepared a bar complaint against you which I will file tomorrow if I'm not paid in full by then**." This threat was backed up by Annie Sebastian, attorney with the Diaz law firm, without lawful justification and for their own pecuniary advantage, stating, "I will file suit to strip you of your percentage in the Bryant case and **forward the suit to the Florida Bar** along with a complaint for your failure to meet your obligations to this firm and the client." February 1, 2018 email attached as Exhibit B (emphasis added).

On February 7, 2018, Mr. Harris, again threatens, with incorrect information, and without lawful justification for his own pecuniary advantage, blindly supporting another extortion scheme by a representative of BWCI Trust for a fraudulent and corrupt lender recommended by former advisors lacking skills and having ill intent, stating,

> Tim, I am now aware of the predicament that you are in and that **your house of cards is rapidly collapsing**. . . . If you haven't signed the [corrupt extortionate] agreement by the close of business today necessary to release the insurance premium payment [BWCI $345,000 to a fraudulent lender], plus the lifeline agreement with Lance [BWCI representative in false agreement and participant in fraudulent scheme], **I will proceed with the Diaz firm in aligning ourselves with 1 other creditor, to force you into bankruptcy.**

February 7, 2018 email attached as Exhibit C (emphasis added). Note use of the term,"**house of cards**" as used in Kim Poling's June 4, 2018 Rebuttal, page 4.

---

quantum meruit. Mr. Harris is tracking the extortion of Mr. Don Reinhard, who is in prison and has a similar one year extortion scheme in using the Florida Bar, TFB No. 2018-00,265(2A), in trying to claim over $1 million, and Ms. Sandra Fulup, TFB No. 2016—00682(2A), who from a deceased client for 2008 activities and a file she has the originals of, has also tried to use the Florida Bar to extort over $300,000, when nothing is owed. These violate section 836.05, Florida Statues. *See* footnote 5, *supra*.

All delays under the agreement were caught up in full, including a $20,000 payment on February 9, 2018, and another $22,000 payment on February 12, 2018 (which included a $15,000 bonus). Just two weeks later, Mr. Harris, not knowing the collateral structure of the lender, on February 26, 2018, without lawful justification and for his own pecuniary advantage, threatens criminal action to gain advantage in a civil contract issue that Mr. Howard did not know existed, stating:

> Accordingly, you have until this Friday at 12:00 pm March 2, 2018, to release every case belonging to me on the UCC-1's referenced herein, or on those of any other creditor of H&A, or **I am proceeding straight to the FBI** with this information. **And I will not sleep until you and Mr. Mehta are brought to justice and placed behind bars.**
>
> Finally, since you terminated our agreement without cause, I reserve all rights I have against you and Mr. Mehta, including without limitation claims for fraud in the inducement, fraud, conspiracy to commit fraud, intentional infliction of emotional distress and punitive damages.

February 26, 2018 email from Mr. Harris is attached as Exhibit D (emphasis added).

During the month of March, Mr. Howard diligently worked with Mr. Harris and a legitimate lender to obtain funding for the prosecution of Engle cases and to secure payments to Mr. Harris and his interests. March 26, 2018 email to Mr. Harris documenting the work done to secure Mr. Harris' interests. Email and texts attached as Cumulative Exhibit E.

Due to Mr. Harris' mode of communicating with the lender, the lender informed Mr. Harris on April 3, 2018, as follows: "From now on, please do not call, text or email any Virage staff. It is detrimental to our process and not helpful to Tim." April 3, 2018 email attached as Cumulative Exhibit E. In response, Mr. Harris writes, on April 5, 2018, stating:

> Marty, (1) before I **sue Virage, you, Ed and Tim for fraud and conspiracy to commit fraud**, for:
>
> (1) intentionally and maliciously liening with your fraudulent UCC-1 my tobacco cases in which Tim had no interest in, nor had been retained by my client to represent; . . . .
>
> (2) before I also file **a complaint against you and your co-conspirators with the SEC for the same**, alerting the SEC how you have breached your fiduciary duties to Virage and its shareholders; and
>
> (3) before **I file a Bar complaint against you for all of the above**;
>
> (4) you may want to man up and call me to discuss a settlement of my claims tomorrow, first thing. Otherwise, my weekend will be very busy.

April 5, 2018 email from Mr. Harris, attached as Exhibit F (emphasis added). Despite the attacks, threats, and no factual or legal basis for the attacks and threats, the parties entered into a Confidential Settlement and Release Agreement, providing Mr. Harris with $21,000 a month salary, office expenses, and health insurance, plus $50,000 on April 6, 2018. This amounts to an additional over $100,000 for Mr. Harris since early April, for a combined $450,000 over the past 16 months.

In fact, on March 30, 2018, just days earlier, Mr. Howard personally sent Mr. Harris $350 out of the $361 that he had available, to help Mr. Harris get through the weekend. March 30, 2018 text attached hereto as Exhibit G. Notwithstanding the compassion, diligence, repeated and continued efforts for goodness and care to advance Mr. Harris' security and interests, he has not changed his approach.

Consistent with Mr. Harris' threats of criminal prosecution, forced bankruptcy, and Bar complaints, stated on January 29, 2018, February 1, 2018, February 26, 2018, April 5, 2018, Mr. Harris is now engaged in daily threats and attacks without legal justification for pecuniary gain. The evidence indicates that Mr. Harris is conspiring with, **ghost writing and directly and indirectly assisting** in the Kim Poling Bar Complaint and Rebuttal, including but not limited to providing text information from his email [Rebuttal of Kimberly Poling to Dr. Tim Howard's Response, Exhibit E], and a copy of a transcript that only Defendants have received and upon information and belief was provided to Mr. Harris, who gave it to Ms. Poling [Rebuttal of Kimberly Poling to Dr. Tim Howard's Response, Exhibit H], as well as language, while adopting her Reply. *See* JB Harris and Kim Poling Rebuttal filed on June 4, 2018. Note, the June 4, 2018 Reply provided no new substantive information, only further incendiary and derogatory language consistent with Mr. Harris' language in the other documents.2

Mr. Harris most recent threat of criminal and civil actions, and Bar complaint, all without legal justification and for his own pecuniary advantage, as part of his extortion took place on June 6, 2018, concerning a former client of Mr. Harris, that took the initiative to contact this firm due to the abuse that they state that Mr. Harris and his team had inflicted upon them, and dropped them as counsel. *See* June 6, 2018 email from Mr. Harris to clients, counsel and Mr. Howard. Mr. Harris states:

> Tim, if you think you are having trouble with the Bar's investigation of your

2 The language of the June 4, 2018 Rebuttal of Kimberly Poling tracks the extortionate and denigrating language of Mr. Harris: "**poster child for intentionally turning a blind eye** towards legal and ethical improprieties" . . .; "**blatant lies** made directly to Bar counsel . . . to shift the blame to his **consigliere and right-hand man**" . . . ; "pleas of **ignorance, bewilderment, mystification, along with his sleight-of-hand**" . . ., "Howard's **three biggest lies**" . . . ; "an **incestuous relationship**" . . . ; "Mehta Consulting was established **to illicitly . . . manipulate** H&A's books; (iv) issue **fraudulent** paychecks that were returned for insufficient funds; and (v) engage in other **nefarious activities**"; "**pure nonsense**"; "tip of a massive iceberg, the architecture of which was in place long before I was hired by the firm"; "**outrageous lie, tenuously holding up Howard's house of cards**," ; "blatant lie"; "equity partner"; "**damning**"; "larger **scheme**"; "insulating Howard from liability in the even the **firm went belly-up**, which is exactly what happened in this instance"; "**firm running off the rails**"; "the third lie"; "**delusional**"; "**Howard is a dangerous lawyer. He should be summarily disbarred**. Indeed, given the allegations of misuse and misappropriation of client funds, I'm surprised the Bar has not taken swifter action"; "**three material lies**"; "Howard's **duplicitous behavior that cries for sanctions.**"

practices, BWCI Penson Trustees Limited, Ted Doukas, and everyone else who is still after you, **you are about to walk into a shit storm** if you steal the Goulds from me as my clients.

I will lien the file for cost and fees, sue you for tortious interference and unpaid contributions to costs, **fraud and everything else I can think of. I will also amend my complaint with the Bar** and file a complaint against Neil [paralegal in office] as well.

June 6, 2018 email from Mr. Harris to Mr. Howard, client, co-counsel and lender, attached as Exhibit H (emphasis added).

On June 7, 2018, not knowing the facts, Mr. Harris continues to threaten Bar complaints, stating to a paralegal with the firm, "**I'm am left with no choice but to file a Bar complaint against you.**" June 7, 2018 text to paralegal attached as Exhibit I (emphasis added). On that same date, Mr. Harris confirms to the client that "We've had our differences but have worked through them. I was VERY hurt to learn about what may be going on behind my back. We really need to speak. **I won't yell or scream**. Promise." June 7, 2018 text to his former client attached as Exhibit I (emphasis added). The client does not want to be yelled at or abused any further and this is why they switched counsel.

Also on June 7, 2018, Mr. Harris sends another text to the client disparaging counsel without legal justification and for his own pecuniary advantage, continuing his use of the extortion model of complaints to gain advantage in a civil dispute. He first implies that the Ph.D. from Northeastern University, awarded in 2005, is not legitimate. He next uses the Bar process that he coordinated with Ms. Poling for filing to continue his extortion model of practicing law to intimidate the client. He asserts that his Bar complaint is legitimate and factually based. He then falsely asserts that there is an investigation by the "Feds" of the law firm. A threat he first asserted in February of 2018. Finally, he asserts that Ankur Mehta doesn't have a **Doctorate,** which is false since he has a Juris Doctorate, and uses the UPL that he coordinated with Ms. Poling to file, as another extortion tool to address a client desire to not be abused. June 7, 2018 text to his former client attached as Exhibit J.

On June 8, 2018, Mr. Harris continues his disparagement, without legal justification for his own pecuniary advantage, of myself and former paralegal with a Juris Doctorate as "**frauds and con artists**" in an email to the Bar counsel concerning an honorary doctorate award coordinated by the representative of Cambridge Graduate University International in Lagos Nigeria, not myself nor Mr. Mehta, and a link to an article by an opposition political party journalist attacking Prince Buruji Kashamu, then Chairman of the People's Democratic Party in Nigeria, that received the award in October of 2014. June 8, 2018 email and photo attached as Exhibit K (emphasis added). The aim of this is to continue without legal justification the threats and extortionate model of practicing law.

Mr. Harris was provided Notice of Termination as Counsel by Clients and Notice of Request to Cease and Desist Contacting Jacqueline Sacs, Wendy Gould and Barbara Ulrich on June 8, 2018, due to the **clients reaching out to the firm and not wanting to be abused**, as well as informing

Mr. Harris that the firm also has a **"right to remain free from harassing and intimidating tactics, and will protect that right."** Notice to Mr. Harris, Mr. Diaz, Mr. Santisteban, and Mr. Eaton, attached as Exhibit L (emphasis added).

Mr. Harris' pattern of threats, intimidation, extortion and revealing confidential client and firm information without legal justification violates the Law Firm Non-Disclosure and Confidentiality Agreement enforced for the protection of clients and the law firm. *See* Notice provided on June 8, 2018, Exhibit M.

Continuing this pattern, on June 8, 2018, Mr. Harris, without legal justification for his own pecuniary advantage, unleashes his threats, extortion and intimidation efforts with a series of derogatory comments, such as **coward, scumbag, blasphemous, sociopathic charade, days a lawyer are numbered**, and his continued use of the Bar as an extortion device, stating:

> Tim, you breached the NDA by going behind my back to steal my clients and slandering them to me. You're a **first rate coward and a scumbag**. All your talk about **Jesus is blasphemous garbage**. Trust me, I will be pursing my remedies forthwith. You want a war. You are going to get one. Hope you paid Leonard his fees up front.
>
> Did you inform the clients that (i) you are the target of an SEC investigation; (ii) a Bar investigation; (iii) have never tried a tobacco case; (iv) wouldn't know how to if your life depended on it; (v) you don't have a pot to piss in; and (vi) can't afford to litigate a tobacco case. I doubt it. Accordingly, your actions are retaliatory for my having filed a Bar complaint against you.
>
> Trust me, these clients know about tobacco litigation than you ever will. I can also assure you they will rip you to shreds once they see through your **sociopathic charade**.
>
> By the way, the Bar is starting to debrief your former employees. Seems like you've been on the Bar's radar for quite sometime. **Your days as a lawyer are numbered. I'm sure your family will be so proud once they find out**. Enjoy your weekend.

June 8, 2018 email attached hereto as Exhibit N (emphasis added). In response to Mr. Harris' written disparagement and threats without legal justification, his former client writes as follows:

> Dear Dr. Howard:
>
> With all that has transpired over the last few days, I wanted to put in writing my thoughts and opinion concerning JB Harris. I would like for this email to be included in the packet you will be sending to the Florida Bar.
>
> My sisters and I have known JB Harris for many years, as he was the counsel who used to represent us. I want the Florida Bar to know that in no way, did you

"steal" the Gould sisters. Nor did you go behind his back to take over our business. The truth of the matter is very simple. The three of us sought you out.

I also want the Florida Bar to know that JB Harris is one of the most despicable and abusive men walking around on 2 legs. He spoke to all 3 of the Gould sisters in such nasty and demeaning ways. He has said to us on more than one occasion, that "we are to do whatever the _ _ ck he says. If not I will cut you 3 loose and just move on to the next person on my list." Unless it was something he wanted, he always spoke in very rude words to us.

Because of how verbally abusive he is, his threats to each of us and the constant bullying of his clients, the Gould sisters finally fired JB Harris. I can only hope some serious actions will be taken against this lawyer before he does the same to whoever is "next on his list".

Thank you very much.

Barbara Ulrich
Daughter of Stanley Gould

June 10, 2018 email from Barbara Ulrich, Daughter of Stanley Gould, attached as Exhibit O.

These documented and repeated patterns violate the following rules of professional conduct as promulgated by the Florida Supreme Court:

> A lawyer must not threaten opposing parties with sanctions, disciplinary complaints, criminal charges, or additional litigation to gain a tactical advantage. *See* Florida Supreme Court, Professionalism Expectations: Expectation 3.18; and Rules Regulating the Florida Bar: Rule 4-3.4(g).
>
> A lawyer must not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter. *See* Florida Supreme Court, Rules Regulating the Florida Bar: Rule 4-3.4(g).
>
> A lawyer must not present, participate in presenting, or threaten to present disciplinary charges under these rules solely to obtain an advantage in a civil matter. *See* Florida Supreme Court, Rules Regulating the Florida Bar: Rule 4-3.4(h). [3]

---

3 Lawyer disciplined for sending a threatening letter to opposing counsel. *The Florida Bar v. Sayler*, 721 So.2d 1152 (Fla. 1998). A criminal defense lawyer violated Rules 4-4.4(a) and 4-8.4(d) for sending a victim of a crime an objectively humiliating and intimidating letter designed to cause her to abandon her criminal complaint. *The Florida Bar v. Buckle*, 771 So. 2d 1131 ; *see also The Florida Bar v. Ratiner*, 46 So. 3d 35 (Fla. 2010). A lawyer should abstain from conduct that diverts the fact-finder's attention from the relevant facts or causes a fact-finder to make a legally impermissible decision. (Professionalism Expectations: Expectation 5.8)

> To opposing parties and their counsel, a lawyer should act with fairness, integrity, and civility, not only in court, but also in all written and oral communications. (Oath of Admission)
>
> Candor and civility must be used in all oral and written communications. (Professionalism Expectations: Expectation 2.2)
>
> A lawyer must avoid disparaging personal remarks or acrimony toward opposing parties, counsel, third parties or the court. (Professionalism Expectations: Expectation 2.3). A lawyer should be civil and courteous in all situations, both professional and personal, and avoid conduct that is degrading to the legal profession. R. Regulating Fla. Bar 3-4.3. 4
>
> A lawyer's communications in connection with the practice of law, including communications on social media, must not disparage another's character or competence or be used to inappropriately influence or contact others. (Professionalism Expectations: Expectation 2.5); *see* R. Regulating Fla. Bar 4-8.4(d).
>
> A lawyer must not criticize or denigrate opposing parties, witnesses, or the court to clients, media, or members of the public. (Professionalism Expectations: Expectation 4.20); see R. Regulating Fla. Bar 4-8.2(a) and 4-8.4(d)).

These actions without legal justification, for his own pecuniary advantage, and actual malice by Mr. Harris and the firms that will benefit from and support his extortion, are a violation of section 836.05, Florida Statutes crimes against extortion for maliciously threatening.5

---

4 Lawyer disciplined for sending disparaging emails to opposing counsel, calling him a liar, and making improper outbursts directed toward opposing counsel during the litigation. *The Florida Bar v. Norkin*, 132 So.3d 77 (2013)). *See also The Florida Bar v. Abramson*, 3 So.3d 964 (2009); *The Florida Bar v. Buckle*, 771 So.2d 1131 (Fla. 2000) ; *The Florida Bar v. Sayler*, 721 So. 2d 1152 (Fla. 1998); *The Florida Bar v. Ratiner*, 46 So.3d 35 (Fla. 2010). Lawyer disciplined for sending a letter to a court-appointed provisional director of corporation in which he improperly threatened to file suit against provisional director and accused the provisional director of being involved in a conspiracy. *The Florida Bar v. Norkin*, 132 So. 3d 77 (2013); *See also The Florida Bar v. Abramson*, 3 So. 3d 964 (Fla. 2009). "The First Amendment does not protect those who make harassing or threatening remarks about the judiciary or opposing counsel. Under Rule of Professional Conduct 4-8.4(d), lawyers are required to refrain from knowingly disparaging or humiliating other lawyers." *The Florida Bar v. Sayler*, 721 So.2d 1152, 1155 (Fla. 1998).

5 Whoever, either verbally or by a written or printed communication, maliciously threatens to accuse another of any crime or offense, or by such communication maliciously threatens an injury to the person, property or reputation of another, or maliciously threatens to expose another to disgrace, or to expose any secret affecting another, or to impute any deformity or lack of chastity to another, with intent thereby to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will, shall be guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. Under Florida Statute 836.05, the crime of Extortion is committed when a person maliciously threatens to: Accuse another of any crime or offense; Injure the person, property or reputation of another; Expose another to disgrace; Expose any secret affecting another; or Impute any deformity or lack of chastity to another, with the intent to: Extort money or any pecuniary advantage; or Compel any person to do any act or refrain from doing any act against their will. **Actual Malice versus Legal Malice.** Although it is a subtle distinction, under the Extortion statute, the prosecutor is required to prove the threat was committed with Actual

We did not want to have to report these violations, as this firm in its 23 years of existence, has never reported any fellow member of the Bar to the Bar or to law enforcement and has always tried to resolve disputes and issues amicably and professionally with good faith. Regrettably and with deep disappointment and reluctance, in this instance, the consistent and now almost daily invectives, direct threats and documented Bar and criminal violations leave no option.

Sincerely Yours,

(Phillip) Tim Howard, J.D., Ph.D.

---

Malice, which means "means ill will, hatred, spite, evil intent." This is in contrast to what is known as Legal Malice, which only requires that an act be committed intentionally and without any lawful justification. **Penalties for Extortion.** The crime of Extortion is a Second-Degree Felony in Florida and is punishable by up to 15 years in prison, 15 years of probation, and a $10,000 fine. *Calamia v. State*, 125 So. 3d 1007 (Fla. 5th DCA 2013) (Actual malice is the standard. "A threat is malicious if it is made intentionally and without any lawful justification."); *McKee v. State*, 715 So.2d 101 (Fla. 5th DCA 1998) (Conviction upheld for threats that defendant will destroy you, destroy your business, accusing of drug use, and threatening to make accusations to a federal agency.). "Maliciously" means wrongfully, intentionally, and without legal justification or excuse. A threat is "malicious" for purposes of extortion statute if it is made intentionally and without any lawful justification. It is not necessary that the person accused of extortion have the ability to carry the threat out. Threats to cause mental or psychological injuries are generally prohibited under extortion statute. Therefore, if you threatened to expose someone's affair to their spouse unless they paid you $1,000,000, the threat could be considered extortion for causing a psychological injury or because it was done for a monetary gain. This is extortion even if you did not know how to contact their spouse. Generally, a claim of extortion cannot be based on a threat to do an act which a person has a lawful right to do, but **you may not threaten to undertake an otherwise legal act for your own pecuniary advantage**. An attorney that repeatedly engages in conduct considered extortion can be a violation of the Florida RICO Act, pursuant to section 772.04, Florida Statutes.

# EXHIBIT A

Main Office: (850) 298-4455
Fax: (850) 216-2537

**Jacksonville Office:**
Riverplace Tower, Suite 2101
1301 Riverplace Blvd.
Jacksonville, FL 32207

Sent from my iPhone. Please forgive any misspellings.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

On Jan 29, 2018, at 3:54 PM, Tim Howard <tim@howardjustice.com> wrote:

JB,

It is all valid. I wrote you a text addressing this and payment. $2,000 for you has been sent. This will all work out and we are adjusting management so that we will not be in this dynamic again.

*Tim Howard*

Professor Tim Howard, J.D., Ph.D.
Howard & Associates, P.A.

HOWARD JUSTICE

Tallahassee, Florida Office:
3522 Thomasville Road, Ste. 500
Tallahassee, FL 32309
(850) 298-4455 (o)
(850 216-2537 (f)
Law Firm Website: www.howardjustice.com
tim@howardjustice.com

Fort Lauderdale, Florida Office:
101 NE Third Ave., Ste. 1500
Fort Lauderdale, Florida 33301
(954) 332-3633 (o)

Jacksonville, Florida Office:
Riverplace Tower, Suite 2101
1301 Riverplace Blvd.
Jacksonville, FL 32207

Cambridge, Massachusetts Office:
8 Museum Way, Suite 2407
Cambridge, MA 02141
(617) 373-6076

President, Cambridge Graduate University International
One Broad Street, 14th Floor
Cambridge, Massachusetts 02142
(877) 645-6225 (6GLOBAL)
www.cguiedu.com
president@cguglobal.net
https://www.facebook.com/tim.howard.752861

PLEASE NOTE: This message, including any attachments, may include privileged or confidential information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited. If you are not the intended recipient, please notify the sender by replying to this message and delete it from your system.

On Mon, Jan 29, 2018 at 3:12 PM, JB Harris <jb@howardjustice.com> wrote:

Tim, I'm running a 103 fever. I have chills and body aches. I should probably be in the hospital. Because of you I cannot get my antibiotics, Tamiflu and other prescriptions.

If you don't throw me another minuscule $2000 lifeline TODAY, I'm filing a bar complaint against you and your lap dog Ankur.

I've called to make an appointment to meet with the Bar tomorrow in person. I'm driving to Tallahassee at first light. I don't care how sick I am.

I lived up to my side of our deal. Moved to Ft. Lauderdale. Brought all my cases. Cut you into Bryant, Sommers and all the Broin cases you can handle. And on and on

You, on the other hand, fraudulently used my cases as collateral for a $14 million loan from Virage, without my knowledge or consent. While intentionally refusing to pay me as agreed, thereby breaching and terminating our contract.
And then kept me and my colleagues on ice with your useless excuses and hollow apologies. All while you're holed up in a swanky gated community. I've had it.

Btw, your story about insurance sounds like another pile of your BS. What kind of insurance? Default insurance? Mortgage insurance? Property & casualty? Health? Life? Who is the insurance agent. I want to speak to him myself. It's all nonsense, as usual.

If we're not paid in full by Friday, rest assured Rick and I will drop the hammer on you.

**GOVERN YOURSELF ACCORDINGLY .**

**Ft. Laudedale Office:**
J.B. Harris, P.A.
Howard & Associates, P.A.
101 NE Third Ave., Ste. 1500
Fort Lauderdale, Florida 33301
Cell: (786) 303-8333
Office: (954) 332-3633
em: jb@howardjustice.com
web: www.howardjustice.com

**Tallahassee Office:**
2120 Killarney Way, Ste. 125
Tallahassee, Florida 32309
Main Office: (850) 298-4455
Fax: (850) 216-2537

**Jacksonville Office:**
Riverplace Tower, Suite 2101
1301 Riverplace Blvd.
Jacksonville, FL 32207

Sent from my iPhone. Please forgive any misspellings.

Gmail

Tim Howard <tim@howardjustice.com>

## Re: Written Notice of Default

1 message

**JB Harris** <jb@howardjustice.com> Thu, Dec 28, 2017 at 11:42 AM
To: Tim Howard <tim@howardjustice.com>
Cc: "Miguel A. Maspons" <mmaspons@maspons.com>

Here's the total:

$7692 payroll
$3483 insurance (4 months)
$ 408.98 out of pocket expenses
$11,583.98 total

Wiring instructions attached.

On Thu, Dec 28, 2017 at 10:42 AM, Tim Howard <tim@howardjustice.com> wrote:

JB, I am ready to wire.

*Tim Howard*

Professor Tim Howard, J.D., Ph.D.
Howard & Associates, P.A.

HOWARD JUSTICE

Defending Liberty Pursuing Justice

Tallahassee, Florida Office:
3522 Thomasville Road, Ste. 500
Tallahassee, FL 32309
(850) 298-4455 (o)
(850 216-2537 (f)
Law Firm Website: www.howardjustice.com
tim@howardjustice.com

Fort Lauderdale, Florida Office:
101 NE Third Ave., Ste. 1500
Fort Lauderdale, Florida 33301
(954) 332-3633 (o)

Jacksonville, Florida Office:
Riverplace Tower, Suite 2101

HOWARD JUSTICE

**Tallahassee Office:**
2120 Killarney Way, Ste. 125
Tallahassee, Florida 32309
Main Office: (850) 298-4455
Fax: (850) 216-2537

**Fort Lauderdale Office:**
101 NE Third Ave., Ste. 1500
Fort Lauderdale, Florida 33301
Office: (954) 332-3633

**Jacksonville Office:**
Riverplace Tower, Suite 2101
1301 Riverplace Blvd.
Jacksonville, FL 32207

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

# EXHIBIT B

Gmail

Tim Howard <tim@howardjustice.com>

## Re:

1 message

**JB Harris** <jb@howardjustice.com> Tue, Jan 16, 2018 at 3:32 PM
To: Tim Howard <tim@howardjustice.com>
Cc: Brenda Murphy <Brenda@howardjustice.com>, "Miguel A. Maspons" <mmaspons@maspons.com>

thx -- some relief!

On Tue, Jan 16, 2018 at 3:26 PM, Tim Howard <tim@howardjustice.com> wrote:

JB,

We are all experiencing this pain. I was able to make a deposit this afternoon and can wire the first $2,000.00 to you in the morning. I am working on more short-term capital, but want to make sure you know that you are a priority.

*Tim Howard*

Professor Tim Howard, J.D., Ph.D.
Howard & Associates, P.A.

HOWARD JUSTICE

JUSTICE

Defending Liberty Pursuing Justice

Tallahassee, Florida Office:
3522 Thomasville Road, Ste. 500
Tallahassee, FL 32309
(850) 298-4455 (o)
(850 216-2537 (f)
Law Firm Website: www.howardjustice.com
tim@howardjustice.com

Fort Lauderdale, Florida Office:
101 NE Third Ave., Ste. 1500
Fort Lauderdale, Florida 33301
(954) 332-3633 (o)

Jacksonville, Florida Office:
Riverplace Tower, Suite 2101
1301 Riverplace Blvd.
Jacksonville, FL 32207

Cambridge, Massachusetts Office:
8 Museum Way, Suite 2407
Cambridge, MA 02141
(617) 373-6076

President, Cambridge Graduate University International
One Broad Street, 14th Floor

2120 Killarney Way, Ste. 125
Tallahassee, Florida 32309
Main Office: (850) 298-4455
Fax: (850) 216-2537

**Fort Lauderdale Office:**
101 NE Third Ave., Ste. 1500
Fort Lauderdale, Florida 33301
Office: (954) 332-3633

**Jacksonville Office:**
Riverplace Tower, Suite 2101
1301 Riverplace Blvd.
Jacksonville, FL 32207

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

**Wiring Instructions from TD Bank for JB Harris PA (2).pdf**
140K

Gmail

Tim Howard <tim@howardjustice.com>

# (no subject)

1 message

**JB Harris** <jb@howardjustice.com> Thu, Feb 1, 2018 at 8:34 AM
To: tim@howardjustice.com
Cc: Rick Diaz <rick@rjdpa.com>, Annie Santisteban <annie@rjdpa.com>, Robert Trammell <roberttrammell45@gmail.com>, Miguel Mick Maspons <mmaspons@maspons.com>, "Vanessa M. Collazo" <vcollazo@maspons.com>, Brenda@howardjustice.com

Tim, my rent is due today. My son's rent is due today. My other son's rent is due today. My son's college tuition is due today. My ex wife's alimony is due today. My child support is due today. My electric bill is due today. My car payment is due today. My car insurance is due today. My daughter's car insurance is due today.

You're three pay periods behind in paying me and forced me to live on $4000 over the last six weeks, after making me beg for it. In the meantime you and Ankur have been living large.

How you could burn through $14 million from Virage in a matter of weeks is incomprehensible.

Where is all that money. You must have it stashed off shore. The biggest firms in Miami operate on far less for far longer periods of time

Once again your silence is deafening. Your conduct is reprehensible. Your promises are hollow. You're excuses are lame. In my 36 years of practice I've never met anyone remotely like you.

I've prepared a bar complaint against you which I will file tomorrow if I'm not paid in full by then.

You can add to your bill the six weeks severance you owe me under our agreement for terminating our contract. Your new bill is as follows:

$15,000 bonus + inconvenience fee

$ 7692 payroll ending 1/5

$ 7692 payroll ending 1/19

$ 7692 payroll ending 2/2

$ 46,152 severance pay

-$ 4000 credits

**$ 80,228**

You have the wiring instructions. You have until the close of business tomorrow.

**Ft. Laudedale Office:**
J.B. Harris, P.A.
Howard & Associates, P.A.
101 NE Third Ave., Ste. 1500
Fort Lauderdale, Florida 33301
Cell: (786) 303-8333
Office: (954) 332-3633
em: jb@howardjustice.com
web: www.howardjustice.com

**Tallahassee Office:**
2120 Killarney Way, Ste. 125
Tallahassee, Florida 32309
Main Office: (850) 298-4455

# EXHIBIT C

Gmail

Tim Howard <tim@howardjustice.com>

# URGENT

1 message

JB Harris <jb@howardjustice.com> Wed, Feb 7, 2018 at 12:44 PM
To: tim@howardjustice.com
Cc: "Miguel \"Mick\" Maspons" <mmaspons@maspons.com>, Rick Diaz <rick@rjdpa.com>, Annie Santisteban <annie@rjdpa.com>, Robert Trammell <roberttrammell45@gmail.com>, "Vanessa M. Collazo" <vcollazo@maspons.com>, Ankur@howardjustice.com

Tim, I am now aware of the predicament you are in and that your house of cards is rapidly collapsing.

I have spoken at length with Jeff Kahn and Lance Freidman and they both are waiting on your signature for them to immediately fund an initial $3,000,000, which will give you enough capital to make your employees, me and the Diaz firm whole. They both assure me the lender is ready, willing and able.

If you haven't signed the agreement by the close of business today necessary to release the insurance premium payment, plus the lifeline agreement with Lance, I will proceed with the Diaz firm in aligning ourselves with 1 other creditor, to force you into bankruptcy.

**GOVERN YOURSELF ACCORDINGLY**

**Ft. Laudedale Office:**
J.B. Harris, P.A.
Howard & Associates, P.A.
101 NE Third Ave., Ste. 1500
Fort Lauderdale, Florida 33301
Cell: (786) 303-8333
Office: (954) 332-3633
em: jb@howardjustice.com
web: www.howardjustice.com

**Tallahassee Office:**
2120 Killarney Way, Ste. 125
Tallahassee, Florida 32309
Main Office: (850) 298-4455
Fax: (850) 216-2537

**Jacksonville Office:**
Riverplace Tower, Suite 2101
1301 Riverplace Blvd.
Jacksonville, FL 32207

Sent from my iPhone. Please forgive any misspellings.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

# EXHIBIT D

Gmail

Tim Howard <tim@howardjustice.com>

**(no subject)**
1 message

**J.B. Harris** <jbharrisesq@gmail.com> Mon, Feb 26, 2018 at 3:26 PM
To: Tim Howard <tim@howardjustice.com>, John Paul Leonard <jleonard@mdmc-law.com>, Ankur Mehta <Ankur@howardjustice.com>
Cc: "Miguel A. Maspons" <mmaspons@maspons.com>, Rick Diaz <rick@rjdpa.com>, Annie Santisteban <annie@rjdpa.com>, Carlos Santisteban <carlos@csjrlaw.com>, "Steven Kellough (skello@bellsouth.net)" <skello@bellsouth.net>, "Steve Pedersen (spedersen@javlincapital.com)" <spedersen@javlincapital.com>, "Joel L. Wiegert" <Joel.Wiegert@kutakrock.com>, "Vanessa M. Collazo" <vcollazo@maspons.com>

Tim, today I discovered two UCC-1's signed by you on behalf of Howard & Associates, P.A. (H&A), securing certain indebtedness owed to one BWCI Pension Trustee, in the original principal amount of $640,000, filed on February 1 and 15, 2018, respectively, attached hereto for reference.

I also am aware of another UCC-1 securing an indebtedness in the amount of $14,000,000, owed by H&A to one https://www.viragecm.com/lending-program.php.

Significantly, without my knowledge or consent, or that of my creditor Javlin, LLC, you pledged as collateral to both BWCI, Virage and perhaps other creditors, hundreds of tobacco cases set forth on Schedule "1-A" to the February 1 UCC-1, that not only belong to me, but where I am also counsel of record, in which you have no legal or equitable interest whatsoever.

Indeed, to date, not a single client has retained you or H&A on Schedule "1-A", or on the UCC-1 filed by Viage, except for those in the Sommers, Bryant and Gould cases.

As for the UCC-1 filed February 15, 2018, the tobacco cases on Schedule "A" are with firms listed thereon in which you have no affiliation whatsoever.

I am sure each of those firms, as well a the Bar in its ongoing investigation of you and Mr. Mehta, will be very curious to find out why their names and cases appear to be part of your collateral pool without their knowledge or consent.

It's fairly obvious, given what I know about your operations, that you and Mr. Mehta established H&A solely as a front to defraud creditors and me.

I know for a fact that you used funds from creditors earmarked for firm operations to invest in highly speculative real estate and entrepreneurial ventures having nothing whatsoever to do with running a law firm. This flagrant misuse of funds led to the collapse of your firm.

Accordingly, you have until this Friday at 12:00 pm March 2, 2018, to release every case belonging to me on the UCC-1's referenced herein, or on those of any other creditor of H&A, or I am proceeding straight to the FBI with this information. And I will not sleep until you and Mr. Mehta are brought to justice and placed behind bars.

Finally, since you terminated our agreement without cause, I reserve all rights I have against you and Mr. Mehta, including without limitation claims for fraud in the inducement, fraud, conspiracy to commit fraud, intentional infliction of emotional distress and punitive damages. Henceforth, all further communications are to be directed to my attorney Miguel Maspons.

**GOVERN YOURSELF ACCORDINGLY**

--

**J.B. Harris, P.A.**
101 NE Third Ave., Ste. 1500
Fort Lauderdale, Florida 33301
Cell: (786) 303-8333
jbharrisesq@gmail.com

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

**2 attachments**

**Creditor BWCI Pension Trustee -Debtor Howard & Assoc. Feb. 1, 2018 UCC-1 with Schedule A.pdf**
1834K

**Creditor BWCI Pension Trustee -Debtor Howard & Assoc. Feb. 15, 2018 UCC-1 with Schedule A.pdf**
896K

# EXHIBIT E

Image-1.jpg

6/8/2018

AT&T 12:48 PM

< 360

JB

for closing and bonus for you. Did your $2K finally post? Crazy delays

Mon, Mar 12, 3:27 PM

Can you call me? We have solid funding lining up and I need to share with you

Thu, Mar 29, 4:26 PM

Call me. I'm doing everything to help you and getting nothing in return. I need $1000 immediately. Can you shoot it to me by Venmo.

Fri, Mar 30, 10:28 AM

Call ASAP

Tim if you want me out of this deal we need to speak. I'm not dealing with Richard or Marty. I'm only dealing with you. So be a mensch and call me.

I just called. Are you available at this number?

...?projector=1&messagePartId=0.1

Gmail

Tim Howard <tim@howardjustice.com>

**Update**

1 message

**Martin Shellist** <mshellist@viragecm.com> Mon, Mar 26, 2018 at 4:02 PM

To: "jb@howardjustice.com" <jb@howardjustice.com>

Cc: Tim Howard <tim@howardjustice.com>, Bryan Patterson <bpatterson@viragecm.com>

JB,

I wanted to let you know that Virage expects to be finalizing with Tim tomorrow the budget and deal terms which take into account a going-forward relationship between you and his firm. Tim has conveyed that today you shared additional terms which are beyond what has been budgeted. Tim may be inclined to make a few tweaks, but these will likely be more limited in the near term as the desire and ability today is to solidify the firm's foundation and push the cases to monetize – which is where you should see more income.

I can tell you that what is on the table is the health insurance reinstatement, budgeting for a paralegal, your prior salary, and perhaps some tweaks to get you some additional funds (i.e. a "signing bonus" of some amount). As far as an office in Miami, that will have to be explored versus the cost of the Ft. Lauderdale office and the cost, if any, of terminating that lease. However, in order to include you in the budget being approved tomorrow, I need a confirmation that you are committed to stay the course. I thought that's what was discussed with you over the past 2 weeks, but now that we are so close to closing this transaction I need confirmation.

Please let me know asap.

Thanks,

MAS

**Martin A. Shellist**

Virage Capital Management LP

1700 Post Oak Blvd.

2 Blvd. Place

3rd Floor

Houston, Texas 77056
mshellist@viragecm.com

713.840.7700 office 713.927.4740 mobile

*Litigation attorney since 1993. Member of TELA, NELA, ABOTA, TTLA, and AAJ.

Gmail

Tim Howard <tim@howardjustice.com>

## Contact

1 message

**Martin Shellist** <mshellist@viragecm.com> Tue, Apr 3, 2018 at 11:26 AM
To: JB Harris <jb@howardjustice.com>, Tim Howard <tim@howardjustice.com>

JB,

From now on, please do not call, text or email any Virage staff. It is detrimental to our process and not helpful to Tim. Your source of information and updates is via Tim.

Thank you,

MAS

**Martin A. Shellist**

Virage Capital Management LP

1700 Post Oak Blvd.

2 Blvd. Place

3rd Floor

Houston, Texas 77056
mshellist@viragecm.com

713.840.7700 office 713.927.4740 mobile

*Litigation attorney since 1993. Member of TELA, NELA, ABOTA, TTLA, and AAJ.

# EXHIBIT F

Gmail

Tim Howard <tim@howardjustice.com>

## JB Harris v. Virage Capital Partner LP, Martin Shellist, Edward Ondarza, Tim Howard

1 message

**J.B. Harris** <jbharrisesq@gmail.com> Thu, Apr 5, 2018 at 9:48 PM
To: Martin Shellist <mshellist@viragecm.com>, eondarza@viragecm.com
Cc: Tim Howard <tim@howardjustice.com>

Marty, (1) before I sue Virage, you, Ed and Tim for fraud and conspiracy to commit fraud, for:

(i) intentionally and maliciously liening with your fraudulent UCC-1 my tobacco cases in which Tim had no interest in, nor had been retained by my clients to represent; (ii) such that it interfered with my getting a job with Don Worley and other prospective employers; and (iii) commensurate with Virage's fraudulent lien, lending to Tim approximately $11 million with no due diligence or oversight, thereby alowing him to piss it away on some asinine, highly speculative venture unrelated to running a law firm; and

(2) before I also file a complaint against you and your co-conspirators with the SEC for the same, alerting the SEC how you have breached your fiduciary duties to Virage and its shareholders; and

(3) before I file a Bar complaint against you for all of the above;

(4) you may want man up and call me to discuss a settlement of my claims tomorrow, first thing. Otherwise, my weekend will be very busy.

**GOVERN YOURSELF ACCORDINGLY**

--

**J.B. Harris, P.A.**
101 NE Third Ave., Ste. 1500
Fort Lauderdale, Florida 33301
Cell: (786) 303-8333
jbharrisesq@gmail.com

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

# EXHIBIT G

AT&T 12:46 PM

360

JB

... call? I keep getting voicemail at this number.

Still trying to reach you.

Tried from my cell to see if that made a difference?

Fri, Mar 30, 2:47 PM

JB, I have $361 in my business account and I can send $350. I will use my wife's credit card this weekend.

Fri, Mar 30, 3:52 PM



# EXHIBIT H

Gmail

Tim Howard <tim@howardjustice.com>

## Gould

1 message

**J.B. Harris** <jbharrisesq@gmail.com> Wed, Jun 6, 2018 at 3:16 PM
To: Tim Howard <tim@howardjustice.com>, John Paul Leonard <jleonard@mdmc-law.com>, Neil Epstein <Neil@howardjustice.com>
Cc: Carlos Santisteban <carlos@csjrlaw.com>, Rick Diaz <rick@rjdpa.com>, Annie Santisteban <annie@rjdpa.com>, Doug Eaton <deaton@eatonwolk.com>, William Wolk <wwolk@eatonwolk.com>, Edward Ondarza <eondarza@viragecm.com>, Martin Shellist <mshellist@viragecm.com>, Leslie Hillendahl <lhillendahl@viragecm.com>, Jacqueline Sacs <isacsphoto@gmail.com>, Wendy Gould <wgould112@yahoo.com>, Barbara Ulrich <FtLauderdaleLady@aol.com>, Wendy Gould <wgould112@gmail.com>

My co-counsel Corlos Santsteban just informed me that he spoke to Neil Epstein from your office moments ago and Neil said, "JB doesn't know it yet, but we are in the process of executing new retainer agreements with the Goulds and having JB fired as counsel of record."

Tim, if you think you are having trouble with the Bar's investigation of your practices, BWCI Pension Trustees Limited, Ted Doukas, and everyone else who is still after you, you are about to walk into a shit storm if you steal the Goulds from me as my clients.

I will lien the file for cost and fees, sue you for tortious interference and unpaid contributions to costs, fraud and everything else I can think of. I will also amend my complaint with the Bar and file a complaint against Neil as well.

**GOVERN YOURSELF ACCORDINGLY**

--

**J.B. Harris, P.A.**
3127 Ponce De Leon Blvd.
Coral Gables, Florida 33134
**Cell: (786) 303-8333**
**jbharrisesq@gmail.com**

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

# EXHIBIT I

iMessage with +1 (786) 303-8333
3/23/18, 11:38 AM

Can I call you later?

5/31/18, 6:08 PM

Neil, JB Harris here. I've been out of the office and will return tomorrow. I received your message and will call you then.

Why does your phone say Haddonfield, NJ.

JP, thank you for the response. I look forward to speaking with you tomorrow. I am located in Tallahassee. I can explain 609 area code when we talk tomorrow.

Delivered

Yesterday, 3:03 PM

Call me ASAP

Today, 11:50 AM

Call me when you have a minute. Important

Today, 4:42 PM

Neil unfortunately your silence confirms what I believe to be the case. You have conspired with Howard to illegally solicit my clients. I'm am left with no choice but to file a Bar complaint against you.

Your excuse that you were following orders is not excusable.

Solicitation is a violation of the Bar rules.

As you well know.

Unfortunately you hooked your wagon to the wrong train.

# EXHIBIT J

Gmail

Tim Howard <tim@howardjustice.com>

## TFB v. Tim Howard

1 message

**J.B. Harris** <jbharrisesq@gmail.com> Fri, Jun 8, 2018 at 10:08 AM
To: "Mitchell, Christine" <CMitchell@floridabar.org>, "Hinson, Shanee' L" <SHinson@floridabar.org>
Cc: Tim Howard <tim@howardjustice.com>, Kimberly Poling <butlersbarkwalk@gmail.com>

Good morning Ms. Mitchell. I write to bring to the Bar's attention further evidence, as described in the article below and attached hereto for the file, that Dr. Howard and his side-kick "Dr." Ankur Mehta are both frauds and con artists, as their conduct relates to running a scam posing as "Cambridge University".

A link to this so-called university, which remains in operation, follows. I will await Ms. Hinson's call.

http://www.thescoopng.com/2014/10/18/abimbola-adeyinka-investigated-buruji-kashamus-honourary-phd-heres-found/

cguiedu.com

--

J.B. Harris, P.A.
3127 Ponce De Leon Blvd.
Coral Gables, Florida 33134
Cell: (786) 303-8333
jbharrisesq@gmail.com

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

Tim Howard & Ankur Mehta Confer Honorary PhD on African Drug Lord.pdf
122K

http://www.thescoopng.com/2014/10/18/abimbola-adeyinka-investigated-buruji-kashamus-honourary-phd-heres-found/#comments



SCOOPINIONS

# Abimbola Adeyinka: So I investigated that Buruji Kashamu's honourary PhD and here's what I found out

By
TheScoop

Published on October 18, 2014

# EXHIBIT K

AT&T 11:34 AM

357

Jacqueline

Read Wednesday

Thanks. Good to know

Yesterday 9:55 AM

From jb who just called me. Didnt answer.
"Jacquie, J.B. here. We've known each other a very long time. I've believed in your case from the day we met and when know one else would. We've had our differences but have worked through them. I was VERY hurt to learn about what may be going on behind my back. We really need to speak. I won't yell or scream. Promise. I'm trying to protect you, your sisters and the case. You owe me that courtesy. I'll wait for your call. Look forward to speaking."

Yesterday 8:14 PM

**From jb**
You ladies really need to do your homework before switching lawyers. Dr. Howard (and I use that term very loosely) is under investigation by the Feds and the

Image-1.jpg

6/8/2018

AT&T 11:27 AM

364

Jacqueline

or scream. Promise. I'm trying to protect you, your sisters and the case. You owe me that courtesy. I'll wait for your call. Look forward to speaking."

Yesterday 8:14 PM

**From jb**
You ladies really need to do your homework before switching lawyers. Dr. Howard (and I use that term very loosely) is under investigation by the Feds and the Bar. He also owes money to everyone under the sun, and is being sued for fraud. I'll send you the complaint. By law, if you signed a retainer with him you have three days to cancel it. It's in the statement of client rights. I'm available to talk anytime you want.

By the way, Ankur Metha mentioned in the article is NOT a doctor and under investigation by the Bar for impersonating a lawyer.

AM EX

abc NEWS

**Howard & Associates**
**Attorneys at Law, P.A.**
*Dr. Tim Howard, J.D., Ph.D., Senior Partner**
*Florida Supreme Court Certified Mediator*

**Tallahassee Office:**
**1415 East Piedmont Drive, Suite 5**
**Tallahassee, Florida 32308**
**Ph: (850) 298-4455; Fax: (850) 216-2537**
**Tim@howardjustice.com**

**Jacksonville Office:**
**444 East Duval Street**
**Jacksonville, Florida 32202**
**Ph: (904) 446-9817; Fax (904) 446-9825**
**www.howardjustice.com**

**Cambridge Office:**
**8 Museum Way**
**Suite 2407**
**Cambridge, Massachusetts 02141**
**(857) 277-0990**

June 8, 2018

**VIA EMAIL**

Re: Notice of Termination as Counsel by Clients and Execution; Notice of Clients' Request to Cease and Desist Contacting Jacqueline Sacs, Wendy Gould and Barbara Ulrich.

Dear Mr. Harris, Mr. Diaz, Mr. Santisteban, and Mr. Eaton:

The clients of this firm, Jacqueline Sachs, Wendy Gould and Barbara Ulrich have signed the attached Contingency Fee Agreement, are terminating your representation, and have requested that you sign the attached Contingency Fee Agreement verifying the same. Please execute and return the same. Please also forward your expended costs and hours so that quantum meruit amounts can be determined upon ultimate payment in this case. The clients have requested that each of your firms cease and desist from contacting them.

There are significant written and verbal statements and actions made in furtherance of conduct pertaining to the Gould clients and against the law firm that have been knowingly false, deceptive, and defamatory in an attempt to materially mislead individuals and authorities for personal benefit and financial gain. Please note that the law firm and its clients have the right to remain free from harassing and intimidating tactics, and will protect that right.

*Admitted to practice in Florida, the District of Columbia, Northern, Middle, and Southern United States District Courts of Florida, the United States Court of Appeals for the 11th Circuit, and the United States Supreme Court. Ph.D., Northeastern University, Law, Policy & Society. Former Visiting Health Law, Bioethics, and Human Rights Scholar and Constitutional Law, Media & Politics and Judicial Process Instructor at Boston University. Former Professor and Director of Northeastern University's Law & Policy Doctorate Program. President and Professor Cambridge Graduate University International.

We wish to thank you in advance for your compliance,

Tim Howard, J.D., Ph.D.
Florida Bar No.: 655325
**HOWARD & ASSOCIATES, P.A.**
1415 East Piedmont Drive, Suite 5
Tallahassee, FL 32308
Telephone: (850) 298-4455
Fax: (850) 216-2537
Tim@howardjustice.com

# EXHIBIT L

**Howard & Associates**
**Attorneys at Law, P.A.**
*Dr. Tim Howard, J.D., Ph.D., Senior Partner**
*Florida Supreme Court Certified Mediator*

Howard & Associates, P.A.
1415 East Piedmont Drive, Suite 5
Tallahassee, Florida 32308
Tele: (850) 298-4455
Fax: (850) 216-2537
tim@howardjustice.com
www.howardjustice.com

# CONTINGENT FEE AGREEMENT

We, Jacqueline Sacs, Wendy Gould and Barbara Ulrich, as Personal Representatives of the State of Stanley Gould (hereinafter "the client") employ Howard & Associates, Attorneys at Law, (hereinafter "the attorneys") as my attorneys to represent the client in litigation against R.J. Reynolds Tobacco Company, et al., currently before the Miami-Date, Circuit Court, Case No. 2015-025339-CA-01., and instruct the attorneys to terminate Richard J. Diaz, P.A., J.B. Harris, P.A., Carlos Santisteban, Jr., P.A., , and Eaton & Wolk, P.L. as (hereinafter as "former attorneys") that we have chosen to terminate representation of our case. *See* Second Amended Contract for Legal Representation, attached hereto, that we are terminating the former attorneys from. All applicable language pertaining to fees, costs, and recoveries in the Second Amended Contract for Legal Representation apply for the benefit of the attorneys, namely Howard & Associates. The attorneys did not solicit or endeavor to interfere with the former attorneys' relationship with the client, but was sought out by the client due to the abuse the client received by JB Harris and his associated counsel in their representation of the client. The attorney shall create a litigation team and funding for litigation that the clients are comfortable with. **The new contingency fee is 40%, plus 5% for appeals,** and the underlying contract of 45% plus 5% for appeals, does not apply to this contingency fee agreement. There is no limitation on acceptance or decline a proposal for settlement from the Defendants, other than the attorney and client agree that costs and time that the attorneys have spent need to be paid from the award, and the award needs to be sufficient to both

Clients BU, __ T. Howard TH R. Diaz __ C. Santisteban,, Jr. __ D. Eaton __ J.B Harris __

pay the client and attorneys a reasonable amount. If any offers of settlement are proposed, the attorney shall share with the client and advise the client, so that the client can make an informed decision.

**I. CONTINGENT FEE**

The client agrees to pay the attorneys the following attorneys' fee based upon the total recovery:

1. Unless otherwise provided below:

a. 33.33% of any recovery through the time an answer to the lawsuit is filed or arbitration is demanded;

b. 40% of any recovery from the time an answer to the lawsuit is filed or arbitration is demanded through the entry of judgment;

2. If all defendants admit liability at the time of filing an answer to the lawsuit and request a trial or arbitration only on the amount of damages:

a. 40% of any recovery.

3. An additional 5% of any recovery if an appeal is taken or post-judgment relief or action is required for recovery on the judgment.

4. If the case is settled by periodic payments, the contingent fee percentage will be calculated on the cost of the structured settlement or, if the cost is unknown, on the present money value of the structured settlement, whichever is less.

5. If the event that fees are recovered in this action from any adverse party, this contract is not to be construed as a limitation on the maximum reasonable fee to be awarded to the attorneys by the Court. Any fees awarded by the Court and paid by a defendant will be credited against the sums due from the client and the attorneys will retain any excess.

6. If it is determined that one or more of the responsible parties is a governmental agency and that the recovery and/or attorneys' fees are limited by law against the party, it is understood that the attorneys' fee on account of the recovery from that party shall be the amount provided by law.

Clients __, __ T. Howard __ R. Diaz __ C. Santisteban,, Jr. __ D. Eaton __ J.B Harris __

7. All contingency fee amounts referenced above are with the understanding that the client approves attorneys' fees of 40%, plus an additional 5% in attorneys' fees if appeal is taken, this is a reduction of 5% from the Second Amended Contract for Legal Representation.

8. If there is an award of attorneys' fees and costs as a result of a judgment 25% above the proposal for settlement, this shall be added to the recovery and the contingency fee amounts will apply to this recovery as well.

9. The payment of an attorneys' fee is contingent upon a recovery being obtained. If no recovery is made, the client owes nothing for attorneys' fees.

## II. COSTS

The Attorneys agree to advance the payment of costs reasonably necessary to prepare the case until a recovery is obtained. The client agrees to reimburse all costs incurred if a recovery is obtained. "Costs" include filing fees, witness fees, expert witness costs, travel expenses, telephone charges, copying charges, fax charges, deposition costs, investigator costs and time, messenger service cost, mediation expenses, computer research fees, medical or nursing consultations, and all out-of-pocket expenses incurred on the client's behalf.

The client wishes to reduce the costs repaid to former attorneys for the Barbara Ulrich and Wendy Gould second days of depositions, since these depositions could have been completed the initial day of deposition but for counsel wanting to leave early for a concert in Ft. Lauderdale, and an event that the deponents were not responsible for. The client wishes to not pay for the two flights, two hotel rooms, food expenses and the client missing 4 days of pay. By signing this agreement, the parties agree that these costs will not be paid for former attorneys.

The repayment of costs is contingent upon a recovery being obtained. If no recovery is made, the client owes nothing for costs.

Clients BU, __ T. Howard TH R. Diaz __ C. Santisteban,, Jr. __ D. Eaton __ J.B Harris __

## III. TERMINATION

The contract may be cancelled by written notification to the attorneys at any time within three (3) business days of the date the contract was signed, as shown in this contract. If properly cancelled the client shall not be obligated to pay any fees to the attorneys for the work performed during that time. If the attorneys have advanced funds to others in representation of the client, the attorneys are entitled to be reimbursed for such amounts as they have reasonably advanced on behalf of the client.

If the client terminates this agreement after three business days, the client will be obligated to pay all costs and expenses incurred by the attorneys, and must, in addition, pay from the proceeds of any recovery the reasonable value of services provided by the firm.

The attorneys reserve the right to withdraw from the case.

## IV. STATEMENT OF RIGHTS

The undersigned client has, before signing this contract, received and read The Statement of Client's Rights, and understands each of the rights set forth therein. The undersigned client has signed the statement and received a signed copy to keep and to refer to while being represented by the undersigned attorneys.

If two law firms are named above, the client agrees that the attorneys' fee will be shared between the firms. Both firms are available and responsible to the client for consultation. The association of these firms has been discussed and approved by the client.

Upon conclusion of the claim, Howard & Associates, Attorneys at Law, P.A., will provide the client with a closing statement listing all of the financial details of the case, including the amount recovered, all expenses and a precise statement of attorneys' fees.

Upon receipt and execution of any settlement or court awarded judgment, client agrees that Howard & Associates, P.A., has explicit authority to deposit all settlement funds (via wire transfer or otherwise as required) into the firm's account, and then to distribute appropriately once the client has executed a final closing statement.

Clients ___, ___ T. Howard ___ R. Diaz ___ C. Santisteban,, Jr. ___ D. Eaton ___ J.B Harris ___

## V. SIGNATURE OF THE PARTIES

We agree to employ the above-named attorneys. This contract contains our entire agreement and is not valid unless signed by both parties. I have received a copy.

_______________________ Date
Jacqueline Sacs, Co-Personal Representative
Estate of Stanley Gould

_______________________ Date
Wendy Gould, Co-Personal Representative
Estate of Stanley Gould

[signature] 6-6-2018 Date
Barbara Ulrich, Co-Personal Representative
Estate of Stanley Gould

ATTORNEY:

[signature] 6/6/18 Date
Dr. Tim Howard, Esq., Howard & Associates

TERMINATED ATTORNEYS:

_______________________ Date
Richard J. Diaz, Esq.
Richard J. Diaz, P.A.

_______________________ Date
J.B. Harris, Esq.
J.B. Harris, P.A.

_______________________ Date
Carlos Santisteban, Esq.
Carlos Santisteban, Jr., P.A.

_______________________ Date
Doug Eaton, Esq.
Eaton & Walk, PL

**Howard & Associates**
**Attorneys at Law, P.A.**
*Dr. Tim Howard, J.D., Ph.D., Senior Partner**
*Florida Supreme Court Certified Mediator*

Howard & Associates, P.A.
1415 East Piedmont Drive, Suite 5
Tallahassee, Florida 32308
Tele: (850) 298-4455
Fax: (850) 216-2537
tim@howardjustice.com
www.howardjustice.com

## CONTINGENT FEE AGREEMENT

We, Jacqueline Sacs, Wendy Gould and Barbara Ulrich, as Personal Representatives of the State of Stanley Gould (hereinafter "the client") employ Howard & Associates, Attorneys at Law, (hereinafter "the attorneys") as my attorneys to represent the client in litigation against R.J. Reynolds Tobacco Company, et al., currently before the Miami-Date, Circuit Court, Case No. 2015-025339-CA-01., and instruct the attorneys to terminate Richard J. Diaz, P.A., J.B. Harris, P.A., Carlos Santisteban, Jr., P.A., , and Eaton & Wolk, P.L. as (hereinafter as "former attorneys") that we have chosen to terminate representation of our case. *See* Second Amended Contract for Legal Representation, attached hereto, that we are terminating the former attorneys from. All applicable language pertaining to fees, costs, and recoveries in the Second Amended Contract for Legal Representation apply for the benefit of the attorneys, namely Howard & Associates. The attorneys did not solicit or endeavor to interfere with the former attorneys' relationship with the client, but was sought out by the client due to the abuse the client received by JB Harris and his associated counsel in their representation of the client. The attorney shall create a litigation team and funding for litigation that the clients are comfortable with. **The new contingency fee is 40%, plus 5% for appeals,** and the underlying contract of 45% plus 5% for appeals, does not apply to this contingency fee agreement. There is no limitation on acceptance or decline a proposal for settlement from the Defendants, other than the attorney and client agree that costs and time that the attorneys have spent need to be paid from the award, and the award needs to be sufficient to both

Clients ___, ___, ___ T. Howard ___ R. Diaz ___ C. Santisteban,, Jr. ___ D. Eaton ___ J.B Harris ___

pay the client and attorneys a reasonable amount. If any offers of settlement are proposed, the attorney shall share with the client and advise the client, so that the client can make an informed decision.

## I. CONTINGENT FEE

The client agrees to pay the attorneys the following attorneys' fee based upon the total recovery:

1. Unless otherwise provided below:

a. 33.33% of any recovery through the time an answer to the lawsuit is filed or arbitration is demanded;

b. 40% of any recovery from the time an answer to the lawsuit is filed or arbitration is demanded through the entry of judgment;

2. If all defendants admit liability at the time of filing an answer to the lawsuit and request a trial or arbitration only on the amount of damages:

a. 40% of any recovery.

3. An additional 5% of any recovery if an appeal is taken or post-judgment relief or action is required for recovery on the judgment.

4. If the case is settled by periodic payments, the contingent fee percentage will be calculated on the cost of the structured settlement or, if the cost is unknown, on the present money value of the structured settlement, whichever is less.

5. If the event that fees are recovered in this action from any adverse party, this contract is not to be construed as a limitation on the maximum reasonable fee to be awarded to the attorneys by the Court. Any fees awarded by the Court and paid by a defendant will be credited against the sums due from the client and the attorneys will retain any excess.

6. If it is determined that one or more of the responsible parties is a governmental agency and that the recovery and/or attorneys' fees are limited by law against the party, it is understood that the attorneys' fee on account of the recovery from that party shall be the amount provided by law.

Clients ___, ___ T. Howard ___ R. Diaz ___ C. Santisteban,, Jr. ___ D. Eaton ___ J.B Harris ___

7. All contingency fee amounts referenced above are with the understanding that the client approves attorneys' fees of 40%, plus an additional 5% in attorneys' fees if appeal is taken, this is a reduction of 5% from the Second Amended Contract for Legal Representation.

8. If there is an award of attorneys' fees and costs as a result of a judgment 25% above the proposal for settlement, this shall be added to the recovery and the contingency fee amounts will apply to this recovery as well.

9. The payment of an attorneys' fee is contingent upon a recovery being obtained. If no recovery is made, the client owes nothing for attorneys' fees.

## II. COSTS

The Attorneys agree to advance the payment of costs reasonably necessary to prepare the case until a recovery is obtained. The client agrees to reimburse all costs incurred if a recovery is obtained. "Costs" include filing fees, witness fees, expert witness costs, travel expenses, telephone charges, copying charges, fax charges, deposition costs, investigator costs and time, messenger service cost, mediation expenses, computer research fees, medical or nursing consultations, and all out-of-pocket expenses incurred on the client's behalf.

The client wishes to reduce the costs repaid to former attorneys for the Barbara Ulrich and Wendy Gould second days of depositions, since these depositions could have been completed the initial day of deposition but for counsel wanting to leave early for a concert in Ft. Lauderdale, and an event that the deponents were not responsible for. The client wishes to not pay for the two flights, two hotel rooms, food expenses and the client missing 4 days of pay. By signing this agreement, the parties agree that these costs will not be paid for former attorneys.

The repayment of costs is contingent upon a recovery being obtained. If no recovery is made, the client owes nothing for costs.

Clients ___, ___ T. Howard___ R. Diaz ___ C. Santisteban,, Jr. ___ D. Eaton ___ J.B Harris ___

## III. TERMINATION

The contract may be cancelled by written notification to the attorneys at any time within three (3) business days of the date the contract was signed, as shown in this contract. If properly cancelled the client shall not be obligated to pay any fees to the attorneys for the work performed during that time. If the attorneys have advanced funds to others in representation of the client, the attorneys are entitled to be reimbursed for such amounts as they have reasonably advanced on behalf of the client.

If the client terminates this agreement after three business days, the client will be obligated to pay all costs and expenses incurred by the attorneys, and must, in addition, pay from the proceeds of any recovery the reasonable value of services provided by the firm.

The attorneys reserve the right to withdraw from the case.

## IV. STATEMENT OF RIGHTS

The undersigned client has, before signing this contract, received and read The Statement of Client's Rights, and understands each of the rights set forth therein. The undersigned client has signed the statement and received a signed copy to keep and to refer to while being represented by the undersigned attorneys.

If two law firms are named above, the client agrees that the attorneys' fee will be shared between the firms. Both firms are available and responsible to the client for consultation. The association of these firms has been discussed and approved by the client.

Upon conclusion of the claim, Howard & Associates, Attorneys at Law, P.A., will provide the client with a closing statement listing all of the financial details of the case, including the amount recovered, all expenses and a precise statement of attorneys' fees.

Upon receipt and execution of any settlement or court awarded judgment, client agrees that Howard & Associates, P.A., has explicit authority to deposit all settlement funds (via wire transfer or otherwise as required) into the firm's account, and then to distribute appropriately once the client has executed a final closing statement.

Clients ___, ___, ___ T. Howard ___ R. Diaz ___ C. Santisteban,, Jr. ___ D. Eaton ___ J.B Harris ___

## V. SIGNATURE OF THE PARTIES

We agree to employ the above-named attorneys. This contract contains our entire agreement and is not valid unless signed by both parties. I have received a copy.

Jacqueline Sacs, Co-Personal Representative
Estate of Stanley Gould

June 6, 2018
Date

Wendy Gould, Co-Personal Representative
Estate of Stanley Gould

Date

Barbara Ulrich, Co-Personal Representative
Estate of Stanley Gould

Date

ATTORNEY:

Dr. Tim Howard, Esq., Howard & Associates

6/6/18
Date

TERMINATED ATTORNEYS:

Richard J. Diaz, Esq.
Richard J. Diaz, P.A.

Date

J.B. Harris, Esq.
J.B. Harris, P.A.

Date

Carlos Santisteban, Esq.
Carlos Santisteban, Jr., P.A.

Date

Doug Eaton, Esq.
Eaton & Walk, PL

Date

**Howard & Associates**
**Attorneys at Law, P.A.**
*Dr. Tim Howard, J.D., Ph.D., Senior Partner**
*Florida Supreme Court Certified Mediator*

Howard & Associates, P.A.
1415 East Piedmont Drive, Suite 5
Tallahassee, Florida 32308
Tele: (850) 298-4455
Fax: (850) 216-2537
tim@howardjustice.com
www.howardjustice.com

# CONTINGENT FEE AGREEMENT

We, Jacqueline Sacs, Wendy Gould and Barbara Ulrich, as Personal Representatives of the State of Stanley Gould (hereinafter "the client") employ Howard & Associates, Attorneys at Law, (hereinafter "the attorneys") as my attorneys to represent the client in litigation against R.J. Reynolds Tobacco Company, et al., currently before the Miami-Date, Circuit Court, Case No. 2015-025339-CA-01., and instruct the attorneys to terminate Richard J. Diaz, P.A., J.B. Harris, P.A., Carlos Santisteban, Jr., P.A., , and Eaton & Wolk, P.L. as (hereinafter as "former attorneys") that we have chosen to terminate representation of our case. *See* Second Amended Contract for Legal Representation, attached hereto, that we are terminating the former attorneys from. All applicable language pertaining to fees, costs, and recoveries in the Second Amended Contract for Legal Representation apply for the benefit of the attorneys, namely Howard & Associates. The attorneys did not solicit or endeavor to interfere with the former attorneys' relationship with the client, but was sought out by the client due to the abuse the client received by JB Harris and his associated counsel in their representation of the client. The attorney shall create a litigation team and funding for litigation that the clients are comfortable with. **The new contingency fee is 40%, plus 5% for appeals,** and the underlying contract of 45% plus 5% for appeals, does not apply to this contingency fee agreement. There is no limitation on acceptance or decline a proposal for settlement from the Defendants, other than the attorney and client agree that costs and time that the attorneys have spent need to be paid from the award, and the award needs to be sufficient to both

Clients __, __, __ T. Howard *[initials]* R. Diaz __ C. Santisteban,, Jr. __ D. Eaton __ J.B Harris __



*[initials: WG]*

pay the client and attorneys a reasonable amount. If any offers of settlement are proposed, the attorney shall share with the client and advise the client, so that the client can make an informed decision.

## I. CONTINGENT FEE

The client agrees to pay the attorneys the following attorneys' fee based upon the total recovery:

1. Unless otherwise provided below:

   a. 33.33% of any recovery through the time an answer to the lawsuit is filed or arbitration is demanded;

   b. 40% of any recovery from the time an answer to the lawsuit is filed or arbitration is demanded through the entry of judgment;

2. If all defendants admit liability at the time of filing an answer to the lawsuit and request a trial or arbitration only on the amount of damages:

   a. 40% of any recovery.

3. An additional 5% of any recovery if an appeal is taken or post-judgment relief or action is required for recovery on the judgment.

4. If the case is settled by periodic payments, the contingent fee percentage will be calculated on the cost of the structured settlement or, if the cost is unknown, on the present money value of the structured settlement, whichever is less.

5. If the event that fees are recovered in this action from any adverse party, this contract is not to be construed as a limitation on the maximum reasonable fee to be awarded to the attorneys by the Court. Any fees awarded by the Court and paid by a defendant will be credited against the sums due from the client and the attorneys will retain any excess.

6. If it is determined that one or more of the responsible parties is a governmental agency and that the recovery and/or attorneys' fees are limited by law against the party, it is understood that the attorneys' fee on account of the recovery from that party shall be the amount provided by law.

Clients __, __, __ T. Howard YM R. Diaz __ C. Santisteban,, Jr. __ D. Eaton __ J.B Harris __



NJ

7. All contingency fee amounts referenced above are with the understanding that the client approves attorneys' fees of 40%, plus an additional 5% in attorneys' fees if appeal is taken, this is a reduction of 5% from the Second Amended Contract for Legal Representation.

8. If there is an award of attorneys' fees and costs as a result of a judgment 25% above the proposal for settlement, this shall be added to the recovery and the contingency fee amounts will apply to this recovery as well.

9. The payment of an attorneys' fee is contingent upon a recovery being obtained. If no recovery is made, the client owes nothing for attorneys' fees.

## II. COSTS

The Attorneys agree to advance the payment of costs reasonably necessary to prepare the case until a recovery is obtained. The client agrees to reimburse all costs incurred if a recovery is obtained. "Costs" include filing fees, witness fees, expert witness costs, travel expenses, telephone charges, copying charges, fax charges, deposition costs, investigator costs and time, messenger service cost, mediation expenses, computer research fees, medical or nursing consultations, and all out-of-pocket expenses incurred on the client's behalf.

The client wishes to reduce the costs repaid to former attorneys for the Barbara Ulrich and Wendy Gould second days of depositions, since these depositions could have been completed the initial day of deposition but for counsel wanting to leave early for a concert in Ft. Lauderdale, and an event that the deponents were not responsible for. The client wishes to not pay for the two flights, two hotel rooms, food expenses and the client missing 4 days of pay. By signing this agreement, the parties agree that these costs will not be paid for former attorneys.

The repayment of costs is contingent upon a recovery being obtained. If no recovery is made, the client owes nothing for costs.

Clients __, __, __ T. Howard__ R. Diaz __ C. Santisteban,, Jr. __ D. Eaton __ J.B Harris __

## III. TERMINATION

The contract may be cancelled by written notification to the attorneys at any time within three (3) business days of the date the contract was signed, as shown in this contract. If properly cancelled the client shall not be obligated to pay any fees to the attorneys for the work performed during that time. If the attorneys have advanced funds to others in representation of the client, the attorneys are entitled to be reimbursed for such amounts as they have reasonably advanced on behalf of the client.

If the client terminates this agreement after three business days, the client will be obligated to pay all costs and expenses incurred by the attorneys, and must, in addition, pay from the proceeds of any recovery the reasonable value of services provided by the firm.

The attorneys reserve the right to withdraw from the case.

## IV. STATEMENT OF RIGHTS

The undersigned client has, before signing this contract, received and read The Statement of Client's Rights, and understands each of the rights set forth therein. The undersigned client has signed the statement and received a signed copy to keep and to refer to while being represented by the undersigned attorneys.

If two law firms are named above, the client agrees that the attorneys' fee will be shared between the firms. Both firms are available and responsible to the client for consultation. The association of these firms has been discussed and approved by the client.

Upon conclusion of the claim, Howard & Associates, Attorneys at Law, P.A., will provide the client with a closing statement listing all of the financial details of the case, including the amount recovered, all expenses and a precise statement of attorneys' fees.

Upon receipt and execution of any settlement or court awarded judgment, client agrees that Howard & Associates, P.A., has explicit authority to deposit all settlement funds (via wire transfer or otherwise as required) into the firm's account, and then to distribute appropriately once the client has executed a final closing statement.

Clients __, __, __ T. Howard [initials] R. Diaz __ C. Santisteban,, Jr. __ D. Eaton __ J.B Harris __

## V. SIGNATURE OF THE PARTIES

We agree to employ the above-named attorneys. This contract contains our entire agreement and is not valid unless signed by both parties. I have received a copy.

| | |
|---|---|
| ______________________ | ______________ |
| Jacqueline Sacs, Co-Personal Representative<br>Estate of Stanley Gould | Date |
| Wendy Gould (signature) | 6/6/18 |
| Wendy Gould, Co-Personal Representative<br>Estate of Stanley Gould | Date |
| ______________________ | ______________ |
| Barbara Ulrich, Co-Personal Representative<br>Estate of Stanley Gould | Date |

ATTORNEY:

| | |
|---|---|
| (signature) | 6/6/18 |
| Dr. Tim Howard, Esq., Howard & Associates | Date |

TERMINATED ATTORNEYS:

| | |
|---|---|
| ______________________ | ______________ |
| Richard J. Diaz, Esq.<br>Richard J. Diaz, P.A. | Date |
| ______________________ | ______________ |
| J.B. Harris, Esq.<br>J.B. Harris, P.A. | Date |
| ______________________ | ______________ |
| Carlos Santisteban, Esq.<br>Carlos Santisteban, Jr., P.A. | Date |
| ______________________ | ______________ |
| Doug Eaton, Esq.<br>Eaton & Walk, PL | Date |

**PLEASE READ THIS CONTRACT FOR LEGAL REPRESENTATION CAREFULLY. IF YOU HAVE ANY CONCERNS OR DO NOT UNDERSTAND ITS CONTENTS PLEASE CONTACT US BEFORE SIGNING THIS DOCUMENT.**

## SECOND AMENDED CONTRACT FOR LEGAL REPRESENTATION

On or about June 13, 2008, Jacqueline Sacs, Wendy Gould and Barbara Ulrich, as Personal Representatives of the Estate of Stanley Gould (also referred to herein as the "Estate" or the "Client"), retained the law firms of J.B. Harris, P.A. and Ratzan & Rubio, P.A., to represent the Estate in its claims against R.J. Reynolds Tobacco Company, et al., pursuant to the terms and conditions of a Contract for Legal Representation. Ratzan & Rubio, P.A. has since withdrawn its representation and has no claim to fees or costs in this matter.

On or about August 14, 2017 Jacqueline Sacs, Wendy Gould and Barbara Ulrich, as Personal Representative of the Estate of Stanley Gould amended the existing Contract for Legal Representation to employ the law firms of J.B. Harris, P.A., Howard & Associates, P.A., Carlos Santisteban, Jr., P.A., and Eaton & Wolk, PL as the attorneys to represent the Estate in the Estate's pending litigation against R.J. Reynolds Tobacco Company, et al., currently before the Miami-Dade, Circuit County Court, Case No. 2015-025339-CA-01.

On March 16, 2018, Jacqueline Sacs, Wendy Gould and Barbara Ulrich, as Personal Representatives of the Estate of Stanley Gould, terminated the representation of Howard & Associates, P.A. Any claims for compensation Howard & Associates may have are strictly limited to *quantum meruit* and any costs Howard & Associates, P.A. may have contributed to this case prior to its termination as counsel, which will not be paid to Howard & Associates, P.A., unless and until money damages are awarded to the Plaintiffs, and all fees and costs are awarded and paid at the end of the litigation, including all appeals. Any money paid to Howard & Associates will be made after all other attorneys are paid their portion of the net fees and costs.

Jacqueline Sacs, Wendy Gould and Barbara Ulrich hereby agree to further amend the existing contract for representation, as amended on August 14, 2017, to employ Richard J. Diaz, P.A. and adjust compensation and responsibility relative to litigation costs and net fees. J.B. Harris, P.A., Richard J. Diaz, P.A., Carlos Santisteban, Jr., P.A., and Eaton & Wolk, P.L. all being collectively referred to herein as the "Attorneys". This case stems from the class action known as *Engle v. Liggett Group, et al.*, 945 So.2d 1246 (Fla. 2000). This Florida Supreme Court decision allows for

Client ____
C. Santisteban ____

T. Howard ____
D. Eaton ____

R. Diaz ____
J.B. Harris ____

BU ____

damages against tobacco company defendant(s) arising from smoking related diseases, medical conditions and death related to:

- Aortic Aneurysm
- Bladder Cancer
- Cerebrovascular Disease
- Cervical Cancer
- Chronic Obstructive Pulmonary Disease
- Coronary Heart Disease
- Esophageal Cancer
- Kidney Cancer
- Laryngeal Cancer
- Lung Cancer (specifically: adenocarcinoma, large cell carcinoma, small cell carcinoma and squamous cell carcinoma)
- Complications of pregnancy
- Oral Cavity – Tongue Cancer
- Pancreatic Cancer
- Stomach Cancer
- Peripheral Vascular Disease

The Estate's employment of the Attorneys is on the basis of a contingent fee to be determined on the basis of the recovery. Recovery means the value of all benefits obtained including all sums, proceeds of other compensation received. The Attorneys' fee shall be forty-five (45%) of all recoveries, regardless of the amount recovered. An additional 5% Attorney's fee shall be charged if an appeal is taken on the case and will be payable to Eaton & Wolk, PL.

Eaton & Wolk, PL has been, since its appearance, and will remain, primarily responsible for drafting pleadings and motions and memoranda; preparing jury instructions and verdict forms; and for providing legal research and advice to the client and members of the legal team. Eaton & Wolk, PL may appear at hearing, conferences, mediations, depositions, or trial, but is not required to do so as the firm's role is to provide legal research and writing upon request from co-counsel. Eaton & Wolk, PL will represent the Client as appellate counsel in any and all appellate proceedings in this case. However, the Attorneys shall each be available to the Client for consultations concerning the case and have each assumed the same legal responsibility in the handling of the case.

I hereby authorize the Attorneys to continue to advance costs as necessary for the continued prosecution of this case. Such costs have included, and in the future may include, but are not



Client ____
C. Santisteban ____

T. Howard ____
D. Eaton ____

R. Diaz ____
J.B. Harris ____

limited to: investigation, experts, copies, faxes, financing of costs, and travel expenses. The Estate agrees to reimburse the Attorneys from the Estate's portion or percentage of the recovery for any such advanced costs. I further understand that in the event that the pending litigation is unsuccessful, the Estate may be responsible to the opposing party for fees and taxable court costs should the court award them under proposals for settlement served the by proposing parties in this case.

It is agreed and understood that with respect to fees due the Attorneys, this employment is on a contingent fee basis, and if no recovery is made neither the Estate, nor the Individual Personal Representatives, will be indebted to the Attorneys for any attorney's fees or advanced costs. If a recovery is made, all attorney fees and costs are payable at the time of closing.

Before or during trial, if a defendant agrees to settle for an amount acceptable to the Client, who will seek the advice of her counsel before agreeing to accept such settlement amount, any and all proceeds received from the settling defendant shall be first applied to reimburse the Attorneys for all costs incurred up to that date as a priority payment.

In the event that the proceeds of recovery are payable over a period of time, attorney's fees and advanced costs are payable at the time of settlement, and the attorney's fees will be figured as a percentage of the total present value of the settlement.

I understand and agree that the law firms of J.B. Harris, P.A., Richard J. Diaz, P.A., Carlos Santisteban, Jr., P.A., and Eaton & Wolk, PL will work jointly on my case and that they will divide the attorney's fees between themselves as follows:

Eaton & Wolk, PL's fee is 3.5% of the total gross recovery amount. As stated earlier, if there are appellate proceedings either before or after trial, there shall be an additional contingent fee of 5% of the total recovery paid to Eaton & Wolk, PL.

If the Court awards attorney's fees in this case, the attorneys will be entitled to the greater of the fee awarded by the Court, or all of the Attorneys' Fees allowable under this contract.

The "Net Fees" are defined as the amount of attorney's fees calculated as 45% of the total gross recovery amount minus the 3.5% fee paid to Eaton & Wolk, PL. The Net Fees shall be divided as follows:

Client ____
C. Santisteban ____

T. Howard ____
D. Eaton ____

R. Diaz ____
J.B. Harris ____

- Richard J. Diaz, P.A. fee is 70% of the Net Fees.
- The J.B. Harris, P.A. fee is 20 % of the Net Fees.
- The Carlos Santistebun, Jr., P.A. fee is 10% of the Net Fees.

I understand that this division of the net fees shall in no way increase the forty-five percent (45%) attorney's fees the Estate has agreed to pay. Although the Estate has no pending claim for fees from the defendants, if a claim to attorney's fee subsequently arises and the Court awards such fees to the Estate, or the parties negotiate such fees, the Attorneys will be entitled to the greater of the fee awarded by the Court or negotiated by the parties, or all the attorney's fees allowable under this contract.

The total costs of litigation will be advanced by Richard J. Diaz, P.A. I understand that recovery of money damages under the Florida Supreme Court's *Engle* decision is uncertain and that success cannot be guaranteed. I have not been promised a recovery. In the event that the Attorneys determine, after further preparation of the case, that in their sole opinion there are no reasonable prospects of success, or success cannot be achieved without excessive or unreasonable expenditures of costs, time, or effort, I understand that after advising me, the Attorneys are relieved of any obligation to pursue the Estate's claims and may withdraw from representing the Estate in accordance with the rules of state or federal procedures.

The undersigned client has, before signing this contract, received and read the Statement of Client's Rights, and understands each of the rights set forth therein. The undersigned client has signed the statement and received a signed copy to keep and to refer to while being represented by the undersigned attorneys.

The Client is hereby further informed, has been further counseled on and further understands the operation of any proposal for settlement ("PFS") that might be served on the Client by one or more of the defendants in this case. A PFS is an offer by a defendant to a plaintiff to fully settle the case as between them for a certain sum of money. It is open for 30 days from the date of service. If the PFS is not accepted within those 30 days, the offer expires.

If the PFS is accepted within those 30 days, the case will end between the Client and that defendant and there will be no trial as to that defendant. If the PFS is rejected, meaning, that the



Client ______
C. Santistebun ______

T. Howard ______
D. Eaton ______

R. Diaz ______
J.B. Harris ______

Client, does not accept the defendant's PFS, then there is a trial as to that defendant. If that defendant wins, or if the Client wins a verdict but the verdict does not beat the PFS by 25%, then the law allows that defendant to ask the court to award attorney's fees against the Client for its legal fees incurred in defending the claim from the date the defendant served the PFS on the Client until the jury verdict is returned. An attorney's fee award can be hundreds or thousands or even millions of dollars. However, that award would only be against the estate, not against you personally. It is our belief that the estate has zero assets except this lawsuit. Therefore, any attorney's fee awarded against the estate would be uncollectible and that would not make you individually responsible.

You understand that your lawyers in this case will have to spend significant sums of monies and attorney hours to get this case to trial. They cannot afford to do that and later have you, the Client, accept nominal (or small) proposal for settlement. Therefore, in order to go forward with your case, your signature on this contract for legal representation will evidence that you have understood and agree to decline any proposal for settlement by or from any defendant that is for the amount less than $5 million dollars, unless your attorneys advise otherwise.

You acknowledge that you have had significant opportunity to carefully review this document and have also had significant time and opportunity to get legal advice on this matter.

Dated this ____ day of March, 2018.

The above employment is hereby accepted on the terms stated above.

**CLIENTS:**

By: [signature]
Jacqueline Sacs as Co-Personal Representative
Of the Estate of Stanley Gould

By:____________________
Wendy Gould as Co-Personal Representative
Of the Estate of Stanley Gould

By:____________________
Barbara Ulrich as Co-Personal Representative
Of the Estate of Stanley Gould

Client [initials]
C. Santisteban [initials]

T. Howard ___
D. Eaton ___

R. Diaz
J.B. Harris [initials]

Client, does not accept the defendant's PFS, then there is a trial as to that defendant. If that defendant wins, or if the Client wins a verdict but the verdict does not beat the PFS by 25%, then the law allows that defendant to ask the court to award attorney's fees against the Client for its legal fees incurred in defending the claim from the date the defendant served the PFS on the Client until the jury verdict is returned. An attorney's fee award can be hundreds or thousands or even millions of dollars. However, that award would only be against the estate, not against you personally. It is our belief that the estate has zero assets except this lawsuit. Therefore, any attorney's fee awarded against the estate would be uncollectible and that would not make you individually responsible.

You understand that your lawyers in this case will have to spend significant sums of monies and attorney hours to get this case to trial. They cannot afford to do that and later have you, the Client, accept nominal (or small) proposal for settlement. Therefore, in order to go forward with your case, your signature on this contract for legal representation will evidence that you have understood and agree to decline any proposal for settlement by or from any defendant that is for the amount less than $5 million dollars, unless your attorneys advise otherwise.

You acknowledge that you have had significant opportunity to carefully review this document and have also had significant time and opportunity to get legal advice on this matter.

Dated this ____ day of March, 2018,

The above employment is hereby accepted on the terms stated above.

**CLIENTS:**

By:______________________
Jacqueline Sacs as Co-Personal Representative
Of the Estate of Stanley Gould

By:______________________
Wendy Gould as Co-Personal Representative
Of the Estate of Stanley Gould

By: [signature]
Barbara Ulrich as Co-Personal Representative
Of the Estate of Stanley Gould

Client [initials]
C. Santisteban [initials]

T. Howard ___
D. Eaton ___

R. Diaz [initials]
J.B. Harris [initials]

Client, does not accept the defendant's PFS, then there is a trial as to that defendant. If that defendant wins, or if the Client wins a verdict but the verdict does not beat the PFS by 25%, then the law allows that defendant to ask the court to award attorney's fees against the Client for its legal fees incurred in defending the claim from the date the defendant served the PFS on the Client until the jury verdict is returned. An attorney's fee award can be hundreds or thousands or even millions of dollars. However, that award would only be against the estate, not against you personally. It is our belief that the estate has zero assets except this lawsuit. Therefore, any attorney's fee awarded against the estate would be uncollectible and that would not make you individually responsible.

You understand that your lawyers in this case will have to spend significant sums of monies and attorney hours to get this case to trial. They cannot afford to do that and later have you, the Client, accept nominal (or small) proposal for settlement. Therefore, in order to go forward with your case, your signature on this contract for legal representation will evidence that you have understood and agree to decline any proposal for settlement by or from any defendant that is for the amount less than $5 million dollars, unless your attorneys advise otherwise.

You acknowledge that you have had significant opportunity to carefully review this document and have also had significant time and opportunity to get legal advice on this matter.

Dated this ____ day of March, 2018.

The above employment is hereby accepted on the terms stated above.

**CLIENTS:**

By:____________________
Jacqueline Sacs as Co-Personal Representative
Of the Estate of Stanley Gould

By:____________________
Wendy Gould as Co-Personal Representative
Of the Estate of Stanley Gould

By:____________________
Barbara Ulrich as Co-Personal Representative
Of the Estate of Stanley Gould

Client ____
C. Santisteban ____

T. Howard ____
D. Eaton ____

R. Diaz ____
J.B. Harris ____

**ATTORNEYS:**

By: ______________________
Richard J. Diaz, Esq.
Richard J. Diaz, P.A.

By: ______________________
J.B. Harris, Esq.
J.B. Harris, P.A.

By: ______________________
Carlos Santisteban, Esq.
Carlos Santisteban, Jr., P.A.

By: ______________________
Doug Eaton, Esq.
Eaton & Wolk, PL

**TERMINATED ATTORNEY:**

By: ______________________
Tim Howard, Esq.
Howard & Associates, P.A.

**ACKKNOWLEDGEMENT AND CONSENT:**

By: ______________________
Javlin Capital

Client ____
C. Santisteban ____

T. Howard ____
D. Eaton ____

R. Diaz ____
J.B. Harris ____

## STATEMENT OF CLIENT'S RIGHTS

Before you, the prospective client, arrange a contingency fee agreement with a lawyer, you should understand this Statement of your rights as a client. This Statement is not a part of the actual contract between you and your lawyer, but as a prospective client, you should be aware of these rights:

1. There is no legal requirement that a lawyer charge a client a set fee or a percentage of money recovered in a case. You, the client, have the right to talk with your lawyer about the proposed fee and to bargain about the rate of percentage as in any other contract. If you do not reach an agreement with one lawyer, you may talk with other lawyers.

2. Any contingency fee contract must be in writing and you have three (3) business days to reconsider the contract. You may cancel the contract without any reason if you notify your lawyer in writing within three (3) business days of signing the contract. If you withdraw from the contract within the first three (3) days, you do not owe the lawyer a fee although you may be responsible for the lawyer's actual costs during that time. But if you lawyer begins to represent you, your lawyer may not withdraw from the case without giving you notice, delivering necessary papers to you, and allowing you time to employ another lawyer. Often, your lawyer must obtain court approval before withdrawing from a case. If you discharge your lawyer without good cause after the three-day period, you may have to pay a fee for work the lawyer has done.

3. Before hiring a lawyer, you, the client, have the right to know about the lawyer's education, training and experience. If you ask, the lawyer should tell you specifically about his or her actual experience dealing with cases similar to yours. If you ask, the lawyer should provide information about special training or knowledge and give you this information in writing if you request it.

4. Before signing a contingency fee contract with you, a lawyer must advise you whether he or she intends to handle your case alone or whether other lawyers will be helping with the case. If you lawyer intends to refer the case to other lawyer, he or she should tell you what kind of fee-sharing arrangement will be made with the other lawyers. If lawyers from different law firms will represent you, at least one lawyer from each law firm must sign the contingency fee contract.

5. If your lawyer intends to refer a case to another lawyer or counsel with other lawyers, your lawyer should tell you about that at the beginning. If your lawyer takes the case and later decides to refer it to another lawyer or to associate with other lawyers, you should sign a new contract that includes the new lawyers. You, the client, also have the right to consult with each lawyer working on your case and each lawyer is legally responsible to represent your interest and is legally responsible for the acts of the other lawyers involved in the case.

6. You, the client, have the right to know in advance how you will need to pay the expenses and the legal fees at the end of the case. If you pay a deposit in advance for costs, you may ask reasonable questions about how the money will be or has been spent and how much of it remains unspent. Your lawyer should give a reasonable estimate about future necessary costs. If your lawyer agrees to lend or advance you money to prepare or research the case, you have the right to know periodically how much money your lawyer has spent on your behalf. You also have the right to decide, after consulting with your lawyer, how much money is to be spent to prepare a case. If you pay the expenses, you have the right to decide how much to spend. Your lawyer should also inform you whether the fee will be based on the gross amount recovered or on the amount recovered minus the costs.

7. You, the client, have the right to be told by your lawyer about possible adverse consequences if you lose the case. Those adverse consequences might include money that you might have to pay to your lawyer for costs, and liability you might have for attorney's fees to the other side.

8. You, the client, have the right to receive and approve a closing statement at the end of the case before you pay any money. The statement must list all of the financial details of the entire case, including the amount recovered, all expenses, and a precise statement of your lawyer's fee. Until you approve the closing statement, you need not pay any money to anyone, including your lawyer. You also have the right to have every law firm working on your case sign the closing statement.

9. You, the client, have the right to ask your lawyer at reasonable intervals how the case is progressing and to have these questions answered to the best of your lawyer's ability.

10. You, the client, have the right to make the final decision regarding settlement of a case. Your lawyer must notify you of all offers of settlement before and after the trial. Offers during the trial must be immediately communicated and you should consult with your lawyer regarding whether to accept a settlement. However, you must make the final decision to accept or reject a settlement.

11. If at any time, you, the client, believe that your lawyer has charged an excessive or illegal fee, you, the client, have the right to report the matter to The Florida Bar, the agency that oversees the practice and behavior of all lawyers in Florida. For information on how to reach The Florida Bar, call 1-800-342-8060, or contact the local bar association. Any disagreement between you and your lawyer about a fee can be taken to court and you may wish to hire another lawyer to help you resolve this disagreement. Usually fee disputes must be handled in a separate lawsuit.

DATE: 6-6-2018

Barbara Ulrich
PRINT OR TYPE NAME

CLIENT SIGNATURE

DATE: ____________________

____________________
PRINT OR TYPE NAME

CLIENT SIGNATURE

6/5/18
ATTORNEY

**Howard & Associates**
**Attorneys at Law, P.A.**
*Dr. Tim Howard, J.D., Ph.D., Senior Partner**
*Florida Supreme Court Certified Mediator*

Howard & Associates, P.A.
1415 East Piedmont Drive, Suite 5
Tallahassee, Florida 32308
Tele: (850) 298-4455
Fax: (850) 216-2537
tim@howardjustice.com
www.howardjustice.com

## CONTINGENT FEE AGREEMENT

We, Jacqueline Sacs, Wendy Gould and Barbara Ulrich, as Personal Representatives of the State of Stanley Gould (hereinafter "the client") employ Howard & Associates, Attorneys at Law, (hereinafter "the attorneys") as my attorneys to represent the client in litigation against R.J. Reynolds Tobacco Company, et al., currently before the Miami-Date, Circuit Court, Case No. 2015-025339-CA-01., and instruct the attorneys to terminate Richard J. Diaz, P.A., J.B. Harris, P.A., Carlos Santisteban, Jr., P.A., , and Eaton & Wolk, P.L. as (hereinafter as "former attorneys") that we have chosen to terminate representation of our case. *See* Second Amended Contract for Legal Representation, attached hereto, that we are terminating the former attorneys from. All applicable language pertaining to fees, costs, and recoveries in the Second Amended Contract for Legal Representation apply for the benefit of the attorneys, namely Howard & Associates. The attorneys did not solicit or endeavor to interfere with the former attorneys' relationship with the client, but was sought out by the client due to the abuse the client received by JB Harris and his associated counsel in their representation of the client. The attorney shall create a litigation team and funding for litigation that the clients are comfortable with. **The new contingency fee is 40%, plus 5% for appeals,** and the underlying contract of 45% plus 5% for appeals, does not apply to this contingency fee agreement. There is no limitation on acceptance or decline a proposal for settlement from the Defendants, other than the attorney and client agree that costs and time that the attorneys have spent need to be paid from the award, and the award needs to be sufficient to both

Clients __, __, __ T. Howard [initials] R. Diaz __ C. Santisteban,, Jr. __ D. Eaton __ J.B Harris __

pay the client and attorneys a reasonable amount. If any offers of settlement are proposed, the attorney shall share with the client and advise the client, so that the client can make an informed decision.

## I. CONTINGENT FEE

The client agrees to pay the attorneys the following attorneys' fee based upon the total recovery:

1. Unless otherwise provided below:

   a. 33.33% of any recovery through the time an answer to the lawsuit is filed or arbitration is demanded;

   b. 40% of any recovery from the time an answer to the lawsuit is filed or arbitration is demanded through the entry of judgment;

2. If all defendants admit liability at the time of filing an answer to the lawsuit and request a trial or arbitration only on the amount of damages:

   a. 40% of any recovery.

3. An additional 5% of any recovery if an appeal is taken or post-judgment relief or action is required for recovery on the judgment.

4. If the case is settled by periodic payments, the contingent fee percentage will be calculated on the cost of the structured settlement or, if the cost is unknown, on the present money value of the structured settlement, whichever is less.

5. If the event that fees are recovered in this action from any adverse party, this contract is not to be construed as a limitation on the maximum reasonable fee to be awarded to the attorneys by the Court. Any fees awarded by the Court and paid by a defendant will be credited against the sums due from the client and the attorneys will retain any excess.

6. If it is determined that one or more of the responsible parties is a governmental agency and that the recovery and/or attorneys' fees are limited by law against the party, it is understood that the attorneys' fee on account of the recovery from that party shall be the amount provided by law.

Clients __, __, __ T. Howard TH R. Diaz __ C. Santisteban,, Jr. __ D. Eaton __ J.B Harris __

7. All contingency fee amounts referenced above are with the understanding that the client approves attorneys' fees of 40%, plus an additional 5% in attorneys' fees if appeal is taken, this is a reduction of 5% from the Second Amended Contract for Legal Representation.

8. If there is an award of attorneys' fees and costs as a result of a judgment 25% above the proposal for settlement, this shall be added to the recovery and the contingency fee amounts will apply to this recovery as well.

9. The payment of an attorneys' fee is contingent upon a recovery being obtained. If no recovery is made, the client owes nothing for attorneys' fees.

## II. COSTS

The Attorneys agree to advance the payment of costs reasonably necessary to prepare the case until a recovery is obtained. The client agrees to reimburse all costs incurred if a recovery is obtained. "Costs" include filing fees, witness fees, expert witness costs, travel expenses, telephone charges, copying charges, fax charges, deposition costs, investigator costs and time, messenger service cost, mediation expenses, computer research fees, medical or nursing consultations, and all out-of-pocket expenses incurred on the client's behalf.

The client wishes to reduce the costs repaid to former attorneys for the Barbara Ulrich and Wendy Gould second days of depositions, since these depositions could have been completed the initial day of deposition but for counsel wanting to leave early for a concert in Ft. Lauderdale, and an event that the deponents were not responsible for. The client wishes to not pay for the two flights, two hotel rooms, food expenses and the client missing 4 days of pay. By signing this agreement, the parties agree that these costs will not be paid for former attorneys.

The repayment of costs is contingent upon a recovery being obtained. If no recovery is made, the client owes nothing for costs.

Clients __, __, __ T. Howard __ R. Diaz __ C. Santisteban,, Jr. __ D. Eaton __ J.B Harris __

## III. TERMINATION

The contract may be cancelled by written notification to the attorneys at any time within three (3) business days of the date the contract was signed, as shown in this contract. If properly cancelled the client shall not be obligated to pay any fees to the attorneys for the work performed during that time. If the attorneys have advanced funds to others in representation of the client, the attorneys are entitled to be reimbursed for such amounts as they have reasonably advanced on behalf of the client.

If the client terminates this agreement after three business days, the client will be obligated to pay all costs and expenses incurred by the attorneys, and must, in addition, pay from the proceeds of any recovery the reasonable value of services provided by the firm.

The attorneys reserve the right to withdraw from the case.

## IV. STATEMENT OF RIGHTS

The undersigned client has, before signing this contract, received and read The Statement of Client's Rights, and understands each of the rights set forth therein. The undersigned client has signed the statement and received a signed copy to keep and to refer to while being represented by the undersigned attorneys.

If two law firms are named above, the client agrees that the attorneys' fee will be shared between the firms. Both firms are available and responsible to the client for consultation. The association of these firms has been discussed and approved by the client.

Upon conclusion of the claim, Howard & Associates, Attorneys at Law, P.A., will provide the client with a closing statement listing all of the financial details of the case, including the amount recovered, all expenses and a precise statement of attorneys' fees.

Upon receipt and execution of any settlement or court awarded judgment, client agrees that Howard & Associates, P.A., has explicit authority to deposit all settlement funds (via wire transfer or otherwise as required) into the firm's account, and then to distribute appropriately once the client has executed a final closing statement.

## V. SIGNATURE OF THE PARTIES

We agree to employ the above-named attorneys. This contract contains our entire agreement and is not valid unless signed by both parties. I have received a copy.

______________________________ ______________
Jacqueline Sacs, Co-Personal Representative Date
Estate of Stanley Gould

______________________________ ______________
Wendy Gould, Co-Personal Representative Date
Estate of Stanley Gould

______________________________ ______________
Barbara Ulrich, Co-Personal Representative Date
Estate of Stanley Gould

ATTORNEY:

[signature] 6/6/18
Dr. Tim Howard, Esq., Howard & Associates Date

TERMINATED ATTORNEYS:

______________________________ ______________
Richard J. Diaz, Esq. Date
Richard J. Diaz, P.A.

______________________________ ______________
J.B. Harris, Esq. Date
J.B. Harris, P.A.

______________________________ ______________
Carlos Santisteban, Esq. Date
Carlos Santisteban, Jr., P.A.

______________________________ ______________
Doug Eaton, Esq. Date
Eaton & Walk, PL

## V. SIGNATURE OF THE PARTIES

We agree to employ the above-named attorneys. This contract contains our entire agreement and is not valid unless signed by both parties. I have received a copy.

______________________________ Date
Jacqueline Sacs, Co-Personal Representative
Estate of Stanley Gould

______________________________ Date
Wendy Gould, Co-Personal Representative
Estate of Stanley Gould

______________________________ Date
Barbara Ulrich, Co-Personal Representative
Estate of Stanley Gould

ATTORNEY:

[signature] 6/6/18
Dr. Tim Howard, Esq., Howard & Associates Date

TERMINATED ATTORNEYS:

______________________________ Date
Richard J. Diaz, Esq.
Richard J. Diaz, P.A.

______________________________ Date
J.B. Harris, Esq.
J.B. Harris, P.A.

______________________________ Date
Carlos Santisteban, Esq.
Carlos Santisteban, Jr., P.A.

______________________________ Date
Doug Eaton, Esq.
Eaton & Walk, PL

damages against tobacco company defendant(s) arising from smoking related diseases, medical conditions and death related to:

- Aortic Aneurysm
- Bladder Cancer
- Cerebrovascular Disease
- Cervical Cancer
- Chronic Obstructive Pulmonary Disease
- Coronary Heart Disease
- Esophageal Cancer
- Kidney Cancer
- Laryngeal Cancer
- Lung Cancer (specifically; adenocarcinoma, large cell carcinoma, small cell carcinoma and squamous cell carcinoma)
- Complications of pregnancy
- Oral Cavity – Tongue Cancer
- Pancreatic Cancer
- Stomach Cancer
- Peripheral Vascular Disease

The Estate's employment of the Attorneys is on the basis of a contingent fee to be determined on the basis of the recovery. Recovery means the value of all benefits obtained including all sums, proceeds of other compensation received. The Attorneys' fee shall be forty-five (45%) of all recoveries, regardless of the amount recovered. An additional 5% Attorney's fee shall be charged if an appeal is taken on the case and will be payable to Eaton & Wolk, PL.

Eaton & Wolk, PL has been, since its appearance, and will remain, primarily responsible for drafting pleadings and motions and memoranda; preparing jury instructions and verdict forms; and for providing legal research and advice to the client and members of the legal team. Eaton & Wolk, PL may appear at hearing, conferences, mediations, depositions, or trial, but is not required to do so as the firm's role is to provide legal research and writing upon request from co-counsel. Eaton & Wolk, PL will represent the Client as appellate counsel in any and all appellate proceedings in this case. However, the Attorneys shall each be available to the Client for consultations concerning the case and have each assumed the same legal responsibility in the handling of the case.

I hereby authorize the Attorneys to continue to advance costs as necessary for the continued prosecution of this case. Such costs have included, and in the future may include, but are not

Client ____
C. Santisteban ____

T. Howard ____
D. Eaton ____

R. Diaz ____
J.B. Harris ____

- Richard J. Diaz, P.A. fee is 70% of the Net Fees.
- The J.B. Harris, P.A. fee is 20 % of the Net Fees.
- The Carlos Santisteban, Jr., P.A. fee is 10% of the Net Fees.

I understand that this division of the net fees shall in no way increase the forty-five percent (45%) attorney's fees the Estate has agreed to pay. Although the Estate has no pending claim for fees from the defendants, if a claim to attorney's fee subsequently arises and the Court awards such fees to the Estate, or the parties negotiate such fees, the Attorneys will be entitled to the greater of the fee awarded by the Court or negotiated by the parties, or all the attorney's fees allowable under this contract.

The total costs of litigation will be advanced by Richard J. Diaz, P.A. I understand that recovery of money damages under the Florida Supreme Court's *Engle* decision is uncertain and that success cannot be guaranteed. I have not been promised a recovery. In the event that the Attorneys determine, after further preparation of the case, that in their sole opinion there are no reasonable prospects of success, or success cannot be achieved without excessive or unreasonable expenditures of costs, time, or effort, I understand that after advising me, the Attorneys are relieved of any obligation to pursue the Estate's claims and may withdraw from representing the Estate in accordance with the rules of state or federal procedures.

The undersigned client has, before signing this contract, received and read the Statement of Client's Rights, and understands each of the rights set forth therein. The undersigned client has signed the statement and received a signed copy to keep and to refer to while being represented by the undersigned attorneys.

The Client is hereby further informed, has been further counseled on and further understands the operation of any proposal for settlement ("PFS") that might be served on the Client by one or more of the defendants in this case. A PFS is an offer by a defendant to a plaintiff to fully settle the case as between them for a certain sum of money. It is open for 30 days from the date of service. If the PFS is not accepted within those 30 days, the offer expires.

If the PFS is accepted within those 30 days, the case will end between the Client and that defendant and there will be no trial as to that defendant. If the PFS is rejected, meaning, that the



Client ____
C. Santisteban ____

T. Howard ____
D. Eaton ____

R. Diaz ____
J.B. Harris ____

Client, does not accept the defendant's PFS, then there is a trial as to that defendant. If that defendant wins, or if the Client wins a verdict but the verdict does not beat the PFS by 25%, then the law allows that defendant to ask the court to award attorney's fees against the Client for its legal fees incurred in defending the claim from the date the defendant served the PFS on the Client until the jury verdict is returned. An attorney's fee award can be hundreds or thousands or even millions of dollars. However, that award would only be against the estate, not against you personally. It is our belief that the estate has zero assets except this lawsuit. Therefore, any attorney's fee awarded against the estate would be uncollectible and that would not make you individually responsible.

You understand that your lawyers in this case will have to spend significant sums of monies and attorney hours to get this case to trial. They cannot afford to do that and later have you, the Client, accept nominal (or small) proposal for settlement. Therefore, in order to go forward with your case, your signature on this contract for legal representation will evidence that you have understood and agree to decline any proposal for settlement by or from any defendant that is for the amount less than $5 million dollars, unless your attorneys advise otherwise.

You acknowledge that you have had significant opportunity to carefully review this document and have also had significant time and opportunity to get legal advice on this matter.

Dated this ____ day of March, 2018.

The above employment is hereby accepted on the terms stated above.

**CLIENTS:**

By:______________________
**Jacqueline Sacs as Co-Personal Representative**
**Of the Estate of Stanley Gould**

By:______________________
**Wendy Gould as Co-Personal Representative**
**Of the Estate of Stanley Gould**

By: [signature]
**Barbara Ulrich as Co-Personal Representative**
**Of the Estate of Stanley Gould**

Client [initials]
C. Santisteban [initials]

T. Howard ___
D. Eaton ___

R. Diaz [initials]
J.B. Harris [initials]

Contract for Legal Representation

ATTORNEYS:

By: ______________________
Richard J. Diaz, Esq.
Richard J. Diaz, P.A.

By: ______________________
J.B. Harris, Esq.
J.B. Harris, P.A.

By: ______________________
Carlos Santisteban, Esq.
Carlos Santisteban, Jr., P.A.

By: ______________________
Doug Eaton, Esq.
Eaton & Wolk, PL

TERMINATED ATTORNEY:

By: ______________________
Tim Howard, Esq.
Howard & Associates, P.A.

ACKKNOWLEDGEMENT AND CONSENT:

By: ______________________
Javlin Capital



Client ____
C. Santisteban ____

T. Howard ____
D. Eaton ____

R. Diaz ____
J.B. Harris ____

# STATEMENT OF CLIENT'S RIGHTS

Before you, the prospective client, arrange a contingency fee agreement with a lawyer, you should understand this Statement of your rights as a client. This Statement is not a part of the actual contract between you and your lawyer, but as a prospective client, you should be aware of these rights:

1. There is no legal requirement that a lawyer charge a client a set fee or a percentage of money recovered in a case. You, the client, have the right to talk with your lawyer about the proposed fee and to bargain about the rate of percentage as in any other contract. If you do not reach an agreement with one lawyer, you may talk with other lawyers.

2. Any contingency fee contract must be in writing and you have three (3) business days to reconsider the contract. You may cancel the contract without any reason if you notify your lawyer in writing within three (3) business days of signing the contract. If you withdraw from the contract within the first three (3) days, you do not owe the lawyer a fee although you may be responsible for the lawyer's actual costs during that time. But if you lawyer begins to represent you, your lawyer may not withdraw from the case without giving you notice, delivering necessary papers to you, and allowing you time to employ another lawyer. Often, your lawyer must obtain court approval before withdrawing from a case. If you discharge your lawyer without good cause after the three-day period, you may have to pay a fee for work the lawyer has done.

3. Before hiring a lawyer, you, the client, have the right to know about the lawyer's education, training and experience. If you ask, the lawyer should tell you specifically about his or her actual experience dealing with cases similar to yours. If you ask, the lawyer should provide information about special training or knowledge and give you this information in writing if you request it.

4. Before signing a contingency fee contract with you, a lawyer must advise you whether he or she intends to handle your case alone or whether other lawyers will be helping with the case. If you lawyer intends to refer the case to other lawyer, he or she should tell you what kind of fee-sharing arrangement will be made with the other lawyers. If lawyers from different law firms will represent you, at least one lawyer from each law firm must sign the contingency fee contract.

5. If your lawyer intends to refer a case to another lawyer or counsel with other lawyers, your lawyer should tell you about that at the beginning. If your lawyer takes the case and later decides to refer it to another lawyer or to associate with other lawyers, you should sign a new contract that includes the new lawyers. You, the client, also have the right to consult with each lawyer working on your case and each lawyer is legally responsible to represent your interest and is legally responsible for the acts of the other lawyers involved in the case.

6. You, the client, have the right to know in advance how you will need to pay the expenses and the legal fees at the end of the case. If you pay a deposit in advance for costs, you may ask reasonable questions about how the money will be or has been spent and how much of it remains unspent. Your lawyer should give a reasonable estimate about future necessary costs. If your lawyer agrees to lend or advance you money to prepare or research the case, you have the right to know periodically how much money your lawyer has spent on your behalf. You also have the right to decide, after consulting with your lawyer, how much money is to be spent to prepare a case. If you pay the expenses, you have the right to decide how much to spend. Your lawyer should also inform you whether the fee will be based on the gross amount recovered or on the amount recovered minus the costs.

7. You, the client, have the right to be told by your lawyer about possible adverse consequences if you lose the case. Those adverse consequences might include money that you might have to pay to your lawyer for costs, and liability you might have for attorney's fees to the other side.

8. You, the client, have the right to receive and approve a closing statement at the end of the case before you pay any money. The statement must list all of the financial details of the entire case, including the amount recovered, all expenses, and a precise statement of your lawyer's fee. Until you approve the closing statement, you need not pay any money to anyone, including your lawyer. You also have the right to have every law firm working on your case sign the closing statement.

9. You, the client, have the right to ask your lawyer at reasonable intervals how the case is progressing and to have these questions answered to the best of your lawyer's ability.

10. You, the client, have the right to make the final decision regarding settlement of a case. Your lawyer must notify you of all offers of settlement before and after the trial. Offers during the trial must be immediately communicated and you should consult with your lawyer regarding whether to accept a settlement. However, you must make the final decision to accept or reject a settlement.

11. If at any time, you, the client, believe that your lawyer has charged an excessive or illegal fee, you, the client, have the right to report the matter to The Florida Bar, the agency that oversees the practice and behavior of all lawyers in Florida. For information on how to reach The Florida Bar, call 1-800-342-8060, or contact the local bar association. Any disagreement between you and your lawyer about a fee can be taken to court and you may wish to hire another lawyer to help you resolve this disagreement. Usually fee disputes must be handled in a separate lawsuit.

DATE: ______________________

______________________ ______________________
PRINT OR TYPE NAME CLIENT SIGNATURE

DATE: ______________________

______________________ ______________________
PRINT OR TYPE NAME CLIENT SIGNATURE

______________________ 6/5/18
ATTORNEY

# EXHIBIT M

**Howard & Associates**
**Attorneys at Law, P.A.**
*Dr. Tim Howard, J.D., Ph.D., Senior Partner**
*Florida Supreme Court Certified Mediator*

**Tallahassee Office:**
**1415 East Piedmont Drive, Suite 5**
**Tallahassee, Florida 32308**
**Ph: (850) 298-4455; Fax: (850) 216-2537**
**Tim@howardjustice.com**

**Jacksonville Office:**
**444 East Duval Street**
**Jacksonville, Florida 32202**
**Ph: (904) 446-9817; Fax (904) 446-9825**
**www.howardjustice.com**

**Cambridge Office:**
**8 Museum Way**
**Suite 2407**
**Cambridge, Massachusetts 02141**
**(857) 277-0990**

June 8, 2018

**VIA EMAIL**

Re: Notice of Firm Non-Disclosure and Confidentiality Agreement; Violations

Dear Mr. Harris:

Attached please find your signed Law Firm Non-Disclosure Agreement and Confidentiality Agreement (hereinafter "Agreement") dated January 17, 2017. From a review of the correspondence, statements and documents over the past 8 months, there are clear violations of the same. In fact, there are significant written and verbal statements and actions made in furtherance of conduct pertaining to clients and against the law firm that have been knowingly false, deceptive, and defamatory in an attempt to materially mislead individuals and authorities for personal benefit and financial gain. Please note that the law firm and its clients have the right to remain free from the violations of your Agreement, and will protect that right.

We wish to thank you in advance for your compliance with the Agreement going forward,

Tim Howard, J.D., Ph.D.
Florida Bar No.: 655325
**HOWARD & ASSOCIATES, P.A.**
1415 East Piedmont Drive, Suite 5
Tallahassee, FL 32308
Telephone: (850) 298-4455
Fax: (850) 216-2537
Tim@howardjustice.com

*Admitted to practice in Florida, the District of Columbia, Northern, Middle, and Southern United States District Courts of Florida, the United States Court of Appeals for the 11th Circuit, and the United States Supreme Court. Ph.D., Northeastern University, Law, Policy & Society. Former Visiting Health Law, Bioethics, and Human Rights Scholar and Constitutional Law, Media & Politics and Judicial Process Instructor at Boston University. Former Professor and Director of Northeastern University's Law & Policy Doctorate Program. President and Professor Cambridge Graduate University International.

# LAW FIRM NON-DISCLOSURE AGREEMENT AND CONFIDENTIALITY AGREEMENT

This Agreement is made by and between J B Harris (the "Receiving Party") and Howard and Associates, P.A. and its successors in interest (the "Disclosing Party").

As an employee of (Howard and Associates, P.A.), I acknowledge that I have been instructed regarding the confidentiality of all firm business, client disclosures, activity and records and, except as required by law in the course of my duties, or where instructed in writing by my supervisor, I am aware that all firm business, firm activity, firm records client disclosures, firm books, files and memoranda are to be treated in strict confidence. I pledge that I will not disclose information relating to the firm, its business, its activities, or its clients during my employment or after termination thereof, whether such termination be voluntary or involuntary. I understand that any breach of confidentiality will be grounds for my immediate dismissal, and I may be subject to civil damages as result of any breach.

The Receiving Party understands that the Disclosing Party has disclosed or may disclose information that is strictly confidential in nature. This information may include proprietary commercial information as well as confidential client information that may be protected from disclosure under the Attorney-Client privilege.

Proprietary commercial information may include: all firm business, client disclosures, firm activity, firm records, computer software, spreadsheets and/or databases, trade secrets, patents & trademarks, names and expertise of employees and consultants, professional know-how, processes, ideas, inventions (whether patentable or not), legal strategies, marketing, correspondence and other business, financial, customer, supplier and product development plans, forecasts, strategies and information, which to the extent previously, presently, or subsequently disclosed to the Receiving Party is hereinafter referred to as "Proprietary Information" of the Disclosing Party.

Confidential client information may include: names and/or identities of clients, private correspondence to and from clients or third parties on clients' behalf, internal attorney work product, notes, client files and related documentation, billing and payment histories, which to the extent previously, presently or subsequently disclosed to the Receiving Party is hereinafter referred to as "Confidential Information" of the Disclosing Party.

In consideration of the parties' discussions and any access the Receiving Party may have to Proprietary and/or Confidential Information of the Disclosing Party, the Receiving Party hereby agrees as follows:

1. The Receiving Party agrees: (i) to hold the Disclosing Party's Proprietary and/or Confidential Information in strict confidence as a fiduciary and to take all reasonable precautions to protect such Proprietary and/or Confidential Information (including, without limitation, all precautions the Receiving Party employs with respect to its own most confidential materials), (ii) not to divulge any such Proprietary and/or Confidential Information or any information derived therefrom to any third person, (iii) not to make any use whatsoever at any time of such Proprietary and/or

Confidential Information except for the sole limited business purposes of providing the products and services contracted between the Disclosing and Receiving Parties, (iv) not to copy or reverse engineer, or attempt to derive the composition or underlying information, structure or ideas of any Proprietary and/or Confidential Information. Any employee given access to any such Proprietary and/or Confidential Information must have a legitimate "need to know" and shall be similarly bound in writing.

2. Without granting any right or license, the Disclosing Party agrees that the foregoing clauses (i), (ii), (iii) and (iv) shall not apply with respect to any information that the Receiving Party can document: (i) is generally known to the public (through no improper action or inaction by the Receiving Party or any affiliate, agent, consultant or employee), (ii) was rightfully in its possession or rightfully known by it prior to receipt from the Disclosing Party, or (iii) was rightfully disclosed to it by a third party without restriction. The Receiving Party may make disclosures required by court order provided the Receiving Party uses its best efforts to limit disclosure and to obtain confidential treatment or a protective order and has allowed the Disclosing Party to participate in the proceeding.

3. Immediately upon (i) the decision by either party not to enter into the Agreement contemplated by paragraph 1, or (ii) a request by the Disclosing Party at any time (which will be effective if actually received or three days after mailed first class postage prepaid to the Receiving Party's address herein), the Receiving Party will turn over to the Disclosing Party all Proprietary and/or Confidential Information of the Disclosing Party and all documents or media containing any such Proprietary and/or Confidential Information and any and all copies or extracts thereof. The Receiving Party understands that nothing herein (i) requires the disclosure of any Proprietary and/or Confidential Information of the Disclosing Party, which shall be disclosed if at all solely at the option of the Disclosing Party, or (ii) requires the Disclosing Party to proceed with any proposed transaction or relationship in connection with which Proprietary and/or Confidential Information may be disclosed.

4. Except to the extent required by law or as expressly agreed to in writing by the Disclosing Party, the Receiving Party shall not disclose the existence or subject matter of the negotiations or business relationship contemplated by the parties hereto.

5. If any of the provisions of this Agreement shall be held by a court or other tribunal of competent jurisdiction to be illegal, invalid or unenforceable, such provisions shall be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect.

6. This Agreement shall be governed by the law of the State of Florida without regard to the conflicts of law provisions thereof. This Agreement supersedes all prior discussions and writings and constitutes the entire Agreement between the parties with respect to the subject matter hereof. The prevailing party in any action to enforce this Agreement shall be entitled to costs and attorneys' fees.

7. No waiver or modification of this Agreement will be binding upon either party unless made in writing and signed by a duly authorized representative of such party and no failure or delay in

enforcing any right will be deemed a waiver. The obligations contained herein shall continue in perpetuity. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

IN WITNESS WHEREOF, the parties have executed this Non-Disclosure Agreement as of the day and year set forth below.

DISCLOSING PARTY

By ____________________
TYPED NAME
AND TITLE
Dated: 1 / 24 / 17

RECEIVING PARTY

By J B Harris
TYPED NAME
AND TITLE
Dated: 1 / 24 / 17

# EXHIBIT N

Gmail

**Tim Howard <tim@howardjustice.com>**

---

# Re: Non-Disclosure and Confidentiality Agreement--Violations and Compliance Going Forward

1 message

---

**J.B. Harris** <jbharrisesq@gmail.com> Fri, Jun 8, 2018 at 4:50 PM
To: Tim Howard <tim@howardjustice.com>
Cc: John Leonard <jleonard@mdmc-law.com>, Tom Woods <tom@howardjustice.com>

Tim, you breached the NDA by going behind my back to steal my clients and slandering me to them. You're a first rate coward and a scumbag. All your talk about Jesus is blasphemous garbage. Trust me, I will be pursuing my remedies forthwith. You want a war. You are going to get one. Hope you paid John Leonard his fees up front.

Did you inform the clients that (i) you are the target of a an SEC investigation; (ii) a Bar investigation; (iii) have never tried a tobacco case; (iv) wouldn't know how to if your life depended on it; (v) you don't have a pot to piss in; and (vi) can't afford to litigate a tobacco case. I doubt it. Accordingly, your actions are retaliatory for my having filed a Bar complaint against you.

Trust me, these clients know more about tobacco litigation than you ever will. I can also assure you they will rip you to shreds once they see through your sociopathic charade.

By the way, the Bar is starting to debrief your former employees. Seems like you've been on the Bar's radar for quite sometime. Your days as a lawyer are numbered. I'm sure your family will be so proud of you once they find out.

Enjoy your weekend.

On Fri, Jun 8, 2018 at 4:27 PM, Tim Howard <tim@howardjustice.com> wrote:

> Dear Mr. Harris,
>
> Attached please find notice of your Non-Disclosure and Confidentiality Agreement, Violations and Compliance Going Forward.
>
> Thank you for your attention to this matter.
>
> *Tim Howard*
>
> Professor Tim Howard, J.D., Ph.D.
> Howard & Associates, P.A.

HOWARD JUSTICE

JUSTICE Defending Liberty Pursuing Justice

Tallahassee, Floida Office:
1415 East Piedmont Drive, Suite 5
Tallahassee, FL 32308
(850) 999-8624 (o)

Jacksonville, Florida Office:
444 East Duval Street
Jacksonville, FL 32207
(850) 298-4455 (o)
(850 216-2537 (f)
Law Firm Website: www.howardjustice.com
tim@howardjustice.com

Cambridge, Massachusetts Office:
8 Museum Way, Suite 2407
Cambridge, MA 02141
(617) 373-6076

President, Cambridge Graduate University International
One Broad Street, 14th Floor
Cambridge, Massachusetts 02142
(877) 645-6225 (6GLOBAL)
www.cguiedu.com
president@cguglobal.net
https://www.facebook.com/tim.howard.752861

PLEASE NOTE: This message, including any attachments, may include privileged or confidential information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited. If you are not the intended recipient, please notify the sender by replying to this message and delete it from your system.

--

**J.B. Harris, P.A.**
**3127 Ponce De Leon Blvd.**
**Coral Gables, Florida 33134**
**Cell: (786) 303-8333**
**jbharrisesq@gmail.com**

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

# EXHIBIT O

Gmail by Google

Tim Howard <tim@howardjustice.com>

## JB HARRIS - MY OPINION OF THIS LAWYER

1 message

**Barbara Ulrich** <ftlauderdalelady@aol.com> Sun, Jun 10, 2018 at 10:01 PM
To: tim@howardjustice.com
Cc: isacsphoto@gmail.com, wgould112@yahoo.com

Dear Dr. Howard:

With all that has transpired over the last few days, I wanted to put in writing my thoughts and opinion concerning JB Harris. I would like for this email to be included in the packet you will be sending to the Florida Bar.

My sisters and I have known JB Harris for many years, as he was the council who used to represent us. I want the Florida Bar to know that in no way, did you "steal" the Gould sisters. Nor did you go behind his back to take over our business. The truth of the matter is very simple. The three of us sought you out.

I also want the Florida Bar to know that JB Harris is one of the most despicable and abusive men walking around on 2 legs. He spoke to all 3 of the Gould sisters in such nasty and demeaning ways. He has said to us on more then one occasion that "we are to do whatever the fuck he says. If not I will cut you 3 loose and just move on to the next person on my list".Unless it was something he wanted, he always spoke in very rude wordsto us.

Because of how verbally abusive he is, his threats to each of us and the constant bullying of his clients, the Gould sisters finally fired JB Harris. I can only hope some serious actions will be taken against this lawyer before he does the same to whoever is "next on his list".

Thank you very much.

Barbara Ulrich
Daughter of Stanley Gould

# ATTACHMENT II

RECEIVED

DEC 8 2021

THE FLORIDA BAR

# The Florida Bar
# Inquiry/Complaint Form

**PART ONE (See Page 1, PART ONE – Complainant Information.):**

Your Name: Phillip Timothy Howard

Organization: Howard & Associates, Attorneys at Law, P.A.

Address: 3122 Mahan Drive, Suite 801

City, State, Zip Code: Tallahassee, Florida 32308

Phone: (850) 510-6021

Email: tim@howardjustice.com

ACAP Reference No.:

Does this complaint pertain to a matter currently in litigation? Yes Perjury, extortion, Bar Violations documented No SC19-157

**PART TWO (See Page 1, PART TWO – Attorney Information.):**

Attorney's Name: J.B. Harris Florida Bar No. 495034

Address: 3127 Ponce De Leon Boulevard

City, State, Zip Code: Miami, Florida 33134-6816

Phone: (786) 303-8333

**PART THREE (See Page 1, PART THREE – Facts/Allegations.): The specific thing or things I am complaining about are: (attach additional sheet).**

**PART FOUR (See Page 1, PART FOUR – Witnesses.): The witnesses in support of my allegations are: (attach additional sheet).**

**PART FIVE (See Page 1, PART FIVE – Acknowledge Oath and Signature.):**

☑ YOU MUST PLACE YOUR MARK IN THE BOX ACKNOWLEDGING THE OATH AND YOU MUST SIGN YOUR FULL NAME BELOW.

**Under penalties of perjury, I declare that the foregoing facts are true, correct and complete.**

Phillip Timothy Howard

Print Name

[signature]

Signature

12/08/21

Date

If viewing this form on an Apple™ product in Preview mode, to sign it electonically you will first have to download and open the document in Adobe Acrobat™.

## PART THREE

## SUBMISSION TO THE FLORIDA BAR

### I. DOCUMENTATION OF REPEATED NOTICED OF SUBSTANTIAL CRIMINAL AND FRUADULENT ACTS, AND BAR VIOLATIONS

JB Harris has extensive written evidence documenting under oath, substantial criminal and fraudulent acts upon the Florida Bar, as well as extensive violations of the Rules of Professional Conduct. Consider the following:

| | |
|---|---|
| June 11, 2018. | Exhibit A. |
| June 25, 2018. | Exhibit B. |
| July 13, 2018. | Exhibit C. |
| August 7, 2018 | Exhibit D. |
| August 22, 2018. | Exhibit E. |
| August 28, 2018. | Exhibit F. |
| March 18, 2021. | Exhibit G. |

JB Harris engaged in documented and written schemes to extort that involve perjury, fraud, extortion, and numerous Florida Bar violations.

As an excerpt, consider the following admission of fraud and perjury found in Exhibit F, addressing Bar Complaint 2019—00,088(2A). This is an acknowledged perjurious, false and fraudulent Bar Complaint that was drafted and submitted by JB Harris, in a scheme to have the client sign something that she never read and didn't know the lies and fraud that he included therein. Under oath the complainant client of JB Harris repeatedly admits she committed perjury in her Bar Complaint that is riddled with false and fraudulent statements that JB Harris in his scheme to defraud and extort, drafted and had her sign without reading. As a limited example, this Bar Complainant states:

> Q And so **when this was filed back in 2019**, April of 2019 **you had not read the Bar complaint at that time?**
> A Correct.
> Q And you would have not been able to tell your lawyers whether -- what was in the Bar complaint was true and correct or contained false statements because you hadn't read it?
> A Correct.
> **Q And we now know that it contains statements that you believe to be false?**
> MR. DIAZ: Form.
> BY MR. MONDE:
> **Q Correct?**
> **A Correct.**
> **Q Statements that you believe to be fraudulent, correct?**
> MR. DIAZ: Form.
> **THE WITNESS: Correct.**
> Q. Now that you know that, what steps have you taken to correct that?
> A. At this point nothing that I recall.

*See* transcript attached to March 18, 2021, Exhibit F, *infra*, pp. 125-126. The Peggy Harris Bar Complaint was never read by Peggy Harris, and was not drafted by Peggy Harris, but by J.B. Harris, despite Peggy Harris filing the Bar Complaint under oath and under penalty of perjury. Peggy Harris under oath acknowledges that the Bar Complaint she signed violated criminal perjury and has extensive false and fraudulent statements. Exhibit E.

Peggy Harris admits that her Bar Complaint is fraudulent, and in response her counsel raised her 5th Amendment rights[1]:

Q. **You're saying that you signed the Bar complaint without reading it?**
A. **Correct.** I know that's—that is my fault. I'm sorry I didn't read it.
. . .
Q. Part five says that, "Signature.): **Under penalties of perjury, I declare that the foregoing facts are true, correct and complete." Do you see that?**
A. I do.
Q. And then your name is printed, correct?
A. Correct.
Q. **And then you signed your name, correct?**
**A. You understood, when you signed this <u>that you were under penalty of perjury declaring the facts in the statement to be true, correct and complete</u>?**
**A. Correct.**
Q. There was no doubt in your mind about what you were signing, correct?
A. Apparently not—apparently so.
Q. I want to make sure I understand your answer.
A. Well, I—**<u>I did not read it, so I was wrong</u>** in not—putting this down, so—
Q. And I appreciate you're acknowledging that that was wrong. And I want to understand from you why you agree that was wrong to do. You understood when you signed this that you were taking an oath to tell the truth –
A. Correct.
Q.—Just like the oath you took this morning?
A. Right.
Q. And you understood the importance of an oath in a legal proceeding, correct?
A. Yes.
Q. I mean, our legal system, you agree, depends on people telling the truth, correct?
A. Correct.
Q. Our legal system depends on people telling the full truth and not being deceptive by leaving out certain key parts, correct?
A. Correct.
. . .
**Q. You understand what perjury means, right?**
**A. Yes.**
**Q. You understand the penalties of perjury?**
**A. Yes.**
**Q. You understand that in some context perjury can be a criminal offense?**
A. Um-hum.
Q. Yes?
**A. Yes.**
**Q. Would you want any part of a judgment that you believed was based on false information?**
. . .
**A. No.**
**Q. That would be wrong?**
A. Right.
Q. Would you want to be **any part of a judgment that you believed was <u>infected by or tainted by fraud?</u>**
A. I wouldn't like it.
**Q. Would you want any part of it?**
**A. <u>No.</u>**

[1] MR. ANDERSON: Okay. Well, I'm going to respectfully disagree with you. And to the extent you ask her about her testimony related to her errata sheets, **<u>I'm going to have to instruct her not to answer on the grounds that she could be incriminating herself</u>**.
**<u>MR. MONDE: Then have her take the Fifth.</u>**

. . .

Q And so **when this was filed** back in 2019, April of 2019 **you had not read the Bar complaint at that time?**

A Correct.

Q And you would have not been able to tell your lawyers whether -- what was in the Bar complaint was true and correct or contained false statements because you hadn't read it?

A Correct.

**Q And we now know that it contains statements that you believe to be false?**

MR. DIAZ: Form.

BY MR. MONDE:

**Q Correct?**

**A Correct.**

**Q Statements that you believe to be fraudulent, correct?**

MR. DIAZ: Form.

**THE WITNESS: Correct.**

Q. Now that you know that, what steps have you taken to correct that?

A. At this point nothing that I recall.

*Id.*, at pp. 23-27, 84-85, 125-126.

In the August 22, 2018, letter to Florida Bar and State Attorney, Jack Campbell, Exhibit D, Complainant wrote specifically that this violates criminal law and Florida Bar Rules.

Dear Counsel Hinson, and State Attorney Campbell:

In response to and in support of the above-referenced inquiry/complaints, please consider the following:

The Margaret "Peggy" Harris' Inquiry/Complaint under PART FIVE, is submitted with following statement:

**"Under penalties of perjury, I declare that the foregoing facts are true, correct and complete." Signed by Margaret "Peggy" Harris, on 7-8-18.**

This is an official proceeding under Florida Bar rules and regulations, and based on the language, type set, legal research, attached documents, prior threats to extort, and consistency in his attacks in two other bar complaints, was prepared and ghost written under the guidance, control and direction of Florida attorney, Mr. J.B. Harris.

Under section 837.02(1), Fla. Stat., when perjury takes place in an official proceeding, such as in a Florida Bar complaint, the **criminal** offense of pe1jury is a third-degree felony punishable by up to 5 years in prison and a $5,000 fine. If this complaint is considered an unofficial proceeding, perjury would be considered a misdemeanor of the first degree, punishable by up to one (1) year in jail, (1) year of probation, and $1,000 in fines. Finally, if this complaint is considered before a public servant in the performance of his or her official duty, perjury would be a misdemeanor of the second degree under section 837.06, Fla. Stat.

Unfortunately for Mrs. Peggy Harris in acceding to Mr. J.B. Harris' agenda and writings, she has sworn to this bar complaint under penalties of perjury. The **exhibits attached to this 7-8-18 sworn statement** are dated 7/30/18, 7/10/18, 7/30/18, 7/30/18, and 7/30/18, **respectively.** *See* Exhibit A, Exhibit D, Exhibit E, and Exhibit F. **They are all printed from Mr. J.B. Harris' gmail account, jbharrisesg@gmail.com, on July 31, 2018, July 30, 2018, and August 3, 2018. These emails are not from Mrs. Peggy Harris.** While these exhibits do not constitute a bar violation, they are material to Mrs. Peggy Harris' (Mr. J.B. Harris') claim of such a violation.

**This is absolute perjury as one cannot swear under penalty of perjury to events that have not happened, and one can't believe that what one swears to is true when they have not happened. Thus, they are false, and all statements and attachments were material to the claim.** It is also **too late to recant this perjury as the complaint and response have taken**

**place.** This is the essence of peljury and a criminal violation under section 867.02(1), Fla. Stat. This may also violate section 837.021(1), Fla., Stat., since there are two or more material statements in official proceeding under oath that contradict each other and may constitute a second-degree felony as well.

Moreover, it is a bar violation to present false evidence. Under rule 4-1.2(d), **"A lawyer shall not counsel a client to engage, or assist a client, in conduct the lawyer knows or reasonably should know is criminal or fraudulent."** *See* Florida Bar Ethics Opinion 75-19. It is also a bar violation to offer evidence that the lawyer knows to be false and should disclose that the evidence is false to the tribunal. Rule 4-3.3(b). It is fair to state that Mr. J.B. Harris authored and prepared the entire bar complaint and is using Mrs. Peggy Harris as a front and tool for his own extortionate and denigrating agendas. In that instance, he has violated Rule 4-3.3(a)(l), (2), and (4), which require candor toward the tribunal, and has made a false statement, and has failed to correct or disclose a false statement of material fact or offered evidence that the lawyer knows to be false. In addition, Mr. J.B. Harris must report and disclose that this is his bar complaint.

Mr. J.B. Harris is consistently threatening and extorting. Just yesterday, pertaining to health insurance that this firm pays for Mr. J.B. Harris of approximately $2,500 a month, that was understood to be automatically deducted from the account, and was rectified prior to the firm being aware his threat and extortion, Mr. J.B. Harris wrote:

"Tim, I **suggest you reactivate my insurance today** **<u>or I will be at your office first thing tomorrow to spend a little quality time with you.</u>** You've placed the lives ofmy children at risk and that won't stand."

August 21, 2018 email from Mr. J.B. Harris, attached. Exhibit F, attached.[2]

---

2 In Exhibit F, it was clarified as follows:

> The facts demonstrate that this bar complaint was written by Mr. J.B. Harris as part of his continued efforts at extortion. As pointed out in the many prior filings, these documented and repeated, upon repeated patterns violate the following rules of professional conduct as promulgated by the Florida Supreme Court:
>
> A lawyer must not threaten opposing parties with sanctions, **disciplinary complaints,** criminal charges, or additional litigation to gain a tactical advantage. *See* Florida Supreme Court, Professionalism Expectations: Expectation 3.18; and Rules Regulatingthe Florida Bar: Rule 4-3.4(g).
>
> A lawyer must not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter. *See* Florida Supreme Court, RulesRegulating the Florida Bar: Rule 4-3.4(g).
>
> A lawyer must not present, participate in presenting, or threaten to present **disciplinarycharges** under these rules solely to obtain an advantage in a civil matter. *See* Florida Supreme Court, Rules Regulating the Florida Bar: Rule 4-3,4(h). 4
>
> To opposing parties and their counsel, a lawyer should act with **fairness, integrity, andcivility,** not only in court, but also **in all written and oral communications.** (Oath of Admission)
>
> Candor and civility must be used in all oral and written communications.(Professionalism Expectations: Expectation 2.2)
>
> **A lawyer must avoid disparaging personal remarks** or acrimony toward opposing parties, counsel, third parties or the court. (Professionalism Expectations: Expectation 2.3). **<u>A lawyer should be civil and courteous in all situations, both professional and personal, and avoid conduct that is degrading to the legal profession.</u>** <u>R. Regulating Fla. Bar 3-4.3. 5</u>
>
> **<u>A lawyer's communications in connection with the practice of law,</u>** including communications on social media, **<u>must not disparage another's character or competence</u>** or be used to inappropriately influence or contact others. (Professionalism Expectations: Expectation 2.5); *see* R. Regulating Fla. Bar 4-8.4(d).

JB Harris knows this violates Florida Bar Rules, yet goes on without regard to the rules as if he is immune from any accountability.[3] As an officer of the Court, Respondent should have immediately acknowledged and

---

> **<u>A lawyer must not criticize or denigrate opposing parties,</u>** witnesses, or the court **to clients, media, or members of the public.** (Professionalism Expectations: Expectation 4.20); see R. Regulating Fla. Bar 4-8.2(a) and 4-8.4(d)).

*Id.*

[3] In the June 11, 2018 filing with Shanee Hinson and Jack Campbell, State Attorney, Exhibit A, the extensive Florida Bar violations and extortion were detailed and documented as follows:

> Even though $11,583.98 was paid to Mr. Harris on December 28, 2017, on January 29, 2018, Mr. Harris threatened a Bar complaint and criminal and civil action without lawful justification for his own pecuniary advantage, in order to receive $2,000 that day, which indeed was wired that day, stating: "If **you don't throw me another miniscule $2,000 lifeline TODAY, <u>I'm filing a bar complaint against you and your lap dog Ankur.</u> I've called to make an appointment to meet with the Bar tomorrow in person.** I'm driving to Tallahassee at first light. I don't care how sick I am." Email from Mr. Harris attached as Exhibit A (emphasis added).
>
> Mr. Harris continues his threats on February 1, 2018, now demanding $80,228, in order to avoid a Bar complaint against Mr. Howard, stating: **"I've prepared a bar complaint against you which I will file tomorrow if I'm not paid in full by then."** This threat was backed up by Annie Sebastian, attorney with the Diaz law firm, without lawful justification and for their own pecuniary advantage, stating, "I will file suit to strip you of your percentage in the Bryant case and **forward the suit to the Florida Bar** along with a complaint for your failure to meet your obligations to this firm and the client." February 1, 2018 email attached as Exhibit B (emphasis added).
>
> On February 7, 2018, Mr. Harris, again threatens, with incorrect information, and without lawful justification for his own pecuniary advantage, blindly supporting another extortion scheme by a representative of BWCI Trust for a fraudulent and corrupt lender recommended by former advisors lacking skills and having ill intent, stating,
>
>> Tim, I am now aware of the predicament that you are in and that **your house of cards is rapidly collapsing.** If you haven't signed the [corrupt extortionate] agreement by the close of business today necessary to release the insurance premium payment [BWCI $345,000 to a fraudulent lender], plus the lifeline agreement with Lance [BWCI representative in false agreement and participant in fraudulent scheme], I **will proceed with the Diaz firm in aligning ourselves with 1 other creditor, to force you into bankruptcy.**
>
> February 7, 2018 email attached as Exhibit C (emphasis added). Note use of the **term,"house of cards"** as used in Kim Poling's June 4, 2018 Rebuttal, page 4.
>
> All delays under the agreement were caught up in full, including a $20,000 payment on February 9, 2018, and another $22,000 payment on February 12, 2018 (which included a $15,000 bonus). Just two weeks later, Mr. Harris, not knowing the collateral structure of the lender, on February 26, 2018, without lawful justification and for his own pecuniary advantage, threatens criminal action to gain advantage in a civil contract issue that Mr. Howard did not know existed, stating:
>
>> Accordingly, you have until this Friday at 12:00 pm March 2, 2018, to release every case belonging to me on the UCC-1's referenced herein, or on those of any other creditor of H&A, or I **am proceeding straight to the FBI** with this information. And I **will not sleep until you and Mr. Mehta are brought to justice and placed behind bars.**
>>
>> Finally, since you terminated our agreement without cause, I reserve all rights I have against you and Mr. Mehta, including without limitation claims for fraud in the inducement, fraud, conspiracy to commit fraud, intentional infliction of emotional distress and punitive damages.
>
> February 26, 2018 email from Mr. Harris is attached as Exhibit D (emphasis added).

During the month of March, Mr. Howard diligently worked with Mr. Harris and a legitimate lender to obtain funding for the prosecution of Engle cases and to secure payments to Mr. Harris and his interests. March 26, 2018 email to Mr. Harris documenting the work done to secure Mr. Harris' interests. Email and texts attached as Cumulative Exhibit E.

Due to Mr. Harris' mode of communicating with the lender, the lender informed Mr. Harris on April 3, 2018, as follows: "From now on, please do not call, text or email any Virage staff. It is detrimental to our process and not helpful to Tim." April 3, 2018 email attached as Cumulative Exhibit E. In response, Mr. Harris writes, on April 5, 2018, stating:

Marty, (1) before I **sue Virage, you, Ed and Tim for fraud and conspiracy to commit fraud,** for:

(1) intentionally and maliciously liening with your fraudulent UCC-1 my tobacco cases in which Tim had no interest in, nor had been retained by my client to represent; . . . .

(2) before I also file **a complaint against you and your co-conspirators with the SEC for the same,** alerting the SEC how you have breached your fiduciary duties to Virage and its shareholders; and

(3) before I **file a Bar complaint against you for all of the above;**

(4) you may want to man up and call me to discuss a settlement of my claims tomorrow, first thing. Otherwise, my weekend will be very busy.

April 5, 2018 email from Mr. Harris, attached as Exhibit F (emphasis added). Despite the attacks, threats, and no factual or legal basis for the attacks and threats, the parties entered into a Confidential Settlement and Release Agreement, providing Mr. Harris with $21,000 a month salary, office expenses, and health insurance, plus $50,000 on April 6, 2018. This amounts to an additional over $100,000 for Mr. Harris since early April, for a combined $450,000 over the past 16 months.

In fact, on March 30, 2018, just days earlier, Mr. Howard personally sent Mr. Harris $350 out of the $361 that I had in available to help him get through the weekend. March 30, 2018 text attached hereto as Exhibit G. Notwithstanding the compassion, diligence, repeated and continued efforts for goodness and care to advance Mr. Harris' security and interests, he has not changed his approach.

Consistent with Mr. Harris' threats of criminal prosecution, forced bankruptcy, and Bar complaints, stated on January 29, 2018, February 1, 2018, February 26, 2018, April 5, 2018, Mr. Harris is now engaged in daily threats and attacks without legal justification for pecuniary gain. The evidence indicates that Mr. Harris is conspiring with, **ghost writing and directly and indirectly assisting** in the Kim Poling Bar Complaint and Rebuttal, including but not limited to providing text information from his email [Rebuttal of Kimberly Poling to Dr. Tim Howard's Response, Exhibit E], and a copy of a transcript that only Defendants have received and upon information and belief was provided to Mr. Harris, who gave it to Ms. Poling [Rebuttal of Kimberly Poling to Dr. Tim Howard's Response, Exhibit H], as well as language, while adopting her Reply. *See* JB Harris and Kim Poling Rebuttal filed on June 4, 2018. Note, the June 4, 2018 Reply provided no new substantive information, only further incendiary and derogatory language consistent with Mr. Harris' language in the other documents.2

Mr. Harris most recent threat of criminal and civil actions, and Bar complaint, all without legal justification and for his own pecuniary advantage, as part of his extortion took place on June 6, 2018, concerning a former client of Mr. Harris, that took the initiative to contact this firm due to the abuse that they state that Mr. Harris and his team had inflicted upon them, and dropped them as counsel. *See* June 6, 2018 email from Mr. Harris to clients, counsel and Mr. Howard. Mr. Harris states:

> Tim, if you think you are having trouble with the Bar's investigation of your practices, BWCI Penson Trustees Limited, Ted Doukas, and everyone else who is still after you, **you are about to walk into a shit storm** if you steal the Goulds from me as my clients.
>
> I will lien the file for cost and fees, sue you for tortious interference and unpaid contributions to costs, **fraud and everything else I can think of. I will also amend my complaint with the Bar** and file a complaint against Neil [paralegal in office] as well.

June 6, 2018 email from Mr. Harris to Mr. Howard, client, co-counsel and lender, attached as Exhibit H (emphasis added).

On June 7, 2018, not knowing the facts, Mr. Harris continues to threaten Bar complaints, stating to a paralegal with the firm, **"I'm am left with no choice but to file a Bar complaint against you."** June 7, 2018 text to paralegal attached as Exhibit I (emphasis added). On that same date, Mr. Harris confirms to the client that "We've had our differences but have worked through them. I was VERY hurt to learn about what may be going on behind my back. We really need to speak. I **won't yell or scream.** Promise." June 7, 2018 text to his fo1mer client attached as Exhibit I (emphasis added). The client does not want to be yelled at or abused any further and this is why they switched counsel.

Also on June 7, 2018, Mr. Harris sends another text to the client disparaging counsel without legal justification and for his own pecuniary advantage, continuing his use of the extortion model of complaints to gain advantage in a civil dispute. He first implies that the Ph.D. from Northeastern University, awarded in 2005, is not legitimate. He next uses the Bar process that he coordinated with Ms. Poling for filing to continue his extortion model of practicing law to intimidate the client. He asserts that his Bar complaint is legitimate and factually based. He then falsely asserts that there is an investigation by the "Feds" of the law firm. A threat he first asserted in February of 2018. Finally, he asserts that Ankur Mehta doesn't have a **Doctorate,** which is false since he has a Juris Doctorate, and uses the UPL that he coordinated with Ms. Poling to file, as another extortion tool to address a client desire to not be abused. June 7, 2018 text to his former client attached as Exhibit J.

Continuing this pattern, on June 8, 2018, Mr. Harris, without legal justification for his own pecuniary advantage, unleashes his threats, extortion and intimidation efforts with a series of derogatory comments, such as **coward, scumbag, blasphemous, sociopathic charade, days a lawyer are numbered,** and his continued use of the Bar as an extortion device, stating:

> Tim, you breached the NDA by going behind my back to steal my clients and slandering them to me. You're a **first rate coward and a scumbag.** All your talk about **Jesus is blasphemous garbage.** Trust me, I will be pursing my remedies forthwith. You want a war. You are going to get one. Hope you paid Leonard his fees up front.
>
> Did you inform the clients that (i) you are the target of an SEC investigation; (ii) a Bar investigation; (iii) have never tried a tobacco case; (iv) wouldn't know how to if your life depended on it; (v) you don't have a pot to piss in; and (vi) can't afford to litigate a tobacco case. I doubt it. Accordingly, your actions are retaliatory for my having filed a Bar complaint against you.
>
> Trust me, these clients know about tobacco litigation than you ever will. I can also assure you they will rip you to shreds once they see through your **sociopathic charade.**
>
> By the way, the Bar is starting to debrief your former employees. Seems like you've been on the Bar's radar for quite sometime. **Your days as a lawyer are numbered. I'm sure your family will be so proud once they find out.** Enjoy your weekend.

Detailing the Bar Violations entailed, Dr. Howard provided Shanee Hinson case law and statutes on Bar violations and criminal extortion violations:

> Lawyer disciplined for sending disparaging emails to opposing counsel, calling him a liar, and making improper outbursts directed toward opposing counsel during the litigation. *The Florida Bar v. Norki11,* 132 So.3d 77 (2013)). *See also The Florida Bar v. Abramson,* 3 So.3d 964 (2009); *The Florida Bar v. Buckle,* 771 So.2d 113 (Fla. 2000); *The Florida Bar v. Sayler,* 721 So. 2d 1152 (Fla. 1998); *The Florida Bar v. Ratiner,* 46 So.3d 35 (Fla. 2010). Lawyer disciplined for sending a letter to a cou1t-appointed provisional director of corporation in which he improperly threatened to file suit against provisional director and accused the provisional director of being involved in a conspiracy. *The Florida Bar v. Norkin,* 132 So. 3d 77 (2013); *See also The Florida Bar v. Abramson,* 3 So. 3d 964 (Fla. 2009). "The First Amendment does not protect those who make harassing or threatening remarks about the judiciary or opposing counsel. Under Rule of Professional Conduct 4-8.4(d), lawyers are required to refrain from knowingly disparaging or humiliating other lawyers." *The Florida Bar v. Sayler,* 721 So.2d 1152, 1155 (Fla. 1998).
>
> Whoever, either verbally or by a written or printed communication, maliciously threatens to accuse another of any crime or offense, or by such communication maliciously threatens an injury to the person, property

presented the criminal and fraudulent conduct to the Court and Florida Bar, with a Bar investigation required by the Florida Bar Rules and criminal referral required by morrality and violation of criminal standards of conduct.

The Florida Bar has become entangled in defending this criminal conduct and consistent violation of Florida Bar Rules. When the Florida Bar is confronted that it knows of the criminal perjury, extortion[4] and fraud, before the cock crowed, three times intentionally lies to the court stating that she is "aware of no such violations," and falsely states as follows:

> **Dr. Howard**: I'm . . . talking about **a history of documented [Bar] violations which I have [provided], which you received showing extortion, threats, derogatory comments and extensive perjury that you're aware of**, that you decided [not] to go forward with -- in this case, regardless. That's what I'm referring to, his history of perjury.
>
> **Shanee Hinson**: Mr. Howard, okay. I just want to stop you because you said that I am aware of. **I am aware of no such thing**, so I just wanted to make that clear.
>
> **Dr. Howard**: Yes, you are. They're **attached to your exhibits** so you are aware of those things.
>
> **Shanee Hinson**: **I'm aware of no such violations**, is what I'm clarifying.
>
> **Dr. Howard**: **And I'm clarifying that you are, in writing. You've received written and sworn statements that are perjurious, complete perjury, under oath by both Mr. [JB] Harris, by Peggy Harris, and they are detailed with documents attached to Shanee Hinson and the Florida Bar. The Florida Bar has been fully aware of his perjury, fully aware of his Bar violations**, yet you're going forward with this, and that's why you're not calling him as a witness because you know how dirty he is.

---

or reputation of another, or maliciously threatens to expose another to disgrace, or to expose any secret affecting another, or to impute any deformity or lack of chastity to another, with intent thereby to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will, shall be guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 7775.084. Under Florida Statute 836.05, the crime of Extortion is committed when a person maliciously threatens to: Accuse another of any crime or offense; Injure the person, property or reputation of another; Expose another to disgrace; Expose any secret affecting another; or Impute any deformity or lack of chastity to another, with the intent to: Extort money or any pecuniary advantage; or Compel any person to do any act or refrain from doing any act against their will. **Actual Malice versus Legal Malice.** Although it is a subtle distinction, under the Extortion statute, the prosecutor is required to prove the threat was committed with Actual Malice, which means "means ill will, hatred, spite, evil intent." This is in contrast to what is known as Legal Malice, which only requires that an act be committed intentionally and without any lawful justification. **Penalties for Extortion.** The crime of Extortion is a Second-Degree Felony in Florida and is punishable by up to 15 years in prison, 15 years of probation, and a $10,000 fine. *Calamia v. State,* 125 So. 3d 1007 (Fla. 5th DCA 2013) (Actual malice is the standard. "A threat is malicious if it is made intentionally and without any lawful justification."); *McKee v. State,* 7 I 5 So.2d IO1 (Fla. 5th DCA 1998) (Conviction upheld for threats that defendant will destroy you, destroy your business, accusing of drug use, and threatening to make accusations to a federal agency.). "Maliciously" means wrongfully, intentionally, and without legal justification or excuse. A threat is "malicious" for purposes of exto1tion statute if it is made intentionally and without any lawful justification. It is not necessary that the person accused of extortion have the ability to carry the threat out. Threats to cause mental or psychological injuries are generally prohibited under exto1tion statute. Therefore, if you threatened to expose someone's affair to their spouse unless they paid you $1,000,000, the threat could be considered extortion for causing a psychological injury or because it was done for a monetary gain. This is extortion even if you did not know how to contact their spouse. Generally, a claim of extortion cannot be based on a threat to do an act which a person has a lawful right to do, but **you may not threaten to undertake an othenvise legal act for your own pecuniary advantage.** An attorney that repeatedly engages in conduct considered extortion can be a violation of the Florida RICO Act, pursuant to section 772.04, Florida Statutes.

[4] Dr. Howard informed Shanee Hinson of the extortion by Dana Hall and Sandra Fulup on August 3, 2018, and their conspired demand of $355,031, when nothing was owed and a full accounting and review had taken place with Sandra Fulup signed and accepted on December 23, 2013, with the opportunity for independent counsel to review and advise. The Bar has done nothing pertaining to this extortion as well. Rather, swallowed a toxic narrative by an extorter that hasn't worked in nearly 10 years, and gone after Dr. Howard. Exhibit I.

**Shanee Hinson**: Mr. Howard, let me clarify again, **I am aware of no Bar violations**.

Transcript, Vol. 2, pp. 247-249, and pp. 289-294, attached as Exhibit H.

## II. RULES VIOLATIONS

Based on the undisputed and repeatedly documented in writing, facts of:

(1) "known" "substantial" dishonesty, untrustworthiness and numerous and repeated criminal, fraudulent and Rule of Professional Conduct violations in extortion, perjury, slander;
(2) knowingly and intentionally making a false statement of fact to the Florida Bar and in depositions; and
(3) failing to disclose material facts and as a result perpetrating a criminal or fraudulent act upon the Florida Bar and the Court,

Respondent, JB Harris, has violated the following Rules Regulating the Florida Bar:

**A lawyer must not threaten opposing parties with sanctions, disciplinary complaints, criminal charges, or additional litigation to gain a tactical advantage**. *See* Florida Supreme Court, Professionalism Expectations: Expectation 3.18; and Rules Regulatingthe Florida Bar: Rule 4-3.4(g).

**A lawyer must not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter**. *See* Florida Supreme Court, Rules Regulating the Florida Bar: Rule 4-3.4(g).

**A lawyer must not present, participate in presenting, or threaten to present disciplinary charges under these rules solely to obtain an advantage in a civil matter**. *See* Florida Supreme Court, Rules Regulating the Florida Bar: Rule 4-3.4(h). 4

To opposing parties and their counsel, a lawyer should act with **fairness, integrity, and civility,** not only in court, but also **in all written and oral communications.** (Oath of Admission)

Candor and civility must be used in all oral and written communications.(Professionalism Expectations: Expectation 2.2)

**A lawyer must avoid disparaging personal remarks** or acrimony toward opposing parties, counsel, third parties or the court. (Professionalism Expectations: Expectation 2.3). **A lawyer should be civil and courteous in all situations, both professional and personal, and avoid conduct that is degrading to the legal profession.** R. Regulating Fla. Bar 3-4.3. 5

**A lawyer's communications in connection with the practice of law,** including communications on social media, **must not disparage another's character or competence** or be used to inappropriately influence or contact others. (Professionalism Expectations: Expectation 2.5); *see* R. Regulating Fla. Bar 4-8.4(d).

**A lawyer must not criticize or denigrate opposing parties,** witnesses, or the court **to clients, media, or members of the public.** (Professionalism Expectations: Expectation 4.20); see R. Regulating Fla. Bar 4-8.2(a) and 4-8.4(d)).

### RULE 4-3.3 CANDOR TOWARD THE TRIBUNAL—FLORIDA BAR

**(a) False Evidence; Duty to Disclose.** A lawyer **shall not knowingly**:

(1) **make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;**
(2) **fail to disclose a material fact** to a tribunal **when disclosure is necessary to avoid assisting a criminal or fraudulent act** by the client;

(3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or

(4) offer evidence that the lawyer knows to be false. **A lawyer may not offer testimony that the lawyer knows to be false** in the form of a narrative unless so ordered by the tribunal. **If a lawyer,** the lawyer's client, or a witness called by the lawyer has offered material evidence and the **lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures including, if necessary, disclosure to the tribunal.** A lawyer may refuse to offer evidence that the lawyer reasonably believes is false. [5]

**RULE 4-8.4 MISCONDUCT**

A lawyer shall not:

**(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist** or induce **another to do so**, or do so through the acts of another;

**(b)** commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects;

**(c) engage in conduct involving dishonesty**, fraud, **deceit, or misrepresentation**, except that it shall not be professional misconduct for a lawyer for a criminal law enforcement agency or regulatory agency to advise others about or to supervise another in an undercover investigation, unless prohibited by law or rule, and it shall not be professional misconduct for a lawyer employed in a capacity other than as a lawyer by a criminal law enforcement agency or regulatory agency to participate in an undercover investigation, unless prohibited by law or rule;

**(d) engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly**, or through callous indifference, disparage, humiliate, or discriminate against litigants, jurors, witnesses, court personnel, or other lawyers on any basis, including, but not limited to, on account of race, ethnicity, gender, religion, national origin, disability, marital status, sexual orientation, age, socioeconomic status, employment, or physical characteristic;

## III. CONSEQUENCES OF FAILURE TO ENFORCE CRIMINAL LAW AND RULES REGULATING THE FLORIDA BAR

With no accountability by the Court's nor the Florida Bar for JB Harris' perjury, extortion, defamation, violations of numerous Florida Bar rules, and support from the Florida Bar's Shanee Hinson, Esq., JB Harris, Esq., thinks he has a free license to continue these perjury and extortion tactics in filing Florida Bar complaints, and now advertises to do the same. Exhibit J. This is a plague upon the legal profession. Not holding all parties accountable, including the Court, the Florida Bar, and Shanee Hinson, **permits this poisonous, corrupt and**

---

[5] Chapter 4, Rules Regulating Professional Conduct, Scope of Rule states that:

> Failure to comply with an obligation or prohibition imposed by a rule is a basis for invoking the disciplinary process. The rules presuppose that disciplinary assessment of a lawyer's conduct will be made on the basis of the facts and circumstances as they existed at the time of the conduct in question in recognition of the fact that a lawyer often has to act upon uncertain or incomplete evidence of the situation. Moreover, the rules presuppose that whether discipline should be imposed for a violation, and the severity of a sanction, depend on all the circumstances, such as **the willfulness** and **seriousness of the violation**, extenuating factors, and whether there have been previous violations.

In Chapter 4, Rules Regulating Professional Conduct, definitions, it states that: "'Fraud' or 'fraudulent' denotes conduct having a purpose to deceive and not merely negligent misrepresentation or failure to apprise another of relevant information."

**criminal model to denigrate the morality and integrity of the profession, and this evil model of existence to fester and grow.**

# EXHIBIT A

HOWARD JUSTICE

Howard & Associates
Attorneys at Law, P.A.
Tim Howard, J.D., Ph.D., Senior Partner*
Florida Supreme Court Certified Mediator

RECEIVED 2018 JUN 11 ... STATE ATTORNEY

RECEIVED JUN 11 2018 THE FLORIDA BAR

Tallahassee, Florida Office:
1415 East Piedmont Drive, Suite 5
Tallahassee, Florida 32308
Ph: (850) 298-4455
Fax: (850) 216-2537
tim@howardjustice.com

Jacksonville, Florida Office:
444 E. Duval Street
Jacksonville, Florida 32207
Ph: (904) 446-9817
Fax: (904) 446-9825
www.howardjustice.com

June 11, 2018

VIA HAND-DELIVERY

Shanee L. Hinson, Bar Counsel
651 East Jefferson Street
Tallahassee, Florida 32399-2300

Jack Campbell, State Attorney
301 South Monroe Street, Suite 475
Tallahassee, Florida 32399-2300

Re: J.B. Harris v. Phillip Timothy Howard, TFB File No. 2018-00,342(2A); Kim Poling v. Phillip Timothy Howard, TFB File No. 2018-00,343(2A); Bar Complaint Against J.B. Harris and Law Firms Supporting his Violations of Rules 3-4.2, 4-3.4(g) and (h), 4-8.2 (a) and (d), and 4-8.4(d); Violation of Section 836.05, Florida Statutes, Crime of Extortion Including Potential Co-Conspirators.

Dear Bar Counsel Hinson, and State Attorney Campbell:

In response to the above-referenced complaints, please consider the following. Despite written threats and attacks from Mr. Harris, Florida Bar Number 495034, without lawful justification for his own pecuniary advantage, who is working directly and indirectly through a potential co-conspirator, Ms. Poling, *see* pages 3-4 and footnote 2, *supra*, we have attempted to amicably work together and have been paying for Mr. Harris' office, health insurance, salaries, since January of 2017, and have done our best to operate in good faith with Mr. Harris.

Mr. Howard has paid and is currently paying Mr. Harris' office, salary and health insurance costs from January 2017 through June of 2018. This will now end on June 30, 2018. Despite best efforts to assist Mr. Harris and having solved the underlying cash flow interruption, and resolving all financial matters with Mr. Harris, without lawful justification for pecuniary advantage, Mr. Harris continues to attack, threaten and extort.[1]

1 Mr. Harris and his co-counsel will benefit in the $ millions if Mr. Howard loses his fee percentage and is limited to
*Admitted to practice in Florida, the District of Columbia, Northern, Middle, and Southern United States District Courts of Florida, the United States Court of Appeals for the 11th Circuit, and the United States Supreme Court. Ph.D, Northeastern University, Law, Policy & Society. Former Visiting Health Law, Bioethics, and Human Rights Scholar and Constitutional Law, Media & Politics and Judicial Process Instructor at Boston University. Former Director of and Professor with Northeastern University's Law & Policy Doctorate Program. President of Cambridge Graduate University International.



Under Mr. Harris' initial Joint Prosecution and Fee Sharing Agreement, dated January 20, 2017, with Mr. Howard, Mr. Harris received $245,210.13 in salary and health insurance benefits, plus had all office costs, malpractice insurance and paralegal costs covered, plus was paid $49,759.82 for Sommers trial costs, plus received a $25,000 sign-on bonus, plus a $15,000 bonus for 2017, and another $15,000 loan from the firm, for a total compensation and benefits to him personally of $349,969.95.

Even though $11,583.98 was paid to Mr. Harris on December 28, 2017, on January 29, 2018, Mr. Harris threatened a Bar complaint and criminal and civil action without lawful justification for his own pecuniary advantage, in order to receive $2,000 that day, which indeed was wired that day, stating: "**If you don't throw me another miniscule $2,000 lifeline TODAY, I'm filing a bar complaint against you and your lap dog Ankur. I've called to make an appointment to meet with the Bar tomorrow in person.** I'm driving to Tallahassee at first light. I don't care how sick I am." Email from Mr. Harris attached as Exhibit A (emphasis added).

Mr. Harris continues his threats on February 1, 2018, now demanding $80,228, in order to avoid a Bar complaint against Mr. Howard, stating: "**I've prepared a bar complaint against you which I will file tomorrow if I'm not paid in full by then.**" This threat was backed up by Annie Sebastian, attorney with the Diaz law firm, without lawful justification and for their own pecuniary advantage, stating, "I will file suit to strip you of your percentage in the Bryant case and forward the suit to the Florida Bar along with a complaint for your failure to meet your obligations to this firm and the client." February 1, 2018 email attached as Exhibit B (emphasis added).

On February 7, 2018, Mr. Harris, again threatens, with incorrect information, and without lawful justification for his own pecuniary advantage, blindly supporting another extortion scheme by a representative of BWCI Trust for a fraudulent and corrupt lender recommended by former advisors lacking skills and having ill intent, stating,

> Tim, I am now aware of the predicament that you are in and that your **house of cards is rapidly collapsing**. . . . If you haven't signed the [corrupt extortionate] agreement by the close of business today necessary to release the insurance premium payment [BWCI $345,000 to a fraudulent lender], plus the lifeline agreement with Lance [BWCI representative in false agreement and participant in fraudulent scheme], **I will proceed with the Diaz firm in aligning ourselves with 1 other creditor, to force you into bankruptcy.**

February 7, 2018 email attached as Exhibit C (emphasis added). Note use of the term,"house of cards" as used in Kim Poling's June 4, 2018 Rebuttal, page 4.

quantum meruit. Mr. Harris is tracking the extortion of Mr. Don Reinhard, who is in prison and has a similar one year extortion scheme in using the Florida Bar, TFB No. 2018-00,265(2A), in trying to claim over $1 million, and Ms. Sandra Fulup, TFB No. 2016—00682(2A), who from a deceased client for 2008 activities and a file she has the originals of, has also tried to use the Florida Bar to extort over $300,000, when nothing is owed. These violate section 836.05, Florida Statues. *See* footnote 5, *supra*.



All delays under the agreement were caught up in full, including a $20,000 payment on February 9, 2018, and another $22,000 payment on February 12, 2018 (which included a $15,000 bonus). Just two weeks later, Mr. Harris, not knowing the collateral structure of the lender, on February 26, 2018, without lawful justification and for his own pecuniary advantage, threatens criminal action to gain advantage in a civil contract issue that Mr. Howard did not know existed, stating:

> Accordingly, you have until this Friday at 12:00 pm March 2, 2018, to release every case belonging to me on the UCC-1's referenced herein, or on those of any other creditor of H&A, **or I am proceeding straight to the FBI with this information. And I will not sleep until you and Mr. Mehta are brought to justice and placed behind bars.**
>
> Finally, since you terminated our agreement without cause, I reserve all rights I have against you and Mr. Mehta, including without limitation claims for fraud in the inducement, fraud, conspiracy to commit fraud, intentional infliction of emotional distress and punitive damages.

February 26, 2018 email from Mr. Harris is attached as Exhibit D (emphasis added).

During the month of March, Mr. Howard diligently worked with Mr. Harris and a legitimate lender to obtain funding for the prosecution of Engle cases and to secure payments to Mr. Harris and his interests. March 26, 2018 email to Mr. Harris documenting the work done to secure Mr. Harris' interests. Email and texts attached as Cumulative Exhibit E.

Due to Mr. Harris' mode of communicating with the lender, the lender informed Mr. Harris on April 3, 2018, as follows: "From now on, please do not call, text or email any Virage staff. It is detrimental to our process and not helpful to Tim." April 3, 2018 email attached as Cumulative Exhibit E. In response, Mr. Harris writes, on April 5, 2018, stating:

> **Marty, (1) before I sue Virage, you, Ed and Tim for fraud and conspiracy to commit fraud, for:**
>
> (1) intentionally and maliciously liening with your fraudulent UCC-1 my tobacco cases in which Tim had no interest in, nor had been retained by my client to represent; . . . .
>
> (2) **before I also file a complaint against you and your co-conspirators with the** SEC for the same, alerting the SEC how you have breached your fiduciary duties to Virage and its shareholders; and
>
> (3) **before I file a Bar complaint against you for all of the above;**
>
> (4) you may want to man up and call me to discuss a settlement of my claims tomorrow, first thing. Otherwise, my weekend will be very busy.



April 5, 2018 email from Mr. Harris, attached as Exhibit F (emphasis added). Despite the attacks, threats, and no factual or legal basis for the attacks and threats, the parties entered into a Confidential Settlement and Release Agreement, providing Mr. Harris with $21,000 a month salary, office expenses, and health insurance, plus $50,000 on April 6, 2018. This amounts to an additional over $100,000 for Mr. Harris since early April, for a combined $450,000 over the past 16 months.

In fact, on March 30, 2018, just days earlier, Mr. Howard personally sent Mr. Harris $350 out of the $361 that he had available, to help Mr. Harris get through the weekend. March 30, 2018 text attached hereto as Exhibit G. Notwithstanding the compassion, diligence, repeated and continued efforts for goodness and care to advance Mr. Harris' security and interests, he has not changed his approach.

Consistent with Mr. Harris' threats of criminal prosecution, forced bankruptcy, and Bar complaints, stated on January 29, 2018, February 1, 2018, February 26, 2018, April 5, 2018, Mr. Harris is now engaged in daily threats and attacks without legal justification for pecuniary gain. The evidence indicates that Mr. Harris is conspiring with, ghost writing and directly and indirectly assisting in the Kim Poling Bar Complaint and Rebuttal, including but not limited to providing text information from his email [Rebuttal of Kimberly Poling to Dr. Tim Howard's Response, Exhibit E], and a copy of a transcript that only Defendants have received and upon information and belief was provided to Mr. Harris, who gave it to Ms. Poling [Rebuttal of Kimberly Poling to Dr. Tim Howard's Response, Exhibit H], as well as language, while adopting her Reply. *See* JB Harris and Kim Poling Rebuttal filed on June 4, 2018. Note, the June 4, 2018 Reply provided no new substantive information, only further incendiary and derogatory language consistent with Mr. Harris' language in the other documents.[2]

Mr. Harris most recent threat of criminal and civil actions, and Bar complaint, all without legal justification and for his own pecuniary advantage, as part of his extortion took place on June 6, 2018, concerning a former client of Mr. Harris, that took the initiative to contact this firm due to the abuse that they state that Mr. Harris and his team had inflicted upon them, and dropped them as counsel. *See* June 6, 2018 email from Mr. Harris to clients, counsel and Mr. Howard. Mr. Harris states:

> Tim, if you think you are having trouble with the Bar's investigation of your

2 The language of the June 4, 2018 Rebuttal of Kimberly Poling tracks the extortionate and denigrating language of Mr. Harris: "poster child for intentionally turning a blind eye towards legal and ethical improprieties" . . .; "blatant lies made directly to Bar counsel . . . to shift the blame to his consigliere and right-hand man" . . . ; "pleas of ignorance, bewilderment, mystification, along with his sleight-of-hand" . . ., "Howard's three biggest lies" . . . ; "an incestuous relationship" . . . ; "Mehta Consulting was established to illicitly . . . manipulate H&A's books; (iv) issue fraudulent paychecks that were returned for insufficient funds; and (v) engage in other nefarious activities"; "pure nonsense"; "tip of a massive iceberg, the architecture of which was in place long before I was hired by the firm"; "outrageous lie, tenuously holding up Howard's house of cards," ; "blatant lie"; "equity partner"; "damning"; "larger scheme"; "insulating Howard from liability in the even the firm went belly-up, which is exactly what happened in this instance"; "firm running off the rails"; "the third lie"; "delusional"; "Howard is a dangerous lawyer. He should be summarily disbarred. Indeed, given the allegations of misuse and misappropriation of client funds, I'm surprised the Bar has not taken swifter action"; "three material lies"; "Howard's duplicitous behavior that cries for sanctions."

practices, BWCI Penson Trustees Limited, Ted Doukas, and everyone else who is still after you, you are about to walk into a shit storm if you steal the Goulds from me as my clients.

I will lien the file for cost and fees, sue you for tortious interference and unpaid contributions to costs, **fraud and everything else I can think of. I will also amend my complaint with the Bar and file a complaint against Neil [paralegal in office]** as well.

June 6, 2018 email from Mr. Harris to Mr. Howard, client, co-counsel and lender, attached as Exhibit H (emphasis added).

On June 7, 2018, not knowing the facts, Mr. Harris continues to threaten Bar complaints, stating to a paralegal with the firm, "**I'm am left with no choice but to file a Bar complaint against you.**" June 7, 2018 text to paralegal attached as Exhibit I (emphasis added). On that same date, Mr. Harris confirms to the client that "We've had our differences but have worked through them. I was VERY hurt to learn about what may be going on behind my back. We really need to speak. **I won't yell or scream. Promise.**" June 7, 2018 text to his former client attached as Exhibit I (emphasis added). The client does not want to be yelled at or abused any further and this is why they switched counsel.

Also on June 7, 2018, Mr. Harris sends another text to the client disparaging counsel without legal justification and for his own pecuniary advantage, continuing his use of the extortion model of complaints to gain advantage in a civil dispute. He first implies that the Ph.D. from Northeastern University, awarded in 2005, is not legitimate. He next uses the Bar process that he coordinated with Ms. Poling for filing to continue his extortion model of practicing law to intimidate the client. He asserts that his Bar complaint is legitimate and factually based. He then falsely asserts that there is an investigation by the "Feds" of the law firm. A threat he first asserted in February of 2018. Finally, he asserts that Ankur Mehta doesn't have a Doctorate, which is false since he has a Juris Doctorate, and uses the UPL that he coordinated with Ms. Poling to file, as another extortion tool to address a client desire to not be abused. June 7, 2018 text to his former client attached as Exhibit J.

On June 8, 2018, Mr. Harris continues his disparagement, without legal justification for his own pecuniary advantage, of myself and former paralegal with a Juris Doctorate as "**frauds and con-artists**" in an email to the Bar counsel concerning an honorary doctorate award coordinated by the representative of Cambridge Graduate University International in Lagos Nigeria, not myself nor Mr. Mehta, and a link to an article by an opposition political party journalist attacking Prince Buruji Kashamu, then Chairman of the People's Democratic Party in Nigeria, that received the award in October of 2014. June 8, 2018 email and photo attached as Exhibit K (emphasis added). The aim of this is to continue without legal justification the threats and extortionate model of practicing law.

Mr. Harris was provided Notice of Termination as Counsel by Clients and Notice of Request to Cease and Desist Contacting Jacqueline Sacs, Wendy Gould and Barbara Ulrich on June 8, 2018, due to the clients reaching out to the firm and not wanting to be abused, as well as informing



Mr. Harris that the firm also has a "**right to remain free from harassing and intimidating tactics, and will protect that right.**" Notice to Mr. Harris, Mr. Diaz, Mr. Santisteban, and Mr. Eaton, attached as Exhibit L (emphasis added).

Mr. Harris' pattern of threats, intimidation, extortion and revealing confidential client and firm information without legal justification violates the Law Firm Non-Disclosure and Confidentiality Agreement enforced for the protection of clients and the law firm. *See* Notice provided on June 8, 2018, Exhibit M.

Continuing this pattern, on June 8, 2018, Mr. Harris, without legal justification for his own pecuniary advantage, unleashes his threats, extortion and intimidation efforts with a series of derogatory comments, such as **coward, scumbag, blasphemous, sociopathic charade, days a lawyer are numbered**, and his continued use of the Bar as an extortion device, stating:

> Tim, you breached the NDA by going behind my back to steal my clients and slandering them to me. You're **a first rate coward and a scumbag. All your talk about Jesus is blasphemous garbage.** Trust me, I will be pursing my remedies forthwith. You want a war. You are going to get one. Hope you paid Leonard his fees up front.
>
> Did you inform the clients that (i) you are the target of an SEC investigation; (ii) a Bar investigation; (iii) have never tried a tobacco case; (iv) wouldn't know how to if your life depended on it; (v) you don't have a pot to piss in; and (vi) can't afford to litigate a tobacco case. I doubt it. Accordingly, your actions are retaliatory for my having filed a Bar complaint against you.
>
> Trust me, these clients know about tobacco litigation than you ever will. I can also assure you they will rip you to shreds once they see through your **sociopathic charade.**
>
> By the way, the Bar is starting to debrief your former employees. Seems like you've been on the Bar's radar for quite sometime. **Your days as a lawyer are numbered. I'm sure your family will be so proud once they find out.** Enjoy your weekend.

June 8, 2018 email attached hereto as Exhibit N (emphasis added). In response to Mr. Harris' written disparagement and threats without legal justification, his former client writes as follows:

> Dear Dr. Howard:
>
> With all that has transpired over the last few days, I wanted to put in writing my thoughts and opinion concerning JB Harris. I would like for this email to be included in the packet you will be sending to the Florida Bar.
>
> My sisters and I have known JB Harris for many years, as he was the counsel who used to represent us. I want the Florida Bar to know that in no way, did you



> "steal" the Gould sisters. Nor did you go behind his back to take over our business. The truth of the matter is very simple. <u>The three of us sought you out.</u>
>
> I also want the Florida Bar to know that JB Harris is one of the most despicable and abusive men walking around on 2 legs. He spoke to all 3 of the Gould sisters in such nasty and demeaning ways. He has said to us on more than one occasion, that "we are to do whatever the __ ck he says. If not I will cut you 3 loose and just move on to the next person on my list." Unless it was something he wanted, he always spoke in very rude words to us.
>
> Because of how verbally abusive he is, his threats to each of us and the constant bullying of his clients, the Gould sisters finally fired JB Harris. I can only hope some serious actions will be taken against this lawyer before he does the same to whoever is "next on his list".
>
> Thank you very much.
>
> Barbara Ulrich
> Daughter of Stanley Gould

June 10, 2018 email from Barbara Ulrich, Daughter of Stanley Gould, attached as Exhibit O.

These documented and repeated patterns violate the following rules of professional conduct as promulgated by the Florida Supreme Court:

> A lawyer must not threaten opposing parties with sanctions, disciplinary complaints, criminal charges, or additional litigation to gain a tactical advantage. *See* Florida Supreme Court, Professionalism Expectations: Expectation 3.18; and Rules Regulating the Florida Bar: Rule 4-3.4(g).
>
> A lawyer must not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter. *See* Florida Supreme Court, Rules Regulating the Florida Bar: Rule 4-3.4(g).
>
> A lawyer must not present, participate in presenting, or threaten to present disciplinary charges under these rules solely to obtain an advantage in a civil matter. *See* Florida Supreme Court, Rules Regulating the Florida Bar: Rule 4-3.4(h). [3]

3 Lawyer disciplined for sending a threatening letter to opposing counsel. *The Florida Bar v. Sayler*, 721 So.2d 1152 (Fla. 1998). A criminal defense lawyer violated Rules 4-4.4(a) and 4-8.4(d) for sending a victim of a crime an objectively humiliating and intimidating letter designed to cause her to abandon her criminal complaint. *The Florida Bar v. Buckle*, 771 So. 2d 1131 ; *see also The Florida Bar v. Ratiner*, 46 So. 3d 35 (Fla. 2010). A lawyer should abstain from conduct that diverts the fact-finder's attention from the relevant facts or causes a fact-finder to make a legally impermissible decision. (Professionalism Expectations: Expectation 5.8)



> To opposing parties and their counsel, a lawyer should act with fairness, integrity, and civility, not only in court, but also in all written and oral communications. (Oath of Admission)
>
> Candor and civility must be used in all oral and written communications. (Professionalism Expectations: Expectation 2.2)
>
> A lawyer must avoid disparaging personal remarks or acrimony toward opposing parties, counsel, third parties or the court. (Professionalism Expectations: Expectation 2.3). A lawyer should be civil and courteous in all situations, both professional and personal, and avoid conduct that is degrading to the legal profession. R. Regulating Fla. Bar 3-4.3. [4]
>
> A lawyer's communications in connection with the practice of law, including communications on social media, must not disparage another's character or competence or be used to inappropriately influence or contact others. (Professionalism Expectations: Expectation 2.5); *see* R. Regulating Fla. Bar 4-8.4(d).
>
> A lawyer must not criticize or denigrate opposing parties, witnesses, or the court to clients, media, or members of the public. (Professionalism Expectations: Expectation 4.20); see R. Regulating Fla. Bar 4-8.2(a) and 4-8.4(d)).

These actions without legal justification, for his own pecuniary advantage, and actual malice by Mr. Harris and the firms that will benefit from and support his extortion, are a violation of section 836.05, Florida Statutes crimes against extortion for maliciously threatening.[5]

4 Lawyer disciplined for sending disparaging emails to opposing counsel, calling him a lier, and making improper outbursts directed toward opposing counsel during the litigation. *The Florida Bar v. Norkin*, 132 So.3d 77 (2013)). *See also The Florida Bar v. Abramson*, 3 So.3d 964 (2009); *The Florida Bar v. Buckle*, 771 So.2d 1131 (Fla. 2000) ; *The Florida Bar v. Sayler*, 721 So. 2d 1152 (Fla. 1998); *The Florida Bar v. Ratiner*, 46 So.3d 35 (Fla. 2010). Lawyer disciplined for sending a letter to a court-appointed provisional director of corporation in which he improperly threatened to file suit against provisional director and accused the provisional director of being involved in a conspiracy. *The Florida Bar v. Norkin*, 132 So. 3d 77 (2013); *See also The Florida Bar v. Abramson*, 3 So. 3d 964 (Fla. 2009). "The First Amendment does not protect those who make harassing or threatening remarks about the judiciary or opposing counsel. Under Rule of Professional Conduct 4-8.4(d), lawyers are required to refrain from knowingly disparaging or humiliating other lawyers." *The Florida Bar v. Sayler*, 721 So.2d 1152, 1155 (Fla. 1998).

5 Whoever, either verbally or by a written or printed communication, maliciously threatens to accuse another of any crime or offense, or by such communication maliciously threatens an injury to the person, property or reputation of another, or maliciously threatens to expose another to disgrace, or to expose any secret affecting another, or to impute any deformity or lack of chastity to another, with intent thereby to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will, shall be guilty of a felony of the second degree, punishable as provided in s. <u>775.082</u>, s. <u>775.083</u>, or s. <u>775.084</u>. Under Florida Statute 836.05, the crime of Extortion is committed when a person maliciously threatens to: Accuse another of any crime or offense; Injure the person, property or reputation of another; Expose another to disgrace; Expose any secret affecting another; or Impute any deformity or lack of chastity to another, with the intent to: Extort money or any pecuniary advantage; or Compel any person to do any act or refrain from doing any act against their will. Actual Malice versus Legal Malice. Although it is a subtle distinction, under the Extortion statute, the prosecutor is required to prove the threat was committed with Actual

We did not want to have to report these violations, as this firm in its 23 years of existence, has never reported any fellow member of the Bar to the Bar or to law enforcement and has always tried to resolve disputes and issues amicably and professionally with good faith. Regrettably and with deep disappointment and reluctance, in this instance, the consistent and now almost daily invectives, direct threats and documented Bar and criminal violations leave no option.

Sincerely Yours,

Tim Howard

(Phillip) Tim Howard, J.D., Ph.D.

---

Malice, which means "means ill will, hatred, spite, evil intent." This is in contrast to what is known as Legal Malice, which only requires that an act be committed intentionally and without any lawful justification. Penalties for Extortion. The crime of Extortion is a Second-Degree Felony in Florida and is punishable by up to 15 years in prison, 15 years of probation, and a $10,000 fine. *Calamia v. State*, 125 So. 3d 1007 (Fla. 5th DCA 2013) (Actual malice is the standard. "A threat is malicious if it is made intentionally and without any lawful justification."); *McKee v. State*, 715 So.2d 101 (Fla. 5th DCA 1998) (Conviction upheld for threats that defendant will destroy you, destroy your business, accusing of drug use, and threatening to make accusations to a federal agency.). "Maliciously" means wrongfully, intentionally, and without legal justification or excuse. A threat is "malicious" for purposes of extortion statute if it is made intentionally and without any lawful justification. It is not necessary that the person accused of extortion have the ability to carry the threat out. Threats to cause mental or psychological injuries are generally prohibited under extortion statute. Therefore, if you threatened to expose someone's affair to their spouse unless they paid you $1,000,000, the threat could be considered extortion for causing a psychological injury or because it was done for a monetary gain. This is extortion even if you did not know how to contact their spouse. Generally, a claim of extortion cannot be based on a threat to do an act which a person has a lawful right to do, but you may not threaten to undertake an otherwise legal act for your own pecuniary advantage. An attorney that repeatedly engages in conduct considered extortion can be a violation of the Florida RICO Act, pursuant to section 772.04, Florida Statutes.

# EXHIBIT B

HOWARD JUSTICE

RECEIVED 2018 JUN 25 PM 2:39

RECEIVED JUN 25 2018 THE FLORIDA BAR

Howard & Associates
Attorneys at Law, P.A.
Dr. Tim Howard, J.D., Ph.D., Senior Partner*
Florida Supreme Court Certified Mediator

Tallahassee, Florida Office:
1415 East Piedmont Drive, Suite 5
Tallahassee, Florida 32308
Ph: (850) 298-4455
Fax: (850) 216-2537
tim@howardjustice.com

Jacksonville, Florida Office:
444 E. Duval Street
Jacksonville, Florida 32207
Ph: (904) 446-9817
Fax: (904) 446-9825
www.howardjustice.com

June 25, 2018

VIA HAND-DELIVERY

Shanee L. Hinson, Bar Counsel
651 East Jefferson Street
Tallahassee, Florida 32399-2300

Jack Campbell, State Attorney
301 South Monroe Street, Suite 475
Tallahassee, Florida 32399-2300

Re: J.B. Harris v. Phillip Timothy Howard, TFB File No. 2018-00,342(2A); Kim Poling v. Phillip Timothy Howard, TFB File No. 2018-00,343(2A); Bar Complaint Against J.B. Harris and Law Firms Supporting his Violations of Rules 3-4.2, 4-3.4(g) and (h), 4-8.2 (a) and (d), and 4-8.4(d); Violation of Section 836.05, Florida Statutes, Crime of Extortion Including Potential Co-Conspirators. Continuing Acts by Mr. Harris.

Dear Bar Counsel Hinson, and State Attorney Campbell:

Continuing the pattern of violating Florida Bar rules and extortion, Mr. Harris, in response to true statements provided by his former clients concerning his abuse of them, on June 22, 2018, wrote the following derogatory and extortionate demands to his former clients and myself:

> Tim, your sociopathy is exceeded only by your stupidity. In your haste to forestall litigation over the Gould clients by sending to me a 57.105 letter, you procured their defamation and slander of me in the process.
>
> It was not enough for Mss. Ulrich and Gould to simply state they wanted you as their lawyer and leave it at that. As opposed to your having corralled them, as I firmly believe you did. You also encouraged them to assassinate my character and impugn my integrity by appending their scurrilous emails to your 57.105 letter. If they had a lawyer that knew what he was doing, you never would have allowed the publication of their emails.
>
> Accordingly, if by the close of business next Friday, June 29th, Ulrich and Gould do not retract the slanderous and defamatory statements contained in their emails attached to your 57.105 letter and offer up to me their sincere written apologies, I will sue them both for defamation and slander in Miami.
>
> When I do, I will be sure to enumerate all the vicious and vile things Ulrich and Gould have said about their far more intelligent sister, Jacquie, who I note did not fall for your ploy of offering up her "opinion" of me. ...
>
> After I sue Ulrich and Gould, I will then move for your disqualification as their counsel, since you cannot be a defendant in the underlying case and represent at the same time in a derivative defamation and slander action. Which will then give rise to the question of whether you committed malpractice by publishing their ill-conceived emails.

June 22, 2018 email from Mr. Harris to Former Clients (emphasis added).

Again, we did not want to have to report these violations, as this firm in its 23 years of existence, has never reported any fellow member of the Bar or to law enforcement and has always tried to resolve disputes and issues amicably and professionally with good faith. Regrettably and with deep disappointment and reluctance, in this instance, the consistent and now almost daily invectives, direct threats and documented Bar and criminal violations leave no option.

Sincerely Yours,

(Phillip) Tim Howard, J.D., Ph.D.

*Admitted to practice in Florida, the District of Columbia, Northern, Middle, and Southern United States District Courts of Florida, the United States Court of Appeals for the 11th Circuit, and the United States Supreme Court. Ph.D, Northeastern University, Law, Policy & Society. Former Visiting Health Law, Bioethics, and Human Rights Scholar and Constitutional Law, Media & Politics and Judicial Process Instructor at Boston University. Former Director of and Professor with Northeastern University's Law & Policy Doctorate Program. President of Cambridge Graduate University International.







Gmail by Google

Tim Howard <tim@howardjustice.com>

**Re: Harris v. Howard CASE NO.: 2018-019879-CA-01 (11th Jud. Cir.)**
1 message

J.B. Harris <jbharrisesq@gmail.com> Fri, Jun 22, 2018 at 1:07 PM
To: Tim Howard <tim@howardjustice.com>
Cc: Neil Epstein <Neil@howardjustice.com>, Tom Woods <tom@howardjustice.com>, Jacqueline Sacs <isacsphoto@gmail.com>, Barbara Ulrich <FtLauderdaleLady@aol.com>, Wendy Gould <wgould112@yahoo.com>, John Paul Leonard <jleonard@mdmc-law.com>, Rick Diaz <rick@rjdpa.com>, Carlos Santisteban <carlos@csjrlaw.com>, Doug Eaton <deaton@eatonwolk.com>, William Wolk <wwolk@eatonwolk.com>

Tim, your sociopathy is exceeded only by your stupidity. In your haste to forestall litigation over the Gould clients by sending to me a 57.105 letter, you procured their defamation and slander of me in the process.

It was not enough for Mss. Ulrich and Gould to simply state they wanted you as their lawyer and leave it at that. As opposed to your having corralled them, as I firmly believe you did. You also encouraged them to assassinate my character and impugn my integrity by appending their scurrilous emails to your 57.105 letter. If they had a lawyer who knew what he was doing, you never would have allowed the publication of their emails.

Accordingly, if by the close of business next Friday June 29th, Ulrich and Gould do not retract the slanderous and defamatory statements contained in their emails attached you your 57.105 letter and offer up to me their sincere written apologies, I will sue them both for defamation and slander in Miami.

When I do, I will be sure to enumerate all the vicious and vile things Ulrich and Gould have said about their far more intelligent sister, Jacquie, who I note did not fall for your ploy of offering up her "opinion" of me. Jacquie knows deep in her heart that her father's case would have died on the vine years ago, since no one else wanted it, or believed in it, the way I have.

After I sue Ulrich and Gould, I will then move for your disqualification as their counsel, since you cannot be a defendant in the underlying case and represent them at the same time in a derivative defamation and slander action. Which will then give rise to the question of whether you committed malpractice by publishing their ill-conceived emails. A question Ulrich and Gould may want answered from a competent malpractice attorney.

GOVERN YOURSELVES ACCORDINGLY

Very truly yours,

On Thu, Jun 21, 2018 at 3:25 PM, Tim Howard <tim@howardjustice.com> wrote:
Dear Mr. Harris,



On behalf of all Defendants cited in your action, and to all parties that you provided notice of this action, attached please find the Twenty-One Day Safe Harbor Notice of Unsupported Claims Pursuant to Section 57.105, Florida Statutes, and the corresponding requirement to withdraw these unsupported claims. We are sending this notice via email and will send a hard copy via first class U.S. mail today.

Thank you for your review and compliance with the statutory requirements.

Tim Howard

Professor Tim Howard, J.D., Ph.D.
Howard & Associates, P.A.

HOWARD JUSTICE

JUSTICE — Defending Liberty Pursuing Justice

Tallahassee, Floida Office:
1415 East Piedmont Drive, Suite 5
Tallahassee, FL 32308
(850) 999-8624 (o)

Jacksonville, Florida Office:
444 East Duval Street
Jacksonville, FL 32207
(850) 298-4455 (o)
(850 216-2537 (f)
Law Firm Website: www.howardjustice.com
tim@howardjustice.com

Cambridge, Massachusetts Office:
8 Museum Way, Suite 2407
Cambridge, MA 02141
(617) 373-6076

President, Cambridge Graduate University International
One Broad Street, 14th Floor
Cambridge, Massachusetts 02142
(877) 645-6225 (6GLOBAL)
www.cguiedu.com
president@cguglobal.net
https://www.facebook.com/tim.howard.752861

PLEASE NOTE: This message, including any attachments, may include privileged or confidential information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited. If you are not the intended recipient, please notify the sender by replying to this message and delete it from your system.

J.B. Harris, P.A.
3127 Ponce De Leon Blvd.
Coral Gables, Florida 33134
Cell: (786) 303-8333
jbharrisesq@gmail.com

# EXHIBIT C

HOWARD JUSTICE

RECEIVED 2018 AUG 22 PM 3:17 JACK CAMPBELL STATE ATTORNEY

RECEIVED AUG 22 2018 THE FLORIDA BAR

Howard & Associates
Attorneys at Law, P.A.
Dr. Tim Howard, J.D., Ph.D., Senior Partner*
Florida Supreme Court Certified Mediator

Tallahassee, Florida Office:
1415 East Piedmont Drive, Suite 5
Tallahassee, Florida 32308
Ph: (850) 298-4455
Fax: (850) 216-2537
tim@howardjustice.com

Jacksonville, Florida Office:
444 E. Duval Street
Jacksonville, Florida 32207
Ph: (904) 446-9817
Fax: (904) 446-9825
www.howardjustice.com

August 22, 2018

VIA HAND-DELIVERY

Shanee L. Hinson, Bar Counsel
651 East Jefferson Street
Tallahassee, Florida 32399-2300

Jack Campbell, State Attorney
301 South Monroe Street, Suite 475
Tallahassee, Florida 32301

Re: Margaret "Peggy" Harris v. Phillip Timothy Howard, TFB File No. 2019-00,088(2A); and Phillip Timothy Howard v. Jonathan B. Harris, TFB File No. 2019-70,042(11J).

Dear Counsel Hinson, and State Attorney Campbell:

In response to and in support of the above-referenced inquiry/complaints, please consider the following:

The Margaret "Peggy" Harris' Inquiry/Complaint under PART FIVE, is submitted with following statement:

"Under penalties of perjury, I declare that the foregoing facts are true, correct and complete." Signed by Margaret "Peggy" Harris, on 7-8-18.

This is an official proceeding under Florida Bar rules and regulations, and based on the language, type set, legal research, attached documents, prior threats to extort, and consistency in his attacks in two other bar complaints, was prepared and ghost written under the guidance, control and direction of Florida attorney, Mr. J.B. Harris.

Under section 837.02(1), Fla. Stat., when perjury takes place in an official proceeding, such as in a Florida Bar complaint, the criminal offense of perjury is a third-degree felony punishable by up to 5 years in prison and a $5,000 fine. If this complaint is considered an unofficial proceeding, perjury would be considered a misdemeanor of the first degree, punishable by up to one (1) year in jail, (1) year of probation, and $1,000 in fines. Finally, if this complaint is considered before a

*Admitted to practice in Florida, the District of Columbia, Northern, Middle, and Southern United States District Courts of Florida, the United States Court of Appeals for the 11th Circuit, and the United States Supreme Court. Ph.D, Northeastern University, Law, Policy & Society. Former Visiting Health Law, Bioethics, and Human Rights Scholar and Constitutional Law, Media & Politics and Judicial Process Instructor at Boston University. Former Director of and Professor with Northeastern University's Law & Policy Doctorate Program. President of Cambridge Graduate University International.



public servant in the performance of his or her official duty, perjury would be a misdemeanor of the second degree under section 837.06, Fla. Stat.

Unfortunately for Mrs. Peggy Harris in acceding to Mr. J.B. Harris' agenda and writings, she has sworn to this bar complaint under penalties of perjury. The exhibits attached to this 7-8-18 sworn statement are dated 7/30/18, 7/10/18, 7/30/18, 7/30/18, and 7/30/18, respectively. *See* Exhibit A, Exhibit D, Exhibit E, and Exhibit F. They are all printed from Mr. J.B. Harris' gmail account, jbharrisesq@gmail.com, on July 31, 2018, July 30, 2018, and August 3, 2018. These emails are not from Mrs. Peggy Harris. While these exhibits do not constitute a bar violation, they are material to Mrs. Peggy Harris' (Mr. J.B. Harris') claim of such a violation.

This is absolute perjury as one cannot swear under penalty of perjury to events that have not happened, and one can't believe that what one swears to is true when they have not happened. Thus, they are false, and all statements and attachments were material to the claim. It is also too late to recant this perjury as the complaint and response have taken place. This is the essence of perjury and a criminal violation under section 867.02(1), Fla. Stat. This may also violate section 837.021(1), Fla., Stat., since there are two or more material statements in official proceeding under oath that contradict each other and may constitute a second-degree felony as well.

Moreover, it is a bar violation to present false evidence. Under rule 4-1.2(d), "A lawyer shall not counsel a client to engage, or assist a client, in conduct the lawyer knows or reasonably should know is criminal or fraudulent." *See* Florida Bar Ethics Opinion 75-19. It is also a bar violation to offer evidence that the lawyer knows to be false and should disclose that the evidence is false to the tribunal. Rule 4-3.3 (b). It is fair to state that Mr. J.B. Harris authored and prepared the entire bar complaint and is using Mrs. Peggy Harris as a front and tool for his own extortionate and denigrating agendas. In that instance, he has violated Rule 4-3.3(a)(1), (2), and (4), which require candor toward the tribunal, and has made a false statement, and has failed to correct or disclose a false statement of material fact or offered evidence that the lawyer knows to be false. In addition, Mr. J.B. Harris must report and disclose that this is his bar complaint.

Mr. J.B. Harris is consistently threatening and extorting. Just yesterday, pertaining to health insurance that this firm pays for Mr. J.B. Harris of approximately $2,500 a month, that was understood to be automatically deducted from the account, and was rectified prior to the firm being aware his threat and extortion, Mr. J.B. Harris wrote:

"Tim, I suggest you reactivate my insurance today or I will be at your office first thing tomorrow to spend a little quality time with you. You've placed the lives of my children at risk and that won't stand."

August 21, 2018 email from Mr. J.B. Harris, attached.

As to the merits of the complaint, consider the following:

This firm has been involved in tobacco litigation since its founding in 1995 and has been counsel on numerous tobacco trials and cases, including some of the largest verdicts in the nation—*Chiles, et al., v. American Tobacco, et al.* (resulted in over $20 billion for the State of Florida); *Evans v. Lorillard* (resulted in the largest verdict in the history of Massachusetts for a personal injury case at $150 million and settled for over $79 million). Pertaining to this particular complaint, the firm was counsel in a 7-week Jacksonville, Florida trial involving *Sermons v. RJR*, that took place when the depositions of Richard Harris were also taking place, due to his imminent demise and the resistance of defendants to



permit him to be deposed earlier. Thus, there was clear capacity to litigate the action, no failure to disclose, nor was there a solicitation. In fact, former counsel for Richard Harris, the law firm of Lyons & Farrar, sought this firm out to assist in the prosecution of the case, and Richard Harris chose to drop former counsel and solely retain this firm. This is verified in the record of this action.

It is false for Mr. J.B. Harris (since Mrs. Peggy Harris would have no capacity or knowledge) to assert that this firm did not know how to prepare a client for a tobacco deposition having done nearly 100 tobacco depositions in the past. The concern was that a junior associate had significant challenges in the first day of defending Mr. Richard Harris in Defendants' deposition of him, while the senior partner was in a tobacco trial in Jacksonville. The firm's senior partner left the tobacco trial for a day to get the testimony in order and identified the critical issues and reviewed them with the associate and paralegal assisting with the deposition. The trial preservation testimony was organized, focused and covered the materials needed to effectively prosecute Mr. Richard Harris' case.

This also involved reviewing portions of the deposition defended by the junior associate. This required reviewing the testimony at issue, reviewing the language with the client, and obtaining the client's desired changes through an appropriate errata correction. Rule 1.310 (e), Florida Rules of Civil Procedure, provides that:

"any changes in form or substance that the witness wants to make must be listed in writing by the offer with a statement of the reasons given by the witness for making the changes. The changes must be attached to the transcript."

Errata sheet clarifications from a deposition transcript are standard procedure for all depositions. This attempt to make errata sheets nefarious is inconsistent with the Florida Rules of Civil Procedure. Errata sheets were done for both Mr. Richard Harris and Mrs. Peggy Harris.

In fact, under oath, Mrs. Peggy Harris stated in her May 23, 2017 deposition, pages 332-336, relevant pages attached, the following pertaining to the errata sheets. These statements confirm that the relevant portions of the transcripts were read to him, and that he knowingly agreed to change the testimony and signed confirming the changes.

Q. Okay. And so I asked you before the break whether you were aware, whether you knew whether your husband reviewed the deposition that I took of him, which was a multi-hundred-page transcript. Did he review that?
A. I believe he did, but he couldn't see it, but it was read to him.
Q. Okay. Who read it to him?
A. One of the attorneys.
Q. How long did it take?
A. A while. They came in early, yeah.
Q. They came in early the morning of June 25th?
A. I don't remember the morning, but they came in early to do it.
...
Q. Okay. Do you remember anything about the circumstances of what was read to him?
A. No.
Q. Do you know one way or the other whether that deposition was read to him from --
A. I believe it was.
Q. --start to finish?
A. I believe it was.
...
Q. Do you know whether he actually told the lawyers whether he had changes to make to his deposition? Did he actually tell them that?
A. I believe he did.
Q. How did he do that?
A. Verbally, I would think. But I'm not -- I shouldn't say, because I'm not sure.
...
Q. Do you believe that when your husband signed those errata sheets, that he understood what he was signing?
A. I would think he would. I wouldn't think he would sign if he didn't.
Q. And my question was just a little bit different. Given his health condition at the time, do you think he understood what he was signing when he signed those errata sheets?
A. I would say yes.
Q. Okay. So is the answer that you're not sure whether he knew what he was signing?
A. Again, I wouldn't think he would sign unless he knew what he was signing.
Q. Where you in the room when he signed them?
A. I don't—yeah, I think I was.
...
Q. After his deposition, after I had the opportunity to ask him questions, did Mr. Harris ever say to you that he had changes that he wanted to make to his testimony?
A. I believe he did.

Moreover, in response to the deposition reviews, Mr. Richard Harris and Mrs. Peggy Harris were both read the relevant portion of their transcripts and under oath made changes to their transcripts. This was confirmed by Mr. Richard Harris and reconfirmed by Mrs. Peggy Harris, wherein she repeatedly states under "penalties of perjury" in errata sheets after reviewing her testimony and providing corrections that "I do remember our attorneys coming over prior to Richard's deposition and reviewing his deposition testimony from the previous days with him, and making sure that the testimony he had given, and making all the corrections that Richard suggested." 1 *See* relevant portions of transcripts attached. Neither Mr. Richard Harris nor Mrs. Peggy Harris were ordered to sign the errata sheets, and they were reviewed and read to both of them by either associate or senior counsel before they signed the errata sheets. *See* transcript errata sheets attached.

In Mrs. Peggy Harris' May 23, 2018 deposition, she confirms in pages 344-346, attached, that shortly after Mr. Richard Harris passed, the autopsy was conducted in the Faith Funeral Home in Havana, Florida. Regional Pathology and Autopsy Services out of Oakland, California, attached, had their staff fly into Tallahassee. It is demonstrably false that Mr. Richard Harris' body was shipped to California, and in fact, the firm flew the medical autopsy staff from California into Florida to both do an autopsy and obtain tissue samples for medical pathology determination of disease and etiology. Moreover, there was no inference or reference for the client to pay for the costs expended in the case, and it is not understood where or how the language of the email can be interpreted as such.

There was no abandonment as a client. The probate matter was non-prejudicial, as it can be refiled. The hearing notice was missed due to having two Harris probate matters, thinking that the notice was covered,

1 In the errata sheets she stated, "Our attorneys did review Richard's depo transcripts with him each day, and Richard clarified his answers and the changes he wanted made to the transcript." She also stated, "In discussions with Richard, our attorneys prepared the errata sheets according to Richard's instructions and reviewed them with Richard. Richard verified that the errata sheets were consistent with the testimony he wanted to give." Finally, she stated, "Richard knew exactly what he was signing because our attorneys reviewed the depo transcripts and errata sheets with Richard before he signed them, and Richard verified that the errata sheets were consistent with the testimony he wanted to give."

and over 100 probate cases to manage after the junior associate counsel left. This particular matter was understood to be covered by experienced probate counsel, Matt Hinson, Esq., who was hired to handle the 100 or so probate matters. When the Harris probate matter came to the firm's attention, Mr. Hinson was immediately contacted concerning this particular case, and assigned to handle the probate action. Finally, Mr. J.B. Harris ability to operate as an attorney is due to this law firm.2

Unknown to this firm, Mr. Jaakan Williams recommended several lawyer sources to Mrs. Peggy Harris, including the Searcy, Denny law firm, and Christina Opsohal, who had worked on the Richard Harris action. Mr. J.B. Harris was included due to Mr. Jaakan's meeting him through the Howard & Associates law firm. Moreover, Mr. Jaakan Williams did not say the errata sheets were "Howard's concoction of the fraudulent errata sheets."

There has been no refusal to pay the $500 tissue sample bill, as the emails demonstrate. We stated, "we can pay the $500 or let us know whoever is going to pay the costs." All that was asked is how did the client wish to handle the matter, in our efforts to avoid spoliation of the evidence.

Furthermore, it is clearly evident that Mr. J.B. Harris' language is definitively found in this bar complaint, where he again uses his signature labels and terms "blasphemous", "delusional", "duplicitous", "deceptive" and "dishonest" as he has stated in other writings.3 This is language from Mr. J.B. Harris

2 The firm is currently paying Mr. J.B. Harris $21,000 a month, so that he can prosecute tobacco cases, as is referenced in the current complaint against Mr. J.B. Harris. If this firm didn't pay Mr. Harris, he couldn't be working on Mrs. Peggy Harris' case and continue his ghost writings to attack this firm.

3 For example, on August 7, 2018, the following was forwarded to the Florida Bar and State Attorney:

> As part of the ongoing reporting of the various Bar violations and extortion of Mr. J.B. Harris, consistent with his pattern and practice, attached as Exhibit A please find the July 30, 2018 correspondence from Mr. J.B. Harris, documenting disparaging remarks, degrading to the legal profession, in unnecessarily calling Mr. Howard "pathetic, desperate and delusional." This language violates the rules regulating the Florida Bar, 3-4.3, 4-8.2(a), and 4-8.4(d), as cited below.
>
> Mr. Harris again distorts the facts when he states that the client was "abandoned". Mr. Harris knows that the law firm experienced a funding gap for 6-8 weeks due to corrupt advisors. This funding gap was solved. In fact, Mr. Harris is right now being paid $21,000 a month by this law firm and its lender so he can pursue tobacco cases, including the action of *Richard Harris v. RJR and Phillip Morris*. In fact, without this firm's funding, he is unable to represent Mrs. Margaret Harris or have a life. With the funding gap solved, the law firm was able to assign and/or hire probate counsel to address the 100 plus tobacco litigation related probate actions, including the probate action for Mrs. Margaret Harris.

Mr. Harris uses the terms "delusional", "duplicitous", and is following through with his extortionate threat wherein he wrote on June 6, 2018:

> Tim, if you think you are having trouble with the Bar's investigation of your practices, BWCI Pension Trustees Limited, Ted Doukas, and everyone else who is still after you, you are about to walk into a shit storm if you steal the Goulds from me as my clients.



that Mrs. Peggy Harris would not likely parrot.

Mr. J.B. Harris then ghost writes to state there was a "ballistic" reaction to new counsel, and defamed and slandered Mr. J.B. Harris. This is from an email intended only to Mr. Hinson and counsel for the firm, not knowing that Mrs. Peggy Harris was embedded in the reply all. Next, as referenced in the prior bar violation reports on Mr. J.B. Harris, it was stated solely to Mr. Hinson, that "Mr. Harris has an extensive history of bar violations and extortion that I was forced to report." This is factually true, not slanderous, and does not state a record of adjudicated bar violations, as inferred by Mr. Harris.

The facts demonstrate that this bar complaint was written by Mr. J.B. Harris as part of his continued efforts at extortion. As pointed out in the many prior filings, these documented and repeated, upon repeated patterns violate the following rules of professional conduct as promulgated by the Florida Supreme Court:

> A lawyer must not threaten opposing parties with sanctions, disciplinary complaints, criminal charges, or additional litigation to gain a tactical advantage. *See* Florida Supreme Court, Professionalism Expectations: Expectation 3.18; and Rules Regulating the Florida Bar: Rule 4-3.4(g).
>
> A lawyer must not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter. *See* Florida Supreme Court, Rules Regulating the Florida Bar: Rule 4-3.4(g).
>
> A lawyer must not present, participate in presenting, or threaten to present disciplinary charges under these rules solely to obtain an advantage in a civil matter. *See* Florida Supreme Court, Rules Regulating the Florida Bar: Rule 4-3.4(h). 4
>
> To opposing parties and their counsel, a lawyer should act with fairness, integrity, and civility, not only in court, but also in all written and oral communications. (Oath of Admission)
>
> Candor and civility must be used in all oral and written communications. (Professionalism Expectations: Expectation 2.2)

> I will lien the file for costs and fees, sue you for tortious interference and unpaid contribution to costs, fraud and everything else I can think of. I will also amend my complaint with the Bar and file a complaint against Neil as well.

On June 8, 2018, Mr. Harris writes: "You're a first-rate coward and scumbag. All your talk about Jesus is blasphemous garbage." "I can assure you they (Gould sisters) will rip you to shreds once they see through your sociopathic charade."

4 Lawyer disciplined for sending a threatening letter to opposing counsel. *The Florida Bar v. Sayler*, 721 So.2d 1152 (Fla. 1998). A criminal defense lawyer violated Rules 4-4.4(a) and 4-8.4(d) for sending a victim of a crime an objectively humiliating and intimidating letter designed to cause her to abandon her criminal complaint. *The Florida Bar v. Buckle*, 771 So. 2d 1131 ; *see also The Florida Bar v. Rotiner*, 46 So. 3d 35 (Fla. 2010). A lawyer should abstain from conduct that diverts the fact-finder's attention from the relevant facts or causes a fact-finder to make a legally impermissible decision. (Professionalism Expectations: Expectation 5.8)



> A lawyer must avoid disparaging personal remarks or acrimony toward opposing parties, counsel, third parties or the court. (Professionalism Expectations: Expectation 2.3). A lawyer should be civil and courteous in all situations, both professional and personal, and avoid conduct that is degrading to the legal profession. R. Regulating Fla. Bar 3-4.3. 5
>
> A lawyer's communications in connection with the practice of law, including communications on social media, must not disparage another's character or competence or be used to inappropriately influence or contact others. (Professionalism Expectations: Expectation 2.5); *see* R. Regulating Fla. Bar 4-8.4(d).
>
> A lawyer must not criticize or denigrate opposing parties, witnesses, or the court to clients, media, or members of the public. (Professionalism Expectations: Expectation 4.20); see R. Regulating Fla. Bar 4-8.2(a) and 4-8.4(d)).

This is a response to the complaint of Margaret "Peggy" Harris, which in reality is a complaint by J.B. Harris. Consistent with the prior responses, these are further bar violations by Mr. J.B. Harris.

As previously stated as pertaining to Mr. J.B. Harris. We did not want to have to report these violations, as this firm in its 23 years of existence, has never reported any fellow member of the Bar to the Bar or to law enforcement and has always resolved disputes and issues amicably and professionally. Regrettably and with deep disappointment and reluctance, in this instance, the consistent and now almost daily invectives, media statements, direct threats and undisputed Bar and criminal violations leave no option.

Sincerely Yours,

[signature]

(Phillip) Tim Howard, J.D., Ph.D.

5 Lawyer disciplined for sending disparaging emails to opposing counsel, calling him a liar, and making improper outbursts directed toward opposing counsel during the litigation. *The Florida Bar v. Norkin*, 132 So.3d 77 (2013)). *See also The Florida Bar v. Abramson*, 3 So.3d 964 (2009); *The Florida Bar v. Buckle*, 771 So.2d 1131 (Fla. 2000) ; *The Florida Bar v. Sayler*, 721 So. 2d 1152 (Fla. 1998); *The Florida Bar v. Ratiner*, 46 So.3d 35 (Fla. 2010). Lawyer disciplined for sending a letter to a court-appointed provisional director of corporation in which he improperly threatened to file suit against provisional director and accused the provisional director of being involved in a conspiracy. *The Florida Bar v. Norkin*, 132 So. 3d 77 (2013); *See also The Florida Bar v. Abramson*, 3 So. 3d 964 (Fla. 2009). "The First Amendment does not protect those who make harassing or threatening remarks about the judiciary or opposing counsel. Under Rule of Professional Conduct 4-8.4(d), lawyers are required to refrain from knowingly disparaging or humiliating other lawyers." *The Florida Bar v. Sayler*, 721 So.2d 1152, 1155 (Fla. 1998).

Gmail by Google

Tim Howard <tim@howardjustice.com>

**(no subject)**

1 message

J.B. Harris <jbharrisesq@gmail.com> Tue, Aug 21, 2018 at 2:17 PM
To: tim@howardjustice.com
Cc: John Paul Leonard <jleonard@mdmc-law.com>

Tim, I suggest you reactivate my insurance today or I will be at your office first thing tomorrow to spend a little quality time with you. You've placed the lives of my children at risk and that won't stand.

J.B. Harris, P.A.
3127 Ponce De Leon Blvd.
Coral Gables, FL 33134
786-303-8333
jbharrisesq@gmail.com

Sent from my iPhone. Please forgive any misspellings.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

# EXHIBIT D

HOWARD JUSTICE

RECEIVED
AUG - 8 2018
THE FLORIDA BAR

2018 AUG -8 PM 1:41

Howard & Associates
Attorneys at Law, P.A.
Dr. Tim Howard, J.D., Ph.D., Senior Partner*
Florida Supreme Court Certified Mediator

Tallahassee, Florida Office:
1415 East Piedmont Drive, Suite 5
Tallahassee, Florida 32308
Ph: (850) 298-4455
Fax: (850) 216-2537
tim@howardjustice.com

Jacksonville, Florida Office:
444 E. Duval Street
Jacksonville, Florida 32207
Ph: (904) 446-9817
Fax: (904) 446-9825
www.howardjustice.com

August 7, 2018

VIA HAND-DELIVERY

Shanee L. Hinson, Bar Counsel
651 East Jefferson Street
Tallahassee, Florida 32399-2300

Jack Campbell, State Attorney
301 South Monroe Street, Suite 475
Tallahassee, Florida 32301

Re: J.B. Harris v. Phillip Timothy Howard, TFB File No. 2018-00,342(2A); Kim Poling v. Phillip Timothy Howard, TFB File No. 2018-00,343(2A). Bar Complaint Against J.B. Harris and Law Firms Supporting his Violations of Rules 3-4.3, 4-3.4(g) and (h), 4-8.2 (a) and (d), and 4-8.4(d); Violation of Section 836.05, Florida Statutes, Crime of Extortion Including Potential Co-Conspirators. Continuing Acts by Mr. Harris.

Dear Counsel Hinson, and State Attorney Campbell:

As part of the ongoing reporting of the various Bar violations and extortion of Mr. J.B. Harris, consistent with his pattern and practice, attached as Exhibit A please find the July 30, 2018 correspondence from Mr. J.B. Harris, documenting disparaging remarks, degrading to the legal profession, in unnecessarily calling Mr. Howard "pathetic, desperate and delusional." This language violates the rules regulating the Florida Bar, 3-4.3, 4-8.2(a), and 4-8.4(d), as cited below.

Mr. Harris again distorts the facts when he states that the client was "abandoned". Mr. Harris knows that the law firm experienced a funding gap for 6-8 weeks due to corrupt advisors. This funding gap was solved. In fact, Mr. Harris is right now being paid $21,000 a month by this law firm and its lender so he can pursue tobacco cases, including the action of *Richard Harris v. RJR and Phillip Morris*. In fact, without this firm's funding, he is unable to represent Mrs. Margaret Harris or have a life. With the funding gap solved, the law firm was able to assign and/or hire probate counsel to address the 100 plus tobacco litigation related probate actions, including the probate action for Mrs. Margaret Harris.

The notice of hearing on Mrs. Margaret Harris probate action was missed due to the high volume of probate notices and understanding that this was one of the 100 plus probate cases that probate counsel was handling. Responsibility was taken for this oversight and all these cases are caught up. Once this

*Admitted to practice in Florida, the District of Columbia, Northern, Middle, and Southern United States District Courts of Florida, the United States Court of Appeals for the 11th Circuit, and the United States Supreme Court. Ph.D, Northeastern University, Law, Policy & Society. Former Visiting Health Law, Bioethics, and Human Rights Scholar and Constitutional Law, Media & Politics and Judicial Process Instructor at Boston University. Former Director of and Professor with Northeastern University's Law & Policy Doctorate Program. President of Cambridge Graduate University International.



matter was brought to senior counsel's attention, correspondence was sent to Mrs. Margaret Harris, and private probate counsel Matt Hinson, Esq., was instructed to get the action in order. There was no prejudice to Mrs. Harris as private probate counsel was and is able to refile the action, and the only asset of consequence is the underlying tobacco lawsuit that was stayed.

Mr. Harris goes on to distort the email intended to be made solely to private and probate-counsel hired on the underlying case, not aware that the former client was copied in reply all. The email states that Mr. Harris has "an extensive history of bar violations and extortion that I was forced to report," which all of the filings to date demonstrate is a documented and accurate statement. Importantly, in response Mr. Harris does not challenge the extortion statement.

Mr. Harris then through legerdemain distorts the "history" of Bar violation statement by adding "an extensive record of Bar violations" which implies adjudicated Bar violations, which I would not have had to report and didn't say. He uses his "record of Bar violations" (instead of history) language legerdemain to claim slander. He then says he will add a slander count to a suit that has never been served due to its frivolous nature, when the claimed slander is actually due to his distortion of language.

Finally, Mr. Harris adds a link to an article that concerns another extortion attempt coordinated with a prison inmate that the plaintiff (that has a history of gambling, assault and weapons charges) is protecting. The prison inmate is a dismissed former consultant that scammed funds (the source and cause of the SEC investigation) from an investment company started as a university project. The complaint is deeply flawed factually and structurally. The complaint has never been served but looks to be designed for settlement leverage through media coverage.

As pointed out in the many prior filings, these documented and repeated, upon repeated patterns violate the following rules of professional conduct as promulgated by the Florida Supreme Court:

> A lawyer must not threaten opposing parties with sanctions, disciplinary complaints, criminal charges, or additional litigation to gain a tactical advantage. *See* Florida Supreme Court, Professionalism Expectations: Expectation 3.18; and Rules Regulating the Florida Bar: Rule 4-3.4(g).

> A lawyer must not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter. *See* Florida Supreme Court, Rules Regulating the Florida Bar: Rule 4-3.4(g).

> A lawyer must not present, participate in presenting, or threaten to present disciplinary charges under these rules solely to obtain an advantage in a civil matter. *See* Florida Supreme Court, Rules Regulating the Florida Bar: Rule 4-3.4(h). 1

> To opposing parties and their counsel, a lawyer should act with fairness, integrity, and civility, not only in court, but also in all written and oral communications. (Oath of Admission)

1 Lawyer disciplined for sending a threatening letter to opposing counsel. *The Florida Bar v. Sayler*, 721 So.2d 1152 (Fla. 1998). A criminal defense lawyer violated Rules 4-4.4(a) and 4-8.4(d) for sending a victim of a crime an objectively humiliating and intimidating letter designed to cause her to abandon her criminal complaint. *The Florida Bar v. Buckle*, 771 So. 2d 1131; *see also The Florida Bar v. Ratiner*, 46 So. 3d 35 (Fla. 2010). A lawyer should abstain from conduct that diverts the fact-finder's attention from the relevant facts or causes a fact-finder to make a legally impermissible decision. (Professionalism Expectations: Expectation 5.8)



> Candor and civility must be used in all oral and written communications. (Professionalism Expectations: Expectation 2.2)

> A lawyer must avoid disparaging personal remarks or acrimony toward opposing parties, counsel, third parties or the court. (Professionalism Expectations: Expectation 2.3). A lawyer should be civil and courteous in all situations, both professional and personal, and avoid conduct that is degrading to the legal profession. R. Regulating Fla. Bar 3-4.3. 2

> A lawyer's communications in connection with the practice of law, including communications on social media, must not disparage another's character or competence or be used to inappropriately influence or contact others. (Professionalism Expectations: Expectation 2.5); *see* R. Regulating Fla. Bar 4-8.4(d).

> A lawyer must not criticize or denigrate opposing parties, witnesses, or the court to clients, media, or members of the public. (Professionalism Expectations: Expectation 4.20); see R. Regulating Fla. Bar 4-8.2(a) and 4-8.4(d)).

We did not want to have to report these violations, as this firm in its 23 years of existence, has never reported any fellow member of the Bar to the Bar or to law enforcement and has always tried to resolve disputes and issues amicably and professionally through overcoming evil with good. Regrettably and with deep disappointment and reluctance, in this instance, the consistent and now almost daily invectives, media statements, direct threats and undisputed Bar and criminal violations leave no option.

Sincerely Yours,

[signature]

(Phillip) Tim Howard, J.D., Ph.D.

2 Lawyer disciplined for sending disparaging emails to opposing counsel, calling him a liar, and making improper outbursts directed toward opposing counsel during the litigation. *The Florido Bar v. Norkin*, 132 So.3d 77 (2013)). *See also The Florida Bar v. Abramson*, 3 So.3d 964 (2009); *The Florida Bar v. Buckle*, 771 So.2d 1131 (Fla. 2000) ; *The Florida Bar v. Sayler*, 721 So. 2d 1152 (Fla. 1998); *The Florida Bar v. Ratiner*, 46 So.3d 35 (Fla. 2010). Lawyer disciplined for sending a letter to a court-appointed provisional director of corporation in which he improperly threatened to file suit against provisional director and accused the provisional director of being involved in a conspiracy. *The Florida Bar v. Norkin*, 132 So. 3d 77 (2013); *See also The Florida Bar v. Abramson*, 3 So. 3d 964 (Fla. 2009). "The First Amendment does not protect those who make harassing or threatening remarks about the judiciary or opposing counsel. Under Rule of Professional Conduct 4-8.4(d), lawyers are required to refrain from knowingly disparaging or humiliating other lawyers." *The Florida Bar v. Sayler*, 721 So.2d 1152, 1155 (Fla. 1998).



Gmail by Google

Tim Howard <tim@howardjustice.com>

**Fwd: E/O Richard Harris P/R Margaet Harris CASE NO.: 2014-CA-000337 Circuit Court of Gasden County**
1 message

J.B. Harris <jbharrisesq@gmail.com> — Mon, Jul 30, 2018 at 11:05 PM
To: "Matthew Hinson Esq." <matt@hinsonlawpa.com>
Cc: tim@howardjustice.com, John Paul Leonard <jleonard@mdmc-law.com>, neil@howardjustice.com, tom@howardjustice.com

: Matt, Howard is pathetic, desperate and delusional. Mrs. Harris didn't respond to him because she fired Howard weeks ago after he abandoned her as a client.

Howard has been sanctioned by the Bar once before — check his Bar history — and is currently under investigation by the Bar for at least three complaints filed against him. He is also under investigation by the SEC. I also am suing him and will add a count for slander for his claiming that I have an extensive record of Bar violations as set forth on the email below.

Here is but one more example of Howard's MO which you will no doubt fond of interest. http://www.wctv.tv/content/news/Former-Nole-current-Godby-coach-Fuller-sues-lawyer-for-allegedly-stealing-money-487522001.html

Knowing that he is no longer counsel for Mrs. Harris, his copying her on the email to you is but another example of his total disregard for the rules and the law. By contrast, I've never been sanctioned by the Bar or any court.

You are best to remain clear.

Regards.

J.B. Harris, P.A.
3127 Ponce De Leon Blvd.
Coral Gables, FL 33134
786-303-8333
jbharrisesq@gmail.com

Sent from my iPhone. Please forgive any misspellings.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

Begin forwarded message:

> CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.
> Begin forwarded message:
>
> On Monday, July 30, 2018, 7:48 PM, Tim Howard <tim@howardjustice.com> wrote:
>
> > Matt,
> >
> > She didn't respond to me. Mr. Harris has an extensive history of bar violations and extortion that I was forced to report. We sent what we had in the file and I

Thank you for your availability. This case may yet return to the firm. In the interim, please return the fee over the next week or two.

Tim Howard

Professor Tim Howard, J.D., Ph.D.
Howard & Associates, P.A.

HOWARD JUSTICE

Tallahassee, Floida Office:
1415 East Piedmont Drive, Suite 5
Tallahassee, FL 32308
(850) 999-8624 (o)

Jacksonville, Florida Office:
444 East Duval Street
Jacksonville, FL 32207
(850) 298-4455 (o)
(850 216-2537 (f)
Law Firm Website: www.howardjustice.com
tim@howardjustice.com

Cambridge, Massachusetts Office:
8 Museum Way, Suite 2407
Cambridge, MA 02141
(617) 373-6076

President, Cambridge Graduate University International
One Broad Street, 14th Floor
Cambridge, Massachusetts 02142
(877) 645-6225 (6GLOBAL)
www.cguiedu.com
president@cguglobal.net
https://www.facebook.com/tim.howard.752861

PLEASE NOTE: This message, including any attachments, may include privileged or confidential information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited. If you are not the intended recipient, please notify the sender by replying to this message and delete it from your system.

On Mon, Jul 30, 2018 at 12:32 PM, Matthew Hinson, Esq. <matt@hinsonlawpa.com> wrote:

Tim:

This email explains why I did not receive return contact from the client. Apparently she did not want my office to represent her. Did she by chance respond to you regarding the email you sent her about retaining my firm on her behalf? As such, I will send your funds back to you related to the probate case. Please advise where you would like the funds mailed.

Also, other than what you sent over, I do not have any other documents in my file. I was still waiting on your office sending a copy of the petition for administration so that the filings would have been similar.

Thanks,

Matt

Matthew H. Hinson, Esq.

The Hinson Law Firm, P.A.

300 West Adams Street, Suite 500

Jacksonville, FL 32202

Telephone: (904) 527-1700

Facsimile: (904) 355-8088

www.ProbateForFlorida.com

<Outlook-1487738434.bmp>

The information in this email is privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this transmission (including any attachments) is strictly prohibited. If you received this email in error, please notify the sender via reply email and immediately delete this email from your system.

To ensure compliance with Internal Revenue Circular 230, we inform you that any U.S. Federal tax advice contained in this communication is not for use, and cannot be used, for the purposes of matter(s) addressed herein.

# EXHIBIT E

HOWARD JUSTICE

RECEIVED
2018 JUN 28 PM 12:40

RECEIVED
JUN 28 2018
THE FLORIDA BAR

Howard & Associates
Attorneys at Law, P.A.
Dr. Tim Howard, J.D., Ph.D., Senior Partner*
Florida Supreme Court Certified Mediator

Tallahassee, Florida Office:
1415 East Piedmont Drive, Suite 5
Tallahassee, Florida 32308
Ph: (850) 298-4455
Fax: (850) 216-2537
tim@howardjustice.com

Jacksonville, Florida Office:
444 E. Duval Street
Jacksonville, Florida 32207
Ph: (904) 446-9817
Fax: (904) 446-9825
www.howardjustice.com

June 28, 2018

VIA HAND-DELIVERY

Shance L. Hinson, Bar Counsel
651 East Jefferson Street
Tallahassee, Florida 32399-2300

Jack Campbell, State Attorney
301 South Monroe Street, Suite 475
Tallahassee, Florida 32399-2300

Re: J.B. Harris v. Phillip Timothy Howard, TFB File No. 2018-00,342(2A); Kim Poling v. Phillip Timothy Howard, TFB File No. 2018-00,343(2A); Bar Complaint Against J.B. Harris and Law Firms Supporting his Violations of Rules 3-4.2, 4-3.4(g) and (h), 4-8.2 (a) and (d), and 4-8.4(d); Violation of Section 836.05, Florida Statutes, Crime of Extortion Including Potential Co-Conspirators. Continuing Acts by Mr. Harris, and Violation of Rules 4-7.18 (b) and 2(b)(1)(B) and (F), Against Solicitation, and Rule 4-8.4(d), Against Conduct Prejudicial to the Administration of Justice.

Dear Bar Counsel Hinson, and State Attorney Campbell:

On March 5, 2018, Mr. Harris validates his pattern of misrepresentations and ghost-writings to advance his interests.1 Mr. Harris solicited clients to drop this law firm in order to increase his potential fee. He falsely stated that he hadn't been paid in 3 months. He then wrote a false statement to the clients that "Mr. Howard's firm is out of business."

This was part of his written actions to harm the firm and solicit business, while still being paid handsomely. He then provided his ghost-written email for the clients to use in order to advance his solicitation, and did a follow-up the next day to verify that the solicitation scheme was

1 This followed one week after Mr. Harris' February 26, 2018 extortion and threats (Exhibit D of June 21, 2018 Response to Bar Complaint, and Bar Complaint Against J.B. Harris), after receiving approximately $42,000 in February, including a $15,000 bonus.
*Admitted to practice in Florida, the District of Columbia, Northern, Middle, and Southern United States District Courts of Florida, the United States Court of Appeals for the 11th Circuit, and the United States Supreme Court. Ph.D. Northeastern University, Law, Policy & Society. Former Visiting Health Law, Bioethics, and Human Rights Scholar and Constitutional Law, Media & Politics and Judicial Process Instructor at Boston University. Former Director of and Professor with Northeastern University's Law & Policy Doctorate Program. President of Cambridge Graduate University International.



effective. March 5, 2018 and March 6, 2018 emails from Mr. Harris to Clients, attached.

These actions violate Rule 4-7.18 of the Rules Regulating the Florida Bar. The rule states as follows:

*RULE 4-7.18 DIRECT CONTACT WITH PROSPECTIVE CLIENTS*

(a) Solicitation. Except as provided in subdivision (b) of this rule, a lawyer may not:

(b) Written Communication.

(1) A lawyer may not send, or knowingly permit to be sent, on the lawyer's behalf or on behalf of the lawyer's firm or partner, an associate, or any other lawyer affiliated with the lawyer or the lawyer's firm, a written communication directly or indirectly to a prospective client for the purpose of obtaining professional employment if:

(B) the written communication concerns a specific matter and the lawyer knows or reasonably should know that the person to whom the communication is directed is represented by a lawyer in the matter;

(D) the communication involves coercion, duress, fraud, overreaching, harassment, intimidation, or undue influence;

These actions also violate Rule 4-8.4(d) of the Rules Regulating the Florida Bar. The rule states as follows:

*RULE 4-8.4 MISCONDUCT*

A lawyer shall not:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation, except that it shall not be professional misconduct for a lawyer for a criminal law enforcement agency or regulatory agency to advise others about or to supervise another in an undercover investigation, unless prohibited by law or rule, and it shall not be professional misconduct for a lawyer employed in a capacity other than as a lawyer by a criminal law enforcement agency or regulatory agency to participate in an undercover investigation, unless prohibited by law or rule;



(d) engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly, or through callous indifference, disparage, humiliate, or discriminate against litigants, jurors, witnesses, court personnel, or other lawyers on any basis, including, but not limited to, on account of race, ethnicity, gender, religion, national origin, disability, marital status, sexual orientation, age, socioeconomic status, employment, or physical characteristic;

Again, we did not want to have to report these violations, as this firm in its 23 years of existence, has never reported any fellow member of the Bar or to law enforcement and has always tried to resolve disputes and issues amicably and professionally with good faith. Regrettably and with deep disappointment and reluctance, in this instance, the consistent and now almost daily invectives, direct threats and documented Bar and criminal violations leave no option.

Sincerely Yours,

Tim Howard

(Phillip) Tim Howard, J.D., Ph.D.

From: JB Harris <jb@howardjustice.com>
Date: Mon, Mar 5, 2018 at 10:28 PM
Subject:
To: isacsphoto@gmail.com
Cc: wgould112@yahoo.com, Barbara Ulrich <FtLauderdaleLady@aol.com>

Wendy and Barbara, I spoke with Jacquie earlier. She can explain further. Mr. Howard's firm is out of business. I need Jacquie to send the following to him terminating his representation.

Dear Mr. Howard:

It has come to our attention that your firm has closed its doors and that you are no longer in business. Effective immediately you are no longer counsel for me and my sisters, and for the estate of our late father Stanley Gould. We hereby release you of all further duties as our attorney. Please file whatever paperwork necessary to withdraw your representation.

Regards, Jacquiline Sacs.

Ft. Laudedale Office:
J.B. Harris, P.A.
Howard & Associates, P.A.
101 NE Third Ave., Ste. 1500
Fort Lauderdale, Florida 33301
Cell: (786) 303-8333
Office: (954) 332-3633
em: jb@howardjustice.com
web: www.howardjustice.com

Tallahassee Office:
2120 Killarney Way, Ste. 125
Tallahassee, Florida 32309
Main Office: (850) 298-4455
Fax: (850) 216-2537

Jacksonville Office:
Riverplace Tower, Suite 2101
1301 Riverplace Blvd.
Jacksonville, FL 32207

Sent from my iPhone. Please forgive any misspellings.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

Gmail

Tim Howard <tim@howardjustice.com>

## RELEASE OF SERVICE

1 message

Jacqueline Sacs <isacsphoto@gmail.com> Tue, Mar 6, 2018 at 5:30 AM
To: "cc: Tim Howard" <Tim@howardjustice.com>
Cc: JBHarris <jb@howardjustice.com>, Wendy Gould <wgould112@yahoo.com>, "ftlauderdalelady@aol.com" <FtLauderdaleLady@aol.com>

Dear Mr. Howard:

It has come to our attention that your firm has closed its doors and that you are no longer in business. Effective immediately you are no longer counsel for me and my sisters, and for the estate of our late father Stanley Gould. We hereby release you of all further duties as our attorney. Please file whatever paperwork necessary to withdraw your representation.

Regards, Jacqulline Sacs.

--
Think. Before its too late.

From: J.B. Harris <jbharrisesq@gmail.com>
Date: Tue, Mar 6, 2018 at 1:31 PM
Subject:
To: wgould112@yahoo.com, Isacsphoto@gmail.com, Barbara Ulrich <FtLauderdaleLady@aol.com>

Did you send the notice of termination to Howard.

J.B. Harris, P.A.
101 NE Third Ave., Ste. 1500
Fort Lauderdale, Florida 33301
Ph: (786) 303-8333

Sent from my iPhone. Please forgive any misspellings.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

# EXHIBIT F

HOWARD JUSTICE

RECEIVED JUL 13 2018 THE FLORIDA BAR

RECEIVED 2018 JUL 13 STATE ATTORNEY

Howard & Associates
Attorneys at Law, P.A.
Dr. Tim Howard, J.D., Ph.D., Senior Partner*
Florida Supreme Court Certified Mediator

Tallahassee, Florida Office:
1415 East Piedmont Drive, Suite 5
Tallahassee, Florida 32308
Ph: (850) 298-4455
Fax: (850) 216-2537
tim@howardjustice.com

Jacksonville, Florida Office:
444 E. Duval Street
Jacksonville, Florida 32207
Ph: (904) 446-9817
Fax: (904) 446-9825
www.howardjustice.com

July 13, 2018

VIA HAND-DELIVERY

Shanee L. Hinson, Bar Counsel
651 East Jefferson Street
Tallahassee, Florida 32399-2300

Jack Campbell, State Attorney
301 South Monroe Street, Suite 475
Tallahassee, Florida 32301

Re: J.B. Harris v. Phillip Timothy Howard, TFB File No. 2018-00,342(2A); Kim Poling v. Phillip Timothy Howard, TFB File No. 2018-00,343(2A). Bar Complaint Against J.B. Harris and Law Firms Supporting his Violations of Rule 4-3.4(g) and (h), 4-8.2 (a) and (d), and 4-8.4(d); Violation of Section 836.05, Florida Statutes, Crime of Extortion Including Potential Co-Conspirators. Continuing Acts by Mr. Harris.

Dear Counsel Hinson, and State Attorney Campbell:

Attached as Exhibit A please find the executed under oath form required by the Florida Bar for Complaints and the documented actions of Mr. Harris and his colleagues.

In addition, please find verification from attorney Mr. Santisteban, Jr., that the Veritext invoice was never provided to this firm and verifying his responsibility stating, "Since I noticed the deposition [in December of 2017], I am responsible for it." July 11, 2018 email and December 6, 2017 Invoice date attached as Exhibit B. This validates the demonstrably false statements found in the threats of a Bar complaint and extortion efforts of both Mr. Harris and Mrs. Santisteban, as detailed in the June 29, 2018 submission and documents, pages 2-3.

Consistent with this cabal of extortion, Mr. Harris on June 19, 2018, filed a frivolous complaint claiming that his former clients were tortuously interfered with, and falsely claimed in the media on June 22, 2018, that Mr. Howard has "'usurped' a portfolio of tobacco cases potentially worth millions of dollars," and that "He couldn't finance any of his cases." June 22, 2018

*Admitted to practice in Florida, the District of Columbia, Northern, Middle, and Southern United States District Courts of Florida, the United States Court of Appeals for the 11th Circuit, and the United States Supreme Court. Ph.D, Northeastern University, Law, Policy & Society. Former Visiting Health Law, Bioethics, and Human Rights Scholar and Constitutional Law, Media & Politics and Judicial Process Instructor at Boston University. Former Director of and Professor with Northeastern University's Law & Policy Doctorate Program. President of Cambridge Graduate University International.



Press Article attached as Exhibit C. This is the same pattern Mr. Harris took on a similar tobacco client issue with co-counsel in 2013. *See* Law 360 Article attached as Exhibit D.

Clarifying false statements by Mr. Harris, on June 21, and June 22, Mr. Harris received the §57.105, Florida Statutes, frivolous action notice documenting that there was no usurpation of the Gould sisters as clients. Exhibit E. Nor has there been a taking of any client. In fact, the opposite. The truth is that Mr. Harris has an April 6, 2018 <u>Confidential Settlement and Release Agreement</u>, where Mr. Howard is paying him **<u>$21,000 a month for one year, and paid an initial $50,000 to Mr. Harris</u>**, with **<u>Mr. Howard retaining a 40% of the gross fee interest in the cases.</u>**

These documented and repeated patterns violate the following rules of professional conduct as promulgated by the Florida Supreme Court:

> A lawyer must not threaten opposing parties with sanctions, disciplinary complaints, criminal charges, or additional litigation to gain a tactical advantage. *See* Florida Supreme Court, Professionalism Expectations: Expectation 3.18; and Rules Regulating the Florida Bar: Rule 4-3.4(g).

> A lawyer must not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter. *See* Florida Supreme Court, Rules Regulating the Florida Bar: Rule 4-3.4(g).

> A lawyer must not present, participate in presenting, or threaten to present disciplinary charges under these rules solely to obtain an advantage in a civil matter. *See* Florida Supreme Court, Rules Regulating the Florida Bar: Rule 4-3.4(h). 1

> To opposing parties and their counsel, a lawyer should act with fairness, integrity, and civility, not only in court, but also in all written and oral communications. (Oath of Admission)

> Candor and civility must be used in all oral and written communications. (Professionalism Expectations: Expectation 2.2)

> A lawyer must avoid disparaging personal remarks or acrimony toward opposing parties, counsel, third parties or the court. (Professionalism Expectations: Expectation 2.3). A lawyer should be civil and courteous in all situations, both

1 Lawyer disciplined for sending a threatening letter to opposing counsel. *The Florida Bar v. Sayler*, 721 So.2d 1152 (Fla. 1998). A criminal defense lawyer violated Rules 4-4.4(a) and 4-8.4(d) for sending a victim of a crime an objectively humiliating and intimidating letter designed to cause her to abandon her criminal complaint. *The Florida Bar v. Buckle*, 771 So. 2d 1131 ; *see also The Florida Bar v. Ratiner*, 46 So. 3d 35 (Fla. 2010). A lawyer should abstain from conduct that diverts the fact-finder's attention from the relevant facts or causes a fact-finder to make a legally impermissible decision. (Professionalism Expectations: Expectation 5.8)



> professional and personal, and avoid conduct that is degrading to the legal profession. R. Regulating Fla. Bar 3-4.3. 2

> A lawyer's communications in connection with the practice of law, including communications on social media, must not disparage another's character or competence or be used to inappropriately influence or contact others. (Professionalism Expectations: Expectation 2.5); *see* R. Regulating Fla. Bar 4-8.4(d).

> A lawyer must not criticize or denigrate opposing parties, witnesses, or the court to clients, <u>media</u>, or members of the public. (Professionalism Expectations: Expectation 4.20); see R. Regulating Fla. Bar 4-8.2(a) and 4-8.4(d)).

These actions without legal justification, for his own pecuniary advantage, and actual malice by Mr. Harris and the firms that will benefit and support his extortion, are a violation of § 836.05, Florida Statutes, crimes against extortion for maliciously threatening.3

2 Lawyer disciplined for sending disparaging emails to opposing counsel, calling him a liar, and making improper outbursts directed toward opposing counsel during the litigation. *The Florida Bar v. Norkin*, 132 So.3d 77 (2013)). *See also The Florida Bar v. Abramson*, 3 So.3d 964 (2009); *The Florida Bar v. Buckle*, 771 So.2d 1131 (Fla. 2000) ; *The Florida Bar v. Sayler*, 721 So. 2d 1152 (Fla. 1998); *The Florida Bar v. Ratiner*, 46 So.3d 35 (Fla. 2010). Lawyer disciplined for sending a letter to a court-appointed provisional director of corporation in which he improperly threatened to file suit against provisional director and accused the provisional director of being involved in a conspiracy. *The Florida Bar v. Norkin*, 132 So. 3d 77 (2013); *See also The Florida Bar v. Abramson*, 3 So. 3d 964 (Fla. 2009). "The First Amendment does not protect those who make harassing or threatening remarks about the judiciary or opposing counsel. Under Rule of Professional Conduct 4-8.4(d), lawyers are required to refrain from knowingly disparaging or humiliating other lawyers." *The Florida Bar v. Sayler*, 721 So.2d 1152, 1155 (Fla. 1998).

3 Whoever, either verbally or by a written or printed communication, maliciously threatens to accuse another of any crime or offense, or by such communication maliciously threatens an injury to the person, property or reputation of another, or maliciously threatens to expose another to disgrace, or to expose any secret affecting another, or to impute any deformity or lack of chastity to another, with intent thereby to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will, shall be guilty of a felony of the second degree, punishable as provided in s. <u>775.082</u>, s. <u>775.083</u>, or s. <u>775.084</u>. Under Florida Statute 836.05, the crime of Extortion is committed when a person maliciously threatens to: Accuse another of any crime or offense; Injure the person, property or reputation of another; Expose another to disgrace; Expose any secret affecting another; or Impute any deformity or lack of chastity to another, with the intent to: Extort money or any pecuniary advantage; or Compel any person to do any act or refrain from doing any act against their will. Actual Malice versus Legal Malice. Although it is a subtle distinction, under the Extortion statute, the prosecutor is required to prove the threat was committed with Actual Malice, which means "means ill will, hatred, spite, evil intent." This is in contrast to what is known as Legal Malice, which only requires that an act be committed intentionally and without any lawful justification. Penalties for Extortion. The crime of Extortion is a Second-Degree Felony in Florida and is punishable by up to 15 years in prison, 15 years of probation, and a $10,000 fine. *Colamla v. State*, 125 So. 3d 1007 (Fla. 5th DCA 2013) (Actual malice is the standard. "A threat is malicious if it is made intentionally and without any lawful justification."); *McKee v. State*, 715 So.2d 101 (Fla. 5th DCA 1998) (Conviction upheld for threats that defendant will destroy you, destroy your business, accusing of drug use, and threatening to make accusations to a federal agency.). "Maliciously" means wrongfully, intentionally, and without legal justification or excuse. A threat is "malicious" for purposes of extortion statute if it is made intentionally and without any lawful justification. It is not necessary that the person accused of extortion have the ability to carry the threat out. Threats to cause mental or psychological injuries are generally prohibited under extortion statute. Therefore, if you threatened to expose someone's affair to

We did not want to have to report these violations, as this firm in its 23 years of existence, has never reported any fellow member of the Bar to the Bar or to law enforcement and has always tried to resolve disputes and issues amicably and professionally through overcoming evil with good. Regrettably and with deep disappointment and reluctance, in this instance, the consistent and now almost daily invectives, media statements, direct threats and undisputed Bar and criminal violations leave no option.

Sincerely Yours,

[signature]

(Phillip) Tim Howard, J.D., Ph.D.

their spouse unless they paid you $1,000,000, the threat could be considered extortion for causing a psychological injury or because it was done for a monetary gain. This is extortion even if you did not know how to contact their spouse. Generally, a claim of extortion cannot be based on a threat to do an act which a person has a lawful right to do, but you may not threaten to undertake an otherwise legal act for your own pecuniary advantage. An attorney that repeatedly engages in conduct considered extortion can be a violation of the Florida RICO Act, pursuant to section 772.04, Florida Statutes. This is also a potential violation of 18 USC 875(b), since there is an attempt to extort something of value and use of a transmission through interstate commerce (text, internet and federal reserve clearing house in Dallas, Texas) in order to facilitate such extortion.

# EXHIBIT G

RECEIVED
2018 AUG 29 PM 4:52
JACK CAMPBELL
STATE ATTORNEY

RECEIVED
AUG 29 2018
THE FLORIDA BAR

HOWARD JUSTICE
Howard & Associates
Attorneys at Law, P.A.
Dr. Tim Howard, J.D., Ph.D., Senior Partner*
Florida Supreme Court Certified Mediator

Tallahassee, Florida Office:
1415 East Piedmont Drive, Suite 5
Tallahassee, Florida 32308
Ph: (850) 298-4455
Fax: (850) 216-2537
tim@howardjustice.com

Jacksonville, Florida Office:
444 E. Duval Street
Jacksonville, Florida 32207
Ph: (904) 446-9817
Fax: (904) 446-9825
www.howardjustice.com

August 28, 2018

VIA HAND-DELIVERY

Shanee L. Hinson, Bar Counsel
651 East Jefferson Street
Tallahassee, Florida 32399-2300

Jack Campbell, State Attorney
301 South Monroe Street, Suite 475
Tallahassee, Florida 32301

Re: Margaret "Peggy" Harris v. Phillip Timothy Howard, TFB File No. 2019-00,088(2A); and Phillip Timothy Howard v. Jonathan B. Harris, TFB File No. 2019-70,042(11J).

Dear Counsel Hinson, and State Attorney Campbell:

In response to and in support of the above-referenced inquiry/complaints, please consider the following. In support of the second incontrovertible perjury referenced in the August 23, 2018 filing, as is found in the July 8, 2018 sworn Bar complaint allegedly by Mr. Peggy Harris, at pages 3 and 8, Mr. Jaakan Williams' sworn testimony on April 11, 2018, is in contrast to this sworn statement:

> In an effort to cure whatever perceived shortcomings may have resulted from Richard's testimony, following the depositions, Howard and his associate Ankur Mehta fabricated errata sheets for each transcript, extensively re-writing Richard's testimony.
>
> Howard and Mehta ordered Richard to sign the fraudulent errata sheets without even reading him the changes. Indeed, Richard was so near death at the time, he had no comprehension as to what was happening around him, or what he was even signing.
>
> . . .
>
> Jaakan Williams, who was present at Richard's depositions and who informed me of Howard's concoction of the fraudulent errata sheets. Mr. Williams is a witness in the Bar's investigation of Howard as well.

*Id.* (emphasis added).

*Admitted to practice in Florida, the District of Columbia, Northern, Middle, and Southern United States District Courts of Florida, the United States Court of Appeals for the 11th Circuit, and the United States Supreme Court. Ph.D, Northeastern University, Law, Policy & Society. Former Visiting Health Law, Bioethics, and Human Rights Scholar and Constitutional Law, Media & Politics and Judicial Process Instructor at Boston University. Former Director of and Professor with Northeastern University's Law & Policy Doctorate Program. President of Cambridge Graduate University International.



Mr Jaakan Williams in his April 11, 2018 deposition, pages 77-78, 86-90, attached hereto, states:

Q. I'll put it another way. Isn't it the duty of a lawyer to find the facts, find that law that best represents their client?
A. Agreed.
Q. All right. And if there's errors in the facts, (inaudible) person who's on the verge of death, that need to be clarified isn't it the lawyer's duty to clarify those facts?
A. I agree.
Q. And if one of the methods of clarifying the facts is an errata sheet, pointing out the precise language that the deponent said, read that to him as he's dying and then have the clarifying language read to him as he's dying, until he agrees on that change, isn't that an appropriate way to clarify the record for this dying deponent?
A. I believe so.
. . .
Q. Okay. So, Mr. Williams, during your visits with Mr. Harris and Peggy Harris on Thursday and Friday, you would cover a lot of the same topics that are in the errata sheets, such as smoking history, criminal history, military background, employment, addiction. Would those topics have been covered in your discussions with Richard and Peggy Harris on Thursday and Friday?
A. We covered a number of topics. Those are the predominant ones we covered.
Q. Okay. Very good. And you would have shared that with counsel or a paralegal on the case, since that's why you were there, to help them with the case?
A. Yes, I would have shared that.
Q. Okay. Mr. Williams, as far as the language in the errata sheet, did we require Richard to accept the proposed correction, or did we seek his ascent to make the change?
Q. Could Richard have said, "No, that's not a correct change?"
A. He could have, I would imagine.
Q. Right, and so – and Richard was lucid enough to say, "Well, no I (inaudible) with that change," and we would have crossed it out, our handwritten changes, if that's what Richard wanted to do?
THE WITNESS. I imagine he would have. He was – he was coherent that morning.
Q. He had no problems expressing his viewpoint, regardless of how people felt about it?
A Yes.
Q. So we did not require Richard to agree to this errata sheet, did we?
Q. And Richard could have said, "No, that's not correct"?
A. Yes, he could have, if he wanted to. I imagine.
Q. Right, and Richard's the kind of person that would have no problem telling you that's not correct?
THE WITNESS. From what I remember, yes.
Q. Okay. So, as far as your perspective on observing this process, wasn't the errata sheet something that Richard was aware of, understood, and approved to change his testimony from the discovery deposition?
THE WITNESS. If you're asking me if he agreed to the changes, yes, he agreed to the changes.
Q. And these changes were after that portion of the transcripts were read to him—
A. Yes, they were read to him.

*Id.* (emphasis added). This sworn statement says, "he was coherent that morning," "he agreed to the changes," and "they were read to him." *Id.*

This sworn statement on April 11, 2018, is not consistent with Mrs. Peggy Harris' the July 7, 2018 sworn statement before the Florida Bar:



> Howard and Mehta ordered Richard to sign the fraudulent errata sheets without even reading him the changes. Indeed, Richard was so near death at the time, he had no comprehension as to what was happening around him, or what he was even signing.
>
> . . .
>
> Jaakan Williams, who was present at Richard's depositions and who informed me of Howard's concoction of the fraudulent errata sheets. Mr. Williams is a witness in the Bar's investigation of Howard as well.

Moreover, Mrs. Peggy Harris, consistent with the facts above, was prepared for her sworn deposition testimony by attorney Jaakan Williams 1 and current Bar attorney Adriannette Williams. They would have coordinated the review of her May 23, 2017 deposition and would have coordinated the preparation of her errata sheets after Peggy Harris' review of her deposition transcript. Mrs. Peggy Harris states under oath:

Q. Okay. And so I asked you before the break whether you were aware, whether you knew whether your husband reviewed the deposition that I took of him, which was a multi-hundred-page transcript. Did he review that?
A. I believe he did, but he couldn't see it, but it was read to him.
Q. Okay. Who read it to him?
A. One of the attorneys.
Q. How long did it take?
A. A while. They came in early, yeah.
Q. They came in early the morning of June 25th?
A. I don't remember the morning, but they came in early to do it.
. . .
Q. Okay. Do you remember anything about the circumstances of what was read to him?
A. No.
Q. Do you know one way or the other whether that deposition was read to him from –
A. I believe it was.
Q. – start to finish?
A. I believe it was.
. . .
Q. Do you know whether he actually told the lawyers whether he had changes to make to his deposition? Did he actually tell them that?
A. I believe he did.
Q. How did he do that?
A. Verbally, I would think. But I'm not—I shouldn't say, because I'm not sure.
. . .
Q. Do you believe that when your husband signed those errata sheets, that he understood what he was signing?
A. I would think he would. I wouldn't think he would sign if he didn't.
Q. And my question was just a little bit different. Given his health condition at the time, do you think he understood what he was signing when he signed those errata sheets?

1 Moreover, Mr. Jaakan Williams did not say the errata sheets were "Howard's concoction of the fraudulent errata sheets." If he did say such a thing, he would be contradicting not only his own sworn testimony, he would be contradicting his deposition preparation of Mrs. Peggy Harris and his work with Mrs. Peggy Harris in her review of her deposition transcripts and in preparing and coordinating her errata sheets to her deposition. He would be leading Mrs. Peggy Harris into a perjurous trap, which in the Respondent's experience it is unlikely that Jaakan Williams would do.

A. I would say yes.
Q. Okay. So is the answer that you're not sure whether he knew what he was signing?
A. Again, I wouldn't think he would sign unless he knew what he was signing.
Q. Were you in the room when he signed them?
A. I don't—yeah, I think I was.
. . .
Q. After his deposition, after I had the opportunity to ask him questions, did Mr. Harris ever say to you that he had changes that he wanted to make to his testimony?
A. I believe he did.

*Id* (emphasis added).

Moreover, in response to the deposition reviews, Mr. Richard Harris and Mrs. Peggy Harris were both read the relevant portion of their transcripts and under oath made changes to their transcripts. This was confirmed by Mr. Richard Harris and reconfirmed by Mrs. Peggy Harris, wherein she repeatedly states under "penalties of perjury" in errata sheets after reviewing her testimony and providing corrections that "I do remember our attorneys coming over prior to Richard's deposition and reviewing his deposition testimony from the previous days with him, and making sure that the testimony he had given, and making all the corrections that Richard suggested." 2 *See* relevant portions of transcripts attached to the August 22, 2018 response. Neither Mr. Richard Harris nor Mrs. Peggy Harris were ordered to sign the errata sheets, and they were reviewed and read by or to both of them by either associate or senior counsel before they signed the errata sheets.

Since Mrs. Peggy Harris states in the July 8, 2018 Bar complaint under oath the opposite of what she contemporaneously stated and provided under oath on May 23, and July 6, 2017, and the opposite of what Jaakan Williams stated in his sworn deposition on April 11, 2018, either she is committing perjury in May 23 and July 6 of 2017, or on July 8 of 2018. Both incongruent statements cannot be true and honest.

As previously stated, the facts demonstrate that this Bar complaint was written by Mr. J.B. Harris as part of his continued efforts at extortion. As pointed out in the many prior filings, these documented and repeated, upon repeated patterns violate numerous rules of professional conduct as promulgated by the Florida Supreme Court, and have his client swearing to facts under penalty of perjury that are impossible to be true and honest.

This is another supplement to the response to the complaint of Margaret "Peggy" Harris, which in reality is a complaint by J.B. Harris. Consistent with the prior responses, these are further Bar violations by Mr. J.B. Harris.

As previously stated as pertaining to Mr. J.B. Harris. We did not want to have to report these violations, as this firm in its 23 years of existence, has never reported any fellow member of the Bar to the Bar or to law enforcement and has always resolved disputes and issues amicably and professionally. Regrettably and with deep disappointment and reluctance, in this instance, the consistent and now almost daily

2 In her sworn July 6, 2017 errata sheets, under penalty of perjury, Mrs. Peggy Harris states, "Our attorneys did review Richard's depo transcripts with him each day, and Richard clarified his answers and the changes he wanted made to the transcript." She also states, "In discussions with Richard, our attorneys prepared the errata sheets according to Richard's instructions and reviewed them with Richard. Richard verified that the errata sheets were consistent with the testimony he wanted to give." Finally, she states, "Richard knew exactly what he was signing because our attorneys reviewed the depo transcripts and errata sheets with Richard before he signed them, and Richard verified that the errata sheets were consistent with the testimony he wanted to give."

invectives, media statements, direct threats and undisputed Bar and criminal violations leave no option.

Sincerely Yours,

(Phillip) Tim Howard, J.D., Ph.D.

# EXHIBIT H

IN THE SUPREME COURT OF FLORIDA
(Before a Referee)

THE FLORIDA BAR,

Complainant,

vs.

CASE NOS. SC19-488 & SC19-1570
TFB File Nos. 2016-00,682(2A) & 2019-00,088(2A)

PHILLIP TIMOTHY HOWARD,

Respondent.

VOLUME 2
Pages 198 through 306

EXCERPT OF PROCEEDINGS: FINAL HEARING
Excerpt of Witnesses: Phillip Timothy Howard

BEFORE: THE HON. PAUL S. BRYAN, Referee

DATE: Tuesday, December 8, 2020

PLACE: Zoom Teleconference

REPORTED BY: LAURA MOUNTAIN, Court Reporter, Notary Public in and for the State of Florida at Large

WILKINSON & ASSOCIATES
Certified Court Reporters
Post Office Box 13461
Tallahassee, Florida 32317
Wilkinsonandassociates@comcast.net
850.224.0127



APPEARANCES:

REPRESENTING THE COMPLAINANT:

SHANEE L. HINSON, BAR COUNSEL

The Florida Bar
Tallahassee Branch Office
651 East Jefferson Street
Tallahassee, Florida 32399-2300

REPRESENTING THE RESPONDENT:

ALFRED R. BRUNETTI, ESQUIRE

McElroy, Deutsch
Post Office Box 2075
Morristown, NJ 07962-2075

ALSO PRESENT:

Robin Kelly, TFB Paralegal

Karen Brown, TFB Investigator

* * *



INDEX


| PROCEEDINGS: | PAGE: |
|---|---|
| WITNESSES: | |
| PHILLIP TIMOTHY HOWARD | |
| Direct Examination by Ms. Hinson | 202 |
| Cross Examination by Mr. Brunetti | 256 |
| Redirect Examination by Ms. Hinson | 292 |
| EXHIBITS: | |
| TFB Exhibit No. 6 received in evidence | 240 |
| TFB Exhibit No. 7 received in evidence | 245 |
| TFB Exhibit No. 8 received in evidence | 250 |
| TFB Exhibit No. 9 received in evidence | 254 |
| CERTIFICATE OF REPORTER | 306 |




EXCERPT OF PROCEEDINGS

THE REFEREE: Okay, are we ready?

MS. HINSON: Yes.

THE REFEREE: Who would be the next witness or the next person to testify?

MS. HINSON: Mr. Howard.

THE REFEREE: The Bar is calling Mr. Howard right now?

MR. HOWARD: Is that a question for me, Your Honor?

THE REFEREE: My question is who is calling Mr. Howard. Is it Mr. Brunetti that's calling Mr. Howard?

MS. HINSON: The Bar is.

THE REFEREE: The Bar is calling Mr. Howard. Okay, Mr. Howard, if you'd raise your right hand.

Thereupon,

PHILIP TIMOTHY HOWARD

was called as a witness, having been first duly sworn, was examined and testified as follows:

THE REFEREE: Okay, thank you.

MS. HINSON: Okay, we're going to get this echo taken care of. Okay, I think that is it.

THE REFEREE: We're having some of that echoing right now, but maybe it just went away.

10:30. I think they said 10:15, so give me about ten seconds.

It's 10:30. The hearing I was talking about that's 15 minutes is going to be at 10:30, so we have about 15 minutes.

MS. HINSON: Okay, just a moment. I'm going to put another document up.

THE REFEREE: While you're doing that, we can go off the record a minute. I'm just going to tell the attorneys something.

(Off the record)

BY MS. HINSON:

Q Okay, so Mr. Howard, the next email I have up -- and the dates may be out of order, so I do apologize, but I'm kind of going in the order that we have them listed in the trial exhibits. This is an email dated July 30th from you to Matt Hinson. Actually, let me -- okay, this is an email from you to Matt Hinson dated July 30th where you are advising him that she didn't respond to me. Is it safe to assume that the she is Ms. Peggy Harris?

A Yes.

Q Okay, and then you go on to say Mr. Harris has extensive history of Bar violations and extortion I was forced to report. Then you go on to say in the last paragraph, thank you for your availability. This case may



yet return to the firm.

So on July 30th, if you're advising Mr. Hinson that the case may return to the firm, then there was no assumption that J. B. Harris was working for you and this case was still with your firm; would that be accurate?

A No.

Q So how would the case return to the firm if Mr. J. B. Harris was working for you on May 30th?

A Mr. Harris is playing both ends against the middle. At this time not only is he getting $21,000 a month, he's also trying to shop cases that I own to other firms and get double paid. So this is -- it's hard to manage a gentleman like this. So the case is actually with the firm, but as far as the issues with J. B. Harris, we'll have to see how they work out.

So in our view J. B. Harris, in fact, financially, economically and everything, he's working for this firm. But the client doesn't see it that way and we have to go with how the client sees it, not how I see it.

Q Okay, now, you also said in this first paragraph that's highlighted, Mr. Harris has an extensive history of Bar violations. Mr. Howard, have you done a public records request on Mr. Harris's disciplinary history?

A I'm not talking about his history. I didn't say history. I'm not talking about history in the sense of Bar



violations that have been prosecuted, about a history of document violations which I have which you received showing extortion, threats, derogatory comments and extensive perjury that you're aware of, that you decided to go forward with --

Q Mr. Howard --

A -- this case regardless. That's what I'm referring to, his history of perjury.

Q Mr. Howard, okay, I just want to stop you because you said that I am aware of. I am aware of no such thing, so I just wanted to make that clear.

A Yes, you are. They're attached to your exhibits, so you are aware of those things.

Q I'm aware of no such violations, is what I'm clarifying.

A And I'm clarifying that you are, in writing. You have --

THE COURT REPORTER: I'm sorry, Mr. Howard. I'm sorry, I'm not getting what you said. Your voice went in and out.

THE WITNESS: You've received written and sworn statements that are perjurous, complete perjury, under oath, by both Mr. Harris, by Peggy Harris, and they are detailed with documents attached to Shanee Hinson and to the Florida Bar. The Florida Bar has --

BY MS. HINSON:



Q Right, Mr. --

A -- been fully aware of his perjury, fully aware of his Bar violations, and yet you're going forward with this, and that's why you're not calling him as a witness because you know how dirty he is.

Q Mr. Howard, let me clarify again, I am aware of no Bar violations. And just so we're clear, Bar Counsel does not determine whether Bar violations have been committed. The Referee and the Supreme Court makes that determination.

So my question to you was, have you done a public records request for the discipline history of Mr. Harris?

A I have not, but I think my counsel has.

Q So at the time that you sent this email to Mr. Matt Hinson, were you aware of any history of Bar violations --

A Yes.

Q -- that were determined by the Florida Supreme Court against Mr. J. B. Harris?

A No, not the way you phrased the question. That's not what I said here in the writing.

MS. HINSON: Okay, Your Honor, the Bar would like to enter this email into evidence as the Bar's Exhibit Number 8.

THE REFEREE: Any objection?

MR. BRUNETTI: I object, Judge, only as to

financial actions to benefit him, correct?
A Correct.
Q And among those actions were paying for his medical insurance, correct?
A Correct.
Q And front-loading some salary that he had agreed to receive from your firm, correct?
A Correct.
Q And to the best of your knowledge, after receiving those threats from Mr. Harris and not submitting to them, do you know whether or not Bar complaints were filed by Mr. Harris against you?
A Correct. He ghost wrote or wrote himself, I think, four Bar complaints. He wrote the Peggy Harris complaint, which she never read. He wrote the Kim Poling complaint, which she didn't do. He wrote his own complaint. And he's written complaints against other firms in Texas.
Q And there's been testimony, I believe, also, sir, that you advised the Florida Bar of Mr. J. B. Harris's actions and threats to file Bar complaints against you prior to this case being filed; do you recall that, sir?
A Yes.
Q And I'm trying to show you a document which is Bates stamped TFB Harris 47. Can you read this, Mr. Harris?
A Yes.



Q Okay, I can represent to you this is a seven-page letter that's attached to the Florida Bar's exhibits Bates stamped TFB Harris 47 through 53. Do you recall sending this document to the Florida Bar?
A Yes, I think there's several letters to this effect, along with attachments and sworn transcripts.
Q And you directed this to not only Ms. Hinson at the Florida Bar, but also to the State Attorney's office, correct?
A Yes, I did.
Q And at page two of this letter did you advise the recipients of this letter -- I'm sorry, I'm trying to mark that. I'll just put my cursor here if you can see that. At this bolded portion on page two, did you advise the Florida Bar and the other recipients of this letter that in an email on August 21st, 2018, J. B. Harris said to you, quote, Tim, I suggest you reactivate my insurance today or I will be at your office first thing tomorrow to spend a little quality time with you. You've placed the lives of my children at risk and that won't stand.
Did you advise the Florida Bar and the other recipients of this letter of that communication, sir?
A This happened the day before. That's just one of many.
Q Well, my question is, did you advise them of that



by submitting in this letter?
A Yes, I did.
Q On page five of the letter, which is Bates stamped 51, which I'm also trying to show, at the bottom of the page did you also advise the Florida Bar and the recipients of this letter that Mr. Harris, J. B. Harris, wrote to you on June 6, 2018 and said, quote, Tim, if you think you're having trouble with the Bar's investigation of your practices BWCI Pension Trustees, Limited, Ted Doukas, and everyone else who is still after you, you're going to walk into a shit storm if you steal the Goulds from me as my clients.
A Yes, that's --
Q I will file for costs and fee, sue for *tortuous interference and unpaid contributions to costs, fraud and everything else I can think of. I will also amend my complaint with the Bar and file a complaint against Neil, as well.
Did you include that passage in your letter to the Florida Bar, sir?
A Yes, as I also included a copy of the emails, themselves. And everything I've sent to the Bar is documented. What I find extraordinary is the Bar would allow this to take place, when the evidence is unmitigatedly and non-challengeable.
Q Did you receive a response from the Florida Bar to



this August 22nd, 2018 letter?
A No.
Q Did you receive any response concerning the threats that were made against you by J. B. Harris from the Florida Bar?
A No, the Florida Bar's sanctioning extortion, perjury and threats.
Q And it was subsequent to you sending this letter that on September 17th, 2019 the Florida Bar formally filed a Bar complaint against you, correct, sir?
A Correct, the Florida Bar knowingly is supporting perjury, fraud and extortion.
Q Were you ever given a reason why the claims that Mr. -- or the allegations that you made and the information that you gave -- made -- excuse me -- the allegations that you made and the information that you provided to the Florida Bar concerning J. B. Harris and his statements were never investigated?
A Correct.
Q So no investigator ever called you from the Florida Bar, correct?
A There was an investigator in the Miami office that called about these. I think there was something the Bar did with J. B., required him to do some professionalism, but I don't know how that turned out.

Q Sir, do you believe that you competently represented the Harrises in the tobacco litigation?

A More than competently. I think a 10 million dollar verdict based on all the work and the money we paid for them, and to make sure they were paid from the first settlement, and making sure that the evidence was sound, and the winning trial preservation demonstrates the competency of the performance.

Q Do you believe that you competently represented the estate of Mr. Harris in the probate litigation, aside from the issue of the misunderstanding or the communication which we have previously discussed ad nauseam?

A Aside from the eight-week delay, confusing between probate counsel covering it, and taking proper steps to make sure it was covered with no prejudice to the client, yes. This was a non-substantive issue that was again used by J. B. Harris and picked up by the Bar in order to extort.

Q Well, you're aware of the fact, sir, that on July 30th, 2018, that's when you formally received the email from J. B. Harris telling you and Matt Hinson to, quote, stand down, unquote, from taking any further representation of Ms. Harris, correct?

A Correct. We were ready to solve the problem, but this is part of J. B.'s extortion in response to the Gould sisters leaving him because of his nasty approach to them.



Q And you became aware that after that July 30th, 2018 email, only a few weeks later -- actually, on September 5, 2018, the probate case was actually refiled and reactivated, correct, sir?

A Correct, which we could have done at any moment.

Q And do you feel that you were diligent in your representation of the Harrises in relation to the tobacco litigation?

A Absolutely.

Q And do you feel that you were diligent, aside from your prior representations about the communication, with the Harrises in relation to their probate matter?

A Correct.

Q And do you feel that you adequately supervised Jaakan Williams while he was an employee of Howard and Associates?

A Completely. That is why, when there were mistakes made -- just like a football coach, because I'm a football coach -- you discipline your players. So he made some errors, he wasn't right on it. There was no condemnation. I actually -- after we were done, I said, Jaakan, are you okay? I was aggressive, but part of me is a football coach. I help with the high schools even now as a football coach.

So I might have been a little aggressive, but I hope he learned key issues you don't abandon, no matter how



close you get to the client. You make sure statute of limitations and key components are covered.

Q And in fact he worked for you for another year plus after that deposition of Mr. Harris, correct?

A Correct. And as far as I knew, we were fine. Apparently there's some residual bitterness there, but I've apologized to him, and I thought we were fine.

MR. BRUNETTI: I have nothing further, Your Honor.

THE REFEREE: Questions, if any?

MS. HINSON: Yes, Your Honor. Mr. Brunetti, do you mind taking your document down?

MR. BRUNETTI: Oh, sorry. Yeah.

REDIRECT EXAMINATION

BY MS. HINSON:

Q Mr. Howard, I'm going to work my way backwards. So first you talked about a letter you sent to -- or Mr. Brunetti asked you about a letter you sent to the Florida Bar detailing what you thought were threats against you by Mr. J. B. Harris. Was this a formal Bar complaint you filed against J. B. Harris or was this just your response to a complaint that you were required to submit to the Florida Bar?

A Both. You'll see both, my formal Bar complaint and my response, because the facts are intertwined.

Q Okay, well, I'm saying did you submit a formal Bar



complaint against Mr. J. B. Harris? It cannot be both. So I'm asking, did you submit your own complaint against J. B. Harris unrelated to this particular case?

A Yes, if you see -- if you see the title to the letter, it's got the Bar complaint of Howard versus Harris and the Bar response of Harris versus Howard. Peggy Harris versus Howard, Howard versus J. B. Harris. Both were cited --

Q Right, but --

A -- both were cited in the letter.

Q Okay, so this is your response to a complaint. You were sent a 15-day letter to respond to a complaint. This is your response. Did you fill out a Florida Bar complaint against J. B. Harris making your allegations and submit that to the Florida Bar?

A There's a Florida Bar number on that, yes.

Q Right. You cannot get a Florida Bar number unless you submit a complaint. So this is the Florida Bar number for the Peggy Harris case. I'm asking did you submit your own separate --

A No. If you look at the document -- excuse me.

Q -- Bar complaint against J. B. Harris? Okay, now, you said on numerous occasions J. B. Harris threatened to file a Bar complaint against you. When those threats were made, did you file a complaint at that time?

A Yes. You have the Bar complaint number, you have them referenced in my letters, both -- there's two Bar complaint numbers in each of the letters, both my response and also my Bar complaint. They both have Florida Bar numbers.

Q Okay, and what was the outcome of your Bar complaint against Mr. J. B. Harris?

A I don't know the full outcome. I do recall there was an interview on some portion. I do recall there was some disciplinary sanction; I don't know what it was.

Q Okay, so you would have received notice of the outcome if you filed a complaint; whether it was closed, whether there was a trial, whether it was assigned to a Referee. So I'm asking you, what were you notified regarding a complaint you filed against J. B. Harris?

A I was notified that there was professional sanctions issued against him. I don't recall what they were.

Q Okay. Just one moment.

A I do recall the Bar dismissed the direct complaint by Mr. J. B. Harris against me.

Q Just a moment, Mr. Harris (sic) while I put a screen up. So Mr. Harris -- I'm sorry. Mr. Howard, what I have up now is J. B. Harris, Jonathan B. Harris's profile page on the Florida Bar. Is this the man you recognize as J. B. Harris?



A Correct. And the last time I saw him he had cowboy boots and a hat on, but that's him.

Q Okay, so I'm going to go down here to where it says ten-year discipline history. Do you see where it says none?

A I don't know why the Bar has that, because I received notice that he was sanctioned, he had to do some professional --

MR. BRUNETTI: Your Honor, I know the strict rules of evidence don't apply, but I'm going to object to this. She can certainly question his knowledge, but this is not a business record that I'm aware of. I don't believe you can take judicial notice of it, and I believe it's an active web page. I would object to its use now.

THE REFEREE: I think it can be used to ask him questions, but I'm not accepting it as the truth of what is asserted. So she can use it for that purpose, to question him. Go ahead, please.

BY MS. HINSON:

Q Okay, so this is the Florida Bar website, and as you're aware, as a Florida Bar attorney, each attorney has a profile page which lists information. I'm sorry, I think I actually got off of it. And the Florida Bar lists a ten-year discipline history of any attorney, so I'm showing you this



page, and can you -- you've acknowledged that it says no discipline history. Now I want to show you a different page.

MR. BRUNETTI: Your Honor, I don't want to jump the gun, but it looks like Ms. Hinson is trying to show Mr. Howard's Bar discipline page. The relevance at this point --

MS. HINSON: No, no, Mr. Brunetti, I'm not trying to show his -- I'm trying to show his Bar profile page, not his discipline page.

BY MS. HINSON:

Q Okay, Mr. Howard, this is your actual profile page. And can you tell me what it says here for ten-year discipline history?

A None.

Q Okay. And have you had any discipline in the last ten years?

A Not that I'm aware of.

Q Okay, so is it fair to say that if the Bar has listed no discipline history in ten years that means the attorney has had no discipline history in the last ten years?

MR. BRUNETTI: Your Honor, same objection. Now she's using the material that's listed on the website as opposed to querying Mr. Howard's knowledge. She's now asking for the veracity of this website to be admitted through Mr. Howard's testimony by making him



extrapolate.

THE REFEREE: Sustained. Objection sustained.

BY MS. HINSON:

Q Okay, Mr. Howard, is it your testimony that you received notification from the Florida Bar that Mr. Howard -- I'm sorry -- Mr. J. B. Harris had been sanctioned?

A Yeah, I received an email from the investigating person that they were recommending that he go to professional training. I don't know what happened with that.

Q Okay, so you're talking about a course, not a sanction, which is -- which we need to clarify is different. You're saying you were notified that he took some course through the Florida Bar?

A I don't know. I don't know how your sanctions work. I know usually when you're told to do something by the Bar it's a type of sanction. I don't know whether it's a reprimand, whether it's instruction, whether it's -- it's a sanction.

Q Okay, so I think you're confused. A sanction is not meted out by the Florida Bar. That is done by the Florida Supreme Court.

MR. BRUNETTI: Your Honor, I'm going to object to the testimony by Ms. Hinson concerning the inner workings of the Florida Bar.

MS. HINSON: Your Honor --

# EXHIBIT I

LR1 – Bennett

HOWARD JUSTICE

RECEIVED

AUG - 3 2018

THE FLORIDA BAR

Howard & Associates
Attorneys at Law, P.A.
Dr. Tim Howard, J.D., Ph.D., Senior Partner*
Florida Supreme Court Certified Mediator

Tallahassee, Florida Office:
1415 East Piedmont Drive, Suite 5
Tallahassee, Florida 32308
Ph: (850) 298-4455
Fax: (850) 216-2537
tim@howardjustice.com

Jacksonville, Florida Office:
444 E. Duval Street
Jacksonville, Florida 32207
Ph: (904) 446-9817
Fax: (904) 446-9825
www.howardjustice.com

August 3, 2018

VIA HAND-DELIVERY

Shanee L. Hinson, Bar Counsel
651 East Jefferson Street
Tallahassee, Florida 32399-2300

Jack Campbell, State Attorney
301 South Monroe Street, Suite 475
Tallahassee, Florida 32399-2300

Re: Sandra Fulup v. Phillip Timothy Howard, TFB File No. 2016-00,682(2A); Violation of Section 836.05, Florida Statutes, Crime of Extortion Including Potential Co-Conspirators.

Dear Bar Counsel Hinson, State Attorney Campbell:

On July 9, 2016, Mrs. Sandra A. Fulop and Mrs. Dana F. Hall, years after all accounting and amounts were reviewed, accepted and settled, conspired to demand $355,031 (Exhibit A, attached), in order to drop the above referenced complaint. The representation concerned a former client, Mr. Jason Hall, in which representation ceased eight (8) years earlier, on August 18, 2008 for the workers compensation and "in any other fashion or matter" and completed mediation of dispute and divorce from Mrs. Dana Hall on September 2, 2008. Letter documenting Completion of Representation attached as Exhibit B. The former client, Mr. Jason Hall, was deceased on May 3, 2012. The actual client, Mr. Jason Hall never had any complaints or issues.

Moreover, all funds and accounts were reviewed, accounted for, accepted and settled by the Personal Representative of the Estate, Mrs. Sandra Fulop and the ex-wife, Mrs. Dana Hall on December 23, 2013. *See* Correspondence and accounting in Cumulative Exhibit C, attached. When the extortion demand arose on July 9, 2016, further details may have been available for the accounting to add further clarity, but Mrs. Fulop and Mrs. Dana Hall would not return the original files, despite a formal demand. Letter to Mrs. Fulop and Mrs. Dana Hall attached as Exhibit D.

*Admitted to practice in Florida, the District of Columbia, Northern, Middle, and Southern United States District Courts of Florida, the United States Court of Appeals for the 11th Circuit, and the United States Supreme Court. Ph.D, Northeastern University, Law, Policy & Society. Former Visiting Health Law, Bioethics, and Human Rights Scholar and Constitutional Law, Media & Politics and Judicial Process Instructor at Boston University. Former Director of and Professor with Northeastern University's Law & Policy Doctorate Program. President of Cambridge Graduate University International.



In summary, this is a demand of $355,031 to drop the above-referenced complaint for matters in which they were not parties, had already reviewed accounts and accepted the final amounts over two and one-half (2-1/2) years earlier. In addition, without legal justification, they would not return the original files, which included accounting documents. These actions without legal justification, for their own pecuniary advantage, and actual malice by Mrs. Fulop and Mrs. Hall, are a violation of section 836.05, Florida Statutes crimes against extortion for maliciously threatening to continue the above-referenced action if they were not paid $355,031.[1]

We did not want to have to report this criminal violation, as this firm in its 23 years of existence, has never reported any former client to law enforcement and has always tried to resolve disputes and issues amicably and professionally through overcoming evil with good. There seems to be a rash of these types of actions now against the firm, regrettably and with deep disappointment and reluctance, in this instance, since the above-reference matter is continuing, and the criminal violation is at the root of this mater, there leaves no option.

Sincerely Yours,

(Phillip) Tim Howard, J.D., Ph.D.

1 Whoever, either verbally or by a written or printed communication, maliciously threatens to accuse another of any crime or offense, or by such communication maliciously threatens an injury to the person, property or reputation of another, or maliciously threatens to expose another to disgrace, or to expose any secret affecting another, or to impute any deformity or lack of chastity to another, with intent thereby to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will, shall be guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. Under Florida Statute 836.05, the crime of Extortion is committed when a person maliciously threatens to: Accuse another of any crime or offense; Injure the person, property or reputation of another; Expose another to disgrace; Expose any secret affecting another; or Impute any deformity or lack of chastity to another, with the intent to: Extort money or any pecuniary advantage; or Compel any person to do any act or refrain from doing any act against their will. Actual Malice versus Legal Malice. Although it is a subtle distinction, under the Extortion statute, the prosecutor is required to prove the threat was committed with Actual Malice, which means "means ill will, hatred, spite, evil intent." This is in contrast to what is known as Legal Malice, which only requires that an act be committed intentionally and without any lawful justification. Penalties for Extortion. The crime of Extortion is a Second-Degree Felony in Florida and is punishable by up to 15 years in prison, 15 years of probation, and a $10,000 fine. *Colamia v. State*, 125 So. 3d 1007 (Fla. 5th DCA 2013) (Actual malice is the standard. "A threat is malicious if it is made intentionally and without any lawful justification."); *McKee v. State*, 715 So.2d 101 (Fla. 5th DCA 1998) (Conviction upheld for threats that defendant will destroy you, destroy your business, accusing of drug use, and threatening to make accusations to a federal agency.). "Maliciously" means wrongfully, intentionally, and without legal justification or excuse. A threat is "malicious" for purposes of extortion statute if it is made intentionally and without any lawful justification. It is not necessary that the person accused of extortion have the ability to carry the threat out. Threats to cause mental or psychological injuries are generally prohibited under extortion statute. Therefore, if you threatened to expose someone's affair to their spouse unless they paid you $1,000,000, the threat could be considered extortion for causing a psychological injury or because it was done for a monetary gain. This is extortion even if you did not know how to contact their spouse. Generally, a claim of extortion cannot be based on a threat to do an act which a person has a lawful right to do, but you may not threaten to undertake an otherwise legal act for your own pecuniary advantage. An attorney that repeatedly engages in conduct considered extortion can be a violation of the Florida RICO Act, pursuant to section 772.04, Florida Statutes. This is also a potential violation of 18 USC 875(b), since there is an attempt to extort something of value and use of a transmission through interstate commerce (text, internet and federal reserve clearing house in Dallas, Texas) in order to facilitate such extortion.



Exhibit F



Gmail by Google

Tim Howard <tim@howardjustice.com>

**Re: Meeting to Resolve Concerns**
1 message

Sandy Fulop <safpassport@yahoo.com>
Reply-To: Sandy Fulop <safpassport@yahoo.com>
To: Tim Howard <tim@howardjustice.com>
Cc: Dana Dane <dfhall69@yahoo.com>

Sat, Jul 9, 2016 at 11:14 AM

Tim, thank you for your efforts by phone messages to set a date and time to meet to allow a more robust analysis or our respective files.

There is no need to meet because you already have in hand a copy of what we'd be bringing to such a meeting.

Now is the time for you to honor the contract and send me a certified check in the amount of $355,031. This figure represents the principal plus the interest ($1,667/mo x 93 months, i.e., October 2008 thru June 2016) as established in the terms of the contract signed by you and Jason on September 5, 2008.

Please let me know when you have done this.

Sandra A Fulop and Dana F. Hall

On Friday, July 8, 2016 2:51 PM, Tim Howard <tim@howardjustice.com> wrote:

Upon review of our file, we can verify what is needed to address your concerns on accounting.

If you can bring your complete file as well, this will allow a more robust analysis so that you are satisfied with the results.

Let us know a date and time to meet. We have left messages on your respective phones to coordinate such a meeting.

*Tim Howard*

Professor Tim Howard, J.D., Ph.D.
Howard & Associates, P.A.

Howard & Associates
Attorneys at Law, P.A.
Dr. Tim Howard, J.D., Ph.D., Senior Partner*
Florida Supreme Court Certified Mediator

8511 Bull Headley Road, Suite 405
Tallahassee, Florida 32312
Telephone (850) 298-4455
Telecopy (850) 216-2537
e-mail: ptim@aol.com

Northeastern University
Law & Policy Doctorate Program, Director
75 Nightingale Hall
360 Huntington Avenue
Boston, Massachusetts 02215-5000
Telephone (617) 373-6076

September 2, 2008

Jason Hall
6600 Donnerail trail
Tallahassee, FL 32308

Re: Completion of Representation.

Dear Mr. Hall:

This letter is to verify that this firm completed its representation of your interests in the workers compensation claim against Ferrell Roofing, Inc., and in any other fashion or matter, on August 18, 2008, and completed mediation of your dispute with Dana Hall on September 2, 2008. Consequently, as of September 2, 2008, this firm has no further attorney/client relationship with you.

By signing below you agree and affirm under oath and under penalty of perjury that this firm has professionally and competently represented you; that this firm has no professional liability to you, and that as of September 2, 2008, this firm is not representing you or your interests in any fashion.

Sincerely yours,

Tim Howard, J.D., Ph.D.
For the Firm

PTH/kmm

Jason Hall 9-5-08
Jason Hall Date

Notary Public: Keven Marie Mathews

KEVEN MARIE MATHEWS
MY COMMISSION # DD 785657
EXPIRES: May 7, 2012
Bonded Thru Notary Public Underwriters

*Admitted to practice in Florida, the District of Columbia, Northern, Middle, and Southern United States District Courts of Florida, the United States Court of Appeals for the 11th Circuit, and the United States Supreme Court. Ph.D, Northeastern University, Law, Policy & Society. Former Visiting Health Law Scholar and Constitutional Law, Media & Politics and Judicial Process Instructor at Boston University. Professor of Law and Policy and Director of Northeastern University's Law & Policy

EXHIBIT 8

# Howard & Associates
## Attorneys at Law, P.A.

Dr. Tim Howard, J.D., Ph.D., Senior Partner*
Florida Court Certified Mediator

Howard & Associates, P.A.
8511 Bull Headley Road, Ste. 405
Tallahassee, Florida 32312
Telephone: (850) 298-4455
Telecopy: (850) 216-2537
tim@howardjustice.com

Cambridge Office
8 Museum Way Ste. 2407
Cambridge, MA 02141
(857) 277-0990
tim@howardjustice.com

Cambridge Graduate University
One Broadway, 14th Floor
Cambridge, MA 02142
(617) 475-0201
(877) 645-6225 (6-GLOBAL)
president@cguglobal.net

December 23, 2013

Sandy Fulop
6600 Donerail Trail
Tallahassee, FL 32308

RE: Full and Final Distribution of Jason R. Hall Non-refundable, Non-Client Funds

This letter is to document and finalize this firm's distribution of any non-client funds held for Jason R. Hall. After providing Sandy Fulop, as personal representative to the estate of Jason R. Hall and Dana Hall as the legal guardian of the minor children (heirs to the estate of Jason R. Hall), a detailed briefing of all remaining non-client funds, as well as having the opportunity for independent counsel to review and advise, you have agreed that the outstanding balance is [redacted]. If any outstanding medical bills are satisfied without any further payment, a portion of the amount of those bills will also be refunded to you as well.

Sandra A. Fulop
Sandy Fulop as Personal Representative to the Estate of Jason R. Hall

Sincerely yours,

Tim Howard, J.D., Ph.D.

*Admitted to practice in Florida, the District of Columbia, Northern, Middle, and Southern United States District Courts of Florida, the United States Court of Appeals for the 11th Circuit, and the United States Supreme Court. Ph.D, Northeastern University, Law, Policy & Society. Former Visiting Health Law, Bioethics, and Human Rights Scholar and Constitutional Law, Media & Politics and Judicial Process Instructor at Boston University. Former Professor and Director of Northeastern University's Law & Policy Doctorate Program. President and Professor Cambridge Graduate University.

Pg. 20

# EXHIBIT J

Get on the path to results today.

J.B. HARRIS
P.A.

786-303-8333



Legal Expertise You Can Rely On When Filing or Defending a Bar Complaint

FREE CONSULTATION

## ABOUT J.B. HARRIS P.A.

J.B. Harris is a Florida lawyer with more than 36 years experience in complex litigation. Over the years he has developed a specialty in holding lawyers accountable for unethical conduct, by assisting clients and others to prepare and file Bar complaints against unscrupulous attorneys for violations of the Rules Regulating the Florida Bar. Such unethical practices include stealing a client's money held in trust, abandoning a client in the middle of a case, charging a client advance costs under contingency fee contracts, charging exorbitant fees, over-billing hourly rates, settling a case without a client's consent, failing to appear at hearings, and by allowing law office staff to practice law without a license, to name a few.

J.B. Harris also defends lawyers, who have been wrongfully accused of unethical conduct and who have had Bar complaints filed against them by disgruntled clients.

If you feel you have either been harmed by a lawyer's unethical practices, or you are a lawyer who is the victim of a client's retaliatory Bar complaints, I am here to represent you

FOR A FREE CONSULTATION, CALL, TEXT OR EMAIL J.B. HARRIS AT 786-303-8333, OR JBHARRISESQ@GMAIL.COM.

### A Focus on Results

We know that legal action can sometimes be overwhelming. J.B. Harris is dedicated to providing you help in language that you can understand. If you don't feel like you understand your options, just ask, and he will work to find an explanation that works for you.

### Get Started Today

Don't wait! Contact us for a **free phone consultation** at 786-303-8333, or at jbharrisesq@gmail.com. Let us help you figure out your best next steps are. The sooner you have a plan of action, the better your chances of taking the correct steps to get the results you want.

J.B. Harris P.A.

786-303-8333

Copyright © 2020 J.B. Harris P.A. - All Rights Reserved.

Powered by GoDaddy Websi
Build

**PART FOUR**

**LIST OF WITNESSES SUPPORTING ALLEGATIONS**

Honorable Paul S. Bryan
145 NE Hernando Avenue
Lake City, Florida 32055
(386) 758-2147 (o)

Phillip Timothy Howard, Esq.
3122 Mahan Drive, Suite 801
Tallahassee, FL 32308
(850) 510-6021 (c)
tim@howardjustice.com

JB Harris, Esq.
3127 Ponce De Leon Blvd.
Coral Gables, Florida 33134
(786) 303-8333
Jbharrisesq@gmail.com
Jbharrispa.com

Kimberly Poling 3432 NE 15th Ave
Oakland Park, Florida 33334
(561) 573-7008
kimberlypoling29@yahoo.com

Margaret "Peggy" Harris
Havana, Florida

Neil Epstein
Tallahassee, Florida
(609) 980-1772

Alfred Brunetti, Esq.
McElroy Deutsch
1300 Mount Kimble Avenue
Morristown, New Jersey 07962-2075
((973) 425-8855 (o)
abrunetti@mdmc-law.com

John P. Leonard, Esq.
McElroy Deutsch
1300 Mount Kimble Avenue
Morristown, New Jersey 07962-2075
(973) 425-8855 (o)
jleonard@mdmc-law.com

Rocco Magni, Esq.
Susman Godfrey
Houston, Texas
(713) 653-7861 (o)
rmagni@susmangodfrey.com

Ashish Mahendru, Esq.
Mahendru, PC
639 Heights Blvd.
Houston, Texas 77007
(713) 571-1519(o)
amahandru@thelitigationgroup.com

Martin Shellist, Esq.
1700 Post Oak Blvd.
2 Blvd Place, Suite 300
Houston, Texas 77056
(713) 714-5355 (o)

Edward Ondarza
1700 Post Oak Blvd.
2 Blvd Place, Suite 300
Houston, Texas 77056
(713) 714-5355 (o)

Witnesses reference in the transcripts and documents filed with the Court and the Florida Bar

# ATTACHMENT III

# The Florida Bar
# Inquiry/Complaint Form

**PART ONE (See Page 1, PART ONE – Complainant Information.):**

Your Name: Phillip Timothy Howard

Organization: Howard & Associates, Attorneys at Law, P.A.

Address: 3122 Mahan Drive, Suite 801

City, State, Zip Code: Tallahassee, FL 32308

Phone: 850-510-6021

Email: tim@howardjustice.com

ACAP Reference No.:

Does this complaint pertain to a matter currently in litigation? Yes Attorney Knows and Complicit in Criminal Perjury, Extortion, Violation Bar Rules No SC19-1570, FL Bar File No. 2019-00,088

**PART TWO (See Page 1, PART TWO – Attorney Information.):**

Attorney's Name: Shanee Hinson Florida Bar No. 736120

Address: 651 E. Jefferson Street

City, State, Zip Code: Tallahassee, FL 32399-6584

Phone: (850) 561-5845

**PART THREE (See Page 1, PART THREE – Facts/Allegations.): The specific thing or things I am complaining about are: (attach additional sheet).**

**PART FOUR (See Page 1, PART FOUR – Witnesses.): The witnesses in support of my allegations are: (attach additional sheet).**

**PART FIVE (See Page 1, PART FIVE – Acknowledge Oath and Signature.):**

☑ YOU MUST PLACE YOUR MARK IN THE BOX ACKNOWLEDGING THE OATH AND YOU MUST SIGN YOUR FULL NAME BELOW.

**Under penalties of perjury, I declare that the foregoing facts are true, correct and complete.**

Phillip Timothy Howard

Print Name

Signature

12/06/21

Date

RECEIVED

DEC 7 2021

THE FLORIDA BAR

If viewing this form on an Apple™ product in Preview mode, to sign it electonically you will first have to download and oven the document in Adobe Acrobat™.

**FLORIDA BAR COMPLAINT**
*Florida Bar v. Shanee Hinson*

**PART THREE**

**SUBMISSION TO THE FLORIDA BAR**

## I. DOCUMENTATION OF REPEATED NOTICED OF SUBSTANTIAL CRIMINAL AND FRUADULENT ACTS, AND BAR VIOLATIONS

Respondent, Shanee Hinson, was provided extensive written evidence and received numerous notices in writing documenting under oath, substantial criminal and fraudulent acts upon the Florida Bar, as well as extensive violations of the Rules of Professional Conduct, by Attorney J.B. Harris, on the following dates:

| | |
|---|---|
| June 11, 2018. | Exhibit A. |
| June 25, 2018. | Exhibit B. |
| July 13, 2018. | Exhibit C. |
| August 7, 2018 | Exhibit D. |
| August 22, 2018. | Exhibit E. |
| August 28, 2018. | Exhibit F. |
| March 18, 2021. | Exhibit G. |

Respondent was specifically repeatedly informed in writing of perjury, fraud, extortion, and numerous Florida Bar violations by attorney J.B. Harris, Esq., and Peggy Harris.

As an excerpt, consider the following admission of fraud and perjury found in Exhibit F, addressing Bar Complaint 2019—00,088(2A). This is an acknowledged perjurious, false and fraudulent Bar Complaint that was nevertheless pursued. Under oath the complainant repeatedly admits she committed perjury in her Bar Complaint that is riddled with false and fraudulent statements. As a limited example, this Bar Complainant states:

> Q And so **when this was filed back in 2019**, April of 2019 **you had not read the Bar complaint at that time?**
> A Correct.
> Q And you would have not been able to tell your lawyers whether -- what was in the Bar complaint was true and correct or contained false statements because you hadn't read it?
> A Correct.
> **Q And we now know that it contains statements that you believe to be false?**
> MR. DIAZ: Form.
> BY MR. MONDE:
> **Q Correct?**
> **A Correct.**
> **Q Statements that you believe to be fraudulent, correct?**
> MR. DIAZ: Form.
> **THE WITNESS: Correct.**
> Q. Now that you know that, what steps have you taken to correct that?
> A. At this point nothing that I recall.

*See* transcript attached to March 18, 2021, Exhibit F, *infra,* pp. 125-126. The Peggy Harris Bar Complaint was never read by Peggy Harris, and was not drafted by Peggy Harris, but by J.B. Harris, despite Peggy Harris filing the Bar Complaint under oath and under penalty of perjury. Peggy Harris under oath acknowledges that the Bar Complaint she signed violated criminal perjury and has extensive false and fraudulent statements. Exhibit E. Peggy Harris admits that her Bar Complaint is fraudulent; and in response her counsel raised her 5th Amendment rights[1]:

[1] MR. ANDERSON: Okay. Well, I'm going to respectfully disagree with you. And to the extent you ask her about her testimony related to her errata sheets, **I'm going to have to instruct her not to answer on the grounds that she could be incriminating herself**.
**MR. MONDE: Then have her take the Fifth.**

Q. **You're saying that you signed the Bar complaint without reading it?**
A. **Correct.** I know that's—that is my fault. I'm sorry I didn't read it.
. . .
Q. Part five says that, "Signature.): **Under penalties of perjury, I declare that the foregoing facts are true, correct and complete." Do you see that?**
A. I do.
Q. And then your name is printed, correct?
A. Correct.
Q. **And then you signed your name, correct?**
**A. You understood when you signed this <u>that you were under penalty of perjury declaring the facts in the statement to be true, correct and complete</u>?**
**A. Correct.**
Q. There was no doubt in your mind about what you were signing, correct?
A. Apparently not—apparently so.
Q. I want to make sure I understand your answer.
A. Well, I—**<u>I did not read it, so I was wrong</u>** in not—putting this down, so—
Q. And I appreciate you're acknowledging that that was wrong. And I want to understand from you why you agree that was wrong to do. You understood when you signed this that you were taking an oath to tell the truth –
A. Correct.
Q.—Just like the oath you took this morning?
A. Right.
Q. And you understood the importance of an oath in a legal proceeding, correct?
A. Yes.
Q. I mean, our legal system, you agree, depends on people telling the truth, correct?
A. Correct.
Q. Our legal system depends on people telling the full truth and not being deceptive by leaving out certain key parts, correct?
A. Correct.
. . .
**Q. You understand what perjury means, right?**
**A. Yes.**
**Q. You understand the penalties of perjury?**
**A. Yes.**
**Q. You understand that in some context perjury can be a criminal offense?**
A. Um-hum.
Q. Yes?
**A. Yes.**
**Q. Would you want any part of a judgment that you believed was based on false information?**
**. . .**
**A. No.**
**Q. That would be wrong?**
A. Right.
Q. Would you want to be **any part of a judgment that you believed was <u>infected by or tainted by fraud?</u>**
A. I wouldn't like it.
**Q. Would you want any part of it?**
**A. <u>No.</u>**
. . .
Q And so **<u>when this was filed</u> back in 2019**, April of 2019 **<u>you had not read the Bar complaint at that time?</u>**
A Correct.
Q And you would have not been able to tell your lawyers whether -- what was in the Bar complaint was true and correct or contained false statements because you hadn't read it?
A Correct.
**Q And we now know that it contains <u>statements that you believe to be false?</u>**
MR. DIAZ: Form.

BY MR. MONDE:
**Q Correct?**
**A Correct.**
**Q Statements that you believe to be fraudulent, correct?**
MR. DIAZ: Form.
**THE WITNESS: Correct.**
Q. Now that you know that, what steps have you taken to correct that?
A. At this point nothing that I recall.

*Id.,* at pp. 23-27, 84-85, 125-126.

In the August 22, 2018, letter to Respondent and State Attorney, Jack Campbell, Exhibit D, Complainant wrote specifically that:

Dear Counsel Hinson, and State Attorney Campbell:

In response to and in support of the above-referenced inquiry/complaints, please consider the following:

The Margaret "Peggy" Harris' Inquily/Complaint under PART *FNE,* is submitted with following statement:

**"Under penalties of perjury, I declare that the foregoing facts are true, correct and complete." Signed by Margaret "Peggy" Harris, on 7-8-18.**

This is an official proceeding under Florida Bar rules and regulations, and based on the language, type set, legal research, attached documents, prior threats to extort, and consistency in his attacks in two other bar complaints, was prepared and ghost written under the guidance, control and direction of Florida attorney, Mr. J.B. Harris.

Under section 837.02(1), Fla. Stat., when perjury takes place in an official proceeding, such as in a Florida Bar complaint, the **criminal** offense of peljury is a third-degree felony punishable by up to 5 years in prison and a $5,000 fine. If this complaint is considered an unofficial proceeding, perjury would be considered a misdemeanor of the first degree, punishable by up to one (1) year in jail, (1) year of probation, and $1,000 in fines. Finally, if this complaint is considered before a public servant in the performance of his or her official duty, perjury would be a misdemeanor of the second degree under section 837.06, Fla. Stat.

Unfortunately for Mrs. Peggy Harris in acceding to Mr. J.B. Harris' agenda and writings, she has sworn to this bar complaint under penalties of perjury. The **exhibits attached to this 7-8-18 sworn statement** are dated 7/30/18, 7/10/18, 7/30/18, 7/30/18, and 7/30/18, respectively. *See* Exhibit A, Exhibit D, Exhibit E, and Exhibit F. **They are all printed from Mr. J.B. Harris' gmail account, jbharrisesg@gmail.com, on July 31, 2018, July 30, 2018, and August 3, 2018. These emails are not from Mrs. Peggy Harris.** While these exhibits do not constitute a bar violation, they are material to Mrs. Peggy Harris' (Mr. J.B. Harris') claim of such a violation.

**This is absolute periury as one cannot swear under penalty of perjury to events that have not happened, and one can't believe that what one swears to is true when they have not happened. Thus, they are false, and all statements and attachments were material to the claim.** It is also too late to recant this perjury as the complaint and response have taken place. This is the essence of peljury and a criminal violation under section 867.02(1), Fla. Stat. This may also violate section 837.021(1), Fla., Stat., since there are two or more material statements in official proceeding under oath that contradict each other and may constitute a second-degree felony as well.

Moreover, it is a bar violation to present false evidence. Under rule 4-1.2(d), **"A lawyer shall not counsel a client to engage, or assist a client, in conduct the lawyer knows or reasonably should know is criminal or fraudulent."** *See* Florida Bar Ethics Opinion 75-19. It is also a bar violation to offer evidence that the lawyer knows to be false and should disclose that the evidence

is false to the tribunal. Rule 4-3.3(b). It is fair to state that Mr. J.B. Harris authored and prepared the entire bar complaint and is using Mrs. Peggy Harris as a front and tool for his own extortionate and denigrating agendas. In that instance, he has violated Rule 4-3.3(a)(l), (2), and (4), which require candor toward the tribunal, and has made a false statement, and has failed to correct or disclose a false statement of material fact or offered evidence that the lawyer knows to be false. In addition, Mr. J.B. Harris must report and disclose that this is his bar complaint.

Mr. J.B. Harris is consistently threatening and extorting. Just yesterday, pertaining to health insurance that this firm pays for Mr. J.B. Harris of approximately $2,500 a month, that was understood to be automatically deducted from the account, and was rectified prior to the firm being aware his threat and extortion, Mr. J.B. Harris wrote:

"Tim, I **suggest you reactivate my insurance today** **<u>or I will be at your office first thing tomorrow to</u>** **<u>spend a little quality time with you.</u>** You've placed the lives ofmy children at risk and that won't stand."

August 21, 2018 email from Mr. J.B. Harris, attached. Exhibit F, attached.[2]

---

[2] In Exhibit F, it was clarified as follows:

> The facts demonstrate that this bar complaint was written by Mr. J.B. Harris as part of his continued efforts at extortion. As pointed out in the many prior filings, these documented and repeated, upon repeated patterns violate the following rules of professional conduct as promulgated by the Florida Supreme Court:
>
> A lawyer must not threaten opposing parties with sanctions, **disciplinary complaints,** criminal charges, or additional litigation to gain a tactical advantage. *See* Florida Supreme Court, Professionalism Expectations: Expectation 3.18; and Rules Regulatingthe Florida Bar: Rule 4-3.4(g).
>
> A lawyer must not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter. *See* Florida Supreme Court, RulesRegulating the Florida Bar: Rule 4-3.4(g).
>
> A lawyer must not present, participate in presenting, or threaten to present **disciplinarycharges** under these rules solely to obtain an advantage in a civil matter. *See* Florida Supreme Court, Rules Regulating the Florida Bar: Rule 4-3.4(h). 4
>
> To opposing parties and their counsel, a lawyer should act with **fairness, integrity, andcivility,** not only in court, but also **in all written and oral communications.** (Oath of Admission)
>
> Candor and civility must be used in all oral and written communications.(Professionalism Expectations: Expectation 2.2)
>
> **A lawyer must avoid disparaging personal remarks** or acrimony toward opposing parties, counsel, third parties or the court. (Professionalism Expectations: Expectation 2.3). **<u>A lawyer should be civil and courteous in all situations, both professional and personal, and avoid conduct that is degrading to the legal profession.</u>** R. Regulating Fla. Bar 3-4.3. 5
>
> **<u>A lawyer's communications in connection with the practice of law,</u>** including communications on social media, **<u>must not disparage another's character or</u>** **<u>competence</u>** or be used to inappropriately influence or contact others. (Professionalism Expectations: Expectation 2.5); *see* R. Regulating Fla. Bar 4-8.4(d).
>
> **<u>A lawyer must not criticize or denigrate opposing parties,</u>** witnesses, or the court **to clients, media, or members of the public.** (Professionalism Expectations: Expectation 4.20); see R. Regulating Fla. Bar 4-8.2(a) and 4-8.4(d)).

*Id.*

Respondent knew this.[3] This is material information for the Court withheld by Respondent. As an officer of the Court, Respondent should have immediately acknowledged and presented the criminal and fraudulent conduct to the Court and Florida Bar, with an investigation and criminal referral.

---

[3] In the June 11, 2018 filing with Shanee Hinson and Jack Campbell, State Attorney, Exhibit A, the extensive Florida Bar violations and extortion were detailed and documented as follows:

> Even though $11,583.98 was paid to Mr. Harris on December 28, 2017, on January 29, 2018, Mr. Harris threatened a Bar complaint and criminal and civil action without lawful justification for his own pecuniary advantage, in order to receive $2,000 that day, which indeed was wired that day, stating: "If **you don't throw me another miniscule $2,000 lifeline TODAY, <u>I'm filing a bar complaint against you and your lap dog Ankur.</u> I've called to make an appointment to meet with the Bar tomorrow in person.** I'm driving to Tallahassee at first light. I don't care how sick I am." Email from Mr. Harris attached as Exhibit A (emphasis added).
>
> Mr. Harris continues his threats on February 1, 2018, now demanding $80,228, in order to avoid a Bar complaint against Mr. Howard, stating: **"I've prepared a bar complaint against you which** I **will file tomorrow if I'm not paid in full by then."** This threat was backed up by Annie Sebastian, attorney with the Diaz law firm, without lawful justification and for their own pecuniary advantage, stating, "I will file suit to strip you of your percentage in the Bryant case and **forward the suit to the Florida Bar** along with a complaint for your failure to meet your obligations to this firm and the client." February 1, 2018 email attached as Exhibit B (emphasis added).
>
> On February 7, 2018, Mr. Harris, again threatens, with incorrect information, and without lawful justification for his own pecuniary advantage, blindly supporting another extortion scheme by a representative of BWCI Trust for a fraudulent and corrupt lender recommended by former advisors lacking skills and having ill intent, stating,
>
>> Tim, I am now aware of the predicament that you are in and that **your house of cards is rapidly collapsing.** If you haven't signed the [corrupt extortionate] agreement by the close of business today necessary to release the insurance premium payment [BWCI $345,000 to a fraudulent lender], plus the lifeline agreement with Lance [BWCI representative in false agreement and participant in fraudulent scheme], I **will proceed with the Diaz firm in aligning ourselves with 1 other creditor, to force you into bankruptcy.**
>
> February 7, 2018 email attached as Exhibit C (emphasis added). Note use of the **term,"house of cards"** as used in Kim Poling's June 4, 2018 Rebuttal, page 4.
>
> All delays under the agreement were caught up in full, including a $20,000 payment on February 9, 2018, and another $22,000 payment on February 12, 2018 (which included a $15,000 bonus). Just two weeks later, Mr. Harris, not knowing the collateral structure of the lender, on February 26, 2018, without lawful justification and for his own pecuniary advantage, threatens criminal action to gain advantage in a civil contract issue that Mr. Howard did not know existed, stating:
>
>> Accordingly, you have until this Friday at 12:00 pm March 2, 2018, to release every case belonging to me on the UCC-1's referenced herein, or on those of any other creditor of H&A, or I **am proceeding straight to the FBI** with this information. And I **will not sleep until you and Mr. Mehta are brought to justice and placed behind bars.**
>>
>> Finally, since you terminated our agreement without cause, I reserve all rights I have against you and Mr. Mehta, including without limitation claims for fraud in the inducement, fraud, conspiracy to commit fraud, intentional infliction of emotional distress and punitive damages.
>
> February 26, 2018 email from Mr. Harris is attached as Exhibit D (emphasis added).
>
> During the month of March, Mr. Howard diligently worked with Mr. Harris and a legitimate lender to obtain funding for the prosecution of Engle cases and to secure payments to Mr. Harris and his interests. March 26, 2018 email to Mr. Harris documenting the work done to secure Mr. Harris' interests. Email and texts attached as Cumulative Exhibit E.

Due to Mr. Harris' mode of communicating with the lender, the lender informed Mr. Harris on April 3, 2018, as follows: "From now on, please do not call, text or email any Virage staff. It is detrimental to our process and not helpful to Tim." April 3, 2018 email attached as Cumulative Exhibit E. In response, Mr. Harris writes, on April 5, 2018, stating:

Marty, (1) before I **sue Virage, you, Ed and Tim for fraud and conspiracy to commit fraud,** for:

(1) intentionally and maliciously liening with your fraudulent UCC-1 my tobacco cases in which Tim had no interest in, nor had been retained by my client to represent; . . . .

(2) before I also file **a complaint against you and your co-conspirators with the SEC for the same,** alerting the SEC how you have breached your fiduciary duties to Virage and its shareholders; and

(3) before I **file a Bar complaint against you for all of the above;**

(4) you may want to man up and call me to discuss a settlement of my claims tomorrow, first thing. Otherwise, my weekend will be very busy.

April 5, 2018 email from Mr. Harris, attached as Exhibit F (emphasis added). Despite the attacks, threats, and no factual or legal basis for the attacks and threats, the parties entered into a Confidential Settlement and Release Agreement, providing Mr. Harris with $21,000 a month salary, office expenses, and health insurance, plus $50,000 on April 6, 2018. This amounts to an additional over $100,000 for Mr. Harris since early April, for a combined $450,000 over the past 16 months.

In fact, on March 30, 2018, just days earlier, Mr. Howard personally sent Mr. Harris $350 out of the $361 that I had in available to help him get through the weekend. March 30, 2018 text attached hereto as Exhibit G. Notwithstanding the compassion, diligence, repeated and continued efforts for goodness and care to advance Mr. Harris' security and interests, he has not changed his approach.

Consistent with Mr. Harris' threats of criminal prosecution, forced bankruptcy, and Bar complaints, stated on January 29, 2018, February 1, 2018, February 26, 2018, April 5, 2018, Mr. Harris is now engaged in daily threats and attacks without legal justification for pecuniary gain. The evidence indicates that Mr. Harris is conspiring with, **ghost writing and directly and indirectly assisting** in the Kim Poling Bar Complaint and Rebuttal, including but not limited to providing text information from his email [Rebuttal of Kimberly Poling to Dr. Tim Howard's Response, Exhibit E], and a copy of a transcript that only Defendants have received and upon information and belief was provided to Mr. Harris, who gave it to Ms. Poling [Rebuttal of Kimberly Poling to Dr. Tim Howard's Response, Exhibit H], as well as language, while adopting her Reply. *See* JB Harris and Kim Poling Rebuttal filed on June 4, 2018. Note, the June 4, 2018 Reply provided no new substantive information, only further incendiary and derogatory language consistent with Mr. Harris' language in the other documents.2

Mr. Harris most recent threat of criminal and civil actions, and Bar complaint, all without legal justification and for his own pecuniary advantage, as part of his extortion took place on June 6, 2018, concerning a former client of Mr. Harris, that took the initiative to contact this firm due to the abuse that they state that Mr. Harris and his team had inflicted upon them, and dropped them as counsel. *See* June 6, 2018 email from Mr. Harris to clients, counsel and Mr. Howard. Mr. Harris states:

> Tim, if you think you are having trouble with the Bar's investigation of your practices, BWCI Penson Trustees Limited, Ted Doukas, and everyone else who is still after you, **you are about to walk into a shit storm** if you steal the Goulds from me as my clients.
>
> I will lien the file for cost and fees, sue you for tortious interference and unpaid contributions to costs, **fraud and everything else I can think of. I will also amend my complaint with the Bar** and file a complaint against Neil [paralegal in office] as well.

June 6, 2018 email from Mr. Harris to Mr. Howard, client, co-counsel and lender, attached as Exhibit H (emphasis added).

On June 7, 2018, not knowing the facts, Mr. Harris continues to threaten Bar complaints, stating to a paralegal with the firm, **"I'm am left with no choice but to file a Bar complaint against you."** June 7, 2018 text to paralegal attached as Exhibit I (emphasis added). On that same date, Mr. Harris confirms to the

client that "We've had our differences but have worked through them. I was VERY hurt to learn about what may be going on behind my back. We really need to speak. I **won't yell or scream.** Promise." June 7, 2018 text to his fo1mer client attached as Exhibit I (emphasis added). The client does not want to be yelled at or abused any further and this is why they switched counsel.

Also on June 7, 2018, Mr. Harris sends another text to the client disparaging counsel without legal justification and for his own pecuniary advantage, continuing his use of the extortion model of complaints to gain advantage in a civil dispute. He first implies that the Ph.D. from Northeastern University, awarded in 2005, is not legitimate. He next uses the Bar process that he coordinated with Ms. Poling for filing to continue his extortion model of practicing law to intimidate the client. He asserts that his Bar complaint is legitimate and factually based. He then falsely asserts that there is an investigation by the "Feds" of the law firm. A threat he first asserted in February of 2018. Finally, he asserts that Ankur Mehta doesn't have a **Doctorate,** which is false since he has a Juris Doctorate, and uses the UPL that he coordinated with Ms. Poling to file, as another extortion tool to address a client desire to not be abused. June 7, 2018 text to his former client attached as Exhibit J.

Continuing this pattern, on June 8, 2018, Mr. Harris, without legal justification for his own pecuniary advantage, unleashes his threats, extortion and intimidation efforts with a series of derogatory comments, such as **coward, scumbag, blasphemous, sociopathic charade, days a lawyer are numbered,** and his continued use of the Bar as an extortion device, stating:

> Tim, you breached the NDA by going behind my back to steal my clients and slandering them to me. You're a **first rate coward and a scumbag.** All your talk about **Jesus is blasphemous garbage.** Trust me, I will be pursing my remedies forthwith. You want a war. You are going to get one. Hope you paid Leonard his fees up front.
>
> Did you inform the clients that (i) you are the target of an SEC investigation; (ii) a Bar investigation; (iii) have never tried a tobacco case; (iv) wouldn't know how to if your life depended on it; (v) you don't have a pot to piss in; and (vi) can't afford to litigate a tobacco case. I doubt it. Accordingly, your actions are retaliatory for my having filed a Bar complaint against you.
>
> Trust me, these clients know about tobacco litigation than you ever will. I can also assure you they will rip you to shreds once they see through your **sociopathic charade.**
>
> By the way, the Bar is starting to debrief your former employees. Seems like you've been on the Bar's radar for quite sometime. **Your days as a lawyer are numbered. I'm sure your family will be so proud once they find out.** Enjoy your weekend.

Detailing the Bar Violations entailed, Dr. Howard provided Shanee Hinson case law and statutes on Bar violations and criminal extortion violations:

> Lawyer disciplined for sending disparaging emails to opposing counsel, calling him a liar, and making improper outbursts directed toward opposing counsel during the litigation. *The Florida Bar v. Norki11,* 132 So.3d 77 (2013)). *See also The Florida Bar v. Abramson,* 3 So.3d 964 (2009); *The Florida Bar v. Buckle,* 771 So.2d 113 (Fla. 2000); *The Florida Bar v. Sayler,* 721 So. 2d 1152 (Fla. 1998); *The Florida Bar v. Ratiner,* 46 So.3d 35 (Fla. 2010). Lawyer disciplined for sending a letter to a cou1t-appointed provisional director of corporation in which he improperly threatened to file suit against provisional director and accused the provisional director of being involved in a conspiracy. *The Florida Bar v. Norkin,* 132 So. 3d 77 (2013); *See also The Florida Bar v. Abramson,* 3 So. 3d 964 (Fla. 2009). "The First Amendment does not protect those who make harassing or threatening remarks about the judiciary or opposing counsel. Under Rule of Professional Conduct 4-8.4(d), lawyers are required to refrain from knowingly disparaging or humiliating other lawyers." *The Florida Bar v. Sayler,* 721 So.2d 1152, 1155 (Fla. 1998).
>
> Whoever, either verbally or by a written or printed communication, maliciously threatens to accuse another of any crime or offense, or by such communication maliciously threatens an injury to the person, property or reputation of another, or maliciously threatens to expose another to disgrace, or to expose any secret affecting another, or to impute any deformity or lack of chastity to another, with intent thereby to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will, shall be guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 7775.084. Under Florida Statute 836.05, the crime of Extortion is committed when a person maliciously threatens to: Accuse another of any

When confronted that she knew of the criminal perjury, extortion[4] and fraud, Respondent, before the cock crowed, three times intentionally lied to the court stating that she is "aware of no such violations," and falsely stated as follows:

> **Dr. Howard**: I'm . . . talking about **a history of documented [Bar] violations which I have [provided], which you received showing extortion, threats, derogatory comments and extensive perjury that you're aware of,** that you decided [not] to go forward with -- in this case, regardless. That's what I'm referring to, his history of perjury.
>
> **Shanee Hinson**: Mr. Howard, okay. I just want to stop you because you said that I am aware of. **I am aware of no such thing**, so I just wanted to make that clear.
>
> **Dr. Howard**: Yes, you are. They're **attached to your exhibits** so you are aware of those things.
>
> **Shanee Hinson**: **I'm aware of no such violations**, is what I'm clarifying.
>
> **Dr. Howard**: **And I'm clarifying that you are, in writing. You've received written and sworn statements that are perjurious, complete perjury, under oath by both Mr. [JB] Harris, by Peggy Harris, and they are detailed with documents attached to Shanee Hinson and the Florida Bar. The Florida Bar has been fully aware of his perjury, fully aware of his Bar violations,** yet you're going forward with this, and that's why you're not calling him as a witness because you know how dirty he is.
>
> **Shanee Hinson**: Mr. Howard, let me clarify again, **I am aware of no Bar violations**.

Transcript, Vol. 2, pp. 247-249, and pp. 289-294, attached as Exhibit H.

## II. RULES VIOLATIONS

Based on the undisputed and repeatedly documented in writing, facts of:

---

crime or offense; Injure the person, property or reputation of another; Expose another to disgrace; Expose any secret affecting another; or Impute any deformity or lack of chastity to another, with the intent to: Extort money or any pecuniary advantage; or Compel any person to do any act or refrain from doing any act against their will. **Actual Malice versus Legal Malice.** Although it is a subtle distinction, under the Extortion statute, the prosecutor is required to prove the threat was committed with Actual Malice, which means "means ill will, hatred, spite, evil intent." This is in contrast to what is known as Legal Malice, which only requires that an act be committed intentionally and without any lawful justification. **Penalties for Extortion.** The crime of Extortion is a Second-Degree Felony in Florida and is punishable by up to 15 years in prison, 15 years of probation, and a $10,000 fine. *Calamia v. State,* 125 So. 3d 1007 (Fla. 5th DCA 2013) (Actual malice is the standard. "A threat is malicious if it is made intentionally and without any lawful justification."); *McKee v. State,* 7 I 5 So.2d IO1 (Fla. 5th DCA 1998) (Conviction upheld for threats that defendant will destroy you, destroy your business, accusing of drug use, and threatening to make accusations to a federal agency.). "Maliciously" means wrongfully, intentionally, and without legal justification or excuse. A threat is "malicious" for purposes of exto1tion statute if it is made intentionally and without any lawful justification. It is not necessary that the person accused of extortion have the ability to carry the threat out. Threats to cause mental or psychological injuries are generally prohibited under exto1tion statute. Therefore, if you threatened to expose someone's affair to their spouse unless they paid you $1,000,000, the threat could be considered extortion for causing a psychological injury or because it was done for a monetary gain. This is extortion even if you did not know how to contact their spouse. Generally, a claim of extortion cannot be based on a threat to do an act which a person has a lawful right to do, but **you may not threaten to undertake an othenvise legal act for your own pecuniary advantage.** An attorney that repeatedly engages in conduct considered extortion can be a violation of the Florida RICO Act, pursuant to section 772.04, Florida Statutes.

[4] Dr. Howard informed Shanee Hinson of the extortion by Dana Hall and Sandra Fulup on August 3, 2018, and their conspired demand of $355,031, when nothing was owed and a full accounting and review had taken place with Sandra Fulup signed and accepted on December 23, 2013, with the opportunity for independent counsel to review and advise. The Bar has done nothing pertaining to this extortion as well. Rather, swallowed a toxic narrative by an extorter that hasn't worked in nearly 10 years, and gone after Dr. Howard. Exhibit I.

(1) "known" "substantial" dishonesty, untrustworthiness and fitness as a lawyer and not informing the appropriate professional authority after numerous and repeated information of criminal, fraudulent and Rule of Professional Conduct violations;
(2) knowingly and intentionally making a false statement of fact three times or more to the Court; and
(3) failing to disclose a material fact and as a result assisting a criminal or fraudulent act upon the Florida Bar and the Court,

Respondent, Shanee Hinson, Esq., has violated the following Rules Regulating the Florida Bar:

**A. RULE 4-3.3 CANDOR TOWARD THE TRIBUNAL**

**(a) False Evidence; Duty to Disclose.** A lawyer **shall not knowingly**:

(1) **make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;**
(2) **fail to disclose a material fact** to a tribunal **when disclosure is necessary to avoid assisting a criminal or fraudulent act** by the client;
(3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or
(4) offer evidence that the lawyer knows to be false. **A lawyer may not offer testimony that the lawyer knows to be false** in the form of a narrative unless so ordered by the tribunal. **If a lawyer,** the lawyer's client, or a witness called by the lawyer has offered material evidence and the **lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures including, if necessary, disclosure to the tribunal.** A lawyer may refuse to offer evidence that the lawyer reasonably believes is false.

**B. RULE 4-8.3 REPORTING PROFESSIONAL MISCONDUCT**

**(a) Reporting Misconduct of Other Lawyers.** A lawyer who **knows**[5] **that another lawyer has committed a violation of the Rules of Professional Conduct** that **raises a substantial question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer** in other respects **must**[6] inform the appropriate professional authority.

**(b) Reporting Misconduct of Judges.** A lawyer who knows that a judge has committed a violation of applicable rules of judicial conduct that raises a substantial question as to the judge's fitness for office must inform the appropriate authority.

The Comment section of Rule 4-8.1(a), states that the "term "substantial" refers to the seriousness of the possible offense and not the quantum of evidence of which the lawyer is aware."[7]

---

[5] In Chapter 4, Rules Regulating Professional Conduct, definitions, it states that: "Knowingly," "known," or "**knows**" **denotes actual knowledge of the fact in question.** A person's **knowledge may be inferred from circumstances.**

[6] The Scope of the Rules of Professional Conduct as detailed in Chapter 4, specifically states that: "They should be interpreted with reference to the purposes of legal representation and of the law itself. Some of the rules are **imperatives,** cast in the terms of "**must**," "must not," or "may not."

[7] Chapter 4, Rules Regulating Professional Conduct, Scope of Rule states that:

> Failure to comply with an obligation or prohibition imposed by a rule is a basis for invoking the disciplinary process. The rules presuppose that disciplinary assessment of a lawyer's conduct will be made on the basis of the facts and circumstances as they existed at the time of the conduct in question in recognition of the fact that a lawyer often has to act upon uncertain or incomplete evidence of the situation. Moreover, the rules presuppose that whether discipline should be imposed for a violation, and the severity of a sanction, depend on all the circumstances, such as **the willfulness** and **seriousness of the violation**, extenuating factors, and whether there have been previous violations.

### C. RULE 4-8.4 MISCONDUCT

A lawyer shall not:

**(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist** or induce **another to do so**, or do so through the acts of another;

**(b)** commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects;

**(c) engage in conduct involving dishonesty**, fraud, **deceit, or misrepresentation**, except that it shall not be professional misconduct for a lawyer for a criminal law enforcement agency or regulatory agency to advise others about or to supervise another in an undercover investigation, unless prohibited by law or rule, and it shall not be professional misconduct for a lawyer employed in a capacity other than as a lawyer by a criminal law enforcement agency or regulatory agency to participate in an undercover investigation, unless prohibited by law or rule;

**(d) engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly**, or through callous indifference, disparage, humiliate, or discriminate against litigants, jurors, witnesses, court personnel, or other lawyers on any basis, including, but not limited to, on account of race, ethnicity, gender, religion, national origin, disability, marital status, sexual orientation, age, socioeconomic status, employment, or physical characteristic;

## III. CONSEQUENCES OF FAILURE TO ENFORCE CRIMINAL LAW AND RULES REGULATING THE FLORIDA BAR

With no accountability by the Court's nor the Florida Bar for perjury, extortion, defamation, violations of numerous Florida Bar rules, and support from the Florida Bar's Shanee Hinson, Esq., JB Harris, Esq., thinks he has a free license to continue these perjury and extortion tactics in filing Florida Bar complaints, and now advertises to do the same. Exhibit J. This is a plague upon the legal profession. Not holding all parties accountable, including the Court, the Florida Bar, and Shanee Hinson, **permits this poisonous, corrupt and criminal model to denigrate the morality and integrity of the profession, and this evil model of existence to fester and grow.**

---

In Chapter 4, Rules Regulating Professional Conduct, definitions, it states that: "'Fraud' or 'fraudulent' denotes conduct having a purpose to deceive and not merely negligent misrepresentation or failure to apprise another of relevant information."

# EXHIBIT A

HOWARD JUSTICE

RECEIVED
2010 JUN 11 2:35
STATE ATTORNEY

RECEIVED
JUN 11 2018
THE FLORIDA BAR


**Howard & Associates**
**Attorneys at Law, P.A.**
Dr. Tim Howard, J.D., Ph.D., Senior Partner*
Florida Supreme Court Certified Mediator

Tallahassee, Florida Office:
1415 East Piedmont Drive, Suite 5
Tallahassee, Florida 32308
Ph: (850) 298-4455
Fax: (850) 216-2537
tim@howardjustice.com

Jacksonville, Florida Office:
444 E. Duval Street
Jacksonville, Florida 32207
Ph: (904) 446-9817
Fax: (904) 446-9825
www.howardjustice.com


June 11, 2018

**VIA HAND-DELIVERY**

Shanee L. Hinson, Bar Counsel
651 East Jefferson Street
Tallahassee, Florida 32399-2300

Jack Campbell, State Attorney
301 South Monroe Street, Suite 475
Tallahassee, Florida 32399-2300

Re: J.B. Harris v. Phillip Timothy Howard, TFB File No. 2018-00,342(2A); Kim Poling v. Phillip Timothy Howard, TFB File No. 2018-00,343(2A); Bar Complaint Against J.B. Harris and Law Firms Supporting his Violations of Rules 3-4.2, 4-3.4(g) and (h), 4-8.2 (a) and (d), and 4-8.4(d); Violation of Section 836.05, Florida Statutes, Crime of Extortion Including Potential Co-Conspirators.

Dear Bar Counsel Hinson, and State Attorney Campbell:

In response to the above-referenced complaints, please consider the following. Despite written threats and attacks from Mr. Harris, Florida Bar Number 495034, without lawful justification for his own pecuniary advantage, who is working directly and indirectly through a potential co-conspirator, Ms. Poling, *see* pages 3-4 and footnote 2, *supra*, we have attempted to amicably work together and have been paying for Mr. Harris' office, health insurance, salaries, since January of 2017, and have done our best to operate in good faith with Mr. Harris.

Mr. Howard has paid and is currently paying Mr. Harris' office, salary and health insurance costs from January 2017 through June of 2018. This will now end on June 30, 2018. Despite best efforts to assist Mr. Harris and having solved the underlying cash flow interruption, and resolving all financial matters with Mr. Harris, without lawful justification for pecuniary advantage, Mr. Harris continues to attack, threaten and extort.[1]

1 Mr. Harris and his co-counsel will benefit in the $ millions if Mr. Howard loses his fee percentage and is limited to
*Admitted to practice in Florida, the District of Columbia, Northern, Middle, and Southern United States District Courts of Florida, the United States Court of Appeals for the 11th Circuit, and the United States Supreme Court. Ph.D, Northeastern University, Law, Policy & Society. Former Visiting Health Law, Bioethics, and Human Rights Scholar and Constitutional Law, Media & Politics and Judicial Process Instructor at Boston University. Former Director of and Professor with Northeastern University's Law & Policy Doctorate Program. President of Cambridge Graduate University International.



Under Mr. Harris' initial Joint Prosecution and Fee Sharing Agreement, dated January 20, 2017, with Mr. Howard, Mr. Harris received $245,210.13 in salary and health insurance benefits, plus had all office costs, malpractice insurance and paralegal costs covered, plus was paid $49,759.82 for Sommers trial costs, plus received a $25,000 sign-on bonus, plus a $15,000 bonus for 2017, and another $15,000 loan from the firm, for a total compensation and benefits to him personally of $349,969.95.

Even though $11,583.98 was paid to Mr. Harris on December 28, 2017, on January 29, 2018, Mr. Harris threatened a Bar complaint and criminal and civil action without lawful justification for his own pecuniary advantage, in order to receive $2,000 that day, which indeed was wired that day, stating: **"If you don't throw me another miniscule $2,000 lifeline TODAY, <u>I'm filing a bar complaint against you and your lap dog Ankur</u>. I've called to make an appointment to meet with the Bar tomorrow in person.** I'm driving to Tallahassee at first light. I don't care how sick I am." Email from Mr. Harris attached as Exhibit A (emphasis added).

Mr. Harris continues his threats on February 1, 2018, now demanding $80,228, in order to avoid a Bar complaint against Mr. Howard, stating: **"I've prepared a bar complaint against you which I will file tomorrow if I'm not paid in full by then."** This threat was backed up by Annie Sebastian, attorney with the Diaz law firm, without lawful justification and for their own pecuniary advantage, stating, "I will file suit to strip you of your percentage in the Bryant case and **forward the suit to the Florida Bar** along with a complaint for your failure to meet your obligations to this firm and the client." February 1, 2018 email attached as Exhibit B (emphasis added).

On February 7, 2018, Mr. Harris, again threatens, with incorrect information, and without lawful justification for his own pecuniary advantage, blindly supporting another extortion scheme by a representative of BWCI Trust for a fraudulent and corrupt lender recommended by former advisors lacking skills and having ill intent, stating,

> Tim, I am now aware of the predicament that you are in and that **your house of cards is rapidly collapsing. . . .** If you haven't signed the [corrupt extortionate] agreement by the close of business today necessary to release the insurance premium payment [BWCI $345,000 to a fraudulent lender], plus the lifeline agreement with Lance [BWCI representative in false agreement and participant in fraudulent scheme], **I will proceed with the Diaz firm in aligning ourselves with 1 other creditor, to force you into bankruptcy.**

February 7, 2018 email attached as Exhibit C (emphasis added). Note use of the term,**"house of cards"** as used in Kim Poling's June 4, 2018 Rebuttal, page 4.

quantum meruit. Mr. Harris is tracking the extortion of Mr. Don Reinhard, who is in prison and has a similar one year extortion scheme in using the Florida Bar, TFB No. 2018-00,265(2A), in trying to claim over $1 million, and Ms. Sandra Fulup, TFB No. 2016—00682(2A), who from a deceased client for 2008 activities and a file she has the originals of, has also tried to use the Florida Bar to extort over $300,000, when nothing is owed. These violate section 836.05, Florida Statues. *See* footnote 5, *supra*.



All delays under the agreement were caught up in full, including a $20,000 payment on February 9, 2018, and another $22,000 payment on February 12, 2018 (which included a $15,000 bonus). Just two weeks later, Mr. Harris, not knowing the collateral structure of the lender, on February 26, 2018, without lawful justification and for his own pecuniary advantage, threatens criminal action to gain advantage in a civil contract issue that Mr. Howard did not know existed, stating:

> Accordingly, you have until this Friday at 12:00 pm March 2, 2018, to release every case belonging to me on the UCC-1's referenced herein, or on those of any other creditor of H&A, **or I am proceeding straight to the FBI** with this information. **And I will not sleep until you and Mr. Mehta are brought to justice and placed behind bars.**
>
> Finally, since you terminated our agreement without cause, I reserve all rights I have against you and Mr. Mehta, including without limitation claims for fraud in the inducement, fraud, conspiracy to commit fraud, intentional infliction of emotional distress and punitive damages.

February 26, 2018 email from Mr. Harris is attached as Exhibit D (emphasis added).

During the month of March, Mr. Howard diligently worked with Mr. Harris and a legitimate lender to obtain funding for the prosecution of Engle cases and to secure payments to Mr. Harris and his interests. March 26, 2018 email to Mr. Harris documenting the work done to secure Mr. Harris' interests. Email and texts attached as Cumulative Exhibit E.

Due to Mr. Harris' mode of communicating with the lender, the lender informed Mr. Harris on April 3, 2018, as follows: "From now on, please do not call, text or email any Virage staff. It is detrimental to our process and not helpful to Tim." April 3, 2018 email attached as Cumulative Exhibit E. In response, Mr. Harris writes, on April 5, 2018, stating:

> **Marty, (1) before I sue Virage, you, Ed and Tim for fraud and conspiracy to commit fraud, for:**
>
> (1) intentionally and maliciously liening with your fraudulent UCC-1 my tobacco cases in which Tim had no interest in, nor had been retained by my client to represent; . . . .
>
> (2) before I also file a **complaint against you and your co-conspirators with the SEC for the same**, alerting the SEC how you have breached your fiduciary duties to Virage and its shareholders; and
>
> (3) before **I file a Bar complaint against you for all of the above;**
>
> (4) you may want to man up and call me to discuss a settlement of my claims tomorrow, first thing. Otherwise, my weekend will be very busy.



April 5, 2018 email from Mr. Harris, attached as Exhibit F (emphasis added). Despite the attacks, threats, and no factual or legal basis for the attacks and threats, the parties entered into a Confidential Settlement and Release Agreement, providing Mr. Harris with $21,000 a month salary, office expenses, and health insurance, plus $50,000 on April 6, 2018. This amounts to an additional over $100,000 for Mr. Harris since early April, for a combined $450,000 over the past 16 months.

In fact, on March 30, 2018, just days earlier, Mr. Howard personally sent Mr. Harris $350 out of the $361 that he had available, to help Mr. Harris get through the weekend. March 30, 2018 text attached hereto as Exhibit G. Notwithstanding the compassion, diligence, repeated and continued efforts for goodness and care to advance Mr. Harris' security and interests, he has not changed his approach.

Consistent with Mr. Harris' threats of criminal prosecution, forced bankruptcy, and Bar complaints, stated on January 29, 2018, February 1, 2018, February 26, 2018, April 5, 2018, Mr. Harris is now engaged in daily threats and attacks without legal justification for pecuniary gain. The evidence indicates that Mr. Harris is conspiring with, ghost writing and directly and indirectly assisting in the Kim Poling Bar Complaint and Rebuttal, including but not limited to providing text information from his email [Rebuttal of Kimberly Poling to Dr. Tim Howard's Response, Exhibit E], and a copy of a transcript that only Defendants have received and upon information and belief was provided to Mr. Harris, who gave it to Ms. Poling [Rebuttal of Kimberly Poling to Dr. Tim Howard's Response, Exhibit H], as well as language, while adopting her Reply. *See* JB Harris and Kim Poling Rebuttal filed on June 4, 2018. Note, the June 4, 2018 Reply provided no new substantive information, only further incendiary and derogatory language consistent with Mr. Harris' language in the other documents.[2]

Mr. Harris most recent threat of criminal and civil actions, and Bar complaint, all without legal justification and for his own pecuniary advantage, as part of his extortion took place on June 6, 2018, concerning a former client of Mr. Harris, that took the initiative to contact this firm due to the abuse that they state that Mr. Harris and his team had inflicted upon them, and dropped them as counsel. *See* June 6, 2018 email from Mr. Harris to clients, counsel and Mr. Howard. Mr. Harris states:

> Tim, if you think you are having trouble with the Bar's investigation of your

2 The language of the June 4, 2018 Rebuttal of Kimberly Poling tracks the extortionate and denigrating language of Mr. Harris: "poster child for intentionally turning a blind eye towards legal and ethical improprieties" . . .; "blatant lies made directly to Bar counsel . . . to shift the blame to his consigliere and right-hand man" . . . ; "pleas of ignorance, bewilderment, mystification, along with his sleight-of-hand" . . ., "Howard's three biggest lies" . . . ; "an incestuous relationship" . . . ; "Mehta Consulting was established to illicitly . . . manipulate H&A's books; (iv) issue <u>fraud</u>ulent paychecks that were returned for insufficient funds; and (v) engage in other nefarious activities"; "pure nonsense"; "tip of a massive iceberg, the architecture of which was in place long before I was hired by the firm"; "outrageous lie, tenuously holding up Howard's <u>house of cards</u>," ; "<u>blatant lie</u>"; "equity partner"; "damning"; "larger scheme"; "insulating Howard from liability in the even the firm went belly-up, which is exactly what happened in this instance"; "firm running off the rails"; "the third lie"; "delusional"; "Howard is a dangerous lawyer. He should be summarily disbarred. Indeed, given the allegations of misuse and misappropriation of client funds, I'm surprised the Bar has not taken swifter action"; "three material lies"; "Howard's duplicitous behavior that cries for sanctions."

> practices, BWCI Penson Trustees Limited, Ted Doukas, and everyone else who is still after you, **you are about to walk into a shit storm** if you steal the Goulds from me as my clients.
>
> I will lien the file for cost and fees, sue you for tortious interference and unpaid contributions to costs, **fraud and everything else I can think of. I will also amend my complaint with the Bar** and file a complaint against Neil [paralegal in office] as well.

June 6, 2018 email from Mr. Harris to Mr. Howard, client, co-counsel and lender, attached as Exhibit H (emphasis added).

On June 7, 2018, not knowing the facts, Mr. Harris continues to threaten Bar complaints, stating to a paralegal with the firm, **"I'm am left with no choice but to file a Bar complaint against you."** June 7, 2018 text to paralegal attached as Exhibit I (emphasis added). On that same date, Mr. Harris confirms to the client that "We've had our differences but have worked through them. I was VERY hurt to learn about what may be going on behind my back. We really need to speak. **I won't yell or scream.** Promise." June 7, 2018 text to his former client attached as Exhibit I (emphasis added). The client does not want to be yelled at or abused any further and this is why they switched counsel.

Also on June 7, 2018, Mr. Harris sends another text to the client disparaging counsel without legal justification and for his own pecuniary advantage, continuing his use of the extortion model of complaints to gain advantage in a civil dispute. He first implies that the Ph.D. from Northeastern University, awarded in 2005, is not legitimate. He next uses the Bar process that he coordinated with Ms. Poling for filing to continue his extortion model of practicing law to intimidate the client. He asserts that his Bar complaint is legitimate and factually based. He then falsely asserts that there is an investigation by the "Feds" of the law firm. A threat he first asserted in February of 2018. Finally, he asserts that Ankur Mehta doesn't have a **Doctorate,** which is false since he has a Juris Doctorate, and uses the UPL that he coordinated with Ms. Poling to file, as another extortion tool to address a client desire to not be abused. June 7, 2018 text to his former client attached as Exhibit J.

On June 8, 2018, Mr. Harris continues his disparagement, without legal justification for his own pecuniary advantage, of myself and former paralegal with a Juris Doctorate as **"frauds and con artists"** in an email to the Bar counsel concerning an honorary doctorate award coordinated by the representative of Cambridge Graduate University International in Lagos Nigeria, not myself nor Mr. Mehta, and a link to an article by an opposition political party journalist attacking Prince Buruji Kashamu, then Chairman of the People's Democratic Party in Nigeria, that received the award in October of 2014. June 8, 2018 email and photo attached as Exhibit K (emphasis added). The aim of this is to continue without legal justification the threats and extortionate model of practicing law.

Mr. Harris was provided Notice of Termination as Counsel by Clients and Notice of Request to Cease and Desist Contacting Jacqueline Sacs, Wendy Gould and Barbara Ulrich on June 8, 2018, **due to the clients reaching out to the firm and not wanting to be abused,** as well as informing



Mr. Harris that the firm also has a **"right to remain free from harassing and intimidating tactics, and will protect that right."** Notice to Mr. Harris, Mr. Diaz, Mr. Santisteban, and Mr. Eaton, attached as Exhibit L (emphasis added).

Mr. Harris' pattern of threats, intimidation, extortion and revealing confidential client and firm information without legal justification violates the Law Firm Non-Disclosure and Confidentiality Agreement enforced for the protection of clients and the law firm. *See* Notice provided on June 8, 2018, Exhibit M.

Continuing this pattern, on June 8, 2018, Mr. Harris, without legal justification for his own pecuniary advantage, unleashes his threats, extortion and intimidation efforts with a series of derogatory comments, such as **coward, scumbag, blasphemous, sociopathic charade, days a lawyer are numbered,** and his continued use of the Bar as an extortion device, stating:

> Tim, you breached the NDA by going behind my back to steal my clients and slandering them to me. You're a **first rate coward and a scumbag.** All your talk about **Jesus is blasphemous garbage.** Trust me, I will be pursing my remedies forthwith. You want a war. You are going to get one. Hope you paid Leonard his fees up front.
>
> Did you inform the clients that (i) you are the target of an SEC investigation; (ii) a Bar investigation; (iii) have never tried a tobacco case; (iv) wouldn't know how to if your life depended on it; (v) you don't have a pot to piss in; and (vi) can't afford to litigate a tobacco case. I doubt it. Accordingly, your actions are retaliatory for my having filed a Bar complaint against you.
>
> Trust me, these clients know about tobacco litigation than you ever will. I can also assure you they will rip you to shreds once they see through your **sociopathic charade.**
>
> By the way, the Bar is starting to debrief your former employees. Seems like you've been on the Bar's radar for quite sometime. **Your days as a lawyer are numbered. I'm sure your family will be so proud once they find out.** Enjoy your weekend.

June 8, 2018 email attached hereto as Exhibit N (emphasis added). In response to Mr. Harris' written disparagement and threats without legal justification, his former client writes as follows:

> Dear Dr. Howard:
>
> With all that has transpired over the last few days, I wanted to put in writing my thoughts and opinion concerning JB Harris. I would like for this email to be included in the packet you will be sending to the Florida Bar.
>
> My sisters and I have known JB Harris for many years, as he was the counsel who used to represent us. I want the Florida Bar to know that in no way, did you



> "steal" the Gould sisters. Nor did you go behind his back to take over our business. The truth of the matter is very simple. The three of us sought you out.
>
> I also want the Florida Bar to know that JB Harris is one of the most despicable and abusive men walking around on 2 legs. He spoke to all 3 of the Gould sisters in such nasty and demeaning ways. He has said to us on more than one occasion, that "we are to do whatever the __ck he says. If not I will cut you 3 loose and just move on to the next person on my list." Unless it was something he wanted, he always spoke in very rude words to us.
>
> Because of how verbally abusive he is, his threats to each of us and the constant bullying of his clients, the Gould sisters finally fired JB Harris. I can only hope some serious actions will be taken against this lawyer before he does the same to whoever is "next on his list".
>
> Thank you very much.
>
> Barbara Ulrich
> Daughter of Stanley Gould

June 10, 2018 email from Barbara Ulrich, Daughter of Stanley Gould, attached as Exhibit O.

These documented and repeated patterns violate the following rules of professional conduct as promulgated by the Florida Supreme Court:

> A lawyer must not threaten opposing parties with sanctions, disciplinary complaints, criminal charges, or additional litigation to gain a tactical advantage. *See* Florida Supreme Court, Professionalism Expectations: Expectation 3.18; and Rules Regulating the Florida Bar: Rule 4-3.4(g).
>
> A lawyer must not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter. *See* Florida Supreme Court, Rules Regulating the Florida Bar: Rule 4-3.4(g).
>
> A lawyer must not present, participate in presenting, or threaten to present disciplinary charges under these rules solely to obtain an advantage in a civil matter. *See* Florida Supreme Court, Rules Regulating the Florida Bar: Rule 4-3.4(h). [3]

3 Lawyer disciplined for sending a threatening letter to opposing counsel. *The Florida Bar v. Sayler,* 721 So.2d 1152 (Fla. 1998). A criminal defense lawyer violated Rules 4-4.4(a) and 4-8.4(d) for sending a victim of a crime an objectively humiliating and intimidating letter designed to cause her to abandon her criminal complaint. *The Florida Bar v. Buckle*, 771 So. 2d 1131 ; *see also The Florida Bar v. Ratiner*, 46 So. 3d 35 (Fla. 2010). A lawyer should abstain from conduct that diverts the fact-finder's attention from the relevant facts or causes a fact-finder to make a legally impermissible decision. (Professionalism Expectations: Expectation 5.8)



> To opposing parties and their counsel, a lawyer should act with fairness, integrity, and civility, not only in court, but also in all written and oral communications. (Oath of Admission)
>
> Candor and civility must be used in all oral and written communications. (Professionalism Expectations: Expectation 2.2)
>
> A lawyer must avoid disparaging personal remarks or acrimony toward opposing parties, counsel, third parties or the court. (Professionalism Expectations: Expectation 2.3). A lawyer should be civil and courteous in all situations, both professional and personal, and avoid conduct that is degrading to the legal profession. R. Regulating Fla. Bar 3-4.3. [4]
>
> A lawyer's communications in connection with the practice of law, including communications on social media, must not disparage another's character or competence or be used to inappropriately influence or contact others. (Professionalism Expectations: Expectation 2.5); *see* R. Regulating Fla. Bar 4-8.4(d).
>
> A lawyer must not criticize or denigrate opposing parties, witnesses, or the court to clients, media, or members of the public. (Professionalism Expectations: Expectation 4.20); see R. Regulating Fla. Bar 4-8.2(a) and 4-8.4(d)).

These actions without legal justification, for his own pecuniary advantage, and actual malice by Mr. Harris and the firms that will benefit from and support his extortion, are a violation of section 836.05, Florida Statutes crimes against extortion for maliciously threatening.[5]

4 Lawyer disciplined for sending disparaging emails to opposing counsel, calling him a liar, and making improper outbursts directed toward opposing counsel during the litigation. *The Florida Bar v. Norkin*, 132 So.3d 77 (2013)). *See also The Florida Bar v. Abramson*, 3 So.3d 964 (2009); *The Florida Bar v. Buckle*, 771 So.2d 1131 (Fla. 2000) ; *The Florida Bar v. Sayler*, 721 So. 2d 1152 (Fla. 1998); *The Florida Bar v. Ratiner*, 46 So.3d 35 (Fla. 2010). Lawyer disciplined for sending a letter to a court-appointed provisional director of corporation in which he improperly threatened to file suit against provisional director and accused the provisional director of being involved in a conspiracy. *The Florida Bar v. Norkin*, 132 So. 3d 77 (2013); *See also The Florida Bar v. Abramson*, 3 So. 3d 964 (Fla. 2009). "The First Amendment does not protect those who make harassing or threatening remarks about the judiciary or opposing counsel. Under Rule of Professional Conduct 4-8.4(d), lawyers are required to refrain from knowingly disparaging or humiliating other lawyers." *The Florida Bar v. Sayler*, 721 So.2d 1152, 1155 (Fla. 1998).

5 Whoever, either verbally or by a written or printed communication, maliciously threatens to accuse another of any crime or offense, or by such communication maliciously threatens an injury to the person, property or reputation of another, or maliciously threatens to expose another to disgrace, or to expose any secret affecting another, or to impute any deformity or lack of chastity to another, with intent thereby to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will, shall be guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. Under Florida Statute 836.05, the crime of Extortion is committed when a person maliciously threatens to: Accuse another of any crime or offense; Injure the person, property or reputation of another; Expose another to disgrace; Expose any secret affecting another; or Impute any deformity or lack of chastity to another, with the intent to: Extort money or any pecuniary advantage; or Compel any person to do any act or refrain from doing any act against their will. **Actual Malice versus Legal Malice.** Although it is a subtle distinction, under the Extortion statute, the prosecutor is required to prove the threat was committed with Actual

We did not want to have to report these violations, as this firm in its 23 years of existence, has never reported any fellow member of the Bar to the Bar or to law enforcement and has always tried to resolve disputes and issues amicably and professionally with good faith. Regrettably and with deep disappointment and reluctance, in this instance, the consistent and now almost daily invectives, direct threats and documented Bar and criminal violations leave no option.

Sincerely Yours,

(Phillip) Tim Howard, J.D., Ph.D.

---

Malice, which means "means ill will, hatred, spite, evil intent." This is in contrast to what is known as Legal Malice, which only requires that an act be committed intentionally and without any lawful justification. **Penalties for Extortion.** The crime of Extortion is a Second-Degree Felony in Florida and is punishable by up to 15 years in prison, 15 years of probation, and a $10,000 fine. *Calamia v. State*, 125 So. 3d 1007 (Fla. 5th DCA 2013) (Actual malice is the standard. "A threat is malicious if it is made intentionally and without any lawful justification."); *McKee v. State*, 715 So.2d 101 (Fla. 5th DCA 1998) (Conviction upheld for threats that defendant will destroy you, destroy your business, accusing of drug use, and threatening to make accusations to a federal agency.). "Maliciously" means wrongfully, intentionally, and without legal justification or excuse. A threat is "malicious" for purposes of extortion statute if it is made intentionally and without any lawful justification. It is not necessary that the person accused of extortion have the ability to carry the threat out. Threats to cause mental or psychological injuries are generally prohibited under extortion statute. Therefore, if you threatened to expose someone's affair to their spouse unless they paid you $1,000,000, the threat could be considered extortion for causing a psychological injury or because it was done for a monetary gain. This is extortion even if you did not know how to contact their spouse. Generally, a claim of extortion cannot be based on a threat to do an act which a person has a lawful right to do, **but you may not threaten to undertake an otherwise legal act for your own pecuniary advantage.** An attorney that repeatedly engages in conduct considered extortion can be a violation of the Florida RICO Act, pursuant to section 772.04, Florida Statutes.

# EXHIBIT B

HOWARD JUSTICE

RECEIVED 2018 JUN 25 PM 2:39
RECEIVED
JUN 25 2018
THE FLORIDA BAR

Howard & Associates
Attorneys at Law, P.A.
Dr. Tim Howard, J.D., Ph.D., Senior Partner*
Florida Supreme Court Certified Mediator

Tallahassee, Florida Office:
1415 East Piedmont Drive, Suite 5
Tallahassee, Florida 32308
Ph: (850) 298-4455
Fax: (850) 216-2537
tim@howardjustice.com

Jacksonville, Florida Office:
444 E. Duval Street
Jacksonville, Florida 32207
Ph: (904) 446-9817
Fax: (904) 446-9825
www.howardjustice.com

June 25, 2018

VIA HAND-DELIVERY

Shanee L. Hinson, Bar Counsel
651 East Jefferson Street
Tallahassee, Florida 32399-2300

Jack Campbell, State Attorney
301 South Monroe Street, Suite 475
Tallahassee, Florida 32399-2300

Re: J.B. Harris v. Phillip Timothy Howard, TFB File No. 2018-00,342(2A); Kim Poling v. Phillip Timothy Howard, TFB File No. 2018-00,343(2A); Bar Complaint Against J.B. Harris and Law Firms Supporting his Violations of Rules 3-4.2, 4-3.4(g) and (h), 4-8.2 (a) and (d), and 4-8.4(d); Violation of Section 836.05, Florida Statutes, Crime of Extortion Including Potential Co-Conspirators. Continuing Acts by Mr. Harris.

Dear Bar Counsel Hinson, and State Attorney Campbell:

Continuing the pattern of violating Florida Bar rules and extortion, Mr. Harris, in response to true statements provided by his former clients concerning his abuse of them, on June 22, 2018, wrote the following derogatory and extortionate demands to his former clients and myself:

> **Tim, your sociopathy is exceeded only by your stupidity.** In your haste to forestall litigation over the Gould clients by sending to me a 57.105 letter, you procured their defamation and slander of me in the process.
>
> It was not enough for Mss. Ulrich and Gould to simply state they wanted you as their lawyer and leave it at that. As opposed to your having corralled them, as I firmly believe you did. You also encouraged them to assassinate my character and impugn my integrity by appending their scurrilous emails to your 57.105 letter. **If they had a lawyer that knew what he was doing, you never would** have allowed the publication of their emails.
>
> **Accordingly, if by the close of business next Friday, June 29th, Ulrich and Gould do not retract the slanderous and defamatory statements contained in their emails attached to your 57.105 letter and offer up to me their sincere written apologies, I will sue them both for defamation and slander in Miami.**
>
> **When I do, I will be sure to enumerate all the vicious and vile things Ulrich and Gould have said about their far more intelligent sister, Jacquie, who I note did not fall for your ploy of offering up her "opinion" of me. ...**
>
> **After I sue Ulrich and Gould, I will then move for your disqualification as their counsel,** since you cannot be a defendant in the underlying case and represent at the same time in a derivative defamation and slander action. Which will then give rise to the question of whether you committed malpractice by publishing their ill-conceived emails.

*Admitted to practice in Florida, the District of Columbia, Northern, Middle, and Southern United States District Courts of Florida, the United States Court of Appeals for the 11th Circuit, and the United States Supreme Court. Ph.D, Northeastern University, Law, Policy & Society. Former Visiting Health Law, Bioethics, and Human Rights Scholar and Constitutional Law, Media & Politics and Judicial Process Instructor at Boston University. Former Director of and Professor with Northeastern University's Law & Policy Doctorate Program. President of Cambridge Graduate University International.



June 22, 2018 email from Mr. Harris to Former Clients (emphasis added).

Again, we did not want to have to report these violations, as this firm in its 23 years of existence, has never reported any fellow member of the Bar or to law enforcement and has always tried to resolve disputes and issues amicably and professionally with good faith. Regrettably and with deep disappointment and reluctance, in this instance, the consistent and now almost daily invectives, direct threats and documented Bar and criminal violations leave no option.

Sincerely Yours,

[signature]

(Phillip) Tim Howard, J.D., Ph.D.





Gmail by Google

Tim Howard <tim@howardjustice.com>

**Re: Harris v. Howard CASE NO.: 2018-019879-CA-01 (11th Jud. Cir.)**
1 message

J.B. Harris <jbharrisesq@gmail.com> — Fri, Jun 22, 2018 at 1:07 PM
To: Tim Howard <tim@howardjustice.com>
Cc: Neil Epstein <Neil@howardjustice.com>, Tom Woods <tom@howardjustice.com>, Jacqueline Sacs <isacsphoto@gmail.com>, Barbara Ulrich <FtLauderdaleLady@aol.com>, Wendy Gould <wgould112@yahoo.com>, John Paul Leonard <jleonard@mdmc-law.com>, Rick Diaz <rick@rjdpa.com>, Carlos Santisteban <carlos@csjrlaw.com>, Doug Eaton <deaton@eatonwolk.com>, William Wolk <wwolk@eatonwolk.com>

Tim, your sociopathy is exceeded only by your stupidity. In your haste to forestall litigation over the Gould clients by sending to me a 57.105 letter, you procured their defamation and slander of me in the process.

It was not enough for Mss. Ulrich and Gould to simply state they wanted you as their lawyer and leave it at that. As opposed to your having corralled them, as I firmly believe you did. You also encouraged them to assassinate my character and impugn my integrity by appending their scurrilous emails to your 57.105 letter. If they had a lawyer who knew what he was doing, you never would have allowed the publication of their emails.

Accordingly, if by the close of business next Friday June 29th, Ulrich and Gould do not retract the slanderous and defamatory statements contained in their emails attached you your 57.105 letter and offer up to me their sincere written apologies, I will sue them both for defamation and slander in Miami.

When I do, I will be sure to enumerate all the vicious and vile things Ulrich and Gould have said about their far more intelligent sister, Jacquie, who I note did not fall for your ploy of offering up her "opinion" of me. Jacquie knows deep in her heart that her father's case would have died on the vine years ago, since no one else wanted it, or believed in it, the way I have.

After I sue Ulrich and Gould, I will then move for your disqualification as their counsel, since you cannot be a defendant in the underlying case and represent them at the same time in a derivative defamation and slander action. Which will then give rise to the question of whether you committed malpractice by publishing their ill-conceived emails. A question Ulrich and Gould may want answered from a competent malpractice attorney.

GOVERN YOURSELVES ACCORDINGLY

Very truly yours,

On Thu, Jun 21, 2018 at 3:25 PM, Tim Howard <tim@howardjustice.com> wrote:
Dear Mr. Harris,



On behalf of all Defendants cited in your action, and to all parties that you provided notice of this action, attached please find the Twenty-One Day Safe Harbor Notice of Unsupported Claims Pursuant to Section 57.105, Florida Statutes, and the corresponding requirement to withdraw these unsupported claims. We are sending this notice via email and will send a hard copy via first class U.S. mail today.

Thank you for your review and compliance with the statutory requirements.

*Tim Howard*

Professor Tim Howard, J.D., Ph.D.
Howard & Associates, P.A.

HOWARD JUSTICE

Tallahassee, Floida Office:
1415 East Piedmont Drive, Suite 5
Tallahassee, FL 32308
(850) 999-8624 (o)

Jacksonville, Florida Office:
444 East Duval Street
Jacksonville, FL 32207
(850) 298-4455 (o)
(850 216-2537 (f)
Law Firm Website: www.howardjustice.com
tim@howardjustice.com

Cambridge, Massachusetts Office:
8 Museum Way, Suite 2407
Cambridge, MA 02141
(617) 373-6076

President, Cambridge Graduate University International
One Broad Street, 14th Floor
Cambridge, Massachusetts 02142
(877) 645-6225 (6GLOBAL)
www.cguledu.com
president@cguglobal.net
https://www.facebook.com/tim.howard.752861

PLEASE NOTE: This message, including any attachments, may include privileged or confidential information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited. If you are not the intended recipient, please notify the sender by replying to this message and delete it from your system.

J.B. Harris, P.A.
3127 Ponce De Leon Blvd.
Coral Gables, Florida 33134
Cell: (786) 303-8333
jbharrisesq@gmail.com

# EXHIBIT C

HOWARD JUSTICE

RECEIVED
2018 AUG 22 PM 3:17
JACK CAMPBELL
STATE ATTORNEY

RECEIVED
AUG 22 2018
THE FLORIDA BAR

Howard & Associates
Attorneys at Law, P.A.
Dr. Tim Howard, J.D., Ph.D., Senior Partner*
Florida Supreme Court Certified Mediator

Tallahassee, Florida Office:
1415 East Piedmont Drive, Suite 5
Tallahassee, Florida 32308
Ph: (850) 298-4455
Fax: (850) 216-2537
tim@howardjustice.com

Jacksonville, Florida Office:
444 E. Duval Street
Jacksonville, Florida 32207
Ph: (904) 446-9817
Fax: (904) 446-9825
www.howardjustice.com

August 22, 2018

VIA HAND-DELIVERY

Shanee L. Hinson, Bar Counsel
651 East Jefferson Street
Tallahassee, Florida 32399-2300

Jack Campbell, State Attorney
301 South Monroe Street, Suite 475
Tallahassee, Florida 32301

Re: Margaret "Peggy" Harris v. Phillip Timothy Howard, TFB File No. 2019-00,088(2A); and Phillip Timothy Howard v. Jonathan B. Harris, TFB File No. 2019-70,042(11J).

Dear Counsel Hinson, and State Attorney Campbell:

In response to and in support of the above-referenced inquiry/complaints, please consider the following:

The Margaret "Peggy" Harris' Inquiry/Complaint under PART FIVE, is submitted with following statement:

**"Under penalties of perjury, I declare that the foregoing facts are true, correct and complete." Signed by Margaret "Peggy" Harris, on 7-8-18.**

This is an official proceeding under Florida Bar rules and regulations, and based on the language, type set, legal research, attached documents, prior threats to extort, and consistency in his attacks in two other bar complaints, was prepared and ghost written under the guidance, control and direction of Florida attorney, Mr. J.B. Harris.

Under section 837.02(1), Fla. Stat., when perjury takes place in an official proceeding, such as in a Florida Bar complaint, the criminal offense of perjury is a third-degree felony punishable by up to 5 years in prison and a $5,000 fine. If this complaint is considered an unofficial proceeding, perjury would be considered a misdemeanor of the first degree, punishable by up to one (1) year in jail, (1) year of probation, and $1,000 in fines. Finally, if this complaint is considered before a

*Admitted to practice in Florida, the District of Columbia, Northern, Middle, and Southern United States District Courts of Florida, the United States Court of Appeals for the 11th Circuit, and the United States Supreme Court. Ph.D, Northeastern University, Law, Policy & Society. Former Visiting Health Law, Bioethics, and Human Rights Scholar and Constitutional Law, Media & Politics and Judicial Process Instructor at Boston University. Former Director of and Professor with Northeastern University's Law & Policy Doctorate Program. President of Cambridge Graduate University International.



public servant in the performance of his or her official duty, perjury would be a misdemeanor of the second degree under section 837.06, Fla. Stat.

Unfortunately for Mrs. Peggy Harris in acceding to Mr. J.B. Harris' agenda and writings, she has sworn to this bar complaint under penalties of perjury. The exhibits attached to this 7-8-18 sworn statement are dated 7/30/18, 7/10/18, 7/30/18, 7/30/18, and 7/30/18, respectively. *See* Exhibit A, Exhibit D, Exhibit E, and Exhibit F. They are all printed from Mr. J.B. Harris' gmail account, jbharrisesq@gmail.com, on July 31, 2018, July 30, 2018, and August 3, 2018. These emails are not from Mrs. Peggy Harris. While these exhibits do not constitute a bar violation, they are material to Mrs. Peggy Harris' (Mr. J.B. Harris') claim of such a violation.

**This is absolute perjury as one cannot swear under penalty of perjury to events that have not happened, and one can't believe that what one swears to is true when they have not happened. Thus, they are false, and all statements and attachments were material to the claim. It is also too late to recant this perjury as the complaint and response have taken place.** This is the essence of perjury and a criminal violation under section 867.02(1), Fla. Stat. This may also violate section 837.021(1), Fla., Stat., since there are two or more material statements in official proceeding under oath that contradict each other and may constitute a second-degree felony as well.

Moreover, it is a bar violation to present false evidence. Under rule 4-1.2(d), **"A lawyer shall not counsel a client to engage, or assist a client, in conduct the lawyer knows or reasonably should know is criminal or fraudulent."** *See* Florida Bar Ethics Opinion 75-19. It is also a bar violation to offer evidence that the lawyer knows to be false and should disclose that the evidence is false to the tribunal. Rule 4-3.3 (b). It is fair to state that Mr. J.B. Harris authored and prepared the entire bar complaint and is using Mrs. Peggy Harris as a front and tool for his own extortionate and denigrating agendas. In that instance, he has violated Rule 4-3.3(a)(1), (2), and (4), which require candor toward the tribunal, and has made a false statement, and has failed to correct or disclose a false statement of material fact or offered evidence that the lawyer knows to be false. In addition, Mr. J.B. Harris must report and disclose that this is his bar complaint.

Mr. J.B. Harris is consistently threatening and extorting. Just yesterday, pertaining to health insurance that this firm pays for Mr. J.B. Harris of approximately $2,500 a month, that was understood to be automatically deducted from the account, and was rectified prior to the firm being aware his threat and extortion, Mr. J.B. Harris wrote:

"Tim, I suggest you reactivate my insurance today or I will be at your office first thing tomorrow to spend a little quality time with you. You've placed the lives of my children at risk and that won't stand."

August 21, 2018 email from Mr. J.B. Harris, attached.

As to the merits of the complaint, consider the following:

This firm has been involved in tobacco litigation since its founding in 1995 and has been counsel on numerous tobacco trials and cases, including some of the largest verdicts in the nation—*Chiles, et al., v. American Tobacco, et al.,* (resulted in over $20 billion for the State of Florida); *Evans v. Lorillard* (resulted in the largest verdict in the history of Massachusetts for a personal injury case at $150 million and settled for over $79 million). Pertaining to this particular complaint, the firm was counsel in a 7-week Jacksonville, Florida trial involving *Sermons v. RJR*, that took place when the depositions of Richard Harris were also taking place, due to his imminent demise and the resistance of defendants to



permit him to be deposed earlier. Thus, there was clear capacity to litigate the action, no failure to disclose, nor was there a solicitation. In fact, former counsel for Richard Harris, the law firm of Lyons & Farrar, sought this firm out to assist in the prosecution of the case, and Richard Harris chose to drop former counsel and solely retain this firm. This is verified in the record of this action.

It is false for Mr. J.B. Harris (since Mrs. Peggy Harris would have no capacity or knowledge) to assert that this firm did not know how to prepare a client for a tobacco deposition having done nearly 100 tobacco depositions in the past. The concern was that a junior associate had significant challenges in the first day of defending Mr. Richard Harris in Defendants' deposition of him, while the senior partner was in a tobacco trial in Jacksonville. The firm's senior partner left the tobacco trial for a day to get the testimony in order and identified the critical issues and reviewed them with the associate and paralegal assisting with the deposition. The trial preservation testimony was organized, focused and covered the materials needed to effectively prosecute Mr. Richard Harris' case.

This also involved reviewing portions of the deposition defended by the junior associate. This required reviewing the testimony at issue, reviewing the language with the client, and obtaining the client's desired changes through an appropriate errata correction. Rule 1.310 (e), Florida Rules of Civil Procedure, provides that:

"any changes in form or substance that the witness wants to make must be listed in writing by the offer with a statement of the reasons given by the witness for making the changes. The changes must be attached to the transcript."

Errata sheet clarifications from a deposition transcript are standard procedure for all depositions. This attempt to make errata sheets nefarious is inconsistent with the Florida Rules of Civil Procedure. Errata sheets were done for both Mr. Richard Harris and Mrs. Peggy Harris.

In fact, under oath, Mrs. Peggy Harris stated in her May 23, 2017 deposition, pages 332-336, relevant pages attached, the following pertaining to the errata sheets. These statements confirm that the relevant portions of the transcripts were read to him, and that he knowingly agreed to change the testimony and signed confirming the changes.

Q. Okay. And so I asked you before the break whether you were aware, whether you knew whether your husband reviewed the deposition that I took of him, which was a multi-hundred-page transcript. Did he review that?
A. I believe he did, but he couldn't see it, but it was read to him.
Q. Okay. Who read it to him?
A. One of the attorneys.
Q. How long did it take?
A. A while. They came in early, yeah.
Q. They came in early the morning of June 25th?
A. I don't remember the morning, but they came in early to do it.
...
Q. Okay. Do you remember anything about the circumstances of what was read to him?
A. No.
Q. Do you know one way or the other whether that deposition was read to him from –
A. I believe it was.
Q. – start to finish?
A. I believe it was.
...
Q. Do you know whether he actually told the lawyers whether he had changes to make to his deposition? Did he actually tell them that?
A. I believe he did.
Q. How did he do that?
A. Verbally, I would think. But I'm not—I shouldn't say, because I'm not sure.
...
Q. Do you believe that when your husband signed those errata sheets, that he understood what he was signing?
A. I would think he would. I wouldn't think he would sign if he didn't.
Q. And my question was just a little bit different. Given his health condition at the time, do you think he understood what he was signing when he signed those errata sheets?
A. I would say yes.
Q. Okay. So is the answer that you're not sure whether he knew what he was signing?
A. Again, I wouldn't think he would sign unless he knew what he was signing.
Q. Where you in the room when he signed them?
A. I don't—yeah, I think I was.
...
Q. After his deposition, after I had the opportunity to ask him questions, did Mr. Harris ever say to you that he had changes that he wanted to make to his testimony?
A. I believe he did.

Moreover, in response to the deposition reviews, Mr. Richard Harris and Mrs. Peggy Harris were both read the relevant portion of their transcripts and under oath made changes to their transcripts. This was confirmed by Mr. Richard Harris and reconfirmed by Mrs. Peggy Harris, wherein she repeatedly states under "penalties of perjury" in errata sheets after reviewing her testimony and providing corrections that **"I do remember our attorneys coming over prior to Richard's deposition and reviewing his deposition testimony from the previous days with him, and making sure that the testimony he had given, and making all the corrections that Richard suggested."** 1 *See* relevant portions of transcripts attached. Neither Mr. Richard Harris nor Mrs. Peggy Harris were ordered to sign the errata sheets, and they were reviewed and read to both of them by either associate or senior counsel before they signed the errata sheets. *See* transcript errata sheets attached.

In Mrs. Peggy Harris' May 23, 2018 deposition, she confirms in pages 344-346, attached, that shortly after Mr. Richard Harris passed, the autopsy was conducted in the Faith Funeral Home in Havana, Florida. Regional Pathology and Autopsy Services out of Oakland, California, attached, had their staff fly into Tallahassee. It is demonstrably false that Mr. Richard Harris' body was shipped to California, and in fact, the firm flew the medical autopsy staff from California into Florida to both do an autopsy and obtain tissue samples for medical pathology determination of disease and etiology. Moreover, there was no inference or reference for the client to pay for the costs expended in the case, and it is not understood where or how the language of the email can be interpreted as such.

There was no abandonment as a client. The probate matter was non-prejudicial, as it can be refiled. The hearing notice was missed due to having two Harris probate matters, thinking that the notice was covered,

1 In the errata sheets she stated, **"Our attorneys did review Richard's depo transcripts with him each day, and Richard clarified his answers and the changes he wanted made to the transcript."** She also stated, **"In discussions with Richard, our attorneys prepared the errata sheets according to Richard's instructions and reviewed them with Richard. Richard verified that the errata sheets were consistent with the testimony he wanted to give."** Finally, she stated, **"Richard knew exactly what he was signing because our attorneys reviewed the depo transcripts and errata sheets with Richard before he signed them, and Richard verified that the errata sheets were consistent with the testimony he wanted to give."**

and over 100 probate cases to manage after the junior associate counsel left. This particular matter was understood to be covered by experienced probate counsel, Matt Hinson, Esq., who was hired to handle the 100 or so probate matters. When the Harris probate matter came to the firm's attention, Mr. Hinson was immediately contacted concerning this particular case, and assigned to handle the probate action. Finally, Mr. J.B. Harris ability to operate as an attorney is due to this law firm.2

Unknown to this firm, Mr. Jaakan Williams recommended several lawyer sources to Mrs. Peggy Harris, including the Searcy, Denny law firm, and Christina Opsohal, who had worked on the Richard Harris action. Mr. J.B. Harris was included due to Mr. Jaakan's meeting him through the Howard & Associates law firm. Moreover, Mr. Jaakan Williams did not say the errata sheets were "Howard's concoction of the fraudulent errata sheets."

There has been no refusal to pay the $500 tissue sample bill, as the emails demonstrate. We stated, "we can pay the $500 or let us know whoever is going to pay the costs." All that was asked is how did the client wish to handle the matter, in our efforts to avoid spoliation of the evidence.

Furthermore, it is clearly evident that Mr. J.B. Harris' language is definitively found in this bar complaint, where he again uses his signature labels and terms "blasphemous", "delusional", "duplicitous", "deceptive" and "dishonest" as he has stated in other writings.3 This is language from Mr. J.B. Harris

2 The firm is currently paying Mr. J.B. Harris $21,000 a month, so that he can prosecute tobacco cases, as is referenced in the current complaint against Mr. J.B. Harris. If this firm didn't pay Mr. Harris, he couldn't be working on Mrs. Peggy Harris' case and continue his ghost writings to attack this firm.

3 For example, on August 7, 2018, the following was forwarded to the Florida Bar and State Attorney:

> As part of the ongoing reporting of the various Bar violations and extortion of Mr. J.B. Harris, consistent with his pattern and practice, attached as Exhibit A please find the July 30, 2018 correspondence from Mr. J.B. Harris, documenting disparaging remarks, degrading to the legal profession, in unnecessarily calling Mr. Howard "pathetic, desperate and delusional." This language violates the rules regulating the Florida Bar, 3-4.3, 4-8.2(a), and 4-8.4(d), as cited below.
>
> Mr. Harris again distorts the facts when he states that the client was "abandoned". Mr. Harris knows that the law firm experienced a funding gap for 6-8 weeks due to corrupt advisors. This funding gap was solved. In fact, Mr. Harris is right now being paid $21,000 a month by this law firm and its lender so he can pursue tobacco cases, including the action of *Richard Harris v. RJR and Phillip Morris*. In fact, without this firm's funding, he is unable to represent Mrs. Margaret Harris or have a life. With the funding gap solved, the law firm was able to assign and/or hire probate counsel to address the 100 plus tobacco litigation related probate actions, including the probate action for Mrs. Margaret Harris.

Mr. Harris uses the terms "delusional", "duplicitous", and is following through with his extortionate threat wherein he wrote on June 6, 2018:

> Tim, if you think you are having trouble with the Bar's investigation of your practices, BWCI Pension Trustees Limited, Ted Doukas, and everyone else who is still after you, you are about to walk into a shit storm if you steal the Goulds from me as my clients.



that Mrs. Peggy Harris would not likely parrot.

Mr. J.B. Harris then ghost writes to state there was a "ballistic" reaction to new counsel, and defamed and slandered Mr. J.B. Harris. This is from an email intended only to Mr. Hinson and counsel for the firm, not knowing that Mrs. Peggy Harris was embedded in the reply all. Next, as referenced in the prior bar violation reports on Mr. J.B. Harris, it was stated solely to Mr. Hinson, that "Mr. Harris has an extensive history of bar violations and extortion that I was forced to report." This is factually true, not slanderous, and does not state a record of adjudicated bar violations, as inferred by Mr. Harris.

The facts demonstrate that this bar complaint was written by Mr. J.B. Harris as part of his continued efforts at extortion. As pointed out in the many prior filings, these documented and repeated, upon repeated patterns violate the following rules of professional conduct as promulgated by the Florida Supreme Court:

> A lawyer must not threaten opposing parties with sanctions, disciplinary complaints, criminal charges, or additional litigation to gain a tactical advantage. *See* Florida Supreme Court, Professionalism Expectations: Expectation 3.18; and Rules Regulating the Florida Bar: Rule 4-3.4(g).
>
> A lawyer must not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter. *See* Florida Supreme Court, Rules Regulating the Florida Bar: Rule 4-3.4(g).
>
> A lawyer must not present, participate in presenting, or threaten to present disciplinary charges under these rules solely to obtain an advantage in a civil matter. *See* Florida Supreme Court, Rules Regulating the Florida Bar: Rule 4-3.4(h). 4
>
> To opposing parties and their counsel, a lawyer should act with fairness, integrity, and civility, not only in court, but also in all written and oral communications. (Oath of Admission)
>
> Candor and civility must be used in all oral and written communications. (Professionalism Expectations: Expectation 2.2)

> I will lien the file for costs and fees, sue you for tortious interference and unpaid contribution to costs, fraud and everything else I can think of. I will also amend my complaint with the Bar and file a complaint against Neil as well.

On June 8, 2018, Mr. Harris writes: "You're a first-rate coward and scumbag. All your talk about Jesus is blasphemous garbage." "I can assure you they (Gould sisters) will rip you to shreds once they see through your sociopathic charade."

4 Lawyer disciplined for sending a threatening letter to opposing counsel. *The Florida Bar v. Sayler*, 721 So.2d 1152 (Fla. 1998). A criminal defense lawyer violated Rules 4-4.4(a) and 4-8.4(d) for sending a victim of a crime an objectively humiliating and intimidating letter designed to cause her to abandon her criminal complaint. *The Florida Bar v. Buckle*, 771 So. 2d 1131 ; *see also The Florida Bar v. Ratiner*, 46 So. 3d 35 (Fla. 2010). A lawyer should abstain from conduct that diverts the fact-finder's attention from the relevant facts or causes a fact-finder to make a legally impermissible decision. (Professionalism Expectations: Expectation 5.8)



> A lawyer must avoid disparaging personal remarks or acrimony toward opposing parties, counsel, third parties or the court. (Professionalism Expectations: Expectation 2.3). A lawyer should be civil and courteous in all situations, both professional and personal, and avoid conduct that is degrading to the legal profession. R. Regulating Fla. Bar 3-4.3. 5
>
> A lawyer's communications in connection with the practice of law, including communications on social media, must not disparage another's character or competence or be used to inappropriately influence or contact others. (Professionalism Expectations: Expectation 2.5); *see* R. Regulating Fla. Bar 4-8.4(d).
>
> A lawyer must not criticize or denigrate opposing parties, witnesses, or the court to clients, media, or members of the public. (Professionalism Expectations: Expectation 4.20); see R. Regulating Fla. Bar 4-8.2(a) and 4-8.4(d)).

This is a response to the complaint of Margaret "Peggy" Harris, which in reality is a complaint by J.B. Harris. Consistent with the prior responses, these are further bar violations by Mr. J.B. Harris.

As previously stated as pertaining to Mr. J.B. Harris. We did not want to have to report these violations, as this firm in its 23 years of existence, has never reported any fellow member of the Bar to the Bar or to law enforcement and has always resolved disputes and issues amicably and professionally. Regrettably and with deep disappointment and reluctance, in this instance, the consistent and now almost daily invectives, media statements, direct threats and undisputed Bar and criminal violations leave no option.

Sincerely Yours,

[signature]

(Phillip) Tim Howard, J.D., Ph.D.

5 Lawyer disciplined for sending disparaging emails to opposing counsel, calling him a liar, and making improper outbursts directed toward opposing counsel during the litigation. *The Florida Bar v. Norkin*, 132 So.3d 77 (2013)). *See also The Florida Bar v. Abramson*, 3 So.3d 964 (2009); *The Florida Bar v. Buckle*, 771 So.2d 1131 (Fla. 2000) ; *The Florida Bar v. Sayler*, 721 So. 2d 1152 (Fla. 1998); *The Florida Bar v. Ratiner*, 46 So.3d 35 (Fla. 2010). Lawyer disciplined for sending a letter to a court-appointed provisional director of corporation in which he improperly threatened to file suit against provisional director and accused the provisional director of being involved in a conspiracy. *The Florida Bar v. Norkin*, 132 So. 3d 77 (2013); *See also The Florida Bar v. Abramson*, 3 So. 3d 964 (Fla. 2009). "The First Amendment does not protect those who make harassing or threatening remarks about the judiciary or opposing counsel. Under Rule of Professional Conduct 4-8.4(d), lawyers are required to refrain from knowingly disparaging or humiliating other lawyers." *The Florida Bar v. Sayler*, 721 So.2d 1152, 1155 (Fla. 1998).

Gmail by Google

Tim Howard <tim@howardjustice.com>

**(no subject)**
1 message

J.B. Harris <jbharrisesq@gmail.com> — Tue, Aug 21, 2018 at 2:17 PM
To: tim@howardjustice.com
Cc: John Paul Leonard <jleonard@mdmc-law.com>

Tim, I suggest you reactivate my insurance today or I will be at your office first thing tomorrow to spend a little quality time with you. You've placed the lives of my children at risk and that won't stand.

J.B. Harris, P.A.
3127 Ponce De Leon Blvd.
Coral Gables, FL 33134
786-303-8333
jbharrisesq@gmail.com

Sent from my iPhone. Please forgive any misspellings.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

# EXHIBIT D

HOWARD JUSTICE

RECEIVED

2018 AUG -8 PM 1:41

AUG - 8 2018

THE FLORIDA BAR

Howard & Associates
Attorneys at Law, P.A.
Dr. Tim Howard, J.D., Ph.D., Senior Partner*
Florida Supreme Court Certified Mediator

Tallahassee, Florida Office:
1415 East Piedmont Drive, Suite 5
Tallahassee, Florida 32308
Ph: (850) 298-4455
Fax: (850) 216-2537
tim@howardjustice.com

Jacksonville, Florida Office:
444 E. Duval Street
Jacksonville, Florida 32207
Ph: (904) 446-9817
Fax: (904) 446-9825
www.howardjustice.com

August 7, 2018

VIA HAND-DELIVERY

Shanee L. Hinson, Bar Counsel
651 East Jefferson Street
Tallahassee, Florida 32399-2300

Jack Campbell, State Attorney
301 South Monroe Street, Suite 475
Tallahassee, Florida 32301

Re: J.B. Harris v. Phillip Timothy Howard, TFB File No. 2018-00,342(2A); Kim Poling v. Phillip Timothy Howard, TFB File No. 2018-00,343(2A). Bar Complaint Against J.B. Harris and Law Firms Supporting his Violations of Rules 3-4.3, 4-3.4(g) and (h), 4-8.2 (a) and (d), and 4-8.4(d); Violation of Section 836.05, Florida Statutes, Crime of Extortion Including Potential Co-Conspirators. Continuing Acts by Mr. Harris.

Dear Counsel Hinson, and State Attorney Campbell:

As part of the ongoing reporting of the various Bar violations and extortion of Mr. J.B. Harris, consistent with his pattern and practice, attached as Exhibit A please find the July 30, 2018 correspondence from Mr. J.B. Harris, documenting disparaging remarks, degrading to the legal profession, in unnecessarily calling Mr. Howard "pathetic, desperate and delusional." This language violates the rules regulating the Florida Bar, 3-4.3, 4-8.2(a), and 4-8.4(d), as cited below.

Mr. Harris again distorts the facts when he states that the client was "abandoned". Mr. Harris knows that the law firm experienced a funding gap for 6-8 weeks due to corrupt advisors. This funding gap was solved. In fact, Mr. Harris is right now being paid $21,000 a month by this law firm and its lender so he can pursue tobacco cases, including the action of *Richard Harris v. RJR and Phillip Morris*. In fact, without this firm's funding, he is unable to represent Mrs. Margaret Harris or have a life. With the funding gap solved, the law firm was able to assign and/or hire probate counsel to address the 100 plus tobacco litigation related probate actions, including the probate action for Mrs. Margaret Harris.

The notice of hearing on Mrs. Margaret Harris probate action was missed due to the high volume of probate notices and understanding that this was one of the 100 plus probate cases that probate counsel was handling. Responsibility was taken for this oversight and all these cases are caught up. Once this

*Admitted to practice in Florida, the District of Columbia, Northern, Middle, and Southern United States District Courts of Florida, the United States Court of Appeals for the 11th Circuit, and the United States Supreme Court. Ph.D, Northeastern University, Law, Policy & Society. Former Visiting Health Law, Bioethics, and Human Rights Scholar and Constitutional Law, Media & Politics and Judicial Process Instructor at Boston University. Former Director of and Professor with Northeastern University's Law & Policy Doctorate Program. President of Cambridge Graduate University International.



matter was brought to senior counsel's attention, correspondence was sent to Mrs. Margaret Harris, and private probate counsel Matt Hinson, Esq., was instructed to get the action in order. There was no prejudice to Mrs. Harris as private probate counsel was and is able to refile the action, and the only asset of consequence is the underlying tobacco lawsuit that was stayed.

Mr. Harris goes on to distort the email intended to be made solely to private and probate-counsel hired on the underlying case, not aware that the former client was copied in reply all. The email states that Mr. Harris has "an extensive history of bar violations and extortion that I was forced to report," which all of the filings to date demonstrate is a documented and accurate statement. Importantly, in response Mr. Harris does not challenge the extortion statement.

Mr. Harris then through legerdemain distorts the "history" of Bar violation statement by adding "an extensive record of Bar violations" which implies adjudicated Bar violations, which I would not have had to report and didn't say. He uses his "record of Bar violations" (instead of history) language legerdemain to claim slander. He then says he will add a slander count to a suit that has never been served due to its frivolous nature, when the claimed slander is actually due to his distortion of language.

Finally, Mr. Harris adds a link to an article that concerns another extortion attempt coordinated with a prison inmate that the plaintiff (that has a history of gambling, assault and weapons charges) is protecting. The prison inmate is a dismissed former consultant that scammed funds (the source and cause of the SEC investigation) from an investment company started as a university project. The complaint is deeply flawed factually and structurally. The complaint has never been served but looks to be designed for settlement leverage through media coverage.

As pointed out in the many prior filings, these documented and repeated, upon repeated patterns violate the following rules of professional conduct as promulgated by the Florida Supreme Court:

> A lawyer must not threaten opposing parties with sanctions, disciplinary complaints, criminal charges, or additional litigation to gain a tactical advantage. *See* Florida Supreme Court, Professionalism Expectations: Expectation 3.18; and Rules Regulating the Florida Bar: Rule 4-3.4(g).
>
> A lawyer must not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter. *See* Florida Supreme Court, Rules Regulating the Florida Bar: Rule 4-3.4(g).
>
> A lawyer must not present, participate in presenting, or threaten to present disciplinary charges under these rules solely to obtain an advantage in a civil matter. *See* Florida Supreme Court, Rules Regulating the Florida Bar: Rule 4-3.4(h). 1
>
> To opposing parties and their counsel, a lawyer should act with fairness, integrity, and civility, not only in court, but also in all written and oral communications. (Oath of Admission)

1 Lawyer disciplined for sending a threatening letter to opposing counsel. *The Florida Bar v. Sayler*, 721 So.2d 1152 (Fla. 1998). A criminal defense lawyer violated Rules 4-4.4(a) and 4-8.4(d) for sending a victim of a crime an objectively humiliating and intimidating letter designed to cause her to abandon her criminal complaint. *The Florida Bar v. Buckle*, 771 So. 2d 1131 ; *see also The Florida Bar v. Ratiner*, 46 So. 3d 35 (Fla. 2010). A lawyer should abstain from conduct that diverts the fact-finder's attention from the relevant facts or causes a fact-finder to make a legally impermissible decision. (Professionalism Expectations: Expectation 5.8)



> Candor and civility must be used in all oral and written communications. (Professionalism Expectations: Expectation 2.2)
>
> A lawyer must avoid disparaging personal remarks or acrimony toward opposing parties, counsel, third parties or the court. (Professionalism Expectations: Expectation 2.3). A lawyer should be civil and courteous in all situations, both professional and personal, and avoid conduct that is degrading to the legal profession. R. Regulating Fla. Bar 3-4.3. 2
>
> A lawyer's communications in connection with the practice of law, including communications on social media, must not disparage another's character or competence or be used to inappropriately influence or contact others. (Professionalism Expectations: Expectation 2.5); *see* R. Regulating Fla. Bar 4-8.4(d).
>
> A lawyer must not criticize or denigrate opposing parties, witnesses, or the court to clients, media, or members of the public. (Professionalism Expectations: Expectation 4.20); see R. Regulating Fla. Bar 4-8.2(a) and 4-8.4(d)).

We did not want to have to report these violations, as this firm in its 23 years of existence, has never reported any fellow member of the Bar to the Bar or to law enforcement and has always tried to resolve disputes and issues amicably and professionally through overcoming evil with good. Regrettably and with deep disappointment and reluctance, in this instance, the consistent and now almost daily invectives, media statements, direct threats and undisputed Bar and criminal violations leave no option.

Sincerely Yours,

(Phillip) Tim Howard, J.D., Ph.D.

2 Lawyer disciplined for sending disparaging emails to opposing counsel, calling him a liar, and making improper outbursts directed toward opposing counsel during the litigation. *The Florida Bar v. Norkin*, 132 So.3d 77 (2013)). *See also The Florida Bar v. Abramson*, 3 So.3d 964 (2009); *The Florida Bar v. Buckle*, 771 So.2d 1131 (Fla. 2000) ; *The Florida Bar v. Sayler*, 721 So. 2d 1152 (Fla. 1998); *The Florida Bar v. Ratiner*, 46 So.3d 35 (Fla. 2010). Lawyer disciplined for sending a letter to a court-appointed provisional director of corporation in which he improperly threatened to file suit against provisional director and accused the provisional director of being involved in a conspiracy. *The Florida Bar v. Norkin*, 132 So. 3d 77 (2013); *See also The Florida Bar v. Abramson*, 3 So. 3d 964 (Fla. 2009). "The First Amendment does not protect those who make harassing or threatening remarks about the judiciary or opposing counsel. Under Rule of Professional Conduct 4-8.4(d), lawyers are required to refrain from knowingly disparaging or humiliating other lawyers." *The Florida Bar v. Sayler*, 721 So.2d 1152, 1155 (Fla. 1998).



Gmail

Tim Howard <tim@howardjustice.com>

**Fwd: E/O Richard Harris P/R Margaet Harris CASE NO.: 2014-CA-000337 Circuit Court of Gasden County**
1 message

J.B. Harris <jbharrisesq@gmail.com> Mon, Jul 30, 2018 at 11:05 PM
To: "Matthew Hinson Esq." <matt@hinsonlawpa.com>
Cc: tim@howardjustice.com, John Paul Leonard <jleonard@mdmc-law.com>, neil@howardjustice.com, tom@howardjustice.com

Matt, Howard is pathetic, desperate and delusional. Mrs. Harris didn't respond to him because she fired Howard weeks ago after he abandoned her as a client.

Howard has been sanctioned by the Bar once before — check his Bar history — and is currently under investigation by the Bar for at least three complaints filed against him. He is also under investigation by the SEC. I also am suing him and will add a count for slander for his claiming that I have an extensive record of Bar violations as set forth on the email below.

Here is but one more example of Howard's MO which you will no doubt fond of interest. http://www.wctv.tv/content/news/Former-Nole-current-Godby-coach-Fuller-sues-lawyer-for-allegedly-stealing-money-487522001.html

Knowing that he is no longer counsel for Mrs. Harris, his copying her on the email to you is but another example of his total disregard for the rules and the law. By contrast, I've never been sanctioned by the Bar or any court.

You are best to remain clear.

Regards.

J.B. Harris, P.A.
3127 Ponce De Leon Blvd.
Coral Gables, FL 33134
786-303-8333
jbharrisesq@gmail.com

Sent from my iPhone. Please forgive any misspellings.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

Begin forwarded message:

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.
Begin forwarded message:

On Monday, July 30, 2018, 7:48 PM, Tim Howard <tim@howardjustice.com> wrote:

Matt,

She didn't respond to me. Mr. Harris has an extensive history of bar violations and extortion that I was forced to report. We sent what we had in the file and I

now.

Thank you for your availability. This case may yet return to the firm. In the interim, please return the fee over the next week or two.

*Tim Howard*

Professor Tim Howard, J.D., Ph.D.
Howard & Associates, P.A.

Tallahassee, Floida Office:
1415 East Piedmont Drive, Suite 5
Tallahassee, FL 32308
(850) 999-8624 (o)

Jacksonville, Florida Office:
444 East Duval Street
Jacksonville, FL 32207
(850) 298-4455 (o)
(850 216-2537 (f)
Law Firm Website: www.howardjustice.com
tim@howardjustice.com

Cambridge, Massachusetts Office:
8 Museum Way, Suite 2407
Cambridge, MA 02141
(617) 373-6076

President, Cambridge Graduate University International
One Broad Street, 14th Floor
Cambridge, Massachusetts 02142
(877) 645-6225 (6GLOBAL)
www.cguiedu.com
president@cguglobal.net
https://www.facebook.com/tim.howard.752861

PLEASE NOTE: This message, including any attachments, may include privileged or confidential information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited. If you are not the intended recipient, please notify the sender by replying to this message and delete it from your system.

On Mon, Jul 30, 2018 at 12:32 PM, Matthew Hinson, Esq. <matt@hinsonlawpa.com> wrote:

Tim:

This email explains why I did not receive return contact from the client. Apparently she did not want my office to represent her. Did she by chance respond to you regarding the email you sent her about retaining my firm on her behalf? As such, I will send your funds back to you related to the probate case. Please advise where you would like the funds mailed.

Also, other than what you sent over, I do not have any other documents in my file. I was still waiting on your office sending a copy of the petition for administration so that the filings would have been similar.

Thanks,

Matt

**Matthew H. Hinson, Esq.**

**The Hinson Law Firm, P.A.**

300 West Adams Street, Suite 500

Jacksonville, FL 32202

Telephone: (904) 527-1700

Facsimile: (904) 355-8088

www.ProbateForFlorida.com

<Outlook-1487738434.bmp>

The information in this email is privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this transmission (including any attachments) is strictly prohibited. If you received this email in error, please notify the sender via reply email and immediately delete this email from your system.

To ensure compliance with Internal Revenue Circular 230, we inform you that any U.S. Federal tax advice contained in this communication is not for use, and cannot be used, for the purposes of matter(s) addressed herein.

# EXHIBIT E

HOWARD JUSTICE
Howard & Associates
Attorneys at Law, P.A.
Dr. Tim Howard, J.D., Ph.D., Senior Partner*
Florida Supreme Court Certified Mediator

Tallahassee, Florida Office:
1415 East Piedmont Drive, Suite 5
Tallahassee, Florida 32308
Ph: (850) 298-4455
Fax: (850) 216-2537
tim@howardjustice.com

Jacksonville, Florida Office:
444 E. Duval Street
Jacksonville, Florida 32207
Ph: (904) 446-9817
Fax: (904) 446-9825
www.howardjustice.com

RECEIVED
JUN 28 2018
THE FLORIDA BAR

RECEIVED 2018 JUN 28 PM 12:40

June 28, 2018

VIA HAND-DELIVERY

Shanee L. Hinson, Bar Counsel
651 East Jefferson Street
Tallahassee, Florida 32399-2300

Jack Campbell, State Attorney
301 South Monroe Street, Suite 475
Tallahassee, Florida 32399-2300

Re: J.B. Harris v. Phillip Timothy Howard, TFB File No. 2018-00,342(2A); Kim Poling v. Phillip Timothy Howard, TFB File No. 2018-00,343(2A); Bar Complaint Against J.B. Harris and Law Firms Supporting his Violations of Rules 3-4.2, 4-3.4(g) and (h), 4-8.2 (a) and (d), and 4-8.4(d); Violation of Section 836.05, Florida Statutes, Crime of Extortion Including Potential Co-Conspirators. Continuing Acts by Mr. Harris, and Violation of Rules 4-7.18 (b) and 2(b)(1)(B) and (F), Against Solicitation, and Rule 4-8.4(d), Against Conduct Prejudicial to the Administration of Justice.

Dear Bar Counsel Hinson, and State Attorney Campbell:

On March 5, 2018, Mr. Harris validates his pattern of misrepresentations and ghost-writings to advance his interests.[1] Mr. Harris solicited clients to drop this law firm in order to increase his potential fee. He falsely stated that he hadn't been paid in 3 months. He then wrote a false statement to the clients that "Mr. Howard's firm is out of business."

This was part of his written actions to harm the firm and solicit business, while still being paid handsomely. He then provided his ghost-written email for the clients to use in order to advance his solicitation, and did a follow-up the next day to verify that the solicitation scheme was

1 This followed one week after Mr. Harris' February 26, 2018 extortion and threats (Exhibit D of June 21, 2018 Response to Bar Complaint, and Bar Complaint Against J.B. Harris), after receiving approximately $42,000 in February, including a $15,000 bonus.

*Admitted to practice in Florida, the District of Columbia, Northern, Middle, and Southern United States District Courts of Florida, the United States Court of Appeals for the 11th Circuit, and the United States Supreme Court. Ph.D, Northeastern University, Law, Policy & Society. Former Visiting Health Law, Bioethics, and Human Rights Scholar and Constitutional Law, Media & Politics and Judicial Process Instructor at Boston University. Former Director of and Professor with Northeastern University's Law & Policy Doctorate Program. President of Cambridge Graduate University International.



effective. March 5, 2018 and March 6, 2018 emails from Mr. Harris to Clients, attached.

These actions violate Rule 4-7.18 of the Rules Regulating the Florida Bar. The rule states as follows:

*RULE 4-7.18 DIRECT CONTACT WITH PROSPECTIVE CLIENTS*

(a) **Solicitation.** Except as provided in subdivision (b) of this rule, a lawyer may not:

(b) **Written Communication.**

(1) A lawyer may not send, or knowingly permit to be sent, on the lawyer's behalf or on behalf of the lawyer's firm or partner, an associate, or any other lawyer affiliated with the lawyer or the lawyer's firm, **a written communication directly or indirectly to a prospective client for the purpose of obtaining professional employment if:**

(B) the **written communication concerns a specific matter and the lawyer knows** or reasonably should know that the person to whom the communication is directed **is represented by a lawyer in the matter;**

(D) the **communication involves coercion,** duress, **fraud, overreaching,** harassment, intimidation, or undue influence;

These actions also violate Rule 4-8.4(d) of the Rules Regulating the Florida Bar. The rule states as follows:

*RULE 4-8.4 MISCONDUCT*

A lawyer shall not:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation, except that it shall not be professional misconduct for a lawyer for a criminal law enforcement agency or regulatory agency to advise others about or to supervise another in an undercover investigation, unless prohibited by law or rule, and it shall not be professional misconduct for a lawyer employed in a capacity other than as a lawyer by a criminal law enforcement agency or regulatory agency to participate in an undercover investigation, unless prohibited by law or rule;



(d) engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly, or through callous indifference, disparage, humiliate, or discriminate against litigants, jurors, witnesses, court personnel, or other lawyers on any basis, including, but not limited to, on account of race, ethnicity, gender, religion, national origin, disability, marital status, sexual orientation, age, socioeconomic status, employment, or physical characteristic;

Again, we did not want to have to report these violations, as this firm in its 23 years of existence, has never reported any fellow member of the Bar or to law enforcement and has always tried to resolve disputes and issues amicably and professionally with good faith. Regrettably and with deep disappointment and reluctance, in this instance, the consistent and now almost daily invectives, direct threats and documented Bar and criminal violations leave no option.

Sincerely Yours,

Tim Howard

(Phillip) Tim Howard, J.D., Ph.D.

From: JB Harris <jb@howardjustice.com>
Date: Mon, Mar 5, 2018 at 10:28 PM
Subject:
To: isacsphoto@gmail.com
Cc: wgould112@yahoo.com, Barbara Ulrich <FtLauderdaleLady@aol.com>

Wendy and Barbara, I spoke with Jacquie earlier. She can explain further. Mr. Howard's firm is out of business. I need Jacquie to send the following to him terminating
his representation.

Dear Mr. Howard:

It has come to our attention that your firm has closed its doors and that you are no longer in business. Effective immediately you are no longer counsel for me and my sisters, and for the estate of our late father Stanley Gould. We hereby release you of all further duties as our attorney. Please file whatever paperwork necessary to withdraw your representation.

Regards, Jacquiline Sacs.

Ft. Laudedale Office:
J.B. Harris, P.A.
Howard & Associates, P.A.
101 NE Third Ave., Ste. 1500
Fort Lauderdale, Florida 33301
Cell: (786) 303-8333
Office: (954) 332-3633
em: jb@howardjustice.com
web: www.howardjustice.com

Tallahassee Office:
2120 Killarney Way, Ste. 125
Tallahassee, Florida 32309
Main Office: (850) 298-4455
Fax: (850) 216-2537

Jacksonville Office:
Riverplace Tower, Suite 2101
1301 Riverplace Blvd.
Jacksonville, FL 32207

Sent from my iPhone. Please forgive any misspellings.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

Gmail

Tim Howard <tim@howardjustice.com>

**RELEASE OF SERVICE**
1 message

Jacqueline Sacs <isacsphoto@gmail.com> Tue, Mar 6, 2018 at 5:30 AM
To: "cc: Tim Howard" <Tim@howardjustice.com>
Cc: JBHarris <jb@howardjustice.com>, Wendy Gould <wgould112@yahoo.com>, "ftlauderdalelady@aol.com" <FtLauderdaleLady@aol.com>

Dear Mr. Howard:

It has come to our attention that your firm has closed its doors and that you are no longer in business. Effective immediately you are no longer counsel for me and my sisters, and for the estate of our late father Stanley Gould. We hereby release you of all further duties as our attorney. Please file whatever paperwork necessary to withdraw your representation.

Regards, Jacquiline Sacs.

--
Think. Before its too late.

From: J.B. Harris <jbharrisesq@gmail.com>
Date: Tue, Mar 6, 2018 at 1:31 PM
Subject:
To: wgould112@yahoo.com, isacsphoto@gmail.com, Barbara Ulrich <FtLauderdaleLady@aol.com>

Did you send the notice of termination to Howard.

J.B. Harris, P.A.
101 NE Third Ave., Ste. 1500
Fort Lauderdale, Florida 33301
Ph: (786) 303-8333

Sent from my iPhone. Please forgive any misspellings.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

# EXHIBIT F

HOWARD JUSTICE

RECEIVED

JUL 13 2018

THE FLORIDA BAR

RECEIVED 2018 JUL 13

Howard & Associates
Attorneys at Law, P.A.
Dr. Tim Howard, J.D., Ph.D., Senior Partner*
Florida Supreme Court Certified Mediator

Tallahassee, Florida Office:
1415 East Piedmont Drive, Suite 5
Tallahassee, Florida 32308
Ph: (850) 298-4455
Fax: (850) 216-2537
tim@howardjustice.com

Jacksonville, Florida Office:
444 E. Duval Street
Jacksonville, Florida 32207
Ph: (904) 446-9817
Fax: (904) 446-9825
www.howardjustice.com

July 13, 2018

VIA HAND-DELIVERY

Shanee L. Hinson, Bar Counsel
651 East Jefferson Street
Tallahassee, Florida 32399-2300

Jack Campbell, State Attorney
301 South Monroe Street, Suite 475
Tallahassee, Florida 32301

Re: J.B. Harris v. Phillip Timothy Howard, TFB File No. 2018-00,342(2A); Kim Poling v. Phillip Timothy Howard, TFB File No. 2018-00,343(2A). Bar Complaint Against J.B. Harris and Law Firms Supporting his Violations of Rule 4-3.4(g) and (h), 4-8.2 (a) and (d), and 4-8.4(d); Violation of Section 836.05, Florida Statutes, Crime of Extortion Including Potential Co-Conspirators. Continuing Acts by Mr. Harris.

Dear Counsel Hinson, and State Attorney Campbell:

Attached as Exhibit A please find the executed under oath form required by the Florida Bar for Complaints and the documented actions of Mr. Harris and his colleagues.

In addition, please find verification from attorney Mr. Santisteban, Jr., that the Veritext invoice was never provided to this firm and verifying his responsibility stating, "Since I noticed the deposition [in December of 2017], I am responsible for it." July 11, 2018 email and December 6, 2017 Invoice date attached as Exhibit B. This validates the demonstrably false statements found in the threats of a Bar complaint and extortion efforts of both Mr. Harris and Mrs. Santisteban, as detailed in the June 29, 2018 submission and documents, pages 2-3.

Consistent with this cabal of extortion, Mr. Harris on June 19, 2018, filed a frivolous complaint claiming that his former clients were tortuously interfered with, and falsely claimed in the media on June 22, 2018, that Mr. Howard has **"'usurped' a portfolio of tobacco cases potentially worth millions of dollars,"** and that **"He couldn't finance any of his cases."** June 22, 2018

*Admitted to practice in Florida, the District of Columbia, Northern, Middle, and Southern United States District Courts of Florida, the United States Court of Appeals for the 11th Circuit, and the United States Supreme Court. Ph.D. Northeastern University, Law, Policy & Society. Former Visiting Health Law, Bioethics, and Human Rights Scholar and Constitutional Law, Media & Politics and Judicial Process Instructor at Boston University. Former Director of and Professor with Northeastern University's Law & Policy Doctorate Program. President of Cambridge Graduate University International.



Press Article attached as Exhibit C. This is the same pattern Mr. Harris took on a similar tobacco client issue with co-counsel in 2013. *See* Law 360 Article attached as Exhibit D.

Clarifying false statements by Mr. Harris, on June 21, and June 22, Mr. Harris received the §57.105, Florida Statutes, frivolous action notice documenting that there was no usurpation of the Gould sisters as clients. Exhibit E. Nor has there been a taking of any client. In fact, the opposite. The truth is that Mr. Harris has an **April 6, 2018 Confidential Settlement and Release Agreement**, where **Mr. Howard is paying him $21,000 a month for one year, and paid an initial $50,000 to Mr. Harris**, with **Mr. Howard retaining a 40% of the gross fee interest in the cases.**

These documented and repeated patterns violate the following rules of professional conduct as promulgated by the Florida Supreme Court:

> A lawyer must not threaten opposing parties with sanctions, disciplinary complaints, criminal charges, or additional litigation to gain a tactical advantage. *See* Florida Supreme Court, Professionalism Expectations: Expectation 3.18; and Rules Regulating the Florida Bar: Rule 4-3.4(g).
>
> A lawyer must not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter. *See* Florida Supreme Court, Rules Regulating the Florida Bar: Rule 4-3.4(g).
>
> **A lawyer must not present, participate in presenting, or threaten to present disciplinary charges under these rules solely to obtain an advantage in a civil matter.** *See* Florida Supreme Court, Rules Regulating the Florida Bar: Rule 4-3.4(h). 1
>
> To opposing parties and their counsel, a lawyer should act with fairness, integrity, and civility, not only in court, but also in all written and oral communications. (Oath of Admission)
>
> Candor and civility must be used in all oral and written communications. (Professionalism Expectations: Expectation 2.2)
>
> A lawyer must avoid disparaging personal remarks or acrimony toward opposing parties, counsel, third parties or the court. (Professionalism Expectations: Expectation 2.3). A lawyer should be civil and courteous in all situations, both

1 Lawyer disciplined for sending a threatening letter to opposing counsel. *The Florida Bar v. Sayler*, 721 So.2d 1152 (Fla. 1998). A criminal defense lawyer violated Rules 4-4.4(a) and 4-8.4(d) for sending a victim of a crime an objectively humiliating and intimidating letter designed to cause her to abandon her criminal complaint. *The Florida Bar v. Buckle*, 771 So. 2d 1131 ; *see also The Florida Bar v. Ratiner*, 46 So. 3d 35 (Fla. 2010). A lawyer should abstain from conduct that diverts the fact-finder's attention from the relevant facts or causes a fact-finder to make a legally impermissible decision. (Professionalism Expectations: Expectation 5.8)



> professional and personal, **and avoid conduct that is degrading to the legal profession.** R. Regulating Fla. Bar 3-4.3. 2
>
> A lawyer's communications in connection with the practice of law, including communications on social media, must not disparage another's character or competence or be used to inappropriately influence or contact others. (Professionalism Expectations: Expectation 2.5); *see* R. Regulating Fla. Bar 4-8.4(d).
>
> **A lawyer must not criticize or denigrate opposing parties, witnesses, or the court to clients, media, or members of the public.** (Professionalism Expectations: Expectation 4.20); see R. Regulating Fla. Bar 4-8.2(a) and 4-8.4(d)).

These actions without legal justification, for his own pecuniary advantage, and actual malice by Mr. Harris and the firms that will benefit and support his extortion, are a violation of § 836.05, Florida Statutes, crimes against extortion for maliciously threatening.3

2 Lawyer disciplined for sending disparaging emails to opposing counsel, calling him a liar, and making improper outbursts directed toward opposing counsel during the litigation. *The Florida Bar v. Norkin*, 132 So.3d 77 (2013)). *See also The Florida Bar v. Abramson*, 3 So.3d 964 (2009); *The Florida Bar v. Buckle*, 771 So.2d 1131 (Fla. 2000) ; *The Florida Bar v. Sayler*, 721 So. 2d 1152 (Fla. 1998); *The Florida Bar v. Ratiner*, 46 So.3d 35 (Fla. 2010). Lawyer disciplined for sending a letter to a court-appointed provisional director of corporation in which he improperly threatened to file suit against provisional director and accused the provisional director of being involved in a conspiracy. *The Florida Bar v. Norkin*, 132 So. 3d 77 (2013); *See also The Florida Bar v. Abramson*, 3 So. 3d 964 (Fla. 2009). "The First Amendment does not protect those who make harassing or threatening remarks about the judiciary or opposing counsel. Under Rule of Professional Conduct 4-8.4(d), lawyers are required to refrain from knowingly disparaging or humiliating other lawyers." *The Florida Bar v. Sayler*, 721 So.2d 1152, 1155 (Fla. 1998).

3 Whoever, either verbally or by a written or printed communication, maliciously threatens to accuse another of any crime or offense, or by such communication maliciously threatens an injury to the person, property or reputation of another, or maliciously threatens to expose another to disgrace, or to expose any secret affecting another, or to impute any deformity or lack of chastity to another, with intent thereby to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will, shall be guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. Under Florida Statute 836.05, the crime of Extortion is committed when a person maliciously threatens to: Accuse another of any crime or offense; Injure the person, property or reputation of another; Expose another to disgrace; Expose any secret affecting another; or Impute any deformity or lack of chastity to another, with the intent to: Extort money or any pecuniary advantage; or Compel any person to do any act or refrain from doing any act against their will. **Actual Malice versus Legal Malice.** Although it is a subtle distinction, under the Extortion statute, the prosecutor is required to prove the threat was committed with Actual Malice, which means "means ill will, hatred, spite, evil intent." This is in contrast to what is known as Legal Malice, which only requires that an act be committed intentionally and without any lawful justification. **Penalties for Extortion.** The crime of Extortion is a Second-Degree Felony in Florida and is punishable by up to 15 years in prison, 15 years of probation, and a $10,000 fine. *Calamia v. State*, 125 So. 3d 1007 (Fla. 5th DCA 2013) (Actual malice is the standard. "A threat is malicious if it is made intentionally and without any lawful justification."); *McKee v. State*, 715 So.2d 101 (Fla. 5th DCA 1998) (Conviction upheld for threats that defendant will destroy you, destroy your business, accusing of drug use, and threatening to make accusations to a federal agency.). "Maliciously" means wrongfully, intentionally, and without legal justification or excuse. A threat is "malicious" for purposes of extortion statute if it is made intentionally and without any lawful justification. It is not necessary that the person accused of extortion have the ability to carry the threat out. Threats to cause mental or psychological injuries are generally prohibited under extortion statute. Therefore, if you threatened to expose someone's affair to

We did not want to have to report these violations, as this firm in its 23 years of existence, has never reported any fellow member of the Bar to the Bar or to law enforcement and has always tried to resolve disputes and issues amicably and professionally through overcoming evil with good. Regrettably and with deep disappointment and reluctance, in this instance, the consistent and now almost daily invectives, media statements, direct threats and undisputed Bar and criminal violations leave no option.

Sincerely Yours,

[signature]

(Phillip) Tim Howard, J.D., Ph.D.

their spouse unless they paid you $1,000,000, the threat could be considered extortion for causing a psychological injury or because it was done for a monetary gain. This is extortion even if you did not know how to contact their spouse. Generally, a claim of extortion cannot be based on a threat to do an act which a person has a lawful right to do, but you may not threaten to undertake an otherwise legal act for your own pecuniary advantage. An attorney that repeatedly engages in conduct considered extortion can be a violation of the Florida RICO Act, pursuant to section 772.04, Florida Statutes. This is also a potential violation of 18 USC 875(b), since there is an attempt to extort something of value and use of a transmission through interstate commerce (text, internet and federal reserve clearing house in Dallas, Texas) in order to facilitate such extortion.

# EXHIBIT G

HOWARD JUSTICE

RECEIVED 2018 AUG 29 PM 4:52 JACK CAMPBELL STATE ATTORNEY

RECEIVED AUG 29 2018 THE FLORIDA BAR

Howard & Associates
Attorneys at Law, P.A.
Dr. Tim Howard, J.D., Ph.D., Senior Partner*
Florida Supreme Court Certified Mediator

Tallahassee, Florida Office:
1415 East Piedmont Drive, Suite 5
Tallahassee, Florida 32308
Ph: (850) 298-4455
Fax: (850) 216-2537
tim@howardjustice.com

Jacksonville, Florida Office:
444 E. Duval Street
Jacksonville, Florida 32207
Ph: (904) 446-9817
Fax: (904) 446-9825
www.howardjustice.com

August 28, 2018

VIA HAND-DELIVERY

Shanee L. Hinson, Bar Counsel
651 East Jefferson Street
Tallahassee, Florida 32399-2300

Jack Campbell, State Attorney
301 South Monroe Street, Suite 475
Tallahassee, Florida 32301

Re: Margaret "Peggy" Harris v. Phillip Timothy Howard, TFB File No. 2019-00,088(2A); and Phillip Timothy Howard v. Jonathan B. Harris, TFB File No. 2019-70,042(11J).

Dear Counsel Hinson, and State Attorney Campbell:

In response to and in support of the above-referenced inquiry/complaints, please consider the following. In support of the second incontrovertible perjury referenced in the August 23, 2018 filing, as is found in the July 8, 2018 sworn Bar complaint allegedly by Mr. Peggy Harris, at pages 3 and 8, Mr. Jaakan Williams' sworn testimony on April 11, 2018, is in contrast to this sworn statement:

> In an effort to cure whatever perceived shortcomings may have resulted from Richard's testimony, following the depositions, Howard and his associate Ankur Mehta fabricated errata sheets for each transcript, extensively re-writing Richard's testimony.
>
> Howard and Mehta ordered Richard to sign the fraudulent errata sheets without even reading him the changes. Indeed, Richard was so near death at the time, he had no comprehension as to what was happening around him, or what he was even signing.
>
> ...
>
> Jaakan Williams, who was present at Richard's depositions and who informed me of Howard's concoction of the fraudulent errata sheets. Mr. Williams is a witness in the Bar's investigation of Howard as well.

*Id.* (emphasis added).

*Admitted to practice in Florida, the District of Columbia, Northern, Middle, and Southern United States District Courts of Florida, the United States Court of Appeals for the 11th Circuit, and the United States Supreme Court. Ph.D, Northeastern University, Law, Policy & Society. Former Visiting Health Law, Bioethics, and Human Rights Scholar and Constitutional Law, Media & Politics and Judicial Process Instructor at Boston University. Former Director of and Professor with Northeastern University's Law & Policy Doctorate Program. President of Cambridge Graduate University International.



Mr Jaakan Williams in his April 11, 2018 deposition, pages 77-78, 86-90, attached hereto, states:

Q. I'll put it another way. Isn't it the duty of a lawyer to find the facts, find that law that best represents their client?
A. Agreed.
Q. All right. And if there's errors in the facts, (inaudible) person who's on the verge of death, that need to be clarified isn't it the lawyer's duty to clarify those facts?
A. I agree.
Q. And if one of the methods of clarifying the facts is an errata sheet, pointing out the precise language that the deponent said, read that to him as he's dying and then have the clarifying language read to him as he's dying, until he agrees on that change, isn't that an appropriate way to clarify the record for this dying deponent?
A. I believe so.
...
Q. Okay. So, Mr. Williams, during your visits with Mr. Harris and Peggy Harris on Thursday and Friday, you would cover a lot of the same topics that are in the errata sheets, such as smoking history, criminal history, military background, employment, addiction. Would those topics have been covered in your discussions with Richard and Peggy Harris on Thursday and Friday?
A. We covered a number of topics. Those are the predominant ones we covered.
Q. Okay. Very good. And you would have shared that with counsel or a paralegal on the case, since that's why you were there, to help them with the case?
A. Yes, I would have shared that.
Q. Okay. Mr. Williams, as far as the language in the errata sheet, did we require Richard to accept the proposed correction, or did we seek his ascent to make the change?
Q. Could Richard have said, "No, that's not a correct change?"
A. He could have, I would imagine.
Q. Right, and so – and Richard was lucid enough to say, "Well, no I (inaudible) with that change," and we would have crossed it out, our handwritten changes, if that's what Richard wanted to do?
THE WITNESS. I imagine he would have. He was – he was coherent that morning.
Q. He had no problems expressing his viewpoint, regardless of how people felt about it?
A Yes.
Q. So we did not require Richard to agree to this errata sheet, did we?
Q. And Richard could have said, "No, that's not correct"?
A. Yes, he could have, if he wanted to, I imagine.
Q. Right, and Richard's the kind of person that would have no problem telling you that's not correct?
THE WITNESS. From what I remember, yes.
Q. Okay. So, as far as your perspective on observing this process, wasn't the errata sheet something that Richard was aware of, understood, and approved to change his testimony from the discovery deposition?
THE WITNESS. If you're asking me if he agreed to the changes, yes, he agreed to the changes.
Q. And these changes were after that portion of the transcripts were read to him—
A. Yes, they were read to him.

*Id.* (emphasis added). This sworn statement says, "he was coherent that morning," "he agreed to the changes," and "they were read to him." *Id.*

This sworn statement on April 11, 2018, is not consistent with Mrs. Peggy Harris' the July 7, 2018 sworn statement before the Florida Bar:



> Howard and Mehta ordered Richard to sign the fraudulent errata sheets without even reading him the changes. Indeed, Richard was so near death at the time, he had no comprehension as to what was happening around him, or what he was even signing.
>
> ...
>
> Jaakan Williams, who was present at Richard's depositions and who informed me of Howard's concoction of the fraudulent errata sheets. Mr. Williams is a witness in the Bar's investigation of Howard as well.

Moreover, Mrs. Peggy Harris, consistent with the facts above, was prepared for her sworn deposition testimony by attorney Jaakan Williams 1 and current Bar attorney Adriannette Williams. They would have coordinated the review of her May 23, 2017 deposition and would have coordinated the preparation of her errata sheets after Peggy Harris' review of her deposition transcript. Mrs. Peggy Harris states under oath:

Q. Okay. And so I asked you before the break whether you were aware, whether you knew whether your husband reviewed the deposition that I took of him, which was a multi-hundred-page transcript. Did he review that?
A. I believe he did, but he couldn't see it, but it was read to him.
Q. Okay. Who read it to him?
A. One of the attorneys.
Q. How long did it take?
A. A while. They came in early, yeah.
Q. They came in early the morning of June 25th?
A. I don't remember the morning, but they came in early to do it.
...
Q. Okay. Do you remember anything about the circumstances of what was read to him?
A. No.
Q. Do you know one way or the other whether that deposition was read to him from –
A. I believe it was.
Q. – start to finish?
A. I believe it was.
...
Q. Do you know whether he actually told the lawyers whether he had changes to make to his deposition? Did he actually tell them that?
A. I believe he did.
Q. How did he do that?
A. Verbally, I would think. But I'm not—I shouldn't say, because I'm not sure.
...
Q. Do you believe that when your husband signed those errata sheets, that he understood what he was signing?
A. I would think he would. I wouldn't think he would sign if he didn't.
Q. And my question was just a little bit different. Given his health condition at the time, do you think he understood what he was signing when he signed those errata sheets?

1 Moreover, Mr. Jaakan Williams did not say the errata sheets were "Howard's concoction of the fraudulent errata sheets." If he did say such a thing, he would be contradicting not only his own sworn testimony, he would be contradicting his deposition preparation of Mrs. Peggy Harris and his work with Mrs. Peggy Harris in her review of her deposition transcripts and in preparing and coordinating her errata sheets to her deposition. He would be leading Mrs. Peggy Harris into a perjurous trap, which in the Respondent's experience it is unlikely that Jaakan Williams would do.

A. I would say yes.
Q. Okay. So is the answer that you're not sure whether he knew what he was signing?
A. Again, I wouldn't think he would sign unless he knew what he was signing.
Q. Were you in the room when he signed them?
A. I don't—yeah, I think I was.
...
Q. After his deposition, after I had the opportunity to ask him questions, did Mr. Harris ever say to you that he had changes that he wanted to make to his testimony?
A. I believe he did.

*Id* (emphasis added).

Moreover, in response to the deposition reviews, Mr. Richard Harris and Mrs. Peggy Harris were both read the relevant portion of their transcripts and under oath made changes to their transcripts. This was confirmed by Mr. Richard Harris and reconfirmed by Mrs. Peggy Harris, wherein she repeatedly states under "penalties of perjury" in errata sheets after reviewing her testimony and providing corrections that "I do remember our attorneys coming over prior to Richard's deposition and reviewing his deposition testimony from the previous days with him, and making sure that the testimony he had given, and making all the corrections that Richard suggested." 2 *See* relevant portions of transcripts attached to the August 22, 2018 response. Neither Mr. Richard Harris nor Mrs. Peggy Harris were ordered to sign the errata sheets, and they were reviewed and read by or to both of them by either associate or senior counsel before they signed the errata sheets.

Since Mrs. Peggy Harris states in the July 8, 2018 Bar complaint under oath the opposite of what she contemporaneously stated and provided under oath on May 23, and July 6, 2017, and the opposite of what Jaakan Williams stated in his sworn deposition on April 11, 2018, either she is committing perjury in May 23 and July 6 of 2017, or on July 8 of 2018. Both incongruent statements cannot be true and honest.

As previously stated, the facts demonstrate that this Bar complaint was written by Mr. J.B. Harris as part of his continued efforts at extortion. As pointed out in the many prior filings, these documented and repeated, upon repeated patterns violate numerous rules of professional conduct as promulgated by the Florida Supreme Court, and have his client swearing to facts under penalty of perjury that are impossible to be true and honest.

This is another supplement to the response to the complaint of Margaret "Peggy" Harris, which in reality is a complaint by J.B. Harris. Consistent with the prior responses, these are further Bar violations by Mr. J.B. Harris.

As previously stated as pertaining to Mr. J.B. Harris. We did not want to have to report these violations, as this firm in its 23 years of existence, has never reported any fellow member of the Bar to the Bar or to law enforcement and has always resolved disputes and issues amicably and professionally. Regrettably and with deep disappointment and reluctance, in this instance, the consistent and now almost daily

2 In her sworn July 6, 2017 errata sheets, under penalty of perjury, Mrs. Peggy Harris states, "Our attorneys did review Richard's depo transcripts with him each day, and Richard clarified his answers and the changes he wanted made to the transcript." She also states, "In discussions with Richard, our attorneys prepared the errata sheets according to Richard's instructions and reviewed them with Richard. Richard verified that the errata sheets were consistent with the testimony he wanted to give." Finally, she states, "Richard knew exactly what he was signing because our attorneys reviewed the depo transcripts and errata sheets with Richard before he signed them, and Richard verified that the errata sheets were consistent with the testimony he wanted to give."

Invectives, media statements, direct threats and undisputed Bar and criminal violations leave no option.

Sincerely Yours,

Tim Howard

(Phillip) Tim Howard, J.D., Ph.D.

# EXHIBIT H

IN THE SUPREME COURT OF FLORIDA
(Before a Referee)

THE FLORIDA BAR,

Complainant,

vs. CASE NOS. SC19-488 & SC19-1570
TFB File Nos. 2016-00,682(2A) & 2019-00,088(2A)

PHILLIP TIMOTHY HOWARD,

Respondent. /

VOLUME 2
Pages 198 through 306

EXCERPT OF PROCEEDINGS: FINAL HEARING
Excerpt of Witnesses:
Phillip Timothy Howard

BEFORE: THE HON. PAUL S. BRYAN, Referee

DATE: Tuesday, December 8, 2020

PLACE: Zoom Teleconference

REPORTED BY: LAURA MOUNTAIN, Court Reporter, Notary Public in and for the State of Florida at Large

WILKINSON & ASSOCIATES
Certified Court Reporters
Post Office Box 13461
Tallahassee, Florida 32317
Wilkinsonandassociates@comcast.net
850.224.0127



APPEARANCES:

REPRESENTING THE COMPLAINANT:

SHANEE L. HINSON, BAR COUNSEL

The Florida Bar
Tallahassee Branch Office
651 East Jefferson Street
Tallahassee, Florida 32399-2300

REPRESENTING THE RESPONDENT:

ALFRED R. BRUNETTI, ESQUIRE

McElroy, Deutsch
Post Office Box 2075
Morristown, NJ 07962-2075

ALSO PRESENT:

Robin Kelly, TFB Paralegal

Karen Brown, TFB Investigator

* * *



I N D E X


PROCEEDINGS: PAGE:

WITNESSES:

PHILLIP TIMOTHY HOWARD

Direct Examination by Ms. Hinson 202
Cross Examination by Mr. Brunetti 256
Redirect Examination by Ms. Hinson 292

EXHIBITS:

TFB Exhibit No. 6 received in evidence 240
TFB Exhibit No. 7 received in evidence 245
TFB Exhibit No. 8 received in evidence 250
TFB Exhibit No. 9 received in evidence 254

CERTIFICATE OF REPORTER 306




EXCERPT OF PROCEEDINGS

THE REFEREE: Okay, are we ready?

MS. HINSON: Yes.

THE REFEREE: Who would be the next witness or the next person to testify?

MS. HINSON: Mr. Howard.

THE REFEREE: The Bar is calling Mr. Howard right now?

MR. HOWARD: Is that a question for me, Your Honor?

THE REFEREE: My question is who is calling Mr. Howard. Is it Mr. Brunetti that's calling Mr. Howard?

MS. HINSON: The Bar is.

THE REFEREE: The Bar is calling Mr. Howard. Okay, Mr. Howard, if you'd raise your right hand.

Thereupon,

PHILIP TIMOTHY HOWARD

was called as a witness, having been first duly sworn, was examined and testified as follows:

THE REFEREE: Okay, thank you.

MS. HINSON: Okay, we're going to get this echo taken care of. Okay, I think that is it.

THE REFEREE: We're having some of that echoing right now, but maybe it just went away.

10:30. I think they said 10:15, so give me about ten seconds.

It's 10:30. The hearing I was talking about that's 15 minutes is going to be at 10:30, so we have about 15 minutes.

MS. HINSON: Okay, just a moment. I'm going to put another document up.

THE REFEREE: While you're doing that, we can go off the record a minute. I'm just going to tell the attorneys something.

(Off the record)

BY MS. HINSON:

Q Okay, so Mr. Howard, the next email I have up -- and the dates may be out of order, so I do apologize, but I'm kind of going in the order that we have them listed in the trial exhibits. This is an email dated July 30th from you to Matt Hinson. Actually, let me -- okay, this is an email from you to Matt Hinson dated July 30th where you are advising him that she didn't respond to me. Is it safe to assume that the she is Ms. Peggy Harris?

A Yes.

Q Okay, and then you go on to say Mr. Harris has extensive history of Bar violations and extortion I was forced to report. Then you go on to say in the last paragraph, thank you for your availability. This case may



yet return to the firm.

So on July 30th, if you're advising Mr. Hinson that the case may return to the firm, then there was no assumption that J. B. Harris was working for you and this case was still with your firm; would that be accurate?

A No.

Q So how would the case return to the firm if Mr. J. B. Harris was working for you on May 30th?

A Mr. Harris is playing both ends against the middle. At this time not only is he getting $21,000 a month, he's also trying to shop cases that I own to other firms and get double paid. So this is -- it's hard to manage a gentleman like this. So the case is actually with the firm, but as far as the issues with J. B. Harris, we'll have to see how they work out.

So in our view J. B. Harris, in fact, financially, economically and everything, he's working for this firm. But the client doesn't see it that way and we have to go with how the client sees it, not how I see it.

Q Okay, now, you also said in this first paragraph that's highlighted, Mr. Harris has an extensive history of Bar violations. Mr. Howard, have you done a public records request on Mr. Harris's disciplinary history?

A I'm not talking about his history. I didn't say history. I'm not talking about history in the sense of Bar



violations that have been prosecuted; about a history of document violations which I have which you received showing extortion, threats, derogatory comments and extensive perjury that you're aware of, that you decided to go forward with --

Q Mr. Howard --

A -- this case regardless. That's what I'm referring to, his history of perjury.

Q Mr. Howard, okay, I just want to stop you because you said that I am aware of. I am aware of no such thing, so I just wanted to make that clear.

A Yes, you are. They're attached to your exhibits, so you are aware of those things.

Q I'm aware of no such violations, is what I'm clarifying.

A And I'm clarifying that you are, in writing. You have --

THE COURT REPORTER: I'm sorry, Mr. Howard. I'm sorry, I'm not getting what you said. Your voice went in and out.

THE WITNESS: You've received written and sworn statements that are perjurous, complete perjury, under oath, by both Mr. Harris, by Peggy Harris, and they are detailed with documents attached to Shanee Hinson and to the Florida Bar. The Florida Bar has --

BY MS. HINSON:



Q Right, Mr. --

A -- been fully aware of his perjury, fully aware of his Bar violations, and yet you're going forward with this, and that's why you're not calling him as a witness because you know how dirty he is.

Q Mr. Howard, let me clarify again, I am aware of no Bar violations. And just so we're clear, Bar Counsel does not determine whether Bar violations have been committed. The Referee and the Supreme Court makes that determination.

So my question to you was, have you done a public records request for the discipline history of Mr. Harris?

A I have not, but I think my counsel has.

Q So at the time that you sent this email to Mr. Matt Hinson, were you aware of any history of Bar violations --

A Yes.

Q -- that were determined by the Florida Supreme Court against Mr. J. B. Harris?

A No, not the way you phrased the question. That's not what I said here in the writing.

MS. HINSON: Okay, Your Honor, the Bar would like to enter this email into evidence as the Bar's Exhibit Number 8.

THE REFEREE: Any objection?

MR. BRUNETTI: I object, Judge, only as to

financial actions to benefit him, correct?
A Correct.
Q And among those actions were paying for his medical insurance, correct?
A Correct.
Q And front-loading some salary that he had agreed to receive from your firm, correct?
A Correct.
Q And to the best of your knowledge, after receiving those threats from Mr. Harris and not submitting to them, do you know whether or not Bar complaints were filed by Mr. Harris against you?
A Correct. He ghost wrote or wrote himself, I think, four Bar complaints. He wrote the Peggy Harris complaint, which she never read. He wrote the Kim Poling complaint, which she didn't do. He wrote his own complaint. And he's written complaints against other firms in Texas.
Q And there's been testimony, I believe, also, sir, that you advised the Florida Bar of Mr. J. B. Harris's actions and threats to file Bar complaints against you prior to this case being filed; do you recall that, sir?
A Yes.
Q And I'm trying to show you a document which is Bates stamped TFB Harris 47. Can you read this, Mr. Harris?
A Yes.



Q Okay, I can represent to you this is a seven-page letter that's attached to the Florida Bar's exhibits Bates stamped TFB Harris 47 through 53. Do you recall sending this document to the Florida Bar?
A Yes, I think there's several letters to this effect, along with attachments and sworn transcripts.
Q And you directed this to not only Ms. Hinson at the Florida Bar, but also to the State Attorney's office, correct?
A Yes, I did.
Q And at page two of this letter did you advise the recipients of this letter -- I'm sorry, I'm trying to mark that. I'll just put my cursor here if you can see that. At this bolded portion on page two, did you advise the Florida Bar and the other recipients of this letter that in an email on August 21st, 2018, J. B. Harris said to you, quote, Tim, I suggest you reactivate my insurance today or I will be at your office first thing tomorrow to spend a little quality time with you. You've placed the lives of my children at risk and that won't stand.
Did you advise the Florida Bar and the other recipients of this letter of that communication, sir?
A This happened the day before. That's just one of many.
Q Well, my question is, did you advise them of that



by submitting in this letter?
A Yes, I did.
Q On page five of the letter, which is Bates stamped 51, which I'm also trying to show, at the bottom of the page did you also advise the Florida Bar and the recipients of this letter that Mr. Harris, J. B. Harris, wrote to you on June 6, 2018 and said, quote, Tim, if you think you're having trouble with the Bar's investigation of your practices BWCI Pension Trustees, Limited, Ted Doukas, and everyone else who is still after you, you're going to walk into a shit storm if you steal the Goulds from me as my clients.
A Yes, that's --
Q I will file for costs and fee, sue for *tortuous interference and unpaid contributions to costs, fraud and everything else I can think of. I will also amend my complaint with the Bar and file a complaint against Neil, as well.
Did you include that passage in your letter to the Florida Bar, sir?
A Yes, as I also included a copy of the emails, themselves. And everything I've sent to the Bar is documented. What I find extraordinary is the Bar would allow this to take place, when the evidence is unmitigatedly and non-challengeable.
Q Did you receive a response from the Florida Bar to



this August 22nd, 2018 letter?
A No.
Q Did you receive any response concerning the threats that were made against you by J. B. Harris from the Florida Bar?
A No, the Florida Bar's sanctioning extortion, perjury and threats.
Q And it was subsequent to you sending this letter that on September 17th, 2019 the Florida Bar formally filed a Bar complaint against you, correct, sir?
A Correct, the Florida Bar knowingly is supporting perjury, fraud and extortion.
Q Were you ever given a reason why the claims that Mr. -- or the allegations that you made and the information that you gave -- made -- excuse me -- the allegations that you made and the information that you provided to the Florida Bar concerning J. B. Harris and his statements were never investigated?
A Correct.
Q So no investigator ever called you from the Florida Bar, correct?
A There was an investigator in the Miami office that called about these. I think there was something the Bar did with J. B., required him to do some professionalism, but I don't know how that turned out.

Q Sir, do you believe that you competently represented the Harrises in the tobacco litigation?

A More than competently. I think a 10 million dollar verdict based on all the work and the money we paid for them, and to make sure they were paid from the first settlement, and making sure that the evidence was sound, and the winning trial preservation demonstrates the competency of the performance.

Q Do you believe that you competently represented the estate of Mr. Harris in the probate litigation, aside from the issue of the misunderstanding or the communication which we have previously discussed ad nauseam?

A Aside from the eight-week delay, confusing between probate counsel covering it, and taking proper steps to make sure it was covered with no prejudice to the client, yes. This was a non-substantive issue that was again used by J. B. Harris and picked up by the Bar in order to extort.

Q Well, you're aware of the fact, sir, that on July 30th, 2018, that's when you formally received the email from J. B. Harris telling you and Matt Hinson to, quote, stand down, unquote, from taking any further representation of Ms. Harris, correct?

A Correct. We were ready to solve the problem, but this is part of J. B.'s extortion in response to the Gould sisters leaving him because of his nasty approach to them.



Q And you became aware that after that July 30th, 2018 email, only a few weeks later -- actually, on September 5, 2018, the probate case was actually refiled and reactivated, correct, sir?

A Correct, which we could have done at any moment.

Q And do you feel that you were diligent in your representation of the Harrises in relation to the tobacco litigation?

A Absolutely.

Q And do you feel that you were diligent, aside from your prior representations about the communication, with the Harrises in relation to their probate matter?

A Correct.

Q And do you feel that you adequately supervised Jaakan Williams while he was an employee of Howard and Associates?

A Completely. That is why, when there were mistakes made -- just like a football coach, because I'm a football coach -- you discipline your players. So he made some errors, he wasn't right on it. There was no condemnation. I actually -- after we were done, I said, Jaakan, are you okay? I was aggressive, but part of me is a football coach. I help with the high schools even now as a football coach.

So I might have been a little aggressive, but I hope he learned key issues you don't abandon, no matter how



close you get to the client. You make sure statute of limitations and key components are covered.

Q And in fact he worked for you for another year plus after that deposition of Mr. Harris, correct?

A Correct. And as far as I knew, we were fine. Apparently there's some residual bitterness there, but I've apologized to him, and I thought we were fine.

MR. BRUNETTI: I have nothing further, Your Honor.

THE REFEREE: Questions, if any?

MS. HINSON: Yes, Your Honor. Mr. Brunetti, do you mind taking your document down?

MR. BRUNETTI: Oh, sorry. Yeah.

REDIRECT EXAMINATION

BY MS. HINSON:

Q Mr. Howard, I'm going to work my way backwards. So first you talked about a letter you sent to -- or Mr. Brunetti asked you about a letter you sent to the Florida Bar detailing what you thought were threats against you by Mr. J. B. Harris. Was this a formal Bar complaint you filed against J. B. Harris or was this just your response to a complaint that you were required to submit to the Florida Bar?

A Both. You'll see both, my formal Bar complaint and my response, because the facts are intertwined.

Q Okay, well, I'm saying did you submit a formal Bar



complaint against Mr. J. B. Harris? It cannot be both. So I'm asking, did you submit your own complaint against J. B. Harris unrelated to this particular case?

A Yes, if you see -- if you see the title to the letter, it's got the Bar complaint of Howard versus Harris and the Bar response of Harris versus Howard. Peggy Harris versus Howard, Howard versus J. B. Harris. Both were cited --

Q Right, but --

A -- both were cited in the letter.

Q Okay, so this is your response to a complaint. You were sent a 15-day letter to respond to a complaint. This is your response. Did you fill out a Florida Bar complaint against J. B. Harris making your allegations and submit that to the Florida Bar?

A There's a Florida Bar number on that, yes.

Q Right. You cannot get a Florida Bar number unless you submit a complaint. So this is the Florida Bar number for the Peggy Harris case. I'm asking did you submit your own separate --

A No. If you look at the document -- excuse me.

Q -- Bar complaint against J. B. Harris? Okay, now, you said on numerous occasions J. B. Harris threatened to file a Bar complaint against you. When those threats were made, did you file a complaint at that time?

A Yes. You have the Bar complaint number, you have them referenced in my letters, both -- there's two Bar complaint numbers in each of the letters, both my response and also my Bar complaint. They both have Florida Bar numbers.

Q Okay, and what was the outcome of your Bar complaint against Mr. J. B. Harris?

A I don't know the full outcome. I do recall there was an interview on some portion. I do recall there was some disciplinary sanction; I don't know what it was.

Q Okay, so you would have received notice of the outcome if you filed a complaint; whether it was closed, whether there was a trial, whether it was assigned to a Referee. So I'm asking you, what were you notified regarding a complaint you filed against J. B. Harris?

A I was notified that there was professional sanctions issued against him. I don't recall what they were.

Q Okay. Just one moment.

A I do recall the Bar dismissed the direct complaint by Mr. J. B. Harris against me.

Q Just a moment, Mr. Harris (sic) while I put a screen up. So Mr. Harris -- I'm sorry. Mr. Howard, what I have up now is J. B. Harris, Jonathan B. Harris's profile page on the Florida Bar. Is this the man you recognize as J. B. Harris?



A Correct. And the last time I saw him he had cowboy boots and a hat on, but that's him.

Q Okay, so I'm going to go down here to where it says ten-year discipline history. Do you see where it says none?

A I don't know why the Bar has that, because I received notice that he was sanctioned, he had to do some professional --

MR. BRUNETTI: Your Honor, I know the strict rules of evidence don't apply, but I'm going to object to this. She can certainly question his knowledge, but this is not a business record that I'm aware of. I don't believe you can take judicial notice of it, and I believe it's an active web page. I would object to its use now.

THE REFEREE: I think it can be used to ask him questions, but I'm not accepting it as the truth of what is asserted. So she can use it for that purpose, to question him. Go ahead, please.

BY MS. HINSON:

Q Okay, so this is the Florida Bar website, and as you're aware, as a Florida Bar attorney, each attorney has a profile page which lists information. I'm sorry, I think I actually got off of it. And the Florida Bar lists a ten-year discipline history of any attorney, so I'm showing you this



page, and can you -- you've acknowledged that it says no discipline history. Now I want to show you a different page.

MR. BRUNETTI: Your Honor, I don't want to jump the gun, but it looks like Ms. Hinson is trying to show Mr. Howard's Bar discipline page. The relevance at this point --

MS. HINSON: No, no, Mr. Brunetti, I'm not trying to show his -- I'm trying to show his Bar profile page, not his discipline page.

BY MS. HINSON:

Q Okay, Mr. Howard, this is your actual profile page. And can you tell me what it says here for ten-year discipline history?

A None.

Q Okay. And have you had any discipline in the last ten years?

A Not that I'm aware of.

Q Okay, so is it fair to say that if the Bar has listed no discipline history in ten years that means the attorney has had no discipline history in the last ten years?

MR. BRUNETTI: Your Honor, same objection. Now she's using the material that's listed on the website as opposed to querying Mr. Howard's knowledge. She's now asking for the veracity of this website to be admitted through Mr. Howard's testimony by making him



extrapolate.

THE REFEREE: Sustained. Objection sustained.

BY MS. HINSON:

Q Okay, Mr. Howard, is it your testimony that you received notification from the Florida Bar that Mr. Howard -- I'm sorry -- Mr. J. B. Harris had been sanctioned?

A Yeah, I received an email from the investigating person that they were recommending that he go to professional training. I don't know what happened with that.

Q Okay, so you're talking about a course, not a sanction, which is -- which we need to clarify is different. You're saying you were notified that he took some course through the Florida Bar?

A I don't know. I don't know how your sanctions work. I know usually when you're told to do something by the Bar it's a type of sanction. I don't know whether it's a reprimand, whether it's instruction, whether it's -- it's a sanction.

Q Okay, so I think you're confused. A sanction is not meted out by the Florida Bar. That is done by the Florida Supreme Court.

MR. BRUNETTI: Your Honor, I'm going to object to the testimony by Ms. Hinson concerning the inner workings of the Florida Bar.

MS. HINSON: Your Honor --

# EXHIBIT I

HOWARD JUSTICE

Howard & Associates
Attorneys at Law, P.A.
Dr. Tim Howard, J.D., Ph.D., Senior Partner*
Florida Supreme Court Certified Mediator

RECEIVED
AUG - 3 2018
THE FLORIDA BAR

Tallahassee, Florida Office:
1415 East Piedmont Drive, Suite 5
Tallahassee, Florida 32308
Ph: (850) 298-4455
Fax: (850) 216-2537
tim@howardjustice.com

Jacksonville, Florida Office:
444 E. Duval Street
Jacksonville, Florida 32207
Ph: (904) 446-9817
Fax: (904) 446-9825
www.howardjustice.com

August 3, 2018

VIA HAND-DELIVERY

Shanee L. Hinson, Bar Counsel
651 East Jefferson Street
Tallahassee, Florida 32399-2300

Jack Campbell, State Attorney
301 South Monroe Street, Suite 475
Tallahassee, Florida 32399-2300

Re: Sandra Fulop v. Phillip Timothy Howard, TFB File No. 2016-00,682(2A); Violation of Section 836.05, Florida Statutes, Crime of Extortion Including Potential Co-Conspirators.

Dear Bar Counsel Hinson, State Attorney Campbell:

On July 9, 2016, Mrs. Sandra A. Fulop and Mrs. Dana F. Hall, years after all accounting and amounts were reviewed, accepted and settled, conspired to demand $355,031 (Exhibit A, attached), in order to drop the above referenced complaint. The representation concerned a former client, Mr. Jason Hall, in which representation ceased eight (8) years earlier, on August 18, 2008 for the workers compensation and "in any other fashion or matter" and completed mediation of dispute and divorce from Mrs. Dana Hall on September 2, 2008. Letter documenting Completion of Representation attached as Exhibit B. The former client, Mr. Jason Hall, was deceased on May 3, 2012. The actual client, Mr. Jason Hall never had any complaints or issues.

Moreover, all funds and accounts were reviewed, accounted for, accepted and settled by the Personal Representative of the Estate, Mrs. Sandra Fulop and the ex-wife, Mrs. Dana Hall on December 23, 2013. *See* Correspondence and accounting in Cumulative Exhibit C, attached. When the extortion demand arose on July 9, 2016, further details may have been available for the accounting to add further clarity, but Mrs. Fulop and Mrs. Dana Hall would not return the original files, despite a formal demand. Letter to Mrs. Fulop and Mrs. Dana Hall attached as Exhibit D.

*Admitted to practice in Florida, the District of Columbia, Northern, Middle, and Southern United States District Courts of Florida, the United States Court of Appeals for the 11th Circuit, and the United States Supreme Court. Ph.D, Northeastern University, Law, Policy & Society. Former Visiting Health Law, Bioethics, and Human Rights Scholar and Constitutional Law, Media & Politics and Judicial Process Instructor at Boston University. Former Director of and Professor with Northeastern University's Law & Policy Doctorate Program. President of Cambridge Graduate University International.



In summary, this is a demand of $355,031 to drop the above-referenced complaint for matters in which they were not parties, had already reviewed accounts and accepted the final amounts over two and one-half (2-1/2) years earlier. In addition, without legal justification, they would not return the original files, which included accounting documents. These actions without legal justification, for their own pecuniary advantage, and actual malice by Mrs. Fulop and Mrs. Hall, are a violation of section 836.05, Florida Statutes crimes against extortion for maliciously threatening to continue the above-referenced action if they were not paid $355,031.[1]

We did not want to have to report this criminal violation, as this firm in its 23 years of existence, has never reported any former client to law enforcement and has always tried to resolve disputes and issues amicably and professionally through overcoming evil with good. There seems to be a rash of these types of actions now against the firm, regrettably and with deep disappointment and reluctance, in this instance, since the above-reference matter is continuing, and the criminal violation is at the root of this mater, there leaves no option.

Sincerely Yours,

(Phillip) Tim Howard, J.D., Ph.D.

1 Whoever, either verbally or by a written or printed communication, maliciously threatens to accuse another of any crime or offense, or by such communication maliciously threatens an injury to the person, property or reputation of another, or maliciously threatens to expose another to disgrace, or to expose any secret affecting another, or to impute any deformity or lack of chastity to another, with intent thereby to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will, shall be guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. Under Florida Statute 836.05, the crime of Extortion is committed when a person maliciously threatens to: Accuse another of any crime or offense; Injure the person, property or reputation of another; Expose another to disgrace; Expose any secret affecting another; or Impute any deformity or lack of chastity to another, with the intent to: Extort money or any pecuniary advantage; or Compel any person to do any act or refrain from doing any act against their will. Actual Malice versus Legal Malice. Although it is a subtle distinction, under the Extortion statute, the prosecutor is required to prove the threat was committed with Actual Malice, which means "means ill will, hatred, spite, evil intent." This is in contrast to what is known as Legal Malice, which only requires that an act be committed intentionally and without any lawful justification. Penalties for Extortion. The crime of Extortion is a Second-Degree Felony in Florida and is punishable by up to 15 years in prison, 15 years of probation, and a $10,000 fine. *Calamia* v. *State*, 125 So. 3d 1007 (Fla. 5th DCA 2013) (Actual malice is the standard. "A threat is malicious if it is made intentionally and without any lawful justification."); *McKee* v. *State*, 715 So.2d 101 (Fla. 5th DCA 1998) (Conviction upheld for threats that defendant will destroy you, destroy your business, accusing of drug use, and threatening to make accusations to a federal agency.). "Maliciously" means wrongfully, intentionally, and without legal justification or excuse. A threat is "malicious" for purposes of extortion statute if it is made intentionally and without any lawful justification. It is not necessary that the person accused of extortion have the ability to carry the threat out. Threats to cause mental or psychological injuries are generally prohibited under extortion statute. Therefore, if you threatened to expose someone's affair to their spouse unless they paid you $1,000,000, the threat could be considered extortion for causing a psychological injury or because it was done for a monetary gain. This is extortion even if you did not know how to contact their spouse. Generally, a claim of extortion cannot be based on a threat to do an act which a person has a lawful right to do, but you may not threaten to undertake an otherwise legal act for your own pecuniary advantage. An attorney that repeatedly engages in conduct considered extortion can be a violation of the Florida RICO Act, pursuant to section 772.04, Florida Statutes. This is also a potential violation of 18 USC 875(b), since there is an attempt to extort something of value and use of a transmission through interstate commerce (text, internet and federal reserve clearing house in Dallas, Texas) in order to facilitate such extortion.





Gmail by Google

Tim Howard <tim@howardjustice.com>

**Re: Meeting to Resolve Concerns**
1 message

Sandy Fulop <safpassport@yahoo.com> Sat, Jul 9, 2016 at 11:14 AM
Reply-To: Sandy Fulop <safpassport@yahoo.com>
To: Tim Howard <tim@howardjustice.com>
Cc: Dana Dane <dfhall69@yahoo.com>

Tim, thank you for your efforts by phone messages to set a date and time to meet to allow a more robust analysis or our respective files.

There is no need to meet because you already have in hand a copy of what we'd be bringing to such a meeting.

Now is the time for you to honor the contract and send me a certified check in the amount of $355,031. This figure represents the principal plus the interest ($1,667/mo x 93 months, i.e., October 2008 thru June 2016) as established in the terms of the contract signed by you and Jason on September 5, 2008.

Please let me know when you have done this.

Sandra A Fulop and Dana F. Hall

On Friday, July 8, 2016 2:51 PM, Tim Howard <tim@howardjustice.com> wrote:

Upon review of our file, we can verify what is needed to address your concerns on accounting.

If you can bring your complete file as well, this will allow a more robust analysis so that you are satisfied with the results.

Let us know a date and time to meet. We have left messages on your respective phones to coordinate such a meeting.

*Tim Howard*

Professor Tim Howard, J.D., Ph.D.
Howard & Associates, P.A.

**Exhibit F**

Howard & Associates
Attorneys at Law, P.A.
Dr. Tim Howard, J.D., Ph.D., Senior Partner*
Florida Supreme Court Certified Mediator

8511 Bull Headley Road, Suite 405
Tallahassee, Florida 32312
Telephone: (850) 298-4455
Telecopy: (850) 216-2537
email: ptim@aol.com

Northeastern University
Law & Policy Doctorate Program, Director
75 Nightingale Hall
360 Huntington Avenue
Boston, Massachusetts 02215-5000
Telephone: (617) 373-6076

September 2, 2008

Jason Hall
6600 Donnerail trail
Tallahassee, FL 32308

Re: Completion of Representation.

Dear Mr. Hall:

This letter is to verify that this firm completed its representation of your interests in the workers compensation claim against Ferrell Roofing, Inc., and in any other fashion or matter, on August 18, 2008, and completed mediation of your dispute with Dana Hall on September 2, 2008. Consequently, as of September 2, 2008, this firm has no further attorney/client relationship with you.

By signing below you agree and affirm under oath and under penalty of perjury that this firm has professionally and competently represented you; that this firm has no professional liability to you, and that as of September 2, 2008, this firm is not representing you or your interests in any fashion.

Sincerely yours,

Tim Howard, J.D., Ph.D.
For the Firm

PTH/kmm

Jason Hall 9-5-08
Jason Hall Date

Notary Public: Keven Marie Mathews

KEVEN MARIE MATHEWS
MY COMMISSION # DD 786557
EXPIRES: May 7, 2012
Bonded Thru Notary Public Underwriters

*Admitted to practice in Florida, the District of Columbia, Northern, Middle, and Southern United States District Courts of Florida, the United States Court of Appeals for the 11th Circuit, and the United States Supreme Court. Ph.D, Northeastern University, Law, Policy & Society. Former Visiting Health Law Scholar and Constitutional Law, Media & Politics and Judicial Process Instructor at Boston University. Professor of Law and Policy and Director of Northeastern University's Law & Policy

**Howard & Associates**
**Attorneys at Law, P.A.**
Dr. Tim Howard, J.D., Ph.D., Senior Partner*
Florida Court Certified Mediator

Howard & Associates, P.A.
8511 Bull Headley Road, Ste. 405
Tallahassee, Florida 32312
Telephone: (850) 298-4455
Telecopy: (850) 216-2537
tim@howardjustice.com

Cambridge Office
8 Museum Way Ste. 2407
Cambridge, MA 02141
(857) 277-0990
tim@howardjustice.com

Cambridge Graduate University
One Broadway, 14th Floor
Cambridge, MA 02142
(617) 475-0201
(877) 645-6225 (6-GLOBAL)
president@cguglobal.net

December 23, 2013

Sandy Fulop
6600 Donerail Trail
Tallahassee, FL 32308

**RE: Full and Final Distribution of Jason R. Hall Non-refundable, Non-Client Funds**

This letter is to document and finalize this firm's distribution of any non-client funds held for Jason R. Hall. After providing Sandy Fulop, as personal representative to the estate of Jason R. Hall and Dana Hall as the legal guardian of the minor children (heirs to the estate of Jason R. Hall), a detailed briefing of all remaining non-client funds, as well as having the opportunity for independent counsel to review and advise, you have agreed that the outstanding balance is [redacted] If any outstanding medical bills are satisfied without any further payment, a portion of the amount of those bills will also be refunded to you as well.

Sandra A. Fulop
Sandy Fulop as Personal Representative to the Estate of Jason R. Hall

Sincerely yours,

Tim Howard, J.D., Ph.D.

*Admitted to practice in Florida, the District of Columbia, Northern, Middle, and Southern United States District Courts of Florida, the United States Court of Appeals for the 11th Circuit, and the United States Supreme Court. Ph.D, Northeastern University, Law, Policy & Society. Former Visiting Health Law, Bioethics, and Human Rights Scholar and Constitutional Law, Media & Politics and Judicial Process Instructor at Boston University. Former Professor and Director of Northeastern University's Law & Policy Doctorate Program. President and Professor Cambridge Graduate University.

# EXHIBIT J

Get on the path to results today.

J.B. HARRIS
P.A.

786-303-8333



Legal Expertise You Can Rely On When Filing or Defending a Bar Complaint

FREE CONSULTATION

## ABOUT J.B. HARRIS P.A.

J.B. Harris is a Florida lawyer with more than 36 years experience in complex litigation. Over the years he has developed a specialty in holding lawyers accountable for unethical conduct, by assisting clients and others to prepare and file Bar complaints against unscrupulous attorneys for violations of the Rules Regulating the Florida Bar. Such unethical practices include stealing a client's money held in trust, abandoning a client in the middle of a case, charging a client advance costs under contingency fee contracts, charging exorbitant fees, over-billing hourly rates, settling a case without a client's consent, failing to appear at hearings, and by allowing law office staff to practice law without a license, to name a few.

J.B. Harris also defends lawyers, who have been wrongfully accused of unethical conduct and who have had Bar complaints filed against them by disgruntled clients .

If you feel you have either been harmed by a lawyer's unethical practices, or you are a lawyer who is the victim of a client's retaliatory Bar complaints, I am here to represent you

FOR A FREE CONSULTATION, CALL, TEXT OR EMAIL J.B. HARRIS AT 786-303-8333, OR JBHARRISESQ@GMAIL.COM.

A Focus on Results

We know that legal action can sometimes be overwhelming. J.B. Harris is dedicated to providing you help in language that you can understand. If you don't feel like you understand your options, just ask, and

Get Started Today

Don't wait! Contact us for a **free phone consultation** at 786-303-8333, or at jbharrisesq@gmail.com. Let us help you figure out your best next steps are. The sooner you have a plan of action, the better your

he will work to find an explanation that works for you.

chances of taking the correct steps to get the results you want.

J.B. Harris P.A.

786-303-8333

Copyright © 2020 J.B. Harris P.A. - All Rights Reserved.

Powered by GoDaddy Website Builder

## PART FOUR

## LIST OF WITNESSES SUPPORTING ALLEGATIONS

Honorable Paul S. Bryan
145 NE Hernando Avenue
Lake City, Florida 32055
(386) 758-2147 (o)

Phillip Timothy Howard, Esq.
3122 Mahan Drive, Suite 801
Tallahassee, FL 32308
(850) 510-6021 (c)
tim@howardjustice.com

JB Harris, Esq.
3127 Ponce De Leon Blvd.
Coral Gables, Florida 33134
(786) 303-8333
Jbharrrisesq@gmail.com
Jbharrispa.com

Kimberly Poling 3432 NE 15th Ave.
Oakland Park, Florida 33334
(561) 573-7008
kimberlypoling29@yahoo.com

Margaret "Peggy" Harris
Havana, Florida

Neil Epstein
Tallahassee, Florida
(609) 980-1772

Alfred Brunetti, Esq.
McElroy Deutsch
1300 Mount Kimble Avenue
Morristown, New Jersey 07962-2075
((973) 425-8855 (o)
abrunetti@mdmc-law.com

John P. Leonard, Esq.
McElroy Deutsch
1300 Mount Kimble Avenue
Morristown, New Jersey 07962-2075
(973) 425-8855 (o)
jleonard@mdmc-law.com

Rocco Magni, Esq.
Susman Godfrey
Houston, Texas
(713) 653-7861 (o)
rmagni@susmangodfrey.com

Ashish Mahendru, Esq.
Mahendru, PC
639 Heights Blvd.
Houston, Texas 77007
(713) 571-1519(o)
amahandru@thelitigationgroup.com

Martin Shellist, Esq.
1700 Post Oak Blvd.
2 Blvd Place, Suite 300
Houston, Texas 77056
(713) 714-5355 (o)

Edward Ondarza
1700 Post Oak Blvd.
2 Blvd Place, Suite 300
Houston, Texas 77056
(713) 714-5355 (o)

Witnesses reference in the transcripts and documents filed with the Court and the Florida Bar

# ATTACHMENT IV

STATE OF FLORIDA
JUDICIAL QUALIFICATIONS COMMISSION
Post Office Box 14106
Tallahassee, Florida 32317
Tel: (850) 488-1581
www.floridajqc.com

FOR JQC USE ONLY

# COMPLAINT AGAINST A JUDGE

**INSTRUCTIONS**: This form is designed to provide the Commission with the information required to make an initial evaluation of your complaint and to begin any necessary inquiry or investigation into your allegations.

Please print or type your information onto this form. Any materials or documents that you provide to the Commission will become part of the Commission's files, and will not be returned or copied to you. The Commission will contact you if additional information or materials are needed.

After you complete this form, please sign and date the certification page, and mail it, along with any attachments, to Post Office Box 14106, Tallahassee, Florida 32317. Please be aware that the Commission cannot accept complaints by fax, email, or telephone. You will receive an acknowledgement letter when the Commission has received your complaint. The Commission meets approximately every six weeks, and reviews complaints on a first-come-first-served basis. You will be notified in writing of the outcome of your complaint, subject to the limits of confidentiality.

**IMPORTANT**: **The Judicial Qualifications Commission has no authority to review, reverse, or modify a judge's decision or order, and cannot intervene in any way in a court case.** Similarly, the Commission does not have the authority to remove a judge from your case. Commission staff is not permitted to provide you with any legal advice or opinions.

The Commission has jurisdiction over Justices of the Florida Supreme Court, and Judges of the District Courts of Appeal, County Courts, and Circuit Courts. The Commission does not have jurisdiction over special masters, magistrates, hearing officers (including: traffic hearing officers, worker's compensation hearing officers), administrative law judges, or federal judges.

**YOUR CONTACT INFORMATION** (Please print legibly):

Name: Phillip Timothy Howard Phone Number: (850) 510-6021

Mailing Address: 3122 Mahan Drive, Suite 801

City, State, Zip Code: Tallahassee, Florida 32308 tim@howardjustice.com

**JUDGE'S INFORMATION**:

Judge's Name: Paul S. Bryan County: Columbia

Address: 145 NE Hernando Avenue

City, State, Zip Code: Lake City, Florida 32055

**CASE INFORMATION**

If your complaint involves a court case, please provide the following information.

Case Name: Fla. Bar v. Howard

Case Number (include all letters and numbers): Case Nos: SC19-488 and SC19-1570

County: Columbia

*If you were represented by an attorney, please provide their contact information.*

Attorney's Name: Alfred Brunetti

Address: McElroy Deutsch, 1300 Mount Kimble Avenue

City, State, Zip Code: Morristown, New Jersey 079262-2075

Phone: (973)425-8855

**WITNESS INFORMATION**

In this section, provide the names and contact information for any other persons who may have witnessed the improper conduct. (Attach additional sheets if necessary).

1. Name: See Attached

   Relationship to case: ______

   Phone number: ______

2. Name: ______

   Relationship to case: ______

   Phone: ______

**ADDITIONAL DOCUMENTS**

Attach copies of any relevant documents which you believe support your claim that the judge has engaged in judicial misconduct or has a disability. Please do not staple or bind documents. **Retain the originals or copies of any documents submitted. All submitted materials become property of the Commission and will not be returned**.

## STATEMENT OF FACTS

Please provide, in as much detail as possible, the information you believe constitutes judicial misconduct or disability. Include names, dates, places, addresses, and telephone numbers which may assist the Commission. Attach additional pages as necessary.

See Attached

**IN FILING THIS COMPLAINT, I UNDERSTAND THAT FLORIDA LAW REQUIRES THAT COMPLAINTS FILED WITH THE COMMISSION MUST REMAIN CONFIDENTIAL, AND THAT ALL INQUIRIES BEFORE THE COMMISSION ARE CONFIDENTIAL, UNLESS AND UNTIL PROBABLE CAUSE IS DETERMINED AND FORMAL CHARGES ARE FILED.**

UNDER THE PENALTY OF PERJURY, I declare that I have read and understand this complaint form, and the above information is true, correct, complete, and submitted of my own free will.

12/07/2021

Date

Complainant's Signature

*Please note that the Commission only has authority to investigate allegations of judicial misconduct or permanent disability by persons holding state judicial positions. The Commission has no jurisdiction over, and does not consider complaints against, Federal Judges, magistrates, law enforcement, clerks, court personnel, attorneys, etc.*

***The Commission does not act as an appellate court and cannot review, reverse or modify a decision or ruling made by a judge in the course of a court proceeding.***

Please return the completed complaint form by regular US Mail, and direct all future communications, to:

Florida Judicial Qualifications Commission
Post Office Box 14106
Tallahassee, Florida 32317

**COMPLAINT AGAINST HONORABLE JUDGE PAUL S. BRYAN**

## I. DOCUMENTATION OF REPEATED NOTICED OF SUBSTANTIAL CRIMINAL AND FRUADULENT ACTS, AND SUBSTANTIAL BAR VIOLATIONS BY ATTORNEY JB HARRIS

Honorable Paul S. Bryan knows of and was specifically provided extensive written evidence and received numerous notices in writing documenting under oath, substantial criminal and fraudulent acts upon the Florida Bar, as well as extensive violations of the Rules of Professional Conduct, by Attorney J.B. Harris, on the following dates:

| | |
|---|---|
| June 11, 2018. | Exhibit A. |
| June 25, 2018. | Exhibit B. |
| July 13, 2018. | Exhibit C. |
| August 7, 2018 | Exhibit D. |
| August 22, 2018. | Exhibit E. |
| August 28, 2018. | Exhibit F. |
| March 18, 2021. | Exhibit G. |

Honorable Paul S. Bryan was specifically informed in writing and in sworn testimony of perjury, fraud, extortion, and numerous Florida Bar violations by attorney J.B. Harris, Esq., and his scheme of perjury and fraud with his duped client, Peggy Harris.

As an excerpt, consider the following admission of fraud and perjury found in Exhibit F, addressing Bar Complaint 2019—00,088(2A). This is an acknowledged perjurious, false and fraudulent Bar Complaint that was nevertheless not reported for appropriate prosecution by authorities by the Judge and permitted to be pursued. Under oath the complainant admits she committed perjury in her Bar Complaint that is riddled with false and fraudulent statements. As a limited example, this Bar Complainant states:

> Q And so **when this was filed back in 2019**, April of 2019 **you had not read the Bar complaint at that time?**
> A Correct.
> Q And you would have not been able to tell your lawyers whether -- what was in the Bar complaint was true and correct or contained false statements because you hadn't read it?
> A Correct.
> **Q And we now know that it contains statements that you believe to be false?**
> MR. DIAZ: Form.
> BY MR. MONDE:
> **Q Correct?**
> **A Correct.**
> **Q Statements that you believe to be fraudulent, correct?**
> MR. DIAZ: Form.
> **THE WITNESS: Correct.**
> Q. Now that you know that, what steps have you taken to correct that?
> A. At this point nothing that I recall.

*See* transcript attached to March 18, 2021, Exhibit F, *infra,* pp. 125-126. The Honorable Paul S. Bryan knows that the Peggy Harris Bar Complaint was never read by Peggy Harris, and was not drafted by Peggy Harris, but by J.B. Harris, despite Peggy Harris filing the Bar Complaint under oath and under penalty of perjury. The Honorable Judge Bryan knows that Pegggy Harris under oath acknowledges that the Bar Complaint she signed violated criminal perjury and has extensive false and fraudulent statements. Exhibit E. Peggy Harris admits that her Bar Complaint is fraudulent, prepared and submitted for her signature by her attorney JB Harris, and in response her counsel raised her 5th Amendment rights[1]:

[1] MR. ANDERSON: Okay. Well, I'm going to respectfully disagree with you. And to the extent you ask her about her testimony related to her errata sheets, **I'm going to have to instruct her not to answer on the grounds that she could be incriminating herself**.
**MR. MONDE: Then have her take the Fifth.**

Q. **You're saying that you signed the Bar complaint without reading it?**
A. **Correct.** I know that's—that is my fault. I'm sorry I didn't read it.
. . .
Q. Part five says that, "Signature.): **Under penalties of perjury, I declare that the foregoing facts are true, correct and complete." Do you see that?**
A. I do.
Q. And then your name is printed, correct?
A. Correct.
Q. **And then you signed your name, correct?**
**A. You understood when you signed this that you were under penalty of perjury declaring the facts in the statement to be true, correct and complete?**
**A. Correct.**
Q. There was no doubt in your mind about what you were signing, correct?
A. Apparently not—apparently so.
Q. I want to make sure I understand your answer.
A. Well, I—**I did not read it, so I was wrong** in not—putting this down, so—
Q. And I appreciate you're acknowledging that that was wrong. And I want to understand from you why you agree that was wrong to do. You understood when you signed this that you were taking an oath to tell the truth –
A. Correct.
Q.—Just like the oath you took this morning?
A. Right.
Q. And you understood the importance of an oath in a legal proceeding, correct?
A. Yes.
Q. I mean, our legal system, you agree, depends on people telling the truth, correct?
A. Correct.
Q. Our legal system depends on people telling the full truth and not being deceptive by leaving out certain key parts, correct?
A. Correct.
. . .
**Q. You understand what perjury means, right?**
**A. Yes.**
**Q. You understand the penalties of perjury?**
**A. Yes.**
**Q. You understand that in some context perjury can be a criminal offense?**
A. Um-hum.
Q. Yes?
**A. Yes.**
**Q. Would you want any part of a judgment that you believed was based on false information?**
**. . .**
**A. No.**
**Q. That would be wrong?**
A. Right.
Q. Would you want to be **any part of a judgment that you believed was infected by or tainted by fraud?**
A. I wouldn't like it.
**Q. Would you want any part of it?**
**A. No.**
. . .
Q And so **when this was filed back in 2019**, April of 2019 **you had not read the Bar complaint at that time?**
A Correct.
Q And you would have not been able to tell your lawyers whether -- what was in the Bar complaint was true and correct or contained false statements because you hadn't read it?
A Correct.
**Q And we now know that it contains statements that you believe to be false?**
MR. DIAZ: Form.

BY MR. MONDE:
**Q Correct?**
**A Correct.**
**Q Statements that you believe to be fraudulent, correct?**
MR. DIAZ: Form.
**THE WITNESS: Correct.**
Q. Now that you know that, what steps have you taken to correct that?
A. At this point nothing that I recall.

*Id.,* at pp. 23-27, 84-85, 125-126.

In the August 22, 2018, letter to Respondent and State Attorney, Jack Campbell, Exhibit D, provided to the Honorable Paul S. Bryan on March 18, 2021, Complainant wrote specifically that:

Dear Counsel Hinson, and State Attorney Campbell:

In response to and in support of the above-referenced inquiry/complaints, please consider the following:

The Margaret "Peggy" Harris' Inquily/Complaint under PART *FNE,* is submitted with following statement:

**"Under penalties of perjury, I declare that the foregoing facts are true, correct and complete." Signed by Margaret "Peggy" Harris, on 7-8-18.**

This is an official proceeding under Florida Bar rules and regulations, and based on the language, type set, legal research, attached documents, prior threats to extort, and consistency in his attacks in two other bar complaints, was prepared and ghost written under the guidance, control and direction of Florida attorney, Mr. J.B. Harris.

Under section 837.02(1), Fla. Stat., when perjury takes place in an official proceeding, such as in a Florida Bar complaint, the **criminal** offense of peljury is a third-degree felony punishable by up to 5 years in prison and a $5,000 fine. If this complaint is considered an unofficial proceeding, perjury would be considered a misdemeanor of the first degree, punishable by up to one (1) year in jail, (1) year of probation, and $1,000 in fines. Finally, if this complaint is considered before a public servant in the performance of his or her official duty, perjury would be a misdemeanor of the second degree under section 837.06, Fla. Stat.

Unfortunately for Mrs. Peggy Harris in acceding to Mr. J.B. Harris' agenda and writings, she has sworn to this bar complaint under penalties of perjury. The **exhibits attached to this 7-8-18 sworn statement** are dated 7/30/18, 7/10/18, 7/30/18, 7/30/18, **and 7/30/18, respectively.** *See* Exhibit A, Exhibit D, Exhibit E, and Exhibit F. **They are all printed from Mr. J.B. Harris' gmail account, jbharrisesg@gmail.com, on July 31, 2018, July 30, 2018, and August 3, 2018. These emails are not from Mrs. Peggy Harris.** While these exhibits do not constitute a bar violation, they are material to Mrs. Peggy Harris' (Mr. J.B. Harris') claim of such a violation.

**This is absolute perjury as one cannot swear under penalty of perjury to events that have not happened, and one can't believe that what one swears to is true when they have not happened. Thus, they are false, and all statements and attachments were material to the claim.** It is also **too late to recant this perjury as the complaint and response have taken place.** This is the essence of peljury and a criminal violation under section 867.02(1), Fla. Stat. This may also violate section 837.021(1), Fla., Stat., since there are two or more material statements in official proceeding under oath that contradict each other and may constitute a second-degree felony as well.

Moreover, it is a bar violation to present false evidence. Under rule 4-1.2(d), **"A lawyer shall not counsel a client to engage, or assist a client, in conduct the lawyer knows or reasonably should know is criminal or fraudulent."** *See* Florida Bar Ethics Opinion 75-19. It is also a bar violation to offer evidence that the lawyer knows to be false and should disclose that the evidence

is false to the tribunal. Rule 4-3.3(b). It is fair to state that Mr. J.B. Harris authored and prepared the entire bar complaint and is using Mrs. Peggy Harris as a front and tool for his own extortionate and denigrating agendas. In that instance, he has violated Rule 4-3.3(a)(l), (2), and (4), which require candor toward the tribunal, and has made a false statement, and has failed to correct or disclose a false statement of material fact or offered evidence that the lawyer knows to be false. In addition, Mr. J.B. Harris must report and disclose that this is his bar complaint.

Mr. J.B. Harris is consistently threatening and extorting. Just yesterday, pertaining to health insurance that this firm pays for Mr. J.B. Harris of approximately $2,500 a month, that was understood to be automatically deducted from the account, and was rectified prior to the firm being aware his threat and extortion, Mr. J.B. Harris wrote:

"Tim, I **suggest you reactivate my insurance today** **or I will be at your office first thing tomorrow to spend a little quality time with you.** You've placed the lives of my children at risk and that won't stand."

August 21, 2018 email from Mr. J.B. Harris, attached. Exhibit F, attached.[2]

---

[2] In Exhibit F, it was clarified as follows:

> The facts demonstrate that this bar complaint was written by Mr. J.B. Harris as part of his continued efforts at extortion. As pointed out in the many prior filings, these documented and repeated, upon repeated patterns violate the following rules of professional conduct as promulgated by the Florida Supreme Court:
>
> A lawyer must not threaten opposing parties with sanctions, **disciplinary complaints,** criminal charges, or additional litigation to gain a tactical advantage. *See* Florida Supreme Court, Professionalism Expectations: Expectation 3.18; and Rules Regulatingthe Florida Bar: Rule 4-3.4(g).
>
> A lawyer must not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter. *See* Florida Supreme Court, RulesRegulating the Florida Bar: Rule 4-3.4(g).
>
> A lawyer must not present, participate in presenting, or threaten to present **disciplinarycharges** under these rules solely to obtain an advantage in a civil matter. *See* Florida Supreme Court, Rules Regulating the Florida Bar: Rule 4-3.4(h). 4
>
> To opposing parties and their counsel, a lawyer should act with **fairness, integrity, andcivility,** not only in court, but also **in all written and oral communications.** (Oath of Admission)
>
> Candor and civility must be used in all oral and written communications.(Professionalism Expectations: Expectation 2.2)
>
> **A lawyer must avoid disparaging personal remarks** or acrimony toward opposing parties, counsel, third parties or the court. (Professionalism Expectations: Expectation 2.3). **A lawyer should be civil and courteous in all situations, both professional and personal, and avoid conduct that is degrading to the legal profession.** R. Regulating Fla. Bar 3-4.3. 5
>
> **A lawyer's communications in connection with the practice of law,** including communications on social media, **must not disparage another's character or competence** or be used to inappropriately influence or contact others. (Professionalism Expectations: Expectation 2.5); *see* R. Regulating Fla. Bar 4-8.4(d).
>
> **A lawyer must not criticize or denigrate opposing parties,** witnesses, or the court **to clients, media, or members of the public.** (Professionalism Expectations: Expectation 4.20); see R. Regulating Fla. Bar 4-8.2(a) and 4-8.4(d)).

*Id.*

Honorable Paul S. Bryan knew of these Bar violations yet in violation of his legal and Code of Judicial Conduct mandatory obligations, *see* Section III, *supra*., did nothing to report them for investigation.[3] Morally, and

---

[3] In the June 11, 2018, filing with Shanee Hinson and Jack Campbell, State Attorney, Exhibit A, provided to Honorable Judge Paul on March 18, 2021, the extensive Florida Bar violations and extortion were detailed and documented as follows:

> Even though $11,583.98 was paid to Mr. Harris on December 28, 2017, on January 29, 2018, Mr. Harris threatened a Bar complaint and criminal and civil action without lawful justification for his own pecuniary advantage, in order to receive $2,000 that day, which indeed was wired that day, stating: "If **you don't throw me another miniscule $2,000 lifeline TODAY, <u>I'm filing a bar complaint against you and your lap dog Ankur.</u> I've called to make an appointment to meet with the Bar tomorrow in person.** I'm driving to Tallahassee at first light. I don't care how sick I am." Email from Mr. Harris attached as Exhibit A (emphasis added).
>
> Mr. Harris continues his threats on February 1, 2018, now demanding $80,228, in order to avoid a Bar complaint against Mr. Howard, stating: **"I've prepared a bar complaint against you which I will file tomorrow if I'm not paid in full by then."** This threat was backed up by Annie Sebastian, attorney with the Diaz law firm, without lawful justification and for their own pecuniary advantage, stating, "I will file suit to strip you of your percentage in the Bryant case and **forward the suit to the Florida Bar** along with a complaint for your failure to meet your obligations to this firm and the client." February 1, 2018 email attached as Exhibit B (emphasis added).
>
> On February 7, 2018, Mr. Harris, again threatens, with incorrect information, and without lawful justification for his own pecuniary advantage, blindly supporting another extortion scheme by a representative of BWCI Trust for a fraudulent and corrupt lender recommended by former advisors lacking skills and having ill intent, stating,
>
>> Tim, I am now aware of the predicament that you are in and that **your house of cards is rapidly collapsing.** If you haven't signed the [corrupt extortionate] agreement by the close of business today necessary to release the insurance premium payment [BWCI $345,000 to a fraudulent lender], plus the lifeline agreement with Lance [BWCI representative in false agreement and participant in fraudulent scheme], I **will proceed with the Diaz firm in aligning ourselves with 1 other creditor, to force you into bankruptcy.**
>
> February 7, 2018 email attached as Exhibit C (emphasis added). Note use of the **term,"house of cards"** as used in Kim Poling's June 4, 2018 Rebuttal, page 4.
>
> All delays under the agreement were caught up in full, including a $20,000 payment on February 9, 2018, and another $22,000 payment on February 12, 2018 (which included a $15,000 bonus). Just two weeks later, Mr. Harris, not knowing the collateral structure of the lender, on February 26, 2018, without lawful justification and for his own pecuniary advantage, threatens criminal action to gain advantage in a civil contract issue that Mr. Howard did not know existed, stating:
>
>> Accordingly, you have until this Friday at 12:00 pm March 2, 2018, to release every case belonging to me on the UCC-1's referenced herein, or on those of any other creditor of H&A, or I **am proceeding straight to the FBI** with this information. And I **will not sleep until you and Mr. Mehta are brought to justice and placed behind bars.**
>>
>> Finally, since you terminated our agreement without cause, I reserve all rights I have against you and Mr. Mehta, including without limitation claims for fraud in the inducement, fraud, conspiracy to commit fraud, intentional infliction of emotional distress and punitive damages.
>
> February 26, 2018 email from Mr. Harris is attached as Exhibit D (emphasis added).
>
> During the month of March, Mr. Howard diligently worked with Mr. Harris and a legitimate lender to obtain funding for the prosecution of Engle cases and to secure payments to Mr. Harris and his interests. March 26, 2018 email to Mr. Harris documenting the work done to secure Mr. Harris' interests. Email and texts attached as Cumulative Exhibit E.
>
> Due to Mr. Harris' mode of communicating with the lender, the lender informed Mr. Harris on April 3, 2018, as follows: "From now on, please do not call, text or email any Virage staff. It is detrimental to our

process and not helpful to Tim." April 3, 2018 email attached as Cumulative Exhibit E. In response, Mr. Harris writes, on April 5, 2018, stating:

Marty, (1) before I **sue Virage, you, Ed and Tim for fraud and conspiracy to commit fraud,** for:

(1) intentionally and maliciously liening with your fraudulent UCC-1 my tobacco cases in which Tim had no interest in, nor had been retained by my client to represent; . . . .

(2) before I also file **a complaint against you and your co-conspirators with the SEC for the same,** alerting the SEC how you have breached your fiduciary duties to Virage and its shareholders; and

(3) before I **file a Bar complaint against you for all of the above;**

(4) you may want to man up and call me to discuss a settlement of my claims tomorrow, first thing. Otherwise, my weekend will be very busy.

April 5, 2018 email from Mr. Harris, attached as Exhibit F (emphasis added). Despite the attacks, threats, and no factual or legal basis for the attacks and threats, the parties entered into a Confidential Settlement and Release Agreement, providing Mr. Harris with $21,000 a month salary, office expenses, and health insurance, plus $50,000 on April 6, 2018. This amounts to an additional over $100,000 for Mr. Harris since early April, for a combined $450,000 over the past 16 months.

In fact, on March 30, 2018, just days earlier, Mr. Howard personally sent Mr. Harris $350 out of the $361 that I had in available to help him get through the weekend. March 30, 2018 text attached hereto as Exhibit G. Notwithstanding the compassion, diligence, repeated and continued efforts for goodness and care to advance Mr. Harris' security and interests, he has not changed his approach.

Consistent with Mr. Harris' threats of criminal prosecution, forced bankruptcy, and Bar complaints, stated on January 29, 2018, February 1, 2018, February 26, 2018, April 5, 2018, Mr. Harris is now engaged in daily threats and attacks without legal justification for pecuniary gain. The evidence indicates that Mr. Harris is conspiring with, **ghost writing and directly and indirectly assisting** in the Kim Poling Bar Complaint and Rebuttal, including but not limited to providing text information from his email [Rebuttal of Kimberly Poling to Dr. Tim Howard's Response, Exhibit E], and a copy of a transcript that only Defendants have received and upon information and belief was provided to Mr. Harris, who gave it to Ms. Poling [Rebuttal of Kimberly Poling to Dr. Tim Howard's Response, Exhibit H], as well as language, while adopting her Reply. *See* JB Harris and Kim Poling Rebuttal filed on June 4, 2018. Note, the June 4, 2018 Reply provided no new substantive information, only further incendiary and derogatory language consistent with Mr. Harris' language in the other documents.2

Mr. Harris most recent threat of criminal and civil actions, and Bar complaint, all without legal justification and for his own pecuniary advantage, as part of his extortion took place on June 6, 2018, concerning a former client of Mr. Harris, that took the initiative to contact this firm due to the abuse that they state that Mr. Harris and his team had inflicted upon them, and dropped them as counsel. *See* June 6, 2018 email from Mr. Harris to clients, counsel and Mr. Howard. Mr. Harris states:

> Tim, if you think you are having trouble with the Bar's investigation of your practices, BWCI Penson Trustees Limited, Ted Doukas, and everyone else who is still after you, **you are about to walk into a shit storm** if you steal the Goulds from me as my clients.
>
> I will lien the file for cost and fees, sue you for tortious interference and unpaid contributions to costs, **fraud and everything else I can think of. I will also amend my complaint with the Bar** and file a complaint against Neil [paralegal in office] as well.

June 6, 2018 email from Mr. Harris to Mr. Howard, client, co-counsel and lender, attached as Exhibit H (emphasis added).

On June 7, 2018, not knowing the facts, Mr. Harris continues to threaten Bar complaints, stating to a paralegal with the firm, **"I'm am left with no choice but to file a Bar complaint against you."** June 7, 2018 text to paralegal attached as Exhibit I (emphasis added). On that same date, Mr. Harris confirms to the client that "We've had our differences but have worked through them. I was VERY hurt to learn about what may be going on behind my back. We really need to speak. I **won't yell or scream.** Promise." June 7, 2018

text to his fo1mer client attached as Exhibit I (emphasis added). The client does not want to be yelled at or abused any further and this is why they switched counsel.

Also on June 7, 2018, Mr. Harris sends another text to the client disparaging counsel without legal justification and for his own pecuniary advantage, continuing his use of the extortion model of complaints to gain advantage in a civil dispute. He first implies that the Ph.D. from Northeastern University, awarded in 2005, is not legitimate. He next uses the Bar process that he coordinated with Ms. Poling for filing to continue his extortion model of practicing law to intimidate the client. He asserts that his Bar complaint is legitimate and factually based. He then falsely asserts that there is an investigation by the "Feds" of the law firm. A threat he first asserted in February of 2018. Finally, he asserts that Ankur Mehta doesn't have a **Doctorate,** which is false since he has a Juris Doctorate, and uses the UPL that he coordinated with Ms. Poling to file, as another extortion tool to address a client desire to not be abused. June 7, 2018 text to his former client attached as Exhibit J.

Continuing this pattern, on June 8, 2018, Mr. Harris, without legal justification for his own pecuniary advantage, unleashes his threats, extortion and intimidation efforts with a series of derogatory comments, such as **coward, scumbag, blasphemous, sociopathic charade, days a lawyer are numbered,** and his continued use of the Bar as an extortion device, stating:

> Tim, you breached the NDA by going behind my back to steal my clients and slandering them to me. You're a **first rate coward and a scumbag.** All your talk about **Jesus is blasphemous garbage.** Trust me, I will be pursing my remedies forthwith. You want a war. You are going to get one. Hope you paid Leonard his fees up front.
>
> Did you inform the clients that (i) you are the target of an SEC investigation; (ii) a Bar investigation; (iii) have never tried a tobacco case; (iv) wouldn't know how to if your life depended on it; (v) you don't have a pot to piss in; and (vi) can't afford to litigate a tobacco case. I doubt it. Accordingly, your actions are retaliatory for my having filed a Bar complaint against you.
>
> Trust me, these clients know about tobacco litigation than you ever will. I can also assure you they will rip you to shreds once they see through your **sociopathic charade.**
>
> By the way, the Bar is starting to debrief your former employees. Seems like you've been on the Bar's radar for quite sometime. **Your days as a lawyer are numbered. I'm sure your family will be so proud once they find out.** Enjoy your weekend.

Detailing the Bar Violations entailed, Dr. Howard provided attorney Shanee Hinson case law and statutes on Bar violations and criminal extortion violations:

> Lawyer disciplined for sending disparaging emails to opposing counsel, calling him a liar, and making improper outbursts directed toward opposing counsel during the litigation. *The Florida Bar v. Norkil1,* 132 So.3d 77 (2013)). *See also The Florida Bar v. Abramson,* 3 So.3d 964 (2009); *The Florida Bar v. Buckle,* 771 So.2d 113 (Fla. 2000); *The Florida Bar v. Sayler,* 721 So. 2d 1152 (Fla. 1998); *The Florida Bar v. Ratiner,* 46 So.3d 35 (Fla. 2010). Lawyer disciplined for sending a letter to a cou1t-appointed provisional director of corporation in which he improperly threatened to file suit against provisional director and accused the provisional director of being involved in a conspiracy. *The Florida Bar v. Norkin,* 132 So. 3d 77 (2013); *See also The Florida Bar v. Abramson,* 3 So. 3d 964 (Fla. 2009). "The First Amendment does not protect those who make harassing or threatening remarks about the judiciary or opposing counsel. Under Rule of Professional Conduct 4-8.4(d), lawyers are required to refrain from knowingly disparaging or humiliating other lawyers." *The Florida Bar v. Sayler,* 721 So.2d 1152, 1155 (Fla. 1998).
>
> Whoever, either verbally or by a written or printed communication, maliciously threatens to accuse another of any crime or offense, or by such communication maliciously threatens an injury to the person, property or reputation of another, or maliciously threatens to expose another to disgrace, or to expose any secret affecting another, or to impute any deformity or lack of chastity to another, with intent thereby to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will, shall be guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 7775.084. Under Florida Statute 836.05, the crime of Extortion is committed when a person maliciously threatens to: Accuse another of any crime or offense; Injure the person, property or reputation of another; Expose another to disgrace; Expose any secret affecting another; or Impute any deformity or lack of chastity to another, with the intent to:

as a responsible citizen and member of the Bar, The Honorable Paul S. Bryan should have immediately acknowledged and presented the criminal and fraudulent conduct to the criminal prosecutor and Florida Bar, requesting a Florida Bar investigation and criminal referral. In fact, he is mandated to report to the Florida Bar, yet he did nothing. *See* Section III, *supra.*

When confronted that she knew of the criminal perjury, extortion[4] and fraud, Shanee Hinson, before the cock crowed, three times intentionally lied to the Honorable Paul S. Bryan stating that she is "aware of no such violations," and falsely stated as follows:

> **Dr. Howard**: I'm . . . talking about **a history of documented [Bar] violations which I have [provided], which you received showing extortion, threats, derogatory comments and extensive perjury that you're aware of**, that you decided [not] to go forward with -- in this case, regardless. That's what I'm referring to, his history of perjury.
>
> **Shanee Hinson**: Mr. Howard, okay. I just want to stop you because you said that I am aware of. **I am aware of no such thing**, so I just wanted to make that clear.
>
> **Dr. Howard**: Yes, you are. They're **attached to your exhibits** so you are aware of those things.
>
> **Shanee Hinson**: **I'm aware of no such violations**, is what I'm clarifying.
>
> **Dr. Howard**: **And I'm clarifying that you are, in writing. You've received written and sworn statements that are perjurious, complete perjury, under oath by both Mr. [JB] Harris, by Peggy Harris, and they are detailed with documents attached to Shanee Hinson and the Florida Bar. The Florida Bar has been fully aware of his perjury, fully aware of his Bar violations**, yet you're going forward with this, and that's why you're not calling him as a witness because you know how dirty he is.
>
> **Shanee Hinson**: Mr. Howard, let me clarify again, **I am aware of no Bar violations**.

Transcript, Vol. 2, pp. 247-249, and pp. 289-294, attached as Exhibit H. Honorable Judge Paul knew that these statements to him were not true yet did not report these intentional misrepresentations to him to the Florida Bar.

---

Extort money or any pecuniary advantage; or Compel any person to do any act or refrain from doing any act against their will. **Actual Malice versus Legal Malice.** Although it is a subtle distinction, under the Extortion statute, the prosecutor is required to prove the threat was committed with Actual Malice, which means "means ill will, hatred, spite, evil intent." This is in contrast to what is known as Legal Malice, which only requires that an act be committed intentionally and without any lawful justification. **Penalties for Extortion.** The crime of Extortion is a Second-Degree Felony in Florida and is punishable by up to 15 years in prison, 15 years of probation, and a $10,000 fine. *Calamia v. State,* 125 So. 3d 1007 (Fla. 5th DCA 2013) (Actual malice is the standard. "A threat is malicious if it is made intentionally and without any lawful justification."); *McKee v. State,* 7 I 5 So.2d IO1 (Fla. 5th DCA 1998) (Conviction upheld for threats that defendant will destroy you, destroy your business, accusing of drug use, and threatening to make accusations to a federal agency.). "Maliciously" means wrongfully, intentionally, and without legal justification or excuse. A threat is "malicious" for purposes of exto1tion statute if it is made intentionally and without any lawful justification. It is not necessary that the person accused of extortion have the ability to carry the threat out. Threats to cause mental or psychological injuries are generally prohibited under exto1tion statute. Therefore, if you threatened to expose someone's affair to their spouse unless they paid you $1,000,000, the threat could be considered extortion for causing a psychological injury or because it was done for a monetary gain. This is extortion even if you did not know how to contact their spouse. Generally, a claim of extortion cannot be based on a threat to do an act which a person has a lawful right to do, but **you may not threaten to undertake an othenvise legal act for your own pecuniary advantage.** An attorney that repeatedly engages in conduct considered extortion can be a violation of the Florida RICO Act, pursuant to section 772.04, Florida Statutes.

[4] Dr. Howard informed Shanee Hinson of the extortion by Dana Hall and Sandra Fulup on August 3, 2018, and their conspired demand of $355,031, when nothing was owed and a full accounting and review had taken place with Sandra Fulup signed and accepted on December 23, 2013, with the opportunity for independent counsel to review and advise. The Bar has done nothing pertaining to this extortion as well. Rather, swallowed a toxic narrative by an extorter that hasn't worked in nearly 10 years, and gone after Dr. Howard. Exhibit I.

## II. FLORIDA BAR RULE VIOLATIONS BY ATTORNEY SHANEE HINSON NOT REPORTED BY HONORABLE JUDGE BRYAN

Based on the undisputed and repeatedly documented in writing, facts of:

(1) "known" "substantial" dishonesty, untrustworthiness and fitness as a lawyer and not informing the appropriate professional authority after numerous and repeated information of criminal, fraudulent and Rule of Professional Conduct violations;
(2) knowingly and intentionally making a false statement of fact three times or more to the Court; and
(3) failing to disclose a material fact and as a result assisting a criminal or fraudulent act upon the Florida Bar and the Court,

Respondent, Shanee Hinson, Esq., violated the following Rules Regulating the Florida Bar:

### A. RULE 4-3.3 CANDOR TOWARD THE TRIBUNAL

**(a) False Evidence; Duty to Disclose.** A lawyer **shall not knowingly**:

(1) **make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;**
(2) **fail to disclose a material fact** to a tribunal **when disclosure is necessary to avoid assisting a criminal or fraudulent act** by the client;
(3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or
(4) offer evidence that the lawyer knows to be false. **A lawyer may not offer testimony that the lawyer knows to be false** in the form of a narrative unless so ordered by the tribunal. **If a lawyer,** the lawyer's client, or a witness called by the lawyer has offered material evidence and the **lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures including, if necessary, disclosure to the tribunal.** A lawyer may refuse to offer evidence that the lawyer reasonably believes is false.

### B. RULE 4-8.3 REPORTING PROFESSIONAL MISCONDUCT

**(a) Reporting Misconduct of Other Lawyers.** A lawyer who **knows**[5] **that another lawyer has committed a violation of the Rules of Professional Conduct** that **raises a substantial question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer** in other respects **must**[6] inform the appropriate professional authority.

**(b) Reporting Misconduct of Judges.** A lawyer who knows that a judge has committed a violation of applicable rules of judicial conduct that raises a substantial question as to the judge's fitness for office must inform the appropriate authority.

The Comment section of Rule 4-8.1(a), states that the "term "substantial" refers to the seriousness of the possible offense and not the quantum of evidence of which the lawyer is aware."[7]

---

[5] In Chapter 4, Rules Regulating Professional Conduct, definitions, it states that: "Knowingly," "known," or "**knows**" **denotes actual knowledge of the fact in question.** A person's **knowledge may be inferred from circumstances.**

[6] The Scope of the Rules of Professional Conduct as detailed in Chapter 4, specifically states that: "They should be interpreted with reference to the purposes of legal representation and of the law itself. Some of the rules are **imperatives,** cast in the terms of "**must**," "must not," or "may not."

[7] Chapter 4, Rules Regulating Professional Conduct, Scope of Rule states that:

> Failure to comply with an obligation or prohibition imposed by a rule is a basis for invoking the disciplinary process. The rules presuppose that disciplinary assessment of a lawyer's conduct will be made on the basis

## C. RULE 4-8.4 MISCONDUCT

A lawyer shall not:

**(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist** or induce **another to do so**, or do so through the acts of another;

**(b)** commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects;

**(c) engage in conduct involving dishonesty**, fraud, **deceit, or misrepresentation**, except that it shall not be professional misconduct for a lawyer for a criminal law enforcement agency or regulatory agency to advise others about or to supervise another in an undercover investigation, unless prohibited by law or rule, and it shall not be professional misconduct for a lawyer employed in a capacity other than as a lawyer by a criminal law enforcement agency or regulatory agency to participate in an undercover investigation, unless prohibited by law or rule;

**(d) engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly**, or through callous indifference, disparage, humiliate, or discriminate against litigants, jurors, witnesses, court personnel, or other lawyers on any basis, including, but not limited to, on account of race, ethnicity, gender, religion, national origin, disability, marital status, sexual orientation, age, socioeconomic status, employment, or physical characteristic;

## III. CODE OF JUDICIAL CONDUCT VIOLATIONS BY HONORAL JUDGE PAUL

**Canon 1**

**A Judge Shall Uphold the Integrity And Independence of the Judiciary**

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.

**COMMENTARY**

Deference to the judgments and rulings of courts depends upon public confidence in the integrity and independence of judges. The integrity and independence of judges depend in turn upon their acting without fear or favor. Although judges should be independent, they must comply with the law, including the provisions of this Code. Public confidence in the impartiality of the judiciary is maintained by the adherence of each judge to this responsibility. Conversely, violation of this Code diminishes public confidence in the judiciary and thereby does injury to the system of government under law.

**Cannon 3**

**A Judge Shall Perform the Duties of Judicial Office Impartially and Diligently**

---

of the facts and circumstances as they existed at the time of the conduct in question in recognition of the fact that a lawyer often has to act upon uncertain or incomplete evidence of the situation. Moreover, the rules presuppose that whether discipline should be imposed for a violation, and the severity of a sanction, depend on all the circumstances, such as **the willfulness** and **seriousness of the violation**, extenuating factors, and whether there have been previous violations.

In Chapter 4, Rules Regulating Professional Conduct, definitions, it states that: "'Fraud' or 'fraudulent' denotes conduct having a purpose to deceive and not merely negligent misrepresentation or failure to apprise another of relevant information."

A. Judicial Duties in General.
The judicial duties of a judge take precedence over all the judge's other activities. The judge's judicial duties include all the duties of the judge's office prescribed by law. In the performance of these duties, the specific standards set forth in the following sections apply.

. . .

D. Disciplinary Responsibilities.
(1) A judge who receives information or has actual knowledge that substantial likelihood exists that another judge has committed a violation of this Code shall take appropriate action.
(2) **A judge who receives information or has actual knowledge that substantial likelihood exists that a lawyer has committed a violation of the Rules Regulating The Florida Bar shall take appropriate action.**

**Commentary**

Canon 3D. Appropriate action may include direct communication with the judge or lawyer who has committed the violation, other direct action if available, or reporting the violation to the appropriate authority or other agency. If the conduct is minor, the Canon allows a judge to address the problem solely by direct communication with the offender. **A judge having knowledge**, however, that another judge has committed a violation of this Code that raises a substantial question as to that other judge's fitness for office **or has knowledge that a lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, is required under this Canon to inform the appropriate authority.** While worded differently, this Code provision has the identical purpose as the related Model Code provisions.

***Judicial Ethics Advisory Committee***
**Opinion Number: 2019-14**
**Date of Issue: April 10, 2019**

**ISSUES**
Whether the inquiring judge has a duty to report an attorney to The Florida Bar in circumstances where representations made to the court by the attorney during a judicial proceeding were known by the inquiring judge to be false.

**ANSWER:**
In the circumstances presented, Canon 3D(2) requires the inquiring judge to report the attorney for misconduct to The Florida Bar.

**FACTS**
A judge has inquired whether there is an ethical obligation under the Code of Judicial Conduct to report an attorney for misconduct to The Florida Bar based on the following facts. The inquiring judge was presiding over probation violation proceedings in which defense counsel, mid-way through a series of hearings, insisted that the client/defendant did not speak or understand English; could not proceed without the assistance of an interpreter; and could not have willfully violated the applicable probationary conditions because the defendant never understood those obligations as a result of the alleged language issue. The inquiring judge knows the lawyer's representations are false. Specifically, the inquiring judge knows, based on record evidence, that the lawyer's client/defendant previously acknowledged in open court that the client speaks English well enough to be comfortable conducting court matters in English, the defendant always spoke English with probation officers without apparent difficulty, the client never requested a translator before, and the lawyer knew when making the contrary allegations that the client/defendant speaks and understands English.

The inquiring judge is concerned that the lawyer's breach of his duty of candor to the tribunal may have been so egregious as to call into question his honesty and trustworthiness as a lawyer.

**DISCUSSION**
The response to this inquiry is governed by Canon 3D(2) of the Code of Judicial Conduct which provides as follows:

A judge who receives information or has actual knowledge that substantial likelihood exists that a lawyer has committed a violation of the Rules Regulating The Florida Bar shall take appropriate action.

As this Committee has previously noted: "All Florida judges are, first and foremost, attorneys and members of The Florida Bar. As such, Florida judges, just like every other Florida attorney, have an obligation to maintain the integrity of the legal profession and to report to The Florida Bar any professional misconduct of a fellow attorney." Fla. JEAC Op. **98-21**.

This Committee has also previously stated that before making a report to The Florida Bar, the inquiring judge should "first make a determination as to whether a substantial likelihood exists that the lawyer in question violated the Rules of Professional Conduct." Fla. JEAC Op. **97-17**. The judge is required to reach a "reasoned determination" of whether a lawyer has committed a violation of the Rules Regulating The Florida Bar. Id. Should the judge reach that conclusion, the judge would then be obligated to inform the Bar. *Id.*[1]

Essentially, the inquiring judge asks what is the "appropriate action" to be taken in the circumstances presented. Although the Code does not specify what the term "appropriate action" entails in a particular circumstance, the Commentary to Canon 3D guides this Commission's response:

Appropriate action may include direct communication with the judge or lawyer who has committed the violation, other direct action if available, or reporting the violation to the appropriate authority or other agency. **If the conduct is minor, the Canon allows a judge to address the problem solely by direct communication with the offender. A judge having knowledge, however,** that another judge has committed a violation of this Code that raises a substantial question as to that other judge's fitness for office or has knowledge **that a lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, is required under this Canon to inform the appropriate authority.** [8]While worded differently,

---

[8] In JEAC Opinion Number 2005-16, with less severe perjury, with no extortion or fraud involved, the Judicial Ethics Advisory Committee found as follows:

**FACTS**

The inquiring judge is presiding over a negligence action. Attached to the plaintiff's answers to the defendant's propounded interrogatories was a separate page containing the plaintiff's signature, underneath a jurat clause indicating that the plaintiff "after being first duly sworn . . . deposes and states that he has executed the foregoing answers to interrogatories, and that they are true and correct to the best of his knowledge and belief." A notary's certificate followed.

At a hearing held after the service of the plaintiff's answers to interrogatories, the plaintiff's counsel represented that he and the plaintiff generally discussed the interrogatories, during an office conference. The plaintiff's counsel directed a notary in his law office to notarize the plaintiff's signature. However, no answers were prepared or appended to the signature page when the plaintiff signed the signature page. **The plaintiff's counsel further represented at the hearing that the plaintiff's answers to the interrogatories were prepared several months after the plaintiff signed the signature page** and the plaintiff's signature was notarized.

The inquiring judge believes that there is a substantial likelihood that the plaintiff's attorney has violated the Rules Regulating The Florida Bar, including Rules 4-1.2(d) and 4-3.4(b), in that the notary prepared a false certificate in violation of section 117.105, Florida Statutes (2005); and that the client has offered false testimony under oath, in violation of Chapter 837, Florida Statutes.

**DISCUSSION**

**The inquiring judge has an obligation to report the plaintiff's attorney to The Florida Bar** if the inquiring judge believes that this is the appropriate action to take under the circumstances presented. Canon 3(D)(2) of the Florida Code of Judicial Conduct directs that a judge who receives information or has actual

this Code provision has the identical purpose as the related Model Code provisions. (Emphasis added.)

Significantly, **"[t]he Supreme Court does not view violations of the Bar Rule governing misconduct involving dishonesty, fraud, deceit, or misrepresentation as minor**." *The Florida Bar v. Gilbert*, 246 So. 3d 196, 203 (Fla.2018).[2]

**The facts indicate that the inquiring judge "has actual knowledge that substantial likelihood exists that a lawyer has committed a violation of the Rules Regulating The Florida Bar," that such violation is not minor in nature, and that the lawyer's conduct raises a significant question as to the lawyer's honesty, integrity, trustworthiness, or fitness for the practice of law. Accordingly, the Committee advises that Canon 3D(2) requires the inquiring judge to report the attorney to The Florida Bar.**[3]

**REFERENCES**
Fla. Code Jud. Conduct, Canon 3D(2).
Fla. Code Jud. Conduct, Canon 3D(2), Commentary.
Fla. JEAC Ops. **01-06**, **98-21** and **97-17**.
*The Florida Bar v. Gilbert*, 246 So. 3d 196, 203 (Fla. 2018).
*Holt v. Sheehan*, 122 So. 3d 970, 976 (Fla. 2d DCA 2013), note 2.
*Favel v. Haughey*, 727 So. 2d 1033, 1036 (Fla. 5th DCA 1999).

While a judge is not required by the Code of Judicial Conduct to report a criminal violation, but as an attorney and member of the public has a moral, statutory and other non-code obligations to report criminal conduct, namely the integrity of the attorneys and legal proceedings before the Florida Bar, and sanctioning extortion, perjury, and fraud upon members of society and the legal community. *See* Judicial Ethics Advisory Opinion 2012-11.

Honorable Judge Paul failed to comply with his mandatory obligation to report Florida Bar attorneyShanee Hinson and Florida Attorney JB Harris to the Florida Bar for known and serious Florida Bar Rule violaitons.

## III. CONSEQUENCES OF FAILURE TO ENFORCE CRIMINAL LAW AND RULES REGULATING THE FLORIDA BAR

With no accountability by the Honorable Judge Bryan, nor the Florida Bar for known perjury, extortion, defamation, violations of numerous Florida Bar rules, and Shanee Hinson's violation of Florida Bar Rules and intentional misrepresentation to Honorable Judge Bryan, JB Harris, Esq., thinks he has a free license to continue these Florida Bar Rule violations of perjury and extortion tactics in filing Florida Bar complaints, and now advertises to do the same. Exhibit J. This is a plague upon the legal profession. Not holding all parties accountable, including the Court, the Florida Bar, and Shanee Hinson, **permits this poisonous, corrupt and criminal model to denigrate the morality and integrity of the profession, and this evil model of existence to fester and grow.**

---

knowledge that a substantial likelihood exists that a lawyer has committed a violation of the Rules Regulating The Florida Bar shall take appropriate action. The Florida Supreme Court has stated:
**All Florida judges are, first and foremost, attorneys and members of The Florida Bar. As such, Florida judges, just like every other Florida attorney, have an obligation to maintain the integrity of the legal profession and report to The Florida Bar any professional misconduct of a fellow attorney.**
5-H Corp. v. Padovano, 708 So. 2d 244, 246 (Fla. 1997) (citations omitted). **This Canon is mandatory**, not hortatory. *See also* JEAC Ops. **98-21** and **97-17**.

The parties to the pending action should be notified on the record through counsel that the inquiring judge referred the plaintiff's attorney to The Florida Bar. The Commentary to Canon 3E(1) of the Florida Code of Judicial Conduct states "that a judge should disclose on the record information that the judge believes the parties or their attorneys might consider relevant to the question of disqualification, even if the judge believes there is not a real basis for disqualification." Referring the plaintiff's attorney to The Florida Bar is an issue that the parties might consider relevant to the question of disqualification.

# EXHIBIT A

HOWARD JUSTICE

RECEIVED

2018 JUN 11 PM 3:35

Howard & Associates

Attorneys at Law, P.A.

STATE ATTORNEY

Dr. Tim Howard, J.D., Ph.D., Senior Partner*
Florida Supreme Court Certified Mediator

RECEIVED

JUN 11 2018

THE FLORIDA BAR

Tallahassee, Florida Office:
1415 East Piedmont Drive, Suite 5
Tallahassee, Florida 32308
Ph: (850) 298-4455
Fax: (850) 216-2537
tim@howardjustice.com

Jacksonville, Florida Office:
444 E. Duval Street
Jacksonville, Florida 32207
Ph: (904) 446-9817
Fax: (904) 446-9825
www.howardjustice.com

June 11, 2018

VIA HAND-DELIVERY

Shanee L. Hinson, Bar Counsel
651 East Jefferson Street
Tallahassee, Florida 32399-2300

Jack Campbell, State Attorney
301 South Monroe Street, Suite 475
Tallahassee, Florida 32399-2300

Re: J.B. Harris v. Phillip Timothy Howard, TFB File No. 2018-00,342(2A); Kim Poling v. Phillip Timothy Howard, TFB File No. 2018-00,343(2A); Bar Complaint Against J.B. Harris and Law Firms Supporting his Violations of Rules 3-4.2, 4-3.4(g) and (h), 4-8.2 (a) and (d), and 4-8.4(d); Violation of Section 836.05, Florida Statutes, Crime of Extortion Including Potential Co-Conspirators.

Dear Bar Counsel Hinson, and State Attorney Campbell:

In response to the above-referenced complaints, please consider the following. Despite written threats and attacks from Mr. Harris, Florida Bar Number 495034, without lawful justification for his own pecuniary advantage, who is working directly and indirectly through a potential co-conspirator, Ms. Poling, *see* pages 3-4 and footnote 2, *supra*, we have attempted to amicably work together and have been paying for Mr. Harris' office, health insurance, salaries, since January of 2017, and have done our best to operate in good faith with Mr. Harris.

Mr. Howard has paid and is currently paying Mr. Harris' office, salary and health insurance costs from January 2017 through June of 2018. This will now end on June 30, 2018. Despite best efforts to assist Mr. Harris and having solved the underlying cash flow interruption, and resolving all financial matters with Mr. Harris, without lawful justification for pecuniary advantage, Mr. Harris continues to attack, threaten and extort.1

1 Mr. Harris and his co-counsel will benefit in the $ millions if Mr. Howard loses his fee percentage and is limited to
*Admitted to practice in Florida, the District of Columbia, Northern, Middle, and Southern United States District Courts of Florida, the United States Court of Appeals for the 11th Circuit, and the United States Supreme Court. Ph.D, Northeastern University, Law, Policy & Society. Former Visiting Health Law, Bioethics, and Human Rights Scholar and Constitutional Law, Media & Politics and Judicial Process Instructor at Boston University. Former Director of and Professor with Northeastern University's Law & Policy Doctorate Program. President of Cambridge Graduate University International.



Under Mr. Harris' initial Joint Prosecution and Fee Sharing Agreement, dated January 20, 2017, with Mr. Howard, Mr. Harris received $245,210.13 in salary and health insurance benefits, plus had all office costs, malpractice insurance and paralegal costs covered, plus was paid $49,759.82 for Sommers trial costs, plus received a $25,000 sign-on bonus, plus a $15,000 bonus for 2017, and another $15,000 loan from the firm, for a total compensation and benefits to him personally of $349,969.95.

Even though $11,583.98 was paid to Mr. Harris on December 28, 2017, on January 29, 2018, Mr. Harris threatened a Bar complaint and criminal and civil action without lawful justification for his own pecuniary advantage, in order to receive $2,000 that day, which indeed was wired that day, stating: "**If you don't throw me another miniscule $2,000 lifeline TODAY, I'm filing a bar complaint against you and your lap dog Ankur. I've called to make an appointment to meet with the Bar tomorrow in person. I'm driving to Tallahasse at first light.** I don't care how sick I am." Email from Mr. Harris attached as Exhibit A (emphasis added).

Mr. Harris continues his threats on February 1, 2018, now demanding $80,228, in order to avoid a Bar complaint against Mr. Howard, stating: "**I've prepared a bar complaint against you which I will file tomorrow if I'm not paid in full by then.**" This threat was backed up by Annie Sebastian, attorney with the Diaz law firm, without lawful justification and for their own pecuniary advantage, stating, "I will file suit to strip you of your percentage in the Bryant case and forward the suit to the Florida Bar along with a complaint for your failure to meet your obligations to this firm and the client." February 1, 2018 email attached as Exhibit B (emphasis added).

On February 7, 2018, Mr. Harris, again threatens, with incorrect information, and without lawful justification for his own pecuniary advantage, blindly supporting another extortion scheme by a representative of BWCI Trust for a fraudulent and corrupt lender recommended by former advisors lacking skills and having ill intent, stating,

> Tim, I am now aware of the predicament that you are in and that your house of cards is rapidly collapsing. . . . If you haven't signed the [corrupt extortionate] agreement by the close of business today necessary to release the insurance premium payment [BWCI $345,000 to a fraudulent lender], plus the lifeline agreement with Lance [BWCI representative in false agreement and participant in fraudulent scheme], **I will proceed with the Diaz firm in aligning ourselves with 1 other creditor, to force you into bankruptcy.**

February 7, 2018 email attached as Exhibit C (emphasis added). Note use of the term,"house of cards" as used in Kim Poling's June 4, 2018 Rebuttal, page 4.

quantum meruit. Mr. Harris is tracking the extortion of Mr. Don Reinhard, who is in prison and has a similar one year extortion scheme in using the Florida Bar, TFB No. 2018-00,265(2A), in trying to claim over $1 million, and Ms. Sandra Fulup, TFB No. 2016—00682(2A), who from a deceased client for 2008 activities and a file she has the originals of, has also tried to use the Florida Bar to extort over $300,000, when nothing is owed. These violate section 836.05, Florida Statues. *See* footnote 5, *supra*.



All delays under the agreement were caught up in full, including a $20,000 payment on February 9, 2018, and another $22,000 payment on February 12, 2018 (which included a $15,000 bonus). Just two weeks later, Mr. Harris, not knowing the collateral structure of the lender, on February 26, 2018, without lawful justification and for his own pecuniary advantage, threatens criminal action to gain advantage in a civil contract issue that Mr. Howard did not know existed, stating:

> Accordingly, you have until this Friday at 12:00 pm March 2, 2018, to release every case belonging to me on the UCC-1's referenced herein, or on those of any other creditor of H&A, **or I am proceeding straight to the FBI with this information. And I will not sleep until you and Mr. Mehta are brought to justice and placed behind bars.**
>
> Finally, since you terminated our agreement without cause, I reserve all rights I have against you and Mr. Mehta, including without limitation claims for fraud in the inducement, fraud, conspiracy to commit fraud, intentional infliction of emotional distress and punitive damages.

February 26, 2018 email from Mr. Harris is attached as Exhibit D (emphasis added).

During the month of March, Mr. Howard diligently worked with Mr. Harris and a legitimate lender to obtain funding for the prosecution of Engle cases and to secure payments to Mr. Harris and his interests. March 26, 2018 email to Mr. Harris documenting the work done to secure Mr. Harris' interests. Email and texts attached as Cumulative Exhibit E.

Due to Mr. Harris' mode of communicating with the lender, the lender informed Mr. Harris on April 3, 2018, as follows: "From now on, please do not call, text or email any Virage staff. It is detrimental to our process and not helpful to Tim." April 3, 2018 email attached as Cumulative Exhibit E. In response, Mr. Harris writes, on April 5, 2018, stating:

> Marty, (1) **before I sue Virage, you, Ed and Tim for fraud and conspiracy to commit fraud**, for:
>
> (1) intentionally and maliciously liening with your fraudulent UCC-1 my tobacco cases in which Tim had no interest in, nor had been retained by my client to represent; . . . .
>
> (2) **before I also file a complaint against you and your co-conspirators with the SEC for the same, alerting the SEC** how you have breached your fiduciary duties to Virage and its shareholders; and
>
> (3) **before I file a Bar complaint against you for all of the above;**
>
> (4) you may want to man up and call me to discuss a settlement of my claims tomorrow, first thing. Otherwise, my weekend will be very busy.



April 5, 2018 email from Mr. Harris, attached as Exhibit F (emphasis added). Despite the attacks, threats, and no factual or legal basis for the attacks and threats, the parties entered into a Confidential Settlement and Release Agreement, providing Mr. Harris with $21,000 a month salary, office expenses, and health insurance, plus $50,000 on April 6, 2018. This amounts to an additional over $100,000 for Mr. Harris since early April, for a combined $450,000 over the past 16 months.

In fact, on March 30, 2018, just days earlier, Mr. Howard personally sent Mr. Harris $350 out of the $361 that he had available, to help Mr. Harris get through the weekend. March 30, 2018 text attached hereto as Exhibit G. Notwithstanding the compassion, diligence, repeated and continued efforts for goodness and care to advance Mr. Harris' security and interests, he has not changed his approach.

Consistent with Mr. Harris' threats of criminal prosecution, forced bankruptcy, and Bar complaints, stated on January 29, 2018, February 1, 2018, February 26, 2018, April 5, 2018, Mr. Harris is now engaged in daily threats and attacks without legal justification for pecuniary gain. The evidence indicates that Mr. Harris is conspiring with, ghost writing and directly and indirectly assisting in the Kim Poling Bar Complaint and Rebuttal, including but not limited to providing text information from his email [Rebuttal of Kimberly Poling to Dr. Tim Howard's Response, Exhibit E], and a copy of a transcript that only Defendants have received and upon information and belief was provided to Mr. Harris, who gave it to Ms. Poling [Rebuttal of Kimberly Poling to Dr. Tim Howard's Response, Exhibit H], as well as language, while adopting her Reply. *See* JB Harris and Kim Poling Rebuttal filed on June 4, 2018. Note, the June 4, 2018 Reply provided no new substantive information, only further incendiary and derogatory language consistent with Mr. Harris' language in the other documents.2

Mr. Harris most recent threat of criminal and civil actions, and Bar complaint, all without legal justification and for his own pecuniary advantage, as part of his extortion took place on June 6, 2018, concerning a former client of Mr. Harris, that took the initiative to contact this firm due to the abuse that they state that Mr. Harris and his team had inflicted upon them, and dropped them as counsel. *See* June 6, 2018 email from Mr. Harris to clients, counsel and Mr. Howard. Mr. Harris states:

> Tim, if you think you are having trouble with the Bar's investigation of your

2 The language of the June 4, 2018 Rebuttal of Kimberly Poling tracks the extortionate and denigrating language of Mr. Harris: "poster child for intentionally turning a blind eye towards legal and ethical improprieties" . . .; "blatant lies made directly to Bar counsel . . . to shift the blame to his consigliere and right-hand man" . . .; "pleas of ignorance, bewilderment, mystification, along with his sleight-of-hand" . . ., "Howard's three biggest lies" . . .; "an incestuous relationship" . . .; "Mehta Consulting was established to illicitly . . . manipulate H&A's books; (iv) issue fraudulent paychecks that were returned for insufficient funds; and (v) engage in other nefarious activities"; "pure nonsense"; "tip of a massive iceberg, the architecture of which was in place long before I was hired by the firm"; "outrageous lie, tenuously holding up Howard's house of cards," ; "blatant lie"; "equity partner"; "damning"; "larger scheme"; "insulating Howard from liability in the even the firm went belly-up, which is exactly what happened in this instance"; "firm running off the rails"; "the third lie"; "delusional"; "Howard is a dangerous lawyer. He should be summarily disbarred. Indeed, given the allegations of misuse and misappropriation of client funds, I'm surprised the Bar has not taken swifter action"; "three material lies"; "Howard's duplicitous behavior that cries for sanctions."

> practices, BWCI Penson Trustees Limited, Ted Doukas, and everyone else who is still after you, you are about to walk into a shit storm if you steal the Goulds from me as my clients.
>
> I will lien the file for cost and fees, sue you for tortious interference and unpaid contributions to costs, fraud and everything else I can think of. I will also amend my complaint with the Bar and file a complaint against Neil [paralegal in office] as well.

June 6, 2018 email from Mr. Harris to Mr. Howard, client, co-counsel and lender, attached as Exhibit H (emphasis added).

On June 7, 2018, not knowing the facts, Mr. Harris continues to threaten Bar complaints, stating to a paralegal with the firm, "**I'm am left with no choice but to file a Bar complaint against you.**" June 7, 2018 text to paralegal attached as Exhibit I (emphasis added). On that same date, Mr. Harris confirms to the client that "We've had our differences but have worked through them. I was VERY hurt to learn about what may be going on behind my back. We really need to speak. **I won't yell or scream. Promise.**" June 7, 2018 text to his former client attached as Exhibit I (emphasis added). The client does not want to be yelled at or abused any further and this is why they switched counsel.

Also on June 7, 2018, Mr. Harris sends another text to the client disparaging counsel without legal justification and for his own pecuniary advantage, continuing his use of the extortion model of complaints to gain advantage in a civil dispute. He first implies that the Ph.D. from Northeastern University, awarded in 2005, is not legitimate. He next uses the Bar process that he coordinated with Ms. Poling for filing to continue his extortion model of practicing law to intimidate the client. He asserts that his Bar complaint is legitimate and factually based. He then falsely asserts that there is an investigation by the "Feds" of the law firm. A threat he first asserted in February of 2018. Finally, he asserts that Ankur Mehta doesn't have a Doctorate, which is false since he has a Juris Doctorate, and uses the UPL that he coordinated with Ms. Poling to file, as another extortion tool to address a client desire to not be abused. June 7, 2018 text to his former client attached as Exhibit J.

On June 8, 2018, Mr. Harris continues his disparagement, without legal justification for his own pecuniary advantage, of myself and former paralegal with a Juris Doctorate as "**frauds and con-artists**" in an email to the Bar counsel concerning an honorary doctorate award coordinated by the representative of Cambridge Graduate University International in Lagos Nigeria, not myself nor Mr. Mehta, and a link to an article by an opposition political party journalist attacking Prince Buruji Kashamu, then Chairman of the People's Democratic Party in Nigeria, that received the award in October of 2014. June 8, 2018 email and photo attached as Exhibit K (emphasis added). The aim of this is to continue without legal justification the threats and extortionate model of practicing law.

Mr. Harris was provided Notice of Termination as Counsel by Clients and Notice of Request to Cease and Desist Contacting Jacqueline Sacs, Wendy Gould and Barbara Ulrich on June 8, 2018, due to the clients reaching out to the firm and not wanting to be abused, as well as informing



Mr. Harris that the firm also has a "**right to remain free from harassing and intimidating tactics, and will protect that right.**" Notice to Mr. Harris, Mr. Diaz, Mr. Santisteban, and Mr. Eaton, attached as Exhibit L (emphasis added).

Mr. Harris' pattern of threats, intimidation, extortion and revealing confidential client and firm information without legal justification violates the Law Firm Non-Disclosure and Confidentiality Agreement enforced for the protection of clients and the law firm. *See* Notice provided on June 8, 2018, Exhibit M.

Continuing this pattern, on June 8, 2018, Mr. Harris, without legal justification for his own pecuniary advantage, unleashes his threats, extortion and intimidation efforts with a series of derogatory comments, such as **coward, scumbag, blasphemous, sociopathic charade, days a lawyer are numbered**, and his continued use of the Bar as an extortion device, stating:

> Tim, you breached the NDA by going behind my back to steal my clients and slandering them to me. You're a **first rate coward and a scumbag**. All your talk about **Jesus is blasphemous garbage**. Trust me, I will be pursing my remedies forthwith. You want a war. You are going to get one. Hope you paid Leonard his fees up front.
>
> Did you inform the clients that (i) you are the target of an SEC investigation; (ii) a Bar investigation; (iii) have never tried a tobacco case; (iv) wouldn't know how to if your life depended on it; (v) you don't have a pot to piss in; and (vi) can't afford to litigate a tobacco case. I doubt it. Accordingly, your actions are retaliatory for my having filed a Bar complaint against you.
>
> Trust me, these clients know about tobacco litigation than you ever will. I can also assure you they will rip you to shreds once they see through your sociopathic charade.
>
> By the way, the Bar is starting to debrief your former employees. Seems like you've been on the Bar's radar for quite sometime. **Your days as a lawyer are numbered. I'm sure your family will be so proud once they find out.** Enjoy your weekend.

June 8, 2018 email attached hereto as Exhibit N (emphasis added). In response to Mr. Harris' written disparagement and threats without legal justification, his former client writes as follows:

> Dear Dr. Howard:
>
> With all that has transpired over the last few days, I wanted to put in writing my thoughts and opinion concerning JB Harris. I would like for this email to be included in the packet you will be sending to the Florida Bar.
>
> My sisters and I have known JB Harris for many years, as he was the counsel who used to represent us. I want the Florida Bar to know that in no way, did you



> "steal" the Gould sisters. Nor did you go behind his back to take over our business. The truth of the matter is very simple. <u>The three of us sought you out.</u>
>
> I also want the Florida Bar to know that JB Harris is one of the most despicable and abusive men walking around on 2 legs. He spoke to all 3 of the Gould sisters in such nasty and demeaning ways. He has said to us on more than one occasion, that "we are to do whatever the __ck he says. If not I will cut you 3 loose and just move on to the next person on my list." Unless it was something he wanted, he always spoke in very rude words to us.
>
> Because of how verbally abusive he is, his threats to each of us and the constant bullying of his clients, the Gould sisters finally fired JB Harris. I can only hope some serious actions will be taken against this lawyer before he does the same to whoever is "next on his list".
>
> Thank you very much.
>
> Barbara Ulrich
> Daughter of Stanley Gould

June 10, 2018 email from Barbara Ulrich, Daughter of Stanley Gould, attached as Exhibit O.

These documented and repeated patterns violate the following rules of professional conduct as promulgated by the Florida Supreme Court:

> A lawyer must not threaten opposing parties with sanctions, disciplinary complaints, criminal charges, or additional litigation to gain a tactical advantage. *See* Florida Supreme Court, Professionalism Expectations: Expectation 3.18; and Rules Regulating the Florida Bar: Rule 4-3.4(g).
>
> A lawyer must not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter. *See* Florida Supreme Court, Rules Regulating the Florida Bar: Rule 4-3.4(g).
>
> A lawyer must not present, participate in presenting, or threaten to present disciplinary charges under these rules solely to obtain an advantage in a civil matter. *See* Florida Supreme Court, Rules Regulating the Florida Bar: Rule 4-3.4(h). [3]

3 Lawyer disciplined for sending a threatening letter to opposing counsel. *The Florida Bar v. Sayler*, 721 So.2d 1152 (Fla. 1998). A criminal defense lawyer violated Rules 4-4.4(a) and 4-8.4(d) for sending a victim of a crime an objectively humiliating and intimidating letter designed to cause her to abandon her criminal complaint. *The Florida Bar v. Buckle*, 771 So. 2d 1131 ; *see also The Florida Bar v. Ratiner*, 46 So. 3d 35 (Fla. 2010). A lawyer should abstain from conduct that diverts the fact-finder's attention from the relevant facts or causes a fact-finder to make a legally impermissible decision. (Professionalism Expectations: Expectation 5.8)



> To opposing parties and their counsel, a lawyer should act with fairness, integrity, and civility, not only in court, but also in all written and oral communications. (Oath of Admission)
>
> Candor and civility must be used in all oral and written communications. (Professionalism Expectations: Expectation 2.2)
>
> A lawyer must avoid disparaging personal remarks or acrimony toward opposing parties, counsel, third parties or the court. (Professionalism Expectations: Expectation 2.3). A lawyer should be civil and courteous in all situations, both professional and personal, and avoid conduct that is degrading to the legal profession. R. Regulating Fla. Bar 3-4.3. [4]
>
> A lawyer's communications in connection with the practice of law, including communications on social media, must not disparage another's character or competence or be used to inappropriately influence or contact others. (Professionalism Expectations: Expectation 2.5); *see* R. Regulating Fla. Bar 4-8.4(d).
>
> A lawyer must not criticize or denigrate opposing parties, witnesses, or the court to clients, media, or members of the public. (Professionalism Expectations: Expectation 4.20); see R. Regulating Fla. Bar 4-8.2(a) and 4-8.4(d)).

These actions without legal justification, for his own pecuniary advantage, and actual malice by Mr. Harris and the firms that will benefit from and support his extortion, are a violation of section 836.05, Florida Statutes crimes against extortion for maliciously threatening.[5]

4 Lawyer disciplined for sending disparaging emails to opposing counsel, calling him a lier, and making improper outbursts directed toward opposing counsel during the litigation. *The Florida Bar v. Norkin*, 132 So.3d 77 (2013)). *See also The Florida Bar v. Abramson*, 3 So.3d 964 (2009); *The Florida Bar v. Buckle*, 771 So.2d 1131 (Fla. 2000) ; *The Florida Bar v. Sayler*, 721 So. 2d 1152 (Fla. 1998); *The Florida Bar v. Ratiner*, 46 So.3d 35 (Fla. 2010). Lawyer disciplined for sending a letter to a court-appointed provisional director of corporation in which he improperly threatened to file suit against provisional director and accused the provisional director of being involved in a conspiracy. *The Florida Bar v. Norkin*, 132 So. 3d 77 (2013); *See also The Florida Bar v. Abramson*, 3 So. 3d 964 (Fla. 2009). "The First Amendment does not protect those who make harassing or threatening remarks about the judiciary or opposing counsel. Under Rule of Professional Conduct 4-8.4(d), lawyers are required to refrain from knowingly disparaging or humiliating other lawyers." *The Florida Bar v. Sayler*, 721 So.2d 1152, 1155 (Fla. 1998).

5 Whoever, either verbally or by a written or printed communication, maliciously threatens to accuse another of any crime or offense, or by such communication maliciously threatens an injury to the person, property or reputation of another, or maliciously threatens to expose another to disgrace, or to expose any secret affecting another, or to impute any deformity or lack of chastity to another, with intent thereby to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will, shall be guilty of a felony of the second degree, punishable as provided in s. <u>775.082</u>, s. <u>775.083</u>, or s. <u>775.084</u>. Under Florida Statute 836.05, the crime of Extortion is committed when a person maliciously threatens to: Accuse another of any crime or offense; Injure the person, property or reputation of another; Expose another to disgrace; Expose any secret affecting another; or Impute any deformity or lack of chastity to another, with the intent to: Extort money or any pecuniary advantage; or Compel any person to do any act or refrain from doing any act against their will. Actual Malice versus Legal Malice. Although it is a subtle distinction, under the Extortion statute, the prosecutor is required to prove the threat was committed with Actual

We did not want to have to report these violations, as this firm in its 23 years of existence, has never reported any fellow member of the Bar to the Bar or to law enforcement and has always tried to resolve disputes and issues amicably and professionally with good faith. Regrettably and with deep disappointment and reluctance, in this instance, the consistent and now almost daily invectives, direct threats and documented Bar and criminal violations leave no option.

Sincerely Yours,

(Phillip) Tim Howard, J.D., Ph.D.

---

Malice, which means "means ill will, hatred, spite, evil intent." This is in contrast to what is known as Legal Malice, which only requires that an act be committed intentionally and without any lawful justification. Penalties for Extortion. The crime of Extortion is a Second-Degree Felony in Florida and is punishable by up to 15 years in prison, 15 years of probation, and a $10,000 fine. *Calamia v. State*, 125 So. 3d 1007 (Fla. 5th DCA 2013) (Actual malice is the standard. "A threat is malicious if it is made intentionally and without any lawful justification."); *McKee v. State*, 715 So.2d 101 (Fla. 5th DCA 1998) (Conviction upheld for threats that defendant will destroy you, destroy your business, accusing of drug use, and threatening to make accusations to a federal agency.). "Maliciously" means wrongfully, intentionally, and without legal justification or excuse. A threat is "malicious" for purposes of extortion statute if it is made intentionally and without any lawful justification. It is not necessary that the person accused of extortion have the ability to carry the threat out. Threats to cause mental or psychological injuries are generally prohibited under extortion statute. Therefore, if you threatened to expose someone's affair to their spouse unless they paid you $1,000,000, the threat could be considered extortion for causing a psychological injury or because it was done for a monetary gain. This is extortion even if you did not know how to contact their spouse. Generally, a claim of extortion cannot be based on a threat to do an act which a person has a lawful right to do, but you may not threaten to undertake an otherwise legal act for your own pecuniary advantage. An attorney that repeatedly engages in conduct considered extortion can be a violation of the Florida RICO Act, pursuant to section 772.04, Florida Statutes.

# EXHIBIT B

HOWARD JUSTICE

RECEIVED 2018 JUN 25 PM 2:39

RECEIVED JUN 25 2018 THE FLORIDA BAR

Howard & Associates
Attorneys at Law, P.A.
Dr. Tim Howard, J.D., Ph.D., Senior Partner*
Florida Supreme Court Certified Mediator

Tallahassee, Florida Office:
1415 East Piedmont Drive, Suite 5
Tallahassee, Florida 32308
Ph: (850) 298-4455
Fax: (850) 216-2537
tim@howardjustice.com

Jacksonville, Florida Office:
444 E. Duval Street
Jacksonville, Florida 32207
Ph: (904) 446-9817
Fax: (904) 446-9825
www.howardjustice.com

June 25, 2018

VIA HAND-DELIVERY

Shanee L. Hinson, Bar Counsel
651 East Jefferson Street
Tallahassee, Florida 32399-2300

Jack Campbell, State Attorney
301 South Monroe Street, Suite 475
Tallahassee, Florida 32399-2300

Re: J.B. Harris v. Phillip Timothy Howard, TFB File No. 2018-00,342(2A); Kim Poling v. Phillip Timothy Howard, TFB File No. 2018-00,343(2A); Bar Complaint Against J.B. Harris and Law Firms Supporting his Violations of Rules 3-4.2, 4-3.4(g) and (h), 4-8.2 (a) and (d), and 4-8.4(d); Violation of Section 836.05, Florida Statutes, Crime of Extortion Including Potential Co-Conspirators. Continuing Acts by Mr. Harris.

Dear Bar Counsel Hinson, and State Attorney Campbell:

Continuing the pattern of violating Florida Bar rules and extortion, Mr. Harris, in response to true statements provided by his former clients concerning his abuse of them, on June 22, 2018, wrote the following derogatory and extortionate demands to his former clients and myself:

> Tim, your sociopathy is exceeded only by your stupidity. In your haste to forestall litigation over the Gould clients by sending to me a 57.105 letter, you procured their defamation and slander of me in the process.
>
> It was not enough for Mss. Ulrich and Gould to simply state they wanted you as their lawyer and leave it at that. As opposed to your having corralled them, as I firmly believe you did. You also encouraged them to assassinate my character and impugn my integrity by appending their scurrilous emails to your 57.105 letter. If they had a lawyer that knew what he was doing, you never would have allowed the publication of their emails.
>
> Accordingly, if by the close of business next Friday, June 29th, Ulrich and Gould do not retract the slanderous and defamatory statements contained in their emails attached to your 57.105 letter and offer up to me their sincere written apologies, I will sue them both for defamation and slander in Miami.
>
> When I do, I will be sure to enumerate all the vicious and vile things Ulrich and Gould have said about their far more intelligent sister, Jacquie, who I note did not fall for your ploy of offering up her "opinion" of me. ...
>
> After I sue Ulrich and Gould, I will then move for your disqualification as their counsel, since you cannot be a defendant in the underlying case and represent at the same time in a derivative defamation and slander action. Which will then give rise to the question of whether you committed malpractice by publishing their ill-conceived emails.

*Admitted to practice in Florida, the District of Columbia, Northern, Middle, and Southern United States District Courts of Florida, the United States Court of Appeals for the 11th Circuit, and the United States Supreme Court. Ph.D, Northeastern University, Law, Policy & Society. Former Visiting Health Law, Bioethics, and Human Rights Scholar and Constitutional Law, Media & Politics and Judicial Process Instructor at Boston University. Former Director of and Professor with Northeastern University's Law & Policy Doctorate Program. President of Cambridge Graduate University International.



June 22, 2018 email from Mr. Harris to Former Clients (emphasis added).

Again, we did not want to have to report these violations, as this firm in its 23 years of existence, has never reported any fellow member of the Bar or to law enforcement and has always tried to resolve disputes and issues amicably and professionally with good faith. Regrettably and with deep disappointment and reluctance, in this instance, the consistent and now almost daily invectives, direct threats and documented Bar and criminal violations leave no option.

Sincerely Yours,

[signature]

(Phillip) Tim Howard, J.D., Ph.D.





Gmail

Tim Howard <tim@howardjustice.com>

**Re: Harris v. Howard CASE NO.: 2018-019879-CA-01 (11th Jud. Cir.)**

1 message

J.B. Harris <jbharrisesq@gmail.com> Fri, Jun 22, 2018 at 1:07 PM
To: Tim Howard <tim@howardjustice.com>
Cc: Neil Epstein <Neil@howardjustice.com>, Tom Woods <tom@howardjustice.com>, Jacqueline Sacs <isacsphoto@gmail.com>, Barbara Ulrich <FtLauderdaleLady@aol.com>, Wendy Gould <wgould112@yahoo.com>, John Paul Leonard <jleonard@mdmc-law.com>, Rick Diaz <rick@rjdpa.com>, Carlos Santisteban <carlos@csjrlaw.com>, Doug Eaton <deaton@eatonwolk.com>, William Wolk <wwolk@eatonwolk.com>

Tim, your sociopathy is exceeded only by your stupidity. In your haste to forestall litigation over the Gould clients by sending to me a 57.105 letter, you procured their defamation and slander of me in the process.

It was not enough for Mss. Ulrich and Gould to simply state they wanted you as their lawyer and leave it at that. As opposed to your having corralled them, as I firmly believe you did. You also encouraged them to assassinate my character and impugn my integrity by appending their scurrilous emails to your 57.105 letter. If they had a lawyer who knew what he was doing, you never would have allowed the publication of their emails.

Accordingly, if by the close of business next Friday June 29th, Ulrich and Gould do not retract the slanderous and defamatory statements contained in their emails attached you your 57.105 letter and offer up to me their sincere written apologies, I will sue them both for defamation and slander in Miami.

When I do, I will be sure to enumerate all the vicious and vile things Ulrich and Gould have said about their far more intelligent sister, Jacquie, who I note did not fall for your ploy of offering up her "opinion" of me. Jacquie knows deep in her heart that her father's case would have died on the vine years ago, since no one else wanted it, or believed in it, the way I have.

After I sue Ulrich and Gould, I will then move for your disqualification as their counsel, since you cannot be a defendant in the underlying case and represent them at the same time in a derivative defamation and slander action. Which will then give rise to the question of whether you committed malpractice by publishing their ill-conceived emails. A question Ulrich and Gould may want answered from a competent malpractice attorney.

GOVERN YOURSELVES ACCORDINGLY

Very truly yours,

On Thu, Jun 21, 2018 at 3:25 PM, Tim Howard <tim@howardjustice.com> wrote:
> Dear Mr. Harris,



> On behalf of all Defendants cited in your action, and to all parties that you provided notice of this action, attached please find the Twenty-One Day Safe Harbor Notice of Unsupported Claims Pursuant to Section 57.105, Florida Statutes, and the corresponding requirement to withdraw these unsupported claims. We are sending this notice via email and will send a hard copy via first class U.S. mail today.
>
> Thank you for your review and compliance with the statutory requirements.
>
> *Tim Howard*
>
> Professor Tim Howard, J.D., Ph.D.
> Howard & Associates, P.A.
>
> HOWARD JUSTICE
>
> Tallahassee, Flolda Office:
> 1415 East Piedmont Drive, Suite 5
> Tallahassee, FL 32308
> (850) 999-8624 (c)
>
> Jacksonville, Florida Office:
> 444 East Duval Street
> Jacksonville, FL 32207
> (850) 298-4455 (o)
> (850 216-2537 (f)
> Law Firm Website: www.howardjustice.com
> tim@howardjustice.com
>
> Cambridge, Massachusetts Office:
> 8 Museum Way, Suite 2407
> Cambridge, MA 02141
> (617) 373-6076
>
> President, Cambridge Graduate University International
> One Broad Street, 14th Floor
> Cambridge, Massachusetts 02142
> (877) 645-6225 (6GLOBAL)
> www.cguiedu.com
> president@cgugiobal.net
> https://www.facebook.com/tim.howard.752861
>
> PLEASE NOTE: This message, including any attachments, may include privileged or confidential information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited. If you are not the intended recipient, please notify the sender by replying to this message and delete it from your system.
>
> J.B. Harris, P.A.
> 3127 Ponce De Leon Blvd.
> Coral Gables, Florida 33134
> Cell: (786) 303-8333
> jbharrisesq@gmail.com

# EXHIBIT C

HOWARD JUSTICE

RECEIVED
2018 AUG 22 PM 3:17
JACK CAMPBELL
STATE ATTORNEY

RECEIVED
AUG 22 2018
THE FLORIDA BAR

Howard & Associates
Attorneys at Law, P.A.
Dr. Tim Howard, J.D., Ph.D., Senior Partner*
Florida Supreme Court Certified Mediator

Tallahassee, Florida Office:
1415 East Piedmont Drive, Suite 5
Tallahassee, Florida 32308
Ph: (850) 298-4455
Fax: (850) 216-2537
tim@howardjustice.com

Jacksonville, Florida Office:
444 E. Duval Street
Jacksonville, Florida 32207
Ph: (904) 446-9817
Fax: (904) 446-9825
www.howardjustice.com

August 22, 2018

VIA HAND-DELIVERY

Shanee L. Hinson, Bar Counsel
651 East Jefferson Street
Tallahassee, Florida 32399-2300

Jack Campbell, State Attorney
301 South Monroe Street, Suite 475
Tallahassee, Florida 32301

Re: Margaret "Peggy" Harris v. Phillip Timothy Howard, TFB File No. 2019-00,088(2A); and Phillip Timothy Howard v. Jonathan B. Harris, TFB File No. 2019-70,042(11J).

Dear Counsel Hinson, and State Attorney Campbell:

In response to and in support of the above-referenced inquiry/complaints, please consider the following:

The Margaret "Peggy" Harris' Inquiry/Complaint under PART FIVE, is submitted with following statement:

"Under penalties of perjury, I declare that the foregoing facts are true, correct and complete." Signed by Margaret "Peggy" Harris, on 7-8-18.

This is an official proceeding under Florida Bar rules and regulations, and based on the language, type set, legal research, attached documents, prior threats to extort, and consistency in his attacks in two other bar complaints, was prepared and ghost written under the guidance, control and direction of Florida attorney, Mr. J.B. Harris.

Under section 837.02(1), Fla. Stat., when perjury takes place in an official proceeding, such as in a Florida Bar complaint, the criminal offense of perjury is a third-degree felony punishable by up to 5 years in prison and a $5,000 fine. If this complaint is considered an unofficial proceeding, perjury would be considered a misdemeanor of the first degree, punishable by up to one (1) year in jail, (1) year of probation, and $1,000 in fines. Finally, if this complaint is considered before a

*Admitted to practice in Florida, the District of Columbia, Northern, Middle, and Southern United States District Courts of Florida, the United States Court of Appeals for the 11th Circuit, and the United States Supreme Court. Ph.D, Northeastern University, Law, Policy & Society. Former Visiting Health Law, Bioethics, and Human Rights Scholar and Constitutional Law, Media & Politics and Judicial Process Instructor at Boston University. Former Director of and Professor with Northeastern University's Law & Policy Doctorate Program. President of Cambridge Graduate University International.



public servant in the performance of his or her official duty, perjury would be a misdemeanor of the second degree under section 837.06, Fla. Stat.

Unfortunately for Mrs. Peggy Harris in acceding to Mr. J.B. Harris' agenda and writings, she has sworn to this bar complaint under penalties of perjury. The exhibits attached to this 7-8-18 sworn statement are dated 7/30/18, 7/10/18, 7/30/18, 7/30/18, and 7/30/18, respectively. *See* Exhibit A, Exhibit D, Exhibit E, and Exhibit F. They are all printed from Mr. J.B. Harris' gmail account, jbharrisesq@gmail.com, on July 31, 2018, July 30, 2018, and August 3, 2018. These emails are not from Mrs. Peggy Harris. While these exhibits do not constitute a bar violation, they are material to Mrs. Peggy Harris' (Mr. J.B. Harris') claim of such a violation.

This is absolute perjury as one cannot swear under penalty of perjury to events that have not happened, and one can't believe that what one swears to is true when they have not happened. Thus, they are false, and all statements and attachments were material to the claim. It is also too late to recant this perjury as the complaint and response have taken place. This is the essence of perjury and a criminal violation under section 867.02(1), Fla. Stat. This may also violate section 837.021(1), Fla., Stat., since there are two or more material statements in official proceeding under oath that contradict each other and may constitute a second-degree felony as well.

Moreover, it is a bar violation to present false evidence. Under rule 4-1.2(d), "A lawyer shall not counsel a client to engage, or assist a client, in conduct the lawyer knows or reasonably should know is criminal or fraudulent." *See* Florida Bar Ethics Opinion 75-19. It is also a bar violation to offer evidence that the lawyer knows to be false and should disclose that the evidence is false to the tribunal. Rule 4-3.3 (b). It is fair to state that Mr. J.B. Harris authored and prepared the entire bar complaint and is using Mrs. Peggy Harris as a front and tool for his own extortionate and denigrating agendas. In that instance, he has violated Rule 4-3.3(a)(1), (2), and (4), which require candor toward the tribunal, and has made a false statement, and has failed to correct or disclose a false statement of material fact or offered evidence that the lawyer knows to be false. In addition, Mr. J.B. Harris must report and disclose that this is his bar complaint.

Mr. J.B. Harris is consistently threatening and extorting. Just yesterday, pertaining to health insurance that this firm pays for Mr. J.B. Harris of approximately $2,500 a month, that was understood to be automatically deducted from the account, and was rectified prior to the firm being aware his threat and extortion, Mr. J.B. Harris wrote:

"Tim, I suggest you reactivate my insurance today or I will be at your office first thing tomorrow to spend a little quality time with you. You've placed the lives of my children at risk and that won't stand."

August 21, 2018 email from Mr. J.B. Harris, attached.

As to the merits of the complaint, consider the following:

This firm has been involved in tobacco litigation since its founding in 1995 and has been counsel on numerous tobacco trials and cases, including some of the largest verdicts in the nation—*Chiles, et al., v. American Tobacco, et al.,* (resulted in over $20 billion for the State of Florida); *Evans v. Lorillard* (resulted in the largest verdict in the history of Massachusetts for a personal injury case at $150 million and settled for over $79 million). Pertaining to this particular complaint, the firm was counsel in a 7-week Jacksonville, Florida trial involving *Sermons v. RJR*, that took place when the depositions of Richard Harris were also taking place, due to his imminent demise and the resistance of defendants to



permit him to be deposed earlier. Thus, there was clear capacity to litigate the action, no failure to disclose, nor was there a solicitation. In fact, former counsel for Richard Harris, the law firm of Lyons & Farrar, sought this firm out to assist in the prosecution of the case, and Richard Harris chose to drop former counsel and solely retain this firm. This is verified in the record of this action.

It is false for Mr. J.B. Harris (since Mrs. Peggy Harris would have no capacity or knowledge) to assert that this firm did not know how to prepare a client for a tobacco deposition having done nearly 100 tobacco depositions in the past. The concern was that a junior associate had significant challenges in the first day of defending Mr. Richard Harris in Defendants' deposition of him, while the senior partner was in a tobacco trial in Jacksonville. The firm's senior partner left the tobacco trial for a day to get the testimony in order and identified the critical issues and reviewed them with the associate and paralegal assisting with the deposition. The trial preservation testimony was organized, focused and covered the materials needed to effectively prosecute Mr. Richard Harris' case.

This also involved reviewing portions of the deposition defended by the junior associate. This required reviewing the testimony at issue, reviewing the language with the client, and obtaining the client's desired changes through an appropriate errata correction. Rule 1.310 (e), Florida Rules of Civil Procedure, provides that:

"any changes in form or substance that the witness wants to make must be listed in writing by the offer with a statement of the reasons given by the witness for making the changes. The changes must be attached to the transcript."

Errata sheet clarifications from a deposition transcript are standard procedure for all depositions. This attempt to make errata sheets nefarious is inconsistent with the Florida Rules of Civil Procedure. Errata sheets were done for both Mr. Richard Harris and Mrs. Peggy Harris.

In fact, under oath, Mrs. Peggy Harris stated in her May 23, 2017 deposition, pages 332-336, relevant pages attached, the following pertaining to the errata sheets. These statements confirm that the relevant portions of the transcripts were read to him, and that he knowingly agreed to change the testimony and signed confirming the changes.

Q. Okay. And so I asked you before the break whether you were aware, whether you knew whether your husband reviewed the deposition that I took of him, which was a multi-hundred-page transcript. Did he review that?
A. I believe he did, but he couldn't see it, but it was read to him.
Q. Okay. Who read it to him?
A. One of the attorneys.
Q. How long did it take?
A. A while. They came in early, yeah.
Q. They came in early the morning of June 25th?
A. I don't remember the morning, but they came in early to do it.
. . .
Q. Okay. Do you remember anything about the circumstances of what was read to him?
A. No.
Q. Do you know one way or the other whether that deposition was read to him from –
A. I believe it was.
Q. – start to finish?
A. I believe it was.
. . .
Q. Do you know whether he actually told the lawyers whether he had changes to make to his deposition? Did he actually tell them that?
A. I believe he did.
Q. How did he do that?
A. Verbally, I would think. But I'm not—I shouldn't say, because I'm not sure.
. . .
Q. Do you believe that when your husband signed those errata sheets, that he understood what he was signing?
A. I would think he would. I wouldn't think he would sign if he didn't.
Q. And my question was just a little bit different. Given his health condition at the time, do you think he understood what he was signing when he signed those errata sheets?
A. I would say yes.
Q. Okay. So is the answer that you're not sure whether he knew what he was signing?
A. Again, I wouldn't think he would sign unless he knew what he was signing.
Q. Where you in the room when he signed them?
A. I don't—yeah, I think I was.
. . .
Q. After his deposition, after I had the opportunity to ask him questions, did Mr. Harris ever say to you that he had changes that he wanted to make to his testimony?
A. I believe he did.

Moreover, in response to the deposition reviews, Mr. Richard Harris and Mrs. Peggy Harris were both read the relevant portion of their transcripts and under oath made changes to their transcripts. This was confirmed by Mr. Richard Harris and reconfirmed by Mrs. Peggy Harris, wherein she repeatedly states under "penalties of perjury" in errata sheets after reviewing her testimony and providing corrections that "I do remember our attorneys coming over prior to Richard's deposition and reviewing his deposition testimony from the previous days with him, and making sure that the testimony he had given, and making all the corrections that Richard suggested." 1 *See* relevant portions of transcripts attached. Neither Mr. Richard Harris nor Mrs. Peggy Harris were ordered to sign the errata sheets, and they were reviewed and read to both of them by either associate or senior counsel before they signed the errata sheets. *See* transcript errata sheets attached.

In Mrs. Peggy Harris' May 23, 2018 deposition, she confirms in pages 344-346, attached, that shortly after Mr. Richard Harris passed, the autopsy was conducted in the Faith Funeral Home in Havana, Florida. Regional Pathology and Autopsy Services out of Oakland, California, attached, had their staff fly into Tallahassee. It is demonstrably false that Mr. Richard Harris' body was shipped to California, and in fact, the firm flew the medical autopsy staff from California into Florida to both do an autopsy and obtain tissue samples for medical pathology determination of disease and etiology. Moreover, there was no inference or reference for the client to pay for the costs expended in the case, and it is not understood where or how the language of the email can be interpreted as such.

There was no abandonment as a client. The probate matter was non-prejudicial, as it can be refiled. The hearing notice was missed due to having two Harris probate matters, thinking that the notice was covered,

1 In the errata sheets she stated, "Our attorneys did review Richard's depo transcripts with him each day, and Richard clarified his answers and the changes he wanted made to the transcript." She also stated, "In discussions with Richard, our attorneys prepared the errata sheets according to Richard's instructions and reviewed them with Richard. Richard verified that the errata sheets were consistent with the testimony he wanted to give." Finally, she stated, "Richard knew exactly what he was signing because our attorneys reviewed the depo transcripts and errata sheets with Richard before he signed them, and Richard verified that the errata sheets were consistent with the testimony he wanted to give."

and over 100 probate cases to manage after the junior associate counsel left. This particular matter was understood to be covered by experienced probate counsel, Matt Hinson, Esq., who was hired to handle the 100 or so probate matters. When the Harris probate matter came to the firm's attention, Mr. Hinson was immediately contacted concerning this particular case, and assigned to handle the probate action. Finally, Mr. J.B. Harris ability to operate as an attorney is due to this law firm.2

Unknown to this firm, Mr. Jaakan Williams recommended several lawyer sources to Mrs. Peggy Harris, including the Searcy, Denny law firm, and Christina Opsohal, who had worked on the Richard Harris action. Mr. J.B. Harris was included due to Mr. Jaakan's meeting him through the Howard & Associates law firm. Moreover, Mr. Jaakan Williams did not say the errata sheets were "Howard's concoction of the fraudulent errata sheets."

There has been no refusal to pay the $500 tissue sample bill, as the emails demonstrate. We stated, "we can pay the $500 or let us know whoever is going to pay the costs." All that was asked is how did the client wish to handle the matter, in our efforts to avoid spoliation of the evidence.

Furthermore, it is clearly evident that Mr. J.B. Harris' language is definitively found in this bar complaint, where he again uses his signature labels and terms "blasphemous", "delusional", "duplicitous", "deceptive" and "dishonest" as he has stated in other writings.3 This is language from Mr. J.B. Harris

2 The firm is currently paying Mr. J.B. Harris $21,000 a month, so that he can prosecute tobacco cases, as is referenced in the current complaint against Mr. J.B. Harris. If this firm didn't pay Mr. Harris, he couldn't be working on Mrs. Peggy Harris' case and continue his ghost writings to attack this firm.

3 For example, on August 7, 2018, the following was forwarded to the Florida Bar and State Attorney:

> As part of the ongoing reporting of the various Bar violations and extortion of Mr. J.B. Harris, consistent with his pattern and practice, attached as Exhibit A please find the July 30, 2018 correspondence from Mr. J.B. Harris, documenting disparaging remarks, degrading to the legal profession, in unnecessarily calling Mr. Howard "pathetic, desperate and delusional." This language violates the rules regulating the Florida Bar, 3-4.3, 4-8.2(a), and 4-8.4(d), as cited below.
>
> Mr. Harris again distorts the facts when he states that the client was "abandoned". Mr. Harris knows that the law firm experienced a funding gap for 6-8 weeks due to corrupt advisors. This funding gap was solved. In fact, Mr. Harris is right now being paid $21,000 a month by this law firm and its lender so he can pursue tobacco cases, including the action of *Richard Harris v. RJR and Phillip Morris.* In fact, without this firm's funding, he is unable to represent Mrs. Margaret Harris or have a life. With the funding gap solved, the law firm was able to assign and/or hire probate counsel to address the 100 plus tobacco litigation related probate actions, including the probate action for Mrs. Margaret Harris.

Mr. Harris uses the terms "delusional", "duplicitous", and is following through with his extortionate threat wherein he wrote on June 6, 2018:

> Tim, if you think you are having trouble with the Bar's investigation of your practices, BWCI Pension Trustees Limited, Ted Doukas, and everyone else who is still after you, you are about to walk into a shit storm if you steal the Goulds from me as my clients.



that Mrs. Peggy Harris would not likely parrot.

Mr. J.B. Harris then ghost writes to state there was a "ballistic" reaction to new counsel, and defamed and slandered Mr. J.B. Harris. This is from an email intended only to Mr. Hinson and counsel for the firm, not knowing that Mrs. Peggy Harris was embedded in the reply all. Next, as referenced in the prior bar violation reports on Mr. J.B. Harris, it was stated solely to Mr. Hinson, that "Mr. Harris has an extensive history of bar violations and extortion that I was forced to report." This is factually true, not slanderous, and does not state a record of adjudicated bar violations, as inferred by Mr. Harris.

The facts demonstrate that this bar complaint was written by Mr. J.B. Harris as part of his continued efforts at extortion. As pointed out in the many prior filings, these documented and repeated, upon repeated patterns violate the following rules of professional conduct as promulgated by the Florida Supreme Court:

> A lawyer must not threaten opposing parties with sanctions, disciplinary complaints, criminal charges, or additional litigation to gain a tactical advantage. *See* Florida Supreme Court, Professionalism Expectations: Expectation 3.18; and Rules Regulating the Florida Bar: Rule 4-3.4(g).
>
> A lawyer must not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter. *See* Florida Supreme Court, Rules Regulating the Florida Bar: Rule 4-3.4(g).
>
> A lawyer must not present, participate in presenting, or threaten to present disciplinary charges under these rules solely to obtain an advantage in a civil matter. *See* Florida Supreme Court, Rules Regulating the Florida Bar: Rule 4-3.4(h). 4
>
> To opposing parties and their counsel, a lawyer should act with fairness, integrity, and civility, not only in court, but also in all written and oral communications. (Oath of Admission)
>
> Candor and civility must be used in all oral and written communications. (Professionalism Expectations: Expectation 2.2)

> I will lien the file for costs and fees, sue you for tortious interference and unpaid contribution to costs, fraud and everything else I can think of. I will also amend my complaint with the Bar and file a complaint against Nell as well.

On June 8, 2018, Mr. Harris writes: "You're a first-rate coward and scumbag. All your talk about Jesus is blasphemous garbage." "I can assure you they (Gould sisters) will rip you to shreds once they see through your sociopathic charade."

4 Lawyer disciplined for sending a threatening letter to opposing counsel. *The Florida Bar v. Sayler*, 721 So.2d 1152 (Fla. 1998). A criminal defense lawyer violated Rules 4-4.4(a) and 4-8.4(d) for sending a victim of a crime an objectively humiliating and intimidating letter designed to cause her to abandon her criminal complaint. *The Florida Bar v. Buckle*, 771 So. 2d 1131; *see also The Florida Bar v. Ratiner*, 46 So. 3d 35 (Fla. 2010). A lawyer should abstain from conduct that diverts the fact-finder's attention from the relevant facts or causes a fact-finder to make a legally impermissible decision. (Professionalism Expectations: Expectation 5.8)



> A lawyer must avoid disparaging personal remarks or acrimony toward opposing parties, counsel, third parties or the court. (Professionalism Expectations: Expectation 2.3). A lawyer should be civil and courteous in all situations, both professional and personal, and avoid conduct that is degrading to the legal profession. R. Regulating Fla. Bar 3-4.3. 5
>
> A lawyer's communications in connection with the practice of law, including communications on social media, must not disparage another's character or competence or be used to inappropriately influence or contact others. (Professionalism Expectations: Expectation 2.5); *see* R. Regulating Fla. Bar 4-8.4(d).
>
> A lawyer must not criticize or denigrate opposing parties, witnesses, or the court to clients, media, or members of the public. (Professionalism Expectations: Expectation 4.20); see R. Regulating Fla. Bar 4-8.2(a) and 4-8.4(d)).

This is a response to the complaint of Margaret "Peggy" Harris, which in reality is a complaint by J.B. Harris. Consistent with the prior responses, these are further bar violations by Mr. J.B. Harris.

As previously stated as pertaining to Mr. J.B. Harris. We did not want to have to report these violations, as this firm in its 23 years of existence, has never reported any fellow member of the Bar to the Bar or to law enforcement and has always resolved disputes and issues amicably and professionally. Regrettably and with deep disappointment and reluctance, in this instance, the consistent and now almost daily invectives, media statements, direct threats and undisputed Bar and criminal violations leave no option.

Sincerely Yours,

Tim Howard

(Phillip) Tim Howard, J.D., Ph.D.

5 Lawyer disciplined for sending disparaging emails to opposing counsel, calling him a liar, and making improper outbursts directed toward opposing counsel during the litigation. *The Florida Bar v. Norkin*, 132 So.3d 77 (2013)). *See also The Florida Bar v. Abramson*, 3 So.3d 964 (2009); *The Florida Bar v. Buckle*, 771 So.2d 1131 (Fla. 2000); *The Florida Bar v. Sayler*, 721 So. 2d 1152 (Fla. 1998); *The Florida Bar v. Ratiner*, 46 So.3d 35 (Fla. 2010). Lawyer disciplined for sending a letter to a court-appointed provisional director of corporation in which he improperly threatened to file suit against provisional director and accused the provisional director of being involved in a conspiracy. *The Florida Bar v. Norkin*, 132 So. 3d 77 (2013); *See also The Florida Bar v. Abramson*, 3 So. 3d 964 (Fla. 2009). "The First Amendment does not protect those who make harassing or threatening remarks about the judiciary or opposing counsel. Under Rule of Professional Conduct 4-8.4(d), lawyers are required to refrain from knowingly disparaging or humiliating other lawyers." *The Florida Bar v. Sayler*, 721 So.2d 1152, 1155 (Fla. 1998).

Gmail by Google — Tim Howard <tim@howardjustice.com>

**(no subject)**
1 message

J.B. Harris <jbharrisesq@gmail.com> — Tue, Aug 21, 2018 at 2:17 PM
To: tim@howardjustice.com
Cc: John Paul Leonard <jleonard@mdmc-law.com>

Tim, I suggest you reactivate my insurance today or I will be at your office first thing tomorrow to spend a little quality time with you. You've placed the lives of my children at risk and that won't stand.

J.B. Harris, P.A.
3127 Ponce De Leon Blvd.
Coral Gables, FL 33134
786-303-8333
jbharrisesq@gmail.com

Sent from my iPhone. Please forgive any misspellings.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

# EXHIBIT D

HOWARD JUSTICE

RECEIVED

2018 AUG -8 PM 1:41

AUG - 8 2018

THE FLORIDA BAR

Howard & Associates
Attorneys at Law, P.A.
Dr. Tim Howard, J.D., Ph.D., Senior Partner*
Florida Supreme Court Certified Mediator

Tallahassee, Florida Office:
1415 East Piedmont Drive, Suite 5
Tallahassee, Florida 32308
Ph: (850) 298-4455
Fax: (850) 216-2537
tim@howardjustice.com

Jacksonville, Florida Office:
444 E. Duval Street
Jacksonville, Florida 32207
Ph: (904) 446-9817
Fax: (904) 446-9825
www.howardjustice.com

August 7, 2018

VIA HAND-DELIVERY

Shanee L. Hinson, Bar Counsel
651 East Jefferson Street
Tallahassee, Florida 32399-2300

Jack Campbell, State Attorney
301 South Monroe Street, Suite 475
Tallahassee, Florida 32301

Re: J.B. Harris v. Phillip Timothy Howard, TFB File No. 2018-00,342(2A); Kim Poling v. Phillip Timothy Howard, TFB File No. 2018-00,343(2A). Bar Complaint Against J.B. Harris and Law Firms Supporting his Violations of Rules 3-4.3, 4-3.4(g) and (h), 4-8.2 (a) and (d), and 4-8.4(d); Violation of Section 836.05, Florida Statutes, Crime of Extortion Including Potential Co-Conspirators. Continuing Acts by Mr. Harris.

Dear Counsel Hinson, and State Attorney Campbell:

As part of the ongoing reporting of the various Bar violations and extortion of Mr. J.B. Harris, consistent with his pattern and practice, attached as Exhibit A please find the July 30, 2018 correspondence from Mr. J.B. Harris, documenting disparaging remarks, degrading to the legal profession, in unnecessarily calling Mr. Howard "pathetic, desperate and delusional." This language violates the rules regulating the Florida Bar, 3-4.3, 4-8.2(a), and 4-8.4(d), as cited below.

Mr. Harris again distorts the facts when he states that the client was "abandoned". Mr. Harris knows that the law firm experienced a funding gap for 6-8 weeks due to corrupt advisors. This funding gap was solved. In fact, Mr. Harris is right now being paid $21,000 a month by this law firm and its lender so he can pursue tobacco cases, including the action of *Richard Harris v. RJR and Phillip Morris*. In fact, without this firm's funding, he is unable to represent Mrs. Margaret Harris or have a life. With the funding gap solved, the law firm was able to assign and/or hire probate counsel to address the 100 plus tobacco litigation related probate actions, including the probate action for Mrs. Margaret Harris.

The notice of hearing on Mrs. Margaret Harris probate action was missed due to the high volume of probate notices and understanding that this was one of the 100 plus probate cases that probate counsel was handling. Responsibility was taken for this oversight and all these cases are caught up. Once this

*Admitted to practice in Florida, the District of Columbia, Northern, Middle, and Southern United States District Courts of Florida, the United States Court of Appeals for the 11th Circuit, and the United States Supreme Court. Ph.D, Northeastern University, Law, Policy & Society. Former Visiting Health Law, Bioethics, and Human Rights Scholar and Constitutional Law, Media & Politics and Judicial Process Instructor at Boston University. Former Director of and Professor with Northeastern University's Law & Policy Doctorate Program. President of Cambridge Graduate University International.



matter was brought to senior counsel's attention, correspondence was sent to Mrs. Margaret Harris, and private probate counsel Matt Hinson, Esq., was instructed to get the action in order. There was no prejudice to Mrs. Harris as private probate counsel was and is able to refile the action, and the only asset of consequence is the underlying tobacco lawsuit that was stayed.

Mr. Harris goes on to distort the email intended to be made solely to private and probate-counsel hired on the underlying case, not aware that the former client was copied in reply all. The email states that Mr. Harris has "an extensive history of bar violations and extortion that I was forced to report," which all of the filings to date demonstrate is a documented and accurate statement. Importantly, in response Mr. Harris does not challenge the extortion statement.

Mr. Harris then through legerdemain distorts the "history" of Bar violation statement by adding "an extensive record of Bar violations" which implies adjudicated Bar violations, which I would not have had to report and didn't say. He uses his "record of Bar violations" (instead of history) language legerdemain to claim slander. He then says he will add a slander count to a suit that has never been served due to its frivolous nature, when the claimed slander is actually due to his distortion of language.

Finally, Mr. Harris adds a link to an article that concerns another extortion attempt coordinated with a prison inmate that the plaintiff (that has a history of gambling, assault and weapons charges) is protecting. The prison inmate is a dismissed former consultant that scammed funds (the source and cause of the SEC investigation) from an investment company started as a university project. The complaint is deeply flawed factually and structurally. The complaint has never been served but looks to be designed for settlement leverage through media coverage.

As pointed out in the many prior filings, these documented and repeated, upon repeated patterns violate the following rules of professional conduct as promulgated by the Florida Supreme Court:

> A lawyer must not threaten opposing parties with sanctions, disciplinary complaints, criminal charges, or additional litigation to gain a tactical advantage. *See* Florida Supreme Court, Professionalism Expectations: Expectation 3.18; and Rules Regulating the Florida Bar: Rule 4-3.4(g).
>
> A lawyer must not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter. *See* Florida Supreme Court, Rules Regulating the Florida Bar: Rule 4-3.4(g).
>
> A lawyer must not present, participate in presenting, or threaten to present disciplinary charges under these rules solely to obtain an advantage in a civil matter. *See* Florida Supreme Court, Rules Regulating the Florida Bar: Rule 4-3.4(h). 1
>
> To opposing parties and their counsel, a lawyer should act with fairness, integrity, and civility, not only in court, but also in all written and oral communications. (Oath of Admission)

1 Lawyer disciplined for sending a threatening letter to opposing counsel. *The Florida Bar v. Sayler*, 721 So.2d 1152 (Fla. 1998). A criminal defense lawyer violated Rules 4-4.4(a) and 4-8.4(d) for sending a victim of a crime an objectively humiliating and intimidating letter designed to cause her to abandon her criminal complaint. *The Florida Bar v. Buckle*, 771 So. 2d 1131 ; *see also The Florida Bar v. Ratiner*, 46 So. 3d 35 (Fla. 2010). A lawyer should abstain from conduct that diverts the fact-finder's attention from the relevant facts or causes a fact-finder to make a legally impermissible decision. (Professionalism Expectations: Expectation 5.8)



> Candor and civility must be used in all oral and written communications. (Professionalism Expectations: Expectation 2.2)
>
> A lawyer must avoid disparaging personal remarks or acrimony toward opposing parties, counsel, third parties or the court. (Professionalism Expectations: Expectation 2.3). A lawyer should be civil and courteous in all situations, both professional and personal, and avoid conduct that is degrading to the legal profession. R. Regulating Fla. Bar 3-4.3. 2
>
> A lawyer's communications in connection with the practice of law, including communications on social media, must not disparage another's character or competence or be used to inappropriately influence or contact others. (Professionalism Expectations: Expectation 2.5); *see* R. Regulating Fla. Bar 4-8.4(d).
>
> A lawyer must not criticize or denigrate opposing parties, witnesses, or the court to clients, media, or members of the public. (Professionalism Expectations: Expectation 4.20); see R. Regulating Fla. Bar 4-8.2(a) and 4-8.4(d)).

We did not want to have to report these violations, as this firm in its 23 years of existence, has never reported any fellow member of the Bar to the Bar or to law enforcement and has always tried to resolve disputes and issues amicably and professionally through overcoming evil with good. Regrettably and with deep disappointment and reluctance, in this instance, the consistent and now almost daily invectives, media statements, direct threats and undisputed Bar and criminal violations leave no option.

Sincerely Yours,

(Phillip) Tim Howard, J.D., Ph.D.

2 Lawyer disciplined for sending disparaging emails to opposing counsel, calling him a liar, and making improper outbursts directed toward opposing counsel during the litigation. *The Florida Bar v. Norkin*, 132 So.3d 77 (2013)). *See also The Florida Bar v. Abramson*, 3 So.3d 964 (2009); *The Florida Bar v. Buckle*, 771 So.2d 1131 (Fla. 2000) ; *The Florida Bar v. Sayler*, 721 So. 2d 1152 (Fla. 1998); *The Florida Bar v. Ratiner*, 46 So.3d 35 (Fla. 2010). Lawyer disciplined for sending a letter to a court-appointed provisional director of corporation in which he improperly threatened to file suit against provisional director and accused the provisional director of being involved in a conspiracy. *The Florida Bar v. Norkin*, 132 So. 3d 77 (2013); *See also The Florida Bar v. Abramson*, 3 So. 3d 964 (Fla. 2009). "The First Amendment does not protect those who make harassing or threatening remarks about the judiciary or opposing counsel. Under Rule of Professional Conduct 4-8.4(d), lawyers are required to refrain from knowingly disparaging or humiliating other lawyers." *The Florida Bar v. Sayler*, 721 So.2d 1152, 1155 (Fla. 1998).



Gmail

Tim Howard <tim@howardjustice.com>

**Fwd: E/O Richard Harris P/R Margaet Harris CASE NO.: 2014-CA-000337 Circuit Court of Gasden County**
1 message

J.B. Harris <jbharrisesq@gmail.com> Mon, Jul 30, 2018 at 11:05 PM
To: "Matthew Hinson Esq." <matt@hinsonlawpa.com>
Cc: tim@howardjustice.com, John Paul Leonard <jleonard@mdmc-law.com>, neil@howardjustice.com, tom@howardjustice.com

Matt, Howard is pathetic, desperate and delusional. Mrs. Harris didn't respond to him because she fired Howard weeks ago after he abandoned her as a client.

Howard has been sanctioned by the Bar once before — check his Bar history — and is currently under investigation by the Bar for at least three complaints filed against him. He is also under investigation by the SEC. I also am suing him and will add a count for slander for his claiming that I have an extensive record of Bar violations as set forth on the email below.

Here is but one more example of Howard's MO which you will no doubt fond of interest. http://www.wctv.tv/content/news/Former-Nole-current-Godby-coach-Fuller-sues-lawyer-for-allegedly-stealing-money-487522001.html

Knowing that he is no longer counsel for Mrs. Harris, his copying her on the email to you is but another example of his total disregard for the rules and the law. By contrast, I've never been sanctioned by the Bar or any court.

You are best to remain clear.

Regards.

J.B. Harris, P.A.
3127 Ponce De Leon Blvd.
Coral Gables, FL 33134
786-303-8333
jbharrisesq@gmail.com

Sent from my iPhone. Please forgive any misspellings.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

Begin forwarded message:

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.
Begin forwarded message:

On Monday, July 30, 2018, 7:48 PM, Tim Howard <tim@howardjustice.com> wrote:

Matt,

She didn't respond to me. Mr. Harris has an extensive history of bar violations and extortion that I was forced to report. We sent what we had in the file and I

now.

Thank you for your availability. This case may yet return to the firm. In the interim, please return the fee over the next week or two.

*Tim Howard*

Professor Tim Howard, J.D., Ph.D.
Howard & Associates, P.A.

HOWARD JUSTICE

Tallahassee, Floida Office:
1415 East Piedmont Drive, Suite 5
Tallahassee, FL 32308
(850) 999-8624 (o)

Jacksonville, Florida Office:
444 East Duval Street
Jacksonville, FL 32207
(850) 298-4455 (o)
(850 216-2537 (f)
Law Firm Website: www.howardjustice.com
tim@howardjustice.com

Cambridge, Massachusetts Office:
8 Museum Way, Suite 2407
Cambridge, MA 02141
(617) 373-6076

President, Cambridge Graduate University International
One Broad Street, 14th Floor
Cambridge, Massachusetts 02142
(877) 645-6225 (6GLOBAL)
www.cguiedu.com
president@cguglobal.net
https://www.facebook.com/tim.howard.752861

PLEASE NOTE: This message, including any attachments, may include privileged or confidential information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited. If you are not the intended recipient, please notify the sender by replying to this message and delete it from your system.

On Mon, Jul 30, 2018 at 12:32 PM, Matthew Hinson, Esq. <matt@hinsonlawpa.com> wrote:

Tim:

This email explains why I did not receive return contact from the client. Apparently she did not want my office to represent her. Did she by chance respond to you regarding the email you sent her about retaining my firm on her behalf? As such, I will send your funds back to you related to the probate case. Please advise where you would like the funds mailed.

Also, other than what you sent over, I do not have any other documents in my file. I was still waiting on your office sending a copy of the petition for administration so that the filings would have been similar.

Thanks,

Matt

Matthew H. Hinson, Esq.

The Hinson Law Firm, P.A.

300 West Adams Street, Suite 500

Jacksonville, FL 32202

Telephone: (904) 527-1700

Facsimile: (904) 355-8088

www.ProbateForFlorida.com

<Outlook-1487738434.bmp>

The information in this email is privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this transmission (including any attachments) is strictly prohibited. If you received this email in error, please notify the sender via reply email and immediately delete this email from your system.

To ensure compliance with Internal Revenue Circular 230, we inform you that any U.S. Federal tax advice contained in this communication is not for use, and cannot be used, for the purposes of matter(s) addressed herein.

# EXHIBIT E

HOWARD JUSTICE

RECEIVED
2018 JUN 28 PM 12:40

RECEIVED
JUN 28 2018
THE FLORIDA BAR

Howard & Associates
Attorneys at Law, P.A.
Dr. Tim Howard, J.D., Ph.D., Senior Partner*
Florida Supreme Court Certified Mediator

Tallahassee, Florida Office:
1415 East Piedmont Drive, Suite 5
Tallahassee, Florida 32308
Ph: (850) 298-4455
Fax: (850) 216-2537
tim@howardjustice.com

Jacksonville, Florida Office:
444 E. Duval Street
Jacksonville, Florida 32207
Ph: (904) 446-9817
Fax: (904) 446-9825
www.howardjustice.com

June 28, 2018

VIA HAND-DELIVERY

Shanee L. Hinson, Bar Counsel
651 East Jefferson Street
Tallahassee, Florida 32399-2300

Jack Campbell, State Attorney
301 South Monroe Street, Suite 475
Tallahassee, Florida 32399-2300

Re: J.B. Harris v. Phillip Timothy Howard, TFB File No. 2018-00,342(2A); Kim Poling v. Phillip Timothy Howard, TFB File No. 2018-00,343(2A); Bar Complaint Against J.B. Harris and Law Firms Supporting his Violations of Rules 3-4.2, 4-3.4(g) and (h), 4-8.2 (a) and (d), and 4-8.4(d); Violation of Section 836.05, Florida Statutes, Crime of Extortion Including Potential Co-Conspirators. Continuing Acts by Mr. Harris, and Violation of Rules 4-7.18 (b) and 2(b)(1)(B) and (F), Against Solicitation, and Rule 4-8.4(d), Against Conduct Prejudicial to the Administration of Justice.

Dear Bar Counsel Hinson, and State Attorney Campbell:

On March 5, 2018, Mr. Harris validates his pattern of misrepresentations and ghost-writings to advance his interests.1 Mr. Harris solicited clients to drop this law firm in order to increase his potential fee. He falsely stated that he hadn't been paid in 3 months. He then wrote a false statement to the clients that "Mr. Howard's firm is out of business."

This was part of his written actions to harm the firm and solicit business, while still being paid handsomely. He then provided his ghost-written email for the clients to use in order to advance his solicitation, and did a follow-up the next day to verify that the solicitation scheme was

1 This followed one week after Mr. Harris' February 26, 2018 extortion and threats (Exhibit D of June 21, 2018 Response to Bar Complaint, and Bar Complaint Against J.B. Harris), after receiving approximately $42,000 in February, including a $15,000 bonus.

*Admitted to practice in Florida, the District of Columbia, Northern, Middle, and Southern United States District Courts of Florida, the United States Court of Appeals for the 11th Circuit, and the United States Supreme Court. Ph.D, Northeastern University, Law, Policy & Society. Former Visiting Health Law, Bioethics, and Human Rights Scholar and Constitutional Law, Media & Politics and Judicial Process Instructor at Boston University. Former Director of and Professor with Northeastern University's Law & Policy Doctorate Program. President of Cambridge Graduate University International.



effective. March 5, 2018 and March 6, 2018 emails from Mr. Harris to Clients, attached.

These actions violate Rule 4-7.18 of the Rules Regulating the Florida Bar. The rule states as follows:

*RULE 4-7.18 DIRECT CONTACT WITH PROSPECTIVE CLIENTS*

(a) Solicitation. Except as provided in subdivision (b) of this rule, a lawyer may not:

(b) Written Communication.

(1) A lawyer may not send, or knowingly permit to be sent, on the lawyer's behalf or on behalf of the lawyer's firm or partner, an associate, or any other lawyer affiliated with the lawyer or the lawyer's firm, a written communication directly or indirectly to a prospective client for the purpose of obtaining professional employment if:

(B) the written communication concerns a specific matter and the lawyer knows or reasonably should know that the person to whom the communication is directed is represented by a lawyer in the matter;

(D) the communication involves coercion, duress, fraud, overreaching, harassment, intimidation, or undue influence;

These actions also violate Rule 4-8.4(d) of the Rules Regulating the Florida Bar. The rule states as follows:

*RULE 4-8.4 MISCONDUCT*

A lawyer shall not:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation, except that it shall not be professional misconduct for a lawyer for a criminal law enforcement agency or regulatory agency to advise others about or to supervise another in an undercover investigation, unless prohibited by law or rule, and it shall not be professional misconduct for a lawyer employed in a capacity other than as a lawyer by a criminal law enforcement agency or regulatory agency to participate in an undercover investigation, unless prohibited by law or rule;



(d) engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly, or through callous indifference, disparage, humiliate, or discriminate against litigants, jurors, witnesses, court personnel, or other lawyers on any basis, including, but not limited to, on account of race, ethnicity, gender, religion, national origin, disability, marital status, sexual orientation, age, socioeconomic status, employment, or physical characteristic;

Again, we did not want to have to report these violations, as this firm in its 23 years of existence, has never reported any fellow member of the Bar or to law enforcement and has always tried to resolve disputes and issues amicably and professionally with good faith. Regrettably and with deep disappointment and reluctance, in this instance, the consistent and now almost daily invectives, direct threats and documented Bar and criminal violations leave no option.

Sincerely Yours,

Tim Howard

(Phillip) Tim Howard, J.D., Ph.D.

From: JB Harris <jb@howardjustice.com>
Date: Mon, Mar 5, 2018 at 10:28 PM
Subject:
To: isacsphoto@gmail.com
Cc: wgould112@yahoo.com, Barbara Ulrich <FlLauderdaleLady@aol.com>

Wendy and Barbara, I spoke with Jacquie earlier. She can explain further. Mr. Howard's firm is out of business. I need Jacquie to send the following to him terminating his representation.

Dear Mr. Howard:

It has come to our attention that your firm has closed its doors and that you are no longer in business. Effective immediately you are no longer counsel for me and my sisters, and for the estate of our late father Stanley Gould. We hereby release you of all further duties as our attorney. Please file whatever paperwork necessary to withdraw your representation.

Regards, Jacquiline Sacs.

**Ft. Laudedale Office:**
J.B. Harris, P.A.
Howard & Associates, P.A.
101 NE Third Ave., Ste. 1500
Fort Lauderdale, Florida 33301
Cell: (786) 303-8333
Office: (954) 332-3633
em: jb@howardjustice.com
web: www.howardjustice.com

**Tallahassee Office:**
2120 Killarney Way, Ste. 125
Tallahassee, Florida 32309
Main Office: (850) 298-4455
Fax: (850) 216-2537

**Jacksonville Office:**
Riverplace Tower, Suite 2101
1301 Riverplace Blvd.
Jacksonville, FL 32207

Sent from my iPhone. Please forgive any misspellings.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

Gmail

Tim Howard <tim@howardjustice.com>

**RELEASE OF SERVICE**
1 message

Jacqueline Sacs <isacsphoto@gmail.com> Tue, Mar 6, 2018 at 5:30 AM
To: "cc: Tim Howard" <Tim@howardjustice.com>
Cc: JBHarris <jb@howardjustice.com>, Wendy Gould <wgould112@yahoo.com>, "ftlauderdalelady@aol.com" <FtLauderdaleLady@aol.com>

Dear Mr. Howard:

It has come to our attention that your firm has closed its doors and that you are no longer in business. Effective immediately you are no longer counsel for me and my sisters, and for the estate of our late father Stanley Gould. We hereby release you of all further duties as our attorney. Please file whatever paperwork necessary to withdraw your representation.

Regards, Jacquiline Sacs.

--
Think. Before its too late.



From: J.B. Harris <jbharrisesq@gmail.com>
Date: Tue, Mar 6, 2018 at 1:31 PM
Subject:
To: wgould112@yahoo.com, isacsphoto@gmail.com, Barbara Ulrich <FtLauderdaleLady@aol.com>

Did you send the notice of termination to Howard.

J.B. Harris, P.A.
101 NE Third Ave., Ste. 1500
Fort Lauderdale, Florida 33301
Ph: (786) 303-8333

Sent from my iPhone. Please forgive any misspellings.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

--

# EXHIBIT F

HOWARD JUSTICE

RECEIVED

2018 JUL 13 PM 3:52

STATE ATTORNEY

RECEIVED

JUL 13 2018

THE FLORIDA BAR

Howard & Associates
Attorneys at Law, P.A.
Dr. Tim Howard, J.D., Ph.D., Senior Partner*
Florida Supreme Court Certified Mediator

Tallahassee, Florida Office:
1415 East Piedmont Drive, Suite 5
Tallahassee, Florida 32308
Ph: (850) 298-4455
Fax: (850) 216-2537
tim@howardjustice.com

Jacksonville, Florida Office:
444 E. Duval Street
Jacksonville, Florida 32207
Ph: (904) 446-9817
Fax: (904) 446-9825
www.howardjustice.com

July 13, 2018

VIA HAND-DELIVERY

Shanee L. Hinson, Bar Counsel
651 East Jefferson Street
Tallahassee, Florida 32399-2300

Jack Campbell, State Attorney
301 South Monroe Street, Suite 475
Tallahassee, Florida 32301

Re: J.B. Harris v. Phillip Timothy Howard, TFB File No. 2018-00,342(2A); Kim Poling v. Phillip Timothy Howard, TFB File No. 2018-00,343(2A). Bar Complaint Against J.B. Harris and Law Firms Supporting his Violations of Rule 4-3.4(g) and (h), 4-8.2 (a) and (d), and 4-8.4(d); Violation of Section 836.05, Florida Statutes, Crime of Extortion Including Potential Co-Conspirators. Continuing Acts by Mr. Harris.

Dear Counsel Hinson, and State Attorney Campbell:

Attached as Exhibit A please find the executed under oath form required by the Florida Bar for Complaints and the documented actions of Mr. Harris and his colleagues.

In addition, please find verification from attorney Mr. Santisteban, Jr., that the Veritext invoice was never provided to this firm and verifying his responsibility stating, "Since I noticed the deposition [in December of 2017], I am responsible for it." July 11, 2018 email and December 6, 2017 Invoice date attached as Exhibit B. This validates the demonstrably false statements found in the threats of a Bar complaint and extortion efforts of both Mr. Harris and Mrs. Santisteban, as detailed in the June 29, 2018 submission and documents, pages 2-3.

Consistent with this cabal of extortion, Mr. Harris on June 19, 2018, filed a frivolous complaint claiming that his former clients were tortuously interfered with, and falsely claimed in the media on June 22, 2018, that Mr. Howard has "'usurped' a portfolio of tobacco cases potentially worth millions of dollars," and that "He couldn't finance any of his cases." June 22, 2018

*Admitted to practice in Florida, the District of Columbia, Northern, Middle, and Southern United States District Courts of Florida, the United States Court of Appeals for the 11th Circuit, and the United States Supreme Court. Ph.D, Northeastern University, Law, Policy & Society. Former Visiting Health Law, Bioethics, and Human Rights Scholar and Constitutional Law, Media & Politics and Judicial Process Instructor at Boston University. Former Director of and Professor with Northeastern University's Law & Policy Doctorate Program. President of Cambridge Graduate University International.



Press Article attached as Exhibit C. This is the same pattern Mr. Harris took on a similar tobacco client issue with co-counsel in 2013. *See* Law 360 Article attached as Exhibit D.

Clarifying false statements by Mr. Harris, on June 21, and June 22, Mr. Harris received the §57.105, Florida Statutes, frivolous action notice documenting that there was no usurpation of the Gould sisters as clients. Exhibit E. Nor has there been a taking of any client. In fact, the opposite. The truth is that Mr. Harris has an April 6, 2018 Confidential Settlement and Release Agreement, where Mr. Howard is paying him $21,000 a month for one year, and paid an initial $50,000 to Mr. Harris, with Mr. Howard retaining a 40% of the gross fee interest in the cases.

These documented and repeated patterns violate the following rules of professional conduct as promulgated by the Florida Supreme Court:

> A lawyer must not threaten opposing parties with sanctions, disciplinary complaints, criminal charges, or additional litigation to gain a tactical advantage. *See* Florida Supreme Court, Professionalism Expectations: Expectation 3.18; and Rules Regulating the Florida Bar: Rule 4-3.4(g).
>
> A lawyer must not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter. *See* Florida Supreme Court, Rules Regulating the Florida Bar: Rule 4-3.4(g).
>
> A lawyer must not present, participate in presenting, or threaten to present disciplinary charges under these rules solely to obtain an advantage in a civil matter. *See* Florida Supreme Court, Rules Regulating the Florida Bar: Rule 4-3.4(h). 1
>
> To opposing parties and their counsel, a lawyer should act with fairness, integrity, and civility, not only in court, but also in all written and oral communications. (Oath of Admission)
>
> Candor and civility must be used in all oral and written communications. (Professionalism Expectations: Expectation 2.2)
>
> A lawyer must avoid disparaging personal remarks or acrimony toward opposing parties, counsel, third parties or the court. (Professionalism Expectations: Expectation 2.3). A lawyer should be civil and courteous in all situations, both

1 Lawyer disciplined for sending a threatening letter to opposing counsel. *The Florida Bar v. Sayler*, 721 So.2d 1152 (Fla. 1998). A criminal defense lawyer violated Rules 4-4.4(a) and 4-8.4(d) for sending a victim of a crime an objectively humiliating and intimidating letter designed to cause her to abandon her criminal complaint. *The Florida Bar v. Buckle*, 771 So. 2d 1131 ; *see also The Florida Bar v. Ratiner*, 46 So. 3d 35 (Fla. 2010). A lawyer should abstain from conduct that diverts the fact-finder's attention from the relevant facts or causes a fact-finder to make a legally impermissible decision. (Professionalism Expectations: Expectation 5.8)



> professional and personal, and avoid conduct that is degrading to the legal profession. R. Regulating Fla. Bar 3-4.3. 2
>
> A lawyer's communications in connection with the practice of law, including communications on social media, must not disparage another's character or competence or be used to inappropriately influence or contact others. (Professionalism Expectations: Expectation 2.5); *see* R. Regulating Fla. Bar 4-8.4(d).
>
> A lawyer must not criticize or denigrate opposing parties, witnesses, or the court to clients, media, or members of the public. (Professionalism Expectations: Expectation 4.20); see R. Regulating Fla. Bar 4-8.2(a) and 4-8.4(d)).

These actions without legal justification, for his own pecuniary advantage, and actual malice by Mr. Harris and the firms that will benefit and support his extortion, are a violation of § 836.05, Florida Statutes, crimes against extortion for maliciously threatening.3

2 Lawyer disciplined for sending disparaging emails to opposing counsel, calling him a liar, and making improper outbursts directed toward opposing counsel during the litigation. *The Florida Bar v. Norkin*, 132 So.3d 77 (2013)). *See also The Florida Bar v. Abramson*, 3 So.3d 964 (2009); *The Florida Bar v. Buckle*, 771 So.2d 1131 (Fla. 2000) ; *The Florida Bar v. Sayler*, 721 So. 2d 1152 (Fla. 1998); *The Florida Bar v. Ratiner*, 46 So.3d 35 (Fla. 2010). Lawyer disciplined for sending a letter to a court-appointed provisional director of corporation in which he improperly threatened to file suit against provisional director and accused the provisional director of being involved in a conspiracy. *The Florida Bar v. Norkin*, 132 So. 3d 77 (2013); *See also The Florida Bar v. Abramson*, 3 So. 3d 964 (Fla. 2009). "The First Amendment does not protect those who make harassing or threatening remarks about the judiciary or opposing counsel. Under Rule of Professional Conduct 4-8.4(d), lawyers are required to refrain from knowingly disparaging or humiliating other lawyers." *The Florida Bar v. Sayler*, 721 So.2d 1152, 1155 (Fla. 1998).

3 Whoever, either verbally or by a written or printed communication, maliciously threatens to accuse another of any crime or offense, or by such communication maliciously threatens an injury to the person, property or reputation of another, or maliciously threatens to expose another to disgrace, or to expose any secret affecting another, or to impute any deformity or lack of chastity to another, with intent thereby to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will, shall be guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. Under Florida Statute 836.05, the crime of Extortion is committed when a person maliciously threatens to: Accuse another of any crime or offense; Injure the person, property or reputation of another; Expose another to disgrace; Expose any secret affecting another; or Impute any deformity or lack of chastity to another, with the intent to: Extort money or any pecuniary advantage; or Compel any person to do any act or refrain from doing any act against their will. Actual Malice versus Legal Malice. Although it is a subtle distinction, under the Extortion statute, the prosecutor is required to prove the threat was committed with Actual Malice, which means "means ill will, hatred, spite, evil intent." This is in contrast to what is known as Legal Malice, which only requires that an act be committed intentionally and without any lawful justification. Penalties for Extortion. The crime of Extortion is a Second-Degree Felony in Florida and is punishable by up to 15 years in prison, 15 years of probation, and a $10,000 fine. *Calamia v. State*, 125 So. 3d 1007 (Fla. 5th DCA 2013) (Actual malice is the standard. "A threat is malicious if it is made intentionally and without any lawful justification."); *McKee v. State*, 715 So.2d 101 (Fla. 5th DCA 1998) (Conviction upheld for threats that defendant will destroy you, destroy your business, accusing of drug use, and threatening to make accusations to a federal agency.). "Maliciously" means wrongfully, intentionally, and without legal justification or excuse. A threat is "malicious" for purposes of extortion statute if it is made intentionally and without any lawful justification. It is not necessary that the person accused of extortion have the ability to carry the threat out. Threats to cause mental or psychological injuries are generally prohibited under extortion statute. Therefore, if you threatened to expose someone's affair to

We did not want to have to report these violations, as this firm in its 23 years of existence, has never reported any fellow member of the Bar to the Bar or to law enforcement and has always tried to resolve disputes and issues amicably and professionally through overcoming evil with good. Regrettably and with deep disappointment and reluctance, in this instance, the consistent and now almost daily invectives, media statements, direct threats and undisputed Bar and criminal violations leave no option.

Sincerely Yours,

(Phillip) Tim Howard, J.D., Ph.D.

their spouse unless they paid you $1,000,000, the threat could be considered extortion for causing a psychological injury or because it was done for a monetary gain. This is extortion even if you did not know how to contact their spouse. Generally, a claim of extortion cannot be based on a threat to do an act which a person has a lawful right to do, but you may not threaten to undertake an otherwise legal act for your own pecuniary advantage. An attorney that repeatedly engages in conduct considered extortion can be a violation of the Florida RICO Act, pursuant to section 772.04, Florida Statutes. This is also a potential violation of 18 USC 875(b), since there is an attempt to extort something of value and use of a transmission through interstate commerce (text, internet and federal reserve clearing house in Dallas, Texas) in order to facilitate such extortion.

# EXHIBIT G

HOWARD JUSTICE

RECEIVED 2018 AUG 29 PM 4:52 JACK CAMPBELL STATE ATTORNEY

RECEIVED AUG 29 2018 THE FLORIDA BAR

Howard & Associates
Attorneys at Law, P.A.
Dr. Tim Howard, J.D., Ph.D., Senior Partner*
Florida Supreme Court Certified Mediator

Tallahassee, Florida Office:
1415 East Piedmont Drive, Suite 5
Tallahassee, Florida 32308
Ph: (850) 298-4455
Fax: (850) 216-2537
tim@howardjustice.com

Jacksonville, Florida Office:
444 E. Duval Street
Jacksonville, Florida 32207
Ph: (904) 446-9817
Fax: (904) 446-9825
www.howardjustice.com

August 28, 2018

VIA HAND-DELIVERY

Shanee L. Hinson, Bar Counsel
651 East Jefferson Street
Tallahassee, Florida 32399-2300

Jack Campbell, State Attorney
301 South Monroe Street, Suite 475
Tallahassee, Florida 32301

Re: Margaret "Peggy" Harris v. Phillip Timothy Howard, TFB File No. 2019-00,088(2A); and Phillip Timothy Howard v. Jonathan B. Harris, TFB File No. 2019-70,042(11J).

Dear Counsel Hinson, and State Attorney Campbell:

In response to and in support of the above-referenced inquiry/complaints, please consider the following. In support of the second incontrovertible perjury referenced in the August 23, 2018 filing, as is found in the July 8, 2018 sworn Bar complaint allegedly by Mr. Peggy Harris, at pages 3 and 8, Mr. Jaakan Williams' sworn testimony on April 11, 2018, is in contrast to this sworn statement:

> In an effort to cure whatever perceived shortcomings may have resulted from Richard's testimony, following the depositions, Howard and his associate Ankur Mehta fabricated errata sheets for each transcript, extensively re-writing Richard's testimony.
>
> Howard and Mehta ordered Richard to sign the fraudulent errata sheets without even reading him the changes. Indeed, Richard was so near death at the time, he had no comprehension as to what was happening around him, or what he was even signing.
>
> ...
>
> Jaakan Williams, who was present at Richard's depositions and who informed me of Howard's concoction of the fraudulent errata sheets. Mr. Williams is a witness in the Bar's investigation of Howard as well.

*Id.* (emphasis added).

*Admitted to practice in Florida, the District of Columbia, Northern, Middle, and Southern United States District Courts of Florida, the United States Court of Appeals for the 11th Circuit, and the United States Supreme Court. Ph.D, Northeastern University, Law, Policy & Society. Former Visiting Health Law, Bioethics, and Human Rights Scholar and Constitutional Law, Media & Politics and Judicial Process Instructor at Boston University. Former Director of and Professor with Northeastern University's Law & Policy Doctorate Program. President of Cambridge Graduate University International.



Mr Jaakan Williams in his April 11, 2018 deposition, pages 77-78, 86-90, attached hereto, states:

Q. I'll put it another way. Isn't it the duty of a lawyer to find the facts, find that law that best represents their client?
A. Agreed.
Q. All right. And if there's errors in the facts, (inaudible) person who's on the verge of death, that need to be clarified isn't it the lawyer's duty to clarify those facts?
A. I agree.
Q. And if one of the methods of clarifying the facts is an errata sheet, pointing out the precise language that the deponent said, read that to him as he's dying and then have the clarifying language read to him as he's dying, until he agrees on that change, isn't that an appropriate way to clarify the record for this dying deponent?
A. I believe so.
...
Q. Okay. So, Mr. Williams, during your visits with Mr. Harris and Peggy Harris on Thursday and Friday, you would cover a lot of the same topics that are in the errata sheets, such as smoking history, criminal history, military background, employment, addiction. Would those topics have been covered in your discussions with Richard and Peggy Harris on Thursday and Friday?
A. We covered a number of topics. Those are the predominant ones we covered.
Q. Okay. Very good. And you would have shared that with counsel or a paralegal on the case, since that's why you were there, to help them with the case?
A. Yes, I would have shared that.
Q. Okay. Mr. Williams, as far as the language in the errata sheet, did we require Richard to accept the proposed correction, or did we seek his ascent to make the change?
Q. Could Richard have said, "No, that's not a correct change?"
A. He could have, I would imagine.
Q. Right, and so – and Richard was lucid enough to say, "Well, no I (inaudible) with that change," and we would have crossed it out, our handwritten changes, if that's what Richard wanted to do?
THE WITNESS. I imagine he would have. He was – he was coherent that morning.
Q. He had no problems expressing his viewpoint, regardless of how people felt about it?
A. Yes.
Q. So we did not require Richard to agree to this errata sheet, did we?
Q. And Richard could have said, "No, that's not correct"?
A. Yes, he could have, if he wanted to, I imagine.
Q. Right, and Richard's the kind of person that would have no problem telling you that's not correct?
THE WITNESS. From what I remember, yes.
Q. Okay. So, as far as your perspective on observing this process, wasn't the errata sheet something that Richard was aware of, understood, and approved to change his testimony from the discovery deposition?
THE WITNESS. If you're asking me if he agreed to the changes, yes, he agreed to the changes.
Q. And these changes were after that portion of the transcripts were read to him—
A. Yes, they were read to him.

*Id.* (emphasis added). This sworn statement says, "he was coherent that morning," "he agreed to the changes," and "they were read to him." *Id.*

This sworn statement on April 11, 2018, is not consistent with Mrs. Peggy Harris' the July 7, 2018 sworn statement before the Florida Bar:



> Howard and Mehta ordered Richard to sign the fraudulent errata sheets without even reading him the changes. Indeed, Richard was so near death at the time, he had no comprehension as to what was happening around him, or what he was even signing.
>
> ...
>
> Jaakan Williams, who was present at Richard's depositions and who informed me of Howard's concoction of the fraudulent errata sheets. Mr. Williams is a witness in the Bar's investigation of Howard as well.

Moreover, Mrs. Peggy Harris, consistent with the facts above, was prepared for her sworn deposition testimony by attorney Jaakan Williams I and current Bar attorney Adriannette Williams. They would have coordinated the review of her May 23, 2017 deposition and would have coordinated the preparation of her errata sheets after Peggy Harris' review of her deposition transcript. Mrs. Peggy Harris states under oath:

Q. Okay. And so I asked you before the break whether you were aware, whether you knew whether your husband reviewed the deposition that I took of him, which was a multi-hundred-page transcript. Did he review that?
A. I believe he did, but he couldn't see it, but it was read to him.
Q. Okay. Who read it to him?
A. One of the attorneys.
Q. How long did it take?
A. A while. They came in early, yeah.
Q. They came in early the morning of June 25th?
A. I don't remember the morning, but they came in early to do it.
...
Q. Okay. Do you remember anything about the circumstances of what was read to him?
A. No.
Q. Do you know one way or the other whether that deposition was read to him from –
A. I believe it was.
Q. – start to finish?
A. I believe it was.
...
Q. Do you know whether he actually told the lawyers whether he had changes to make to his deposition? Did he actually tell them that?
A. I believe he did.
Q. How did he do that?
A. Verbally, I would think. But I'm not—I shouldn't say, because I'm not sure.
...
Q. Do you believe that when your husband signed those errata sheets, that he understood what he was signing?
A. I would think he would. I wouldn't think he would sign if he didn't.
Q. And my question was just a little bit different. Given his health condition at the time, do you think he understood what he was signing when he signed those errata sheets?

1 Moreover, Mr. Jaakan Williams did not say the errata sheets were "Howard's concoction of the fraudulent errata sheets." If he did say such a thing, he would be contradicting not only his own sworn testimony, he would be contradicting his deposition preparation of Mrs. Peggy Harris and his work with Mrs. Peggy Harris in her review of her deposition transcripts and in preparing and coordinating her errata sheets to her deposition. He would be leading Mrs. Peggy Harris into a perjurous trap, which in the Respondent's experience it is unlikely that Jaakan Williams would do.

A. I would say yes.
Q. Okay. So is the answer that you're not sure whether he knew what he was signing?
A. Again, I wouldn't think he would sign unless he knew what he was signing.
Q. Were you in the room when he signed them?
A. I don't—yeah, I think I was.
...
Q. After his deposition, after I had the opportunity to ask him questions, did Mr. Harris ever say to you that he had changes that he wanted to make to his testimony?
A. I believe he did.

*Id* (emphasis added).

Moreover, in response to the deposition reviews, Mr. Richard Harris and Mrs. Peggy Harris were both read the relevant portion of their transcripts and under oath made changes to their transcripts. This was confirmed by Mr. Richard Harris and reconfirmed by Mrs. Peggy Harris, wherein she repeatedly states under "penalties of perjury" in errata sheets after reviewing her testimony and providing corrections that "I do remember our attorneys coming over prior to Richard's deposition and reviewing his deposition testimony from the previous days with him, and making sure that the testimony he had given, and making all the corrections that Richard suggested." 2 *See* relevant portions of transcripts attached to the August 22, 2018 response. Neither Mr. Richard Harris nor Mrs. Peggy Harris were ordered to sign the errata sheets, and they were reviewed and read by or to both of them by either associate or senior counsel before they signed the errata sheets.

Since Mrs. Peggy Harris states in the July 8, 2018 Bar complaint under oath the opposite of what she contemporaneously stated and provided under oath on May 23, and July 6, 2017, and the opposite of what Jaakan Williams stated in his sworn deposition on April 11, 2018, either she is committing perjury in May 23 and July 6 of 2017, or on July 8 of 2018. Both incongruent statements cannot be true and honest.

As previously stated, the facts demonstrate that this Bar complaint was written by Mr. J.B. Harris as part of his continued efforts at extortion. As pointed out in the many prior filings, these documented and repeated, upon repeated patterns violate numerous rules of professional conduct as promulgated by the Florida Supreme Court, and have his client swearing to facts under penalty of perjury that are impossible to be true and honest.

This is another supplement to the response to the complaint of Margaret "Peggy" Harris, which in reality is a complaint by J.B. Harris. Consistent with the prior responses, these are further Bar violations by Mr. J.B. Harris.

As previously stated as pertaining to Mr. J.B. Harris. We did not want to have to report these violations, as this firm in its 23 years of existence, has never reported any fellow member of the Bar to the Bar or to law enforcement and has always resolved disputes and issues amicably and professionally. Regrettably and with deep disappointment and reluctance, in this instance, the consistent and now almost daily

2 In her sworn July 6, 2017 errata sheets, under penalty of perjury, Mrs. Peggy Harris states, "Our attorneys did review Richard's depo transcripts with him each day, and Richard clarified his answers and the changes he wanted made to the transcript." She also states, "In discussions with Richard, our attorneys prepared the errata sheets according to Richard's instructions and reviewed them with Richard. Richard verified that the errata sheets were consistent with the testimony he wanted to give." Finally, she states, "Richard knew exactly what he was signing because our attorneys reviewed the depo transcripts and errata sheets with Richard before he signed them, and Richard verified that the errata sheets were consistent with the testimony he wanted to give."

invectives, media statements, direct threats and undisputed Bar and criminal violations leave no option.

Sincerely Yours,

(Phillip) Tim Howard, J.D., Ph.D.

# EXHIBIT H

IN THE SUPREME COURT OF FLORIDA
(Before a Referee)

THE FLORIDA BAR,

Complainant,

vs. CASE NOS. SC19-488 & SC19-1570
TFB File Nos. 2016-00,682(2A) & 2019-00,088(2A)

PHILLIP TIMOTHY HOWARD,

Respondent.
_______________________/

VOLUME 2
Pages 198 through 306

EXCERPT OF PROCEEDINGS: FINAL HEARING
Excerpt of Witnesses:
Phillip Timothy Howard

BEFORE: THE HON. PAUL S. BRYAN, Referee

DATE: Tuesday, December 8, 2020

PLACE: Zoom Teleconference

REPORTED BY: LAURA MOUNTAIN,
Court Reporter
Notary Public in and for the State of Florida at Large

WILKINSON & ASSOCIATES
Certified Court Reporters
Post Office Box 13461
Tallahassee, Florida 32317
Wilkinsonandassociates@comcast.net
850.224.0127



APPEARANCES:

REPRESENTING THE COMPLAINANT:

SHANEE L. HINSON, BAR COUNSEL

The Florida Bar
Tallahassee Branch Office
651 East Jefferson Street
Tallahassee, Florida 32399-2300

REPRESENTING THE RESPONDENT:

ALFRED R. BRUNETTI, ESQUIRE

McElroy, Deutsch
Post Office Box 2075
Morristown, NJ 07962-2075

ALSO PRESENT:

Robin Kelly, TFB Paralegal

Karen Brown, TFB Investigator

* * *



I N D E X


PROCEEDINGS: PAGE:

WITNESSES:

PHILLIP TIMOTHY HOWARD

Direct Examination by Ms. Hinson 202
Cross Examination by Mr. Brunetti 256
Redirect Examination by Ms. Hinson 292

EXHIBITS:

TFB Exhibit No. 6 received in evidence 240
TFB Exhibit No. 7 received in evidence 245
TFB Exhibit No. 8 received in evidence 250
TFB Exhibit No. 9 received in evidence 254

CERTIFICATE OF REPORTER 306




EXCERPT OF PROCEEDINGS

THE REFEREE: Okay, are we ready?

MS. HINSON: Yes.

THE REFEREE: Who would be the next witness or the next person to testify?

MS. HINSON: Mr. Howard.

THE REFEREE: The Bar is calling Mr. Howard right now?

MR. HOWARD: Is that a question for me, Your Honor?

THE REFEREE: My question is who is calling Mr. Howard. Is it Mr. Brunetti that's calling Mr. Howard?

MS. HINSON: The Bar is.

THE REFEREE: The Bar is calling Mr. Howard. Okay, Mr. Howard, if you'd raise your right hand.

Thereupon,

PHILIP TIMOTHY HOWARD

was called as a witness, having been first duly sworn, was examined and testified as follows:

THE REFEREE: Okay, thank you.

MS. HINSON: Okay, we're going to get this echo taken care of. Okay, I think that is it.

THE REFEREE: We're having some of that echoing right now, but maybe it just went away.

10:30. I think they said 10:15, so give me about ten seconds.

It's 10:30. The hearing I was talking about that's 15 minutes is going to be at 10:30, so we have about 15 minutes.

MS. HINSON: Okay, just a moment. I'm going to put another document up.

THE REFEREE: While you're doing that, we can go off the record a minute. I'm just going to tell the attorneys something.

(Off the record)

BY MS. HINSON:

Q Okay, so Mr. Howard, the next email I have up -- and the dates may be out of order, so I do apologize, but I'm kind of going in the order that we have them listed in the trial exhibits. This is an email dated July 30th from you to Matt Hinson. Actually, let me -- okay, this is an email from you to Matt Hinson dated July 30th where you are advising him that she didn't respond to me. Is it safe to assume that the she is Ms. Peggy Harris?

A Yes.

Q Okay, and then you go on to say Mr. Harris has extensive history of Bar violations and extortion I was forced to report. Then you go on to say in the last paragraph, thank you for your availability. This case may



yet return to the firm.

So on July 30th, if you're advising Mr. Hinson that the case may return to the firm, then there was no assumption that J. B. Harris was working for you and this case was still with your firm; would that be accurate?

A No.

Q So how would the case return to the firm if Mr. J. B. Harris was working for you on May 30th?

A Mr. Harris is playing both ends against the middle. At this time not only is he getting $21,000 a month, he's also trying to shop cases that I own to other firms and get double paid. So this is -- it's hard to manage a gentleman like this. So the case is actually with the firm, but as far as the issues with J. B. Harris, we'll have to see how they work out.

So in our view J. B. Harris, in fact, financially, economically and everything, he's working for this firm. But the client doesn't see it that way and we have to go with how the client sees it, not how I see it.

Q Okay, now, you also said in this first paragraph that's highlighted, Mr. Harris has an extensive history of Bar violations. Mr. Howard, have you done a public records request on Mr. Harris's disciplinary history?

A I'm not talking about his history. I didn't say history. I'm not talking about history in the sense of Bar



violations that have been prosecuted; about a history of document violations which I have which you received showing extortion, threats, derogatory comments and extensive perjury that you're aware of, that you decided to go forward with --

Q Mr. Howard --

A -- this case regardless. That's what I'm referring to, his history of perjury.

Q Mr. Howard, okay, I just want to stop you because you said that I am aware of. I am aware of no such thing, so I just wanted to make that clear.

A Yes, you are. They're attached to your exhibits, so you are aware of those things.

Q I'm aware of no such violations, is what I'm clarifying.

A And I'm clarifying that you are, in writing. You have --

THE COURT REPORTER: I'm sorry, Mr. Howard. I'm sorry, I'm not getting what you said. Your voice went in and out.

THE WITNESS: You've received written and sworn statements that are perjurous, complete perjury, under oath, by both Mr. Harris, by Peggy Harris, and they are detailed with documents attached to Shanee Hinson and to the Florida Bar. The Florida Bar has --

BY MS. HINSON:



Q Right, Mr. --

A -- been fully aware of his perjury, fully aware of his Bar violations, and yet you're going forward with this, and that's why you're not calling him as a witness because you know how dirty he is.

Q Mr. Howard, let me clarify again, I am aware of no Bar violations. And just so we're clear, Bar Counsel does not determine whether Bar violations have been committed. The Referee and the Supreme Court makes that determination.

So my question to you was, have you done a public records request for the discipline history of Mr. Harris?

A I have not, but I think my counsel has.

Q So at the time that you sent this email to Mr. Matt Hinson, were you aware of any history of Bar violations --

A Yes.

Q -- that were determined by the Florida Supreme Court against Mr. J. B. Harris?

A No, not the way you phrased the question. That's not what I said here in the writing.

MS. HINSON: Okay, Your Honor, the Bar would like to enter this email into evidence as the Bar's Exhibit Number 8.

THE REFEREE: Any objection?

MR. BRUNETTI: I object, Judge, only as to

286

financial actions to benefit him, correct?
A Correct.
Q And among those actions were paying for his medical insurance, correct?
A Correct.
Q And front-loading some salary that he had agreed to receive from your firm, correct?
A Correct.
Q And to the best of your knowledge, after receiving those threats from Mr. Harris and not submitting to them, do you know whether or not Bar complaints were filed by Mr. Harris against you?
A Correct. He ghost wrote or wrote himself, I think, four Bar complaints. He wrote the Peggy Harris complaint, which she never read. He wrote the Kim Poling complaint, which she didn't do. He wrote his own complaint. And he's written complaints against other firms in Texas.
Q And there's been testimony, I believe, also, sir, that you advised the Florida Bar of Mr. J. B. Harris's actions and threats to file Bar complaints against you prior to this case being filed; do you recall that, sir?
A Yes.
Q And I'm trying to show you a document which is Bates stamped TFB Harris 47. Can you read this, Mr. Harris?
A Yes.

287

Q Okay, I can represent to you this is a seven-page letter that's attached to the Florida Bar's exhibits Bates stamped TFB Harris 47 through 53. Do you recall sending this document to the Florida Bar?
A Yes, I think there's several letters to this effect, along with attachments and sworn transcripts.
Q And you directed this to not only Ms. Hinson at the Florida Bar, but also to the State Attorney's office, correct?
A Yes, I did.
Q And at page two of this letter did you advise the recipients of this letter -- I'm sorry, I'm trying to mark that. I'll just put my cursor here if you can see that. At this bolded portion on page two, did you advise the Florida Bar and the other recipients of this letter that in an email on August 21st, 2018, J. B. Harris said to you, quote, Tim, I suggest you reactivate my insurance today or I will be at your office first thing tomorrow to spend a little quality time with you. You've placed the lives of my children at risk and that won't stand.
Did you advise the Florida Bar and the other recipients of this letter of that communication, sir?
A This happened the day before. That's just one of many.
Q Well, my question is, did you advise them of that

288

by submitting in this letter?
A Yes, I did.
Q On page five of the letter, which is Bates stamped 51, which I'm also trying to show, at the bottom of the page did you also advise the Florida Bar and the recipients of this letter that Mr. Harris, J. B. Harris, wrote to you on June 6, 2018 and said, quote, Tim, if you think you're having trouble with the Bar's investigation of your practices BMCI Pension Trustees, Limited, Ted Doukas, and everyone else who is still after you, you're going to walk into a shit storm if you steal the Goulds from me as my clients.
A Yes, that's --
Q I will file for costs and fee, sue for *tortuous interference and unpaid contributions to costs, fraud and everything else I can think of. I will also amend my complaint with the Bar and file a complaint against Neil, as well.
Did you include that passage in your letter to the Florida Bar, sir?
A Yes, as I also included a copy of the emails, themselves. And everything I've sent to the Bar is documented. What I find extraordinary is the Bar would allow this to take place, when the evidence is unmitigatedly and non-challengeable.
Q Did you receive a response from the Florida Bar to

289

this August 22nd, 2018 letter?
A No.
Q Did you receive any response concerning the threats that were made against you by J. B. Harris from the Florida Bar?
A No, the Florida Bar's sanctioning extortion, perjury and threats.
Q And it was subsequent to you sending this letter that on September 17th, 2019 the Florida Bar formally filed a Bar complaint against you, correct, sir?
A Correct, the Florida Bar knowingly is supporting perjury, fraud and extortion.
Q Were you ever given a reason why the claims that Mr. -- or the allegations that you made and the information that you gave -- made -- excuse me -- the allegations that you made and the information that you provided to the Florida Bar concerning J. B. Harris and his statements were never investigated?
A Correct.
Q So no investigator ever called you from the Florida Bar, correct?
A There was an investigator in the Miami office that called about these. I think there was something the Bar did with J. B., required him to do some professionalism, but I don't know how that turned out.

Q Sir, do you believe that you competently represented the Harrises in the tobacco litigation?

A More than competently. I think a 10 million dollar verdict based on all the work and the money we paid for them, and to make sure they were paid from the first settlement, and making sure that the evidence was sound, and the winning trial preservation demonstrates the competency of the performance.

Q Do you believe that you competently represented the estate of Mr. Harris in the probate litigation, aside from the issue of the misunderstanding or the communication which we have previously discussed ad nauseam?

A Aside from the eight-week delay, confusing between probate counsel covering it, and taking proper steps to make sure it was covered with no prejudice to the client, yes. This was a non-substantive issue that was again used by J. B. Harris and picked up by the Bar in order to extort.

Q Well, you're aware of the fact, sir, that on July 30th, 2018, that's when you formally received the email from J. B. Harris telling you and Matt Hirson to, quote, stand down, unquote, from taking any further representation of Ms. Harris, correct?

A Correct. We were ready to solve the problem, but this is part of J. B.'s extortion in response to the Gould sisters leaving him because of his nasty approach to them.



Q And you became aware that after that July 30th, 2018 email; only a few weeks later -- actually, on September 5, 2018, the probate case was actually refiled and reactivated, correct, sir?

A Correct, which we could have done at any moment.

Q And do you feel that you were diligent in your representation of the Harrises in relation to the tobacco litigation?

A Absolutely.

Q And do you feel that you were diligent, aside from your prior representations about the communication, with the Harrises in relation to their probate matter?

A Correct.

Q And do you feel that you adequately supervised Jaakan Williams while he was an employee of Howard and Associates?

A Completely. That is why, when there were mistakes made -- just like a football coach, because I'm a football coach -- you discipline your players. So he made some errors, he wasn't right on it. There was no condemnation. I actually -- after we were done, I said, Jaakan, are you okay? I was aggressive, but part of me is a football coach. I help with the high schools even now as a football coach.

So I might have been a little aggressive, but I hope he learned key issues you don't abandon, no matter how



close you get to the client. You make sure statute of limitations and key components are covered.

Q And in fact he worked for you for another year plus after that deposition of Mr. Harris, correct?

A Correct. And as far as I knew, we were fine. Apparently there's some residual bitterness there, but I've apologized to him, and I thought we were fine.

MR. BRUNETTI: I have nothing further, Your Honor.

THE REFEREE: Questions, if any?

MS. HINSON: Yes, Your Honor. Mr. Brunetti, do you mind taking your document down?

MR. BRUNETTI: Oh, sorry. Yeah.

REDIRECT EXAMINATION

BY MS. HINSON:

Q Mr. Howard, I'm going to work my way backwards. So first you talked about a letter you sent to -- or Mr. Brunetti asked you about a letter you sent to the Florida Bar detailing what you thought were threats against you by Mr. J. B. Harris. Was this a formal Bar complaint you filed against J. B. Harris or was this just your response to a complaint that you were required to submit to the Florida Bar?

A Both. You'll see both, my formal Bar complaint and my response, because the facts are intertwined.

Q Okay, well, I'm saying did you submit a formal Bar



complaint against Mr. J. B. Harris? It cannot be both. So I'm asking, did you submit your own complaint against J. B. Harris unrelated to this particular case?

A Yes, if you see -- if you see the title to the letter, it's got the Bar complaint of Howard versus Harris and the Bar response of Harris versus Howard. Peggy Harris versus Howard, Howard versus J. B. Harris. Both were cited --

Q Right, but --

A -- both were cited in the letter.

Q Okay, so this is your response to a complaint. You were sent a 15-day letter to respond to a complaint. This is your response. Did you fill out a Florida Bar complaint against J. B. Harris making your allegations and submit that to the Florida Bar?

A There's a Florida Bar number on that, yes.

Q Right. You cannot get a Florida Bar number unless you submit a complaint. So this is the Florida Bar number for the Peggy Harris case. I'm asking did you submit your own separate --

A No. If you look at the document -- excuse me.

Q -- Bar complaint against J. B. Harris? Okay, now, you said on numerous occasions J. B. Harris threatened to file a Bar complaint against you. When those threats were made, did you file a complaint at that time?

A Yes. You have the Bar complaint number, you have them referenced in my letters, both -- there's two Bar complaint numbers in each of the letters, both my response and also my Bar complaint. They both have Florida Bar numbers.

Q Okay, and what was the outcome of your Bar complaint against Mr. J. B. Harris?

A I don't know the full outcome. I do recall there was an interview on some portion. I do recall there was some disciplinary sanction; I don't know what it was.

Q Okay, so you would have received notice of the outcome if you filed a complaint; whether it was closed, whether there was a trial, whether it was assigned to a Referee. So I'm asking you, what were you notified regarding a complaint you filed against J. B. Harris?

A I was notified that there was professional sanctions issued against him. I don't recall what they were.

Q Okay. Just one moment.

A I do recall the Bar dismissed the direct complaint by Mr. J. B. Harris against me.

Q Just a moment, Mr. Harris (sic) while I put a screen up. So Mr. Harris -- I'm sorry. Mr. Howard, what I have up now is J. B. Harris, Jonathan B. Harris's profile page on the Florida Bar. Is this the man you recognize as J. B. Harris?



A Correct. And the last time I saw him he had cowboy boots and a hat on, but that's him.

Q Okay, so I'm going to go down here to where it says ten-year discipline history. Do you see where it says none?

A I don't know why the Bar has that, because I received notice that he was sanctioned, he had to do some professional --

MR. BRUNETTI: Your Honor, I know the strict rules of evidence don't apply, but I'm going to object to this. She can certainly question his knowledge, but this is not a business record that I'm aware of. I don't believe you can take judicial notice of it, and I believe it's an active web page. I would object to its use now.

THE REFEREE: I think it can be used to ask him questions, but I'm not accepting it as the truth of what is asserted. So she can use it for that purpose, to question him. Go ahead, please.

BY MS. HINSON:

Q Okay, so this is the Florida Bar website, and as you're aware, as a Florida Bar attorney, each attorney has a profile page which lists information. I'm sorry, I think I actually got off of it. And the Florida Bar lists a ten-year discipline history of any attorney, so I'm showing you this page, and can you -- you've acknowledged that it says no discipline history. Now I want to show you a different page.



MR. BRUNETTI: Your Honor, I don't want to jump the gun, but it looks like Ms. Hinson is trying to show Mr. Howard's Bar discipline page. The relevance at this point --

MS. HINSON: No, no, Mr. Brunetti, I'm not trying to show his -- I'm trying to show his Bar profile page, not his discipline page.

BY MS. HINSON:

Q Okay, Mr. Howard, this is your actual profile page. And can you tell me what it says here for ten-year discipline history?

A None.

Q Okay. And have you had any discipline in the last ten years?

A Not that I'm aware of.

Q Okay, so is it fair to say that if the Bar has listed no discipline history in ten years that means the attorney has had no discipline history in the last ten years?

MR. BRUNETTI: Your Honor, same objection. Now she's using the material that's listed on the website as opposed to querying Mr. Howard's knowledge. She's now asking for the veracity of this website to be admitted through Mr. Howard's testimony by making him extrapolate.



THE REFEREE: Sustained. Objection sustained.

BY MS. HINSON:

Q Okay, Mr. Howard, is it your testimony that you received notification from the Florida Bar that Mr. Howard -- I'm sorry -- Mr. J. B. Harris had been sanctioned?

A Yeah, I received an email from the investigating person that they were recommending that he go to professional training. I don't know what happened with that.

Q Okay, so you're talking about a course, not a sanction, which is -- which we need to clarify is different. You're saying you were notified that he took some course through the Florida Bar?

A I don't know; I don't know how your sanctions work. I know usually when you're told to do something by the Bar it's a type of sanction. I don't know whether it's a reprimand, whether it's instruction, whether it's -- it's a sanction.

Q Okay, so I think you're confused. A sanction is not meted out by the Florida Bar. That is done by the Florida Supreme Court.

MR. BRUNETTI: Your Honor, I'm going to object to the testimony by Ms. Hinson concerning the inner workings of the Florida Bar.

MS. HINSON: Your Honor --

# EXHIBIT I

HOWARD JUSTICE

RECEIVED
AUG - 3 2018
THE FLORIDA BAR

Howard & Associates
Attorneys at Law, P.A.
Dr. Tim Howard, J.D., Ph.D., Senior Partner*
Florida Supreme Court Certified Mediator

Tallahassee, Florida Office:
1415 East Piedmont Drive, Suite 5
Tallahassee, Florida 32308
Ph: (850) 298-4455
Fax: (850) 216-2537
tim@howardjustice.com

Jacksonville, Florida Office:
444 E. Duval Street
Jacksonville, Florida 32207
Ph: (904) 446-9817
Fax: (904) 446-9825
www.howardjustice.com

August 3, 2018

VIA HAND-DELIVERY

Shanee L. Hinson, Bar Counsel
651 East Jefferson Street
Tallahassee, Florida 32399-2300

Jack Campbell, State Attorney
301 South Monroe Street, Suite 475
Tallahassee, Florida 32399-2300

Re: Sandra Fulop v. Phillip Timothy Howard, TFB File No. 2016-00,682(2A); Violation of Section 836.05, Florida Statutes, Crime of Extortion Including Potential Co-Conspirators.

Dear Bar Counsel Hinson, State Attorney Campbell:

On July 9, 2016, Mrs. Sandra A. Fulop and Mrs. Dana F. Hall, years after all accounting and amounts were reviewed, accepted and settled, conspired to demand $355,031 (Exhibit A, attached), in order to drop the above referenced complaint. The representation concerned a former client, Mr. Jason Hall, in which representation ceased eight (8) years earlier, on August 18, 2008 for the workers compensation and "in any other fashion or matter" and completed mediation of dispute and divorce from Mrs. Dana Hall on September 2, 2008. Letter documenting Completion of Representation attached as Exhibit B. The former client, Mr. Jason Hall, was deceased on May 3, 2012. The actual client, Mr. Jason Hall never had any complaints or issues.

Moreover, all funds and accounts were reviewed, accounted for, accepted and settled by the Personal Representative of the Estate, Mrs. Sandra Fulop and the ex-wife, Mrs. Dana Hall on December 23, 2013. *See* Correspondence and accounting in Cumulative Exhibit C, attached. When the extortion demand arose on July 9, 2016, further details may have been available for the accounting to add further clarity, but Mrs. Fulop and Mrs. Dana Hall would not return the original files, despite a formal demand. Letter to Mrs. Fulop and Mrs. Dana Hall attached as Exhibit D.

*Admitted to practice in Florida, the District of Columbia, Northern, Middle, and Southern United States District Courts of Florida, the United States Court of Appeals for the 11th Circuit, and the United States Supreme Court. Ph.D, Northeastern University, Law, Policy & Society. Former Visiting Health Law, Bioethics, and Human Rights Scholar and Constitutional Law, Media & Politics and Judicial Process Instructor at Boston University. Former Director of and Professor with Northeastern University's Law & Policy Doctorate Program. President of Cambridge Graduate University International.



In summary, this is a demand of $355,031 to drop the above-referenced complaint for matters in which they were not parties, had already reviewed accounts and accepted the final amounts over two and one-half (2-1/2) years earlier. In addition, without legal justification, they would not return the original files, which included accounting documents. These actions without legal justification, for their own pecuniary advantage, and actual malice by Mrs. Fulop and Mrs. Hall, are a violation of section 836.05, Florida Statutes crimes against extortion for maliciously threatening to continue the above-referenced action if they were not paid $355,031.[1]

We did not want to have to report this criminal violation, as this firm in its 23 years of existence, has never reported any former client to law enforcement and has always tried to resolve disputes and issues amicably and professionally through overcoming evil with good. There seems to be a rash of these types of actions now against the firm, regrettably and with deep disappointment and reluctance, in this instance, since the above-reference matter is continuing, and the criminal violation is at the root of this mater, there leaves no option.

Sincerely Yours,

(Phillip) Tim Howard, J.D., Ph.D.

1 Whoever, either verbally or by a written or printed communication, maliciously threatens to accuse another of any crime or offense, or by such communication maliciously threatens an injury to the person, property or reputation of another, or maliciously threatens to expose another to disgrace, or to expose any secret affecting another, or to impute any deformity or lack of chastity to another, with intent thereby to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will, shall be guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. Under Florida Statute 836.05, the crime of Extortion is committed when a person maliciously threatens to: Accuse another of any crime or offense; Injure the person, property or reputation of another; Expose another to disgrace; Expose any secret affecting another; or Impute any deformity or lack of chastity to another, with the intent to: Extort money or any pecuniary advantage; or Compel any person to do any act or refrain from doing any act against their will. Actual Malice versus Legal Malice. Although it is a subtle distinction, under the Extortion statute, the prosecutor is required to prove the threat was committed with Actual Malice, which means "means ill will, hatred, spite, evil intent." This is in contrast to what is known as Legal Malice, which only requires that an act be committed intentionally and without any lawful justification. Penalties for Extortion. The crime of Extortion is a Second-Degree Felony in Florida and is punishable by up to 15 years in prison, 15 years of probation, and a $10,000 fine. *Calamia v. State*, 125 So. 3d 1007 (Fla. 5th DCA 2013) (Actual malice is the standard. "A threat is malicious if it is made intentionally and without any lawful justification."); *McKee v. State*, 715 So.2d 101 (Fla. 5th DCA 1998) (Conviction upheld for threats that defendant will destroy you, destroy your business, accusing of drug use, and threatening to make accusations to a federal agency.). "Maliciously" means wrongfully, intentionally, and without legal justification or excuse. A threat is "malicious" for purposes of extortion statute if it is made intentionally and without any lawful justification. It is not necessary that the person accused of extortion have the ability to carry the threat out. Threats to cause mental or psychological injuries are generally prohibited under extortion statute. Therefore, if you threatened to expose someone's affair to their spouse unless they paid you $1,000,000, the threat could be considered extortion for causing a psychological injury or because it was done for a monetary gain. This is extortion even if you did not know how to contact their spouse. Generally, a claim of extortion cannot be based on a threat to do an act which a person has a lawful right to do, but you may not threaten to undertake an otherwise legal act for your own pecuniary advantage. An attorney that repeatedly engages in conduct considered extortion can be a violation of the Florida RICO Act, pursuant to section 772.04, Florida Statutes. This is also a potential violation of 18 USC 875(b), since there is an attempt to extort something of value and use of a transmission through interstate commerce (text, internet and federal reserve clearing house in Dallas, Texas) in order to facilitate such extortion.





Gmail by Google

Tim Howard <tim@howardjustice.com>

**Re: Meeting to Resolve Concerns**
1 message

Sandy Fulop <safpassport@yahoo.com>
Reply-To: Sandy Fulop <safpassport@yahoo.com>
To: Tim Howard <tim@howardjustice.com>
Cc: Dana Dane <dfhall69@yahoo.com>

Sat, Jul 9, 2016 at 11:14 AM

Tim, thank you for your efforts by phone messages to set a date and time to meet to allow a more robust analysis or our respective files.

There is no need to meet because you already have in hand a copy of what we'd be bringing to such a meeting.

Now is the time for you to honor the contract and send me a certified check in the amount of $355,031. This figure represents the principal plus the interest ($1,667/mo x 93 months, i.e., October 2008 thru June 2016) as established in the terms of the contract signed by you and Jason on September 5, 2008.

Please let me know when you have done this.

Sandra A Fulop and Dana F. Hall

On Friday, July 8, 2016 2:51 PM, Tim Howard <tim@howardjustice.com> wrote:

Upon review of our file, we can verify what is needed to address your concerns on accounting.

If you can bring your complete file as well, this will allow a more robust analysis so that you are satisfied with the results.

Let us know a date and time to meet. We have left messages on your respective phones to coordinate such a meeting.

*Tim Howard*

Professor Tim Howard, J.D., Ph.D.
Howard & Associates, P.A.

Exhibit F

Howard & Associates
Attorneys at Law, P.A.
Dr. Tim Howard, J.D., Ph.D., Senior Partner*
Florida Supreme Court Certified Mediator

2511 Bull Headley Road, Suite 405
Tallahassee, Florida 32312
Telephone: (850) 298-4455
Telecopy: (850) 216-2537
e-mail: ptim@aol.com

Northeastern University
Law & Policy Doctorate Program, Director
75 Nightingale Hall
360 Huntington Avenue
Boston, Massachusetts 02215-5000
Telephone: (617) 373-6076

September 2, 2008

Jason Hall
6600 Donnerail trail
Tallahassee, FL 32308

Re: Completion of Representation.

Dear Mr. Hall:

This letter is to verify that this firm completed its representation of your interests in the workers compensation claim against Ferrell Roofing, Inc., and in any other fashion or matter, on August 18, 2008, and completed mediation of your dispute with Dana Hall on September 2, 2008. Consequently, as of September 2, 2008, this firm has no further attorney/client relationship with you.

By signing below you agree and affirm under oath and under penalty of perjury that this firm has professionally and competently represented you; that this firm has no professional liability to you, and that as of September 2, 2008, this firm is not representing you or your interests in any fashion.

Sincerely yours,

Tim Howard, J.D., Ph.D.
For the Firm

PTH/kmm

Jason Hall 9-5-08
Jason Hall Date

Notary Public: Keven Marie Mathews

KEVEN MARIE MATHEWS
MY COMMISSION # DD 786657
EXPIRES: May 7, 2012
Bonded Thru Notary Public Underwriters

*Admitted to practice in Florida, the District of Columbia, Northern, Middle, and Southern United States District Courts of Florida, the United States Court of Appeals for the 11th Circuit, and the United States Supreme Court. Ph.D, Northeastern University, Law, Policy & Society. Former Visiting Health Law Scholar and Constitutional Law, Media & Politics and Judicial [illegible] Professor of Law and Policy and Director of Northeastern University's Law & Policy

Howard & Associates
Attorneys at Law, P.A.
Dr. Tim Howard, J.D., Ph.D., Senior Partner*
Florida Court Certified Mediator

Howard & Associates, P.A.
8511 Bull Headley Road, Ste. 405
Tallahassee, Florida 32312
Telephone: (850) 298-4455
Telecopy: (850) 216-2537
tim@howardjustice.com

Cambridge Office
8 Museum Way Ste. 2407
Cambridge, MA 02141
(857) 277-0990
tim@howardjustice.com

Cambridge Graduate University
One Broadway, 14th Floor
Cambridge, MA 02142
(617) 475-0201
(877) 645-6225 (6-GLOBAL)
president@cguglobal.net

December 23, 2013

Sandy Fulop
6600 Donerail Trail
Tallahassee, FL 32308

RE: Full and Final Distribution of Jason R. Hall Non-refundable, Non-Client Funds

This letter is to document and finalize this firm's distribution of any non-client funds held for Jason R. Hall. After providing Sandy Fulop, as personal representative to the estate of Jason R. Hall and Dana Hall as the legal guardian of the minor children (heirs to the estate of Jason R. Hall), a detailed briefing of all remaining non-client funds, as well as having the opportunity for independent counsel to review and advise, you have agreed that the outstanding balance is [redacted]. If any outstanding medical bills are satisfied without any further payment, a portion of the amount of those bills will also be refunded to you as well.

Sandra A. Fulop

Sandy Fulop as Personal Representative to the Estate of Jason R. Hall

Sincerely yours,

Tim Howard, J.D., Ph.D.

*Admitted to practice in Florida, the District of Columbia, Northern, Middle, and Southern United States District Courts of Florida, the United States Court of Appeals for the 11th Circuit, and the United States Supreme Court. Ph.D, Northeastern University, Law, Policy & Society. Former Visiting Health Law, Bioethics, and Human Rights Scholar and Constitutional Law, Media & Politics and Judicial Process Instructor at Boston University. Former Professor and Director of Northeastern University's Law & Policy Doctorate Program. President and Professor Cambridge Graduate University.

Pg. 20

# EXHIBIT J

Get on the path to results today.

≡ J.B. HARRIS P.A. 786-303-8333



Legal Expertise You Can Rely On When Filing or Defending a Bar Complaint

FREE CONSULTATION

## ABOUT J.B. HARRIS P.A.

J.B. Harris is a Florida lawyer with more than 36 years experience in complex litigation. Over the years he has developed a specialty in holding lawyers accountable for unethical conduct, by assisting clients and others to prepare and file Bar complaints against unscrupulous attorneys for violations of the Rules Regulating the Florida Bar. Such unethical practices include stealing a client's money held in trust, abandoning a client in the middle of a case, charging a client advance costs under contingency fee contracts, charging exorbitant fees, over-billing hourly rates, settling a case without a client's consent, failing to appear at hearings, and by allowing law office staff to practice law without a license, to name a few.

J.B. Harris also defends lawyers who have been wrongfully accused of unethical conduct and who have had Bar complaints filed against them by disgruntled clients.

If you feel you have either been harmed by a lawyer's unethical practices, or you are a lawyer who is the victim of a client's retaliatory Bar complaints, I am here to represent you

FOR A FREE CONSULTATION, CALL, TEXT OR EMAIL J.B. HARRIS AT 786-303-8333, OR JBHARRISESQ@GMAIL.COM.

### A Focus on Results

We know that legal action can sometimes be overwhelming. J.B. Harris is dedicated to providing you help in language that you can understand. If you don't feel like you understand your options, just ask, and he will work to find an explanation that works for you

### Get Started Today

Don't wait! Contact us for a free phone consultation at 786-303-8333, or at jbharrisesq@gmail.com. Let us help you figure out your best next steps are. The sooner you have a plan of action, the better your chances of taking the correct steps to get the results you want.

J.B. Harris P.A.

786-303-8333

Copyright © 2020 J.B. Harris P.A. - All Rights Reserved.

Powered by GoDaddy Website Builder

**PART FOUR**

**LIST OF WITNESSES SUPPORTING ALLEGATIONS**

Honorable Paul S. Bryan
145 NE Hernando Avenue
Lake City, Florida 32055
(386) 758-2147 (o)

Phillip Timothy Howard, Esq.
3122 Mahan Drive, Suite 801
Tallahassee, FL 32308
(850) 510-6021 (c)
tim@howardjustice.com

JB Harris, Esq.
3127 Ponce De Leon Blvd.
Coral Gables, Florida 33134
(786) 303-8333
Jbharrrisesq@gmail.com
Jbharrispa.com

Kimberly Poling 3432 NE 15th Ave
Oakland Park, Florida 33334
(561) 573-7008
kimberlypoling29@yahoo.com

Margaret "Peggy" Harris
Havana, Florida

Neil Epstein
Tallahassee, Florida
(609) 980-1772

Alfred Brunetti, Esq.
McElroy Deutsch
1300 Mount Kimble Avenue
Morristown, New Jersey 07962-2075
((973) 425-8855 (o)
abrunetti@mdmc-law.com

John P. Leonard, Esq.
McElroy Deutsch
1300 Mount Kimble Avenue
Morristown, New Jersey 07962-2075
(973) 425-8855 (o)
jleonard@mdmc-law.com

Rocco Magni, Esq.
Susman Godfrey
Houston, Texas
(713) 653-7861 (o)
rmagni@susmangodfrey.com

Ashish Mahendru, Esq.
Mahendru, PC
639 Heights Blvd.
Houston, Texas 77007
(713) 571-1519(o)
amahandru@thelitigationgroup.com

Martin Shellist, Esq.
1700 Post Oak Blvd.
2 Blvd Place, Suite 300
Houston, Texas 77056
(713) 714-5355 (o)

Edward Ondarza
1700 Post Oak Blvd.
2 Blvd Place, Suite 300
Houston, Texas 77056
(713) 714-5355 (o)

Witnesses reference in the transcripts and documents filed with the Court and the Florida Bar

# ATTACHMENT V

**IN THE SUPREME COURT OF FLORIDA**
**(Before a Referee)**

THE FLORIDA BAR, Supreme Court Case Nos. SC 19-488 and 19-1570

Complainant,

vs.

PHILLIP TIMOTHY HOWARD, The Florida Bar File Nos. 2016-00,682(2A) and 2019-00,088(2A)

Respondent.
_______________________________/

**MANIFEST INJUSTICE**

COMES NOW Respondent, pursuant to appellate standards of "manifest injustice" documenting clear and manifest bias, prejudice and incompetence of Referee, as well as criminal perjury, extortion, Bar violations by Florida Bar attorney and extorting attorney, Accounting statute and rule violations by Florida Bar accountant, lies to the Referee by the Florida Bar counsel and Bar Rule violations, and compliance with transcript and appeal standards, hereby asserts that reliance on the clerk's granting the Florida Bar's Motion to Dismiss from a strict and rigid adherence to delays in receiving transcripts from Court Reporter, and as a result claiming violation of filing rules by Respondent, results in Manifest Injustice. As grounds, Respondent states as follows:

**LEGAL STANDARD FOR MANIFEST INJUSTICE**

To avoid the procedural bar of this Court's prior affirmance of the Florida Bar's Motion to Dismiss, Respondent

> must demonstrate a **manifest injustice**-"an exception to procedural bars to postconviction claims in only the rarest and most exceptional of situations . . . ." *Cuffy v. State*, 190 So. 3d 86, 87 (Fla. 4th DCA 2015). Merely "[i]ncanting the words '**manifest injustice**' does not excuse the procedural bar[ ]." *McClellion v. State*, 186 So. 3d 1129, 1132 (Fla. 4th DCA 2016). This is true because this Court's earlier decision is the law of the case. The doctrine of the [**10] law of the case is a principle of judicial estoppel. *Fla. Dep't of Transp. v. Juliano*, 801 So. 2d 101, 102 (Fla. 2001). It requires that questions of law actually decided on appeal must govern the case in the appellate court and in the lower tribunal in all subsequent stages of the proceeding. *Id.* Its purpose is "to lend stability to judicial decisions and the jurisprudence of the state, as well as to avoid 'piecemeal' appeals and to

bring litigation to an end as expeditiously as possible." *Strazzulla v. Hendrick*, 177 So. 2d 1, 3 (Fla. 1965). The doctrine is "a self-imposed restraint that courts abide by." *State v. Owen*, 696 So. 2d 715, 720 (Fla. 1997). Decisions made by an appellate court "will seldom be reconsidered or reversed, even though they appear to have been erroneous." *McGregor v. Provident Tr. Co.*, 119 Fla. 718, 162 So. 323, 327 (Fla. 1935).

An appellate court will reconsider its earlier decision only when "'**manifest injustice**' will result from a strict and rigid adherence to the rule." *Strazzulla*, 177 So. 2d at 4. But, when "the court finds that a **manifest injustice** has occurred, it is the responsibility of that court to correct the **injustice** if it can." *Adams v. State*, 957 So. 2d 1183, 1186 (Fla. 3d DCA 2006) (citing *Baker v. State*, 878 So. 2d 1236, 1246 (Fla. 2004)). "Under Florida law, appellate courts have 'the power to reconsider and correct erroneous rulings [made in earlier appeals] in exceptional circumstances and where reliance on the previous decision would result in **manifest injustice**.'" *State v. Akins*, 69 So. 3d 261, 268 (Fla. 2011) (quoting *Muehleman v. State*, 3 So. 3d 1149, 1165 (Fla. 2009)). "[T]he 'law of the case' [**11] does not rigidly bind a court to its former decisions, but is only addressed to its good sense." *Higgins v. Cal. Prune & Apricot Grower, Inc.*, 3 F.2d 896, 898 (2d Cir. 1924). In other words, "[l]aw of the case directs a court's discretion, it does not limit the tribunal's power." *Arizona v. California*, 460 U.S. 605, 618, 103 S. Ct. 1382, 75 L. Ed. 2d 318 (1983) (citing *S. Ry. v. Clift*, 260 U.S. 316, 319, 43 S. Ct. 126, 67 L. Ed. 283 (1922); *Messenger v. Anderson*, 225 U.S. 436, 444, 32 S. Ct. 739, 56 L. Ed. 1152 (1912)). But, defining what constitutes **manifest injustice** is more art than science.

Generally speaking, a showing of **manifest injustice** "requires, at a bare minimum, 'a definite and firm conviction that a prior ruling on a material matter is unreasonable or obviously wrong' and resulted in prejudice." *United States v. Moran*, 393 F.3d 1, 8 (1st Cir. 2004) (quoting *Ellis v. United States*, 313 F.3d 636, 648 (1st Cir. 2002)). Put another way, to establish **manifest injustice**, the reviewing court must be "left with the definite and firm conviction that a mistake has been committed." *Smith v. Clark Cty. Sch. Distr.*, 727 F.3d 950, 955 (9th Cir. 2013) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948)). The error must also affect the defendant's substantial rights. *See United States v. Keppler*, 2 F.3d 21, 24 (2d Cir. 1993). "To show that an error affected one's substantial rights, the defendant must show that there is a reasonable probability of a different result in the outcome of [the] case." *United States v. Rozier*, 685 F. App'x 847, 851 (11th Cir. 2017).

*Vega v. State*, 288 So.3d 1252, 1257-1258 (Fla. 5th DCA 2020).

**MISTAKES MEETING MANIFEST INJUSTICE STANDARD**

The fraud, misrepresentation and misconduct of the Referee, Florida Bar Counsel, Florida Bar Accountant, and criminal perjury and extortion by Florida Bar Complaining attorney consist of: (a) the Florida Bar attorney, Shanee Hinson knowing lying to the Referee about criminal conduct and Bar Rule violations by the extortionate conspirator that led to the Bar Complaint; (b) the Florida Bar Accountant, Roy F. Jeter's knowing violation of accountancy statutes and rules in rending a clearly misrepresented accounting report; (c) the admitted perjured and fraudulent Bar Complaint that was never read by Peggy Harris; (d) the admitted extortionate perjury scheme and numerous Bar Rule violations by J.B. Harris; (e) the violations of Judicial Cannon Rule 3(D), by the Referee, as well as his incapacity to objectively understand and weigh the evidence that is placed before him (relying on claims of reading each word for unneeded copyediting verses understanding the import of all the words); (f) the known complicity of the Florida Bar; and (g) acceptance of the Referee in advancing these extortion and violations of Bar Rules scheme.

This evidence demonstrating Manifest Injustice was detailed in the Motion to Disqualify the Report of Referee on December 13, 2021, which Motion to Disqualify was granted by the Court. This evidence is found in further detail in Attachments A-E to Respondent's Initial Brief, which the Clerk of the Court is now attempting to avoid the Supreme Court's review of the facts and record.

It was not discovered that Shanee Hinson repeatedly lied to the Referee as to the criminal conduct of JB Harris and his numerous Bar violations that led to the Bar Complaint and Report of Referee until the transcript of her testimony was received on December 3, 2021.

It was not discovered that Florida Bar accountant Roy F. Jeter violated numerous Accountancy Rules, and statutes, and rendered opinions that he was not qualified nor permitted to opine professionally until December 8, 2021. After a review of the accounting statutes and rules that he was obligated to comply with and violated, Mr. Jeter's arrogance is even more brazen as he did so without evidentiary basis having never spoken to any party to a contract that he is not qualified nor authorized to interpret. He never met or spoke with the persons that he is opining as to their intent. Notwithstanding Mr. Jeter's accounting statutory and Rule violation-laden report, the Referee accepted the report.

It was not discovered that the Honorable Paul S. Bryan was biased, prejudiced and incapable of rendering an intelligent, knowledgeable and discerning Report of Referee until these facts were brought to his attention on December 13, 2021, and he agreed that disqualification was appropriate.

The evidentiary basis for Manifest Injustice is found in more detail in the Motion to Disqualify and Order filed with the Court, with relevant portions provided below:

2. In the instant action, the Referee has a bias and prejudice in favor of the Florida Bar and against Respondent. This is being filed within 10 days of learning of the grounds, as Respondent received the relevant transcripts on December 3, 2021. The Referee has shown a pattern and practice to disregard his Judicial Cannon requirements under Cannon 3(D), accepting the Florida Bar's Rule violations as well as attorney JB Harris' Rule violations with impunity, while accepting testimony that is not permitted from experts that are not qualified to provide the testimony being submitted.

3. The prejudice and bias are documented as follows, [1]in the Referee's violation of Cannon 3(D) in a Bar Complaint also drafted and orchestrated by the same Florida Bar Rule violator, JB Harris, and as supported by the current Florida Bar counsel, Shanee Hinson, both of whom are violating Florida Bar Rules in supporting the extortion, perjury, and derogatory writings as part of the extortion by attorney JB Harris. The Referee is institutionally incentivized to align with the Florida Bar and its allegations, and is not attempting to uncover the truth of these series of extortions, perjury, and Florida Bar Rule violations against Respondent, by both JB Harris, Florida Bar and those that JB Harris are pulling into his extortionate schemes.

4. Though the legal sufficiency of the following documents and citations are not disputable, the Referee must rule on the motion without passing on its truth or falsity, and without permitting a third party to offer testimony or explanations of the Judge's conduct. *Nathanson v. Nathanson*, 693 So.2d 1061 (Fla. 4th DCA). If the motion to disqualify is facially sufficient, the Referee cannot deny the motion, and in this case a reasonable person would fear that he could not get a fair and impartial trial. *Department of Agriculture and Consumer Services v. Broward County*, 810 So.2d 1056, 2058 (Fla. 1st DCA 2002). Close cases should be resolved in favor of disqualification. *Keilbania v. Jasberg*, 744 So.2d 1027, 2018 (Fla. 4th DCA 1997.

5. Consider the following extensive evidence of prejudice and bias against Respondent:

### I. DOCUMENTATION[2] OF REPEATED NOTICED OF SUBSTANTIAL CRIMINAL AND FRUADULENT ACTS, AND SUBSTANTIAL BAR VIOLATIONS BY ATTORNEY JB HARRIS

Honorable Paul S. Bryan knows of and was specifically provided extensive written evidence and received numerous notices in writing documenting under oath, substantial criminal and fraudulent acts upon the Florida Bar, as well as extensive violations of the Rules of Professional Conduct, by Attorney J.B. Harris, on the following dates:

| | |
|---|---|
| June 11, 2018. | Exhibit A. |
| June 25, 2018. | Exhibit B. |
| July 13, 2018. | Exhibit C. |

[1] These are provided in single space, 11 pitch sections for ease of review.

[2] Documentation cited herein is found in Rebuttal Exhibit F, G and H, as well as further documentation in the Affidavit and attachments found in Exhibit A.

| | |
|---|---|
| August 7, 2018 | Exhibit D. |
| August 22, 2018. | Exhibit E. |
| August 28, 2018. | Exhibit F. |
| March 18, 2021. | Exhibit G. |

Honorable Paul S. Bryan was specifically informed in writing and in sworn testimony of perjury, fraud, extortion, and numerous Florida Bar violations by attorney J.B. Harris, Esq., and his scheme of perjury and fraud with his duped client, Peggy Harris.

As an excerpt, consider the following admission of fraud and perjury found in Exhibit F, addressing Bar Complaint 2019—00,088(2A). This is an acknowledged perjurious, false and fraudulent Bar Complaint that was nevertheless not reported for appropriate prosecution by authorities by the Judge and permitted to be pursued. Under oath the complainant admits she committed perjury in her Bar Complaint that is riddled with false and fraudulent statements. As a limited example, this Bar Complainant states:

Q And so **when this was filed back in 2019**, April of 2019 **you had not read the Bar complaint at that time?**
A Correct.
Q And you would have not been able to tell your lawyers whether -- what was in the Bar complaint was true and correct or contained false statements because you hadn't read it?
A Correct.
**Q And we now know that it contains statements that you believe to be false?**
MR. DIAZ: Form.
BY MR. MONDE:
**Q Correct?**
**A Correct.**
**Q Statements that you believe to be fraudulent, correct?**
MR. DIAZ: Form.
**THE WITNESS: Correct.**
Q. Now that you know that, what steps have you taken to correct that?
A. At this point nothing that I recall.

*See* transcript attached to March 18, 2021, Exhibit F, *infra,* pp. 125-126. The Honorable Paul S. Bryan knows that the Peggy Harris Bar Complaint was never read by Peggy Harris, and was not drafted by Peggy Harris, but by J.B. Harris, despite Peggy Harris filing the Bar Complaint under oath and under penalty of perjury. The Honorable Judge Bryan knows that Peggy Harris under oath acknowledges that the Bar Complaint she signed violated criminal perjury and has extensive false and fraudulent statements. Exhibit E. Peggy Harris admits that her Bar Complaint is fraudulent, prepared and submitted for her signature by her attorney JB Harris, and in response her counsel raised her 5th Amendment rights[3]:

> Q. **You're saying that you signed the Bar complaint without reading it?**
> A. **Correct**. I know that's—that is my fault. I'm sorry I didn't read it.
> . . .
> Q. Part five says that, "Signature.): **Under penalties of perjury, I declare that the foregoing facts are true, correct and complete." Do you see that?**
> A. I do.
> Q. And then your name is printed, correct?
> A. Correct.
> Q. **And then you signed your name, correct?**

[3] MR. ANDERSON: Okay. Well, I'm going to respectfully disagree with you. And to the extent you ask her about her testimony related to her errata sheets, **I'm going to have to instruct her not to answer on the grounds that she could be incriminating herself**.
**MR. MONDE: Then have her take the Fifth.**

**A. You understood when you signed this <u>that you were under penalty of perjury declaring</u>**
**<u>the facts in the statement to be true, correct and complete</u>?**
**A. Correct.**
Q. There was no doubt in your mind about what you were signing, correct?
A. Apparently not—apparently so.
Q. I want to make sure I understand your answer.
A. Well, I—**<u>I did not read it, so I was wrong</u>** in not—putting this down, so—
Q. And I appreciate you're acknowledging that that was wrong. And I want to understand from
you why you agree that was wrong to do. You understood when you signed this that you were
taking an oath to tell the truth –
A. Correct.
Q.—Just like the oath you took this morning?
A. Right.
Q. And you understood the importance of an oath in a legal proceeding, correct?
A. Yes.
Q. I mean, our legal system, you agree, depends on people telling the truth, correct?
A. Correct.
Q. Our legal system depends on people telling the full truth and not being deceptive by leaving
out certain key parts, correct?
A. Correct.
. . .
**Q. You understand what perjury means, right?**
**A. Yes.**
**Q. You understand the penalties of perjury?**
**A. Yes.**
**Q. You understand that in some context perjury can be a criminal offense?**
A. Um-hum.
Q. Yes?
**A. Yes.**
**Q. Would you want any part of a judgment that you believed was based on false information?**
. . .
**A. No.**
**Q. That would be wrong?**
A. Right.
Q. Would you want to be **any part of a judgment that you believed was <u>infected by or tainted</u>**
**<u>by fraud?</u>**
A. I wouldn't like it.
**Q. Would you want any part of it?**
**A. <u>No.</u>**
. . .
Q And so **<u>when this was filed</u> back in 2019**, April of 2019 **<u>you had not read the Bar complaint at that time?</u>**
A Correct.
Q And you would have not been able to tell your lawyers whether -- what was in the Bar complaint was true and correct or contained false statements because you hadn't read it?
A Correct.
**Q And we now know that it contains <u>statements that you believe to be false?</u>**
MR. DIAZ: Form.
BY MR. MONDE:
**Q Correct?**
**<u>A Correct.</u>**
**<u>Q Statements that you believe to be fraudulent</u>, correct?**

MR. DIAZ: Form.
**THE WITNESS:** **Correct.**
Q. Now that you know that, what steps have you taken to correct that?
A. At this point nothing that I recall.

*Id.,* at pp. 23-27, 84-85, 125-126.

In the August 22, 2018, letter to Respondent and State Attorney, Jack Campbell, Exhibit D, provided to the Honorable Paul S. Bryan on March 18, 2021, Complainant wrote specifically that:

Dear Counsel Hinson, and State Attorney Campbell:

In response to and in support of the above-referenced inquiry/complaints, please consider the following:

The Margaret "Peggy" Harris' Inquiry/Complaint under PART *FNE,* is submitted with following statement:

**"Under penalties of perjury, I declare that the foregoing facts are true, correct and complete." Signed by Margaret "Peggy" Harris, on 7-8-18.**

This is an official proceeding under Florida Bar rules and regulations, and based on the language, type set, legal research, attached documents, prior threats to extort, and consistency in his attacks in two other bar complaints, was prepared and ghost written under the guidance, control and direction of Florida attorney, Mr. J.B. Harris.

Under section 837.02(1), Fla. Stat., when perjury takes place in an official proceeding, such as in a Florida Bar complaint, the **criminal** offense of peljury is a third-degree felony punishable by up to 5 years in prison and a $5,000 fine. If this complaint is considered an unofficial proceeding, perjury would be considered a misdemeanor of the first degree, punishable by up to one (1) year in jail, (1) year of probation, and $1,000 in fines. Finally, if this complaint is considered before a public servant in the performance of his or her official duty, perjury would be a misdemeanor of the second degree under section 837.06, Fla. Stat.

Unfortunately for Mrs. Peggy Harris in acceding to Mr. J.B. Harris' agenda and writings, she has sworn to this bar complaint under penalties of perjury. The **exhibits attached to this 7-8-18 sworn statement** are dated **7/30/18, 7/10/18, 7/30/18, 7/30/18, and 7/30/18, respectively.** *See* Exhibit A, Exhibit D, Exhibit E, and Exhibit F. **They are all printed from Mr. J.B. Harris' gmail account, jbharrisesg@gmail.com, on July 31, 2018, July 30, 2018, and August 3, 2018. These emails are not from Mrs. Peggy Harris.** While these exhibits do not constitute a bar violation, they are material to Mrs. Peggy Harris' (Mr. J.B. Harris') claim of such a violation.

**This is absolute perjury as one cannot swear under penalty of perjury to events that have not happened, and one can't believe that what one swears to is true when they have not happened. Thus, they are false, and all statements and attachments were material to the claim.** It **is also too late to recant this perjury as the complaint and response have taken place.** This is the essence of peljury and a criminal violation under section 867.02(1), Fla. Stat. This may also violate section 837.021(1), Fla., Stat., since there are two or more material statements in official proceeding under oath that contradict each other and may constitute a second-degree felony as well.

Moreover, it is a bar violation to present false evidence. Under rule 4-1.2(d), **"A lawyer shall not counsel a client to engage, or assist a client, in conduct the lawyer knows or reasonably should know is criminal or fraudulent."** *See* Florida Bar Ethics Opinion 75-19. It is also a bar violation to offer evidence that the lawyer knows to be false and should disclose that the evidence is false to the tribunal. Rule 4-3.3(b). It is fair to state that Mr. J.B. Harris authored and prepared the entire bar complaint and is using Mrs. Peggy Harris as a front and tool for his own extortionate and denigrating agendas. In that instance, he has violated Rule 4-3.3(a)(l), (2), and

(4), which require candor toward the tribunal, and has made a false statement, and has failed to correct or disclose a false statement of material fact or offered evidence that the lawyer knows to be false. In addition, Mr. J.B. Harris must report and disclose that this is his bar complaint.

Mr. J.B. Harris is consistently threatening and extorting. Just yesterday, pertaining to health insurance that this firm pays for Mr. J.B. Harris of approximately $2,500 a month, that was understood to be automatically deducted from the account, and was rectified prior to the firm being aware his threat and extortion, Mr. J.B. Harris wrote:

"Tim, I **suggest you reactivate my insurance today** **or I will be at your office first thing tomorrow to spend a little quality time with you.** You've placed the lives of my children at risk and that won't stand."

August 21, 2018 email from Mr. J.B. Harris, attached. Exhibit F, attached.[4]

Honorable Paul S. Bryan knew of these Bar violations yet in violation of his legal and Code of Judicial Conduct mandatory obligations, *see* Section III, *supra*., did nothing to report them for investigation.[5] Morally, and as a responsible citizen and member of the Bar, The

---

4 In Exhibit F, it was clarified as follows:

> The facts demonstrate that this bar complaint was written by Mr. J.B. Harris as part of his continued efforts at extortion. As pointed out in the many prior filings, these documented and repeated, upon repeated patterns violate the following rules of professional conduct as promulgated by the Florida Supreme Court:
>
> A lawyer must not threaten opposing parties with sanctions, **disciplinary complaints,** criminal charges, or additional litigation to gain a tactical advantage. *See* Florida Supreme Court, Professionalism Expectations: Expectation 3.18; and Rules Regulatingthe Florida Bar: Rule 4-3.4(g).
>
> A lawyer must not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter. *See* Florida Supreme Court, RulesRegulating the Florida Bar: Rule 4-3.4(g).
>
> A lawyer must not present, participate in presenting, or threaten to present **disciplinarycharges** under these rules solely to obtain an advantage in a civil matter. *See* Florida Supreme Court, Rules Regulating the Florida Bar: Rule 4-3.4(h). 4
>
> To opposing parties and their counsel, a lawyer should act with **fairness, integrity, andcivility,** not only in court, but also **in all written and oral communications.** (Oath of Admission)
>
> Candor and civility must be used in all oral and written communications.(Professionalism Expectations: Expectation 2.2)
>
> **A lawyer must avoid disparaging personal remarks** or acrimony toward opposing parties, counsel, third parties or the court. (Professionalism Expectations: Expectation 2.3). **A lawyer should be civil and courteous in all situations, both professional and personal, and avoid conduct that is degrading to the legal profession.** R. Regulating Fla. Bar 3-4.3. 5
>
> **A lawyer's communications in connection with the practice of law,** including communications on social media, **must not disparage another's character or competence** or be used to inappropriately influence or contact others. (Professionalism Expectations: Expectation 2.5); *see* R. Regulating Fla. Bar 4-8.4(d).
>
> **A lawyer must not criticize or denigrate opposing parties,** witnesses, or the court **to clients, media, or members of the public.** (Professionalism Expectations: Expectation 4.20); see R. Regulating Fla. Bar 4-8.2(a) and 4-8.4(d)).

*Id.*

5 In the June 11, 2018, filing with Shanee Hinson and Jack Campbell, State Attorney, Exhibit A, provided to Honorable Judge Paul on March 18, 2021, the extensive Florida Bar violations and extortion were detailed and documented as follows:

Even though $11,583.98 was paid to Mr. Harris on December 28, 2017, on January 29, 2018, Mr. Harris threatened a Bar complaint and criminal and civil action without lawful justification for his own pecuniary advantage, in order to receive $2,000 that day, which indeed was wired that day, stating: "If **you don't throw me another miniscule $2,000 lifeline TODAY, I'm filing a bar complaint against you and your lap dog Ankur. I've called to make an appointment to meet with the Bar tomorrow in person.** I'm driving to Tallahassee at first light. I don't care how sick I am." Email from Mr. Harris attached as Exhibit A (emphasis added).

Mr. Harris continues his threats on February 1, 2018, now demanding $80,228, in order to avoid a Bar complaint against Mr. Howard, stating: **"I've prepared a bar complaint against you which I will file tomorrow if I'm not paid in full by then."** This threat was backed up by Annie Sebastian, attorney with the Diaz law firm, without lawful justification and for their own pecuniary advantage, stating, "I will file suit to strip you of your percentage in the Bryant case and **forward the suit to the Florida Bar** along with a complaint for your failure to meet your obligations to this firm and the client." February 1, 2018 email attached as Exhibit B (emphasis added).

On February 7, 2018, Mr. Harris, again threatens, with incorrect information, and without lawful justification for his own pecuniary advantage, blindly supporting another extortion scheme by a representative of BWCI Trust for a fraudulent and corrupt lender recommended by former advisors lacking skills and having ill intent, stating,

> Tim, I am now aware of the predicament that you are in and that **your house of cards is rapidly collapsing.** If you haven't signed the [corrupt extortionate] agreement by the close of business today necessary to release the insurance premium payment [BWCI $345,000 to a fraudulent lender], plus the lifeline agreement with Lance [BWCI representative in false agreement and participant in fraudulent scheme], I **will proceed with the Diaz firm in aligning ourselves with 1 other creditor, to force you into bankruptcy.**

February 7, 2018 email attached as Exhibit C (emphasis added). Note use of the **term,"house of cards"** as used in Kim Poling's June 4, 2018 Rebuttal, page 4.

All delays under the agreement were caught up in full, including a $20,000 payment on February 9, 2018, and another $22,000 payment on February 12, 2018 (which included a $15,000 bonus). Just two weeks later, Mr. Harris, not knowing the collateral structure of the lender, on February 26, 2018, without lawful justification and for his own pecuniary advantage, threatens criminal action to gain advantage in a civil contract issue that Mr. Howard did not know existed, stating:

> Accordingly, you have until this Friday at 12:00 pm March 2, 2018, to release every case belonging to me on the UCC-1's referenced herein, or on those of any other creditor of H&A, or I **am proceeding straight to the FBI** with this information. And I **will not sleep until you and Mr. Mehta are brought to justice and placed behind bars.**
>
> Finally, since you terminated our agreement without cause, I reserve all rights I have against you and Mr. Mehta, including without limitation claims for fraud in the inducement, fraud, conspiracy to commit fraud, intentional infliction of emotional distress and punitive damages.

February 26, 2018 email from Mr. Harris is attached as Exhibit D (emphasis added).

During the month of March, Mr. Howard diligently worked with Mr. Harris and a legitimate lender to obtain funding for the prosecution of Engle cases and to secure payments to Mr. Harris and his interests. March 26, 2018 email to Mr. Harris documenting the work done to secure Mr. Harris' interests. Email and texts attached as Cumulative Exhibit E.

Due to Mr. Harris' mode of communicating with the lender, the lender informed Mr. Harris on April 3, 2018, as follows: "From now on, please do not call, text or email any Virage staff. It is detrimental to our process and not helpful to Tim." April 3, 2018 email attached as Cumulative Exhibit E. In response, Mr. Harris writes, on April 5, 2018, stating:

Marty, (1) before I **sue Virage, you, Ed and Tim for fraud and conspiracy to commit fraud,** for:

---

(1) intentionally and maliciously liening with your fraudulent UCC-1 my tobacco cases in which Tim had no interest in, nor had been retained by my client to represent; . . . .

(2) before I also file **a complaint against you and your co-conspirators with the SEC for the same,** alerting the SEC how you have breached your fiduciary duties to Virage and its shareholders; and

(3) before I **file a Bar complaint against you for all of the above;**

(4) you may want to man up and call me to discuss a settlement of my claims tomorrow, first thing. Otherwise, my weekend will be very busy.

April 5, 2018 email from Mr. Harris, attached as Exhibit F (emphasis added). Despite the attacks, threats, and no factual or legal basis for the attacks and threats, the parties entered into a Confidential Settlement and Release Agreement, providing Mr. Harris with $21,000 a month salary, office expenses, and health insurance, plus $50,000 on April 6, 2018. This amounts to an additional over $100,000 for Mr. Harris since early April, for a combined $450,000 over the past 16 months.

In fact, on March 30, 2018, just days earlier, Mr. Howard personally sent Mr. Harris $350 out of the $361 that I had in available to help him get through the weekend. March 30, 2018 text attached hereto as Exhibit G. Notwithstanding the compassion, diligence, repeated and continued efforts for goodness and care to advance Mr. Harris' security and interests, he has not changed his approach.

Consistent with Mr. Harris' threats of criminal prosecution, forced bankruptcy, and Bar complaints, stated on January 29, 2018, February 1, 2018, February 26, 2018, April 5, 2018, Mr. Harris is now engaged in daily threats and attacks without legal justification for pecuniary gain. The evidence indicates that Mr. Harris is conspiring with, **ghost writing and directly and indirectly assisting** in the Kim Poling Bar Complaint and Rebuttal, including but not limited to providing text information from his email [Rebuttal of Kimberly Poling to Dr. Tim Howard's Response, Exhibit E], and a copy of a transcript that only Defendants have received and upon information and belief was provided to Mr. Harris, who gave it to Ms. Poling [Rebuttal of Kimberly Poling to Dr. Tim Howard's Response, Exhibit H], as well as language, while adopting her Reply. *See* JB Harris and Kim Poling Rebuttal filed on June 4, 2018. Note, the June 4, 2018 Reply provided no new substantive information, only further incendiary and derogatory language consistent with Mr. Harris' language in the other documents.2

Mr. Harris most recent threat of criminal and civil actions, and Bar complaint, all without legal justification and for his own pecuniary advantage, as part of his extortion took place on June 6, 2018, concerning a former client of Mr. Harris, that took the initiative to contact this firm due to the abuse that they state that Mr. Harris and his team had inflicted upon them, and dropped them as counsel. *See* June 6, 2018 email from Mr. Harris to clients, counsel and Mr. Howard. Mr. Harris states:

> Tim, if you think you are having trouble with the Bar's investigation of your practices, BWCI Penson Trustees Limited, Ted Doukas, and everyone else who is still after you, **you are about to walk into a shit storm** if you steal the Goulds from me as my clients.
>
> I will lien the file for cost and fees, sue you for tortious interference and unpaid contributions to costs, **fraud and everything else I can think of. I will also amend my complaint with the Bar** and file a complaint against Neil [paralegal in office] as well.

June 6, 2018 email from Mr. Harris to Mr. Howard, client, co-counsel and lender, attached as Exhibit H (emphasis added).

On June 7, 2018, not knowing the facts, Mr. Harris continues to threaten Bar complaints, stating to a paralegal with the firm, **"I'm am left with no choice but to file a Bar complaint against you."** June 7, 2018 text to paralegal attached as Exhibit I (emphasis added). On that same date, Mr. Harris confirms to the client that "We've had our differences but have worked through them. I was VERY hurt to learn about what may be going on behind my back. We really need to speak. I **won't yell or scream.** Promise." June 7, 2018 text to his fo1mer client attached as Exhibit I (emphasis added). The client does not want to be yelled at or abused any further and this is why they switched counsel.

Also on June 7, 2018, Mr. Harris sends another text to the client disparaging counsel without legal justification and for his own pecuniary advantage, continuing his use of the extortion model of complaints to gain advantage in a civil dispute. He first implies that the Ph.D. from Northeastern University, awarded in 2005, is not legitimate. He next uses the Bar process that he coordinated with Ms. Poling for filing to continue his extortion model of practicing law to intimidate the client. He asserts that his Bar complaint is legitimate and factually based. He then falsely asserts that there is an investigation by the "Feds" of the law firm. A threat he first asserted in February of 2018. Finally, he asserts that Ankur Mehta doesn't have a **Doctorate,** which is false since he has a Juris Doctorate, and uses the UPL that he coordinated with Ms. Poling to file, as another extortion tool to address a client desire to not be abused. June 7, 2018 text to his former client attached as Exhibit J.

Continuing this pattern, on June 8, 2018, Mr. Harris, without legal justification for his own pecuniary advantage, unleashes his threats, extortion and intimidation efforts with a series of derogatory comments, such as **coward, scumbag, blasphemous, sociopathic charade, days a lawyer are numbered,** and his continued use of the Bar as an extortion device, stating:

> Tim, you breached the NDA by going behind my back to steal my clients and slandering them to me. You're a **first rate coward and a scumbag.** All your talk about **Jesus is blasphemous garbage.** Trust me, I will be pursing my remedies forthwith. You want a war. You are going to get one. Hope you paid Leonard his fees up front.
>
> Did you inform the clients that (i) you are the target of an SEC investigation; (ii) a Bar investigation; (iii) have never tried a tobacco case; (iv) wouldn't know how to if your life depended on it; (v) you don't have a pot to piss in; and (vi) can't afford to litigate a tobacco case. I doubt it. Accordingly, your actions are retaliatory for my having filed a Bar complaint against you.
>
> Trust me, these clients know about tobacco litigation than you ever will. I can also assure you they will rip you to shreds once they see through your **sociopathic charade.**
>
> By the way, the Bar is starting to debrief your former employees. Seems like you've been on the Bar's radar for quite sometime. **Your days as a lawyer are numbered. I'm sure your family will be so proud once they find out.** Enjoy your weekend.

Detailing the Bar Violations entailed, Dr. Howard provided attorney Shanee Hinson case law and statutes on Bar violations and criminal extortion violations:

> Lawyer disciplined for sending disparaging emails to opposing counsel, calling him a liar, and making improper outbursts directed toward opposing counsel during the litigation. *The Florida Bar v. Norkil1,* 132 So.3d 77 (2013)). *See also The Florida Bar v. Abramson,* 3 So.3d 964 (2009); *The Florida Bar v. Buckle,* 771 So.2d 113 (Fla. 2000); *The Florida Bar v. Sayler,* 721 So. 2d 1152 (Fla. 1998); *The Florida Bar v. Ratiner,* 46 So.3d 35 (Fla. 20I0). Lawyer disciplined for sending a letter to a cou1t-appointed provisional director of corporation in which he improperly threatened to file suit against provisional director and accused the provisional director of being involved in a conspiracy. *The Florida Bar v. Norkin,* 132 So. 3d 77 (2013); *See also The Florida Bar v. Abramson,* 3 So. 3d 964 (Fla. 2009). "The First Amendment does not protect those who make harassing or threatening remarks about the judiciary or opposing counsel. Under Rule of Professional Conduct 4-8.4(d), lawyers are required to refrain from knowingly disparaging or humiliating other lawyers." *The Florida Bar v. Sayler,* 721 So.2d 1152, 1155 (Fla. 1998).
>
> Whoever, either verbally or by a written or printed communication, maliciously threatens to accuse another of any crime or offense, or by such communication maliciously threatens an injury to the person, property or reputation of another, or maliciously threatens to expose another to disgrace, or to expose any secret affecting another, or to impute any deformity or lack of chastity to another, with intent thereby to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will, shall be guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 7775.084. Under Florida Statute 836.05, the crime of Extortion is committed when a person maliciously threatens to: Accuse another of any crime or offense; Injure the person, property or reputation of another; Expose another to disgrace; Expose any secret affecting another; or Impute any deformity or lack of chastity to another, with the intent to: Extort money or any pecuniary advantage; or Compel any person to do any act or refrain from doing any act against their will. **Actual Malice versus Legal Malice.** Although it is a subtle distinction, under the Extortion statute, the prosecutor is required to prove the threat was committed with Actual Malice, which

Honorable Paul S. Bryan should have immediately acknowledged and presented the criminal and fraudulent conduct to the criminal prosecutor and Florida Bar, requesting a Florida Bar investigation and criminal referral. In fact, he is mandated to report to the Florida Bar, yet he did nothing. *See* Section III, *supra.*

When confronted that she knew of the criminal perjury, extortion[6] and fraud, Shanee Hinson, before the cock crowed, three times intentionally lied to the Honorable Paul S. Bryan stating that she is "aware of no such violations," and falsely stated as follows:

**Dr. Howard**: I'm . . . talking about **a history of documented [Bar] violations which I have [provided], which you received showing extortion, threats, derogatory comments and extensive perjury that you're aware of**, that you decided [not] to go forward with -- in this case, regardless. That's what I'm referring to, his history of perjury.

**Shanee Hinson**: Mr. Howard, okay. I just want to stop you because you said that I am aware of. **I am aware of no such thing**, so I just wanted to make that clear.

**Dr. Howard**: Yes, you are. They're **attached to your exhibits** so you are aware of those things.

**Shanee Hinson**: **I'm aware of no such violations**, is what I'm clarifying.

**Dr. Howard**: **And I'm clarifying that you are, in writing. You've received written and sworn statements that are perjurious, complete perjury, under oath by both Mr. [JB] Harris, by Peggy Harris, and they are detailed with documents attached to Shanee Hinson and the Florida Bar. The Florida Bar has been fully aware of his perjury, fully aware of his Bar violations**, yet you're going forward with this, and that's why you're not calling him as a witness because you know how dirty he is.

**Shanee Hinson**: Mr. Howard, let me clarify again, **I am aware of no Bar violations**.

Transcript, Vol. 2, pp. 247-249, and pp. 289-294, attached as Exhibit H. Honorable Judge Paul knew that these statements to him were not true yet did not report these intentional misrepresentations to him to the Florida Bar.

## II. FLORIDA BAR RULE VIOLATIONS BY ATTORNEY SHANEE HINSON NOT REPORTED BY HONORABLE JUDGE BRYAN

---

means "means ill will, hatred, spite, evil intent." This is in contrast to what is known as Legal Malice, which only requires that an act be committed intentionally and without any lawful justification. **Penalties for Extortion.** The crime of Extortion is a Second-Degree Felony in Florida and is punishable by up to 15 years in prison, 15 years of probation, and a $10,000 fine. *Calamia v. State,* 125 So. 3d 1007 (Fla. 5th DCA 2013) (Actual malice is the standard. "A threat is malicious if it is made intentionally and without any lawful justification."); *McKee v. State,* 7 I 5 So.2d IO1 (Fla. 5th DCA 1998) (Conviction upheld for threats that defendant will destroy you, destroy your business, accusing of drug use, and threatening to make accusations to a federal agency.). "Maliciously" means wrongfully, intentionally, and without legal justification or excuse. A threat is "malicious" for purposes of exto l tion statute if it is made intentionally and without any lawful justification. It is not necessary that the person accused of extortion have the ability to carry the threat out. Threats to cause mental or psychological injuries are generally prohibited under exto l tion statute. Therefore, if you threatened to expose someone's affair to their spouse unless they paid you $1,000,000, the threat could be considered extortion for causing a psychological injury or because it was done for a monetary gain. This is extortion even if you did not know how to contact their spouse. Generally, a claim of extortion cannot be based on a threat to do an act which a person has a lawful right to do, but **you may not threaten to undertake an otherwise legal act for your own pecuniary advantage.** An attorney that repeatedly engages in conduct considered extortion can be a violation of the Florida RICO Act, pursuant to section 772.04, Florida Statutes.

[6] Dr. Howard informed Shanee Hinson of the extortion by Dana Hall and Sandra Fulup on August 3, 2018, and their conspired demand of $355,031, when nothing was owed and a full accounting and review had taken place with Sandra Fulup signed and accepted on December 23, 2013, with the opportunity for independent counsel to review and advise. The Bar has done nothing pertaining to this extortion as well. Rather, swallowed a toxic narrative by an extorter that hasn't worked in nearly 10 years, and gone after Dr. Howard. Exhibit I.

Based on the undisputed and repeatedly documented in writing, facts of:

(1) "known" "substantial" dishonesty, untrustworthiness and fitness as a lawyer and not informing the appropriate professional authority after numerous and repeated information of criminal, fraudulent and Rule of Professional Conduct violations;
(2) knowingly and intentionally making a false statement of fact three times or more to the Court; and
(3) failing to disclose a material fact and as a result assisting a criminal or fraudulent act upon the Florida Bar and the Court,

Respondent, Shanee Hinson, Esq., violated the following Rules Regulating the Florida Bar:

**A. RULE 4-3.3 CANDOR TOWARD THE TRIBUNAL**

**(a) False Evidence; Duty to Disclose.** A lawyer **shall not knowingly**:

(1) **make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;**
(2) **fail to disclose a material fact** to a tribunal **when disclosure is necessary to avoid assisting a criminal or fraudulent act** by the client;
(3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or
(4) offer evidence that the lawyer knows to be false. **A lawyer may not offer testimony that the lawyer knows to be false** in the form of a narrative unless so ordered by the tribunal. **If a lawyer,** the lawyer's client, or a witness called by the lawyer has offered material evidence and the **lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures including, if necessary, disclosure to the tribunal.** A lawyer may refuse to offer evidence that the lawyer reasonably believes is false.

**B. RULE 4-8.3 REPORTING PROFESSIONAL MISCONDUCT**

**(a) Reporting Misconduct of Other Lawyers.** A lawyer who **knows**[7] **that another lawyer has committed a violation of the Rules of Professional Conduct** that **raises a substantial question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer** in other respects **must**[8] inform the appropriate professional authority.

**(b) Reporting Misconduct of Judges.** A lawyer who knows that a judge has committed a violation of applicable rules of judicial conduct that raises a substantial question as to the judge's fitness for office must inform the appropriate authority.

The Comment section of Rule 4-8.1(a), states that the "term "substantial" refers to the seriousness of the possible offense and not the quantum of evidence of which the lawyer is aware."[9]

---

[7] In Chapter 4, Rules Regulating Professional Conduct, definitions, it states that: "Knowingly," "known," or "**knows**" **denotes actual knowledge of the fact in question.** A person's **knowledge may be inferred from circumstances.**
[8] The Scope of the Rules of Professional Conduct as detailed in Chapter 4, specifically states that: "They should be interpreted with reference to the purposes of legal representation and of the law itself. Some of the rules are **imperatives,** cast in the terms of "**must**," "must not," or "may not."
[9] Chapter 4, Rules Regulating Professional Conduct, Scope of Rule states that:

> Failure to comply with an obligation or prohibition imposed by a rule is a basis for invoking the disciplinary process. The rules presuppose that disciplinary assessment of a lawyer's conduct will be made on the basis of the facts and circumstances as they existed at the time of the conduct in question in recognition of the fact that a lawyer often has to act upon uncertain or incomplete evidence of the situation. Moreover, the rules presuppose that whether discipline should be imposed for a violation, and the severity of a sanction, depend on all the circumstances, such as **the willfulness** and **seriousness of the violation**, extenuating factors, and whether there have been previous violations.

### C. RULE 4-8.4 MISCONDUCT

A lawyer shall not:

**(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist** or induce **another to do so**, or do so through the acts of another;

**(b)** commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects;

**(c) engage in conduct involving dishonesty**, fraud, **deceit, or misrepresentation**, except that it shall not be professional misconduct for a lawyer for a criminal law enforcement agency or regulatory agency to advise others about or to supervise another in an undercover investigation, unless prohibited by law or rule, and it shall not be professional misconduct for a lawyer employed in a capacity other than as a lawyer by a criminal law enforcement agency or regulatory agency to participate in an undercover investigation, unless prohibited by law or rule;

**(d) engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly**, or through callous indifference, disparage, humiliate, or discriminate against litigants, jurors, witnesses, court personnel, or other lawyers on any basis, including, but not limited to, on account of race, ethnicity, gender, religion, national origin, disability, marital status, sexual orientation, age, socioeconomic status, employment, or physical characteristic;

## III. CODE OF JUDICIAL CONDUCT VIOLATIONS BY HONORAL JUDGE PAUL

**Canon 1**

**A Judge Shall Uphold the Integrity And Independence of the Judiciary**

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.

**COMMENTARY**

Deference to the judgments and rulings of courts depends upon public confidence in the integrity and independence of judges. The integrity and independence of judges depend in turn upon their acting without fear or favor. Although judges should be independent, they must comply with the law, including the provisions of this Code. Public confidence in the impartiality of the judiciary is maintained by the adherence of each judge to this responsibility. Conversely, violation of this Code diminishes public confidence in the judiciary and thereby does injury to the system of government under law.

**Cannon 3**

**A Judge Shall Perform the Duties of Judicial Office Impartially and Diligently**

A. Judicial Duties in General.
The judicial duties of a judge take precedence over all the judge's other activities. The judge's judicial duties include all the duties of the judge's office prescribed by law. In the performance of these duties, the specific standards set forth in the following sections apply.

. . .

---

In Chapter 4, Rules Regulating Professional Conduct, definitions, it states that: "'Fraud' or 'fraudulent' denotes conduct having a purpose to deceive and not merely negligent misrepresentation or failure to apprise another of relevant information."

D. Disciplinary Responsibilities.
(1) A judge who receives information or has actual knowledge that substantial likelihood exists that another judge has committed a violation of this Code shall take appropriate action.
(2) **A judge who receives information or has actual knowledge that substantial likelihood exists that a lawyer has committed a violation of the Rules Regulating The Florida Bar shall take appropriate action.**

**Commentary**

Canon 3D. Appropriate action may include direct communication with the judge or lawyer who has committed the violation, other direct action if available, or reporting the violation to the appropriate authority or other agency. If the conduct is minor, the Canon allows a judge to address the problem solely by direct communication with the offender. **A judge having knowledge**, however, that another judge has committed a violation of this Code that raises a substantial question as to that other judge's fitness for office **or has knowledge that a lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, is required under this Canon to inform the appropriate authority.** While worded differently, this Code provision has the identical purpose as the related Model Code provisions.

***Judicial Ethics Advisory Committee***
**Opinion Number: 2019-14**
**Date of Issue: April 10, 2019**

**ISSUES**
Whether the inquiring judge has a duty to report an attorney to The Florida Bar in circumstances where representations made to the court by the attorney during a judicial proceeding were known by the inquiring judge to be false.

**ANSWER:**
In the circumstances presented, Canon 3D(2) requires the inquiring judge to report the attorney for misconduct to The Florida Bar.

**FACTS**
A judge has inquired whether there is an ethical obligation under the Code of Judicial Conduct to report an attorney for misconduct to The Florida Bar based on the following facts. The inquiring judge was presiding over probation violation proceedings in which defense counsel, mid-way through a series of hearings, insisted that the client/defendant did not speak or understand English; could not proceed without the assistance of an interpreter; and could not have willfully violated the applicable probationary conditions because the defendant never understood those obligations as a result of the alleged language issue. The inquiring judge knows the lawyer's representations are false. Specifically, the inquiring judge knows, based on record evidence, that the lawyer's client/defendant previously acknowledged in open court that the client speaks English well enough to be comfortable conducting court matters in English, the defendant always spoke English with probation officers without apparent difficulty, the client never requested a translator before, and the lawyer knew when making the contrary allegations that the client/defendant speaks and understands English.

The inquiring judge is concerned that the lawyer's breach of his duty of candor to the tribunal may have been so egregious as to call into question his honesty and trustworthiness as a lawyer.

**DISCUSSION**
The response to this inquiry is governed by Canon 3D(2) of the Code of Judicial Conduct which provides as follows:

A judge who receives information or has actual knowledge that substantial likelihood exists that a lawyer has committed a violation of the Rules Regulating The Florida Bar shall take appropriate action.

As this Committee has previously noted: "All Florida judges are, first and foremost, attorneys and members of The Florida Bar. As such, Florida judges, just like every other Florida attorney, have an obligation to maintain the integrity of the legal profession and to report to The Florida Bar any professional misconduct of a fellow attorney." Fla. JEAC Op. **98-21**.

This Committee has also previously stated that before making a report to The Florida Bar, the inquiring judge should "first make a determination as to whether a substantial likelihood exists that the lawyer in question violated the Rules of Professional Conduct." Fla. JEAC Op. **97-17**. The judge is required to reach a "reasoned determination" of whether a lawyer has committed a violation of the Rules Regulating The Florida Bar. Id. Should the judge reach that conclusion, the judge would then be obligated to inform the Bar. *Id.*[1]

Essentially, the inquiring judge asks what is the "appropriate action" to be taken in the circumstances presented. Although the Code does not specify what the term "appropriate action" entails in a particular circumstance, the Commentary to Canon 3D guides this Commission's response:

Appropriate action may include direct communication with the judge or lawyer who has committed the violation, other direct action if available, or reporting the violation to the appropriate authority or other agency. **If the conduct is minor, the Canon allows a judge to address the problem solely by direct communication with the offender. A judge having knowledge, however,** that another judge has committed a violation of this Code that raises a substantial question as to that other judge's fitness for office or has knowledge **that a lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, is required under this Canon to inform the appropriate authority.** [10]While worded differently,

---

[10] In JEAC Opinion Number 2005-16, with less severe perjury, with no extortion or fraud involved, the Judicial Ethics Advisory Committee found as follows:

**FACTS**

The inquiring judge is presiding over a negligence action. Attached to the plaintiff's answers to the defendant's propounded interrogatories was a separate page containing the plaintiff's signature, underneath a jurat clause indicating that the plaintiff "after being first duly sworn . . . deposes and states that he has executed the foregoing answers to interrogatories, and that they are true and correct to the best of his knowledge and belief." A notary's certificate followed.

At a hearing held after the service of the plaintiff's answers to interrogatories, the plaintiff's counsel represented that he and the plaintiff generally discussed the interrogatories, during an office conference. The plaintiff's counsel directed a notary in his law office to notarize the plaintiff's signature. However, no answers were prepared or appended to the signature page when the plaintiff signed the signature page. **The plaintiff's counsel further represented at the hearing that the plaintiff's answers to the interrogatories were prepared several months after the plaintiff signed the signature page** and the plaintiff's signature was notarized.

The inquiring judge believes that there is a substantial likelihood that the plaintiff's attorney has violated the Rules Regulating The Florida Bar, including Rules 4-1.2(d) and 4-3.4(b), in that the notary prepared a false certificate in violation of section 117.105, Florida Statutes (2005); and that the client has offered false testimony under oath, in violation of Chapter 837, Florida Statutes.

**DISCUSSION**

**The inquiring judge has an obligation to report the plaintiff's attorney to The Florida Bar** if the inquiring judge believes that this is the appropriate action to take under the circumstances presented. Canon 3(D)(2) of the Florida Code of Judicial Conduct directs that a judge who receives information or has actual knowledge that a substantial likelihood exists that a lawyer has committed a violation of the Rules Regulating The Florida Bar shall take appropriate action. The Florida Supreme Court has stated:
**All Florida judges are, first and foremost, attorneys and members of The Florida Bar. As such, Florida judges, just like every other Florida attorney, have an obligation to maintain the integrity of the legal profession and report to The Florida Bar any professional misconduct of a fellow attorney**.

this Code provision has the identical purpose as the related Model Code provisions. (Emphasis added.)

Significantly, **"[t]he Supreme Court does not view violations of the Bar Rule governing misconduct involving dishonesty, fraud, deceit, or misrepresentation as minor**." *The Florida Bar v. Gilbert*, 246 So. 3d 196, 203 (Fla.2018).[2]

**The facts indicate that the inquiring judge "has actual knowledge that substantial likelihood exists that a lawyer has committed a violation of the Rules Regulating The Florida Bar," that such violation is not minor in nature, and that the lawyer's conduct raises a significant question as to the lawyer's honesty, integrity, trustworthiness, or fitness for the practice of law. Accordingly, the Committee advises that Canon 3D(2) requires the inquiring judge to report the attorney to The Florida Bar.[3]**

**REFERENCES**
Fla. Code Jud. Conduct, Canon 3D(2).
Fla. Code Jud. Conduct, Canon 3D(2), Commentary.
Fla. JEAC Ops. **01-06**, **98-21** and **97-17**.
*The Florida Bar v. Gilbert*, 246 So. 3d 196, 203 (Fla. 2018).
*Holt v. Sheehan*, 122 So. 3d 970, 976 (Fla. 2d DCA 2013), note 2.
*Favel v. Haughey*, 727 So. 2d 1033, 1036 (Fla. 5th DCA 1999).

While a judge is not required by the Code of Judicial Conduct to report a criminal violation, but as an attorney and member of the public has a moral, statutory and other non-code obligations to report criminal conduct, namely the integrity of the attorneys and legal proceedings before the Florida Bar, and sanctioning extortion, perjury, and fraud upon members of society and the legal community. *See* Judicial Ethics Advisory Opinion 2012-11.

Honorable Judge Paul failed to comply with his mandatory obligation to report Florida Bar attorney Shanee Hinson and Florida Attorney JB Harris to the Florida Bar for known and serious Florida Bar Rule violations.

## IV. CONSEQUENCES OF FAILURE TO ENFORCE CRIMINAL LAW AND RULES REGULATING THE FLORIDA BAR

With no accountability by the Honorable Judge Bryan, nor the Florida Bar for known perjury, extortion, defamation, violations of numerous Florida Bar rules, and Shanee Hinson's violation of Florida Bar Rules and intentional misrepresentation to Honorable Judge Bryan, JB Harris, Esq., thinks he has a free license to continue these Florida Bar Rule violations of perjury and extortion tactics in filing Florida Bar complaints, and now advertises to do the same. Exhibit J. This is a plague upon the legal profession. Not holding all parties accountable, including the Court, the Florida Bar, and Shanee Hinson, **permits this poisonous, corrupt and criminal model to denigrate the morality and integrity of the profession, and this evil model of existence to fester and grow.**

---

5-H Corp. v. Padovano, 708 So. 2d 244, 246 (Fla. 1997) (citations omitted). **This Canon is mandatory**, not hortatory. *See also* JEAC Ops. **98-21** and **97-17**.

The parties to the pending action should be notified on the record through counsel that the inquiring judge referred the plaintiff's attorney to The Florida Bar. The Commentary to Canon 3E(1) of the Florida Code of Judicial Conduct states "that a judge should disclose on the record information that the judge believes the parties or their attorneys might consider relevant to the question of disqualification, even if the judge believes there is not a real basis for disqualification." Referring the plaintiff's attorney to The Florida Bar is an issue that the parties might consider relevant to the question of disqualification.

## V. REFEREE ACCEPTED TESTIMONY OF FLORIDA BAR ACCOUNTANT IN VIOLATION OF ACCOUNTING STATUTORY STANDARDS

## I. DOCUMENTATION OF SECTION 455.227, FLORIDA STATUTE VIOLATIONS

Mr. Roy Jeter is practicing beyond the scope permitted by law and performing expert opinions that Mr. Jeter is not competent to perform, filing a report with opinions and accounting errors that the licensee knows he is not competent to provide, is making misleading and untrue representations, as well as aiding, assisting and advising an unlicensed entity contrary to the rules of the board of accountancy. Consider the following:

Jeter March 27, 2018 Report Exhibit A
John Harvard October 30, 2020 Report Exhibit B

In sworn testimony, Mr. Jeter states, without ever talking to or knowing any witness to the facts, as follows:

Q. Okay. So it's your position that it's fairly obvious that, because Mr. Howard did not provide you with the written options that he discussed with his client, that he didn't give him the options, and that because he didn't do that, he somehow deceived his client? That's the position?
A. I think the fact that Dr. Howard created these records is evidence of a deception.

Jeter Dep. at 116:12-25; 117 (1-4).

In his audit report, Mr. Jeter provides expert testimony that he is not qualified nor competent to provide, making misleading representations concerning a deceased individual and the deceased's sworn written directives, when he never met the person nor was involved in the creation of the sworn documents. He violated these standards while assisting and advising an unlicensed entity contrary to the rules of the Board of Accountancy.

For instance, Mr. Jeter chose to disregard payments Dr. Howard paid or fees earned on behalf of the deceased Mr. Hall. Exhibit G of Mr. Jeter's report represents total payments of $148,145.60 and acknowledges the payments or fees earned, yet he deems them unallowed based solely at his discretion and his interpretation of a contract without discussing the contract terms with any party, or having a court determine the contract terms. There is no rule of accounting that permits this.

There were a few other nonexclusive examples of Mr. Jeter's expert accounting conclusions of Mr. Howard's intent that are not supported by facts, and that he is not qualified to render opinions on, in his advising an unlicensed entity contrary to the rules of the Board of Accountancy. A couple of examples are as follows:

1. Page 3 of Jeter report "The **respondent deceived Jason Hall** into believing the only way interest could be earned on the settlement funds was by giving the settlement funds to the respondent to use at the respondent's discretion."

There is no evidence that supports Mr. Jeter's claimed expert opinion, and he is not skilled nor qualified as an accountant to provide expert intent opinions on parties that he has never met on a person that deceased many years earlier. Especially when the only living fact witness verifies the opposite and there is no documentation to support the opinion.

2. Page 3 of Jeter report "The respondent's actions were for his personal benefit."

There is no evidence that this was done to benefit respondent, and in fact, the sworn testimony is that this was done solely for the deceased Jason Hall, for his benefit. Mr. Jeter has no factual nor expert basis to make this accounting statement. Especially when the only living fact witness verifies the opposite and there is no documentation to support the opinion.

3. Page 3 of Jeter report "The respondent deceived Jason Hall into signing a letter that allowed the respondent to use Jason Hall's settlement funds for respondent's benefit."

There is no evidence that this was done to benefit respondent, and in fact, the sworn testimony is that this was done solely for the deceased Jason Hall, for his benefit. Mr. Jeter has no factual nor expert basis to make this accounting statement. Especially when the only living fact witness verifies the opposite and there is no documentation to support the opinion.

4. Page 6 of Jeter report the heading used **"False Accounting for Loan from Settlement Funds"**

The word false is based on no factual evidence, and Mr. Jeter is not qualified to render an expert opinion on intent of an individual, especially when he was not a fact witness and never met any party to the events, and testifies contrary to the only fact witness.

5. Page 7 of the Jeter report **"The respondent falsely** reported the repayment of the loan principle and incorrectly calculated interest amount in the 2016 accounting."

Again, without any factual basis and not ever meeting any witness, Mr. Jeter issues an opinion of false reporting that he is not qualified to render. Documenting his violation of accounting standards, and improperly aiding an unlicensed agency, contrary to the evidence of $148,150.60 paid on loan principle within months of the loan agreement, as found in Exhibit G of his report, Mr. Jeter does not permit known and documented payments on the loan when there was no interest charge available as the loan was only a month or two old.

Mr. Jeter claims, as a non-fact witness accountant, that "it is fairly obvious" that any records Dr. Howard provided were "evidence of deception." Jeter Dep. At 116:12-25; 117:1-4; that Jason Hall was "on drugs" and "not in his right faculties," therefore enabling Dr. Howard to steer Jason Hall to direct Dr. Howard to deposit settlement funds into a non-trust account. Jeter Dep. at 108:11-13. This factual interpretation is not the prerogative of the accountant, without a factual basis. Those with factual involvement with Jason Hall are the only witnesses that can testify as to Jason Hall's condition in the Summer of 2008, and the only witness to that is Dr. Howard. Mr. Jeter goes on to interpret a contract between two other parties, without any expertise in legal contract interpretations, not discussing the contract terms with any party to the contract, without any court declaring the intent and meaning of the contract terms, and without any action filed by any party to interpret the contract. The bias and suppositions of Mr. Jeter, not part of his expertise, nor capacity as a witness, in assisting and advising an unlicensed agency, is a violation of the Florida Board of Accountancy Rules.

Mr. Jeter admits that he never met or spoke with Dr. Howard or the decedent. "Q You have never met with Mr. Howard, have you? A No. Q And you never spoke to Mr. Howard on the phone have you? A. No." (Trial Transcript, p. 618). Mr. Jeter admits that he never discussed the directive letter of the deceased client with the deceased client. "And never discussed this letter with Mr. Hall, correct? A No." (Trial Transcript, p. 623).

Mr. Jeter denies the written and sworn instructions of the deceased client and interprets them as "nonsense" in violation of Board of Accountancy Rules.

Question: So is it your position that it's fairly obvious that because Mr. Howard did not provide you with a copy -- did not provide you with a copy with the written options that he discussed with his client that he did not give him the options and that because he didn't do that he somehow deceived his client? That's the position?
Answer: I think the fact that Dr. Howard created these records is evidence of a deception. The Exhibit A-1, for example, I mean, I think that itself is evidence of deception.
Q And you read Exhibit A-1 to your report, which is the July 15th letter, which is a signed document not only by Mr. Howard but a document that's signed and notarized by Mr. Hall, correct, sir?
A Yes.
Q And this document says: This document is provided in order to comply with professional standards and to verify that you have identified and directed that various funds from Summit as a

result of your Workers' Compensation settlement received by this firm are non-refundable, non-client funds that are to be deposited at this firm's discretion for distribution. You did not perform your audit based upon that language, correct?
A I did not perform my audit based on what?
Q Based upon that language.
A That line uses nonsense words, so how can I -- your question doesn't make any sense to me at all.
Q Okay, is it my question that doesn't make sense, or you feel, like you stated, these are nonsense words, so you didn't consider it in the performance of your duties as an auditor of the Florida Bar?
A You are asking me if I treated nonsense as if it was a legitimate statement. I don't know what to say to that.
Q Okay, so it's nonsense to you that a client, an individual, who you never met, could direct his attorney to handle funds in a certain way, is that true, sir?
A Well, I have to ask you for definitions. What is a non-client fund? Why would a settlement that belongs to Jason Hall be non-refundable? I mean, you have to define some things for me, because I've never seen these terms before.

(Trial Transcript, pp. 628-631). John Harvard did a comprehensive, item by item documentation of the accounting and rendered an accounting report consistent with accounting standards, and qualified his opinion based on the documents received, not based on his opinions. Exhibit B.

## II. VIOLATIONS OF SECTION 455.227, FLORIDA STATUTES

Section 455.227, Fla. Stat., provides as follows:

(1) The following acts shall constitute grounds for which the disciplinary actions specified in subsection (2) may be taken:
(a) Making misleading, deceptive, or fraudulent representations in or related to the practice of the licensee's profession.
. . .
(j) Aiding, assisting, procuring, employing, or advising any unlicensed person or entity to practice a profession contrary to this chapter, the chapter regulating the profession, or the rules of the department or the board.
. . .
(l) Making or filing a report which the licensee knows to be false, intentionally or negligently failing to file a report or record required by state or federal law, or willfully impeding or obstructing another person to do so. Such reports or records shall include only those that are signed in the capacity of a licensee.
(o) Practicing or offering to practice beyond the scope permitted by law or accepting and performing professional responsibilities the licensee knows, or has reason to know, the licensee is not competent to perform.

Mr. Jeter is misleading the court and the public, and the unlicensed entity, contrary to the rules regulating accountants, as to his competence to render factual opinions as an accountant as to intent and knowledge of the intent of a deceased person and a person he has never met, with signed and sworn documents that are contrary to his opinions. His report is negligent at the very least, his testimony is outside of his scope of knowledge or expertise, and he is performing professional responsibilities that he knows, or has reason to know, he is not competent to perform.

In sum, based on the Referee' bias and prejudice towards the Florida Bar in not holding the Florida Bar accountable to its own Florida Bar Rules, nor holding attorneys involved in extortion, perjury, and extensive violations of Florida Bar Rules accountable for their violations, nor holding experts accountable to the limitations of their expertise as found in statute, and the Court's own

violations of Cannon 3(D), the Report of Referee has demonstrated mistakes, inadvertence, fraud, bias and prejudice, misrepresentation and misconduct of an adverse party.

The Clerk in not permitting the Supreme Court to review any of the facts, evidence, transcripts, violations of criminal law, violations of Florida Bar Rules, violations of Accounting Rules, violations of Judicial Cannon Rules, nor permitting briefing of any type to be reviewed by the Florida Supreme Court, has demonstrated clear Manifest Injustice that procedural technicalities can in no way justify or permit if there is any semblance of justice in Florida.[11] *See Vega v. State*, 288 So.3d 1252, 1257-1258 (Fla. 5th DCA 2020).

---

[11] There has been a pack of criminal operatives, extorters, loan sharks and many times charged and some convicted criminals that Respondent trustingly and in blind grace provided support and opportunities to. When this pack of poison purveyors could take no more $ from Respondent, they deflect from their own criminal enterprises and shrewdly spread poison to weak individuals who either cower or adopt their poison without substantive facts. These include extorter and criminal perjury operator, JB Harris, Addys Walker, Corey Fuller, Don Reinhard, Ted Doukas, Lynda Bedell, BWCI, Amir Shenaq, etc. These purveyors of poisonous untruths are trying to get away with theft of $ millions.

As an example, beyond the above perjury by JB Harris, consider the following sworn testimony as part of the Civil Theft Pre-suit Notice to Addys Walker and Linda Bedell::

Mr. Addys T. Walker admitted under oath in deposition in the federal case of *Jaskminka Ilich-Ernst v. Phillip Timothy Howard*, Case No.: 4:19cv554-MW/MJF, on February 29, 2020, pp. 163-164, that he lied and committed fraud in early December of 2017, taking nearly $300,000 from Dr. Howard that Mr. Addys Walker, after having already taken approximately $1,200,000.00, said he would pay the funds back in two weeks, while knowing of the impending 90-day deadlines Husband had on three short-term loans for the Jacksonville Hotel project, and having just one week earlier, spent $130,000 on funding Benin Gold monetization and bonding project that Mr. Addys Walker and Mr. Jeff Kahn were structuring. In his sworn deposition, Mr. Addys Walker states:

> Q Do you not recall a conversation at Pepper's where you said I'm going to pay you this money back in two weeks and you can trust me because I'm Addys Walker? Do you recall saying that?
> A As I said to you earlier in this deposition, you lied to me to get my money [after he and Linda Bidell had been paid and received income of approximately $1.2 million] so I lied to you to get it back. What about it?
> Q So you're agreeing that's what you said?
> A Are you agreeing to what I just said? Did you hear what I just said to you?
> Q I asked you did you not tell me at Pepper's I need $290,000 in order to get this house, I'll pay you back in two weeks, you can look -- I'm Addys Walker, you can trust me? Did you not say that?
> A Okay. What about it? As I just said, I --
> Q Is that yes?
> A -- said what I had to say to get the money back that you owed me. What do you want me to do?

WHEREFORE for the foregoing reasons, pursuant to Manifest Injustice, Respondent must be granted relief from the Clerk's granting of the Motion to Dismiss, without any person reviewing any evidence, or any brief, as it is clearly and manifestly unjust on so many fronts. The Briefing must be reviewed, the Report of Referee must be dismissed, and Respondent granted relief from this clear and manifest injustice.

Respectfully submitted on this 14th Day of January 2022.

*<u>/s/ Phillip Timothy Howard</u>*
PHILLIP TIMOTHY HOWARD, J.D., Ph.D.
Florida Bar No.: 0655325
3122 Mahan Drive, Suite 801

---

Mr. Addys Walker admitted that these funds were knowingly given to his business partner Ms. Linda Bedell to purchase a home at 1315 Ostin Nene, Tallahassee, Florida, that Ms. Linda Bedell knew of and was engaged in this scheme, that they both said they were getting a loan from BB&T to pay the amount back since Ms. Linda Bedell had good credit and it was routine to get the mortgage since the house was paid for They took the nearly $300,000 in proceeds as part of their scheme never intending to pay Dr. Howard back.

Dr. Howard asked for and received verbal updates on the mortgage approval from Mr. Addys Walker and Ms. Linda Bedell in the two weeks following their taking of the funds. They said it should come out of committee any day. Finally, in the third week of December of 2017, Dr. Howard demanded these funds. Mr. Addys Walker and Ms. Linda Bedell knew that he needed these funds to meet payroll, and to pay back on the $1 million in short-term loans he made for the Jacksonville Hotel Project using $5 million in paid-for assets. He informed them that he loved them and that they were working as a team, and needed these funds back as promised. This fell flat, with no love in return. Mr. Walker threatened Dr. Howard and as part of their conspiracy took the funds.

Similarly, the **same Florida Bar prosecutor that lied to Judge Bryan, the Assistant State Attorney Lorena Bueno** (that **<u>illegally prosecuted Coach Dimitric Salters knowing from her own State Attorney Investigator that the warrants were untruthful</u>**) and the U.S. Attorney, were coordinating investigating Dr. Howard's 2016 and 2017 voluntary assistance of Lincoln High School Basketball and the wrongful arrest and malicious prosecution of Coach Dimitric Salters, based on the false information given by known drug funding source and informants Corey Fuller (that Respondent provided volunteer coaching with to the Varsity Football team at Gadsden County High School for two years), confidence game operator Addys Walker (that Respondent blindly trusted), and thrice convicted criminal, Don Reinhard (that Respondent had compassionately assisted due to their football ties at Lincoln High School), who each in their own way schemed to take $500,000 by Mr. Reinhard, over $300,000 by Mr. Walker, and over $600,000 by Mr. Fuller, without paying taxes or penalties. Correspondence between the Assistant State Attorney and Investigator documenting known untruthful warrants and her coordinating with the Florida Bar and U.S. Attorney, with complete untruthful statements, and going through a dumpter to do so, and there being nothing found therein, attached hereto.

Thus, the entire justice machinery, including the Clerk of the Supreme Court, instead of investigating the criminals, their perjury and extortion, the Florida Bar and its prosecutors have failed to demonstrate independence, intelligence and integrity. **They chose to coast, feeding on the dead and dying pattern of injustice through crushing and condemnation of others with half-truths, lazily parroting the poisonous and ignorant schemes of criminal operatives, loan sharks, and extorters.**

Tallahassee, Florida 32308
Telephone: (850) 510-6021
Tim@HowardJustice.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 14tj day of January 2022, I electronically filed the foregoing with the Clerk of the Court for the Second Judicial Circuit, in and for the State of Florida, Leon County, by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ Phillip Timothy Howard*
Phillip Timothy Howard, Esq.

**IN THE SUPREME COURT OF FLORIDA**
**(Before a Referee)**

THE FLORIDA BAR, Supreme Court Case Nos. SC 19-488 and 19-1570

Complainant,

vs.

PHILLIP TIMOTHY HOWARD, The Florida Bar File Nos. 2016-00,682(2A) and 2019-00,088(2A)

Respondent.
_______________________________/

**MANIFEST INJUSTICE—REPLY TO FLORIDA BAR**

COMES NOW Respondent, pursuant to appellate standards of "manifest injustice" documenting clear and manifest bias, prejudice and incompetence of Referee, as well as criminal perjury, extortion, Bar violations by Florida Bar attorney and extorting attorney, Accounting statute and rule violations by Florida Bar accountant, lies to the Referee by the Florida Bar counsel and Bar Rule violations, and compliance with transcript and appeal standards, hereby asserts that reliance on the clerk's granting the Florida Bar's Motion to Dismiss from a strict and rigid adherence to delays in receiving transcripts from Court Reporter, and as a result claiming violation of filing rules by Respondent, results in Manifest Injustice. As grounds, Respondent states as follows:

**NO RESPONSE TO FACTS DEMONSTRATING MANIFEST INJUSTICE**

Respondent has provided, sworn statements in writing and under oath documenting "Manifest Injustice" from sworn, written clear and manifest bias, prejudice and incompetence of Referee, as well as criminal perjury, extortion, Bar violations by Florida Bar attorney and extorting attorney, Accounting statute and rule violations by Florida Bar accountant, lies to the Referee by the Florida Bar counsel, Bar Rule violations, and perjury and known untruthful submissions to the Court by investigators and prosecutors.

The Referee didn't even address nor determine the validity of the only factual witness and his 280 pages of sworn testimony. The Florida Bar has no factual response to these written and sworn violations. The Florida Bar also claims no legal support for Manifest Injustice.

In contrast, the undisputed evidence is that Respondent complied with written and sworn directives from his client and provided honest and consistent legal work for his clients, garnering them over $11 million in recoveries and verdicts.

The late Florida State University College of Law Professor William McHugh, in first year contracts, taught this axiom: "an ounce of facts beats a tub of law." Respondent, he has provided not an ounce, but a ton of extensive written and sworn evidence documenting "Manifest Injustice," and provided clear and present case law supporting "Manifest Injustice."

The real question is what is the integrity of the judicial system of Florida? Does it advance justice and roar like a lion, or manipulate and dissemble the "façade of justice" and scurry like beaten mice into a system of injustice that no man of integrity and strength respects? The history of court supported racism, fraudulent criminal prosecutions (as documented), legal networking gamesmanship using power and position for greed, and politization of the Courts as found in the two-party system of the United States, demonstrates that the latter often takes place when Judges turn a blind eye to sworn and written evidence of perjury, extortion, lies, Bar Rule violations, Judicial Rule violations, and Accounting Rule violations.

Let not this Court on this day go towards an injustice system. Let not this Court devolve into a social capital exchange cage of norms, with superficial intellect, depth, and

reasoning that imprisons itself from ever knowing the truth, while its participants feed off of the dying carcass of a "façade of justice."

While Respondent understands the injustice of this world and will forgive and pay the price internally for whatever takes place, there is still a price that must be paid that the institutions and its leaders will be held accountable for. Concomitant with Respondent's forgiveness, he has a moral and spiritual obligation to stand up and fight for justice, and he will do so until his mortal days are over.

WHEREFORE for the foregoing reasons, pursuant to Manifest Injustice, Respondent must be granted relief from the Clerk's granting of the Motion to Dismiss, without any person reviewing any evidence, or any brief, as it is clearly and manifestly unjust on so many fronts. The Briefing must be reviewed, the Report of Referee must be dismissed, and Respondent granted relief from this clear and Manifest Injustice.

Respectfully submitted on this 24th Day of January 2022.

*/s/ Phillip Timothy Howard*
PHILLIP TIMOTHY HOWARD, J.D., Ph.D.
Florida Bar No.: 0655325
3122 Mahan Drive, Suite 801
Tallahassee, Florida 32308
Telephone: (850) 510-6021
Tim@HowardJustice.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 24th day of January 2022, I electronically filed the foregoing with the Clerk of the Court for the Second Judicial Circuit, in and for the State of Florida, Leon County, by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ Phillip Timothy Howard*

Phillip Timothy Howard, Esq.