**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**PHILLIP TIMOTHY HOWARD,**

   **Plaintiff,**

**vs.**                                    **Case No. 4:22cv97-AW-MAF**

**J.B. HARRIS, et al.,**

   **Defendants.**
**_____/**

## REPORT AND RECOMMENDATION

Pending in this case are four motions to dismiss, ECF Nos. 36, 39, 50, and 75, Plaintiff's first amended complaint [hereinafter "complaint"], ECF No. 13.  Also pending is a motion for summary judgment, ECF No. 45, filed by Defendant Jonathan Harris.  Plaintiff has filed responses to each motion, and each will be addressed separately.

**Preliminary Notes**

First, although the complaint listed two Plaintiffs - Dr. Howard and Howard & Associates, ECF No. 13 at 1, the complaint presented three claims only on behalf of Dr. Howard.  ECF No. 13 at 17-24; *see also* ECF No. 19 (Order denying motion to withdraw).

Second, a glance at the docket would suggest that Plaintiff is represented by counsel Richard B. Collins.  Mr. Collins briefly entered an appearance in this case on behalf of Howard & Associates, P.A., ECF No. 15, but withdrew his notice a few days later.  *See* ECF No. 18. Plaintiff represents himself in this case.  Plaintiff is a former attorney who was disbarred by the Florida Supreme Court on March 24, 2022.  ECF No. 8.  The complaint is signed by Plaintiff and all responses are filed by Plaintiff.  Plaintiff is, accordingly, pro se.

Third, Plaintiff has named seven Defendants in this case.  ECF No. 13.  This Report and Recommendation is concerned only with Plaintiff's claims against Defendants Shanee L. Hinson and Roy Jeter.  Their motion to dismiss, ECF No. 50, asserts several reasons that the complaint against them should be dismissed - (1) Rooker-Feldman doctrine; (2) Eleventh Amendment immunity; (3) absolute immunity; (4) lack of standing.  *Id.* at 4-18.  Plaintiff has filed his response in opposition to the motion, ECF No. 62. The motion is ready for a ruling.

Fourth, Plaintiff submitted numerous attachments to his response. ECF No. 62 at 15-183.  Those attachments have not been considered.  As Plaintiff should know full well, ruling on a motion to dismiss considers the

complaint, the motion, and the response.  A "court is ordinarily barred from considering facts not alleged in the complaint or documents attached to a motion to dismiss."  Roberts v. Carnival Corp., 824 F. App'x 825, 826 (11th Cir. 2020).  The same principle hold true when a plaintiff submits extrinsic documents.  Furthermore, although Plaintiff provided nearly 170 pages of attached materials, he cited to only pages 12, 18-20 of attachment I, *see* ECF No. 62 at 9, and generally to Attachment IV.  *Id.* at 11.  Even if this were a motion for summary judgment which could properly consider outside exhibits, Plaintiff has not properly provided the Court with pinpoint citations.  *See* N.D. Fla. Loc. R. 56.1(F).  The Court declines Plaintiff's invitation to review 170 pages of attachments in search of a potential pearl buried within pages not separately identified or easily located.[1]

---

[1] The multitude of exhibits which Plaintiff submitted were filed as part of his response - ECF No. 62 - one document consisting of 183 pages.  None of the exhibits included within that jumble of paperwork were clearly marked, numbered, or otherwise separated.  "District judges are not archaeologists. They need not excavate masses of papers in search of revealing tidbits—not only because the rules of procedure place the burden on the litigants, but also because their time is scarce."  Nw. Nat. Ins. Co. v. Baltes, 15 F.3d 660, 662-63 (7th Cir. 1994); *see also* King v. Marcy, No. 2:17-CV-112, 2019 WL 4547071, at *4 (S.D. Ga. Sept. 19, 2019), aff'd, 809 F. App'x 764 (11th Cir. 2020) (stating that "judges need not endeavor to 'fish a gold coin from a bucket of mud'" and citing U.S. ex rel. Garst v. Lockheed-Martin Corp., 328 F.3d 374, 378 (7th Cir. 2003)).

Case No. 4:22cv97-AW-MAF

Additionally, Defendants Hinson and Jeter also provided an exhibit with their motion to dismiss.  ECF No. 50-1.  This Order makes clear that the exhibit was not reviewed.

**Standard of Review**

The issue on whether a complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted is whether the plaintiff has alleged enough plausible facts to support the claim stated.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 570, 127 S. Ct. 1955).[2]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127

---

[2] The complaint's allegations must be accepted as true when ruling on a motion to dismiss, Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), *cert. denied*, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations."  Twombly, 127 S. Ct. at 1965, (quoting Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)).

S. Ct. at 1965); *see also* <u>Wilborn v. Jones</u>, 761 F. App'x 908, 910 (11th Cir.

2019).  "The plausibility standard" is not the same as a "probability

requirement," and "asks for more than a sheer possibility that a defendant

has acted unlawfully."  <u>Iqbal</u>, 556 U.S. at 677 (quoting <u>Twombly</u>, 550 U.S.

at 556).  A complaint that "pleads facts that are 'merely consistent with' a

defendant's liability," falls "short of the line between possibility and

plausibility."  <u>Iqbal</u>, 129 556 U.S. at 677 (quoting <u>Twombly</u>, 550 U.S. at

557).

The pleading standard is not heightened, but flexible, in line with Rule

8's command to simply give fair notice to the defendant of the plaintiff's

claim and the grounds upon which it rests.  <u>Swierkiewicz v. Sorema</u>, 534

U.S. 506, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002) ("Rule 8(a)'s

simplified pleading standard applies to all civil actions, with limited

exceptions.").  Pro se complaints are held to less stringent standards than

those drafted by an attorney.  <u>Wright v. Newsome</u>, 795 F.2d 964, 967 (11th

Cir. 1986) (citing <u>Haines v. Kerner</u>, 404 U.S. 519, 520-521, 92 S. Ct. 594,

596, 30 L. Ed. 2d 652 (1972)).  Nevertheless, a complaint must provide

sufficient notice of the claim and the grounds upon which it rests so that a

"largely groundless claim" does not proceed through discovery and "take

up the time of a number of other people . . . ." <u>Dura Pharmaceuticals, Inc.</u>

<u>v. Broudo</u>, 544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005)

(quoted in <u>Twombly</u>, 550 U.S. at 558).

**Allegations of Plaintiff's complaint**, **ECF No. 13**

Plaintiff's allegations are summarized below.  As it pertains to the

instant motion to dismiss filed by Defendants Jeter and Hinson, it is noted

that Defendants are sued in their individual capacities.  ECF No. 13 at 2.

Defendant Shanee Hinson is an attorney with The Florida Bar.  Defendant

Roy Jeter is an accountant with The Florida Bar.  *Id.*  Plaintiff specifically

declares that he is not seeking to challenge "the final decision of the Florida

Supreme Court" and does not seek "relief from a state court judgment

based on" the Court's disbarment order.  ECF No. 13 at 2, n.1.

On January 29, 2018, Defendant J.B. Harris allegedly threatened to

file a Bar complaint against Plaintiff if Plaintiff did not pay him money.  *Id.* at

3.  On February 27, 2018, J.B. Harris threatened to also go to the FBI.  *Id.*

at 5.  On June 8, 2018, Plaintiff received another communication from J.B.

Harris which Plaintiff alleged "document[ed] the enterprise and scheme of

J.B. Harris and Shanee Hinson."  *Id.* at 7.  The communication indicated

the Bar had begun an investigation of Plaintiff and told Plaintiff that his

"days as a lawyer [were] numbered." *Id.* In August 2018, J.B. Harris threatened Plaintiff with physical violence if he did not reactivate insurance immediately. *Id.* at 8-9.

Plaintiff made a conclusory assertion of an "extortion enterprise with Shanee Hinson and J.B. Harris," and claimed they "conspired to draft and submit a perjured and fraudulent Bar Complaint" against Plaintiff and attribute it to Defendant Margaret Peggy Harris. *Id.* at 9. Plaintiff claims the Bar Complaint was "fraudulent," "full of lies," and included known perjury. *Id.* It appears that Peggy Harris was deposed by Shanee Hinson and admitted that she had not read the Bar Complaint which she signed and, after the fact, she admitted the Complaint included statements which she believed were false. *Id.* at 9-11.

J.B. Harris allegedly conspired with Defendant Kimberly Butler Poling as well and wrote her Bar Complaint and rebuttal. ECF No. 13 at 11. Plaintiff vaguely asserts it tracked "the same scheme with Peggy Harris," meaning that it was "written by J.B. Harris, but signed by Kimberly Butler Poling." *Id.* Plaintiff made a conclusory allegation of a "conspiracy" between J.B. Harris, Kimberly Butler Poling and Shanee Hinson. *Id.* at 12.

Plaintiff contends he "informed Shanee L. Hinson, Dana Hall and

Sandra Fulup" of the extortion from Hall and Fulup on August 3, 2018.

ECF No. 13 at 13.  Plaintiff contends they demanded money in July of 2016

but "there was no legitimate claim for loss of funds."  *Id.*  He said that

"Shanee Hinson and Roy Jeter conspired and colluded with extorters J.B.

Harris, Dana Hall and Sandra Fulup . . . ."  *Id.* at 13-14.  It appears that

Defendant Roy Jeter "gave sworn testimony" as an accountant, but Plaintiff

asserts the testimony was "in violation of section 455.227, Florida Statutes,

as part of its criminal extortion conspiracy, which activities are outside the

scope of his employment or expertise as an accountant."  ECF No. 13 at

14.

Plaintiff claims "Shanee L. Hinson, attorney, was a co-conspirator in

the criminal extortion and known perjury and fraud" involving J.B. Harris,

Peggy Harris, Jeter, Hall, Fulup, and Butler Poling.  *Id.*  Plaintiff contends

she "abused her position" for the purpose of advancing "her career and

legal opportunities," and performed "numerous specific," but unidentified,

"acts to forward the conspiracy and aided the conspiracy by intentionally

and knowingly lying to the Court," and "intentionally turning a blind eye" to

the goal of J.B. Harris - to take Plaintiff's "fees on tobacco cases" and his

Bar license "no matter what." *Id.* at 14-15.  He alleged that Hinson "was
informed in writing" on three separate occasions that J.B. Harris, Peggy
Harris, Hall, Fulup, and Butler Poling were extorting the Plaintiff, but she
denied knowing of such facts to the Bar referee. *Id.* at 15-16.  In short,
Plaintiff contends there was a "joint conspiracy" among all the Defendants
and he is entitled to monetary damages. *Id.* at 17.

Count I of the complaint asserts a due process claim, but it is not
directed to any specific Defendant.  ECF No. 13 at 17-19.  Count II asserts
a "civil conspiracy and RICO" claim against all seven Defendants. *Id.* at
19-21.  The only specific citation to a statute is 18 U.S.C. § 1962(c) and (d),
but that is a criminal statute and not a civil statute. *Id.* at 21.  The third and
final claim is incorrectly identified as "Count VII" and asserts a "civil theft"
claim against Defendants J.B. Harris and Peggy Harris. *Id.* at 22-24.

## Analysis

### 1. Rooker-Feldman Doctrine

Defendants Hinson and Jeter assert that Plaintiff is, "in fact," seeking
to "attack the validity of the Florida Supreme Court's Order disbarring

Plaintiff."  ECF No. 50 at 5.  Despite Plaintiff's contention to the contrary,[3]

Defendants argue that Plaintiff is seeking "to relitigate issues inextricably

intertwined with the Florida Supreme Court's Disbarment Order."  *Id.*  They

contend that Plaintiff is "literally" seeking monetary damages against an

attorney and accountant employed by The Florida Bar to address injuries

caused by their participation in the disbarment proceedings.  *Id.* at 5-7.

Defendants argue that Plaintiff's claim against them requires this Court "to

review and reject the Supreme Court of Florida's determination that his

claims lacked merit."  ECF No. 50 at 7.

In response, Plaintiff contends Defendants[4] misapprehend "the facts

and merits" of his complaint.  ECF No. 62 at 5.  He agrees that the "facts

need to be more specifically pled in a Verified Amended Complaint" and he

expresses a willingness to do so.[5]  *Id.* at 13.  While Plaintiff addressed

---

[3] Plaintiff included a footnote in his complaint that asserts: "This is not a case challenging the final decision of the Florida Supreme Court and is not seeking relief from a state court judgment based on that decision."  ECF No. 13 at 2, n.1.

[4] Plaintiff acknowledges that Defendants Fulup and Hall also made the same argument in their motion to dismiss.  ECF No. 62 at 5.

[5] Despite asserting that "Plaintiff is happy to provide a Verified Amended Complaint that provides distinct facts and claims against distinct parties so that the Defendants can more clearly respond to the complaint," ECF No. 62 at 13, Plaintiff did not file a motion seeking leave to file a second amended complaint.

other defenses presented by Defendants, Plaintiff did not specifically address the Rooker-Feldman defense.  ECF No. 62.  Plaintiff stated only that he "is not second-guessing the Bar's decisions regarding prosecuting Plaintiff nor is he re-litigating [T]he Florida Bar's prosecution."  *Id.* at 12.

The "*Rooker–Feldman* doctrine" derives its name from two cases: Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983).  Skinner v. Switzer, 562 U.S. 521, 531, 131 S. Ct. 1289, 1297, 179 L. Ed. 2d 233 (2011).  The doctrine applies in a narrow set of cases which contain this pattern: the losing party in state court files suit in a federal district court after the state proceedings have ended, and complains of injuries "caused by the state-court judgment and seeking federal-court review and rejection of that judgment."  Skinner, 562 U.S. at 531, 131 S. Ct. at 1297.  In such cases, federal courts lack "subject-matter jurisdiction over such claims, for 28 U.S.C. § 1257 'vests authority to review a state court's judgment solely in' the United States Supreme Court.  562 U.S. at 531-32, 131 S. Ct. at 1297 (quoting Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 292, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005)).

"The doctrine applies where an issue presented to the district court is 'inextricably intertwined' with the state court judgment."  Alvarez v. Att'y Gen., 679 F.3d 1257, 1262 (11th Cir. 2012) (quoted in Scott v. Frankel, 562 F. App'x 950, 953 (11th Cir. 2014)).  "That occurs where '(1) the success of the federal claim would effectively nullify the state court judgment' or (2) 'the federal claim would succeed only to the extent that the state court wrongly decided the issues.'"  Alvarez, 679 F.3d at 1262-63 (quoted in Scott, 562 F. App'x at 953).

"Decisions by state supreme courts disciplining attorneys for misconduct qualify as such final decisions."  Scott, 562 F. App'x at 953 (citing Johnson v. Supreme Court of Ill., 165 F.3d 1140, 1141 (7th Cir. 1999)).  "As a result, 'the *Rooker–Feldman* doctrine eliminates most avenues of attack on attorney discipline.'"  Scott, 562 F. App'x at 953 (other citations omitted).  In Scott v. Frankel, the Eleventh Circuit held that Scott's claim for damages against the individuals who were "involved" and "colluded" to obtain Scott's suspension from the practice of law was barred by the *Rooker-Feldman* doctrine.  562 F. App'x at 954.  In short, the claims were found to be "'inextricably intertwined' with the Florida Supreme

Court's decision.'" *Id.*  Thus, the district court lacked jurisdiction over the claim.  *Id.*

Plaintiff's intention with this case is evident from the "motion for temporary and permanent injunction," ECF No. 2, filed on March 8, 2022, just four days after Plaintiff initiated this case.  Plaintiff claimed that his "law license [was] being illegally taken by The Florida Bar and The Florida Supreme Court . . . ."  ECF No. 2 at 2.  Plaintiff sought to enjoin the alleged conspiracy and all named Defendants.  *Id.* at 8.  It is apparent that Plaintiff sought to prevent the loss of his Bar license which, apparently, Plaintiff believed was imminent.

However, there is a critical distinction between this case and cases barred by *Rooker-Feldman*.  Plaintiff filed this case on March 4, 2022.  *See* ECF No. 1.  The Order of the Florida Supreme Court was not issued until March 24, 2022, and it would not be effective until 30 days later.  ECF No. 8 at 4.  The *Rooker-Feldman* doctrine "is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced . . . ."  Exxon Mobil Corp., 544 U.S. at 284, 125 S. Ct. at 1521-22.  Plaintiff ultimately lost in the Florida Supreme Court, but the judgment was not "rendered" before

this case commenced.  *See* <u>Locke v. Canady</u>, No. 4:22cv116-AW-MAF,

2022 WL 16832831, at *4 (N.D. Fla. Sept. 26, 2022), report and

recommendation adopted as modified sub nom. <u>Locke v. Muniz</u>, No.

4:22-CV-116-AW-MAF, 2022 WL 15798584 (N.D. Fla. Oct. 28, 2022)

(noting that the underlying state court case had not ended because Plaintiff

had filed a motion for rehearing on the same day he initiated the federal

case); <u>Green v. Jefferson Cnty. Comm'n</u>, 563 F.3d 1243, 1250 (11th Cir.

2009) ("'confining the scope of the *Rooker-Feldman* doctrine to instances

where the state proceedings have ended, in line with both the Rooker and

Feldman cases,' heeds the Supreme Court's warning that the doctrine is

limited and should be applied narrowly") (citations omitted)).  Therefore,

Plaintiff's case is not barred by *Rooker-Feldman* and the motion to dismiss

should be denied as to that argument.

## 2.  Eleventh Amendment immunity

Defendants also assert an entitlement to Eleventh Amendment

immunity.  ECF No. 50 at 12.  "The Eleventh Amendment states that '[t]he

Judicial power of the United States shall not be construed to extend to any

suit in law or equity, commenced or prosecuted against one of the United

States by Citizens of another State, or by Citizens or subjects of any

Foreign State.'" CONST. AMEND. XI. (quoted in <u>Attwood v. Clemons</u>, 818 F. App'x 863, 866 (11th Cir. 2020)).  "As interpreted by the Supreme Court, this language bars a citizen from suing his state (or another state)—under federal or state law—unless the state waives its sovereign immunity or Congress abrogates that immunity under § 5 of the Fourteenth Amendment."  <u>Attwood</u>, 818 F. App'x at 866 (citing to <u>Hans v. Louisiana</u>, 134 U.S. 1, 10-15, 10 S. Ct. 504, 33 L. Ed. 842 (1890); <u>Kimel v. Florida Bd. of Regents</u>, 528 U.S. 62, 72-73, 120 S. Ct. 631, 145 L. Ed. 2d 522 (2000)).

As noted by Defendants, "the doctrine of Eleventh Amendment Immunity extends to state officers sued in their official capacity."  ECF No. 50 at 12 (citing <u>Powers v. CSX Transportation, Inc.</u>, 105 F. Supp. 2d 1295, 1304 (11th Cir. 2000), and <u>Searcy v. Singletary</u>, 894 F. Supp. 1565, 1569 (M.D. Fla. 1995).  However, Plaintiff's amended complaint states that he was suing the Defendants in their individual capacities.  ECF No. 13 at 2. Plaintiff emphasized that in his response to the motion to dismiss as well. ECF No. 62 at 12 (stating "Plaintiff is not suing Defendants Hinson and Jeter in their official capacity").  Eleventh Amendment immunity does not apply to individual capacity claims.  *See* <u>Ass'n of Cnty. Commissions of Alabama Liab. Self-Insured Fund v. Robinson</u>, 777 F. App'x 397, 400 (11th

Cir. 2019); Attwood, 818 F. App'x at 873-74 (Grant, J., explaining difference between individual capacity and official capacity claim and stating that if the defendant is not sued as a "sovereign," that means no sovereign immunity).  This argument should also be rejected.

### 3.  Absolute Immunity

Defendants correctly assert that The Florida Bar is an official arm of the Florida Supreme Court.  ECF No. 50 at 13; *see* Henry v. Fla. Bar, 701 F. App'x 878, 881 (11th Cir. 2017) (stating "the Florida Bar is entitled to Eleventh Amendment immunity as an arm of the state").  As such, agents of The Florida Bar - such as the named Defendants - "are afforded absolute judicial immunity for" performing their duties.  *Id.*

Plaintiff responded to the motion to dismiss by asserting that "[d]ismissing lies, illegal testimony, and knowing collusion to commit extortion, perjury, fraud, and subornation of perjury are not permitted by or for any prosecutor."  ECF No. 62 at 5-6.  He asserts that such "activities" are "outside the activities" of an officer of the court and "are not immune from liability under section 1983."  *Id.* at 6.

The Eleventh Circuit noted in Henry v. Fla. Bar, that the Rules of The Florida Bar "establish that officials acting in disciplinary proceedings are

agents of the Florida Supreme Court; thus, they are entitled to absolute

immunity."  701 F. App'x at 880.  It appears that Henry was suing individual

defendants from the Bar in their official capacities, *id.* at 879-880, but that

distinction is immaterial because "[a]bsolute immunity applies to claims

made in an individual capacity."  Watson v. Fla. Jud. Qualifications

Comm'n, 746 F. App'x 821, 823 (11th Cir. 2018).  Determining whether a

defendant is entitled to absolute immunity "involves an historical exercise"

as a court must consider whether the defendant was involved in "functions

intimately associated with the judicial phase of the criminal process."  746

F. App'x at 823 (citing to Malley v. Briggs, 475 U.S. 335, 342, 106 S. Ct.

1092, 89 L. Ed. 2d 271 (1986)).  Using a "functional approach, absolute

immunity has been extended to state court judges, administrative law

judges and federal hearing examiners, federal and state prosecutors, grand

jurors, and witnesses testifying in judicial proceedings."  746 F. App'x at

824.  Absolute immunity covers "even wrongful or malicious acts by

prosecutors."  Hart v. Hodges, 587 F.3d 1288, 1298 (11th Cir. 2009) (cited

in 746 F. App'x at 824).  Further, absolute immunity is provided even when

a "prosecutor uses false testimony and suppresses exculpatory evidence at

trial." Fullman v. Graddick, 739 F.2d 553, 558-59 (11th Cir. 1984) (quoted in 746 F. App'x at 824).

In Watson, a former Florida circuit court judge (Laura M. Watson) filed suit against 19 officials from the JQC and The Florida Bar in their individual capacities only. Watson, 746 F. App'x at 822-23. She presented "civil rights claims under 42 U.S.C. § 1983 and a Racketeer Influenced and Corrupt Organizations Act ('RICO') claim arising out of the Florida Judicial Qualification Commission's ('JQC') recommendation to the Florida Supreme Court that she be removed from the bench and her subsequent disbarment by The Florida Bar." 746 F. App'x at 823. The court reiterated that "[e]mployees of The Florida Bar are entitled to absolute immunity when they act as agents of the Florida Supreme Court." 746 F. App'x at 824 (citing to Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993)).

The claims brought in this case against Defendants Jeter and Hinson cannot go forward. The claims are based entirely on actions taken because of the Defendants employment with The Florida Bar and stem from disciplinary proceedings brought against Plaintiff. Even though Plaintiff contends Defendants conspired against him and Defendant Hinson allegedly lied, the claims occurred in the course of the Bar's prosecution of

Plaintiff.  Put another way, all of their actions are "intimately associated with" the disciplinary proceeding against Plaintiff.

In Imbler v. Pachtman, 424 U.S. 409, 410, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976), a prosecuting attorney was sued "for allegedly using false testimony and suppressing evidence" during a criminal trial. "The Supreme Court concluded that the deputy district attorney was entitled to absolute prosecutorial immunity because his 'activities were intimately associated with the judicial phase of the criminal process.'" Imbler, 424 U.S. at 430, 96 S.Ct. 984 (explained in Kassa v. Fulton Cnty., Georgia, 40 F.4th 1289, 1292 (11th Cir. 2022).  The immunity derives "not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself." Kalina v. Fletcher, 522 U.S. 118, 127, 118 S. Ct. 502, 139 L. Ed. 2d 471 (1997) (quoted in Kassa, 40 F.4th at 1292).  Thus, even in cases involving "perjured testimony," an official is still entitled to absolute immunity.  *See* Hart, 587 F.3d at 1295; Kassa, 40 F.4th at 1293.

Plaintiff argues that Defendants actions were outside of their activities related to the prosecution of his case.  ECF No. 62 at 12.  However, the allegations of the complaint provide no such facts.  The entirely of Plaintiff's claims against Defendants Hinson and Jeter are based on their

involvement in the Bar's disciplinary proceedings.  Thus, Defendants are entitled to absolute immunity and the motion to dismiss should be granted on that basis.

## 4.  Standing

Defendants Hinson and Jeter construe Plaintiff's complaint as asserting a claim against them for ignoring his allegations of wrongdoing which were lodged against another attorney.  ECF No. 50 at 17. Defendants point out "that Bar disciplinary proceedings are not designed to vindicate the rights of private parties, and that a complainant does not have an independent right to force pursuit of attorney discipline."  *Id.* "Disciplinary proceedings against attorneys are instituted in the public interest and to preserve the purity of the courts. No private rights except those of the accused attorney are involved."  Tyson v. The Fla. Bar, 826 So. 2d 265, 268 (Fla. 2002) (quoting In re Harper, 84 So.2d 700, 702 (Fla. 1956)).  Here, because Plaintiff had no legal right to have another attorney disciplined, Plaintiff's constitutional rights were not violated by the Defendants' alleged inaction on his complaint.  Rather than find that Plaintiff "lacks standing" to pursue such a claim, the Court concludes that

such a claim - if it was even clearly asserted in the amended complaint -

fails to state a claim upon which relief can be granted.

## RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that the

motion to dismiss, ECF No. 50, filed by Defendants Hinson and Jeter be

**GRANTED** and Plaintiff's claims against them be **DISMISSED** because the

Defendants are entitled to absolute judicial immunity.  It is

**RECOMMENDED** that this case be **REMANDED** for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on February 15, 2023.


 S/    Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the Magistrate Judge's findings or**

recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.