## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**PHILLIP TIMOTHY HOWARD,**

     **Plaintiff,**

**vs.**                          **Case No. 4:22cv97-AW-MAF**

**J.B. HARRIS, et al.,**

     **Defendants.**
_____/

## <u>FOURTH REPORT AND RECOMMENDATION</u>

This case has four pending motions to dismiss, ECF Nos. 36, 39, 50, and 75, the Plaintiff's first amended complaint [hereinafter "complaint"], ECF No. 13.  The first three motions (ECF Nos. 36, 39, and 50) have been addressed in separate Reports and Recommendations, ECF Nos. 94-96. Also pending is a motion for summary judgment, ECF No. 45, filed by Defendant J.B. Harris and J.B. Harris, P.A.  This Fourth Report and Recommendation addresses only that motion and Plaintiff's response, ECF No. 57.

**Preliminary Notes**

First, having been advised that the correct spelling of the Defendant identified by Plaintiff's complaint as Sandra Fulup, ECF No. 13 at 3, is actually Fulop, *see* ECF No. 36, that name is used in this Report and Recommendation.

Second, although the complaint lists two Plaintiffs - Dr. Howard and Howard & Associates, ECF No. 13 at 1, the complaint presents three claims only on behalf of Dr. Howard.  ECF No. 13 at 17-24; *see also* ECF No. 19 (Order denying motion to withdraw).

Third, a glance at the docket would suggest that Plaintiff is represented by counsel Richard B. Collins.  Mr. Collins briefly entered an appearance in this case on behalf of Howard & Associates, P.A., ECF No. 15, but withdrew his notice a few days later.  *See* ECF No. 18.  Plaintiff represents himself in this case.  Plaintiff is a former attorney who was disbarred[1] by the Florida Supreme Court on March 24, 2022.  ECF No. 8. The complaint is signed by Plaintiff and all responses are filed by Plaintiff who is proceeding pro se.

---

[1] Plaintiff specifically declared in the complaint that he is not seeking to challenge "the final decision of the Florida Supreme Court" and does not seek "relief from a state court judgment based on" the Court's disbarment order.  ECF No. 13 at 2, n.1.

Fourth, Defendant Harris has pointed out that Plaintiff has been disbarred by the Florida Supreme Court.  ECF No. 45 at 8.  Indeed, Defendant Harris filed a copy of the Court's Order.  ECF No. 8.  Point taken, but no action is required.

Fifth, both Defendant Harris and Plaintiff filed a multitude of documents which are only tangentially related to the specific claims Plaintiff brought against the Defendants.  Defendants have filed 330 pages of exhibits to support the motion, ECF No. 45, along with Defendant Harris' affidavit, ECF No. 45-1.  Plaintiff has filed approximately 850 pages of exhibits.  ECF No. 57.  Plaintiff did not provide pinpoint citations to any facts that are material to his claims.  *See* ECF No. 57 at 8.  While Plaintiff cited to specific pages of some exhibits, those concern Cambridge Entities assets, the Global Investment Advisory Team, and the NFL concussion litigation which are not part of Plaintiff's claims.  ECF No. 57 at 7-10, 15.  Moreover, directing the Court's attention to pages 1-38 or 1-22 is not a pin-point citation.  *See* ECF No. 57 at 15.

Defendants' motion also predominately cites in general to exhibits, with few pinpoint citations.  ECF No. 45 at 8-11.  That does not comply with Local Rule 56.1(F).  The Local Rule states that the "Court may, but need

not, consider record evidence that has not been properly cited." N.D. Fla. Loc. R. 56.1(F).

Further, Plaintiff's response to Defendant's motion, ECF No. 45, is lengthy. ECF No. 57. It was divided into two parts because of its length (884 pages in total). ECF No. 57 and ECF No. 57-1. However, none of Plaintiff's multitude of attachments to his response were separately filed so the Court could easily locate a relevant reference. Plaintiff's response also does not comply with Local Rule 56.1(F). Without pinpoint citations and separately filed exhibits, the Court is unable to easily verify any asserted "fact." The Court declines Plaintiff's invitation to review more than 850 pages of attachments in search of a potential pearl buried within pages not separately identified or easily located.[2]

---

[2] All of Plaintiff's exhibits were filed as part of his response, ECF No. 57, and was one document, necessarily divided into two parts because of its length. The Court will not waste time attempting to locate a specific attachment, and then attempt to find that portion of the attachment which was generally referenced by Plaintiff. "District judges are not archaeologists. They need not excavate masses of papers in search of revealing tidbits—not only because the rules of procedure place the burden on the litigants, but also because their time is scarce." Nw. Nat. Ins. Co. v. Baltes, 15 F.3d 660, 662-63 (7th Cir. 1994); see also King v. Marcy, No. 2:17-CV-112, 2019 WL 4547071, at *4 (S.D. Ga. Sept. 19, 2019), aff'd, 809 F. App'x 764 (11th Cir. 2020) (stating that "judges need not endeavor to 'fish a gold coin from a bucket of mud'" and citing U.S. ex rel. Garst v. Lockheed-Martin Corp., 328 F.3d 374, 378 (7th Cir. 2003)).

**Allegations of Plaintiff's complaint**, **ECF No. 13**

Plaintiff specified that he was suing Defendant J.B. Harris in his individual capacity.  Plaintiff also sues the Defendant's "company, J.B. Harris, P.A."  ECF No. 13 at 2.

On January 29, 2018, Defendant J.B. Harris allegedly threatened to file a Bar complaint against Plaintiff if Plaintiff did not pay him "in full."  *Id.* at 3.  Plaintiff claimed that was an "extortion threat," and that Defendant Harris "ultimately extorted over $600,000.00 from" the Plaintiff.  *Id.*  Three days later, another threat was made by Defendant Harris and he said that he had prepared a Bar complaint against Plaintiff.  *Id.* at 4.  On February 27, 2018, Defendant J.B. Harris threatened to go to the FBI.  *Id.* at 5. Plaintiff alleged that additional demands were made for money from Defendant Harris which Plaintiff contends was part of Harris' "extortion scheme."  *Id.* at 6.  On June 8, 2018, Plaintiff received another communication from J.B. Harris which Plaintiff contends was part of the "enterprise and conspiracy with Shanee Hinson . . . to take [Plaintiff's] license and complete his theft of attorney's fees entitlement . . . ."  *Id.* at 7. The communication indicated the Bar had begun on investigation on Plaintiff and Harris told Plaintiff that his "days as a lawyer [were]

numbered." *Id.* In August 2018, J.B. Harris threatened Plaintiff with physical violence if he did not reactivate insurance immediately. *Id.* at 8-9.

Plaintiff made a conclusory assertion of an "extortion enterprise with Shanee Hinson and J.B. Harris," and claimed they "conspired to draft and submit a perjured and fraudulent Bar Complaint" against Plaintiff and attribute[3] it to Defendant Margaret Peggy Harris. *Id.* at 9. Plaintiff claims the Bar Complaint was "fraudulent," "full of lies," and included known perjury. *Id.* It appears that Peggy Harris was deposed by Shanee Hinson and admitted that she had not read the Bar Complaint which she signed; she further admitted that the Complaint included statements which she believed were false. *Id.* at 9-11. The Complaint was filed in April of 2019. *Id.* at 11.

J.B. Harris allegedly conspired with Defendant Kimberly Butler Poling as well and wrote her Bar Complaint and rebuttal. ECF No. 13 at 11. Plaintiff vaguely asserts it tracked "the same scheme with Peggy Harris," meaning that it was "written by J.B. Harris, but signed by Kimberly Butler Poling." *Id.* Plaintiff made a conclusory allegation of a "conspiracy"

_____

[3] The allegations make clear that Defendant Margaret Peggy Harris did not draft the complaint herself. It should be noted that Margaret Peggy Harris is not related to Defendant J.B. Harris. *See* ECF No. 39 at 2.

between J.B. Harris, Kimberly Butler Poling and Shanee Hinson.  *Id.* at 12.

Plaintiff further asserted that Defendant J.B. Harris threatened to file

another Bar Complaint against him if he "did not retract the slanderous

content" of a voicemail and issue a "written apology" to J.B. Harris.  *Id.*

Plaintiff contends he "informed Shanee L. Hinson, Dana Hall and

Sandra [Fulop]" of the extortion from Hall and Fulop on August 3, 2018.

ECF No. 13 at 13.  Plaintiff contends that in July of 2016, Defendants Hall

and Fulop demanded $355,031.00 but had "no legitimate claim for loss of

funds."  *Id.*  Plaintiff claimed Defendants Shanee Hinson and Roy Jeter,

employees of The Florida Bar, "conspired and colluded" with extorters J.B.

Harris, Dana Hall and Sandra [Fulop] . . . ."  *Id.* at 13-14.  He contends that

Shanee Hinson, attorney, "was a co-conspirator in the criminal extortion

and known perjury and fraud of J.B. Harris, Peggy Harris, Roy Jeter, Dana

Hall, Sandra [Fulop], and Kimberly Butler Poling."  *Id.* at 14.  Plaintiff said

Hinson "abused her position" for the purpose of advancing "her career and

legal opportunities," and performed "numerous specific" (but unidentified)

"acts to forward the conspiracy and aided the conspiracy by intentionally

and knowingly lying to the Court," and "intentionally turning a blind eye" to

the goal of J.B. Harris - to take Plaintiff's "fees on tobacco cases" and his

Bar license "no matter what." *Id.* at 14-15.  Plaintiff alleged that Hinson

"was informed in writing" on three separate occasions that J.B. Harris,

Peggy Harris, Hall, Fulop, and Butler Poling were extorting him, but Hinson

denied knowing of such facts to the Bar referee. *Id.* at 15-16.  In short,

Plaintiff claimed there was a "joint conspiracy" among all the Defendants

and he is entitled to monetary damages. *Id.* at 17.

Count I of the complaint asserts a due process claim, but was not

directed to any specific Defendant.  ECF No. 13 at 17-19.  Count II asserts

a "civil conspiracy and RICO" claim against all seven Defendants, *id.* at 19-

21, and cites to 18 U.S.C. § 1962(c) and (d) to support the claim.  *Id.* at 21.

The third and final claim is incorrectly identified as "Count VII" and asserts

a "civil theft" claim against Defendants J.B. Harris and Peggy Harris.  *Id.* at

22-24.

**Defenses**

Defendant J.B. Harris and his firm asserts several reasons that

summary judgment should be granted in Defendants' favor: (1) lack of a

due process claim; (2) sufficiency of due process provided to Plaintiff; (3)

Defendant is not liable under § 1983; (4) Count I is barred by the *Rooker-*

*Feldman* doctrine; (5) civil conspiracy claim fails to state a claim; (6) the

state law civil theft claim fails to state a claim; (7) Plaintiff's claims are

barred by a release.  ECF No. 45 at 11-23.[4]  Plaintiff filed a response in

opposition to the motion, ECF No. 57, although his response fails to

address any of the basis presented.[5]

**Relevant Evidence**

Defendant J.B. Harris has been a licensed attorney with The Florida

Bar for 37 years.  ECF No. 45-1.  In January 2017, Defendant Harris

"signed a Joint Prosecution and Fee Sharing Agreement ('JPA') with

Howard and his law firm, whereby [Defendant Harris] agreed to co-counsel

with Howard on a portfolio of 165 individual *Engle*-progeny smokers' cases,

and over 700 *Broin*-progeny secondhand smoke exposure cases, which

[Harris] brought with [him] to Howard's firm."  ECF No. 45-1 at 2.  Pursuant

to the JPA, Plaintiff agreed to pay Harris an "annual salary plus benefits,"

---

[4] The motion addresses Plaintiff's Count VII, which was incorrectly titled by
Plaintiff and should have been "Count III" because only three claims were asserted in
the complaint, ECF No. 11.   ECF No. 45 at 22.

[5] In general, the parties have demonstrated a contempt for each other throughout
this civil litigation.  Indeed, it has been anything but "civil."  Plaintiff's response argues
that Defendant Harris' affidavit contains statements which are "absolutely false."   ECF
No. 57 at 22.  However, Plaintiff did not present any evidence to show there is a
genuine dispute of material fact which precludes granting summary judgment. Plaintiff's
first affidavit, ECF No. 57 at 29-30, merely asserts that the attachments submitted with
his response "are true and accurate."  *Id.* at 30.  As noted above, Plaintiff provided no
relevant pinpoint citations to those attachments.

as well as "all costs associated with the prosecution of each activated case . . . in exchange for a majority fee paid upon each recovery."  *Id.* at 3 (citations to the JPA omitted).  Any disputes "were first to be submitted to non-binding mediation in Tallahassee, and, failing that, to binding arbitration."  *Id.*  Defendant states that Plaintiff violated the JPA by suing him in 2019 in Texas.  *Id.*

Defendant Harris states that he eventually discovered that Plaintiff "was using money from his IOTA account to operate his firm."  *Id.* at 5. Harris states that he "unwittingly stumbled into a criminal enterprise, rather than the operation of a legitimate law office."  *Id.*  Harris filed a Bar Complaint against Plaintiff and later agreed to become a confidential informant for the FBI.  *Id.* at 6.  In January of 2018, Plaintiff stopped paying Harris in accordance with "the terms of the JPA."  *Id.* at 7.  Harris says he sent a demand letter to Plaintiff on April 5, 2018, threatening to sue if he was not paid "as agreed" and if the benefits did not continue.  *Id.*  The letter also was sent to a "litigation finance firm known as Virage Capital Management, LP ('Virage'), located in Houston, TX, who [Plaintiff] often referred to as his partners . . . ."  *Id.*  The next day, the CEO from Virage met with Harris to negotiate a Confidential Settlement Agreement between

Plaintiff, Virage, and Harris.  ECF No. 45-1 at 7; *see also* Defendants' Ex. 2 (ECF No. 45-3).[6]  Defendant Harris points to language from that Agreement stating that it included a Release of Claims between Plaintiff and the Defendant.  ECF No. 45-1 at 7-8.  Further, Plaintiff agreed to pay Defendant Harris an initial $50,000 plus monthly payments of $21,000 for 12 months.  ECF No.  45-3 at 7.

Defendant Harris became counsel for Defendant Peggy Harris no later than March of 2018.  *Id.* at 8.  Harris also represented Defendant Poling.  *Id.* at 8-9.

**Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Thus, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which

---

[6] The Agreement as presented is in two parts.  The first part is the complete Agreement which was signed by Defendant J.B. Harris and Virage.  The second is another copy of the complete Agreement which was signed by Plaintiff.  ECF No. 45-3. The Agreement was dated April 6, 2018.  *Id.* at 6, 13.

that party will bear the burden of proof at trial."  <u>Celotex Corp. v. Catrett</u>,

477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  As

noted above, the parties were provided adequate time to conduct

discovery.

The "party seeking summary judgment always bears the initial

responsibility of informing the district court of the basis for its motion, and

identifying those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,'

which it believes demonstrate the absence of a genuine issue of material

fact."  <u>Celotex Corp.</u>, 477 U.S. at 323, 106 S. Ct. at 2553.  The non-moving

party must then show[7] though affidavits or other Rule 56 evidence "that

there is a genuine issue for trial" or "an absence of evidence to support the

nonmoving party's case."  <u>Id.</u> at 325, 106 S. Ct. at 2554; <u>Beard v. Banks</u>,

548 U.S. 521, 529, 126 S. Ct. 2572, 2578, 165 L. Ed. 2d 697 (2006).

---

[7] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "  <u>Owen v. Wille</u>, 117 F.3d 1235, 1236 (11th Cir. 1997), <i>cert. denied</i> 522 U.S. 1126 (1998) (quoting <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  <u>Owen</u>, 117 F.3d at 1236; <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553.

An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).  Additionally, "the issue of fact must be 'genuine'" and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (other citations omitted).  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) (quoting Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)).  All reasonable inferences must be resolved in the light most favorable to the nonmoving party, Sconiers v. Lockhart, 946 F.3d 1256, 1262-63 (11th Cir. 2020), and the Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Hickson Corp., 357 F.3d at 1260 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986)).

"Summary judgment is not a time for fact-finding; that task is reserved for trial." Sconiers, 946 F.3d at 1263 (11th Cir. 2020) (citing Tolan v. Cotton, 572 U.S. 650, 655-57, 134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014)). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511 (quoted in Sears v. Roberts, 922 F.3d 1199, 1205 (11th Cir. 2019)).

## Analysis

### 1.  Section 1983 Due Process Claim

Defendants (Harris and Harris, P.A.) argue that Plaintiff's Count I fails to allege a due process claim under 42 U.S.C. § 1983.  ECF No. 45.  In particular, Defendants assert that Plaintiff has not demonstrated a constitutionally protected liberty or property interest.  *Id.* at 11-12.  Even so, Defendants point out that Plaintiff received sufficient due process.  *Id.* at 13-15.  Further, Defendants assert that Plaintiff "fails to allege any facts that would implicate Harris in Howard's claim that Howard was denied Due Process."  *Id.* at 15.  In addition, Defendants contend they are a private

person and business and were "not acting under 'color of state law.'" *Id.* at 16.

Count I of Plaintiff's complaint asserted the § 1983 due process claim. ECF No. 13 at 17-19. Plaintiff alleged he had "a property right in his law license that cannot be taken without due process of law." *Id.* at 18. Although it was not specifically directed to any Defendant in particular, Plaintiff claims that Defendants - plural - "engaged in criminal extortion, perjury, [and] fraud . . . to deprive him of his license to practice law without due process of law . . . ." ECF No. 13 at 18.

First, the Court agrees that Defendant Harris and his law firm are private parties and did not act under color of state law as required to state a claim under § 1983. Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001) (stating that "a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law"). Plaintiff provided no facts to support that element of the § 1983 claim.

Furthermore, Plaintiff's allegation that Defendant Harris "acted 'in concert' with other state actors is insufficient because it was a legal conclusion unsupported by facts. ECF No. 39 at 11-12. It is true that a private person may be considered a state actor if (1) the state "coerced or

at least significantly encouraged" the allegedly unconstitutional action

("State compulsion test"); (2) the private party performed an act traditionally

performed by a state official ("public function test"), or (3) the State was a

joint participant in the act ("nexus/joint action test").  Rayburn ex rel.

Rayburn v. Hogue, 241 F.3d 1341, 1347 (11th Cir. 2001) (citing NBC, Inc.

v. Communications Workers of America, 860 F.2d 1022, 1026-27 (11th Cir.

1988)).  There are no allegations included within the complaint which

demonstrate any of those three tests.

Notably, a private party may also be considered a state actor if he

conspired with state officials to commit the alleged constitutional violation.

Dennis v. Sparks, 449 U.S. 24, 27-28, 101 S.Ct. 183, 186, 66 L.Ed.2d 185

(1980).  Defendants Hinson and Jeter may be considered "state actors" by

virtue of their employment with The Florida Bar.  However, Plaintiff did not

provide specific factual allegations to show that Defendant J.B. Harris or

Harris, P.A., "conspired" with those Defendants.  Plaintiff's claim of a

conspiracy is conclusory only and insufficient to present a viable claim

under § 1983.  Further, in responding to Defendants' summary judgment

motion, Plaintiff has provided no "evidence" of a conspiracy.

Additionally, to the extent that Plaintiff's due process claim is premised upon the Bar disciplinary process, no evidence has been presented to show that Plaintiff was not provided "notice and an opportunity to be heard." Fla. Bar v. Fredericks, 731 So.2d 1249, 1254 (Fla. 1999) (cited in The Fla. Bar v. Committe, 916 So. 2d 741, 745 (Fla. 2005)). Plaintiff provided no evidence to show that Defendant J.B. Harris or Harris, P.A., interfered with Plaintiff's right to be heard.  Summary judgment should be granted in favor of Defendants Harris and Harris, P.A., as to Plaintiff's § 1983 due process claim.[8]

## 2.  Rooker-Feldman Defense

Defendants assert that the Due Process claim is also barred by the Rooker-Feldman doctrine.  ECF No. 45 at 18-19.  It is argued that Plaintiff is a "state-court loser" and this case "is an attempt to have the federal district court review and reject the Florida Supreme Court's decision." *Id.* at 19.  Because Plaintiff's claim is 'inextricably intertwined' with the Florida Supreme Court's decision, Defendants contend this Court lacks jurisdiction over the claim. *Id.* at 19.

---

[8] Defendants provided three separate reasons to rule in their favor on Plaintiff's due process claim.  The reasons have been considered together rather than separately.

The "*Rooker–Feldman* doctrine" derives its name from two cases:

Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362

(1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S.

462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983).  Skinner v. Switzer, 562

U.S. 521, 531, 131 S. Ct. 1289, 1297, 179 L. Ed. 2d 233 (2011).  The

doctrine applies in a narrow set of cases which contain this pattern: the

losing party in state court files suit in a federal district court after the state

proceedings have ended, and complains of injuries "caused by the

state-court judgment and seeking federal-court review and rejection of that

judgment."  Skinner, 562 U.S. at 531, 131 S. Ct. at 1297.  In such cases,

federal courts lack "subject-matter jurisdiction over such claims, for 28

U.S.C. § 1257 'vests authority to review a state court's judgment solely in'

the United States Supreme Court."  562 U.S. at 531-32, 131 S. Ct. at 1297

(quoting Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280,

292, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005)).

"The doctrine applies where an issue presented to the district court is

'inextricably intertwined' with the state court judgment."  Alvarez v. Att'y

Gen., 679 F.3d 1257, 1262 (11th Cir. 2012) (quoted in Scott v. Frankel, 562

F. App'x 950, 953 (11th Cir. 2014)).  "That occurs where '(1) the success of

the federal claim would effectively nullify the state court judgment' or (2) 'the federal claim would succeed only to the extent that the state court wrongly decided the issues.'"  Alvarez, 679 F.3d at 1262-63 (quoted in Scott, 562 F. App'x at 953).

"Decisions by state supreme courts disciplining attorneys for misconduct qualify as such final decisions."  Scott, 562 F. App'x at 953 (citing Johnson v. Supreme Court of Ill., 165 F.3d 1140, 1141 (7th Cir. 1999)).  "As a result, 'the *Rooker–Feldman* doctrine eliminates most avenues of attack on attorney discipline.'"  Scott, 562 F. App'x at 953 (other citations omitted).  In Scott v. Frankel, the Eleventh Circuit held that Scott's claim for damages against the individuals who were "involved" and "colluded" to obtain Scott's suspension from the practice of law was barred by the *Rooker-Feldman* doctrine.  562 F. App'x at 954.  In short, the claims were found to be "'inextricably intertwined' with the Florida Supreme Court's decision.'" *Id.*  Thus, the district court lacked jurisdiction over the claim.  *Id.*

Plaintiff's intention with this case is evident from the "motion for temporary and permanent injunction," ECF No. 2, filed on March 8, 2022, just four days after Plaintiff initiated this case.  Plaintiff claimed that his "law

license [was] being illegally taken by The Florida Bar and The Florida

Supreme Court . . . ."  ECF No. 2 at 2.  Plaintiff sought to enjoin the alleged

conspiracy and all named Defendants.  *Id.* at 8.  It is apparent that Plaintiff

sought to prevent the loss of his Bar license which, apparently, Plaintiff

believed was imminent.

However, there is a critical distinction between this case and cases

barred by *Rooker-Feldman*.  Plaintiff filed this case on March 4, 2022.  ECF

No. 1.  The Order of the Florida Supreme Court was not issued until March

24, 2022, and it would not be effective until 30 days later.  ECF No. 8 at 4.

The *Rooker-Feldman* doctrine "is confined to cases . . . brought by

state-court losers complaining of injuries caused by state-court judgments

rendered before the district court proceedings commenced . . . ."  Exxon

Mobil Corp., 544 U.S. at 284, 125 S. Ct. at 1521-22.  It is true that Plaintiff

ultimately lost in the Florida Supreme Court, but the judgment was not

"rendered" before this case commenced.  *See* Locke v. Canady, No.

4:22cv116-AW-MAF, 2022 WL 16832831, at *4 (N.D. Fla. Sept. 26, 2022),

report and recommendation adopted as modified sub nom. Locke v. Muniz,

No. 4:22-CV-116-AW-MAF, 2022 WL 15798584 (N.D. Fla. Oct. 28, 2022)

(noting that the underlying state court case had not ended because Plaintiff

had filed a motion for rehearing on the same day he initiated the federal

case); Green v. Jefferson Cnty. Comm'n, 563 F.3d 1243, 1250 (11th Cir.

2009) ("'confining the scope of the *Rooker-Feldman* doctrine to instances

where the state proceedings have ended, in line with both the Rooker and

Feldman cases,' heeds the Supreme Court's warning that the doctrine is

limited and should be applied narrowly") (citations omitted)).  Therefore,

Plaintiff's case is not barred by *Rooker-Feldman* and the argument that this

Court lacks jurisdiction over the claim should be rejected.

## 3.  Civil Conspiracy Claim

Defendants Harris and Harris, P.A. argue that Plaintiff's conspiracy

claim is insufficient because it is based on an underlying claim of "fraud"

which has not been pled with particularity as required by Rule 9(b).  ECF

No. 45 at 20-21.  Further, Plaintiff's alleged "conspiracy" claim is not

supported by facts showing two distinct but related predicate acts.  *Id.* at

20.

First, the Court agrees with the arguments raised in prior motions to

dismiss - Plaintiff's claim in Count II is insufficient because Plaintiff never

alleges or proves there was an agreement between the parties to commit

an overt act in furtherance of the conspiracy. Plaintiff's "facts" are simply conclusory and vague assertions and he fails to demonstrate a conspiracy.

Second, the Court agrees with Defendants that Plaintiff has not alleged his claim of fraud as required. Rule 9 states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Plaintiff made only conclusory assertions of extortion, but he did not allege facts which show that the demands for money by Defendant J.B. Harris were fraudulent and not legitimate. The complaint included alleged email correspondence from Defendant J.B. Harris which certainly included threats made against Plaintiff, but those threats do not demonstrate that Plaintiff did not owe money to Defendant Harris.[9] In other words, Plaintiff has not demonstrated that Defendant Harris made demands for payments which were false. Indeed, Plaintiff's complaint acknowledges agreeing to pay Defendant Harris $50,000 "up front, and put him on a $21,000.00 a month income, plus health insurance . . . ." ECF No. 13 at 6. The complaint lacks

---

[9] One such threat also indicated that Plaintiff had falsely submitted UCC-1's for indebtedness which belonged to Defendant Harris, not Plaintiff. ECF No. 13 at 5. It was pursuant to that issue that Defendant Harris threatened to proceed "straight to the FBI with" the information. *Id.*; *see also* pg. 6.

sufficient allegations to support a claim of fraud against Defendants Harris or Harris, P.A.

The RICO statute includes a civil remedies provision, 18 U.S.C. § 1964(c), which permits "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."  18 U.S.C. § 1964(c).  "[T]to state a prima facie civil RICO claim under 18 U.S.C. § 1964(c), a plaintiff must establish 'three essential elements': first, that the defendant committed a pattern of RICO predicate acts under 18 U.S.C. § 1962; second, that the plaintiff suffered injury to business or property; and, finally, that the defendant's racketeering activity proximately caused the injury."  Simpson v. Sanderson Farms, Inc., 744 F.3d 702, 705 (11th Cir. 2014) (citations omitted).  Here, Plaintiff has not provided evidence that Defendants Harris or Harris, P.A. "committed a pattern of RICO predicate acts."  It is far from clear from Plaintiff's complaint how these Defendants violated § 1962.  Moreover, there is no evidence that Plaintiff was injured by virtue of that conduct.  Instead, it appears that Plaintiff's injury - disbarment - was due to the Order of the

Case No. 4:22cv97-AW-MAF

Florida Supreme Court.  It appears that Plaintiff's allegations of a RICO

conspiracy is based on a "string of conclusory premises."  <u>Simpson</u>, 744

F.3d ay 708.  The RICO claim is both unsupported and insufficient.

Summary judgment should be granted in favor of the Defendants on this

claim.

**4. Civil Theft Claim**

Plaintiff's final claim against Defendant Harris is based on a claim for

"civil theft" under FLA. STAT. § 772.11.  In relevant part, this statute

provides:

> (1) Any person who proves by clear and convincing evidence
> that he or she has been injured in any fashion by reason of any
> violation of ss. 812.012-812.037 or s. 825.103(1) has a cause
> of action for threefold the actual damages sustained and, in any
> such action, is entitled to minimum damages in the amount of
> $200, and reasonable attorney's fees and court costs in the trial
> and appellate courts.

Fla. Stat.§ 772.11(1).  Defendant Harris correctly points out that Plaintiff

fails to identify any statutory provision - § 812.012 through § 812.037 or

§ 825.103(1) - that Defendant violated.  ECF No. 45 at 22.  That failure is

fatal to Plaintiff's claim.  A complaint is insufficient if it does not provide a

defendant with notice of the basis for the plaintiff's claim.  Plaintiff's

amended complaint does not do so and Defendants have no basis upon

which to defend a claim for civil theft.  Thus, summary judgment should be granted in Defendants' favor.

In light of the recommendation to grant summary judgment in favor of Defendants Harris and Harris, P.A., on all of Plaintiff's claims, there is no need to address the Defendants' argument that Plaintiff's claims are barred by the release signed on April 6, 2018.  ECF No. 45 at 23.

## RECOMMENDATION

It is respectfully **RECOMMENDED** that the motion for summary judgment, ECF No. 45, filed by Defendants J.B. Harris and J.B. Harris, P.A. be **GRANTED** and judgment entered in Defendants' favor on all of Plaintiff's claims.  It is also **RECOMMENDED** that this case be **REMANDED** for further proceedings concerning the remaining motion to dismiss, ECF No. 75.

**IN CHAMBERS** at Tallahassee, Florida, on February 23, 2023.

S/    Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.